# DECLARACIÓN DE S.T.

1. Yo, S.T., hago esta declaración conforme a mi saber, y si me convocan como testigo, podría testificar y lo haría sobre los siguientes asuntos:

2. Soy la madre de R.M. y la abuela de S.Q. Tengo 58 años.

3. Soy residente permanente de los Estados Unidos y he vivido en este país desde 1989. Trabajo a tiempo completo en una tienda.

4. En junio de 2018, mi hija R.M. me llamó para informarme de que había viajado a los Estados Unidos de El Salvador con su hija, pero que el Servicio de Inmigración y Control de Aduanas de los EE. UU. (ICE) las había separado. Entiendo que R.M. corría peligro en El Salvador y no tuvo otra opción que escapar con su hija.

5. Cuando R.M me llamó para informarme de que ambas se encontraban en los Estados Unidos, ella y su hija ya habían sido separadas. R.M. me dijo que ya llevaba una semana en los Estados Unidos hasta que pudo llamarme. Durante la llamada, R.M. sonaba muy triste y dijo que la forma en la que el ICE la había separado de su hija había sido muy traumática, y que sentía que el ICE las había maltratado.

6. Más tarde, S.Q., mi nieta, me llamó por teléfono. S.Q. estaba llorando. Le recomendé que rezara y que, con suerte, todo se resolvería. También hablé con la trabajadora social que estaba con mi nieta.

7. Desde entonces, solo he podido hablar con S.Q. unas dos veces por semana. Cuando llegó, S.Q. estaba muy angustiada y lloraba mucho. Intenté recordarle que rezara y que, con suerte, todo se resolvería. No hablaba mucho.

8. Durante una de las llamadas con S.Q., me informó de que la instalación en donde estaba detenida ya no permitía que los niños jugaran afuera debido a la atención de los medios y las cámaras que allí se encontraban.

9. Desde que R.M. llegó a los Estados Unidos, solo pude hablar con ella como una vez por semana durante unos cinco minutos por vez. R.M. sonaba triste y no

entendía por qué estaba detenida en un centro en Washington mientras su hija se encontraba en Texas. Me dice que extraña a su hija.

10. Después, pude hablar con R.M. más a menudo, unas dos o tres veces por semana. Pero ahora, solo puedo hablar con ella alrededor de dos minutos. Porque, mientras hablamos, un guardia de la instalación le informa a R.M. que debe dejar el teléfono e ir a su habitación. Cuando escucho eso, siento que están maltratando a mi hija. Deposito dinero en la cuenta de mi hija para que pueda llamarme, pero no hemos podido hablar mucho tiempo por ese motivo.

11. R.M. me dijo que no la han tratado bien. Me dijo que algunas veces no recibía comida. También me ha dicho que fue horrible la forma en la que el ICE la separó de su hija y todo lo que siguió.

12. Yo misma he escuchado que los guardias de la instalación le hablan irrespetuosamente. No creo que sea justo.

13. En el tiempo durante el cual R.M. y S.Q. han estado detenidas, solo han podido hablar la una con la otra una vez.

14. Entiendo que S.Q. será liberada para estar conmigo. Ya me he contactado con la trabajadora social y he proporcionado los documentos y los exámenes que me ha requerido para dejar a S.Q. bajo mi cuidado.

15. Estoy lista, dispuesta y puedo cuidar y brindar un hogar para R.M. y para S.Q. en cualquier momento, y me comprometo a hacer lo que pueda para que liberen a R.M. y para proveerle sustento mientras está en los Estados Unidos.

Declaro bajo pena de perjurio conforme a las leyes de los Estados Unidos que lo anterior es verdadero y correcto. Declaración realizada el 2 de julio de 2018 en Laurel, Maryland.

_____
S.T.

# DECLARATION OF S.T.

1. I, S.T., make this declaration based on my own personal knowledge, and if called as a witness, I could and would testify to the following matters:

2. I am R.M.'s mother and S.Q.'s grandmother. I am 58 years old.

3. I am a permanent resident of the United States and have lived in the United States since 1989. I work full-time in a store.

4. In June 2018, my daughter, R.M., called me to inform me that she traveled to the United States from El Salvador with her daughter but that ICE had separated them from one another. I understand that R.M. was in danger in El Salvador and had no choice but to flee with her daughter.

5. By the time R.M called me to inform me they were in the United States, she and her daughter had already been separated. R.M. informed me that she had been in the United States for about one week before she was able to call me. During this call, R.M. sounded very sad and said that the way that ICE separated her from her daughter was very traumatic and that she felt ICE mistreated her and her daughter.

6. Later, S.Q., my granddaughter, gave me a call. S.Q. was crying. I advised her to pray and that everything would hopefully turn out alright. I also spoke to a social worker who was with my granddaughter.

7. Since that time, I have only been able to speak to S.Q. around two times per week. When she first arrived, S.Q. was very sad and cried a lot. I tried to remind her to pray and that everything would hopefully turn out okay. She was not very talkative.

8. During one of my calls with S.Q., she informed me that the facility where she was detained did not allow children to play outside anymore because of the media attention and cameras that would be present.

9. When R.M. first arrived in the United States, I was only able to speak to her around once per week for about five minutes at a time. R.M. sounded sad and did

not understand why she was detained in a facility in Washington while her daughter was detained in Texas. She tells me she misses her daughter.

10. Afterwards, I was able to speak to R.M. more often, about two or three times per week. But now, I am only able to speak to her for around two minutes. This is because while we are talking, a guard in the facility informs R.M. that she needs to get off the phone and go to her room. When I hear this, I feel like they are mistreating my daughter. I deposit money into my daughter's account so that she is able to call me, but we have been unable to speak for very long because of this.

11. R.M. has told me that she has not been treated well. She told me that sometimes she did not receive food. She has also told me that they way ICE separated her from her daughter and the aftermath was horrible.

12. I can also hear for myself that the facility's guards speak to her in a disrespectful manner. I do not think this is just.

13. Throughout the time that R.M. and S.Q. have been detained, R.M. and S.Q. have only been able to speak to each other once.

14. It is my understanding that the S.Q. is going to be released to me. I have already been in contact with the social worker, and have provided documents and examinations that she has requested from me in order to release S.Q. to my care.

15. I am ready, willing, and able to take care of, and provide a home for both R.M. and S.Q. at any time, and am committed to doing what I can to have R.M. released and to support her while she is in the United States.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed on this 7th day of July 2018 in Laurel, Maryland.

_____

S.T.

2

DECLARATION OF S.T.



City of New York, State of New York, County of New York

I, Aurora Landman, hereby certify that the English document "Declaration of S.T._EN" is, to the best of my knowledge and belief, a fair and accurate reflection of the Spanish document "Declaration of S.T._ES"

_____
Aurora Landman

Sworn to before me this
July 9, 2018

_____
Signature, Notary Public

[Notary Seal: WENDY POON, NOTARY, NO. 01PO6356754, QUALIFIED IN QUEENS COUNTY, COMM. EXP. 04-03-2021, STATE OF NEW YORK, PUBLIC]

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 ! T 212.689.5555 I F 212.689.1059 I WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE