# JOINT EXPERT DECLARATION OF KENNETH BERRICK, JOHN SPRINSON, AND KEVIN CAMPBELL

**Preliminary Statement**

1.     I, Kenneth Berrick, have been retained by counsel for Plaintiffs as an expert in connection with the above-captioned litigation. My professional background, experience, and publications are detailed in my curriculum vitae, a true and accurate copy of which is attached as Exhibit A to this declaration.  I founded Seneca Center (now Seneca Family of Agencies) in 1985, and still serve as the organization's Chief Executive Officer. Seneca Family of Agencies ("Seneca") is a multi-state mental health, foster care, and education agency, incorporated in California, that serves over 8,000 vulnerable children and families each year.  I received my Bachelor of Arts degree in Psychology from California State University, Sacramento in 1982.  I have provided mental health services to clients since 1982, and have helped develop groundbreaking mental health legislation and policies in California for children and families experiencing significant mental health crises.  In 2010, I published *Unconditional Care: Relationship-based, behavioral intervention with vulnerable children and families*, with John Sprinson.

2.     I, John Sprinson, have been retained by counsel for Plaintiffs as an expert in connection with the above-captioned litigation.  My professional background, experience, and publications are detailed in my curriculum vitae, a true and accurate copy of which is attached as Exhibit B to this declaration. I have worked with Seneca since 1986, first as a consulting psychologist, and currently as the Clinical Director since 2002.  I have also run my own practice of clinical psychology since 1985, providing child, adolescent, and adult psychotherapy, psychological assessment, and custody evaluation.  I received my Bachelor of Arts in Psychology from Columbia University in 1974, and my PhD in Clinical Psychology from Duke University in 1980.

3.      I, Kevin Campbell, have been retained as counsel for Plaintiffs as an expert in connection with the above-captioned litigation. My professional background, experience, and publications are detailed in my curriculum vitae, a true and accurate copy of which is attached as Exhibit C to this declaration. I am the founder of the Center for Family Finding and Youth Connectedness and developer of the Family Finding model, a set of strategies now utilized throughout the United States and Canada to establish lifelong supports for youth in foster care.  I have helped over 10,000 youth achieve permanency and have worked with over 200 jurisdictions across 40 states Europe, Canada, and Australia.

4.      For purposes of this declaration, "we" collectively references Kenneth Berrick, John Spinson, and Kevin Campbell.

5.      In preparing this declaration, we reviewed the facts provided to us regarding Plaintiffs' experiences, but have not provided them with any clinical or psychological evaluation or therapeutic services. We have relied on our years of experience in this field, as set out in our curriculum vitae, and on the materials listed therein. The materials we have relied upon in preparing this declaration are the same types of materials that experts in our field of study regularly rely upon when forming opinions on the subject.

6.      We are not being compensated for the time devoted to providing expert advice or preparing declarations. The opinions we express, or testimony we provide, do not depend on any compensation.

7.      If our further testimony would be of benefit to the court, we would be available by telephone or in person to participate in the hearing on this matter.

**Impact of Family Separation**

8.      Interest in the harmful effects of separating children from their parents is not new and has been actively pursued by research psychologists and psychiatrists, pediatricians and clinical interventionists from multiple disciplines.

9.     All of this research activity and clinical observation is in substantial agreement and confirms that children react to separation from their caregivers with significant emotional distress.  When the separation is sudden, unpredictable, or in a strange environment with no other familiar adult figures present then the response is likely to be extreme.

10.     Immediate reactions include obvious emotional suffering in the form of inconsolable crying, desperate efforts to pursue or search for the parent and anger. As the separation continues we see behavioral disorganization and regression, increasing signs of resignation, depression and emotional collapse. Children will lose developmental capacities they had gained such as toileting and independent play for younger children, or emotional dysregulation at all ages.  They will seem completely preoccupied with the whereabouts of the missing parent, particularly when children have no or minimal contact with their parent. At this point separated children seem to lose hope for a reunion with parents and may appear lethargic and have greatly reduced interest in what had been joyful, engaged play.  Ultimately, these children will become detached and show reduced pleasure and interest in connecting with others and when reunified with parents, they are likely to seem indifferent and aloof.

11.     The rupture in the critical relationship between a child and the biological parent is often long lasting, and perpetuates even if and when reunification occurs. These reactions have been observed across many nations and cultures and across different settings and in many ways – in children enduring long term medical hospitalizations, in institutional settings for orphans, in research laboratories where children are briefly separated from parents and with children who have been placed in long-term foster care.   Reunification of children and parents does not undo or remedy the profound harm done to them by the forced separation.

12.     By following separated children longitudinally evidence shows that this set of early reactions gives way to other, even more ominous and long-lasting problems: disrupted attention and concentration and other learning difficulties, behavioral problems with impulse control and self-regulation and, perhaps most

importantly, in the capacity to rely on and make use of benign others who could otherwise support the young person's ongoing development. Trauma from separation, regardless of its brevity, can have adverse permanent consequences that follow the child into adulthood.

13.     As the psychological and medical understanding of brain development has expanded in recent decades, the neurological mechanisms and changes in brain architecture that underpin these difficulties are now observable.  These emotional struggles are neither brief nor easily surmounted responses, nor are they a superficial distress that a pleasant environment or well-meaning surrogate can soothe or relieve.

14.     Separations are not experienced simply as a painful absence or as only a loss of a reassuring, beloved figure.  Thinking of separations in terms of evolutionary biology, the loss of access to a protective, strong, wise adult also represents a grave danger for small children.  On some level these separations are experienced as a threat to survival, and this means that in almost all cases there is an activation of the child's stress response system.  Evidence of this activation and its complex, harmful physiological and psychological sequelae is now well established.

15.     Attachment science shows that the emotional and psychological ramifications of child separation from primary caregivers occur even if the separations are relatively brief.  Short term separations can interfere with a child's sense of safety, and multiple critical capacities, including learning, curiosity, social engagement, and emotional regulation. See Roger Kobak, et al, Attachment Disruptions, Reparative Processes and Psychopathology: Theoretical and Clinical Implications (2016) in Jude Cassidy and Phillip R. Shaver, Handbook of Attachment: Theory, Research and Clinical Applications 25-39 (3d ed. 2016); John Bowlby Attachment and Loss: Separation: Anxiety and Anger (2d ed. 1973).

16.     It is also important to note that the circumstances under which separations occur can have a profound impact on the both the degree of acute distress experienced by the child and on the longer-term effects observed later.  When the separation is sudden and frightening, when it is initiated by adults unknown to the child, when the

parent has no opportunity to prepare the child, when it is done forcefully, and when there is no or minimal contact between the child and parent after and during the separation, then the distress will be greater and the effects significantly more damaging to the child.

17.     The setting to which the child is removed and the training and skillfulness of the substitute caretakers can also amplify the harm to the child.  When these new caretakers do not speak the child's native language they are unable to support the child, to explain what is happening and to answer inevitable questions about the whereabouts of parents.  Here again, the potential for harm is increased. The adverse consequences of separation are not limited to the children.  Parents also experience psychological distress and trauma due to separation.  The severity is likely to be particularly acute when their children are forcibly removed from their care, they do not have regular contact with their children, they hear their children in distress when they do speak with them, and/or there is a threat that they will never see their children again.

18.     The setting of the parents' detention can also amplify the trauma they experience.  If they are placed in detention facilities where information is not communicated in their native language and in which they are surrounded by others who are experiencing trauma, then they are likely to suffer more severe and long-term harm.

19.     Similar to their children, parents may display various symptoms of trauma, including anxiety, depression, suicidal ideations, and loss of appetite.

20.     Based on our review of the facts provided regarding Plaintiff children's experiences, we can conclude that the Plaintiffs, and other similarly situated parents and children, have suffered psychological trauma due to the forcible separation from their mothers and this trauma will likely have long term consequences for their emotional and physical well-being.

**Need for Appropriate Therapeutic Services**

21.     Therapeutic interventions must be provided early and in a sustained manner, to both the children and parents, in order to address the immediate symptoms of the trauma of separation, and to reduce the long-term physical and psychological impact.

22.     Research evidence indicates that a range of trauma-focused interventions can be deployed to respond to the needs of children and parents who have experienced family separation.  These interventions hold important promise to address the negative outcomes that otherwise accrue to children who have experienced trauma.  The goal is to strengthen or re-establish the family bond, to improve the parent's capacity to recognize, respond to, and support symptoms of post-traumatic stress in the child, and to reduce symptoms of post-traumatic stress in the child.

23.     There is no single standardized approach to therapy that will effectively address the trauma caused by separation.  Rather, it is critical that qualified professionals conduct individualized assessments of the children and parents to evaluate the extent and type of trauma experienced, and to identify appropriate individual and family interventions.

24.     Much work in recent decades has repeatedly confirmed that it is unhelpful to artificially separate therapeutic work on attachment disruptions from interventions for trauma.  The connection to the attachment figure (generally the parent) is the key protective factor against the effects of trauma.  Work in these two domains must be thoughtfully coordinated.  This insight now regularly informs all evidence based practices for traumatized children and youth

25.     Parental involvement in therapeutic interventions is critical to addressing the ramifications of trauma caused by familial separation. Although the models currently available for parent-child therapy vary in duration and intensity, there is uniformity in some core elements across programs. See J.A. Cohen et al., Treating Trauma and Traumatic Grief in Children and Adolescents (2d ed. 2017); Margaret Blaustein and Kristine Kinniburgh, Treating Traumatic Stress in Children and Adolescents: How to Foster Resilience through Attachment, Self-Regulation, and

<u>Competency</u> (2010); G.N. Saxe et al. <u>Collaborative Treatment of Traumatized Children and Teens: The Trauma Systems Approach</u> (2009). Best practice dictates that therapeutic services should be provided not only individually to the child and parent, but also to the family unit together. Typically, parents are provided with psycho-education about trauma and its effects on mood, thinking, and behavior and they are supported in responding effectively to their children's trauma symptoms.  In addition to working with these issues with the direct support of a clinician, the parent and child may be asked to observe how things play out at home and be given "homework" to practice new skills and ways of relating between sessions.

26.    Evidence-supported treatment models are typically delivered in a child or caregiver's home, in an outpatient clinic, or community agency.  The effectiveness of therapeutic interventions is not independent of the setting in which they are delivered.

27.    Treatment for trauma is, in part, about the restoration of a sense of safety and it is much easier to achieve this goal when the person receiving the service is in an environment of *actual safety.*  When an individual must remain vigilant for threat and is preoccupied with uncertain and even unknown possible outcomes they are less likely to, or are much slower to, develop a trusting alliance and an emotionally resonant connection with a therapist. It is this sort of relationship that is the basis for all effective treatment.   Treatments are most successful when provided in an environment in which both the parents and children feel safe and secure, and parents and children are given the opportunity to practice the tools given to them in an environment that does not reflect the same conditions that caused their trauma.

28.    Treatment providers should be practicing mental health providers who have been trained to the model they are employing. A number of the evidence-informed approaches have also been tested with different socio- and cultural sub-populations with providers who offer culturally and linguistically responsive services. Therapeutic treatments designed to address the trauma associated with parent-child separation should be delivered by culturally and linguistically appropriate providers of services.

29.     Based on our review of the facts provided regarding Plaintiff's experiences, we believe that the Plaintiffs, and similarly situated children and parents, should be provided immediate mental health assessments, followed by appropriate long-term individual and family therapy from culturally and linguistically-appropriate professionals in a safe environment to address the consequences of the trauma caused by their separations.

Pursuant to 28 U.S.C. § 1746, we declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 8, 2018.

By:

_____
    Kenneth Berrick

_____
    John Sprinson, Ph.D.

_____
    Kevin Campbell

JOINT DECLARATION OF KENNETH BERRICK, JOHN SPRINSON, AND KEVIN CAMPBELL

I, Kenneth Berrick, declare as follows:

1.     I make this declaration based on my own personal knowledge, and if called as a witness, I could and would testify to the following matters.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at Oakland, California on July 8, 2018

_____

Kenneth Berrick

I, John Sprinson, declare as follows:

1.     I make this declaration based on my own personal knowledge, and if called as a witness, I could and would testify to the following matters.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at Oakland, California on July 8, 2018

_____

John Sprinson

I, Kevin Campbell, declare as follows:

1.  I make this declaration based on my own personal knowledge, and if called as a witness, I could and would testify to the following matters.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at Lakewood, WA, 2018

_____

Kevin Campbell

JOINT DECLARATION OF KENNETH BERRICK, JOHN SPRINSON, AND KEVIN CAMPBELL

**Exhibit A**

# KEN BERRICK

## SENECA FAMILY OF AGENCIES
### FOUNDER, PRESIDENT & CEO

(510) 507-4488 | ken@senecacenter.org | www.senecafoa.org

## ACCOMPLISHMENTS & AGENCY HIGHLIGHTS

- Led the team that founded Seneca Center (now Seneca Family of Agencies) in 1985; developed the agency from 12 staff serving 10 children to its current status: a multi-state agency employing over a thousand employees and serving over eight thousand children and their families annually in community-based, school-based, residentially-based, and crisis intervention programs. (1985)
- The Unconditional Care Model named as a Youth Thrive Exemplary Initiative by the Center for the Study of Social Policy. (2014)
- Received Investing in Innovation (i3) Development grant from the U.S. Department of Education to expand Unconditional Education programs – a whole-school, multi-tiered intervention program implemented in partnership with public and public charter schools in California. (2013)
- Awarded a three-year grant by the U.S. Department of Health and Human Services to implement the Lifelong Connections Initiative, which provides integrated Family Finding/Family Group Decision Making services for San Francisco County children and families. (2012)
- Merged with Kinship Center and formed Seneca Family of Agencies which expanded the organization's statewide presence to include Monterey, Orange, Riverside, San Benito, San Luis Obispo, Santa Clara and Los Angeles Counties as well as expanded the agency's continuum of care to include adoption and kinship care support services. (2011)
- Co-Authored Unconditional Care, documenting Seneca's treatment model for working with youth with intensive needs through relational, behavioral, and ecological streams of assessment and intervention.
- Partnered with national experts in Family Finding and permanency best-practices to create the internationally-recognized, National Institute for Permanent Family Connectedness. (2010)
- Piloted Residential Based Services, now the model for California's Continuum of Care Reform. (2010)
- Achieved Joint Commission accreditation. (2010)
- Opened Willow Rock Center, California's first unique children's Crisis Stabilization Unit providing 23-hour crisis response services for youth experiencing acute mental health crisis in Alameda County. (2007)
- Provided the first wraparound services in California, Project DESTINY, through SB 163 in Alameda County. (1997)
- Sponsored Intensive Treatment Foster Care legislation (California SB 2234), and implemented the pilot project for children and youth at risk of high-level group home placement. (1991)

## POLICY DEVELOPMENT

- Involved in many aspects of policy development with the California Department of Health Care Services, the California Department of Social Services, the California Department of Education, the Region 9 Office of the U. S. Department of Health and Human Services, the California Council of Behavioral Health Agencies, the Mental Health Services Oversight & Accountability Commission, and local county governments across the state.
- Represents service providers in the California Child Welfare Council, which is responsible for improving the collaboration and processes of the multiple agencies and courts which serve children and youth in the child welfare and foster care systems (2007-present)
- Assisted in the development of AB 403 in 2015, resulting in the implementation of Continuum of Care Reform.
- Supported the passing of AB 1453 in 2007, resulting in the implementation of Residentially Based Services (RBS) in 2010
- Participated in the development of the California Department of Mental Health Advisory Committee to establish regulations for Community Treatment Facilities to serve as alternative placements to psychiatric hospitalization. (1998)
- Participated on a statewide panel at the Rose Jenkins Conference addressing education reform and mental health systems of care in a managed care environment. (1998)
- Participated in the Wraparound Accreditation Committee in conjunction with the California Department of Social Services to develop and guide statewide legislation and standards for wraparound services under SB 163. (1998)
- Testified before the Little Hoover Commission regarding the current status and future directions of residential treatment for California children with emotional and behavioral challenges. (1998)
- Assisted in the preparation of California Senate Bill 969, which allows for the expansion of the intensive treatment foster care pilot throughout the state (1995).
- Developed and sponsored Senate Bill 2234 that funded pilot projects to provide Intensive Treatment Foster Care, a model for the reform of residential care for California children with serious emotional and behavioral issues (1990).

## PUBLICATIONS

Sprinson, John & Berrick, Kenneth. (2010). Unconditional Care: Relationship-Based, Behavioral Intervention with Vulnerable Children and Families. New York, NY: Oxford University Press.

Berrick, Ken., Detterman, Robin., Rosenthal, Lihi., & Ventura, Jenny. (Forthcoming). Unconditional Education. New York, NY: Oxford University Press.

## PROFESSIONAL EXPERIENCE

**TRUSTEE, AREA 3 |** ALAMEDA COUNTY OFFICE OF EDUCATION | 2008 - PRESENT

**PRESIDENT AND CHIEF EXECUTIVE OFFICER |** SENECA FAMILY OF AGENCIES | 1985 - PRESENT

**FAMILY COUNSELOR & STAFF TRAINER**| GROWING MIND CENTER  | 1984 - 1985

**PAROLE ASSISTANT |** CALIFORNIA YOUTH AUTHORITY |  1983 - 1984

## EDUCATION

**CALIFORNIA STATE UNIVERSITY, SACRAMENTO | 1982**

Bachelor of Arts in Psychology

## AWARDS

Leadership Award, The James Irvine Foundation, 2017.

Mental Health Achievement Award, Mental Health Association of Alameda County Certificate of Special Congressional Recognition, 2015.

Advocate of the Year, California Mental Health Advocates for Children and Youth, 2014.

City Funds Organization to Watch Award, New Schools Venture Fund, 2014.

Employee's Choice Best Medium Sized Company to Work, Glassdoor, 2014.

Exemplary Youth Program (Unconditional Care-Seneca Family of Agencies), Center for the Study of Social Policy, 2014.

## AFFILIATIONS

- Human Exploitation and Trafficking Institute (HEAT). Commissioner, Blue Ribbon Panel. 2015-present.
- Alliance for Strong Families and Communities. Member, CEO Advisory Council. 2015-present.
- Pahara-Aspen Education Fellowship. Fellow, Spring 2016 Cohort.
- East Bay Innovation Academy (EBIA) Charter School. Member, Board of Directors, 2014-present.
- Support, Opportunities, and Rapport (SOAR) for Youth. Member, Board of Directors, 2014-present.
- California County Boards of Education. Legislative Committee Chair, 2010-2011; Executive Committee, President-Elect, 2010-2011; President, 2011-2012.
- California School Boards Association. Board of Directors, 2011-2013.
- California Alliance of Child and Family Services. Board of Directors President, 2008; Education Committee Member, 1998-present.
- California Association of Children's Homes. President, 1999, 1989-1990; Chair, Government Affairs Committee, 1999. Chair, Legislative Affairs Committee, 1990-1991.
- Chabot Space and Science Education Center. Member, JPA Board of Directors, 2009-2011.
- California Child Welfare Council. Governor's Appointee, 2007-present.
- California Council of Community Mental Health Agencies. Member-at-Large, 2005-present; Board of Directors, 2009-2017.
- National Association of Private Special Education Centers, Member, 2009-2013.
- Alameda Council of Community Mental Health Agencies. Member, Children's Committee, 2007; Chair, Children's Committee, 2006; Member, 1994-present.
- Alameda County Mental Health Services Act Planning Commission. Member, Steering Committee, 2006; Member, Stakeholders Group, 2006-present.
- The Child Welfare Services Stakeholders Group, Flexible Funding Subcommittee 2001-2002.
- Alameda County Interagency Children's Policy Council. Member, 1994-1998.

**Exhibit B**

<u>Curriculum Vitae</u>

**John S. Sprinson, Ph.D.**
johnsprinson@comcast.net
john_sprinson@senecacenter.org
(510) 508-5034


<u>EDUCATION</u>:

Duke University, Durham, North Carolina.
Ph.D., 1980, Clinical Psychology

Columbia University, New York, New York.
B.A., 1974, Psychology.

<u>FELLOWSHIPS</u>:

| | |
|---|---|
| 1980-81 | Postdoctoral Fellow in Clinical Psychology<br>Langley Porter Psychiatric Institute<br>University of California at San Francisco |
| 1978-79 | National Institute of Mental Health<br>Pre-doctoral Fellow in Clinical Psychology<br>Mt. Zion Hospital and Medical Center<br>1600 Divisadero Street, San Francisco, CA |
| 1974-77 | U.S. Public Health Services, Fellow in Clinical Psychology<br>Duke University, Department of Clinical Psychology<br>Durham, North Carolina |

ADVANCED TRAINING:

| | |
|---|---|
| Summer 2013 | Adult Attachment Interview Scoring and Interpretation Institute.<br>Two week intensive training for senior clinicians and researchers in the use and application of the Adult Attachment Interview with Mary Main and Erik Hesse. University of California at Berkeley. |


<u>EMPLOYMENT</u>:

| | |
|---|---|
| 2002-Present | **Clinical Director**<br>Seneca Center for Children<br>Development of training materials for the clinical treatment of programs, oversight of and consultation to clinical supervisors, oversight and leadership of agency training functions. |

Training and consultation to various external children's organizations such Court Appointed Special Advocates (CASA) and Legal Services for Children on child development and trauma-informed practice.

1986-2002   **Consulting Psychologist**
Seneca Center for Children
Clinical supervision and training, program supervision and consultation.

1985-Present   **Private Practice of Clinical Psychology**
Child, adolescent and adult psychotherapy, psychological assessment, professional consultation, custody evaluation.

1983-87   **Adjunct Clinical Instructor**
Department of Clinical Psychology
University of California at Berkeley
Supervision of graduate interns in child, family and couples therapy.

1981-86   **Assistant Director**
Lincoln Child Center, Day Treatment Program
Supervision of milieu treatment program for children and their families, psychological assessment, clinical supervision, program planning and grant writing.

1977-78   **Consulting Psychologist**
Lee-Harnett Community Mental Health Center, Sanford, NC.
Intellectual and psychological assessment of children, consultation.


TEACHING EXPERIENCE:

1975-76   Duke University, Department of Psychology
Teaching Assistant, Introductory Statistics

1976   Duke University, Department of Psychology
Instructor: Psychology Tutorial – Psychology of Sex Roles


RESEARCH EXPERIENCE:

1.   Unpublished Major Area Paper:
"A qualitative Approach to Time Perspective", 1976.
Unpublished Manuscript:
"The Development of a Realistic Image of the Future During Adolescence", 1979
Unpublished Dissertation:

"Realism of Adolescent Time Perspective", 1980.

2.    Research Fellow, Department of Psychology, Duke University 1979-80. Community mental health project.

LICENSURE: Clinical Psychology, California #PSY 8451, Granted 1984.

REFERENCES: Available upon request.

PROFESSIONAL AFFILIATIONS: American Psychological Association

PUBLICATIONS: Sprinson, J.S. and Berrick, K. (2010) *Unconditional Care: Relationship-based, behavioral intervention with vulnerable children and families.* New York, 2010.

CONFERENCE PRESENTATIONS:

California Mental Health Advocates for Children and Youth, Annual Conference, May 6 2010. Pacific Grove, CA. *Unconditional Care: An Integrated Approach to Relationship-based, Behavioral Intervention with Vulnerable Children and Families.*

Foster Family-based Treatment Association Annual Conference, Baltimore Maryland. August 3, 2010.  *Unconditional Care: Relationship-based, Behavioral Intervention with Vulnerable Children and Families.*

University of California at Berkeley School of Social Welfare, Colloquium. November 8, 2010. *Unconditional Care: Integrating Diverse Approaches to Supporting Vulnerable Children and Families.*

American Association of Children's Residential Centers Annual Conference, Seattle, Washington. April 6, 2011. *Unconditional Care: Relationship-based, Behavioral Intervention with Vulnerable Children and Families.*

Association for Treatment and Training in the Attachment of Children National Conference. Baltimore, Maryland,  September 2012.  *Unconditional Care: Treatment as Revision of the Internal Working Model.*

TRAINING PRESENTATIONS
(Regular training opportunities for clinicians, direct service staff, foster parents, CASA volunteers, and child welfare workers.

Attachment and Relational Treatment: a review of the science and clinical lore of attachment research and observation, application of this body of work to the treatment of children in the child welfare, special education and juvenile justice systems.

<u>Positive Behavioral Intervention</u>: the use of behavioral assessment and intervention in supporting children and youth in both milieu settings and in their families and communities.

<u>Trauma and Its Effects on Child Development</u>: current science on exposure to traumatic stress, the convergence of trauma studies and attachment science, current thinking on support and treatment of traumatized children and adolescents.

<u>Curiosity and Relational Assessment</u>: a critique of current, problematic approaches to assessment and presentation of alternative schemas or assessment and evaluation based on resiliency theory, attachment science and trauma studies.

<u>Ecological Issues In Work With System-Involved Children and Families</u>: a presentation of the historic and current contextual challenges encountered by families and children living in poverty and facing racism and other forms of oppression. The entwined, synergistic effects of these challenges are discussed and engaging these issues in our interventions is discussed.

**Exhibit C**

# Kevin A. Campbell

### *Education*

| | |
|---|---|
| 1983–85 | Lower Columbia College<br>Fine Arts Studies<br>Fine Arts Scholarship Theatrical Set Design |
| 1990-92 | University of Washington<br>School of Social Work<br>Social Services Administration |

### *Employment*

December 06- Present | Founder and Director
Center for Family Finding and Youth Connectedness
Seneca Center for Children and Families

*Consultation and Training:*

Provided technical assistance regarding Family Finding model to over 40 states and many jurisdictions throughout the country and British Columbia.

Trainings: Family Finding, Emancipation, Permanency

December 02-Present | Campbell Houston Group, Inc
President, CEO
Child Welfare Permanency Planning Consultant
40 Child Welfare Jurisdictions in the United States

October 04-July 06 | Technical Assistance Provider
National Resource Center for Family Centered Practice and Permanency planning, Hunter College School of Social Work, New York, New York
*A Program of the Children's Bureau ACF/DHHS*

April 05- March 06 | Vice President of Strategic Planning and Service Innovation
EMQ Children and Family Services

July 97-April 05 | Director of Intensive Resources, Family Preservation System
Catholic Community Services of Western Washington

*Areas of Responsibility for Catholic Community Services:*

F.A.S.T. (Family Access to Stabilization and Transition) Crisis Intervention teams serving five counties in Western Washington.  Jointly funded by Division of Children and Family Services and the Pierce County Regional Support Network. Primary mission to divert children and adolescents from acute psychiatric hospital admissions and prevent or end placement in out-home-care settings (E.g. foster care, group homes and residential facilities). The service responds to 450 to 500 crisis episodes annually. (4.5 million dollar annual budget)

Foster Care Licensing, Recruitment, Retention and Policy 90 active licensed beds, 300 placements per year.

Family Preservation System Administration: Policy, Development, Personnel (300 employees), Personnel Recruitment and Legislative Advocacy. (12 million dollar annual budget)

One of 70 employees in overall leadership position within an agency of 3000 employees and 12,000 volunteers.  (Annual budget of 80 Million dollars).

November 87- June 97   Family Services Administrator
Service Alternatives for Washington

Family Services Administrator for the State of Washington, 13 Group Home facilities, 5 regional administrative offices and 150 licensed foster homes in the State of Washington. The agency provided services to adolescents and children as a result of disruption from home or residential facilities. Four of the group homes specialized in the care of children and adolescents with severe autism or pervasive developmental disabilities.

The agency grew from services to six children/youth in one county in 1987 to 220 in 35 counties in 1997 while I was Family Services Administrator.

300 employees (annual budget of 14 million dollars)

**Articles/Publications and Presentations**

Central Washington University
WAFTS Washington State Foster Care Conference
Integrated In-Home Services
Ellensburg, Washington
October 2001

Office of the Director of Health and Human Services
Sacramento, County
Family Access to Stabilization and Transition
Sacramento, California
November 2001

Focal Point: Portland State University,
"Who Am I, Why Family Really Matters"
Barbara Boisvert; Gina Brimner; Kevin Campbell;
Don Koenig; John Rose, MD; Mary Stone Smith
Winter 2001/ Spring 2002

River Oak Children and Family Services
Family Search and Connection
Sacramento, CA
November 2002

Families for Kids Partnership
Washington Permanency Report 2002

Pierce County Mental Health, Managers Report
"FAST Program Provides Connections for Youth and
Families: Fall 2002

Catholic Charities USA
"Who Am I, Why Family Really Matters"
Barbara Boisvert; Gina Brimner; Kevin Campbell;
Don Koenig; John Rose, MD; Mary Stone Smith
Winter 2002

Stuart Foundation Permanency Convening I
FAST, The Search for Relatives
San Francisco, California
April 2002

Washington Behavioral Healthcare Conference

3

Family Access to Stabilization and Transition
Wenatchee, Washington
June 2002

**Articles/Publications and Presentations Continued**

Fourth Annual Permanency Conference
Families Forever: Supporting Lifelong Connections
Creative Strategies for Family Search
Using a Wraparound Process, Principles and Approaches to
Create Permanency for Adolescents
Minneapolis, Minnesota
October 2002

Families for Kids Partnership
Permanency Innovators
Family Access to Stabilization and Transition
Seattle, Washington

Stuart Foundation Permanency Convening II
FAST and EMQ Children and Family Services
Replication Efforts San Francisco, California
April 2003

Department of Health and Human Services
Permanency Convening VI
Early Identification of Relatives to Expedite
Permanency Planning
Washington, DC
May 2003

National Resource Center for Foster Care and  Permanency
Permanency Today,
"Lighting the Fire of Urgency: Families Lost and Found in
America's Child Welfare System"
Kevin Campbell, Sherry Castro, Nicole Houston, Don
Koenig, Terry Roberts, John Rose, MD and Mary Stone-
Smith
Summer 2003

University of Wisconsin
Western Wisconsin Partnership for Children and Families
Rice Lake and Lacrosse, Wisconsin
October 2003

The Loneliest People (Family Finding)
CBS 60 Minutes with Leslie Stahl
Produced by Denise Schrier Cetta
January 2007

*Legislative Committee/Sub-Committee Assignments*

Kinship Oversight Committee, Reports to the Washington
State Legislature December 2004

Family Search Sub-Committee
Define diligent relative search standards for state social
workers

Recommend definition of Relative of Specified Degree to
State Legislature December 2004