Amy P. Lally (SBN 198555)
alally@sidley.com
Ellyce R. Cooper (SBN 204453)
ecooper@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: +1 310 595-9500
Facsimile: +1 310 595-9501

Mark Rosenbaum (SBN 59940)
mrosenbaum@publiccounsel.org
Judy London (SBN 149431)
jlondon@publiccounsel.org
Talia Inlender (SBN 253796)
tinlender@publiccounsel.org
Alisa Hartz (SBN 285141)
ahartz@publiccounsel.org
Lucero Chavez (SBN 273531)
lchavez@publiccounsel.org
Elizabeth Hadaway (SBN 308800)
ehadaway@publiccounsel.org
Malhar Shah (SBN 318588)
mshah@publiccounsel.org
Deena Tumeh (SBN 318573)
dtumeh@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Avenue
Los Angeles, CA 90005
Telephone: +1 213 385-2977
Facsimile: +1 213 385-9089

*Attorneys for Plaintiffs*
*Additional counsel on next page*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. J.P., Ms. J.O., Ms. R.M., on behalf of themselves and all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JEFFERSON B. SESSIONS III, ATTORNEY GENERAL OF THE | Case No. 2:18-cv-06081 <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** |

1  UNITED STATES; KIRSTJEN
2  NIELSEN, SECRETARY OF
   HOMELAND SECURITY; U.S.
3  DEPARTMENT OF HOMELAND
   SECURITY, AND ITS SUBORDINATE
4  ENTITIES; U.S. IMMIGRATION AND
   CUSTOMS ENFORCEMENT; U.S.
5  CUSTOMS AND BORDER
   PROTECTION; ALEX M. AZAR II,
6  SECRETARY OF HEALTH AND
   HUMAN SERVICES; U.S.
7  DEPARTMENT OF HEALTH AND
   HUMAN SERVICES; SCOTT LLOYD,
8  DIRECTOR OF THE OFFICE OF
   REFUGEE RESETTLEMENT; OFFICE
9  OF REFUGEE RESETTLEMENT;
   DAVID MARIN, LOS ANGELES FIELD
10 OFFICE DIRECTOR, U.S.
   IMMIGRATION AND CUSTOMS
11 ENFORCEMENT; LISA VON
   NORDHEIM, WARDEN, JAMES A.
12 MUSICK FACILITY; MARC J. MOORE,
   SEATTLE FIELD OFFICE DIRECTOR,
13 U.S. IMMIGRATION AND CUSTOMS
   ENFORCEMENT; LOWELL CLARK,
14 WARDEN, TACOMA NORTHWEST
   DETENTION CENTER

15         Defendants.

Date:       October 29, 2018
Time:       8:30 a.m.
Judge:      Hon. John A. Kronstadt
Courtroom:  10B

[Filed concurrently with Supporting
Declarations of Ms. J.P., Ms. J.O., Ms.
R.M., Lucero Chavez, Alejandra Acuña,
Dylan Gee, Alfonso Mercado, and
Bridget S. Johnsen]

16

17 Carter G. Phillips*
18 cphillips@sidley.com
   Jennifer J. Clark*
19 jennifer.clark@sidley.com
20 SIDLEY AUSTIN LLP
   1501 K Street, N.W.
21 Washington, D.C. 20005
   Telephone: +1 202 736-8000
22 Facsimile: +1 202 736-8711

23

24 Michael Andolina*
   mandolina@sidley.com
25 Timothy Payne*
   tpayne@sidley.com
26 Kevin Fee*
27 kfee@sidley.com
28 SIDLEY AUSTIN LLP

Mark E. Haddad (SBN 205945)
markhadd@usc.edu
Part-time Lecturer in Law
USC Gould School of Law**
University of Southern California
699 Exposition Blvd.
Los Angeles, CA 90089
Telephone: +1 213 675-5957


Luis Cortes Romero (SBN 310852)
lcortes@ia-lc.com
Alma L. David (SBN 257676)
adavid@ia-lc.com
IMMIGRANT ADVOCACY &
LITIGATION CENTER, PLLC
19309 68th Avenue South, Suite R-102

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

One South Dearborn
Chicago, IL 60603
Telephone: +1 312 853-7000
Facsimile: +1 312 853-7036

Bridget S. Johnsen (SBN 210778)
bjohnsen@sidley.com
Sean A. Commons (SBN 217603)
scommons@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896-6000
Facsimile: +1 213 896-6600

Kent, WA 98032
Telephone: +1 253 872-4730
Facsimile: +1 253 237-1591

*Admitted pro hac vice*

** *Institution listed for identification purposes only*

## NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on October 29, 2018 at 8:30 a.m., or as soon thereafter this matter may be heard, before the Honorable John A. Kronstadt, in Courtroom 10B, of the United States District Court for the Central District of California, located at 350 W. First Street, Los Angeles, CA 90012, Plaintiffs Ms. J.P., Ms. J.O., and Ms. R.M. ("Plaintiffs") will and hereby move, pursuant to Federal Rule of Civil Procedure 23, for an order certifying the following proposed Class, appointing each of them as class representatives, and appointing their undersigned counsel as class counsel:

> All adult parents nationwide who (1) were, are, or will be detained in immigration custody by the Department of Homeland Security ("DHS"), and (2) have a minor child who has been, is, or will be separated from them by DHS and detained in DHS or Office of Refugee Resettlement ("ORR") custody or foster care, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child.

This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities; the supporting Declarations of Ms. J.P., Ms. J.O., Ms. R.M., Lucero Chavez, Alejandra Acuña, Dylan Gee, Alfonso Mercado, and Bridget S. Johnsen; the pleadings, declarations, and filings in this action; any additional matter of which the Court may take judicial notice; and such further evidence or argument as may be presented before or at the hearing on this Motion.

This motion is made following the conference with counsel for the defendants pursuant to L.R. 7-3, which took place on July 25, 2018. Plaintiffs first requested a conference in a letter dated July 18, 2018, which was served on July 18 and 20, 2018, each time by personal delivery and mail on the United States Government defendants -- Jeffrey B. Sessions, III, Attorney General of the United States; Kirstjen Nielsen, Secretary of Homeland Security, and its subordinate entities; U.S. Immigration and Customs Enforcement; U.S. Customs and Border Protection; Alex M. Azar, II,

1  Secretary of Health and Human Services; Scott Lloyd, Director of the Office of

2  Refugee Resettlement; Office of Refugee Resettlement; David Marin, Los Angeles

3  Field Office Director, U.S. Immigration and Customs Enforcement; Marc J. Moore,

4  Seattle Field Office Director, U.S. Immigration and Customs Enforcement

5  (collectively, the "US Defendants"), and was served by personal delivery and mail by

6  July 20 on Defendants Lisa Von Nordheim, Warden at the James A. Musick Facility

7  in Irvine, California, and Lowell Clark, Warden at the Tacoma Northwest Detention

8  Center (collectively, the "Wardens").  Plaintiffs additionally met and conferred

9  telephonically with counsel for the Tacoma Northwest Detention Center on July 27,

10  2018.  Despite Plaintiffs' numerous attempts to contact defendant Lisa Von

11  Nordheim, Warden at the James A. Musick Facility in Irvine, California,

12  representatives of defendant Lisa Von Nordheim have not contacted Plaintiffs.  The

13  concurrently filed Declaration of Bridget S. Johnsen details Plaintiffs' efforts to meet

14  and confer with defendants regarding this Motion pursuant to L.R. 7-3.

15

16   Date: July 27, 2018                          Respectfully submitted,

17

18                                               */s/ Amy P. Lally*
                                                 Amy P. Lally
19                                               Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

2

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ........................................................................1

II.    BACKGROUND ..........................................................................3

    A.    The Government's Implementation of its Unconstitutional Family Separation Policy ................................................................3

    B.    The Plaintiffs and the Government's Separation of Plaintiffs and their Minor Children .......................................................................5

        1.    Plaintiff Ms. J.P. ("Ms. P") ...........................................5

        2.    Named Plaintiff: Ms. J.O. ("Ms. O") ............................6

        3.    Named Plaintiff: Ms. R. M. ("Ms. M") .........................7

    C.    The Proposed Class ...............................................................8

    D.    The Government's Family Separation Policy is Found Likely Unconstitutional and Enjoined in *Ms. L. v. U.S. Immigration & Customs Enforcement*..................................................................9

    E.    The Plaintiffs' PI Motion Seeks Relief for the Trauma the Government's Separation Policy Inflicted on Plaintiffs and the Proposed Class Members. ....................................................10

III.   ARGUMENT...............................................................................11

    A.    The Proposed Class Satisfies Rule 23(a)'s Requirements ...................12

        1.    The Proposed Class Satisfies the Numerosity Requirement ........12

        2.    The Class Presents Common Questions of Law and Fact............13

        3.    Typicality:  Plaintiffs' Claims Are Typical of Class Members' Claims ..............................................................................16

        4.    Adequacy: Plaintiffs Will Adequately Protect the Interests of the Proposed Class, and Plaintiffs' Counsel Are More Than Qualified to Litigate this Action ....................................17

        5.    The Class Is Sufficiently Ascertainable.........................18

    B.    This Action Satisfies the Requirements of Rule 23(b)(2)........................19

IV.    CONCLUSION ...........................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ali v. Ashcroft*,
213 F.R.D. 390 (W.D. Wash. 2003), *aff'd*, 346 F.3d 873 (9th Cir. 2003), *vacated on other grounds*, 421 F.3d 795 (9th Cir. 2005) ............................ 13

*Ark. Educ. Ass'n v. Bd. of Ed. of Portland, Ark. Sch. Dist.*,
446 F.2d 763 (8th Cir. 1971) .................................................................. 12

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001), *abrogated on other grounds, Johnson v. California*, 543 U.S. 499 (2005)........................................................... 14

*Arnott v. U.S. Citizenship & Immigration Servs.*,
290 F.R.D. 579 (C.D. Cal. 2012)................................................ 11, 12, 15

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ............................................................... 18

*Carrillo v. Schneider Logistics, Inc.*,
No. 11-cv-8557, 2012 WL 556309 (C.D. Cal. Jan. 31, 2012) ................ 3

*Cervantez v. Celestica Corp.*,
253 F.R.D. 562 (C.D. Cal. 2008)........................................................... 12

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ................................................................. 15

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ............................................................... 15

*Franco-Gonzales v. Napolitano*,
No. 10-cv-02211, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011)........ 12

*Greater Los Angeles Agency on Deafness, Inc. v. Reel Servs. Mgmt. LLC*,
No. 13-cv-7172, 2014 WL 12561074 (C.D. Cal. May 6, 2014) ............ 18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................... 16

*Hawker v. Consovoy*,
198 F.R.D. 619 (D.N.J. 2001) ............................................................... 13

*Hum v. Dericks*,
162 F.R.D. 628 (D. Haw. 1995) ............................................................ 12

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985) ............................................................... 16

*Lamumba Corp. v. City of Oakland*,
No. 05-cv-2712, 2007 WL 3245282 (N.D. Cal. Nov. 2, 2007) ............. 18

ii

*Lynch v. Rank*,
   604 F. Supp. 30 (N.D. Cal. 1984), *aff'd* 747 F.2d 528 (9th Cir. 1984),
   *amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985)......................................17

*Lyon v. ICE*,
   308 F.R.D. 203 (N.D. Cal. 2015) ...................................................................19

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ..........................................................................17

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) .........................................................................13

*Mendez Rojas, et al. v. Johnson*,
   No. 16-cv-1024, 2017 WL 1397749 (W.D. Wash. Jan. 10, 2017).........................11

*Moreno v. Napolitano*,
   No. 11-cv- 5452, 2014 WL 4911938 (N.D. Ill. Sept. 30, 2014) ...........................18

*Ms. L. v. U.S. Immigration & Customs Enf't*,
   Case No. 3:18-cv-00428-DMS-MDD, 2018 WL 3129486 (S.D. Cal.
   June 26, 2018)..........................................................................9, 10, 11

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998).....................................................................18

*Orantes-Hernandez v. Smith*,
   541 F. Supp. 351 (C.D. Cal. 1982) .................................................................15

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) .................................................................13, 16, 20

*Perez-Funez v. Dist. Dir., I.N.S.*,
   611 F. Supp. 990 (C.D. Cal. 1984) .................................................................12

*Perez-Olano v. Gonzalez*,
   248 F.R.D. 248 (C.D. Cal. 2008).....................................................................14

*Preap v. Johnson*,
   303 F.R.D. 566 (N.D. Cal. 2014), *aff'd*, 831 F.3d 1193 (9th Cir. 2016) ...............13

*Santillan v. Ashcroft*,
   No. 04-cv-2686, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004).......................11, 14

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)........................................................................................10

*Smith v. Heckler*,
   595 F. Supp. 1173 (E.D. Cal. 1984) ...............................................................13

*Sweet v. Pfizer*,
   232 F.R.D. 360 (C.D. Cal. 2005)......................................................................14

*Wagafe v. Trump*,
   No. 17-cv-0094, 2017 WL 2671254 (W.D. Wash. June 21, 2017)........................11

iii

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).................................................................15

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ...........................................*passim*

*Weinberger v. Thornton*,
   114 F.R.D. 599 (S.D. Cal. 1986) ...........................................16

**Constitutional Provisions**

Fourth Amendment ..........................................................................16

Fifth Amendment ...................................................................2, 16, 19

## I.     **INTRODUCTION**

In the last several months, the government, and Defendants working on its behalf, deliberately, needlessly, and unconstitutionally separated thousands of children from their parents, refused to allow parents and children to communicate, failed to provide information about the well-being of the separated family members, and kept separated family members in intolerable suspense by refusing to explain when or even if family would ever be reunified.

The government's misconduct inflicted devastating psychological trauma on both parents and children, which trauma is multiplied the longer the families remain separated and/or untreated.  Its effects do not evaporate once families are united; instead, there is a risk of long-lasting damage to the physical and mental health of parents and children alike, including anxiety, depression, and post-traumatic stress disorder ("PTSD").  Plaintiffs and the group of parents whom they seek to represent in this action need immediate mental health screenings, and if appropriate, family-centered mental health treatment designed to alleviate such trauma and to reduce the risk of long-term consequences to both parent and child.  In their Motion for Preliminary Injunction, filed July 18, 2018 (Dkt. No. 45) ("PI Motion"), Plaintiffs seek an order requiring the government to live up to its constitutional obligations by screening Plaintiffs and the proposed class members to identify those who require treatment and providing effective treatment in an appropriate setting to address the harm inflicted by the unconstitutional separation of families.

Together with this injunctive relief, Plaintiffs seek to certify the following nationwide class under Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All adult parents nationwide who (1) were, are, or will be detained in immigration custody by the Department of Homeland Security ("DHS"), and (2) have a minor child who has been, is, or will be separated from them by DHS and detained in DHS or Office of Refugee Resettlement ("ORR") custody or foster care, absent a demonstration in a

hearing that the parent is unfit or presents a danger to the child.

The proposed class satisfies the requirements of numerosity, commonality, typicality, and adequacy in Rule 23(a) and is ascertainable:

**Numerosity**.  The proposed class includes over one thousand individuals whose minor children were separated from them, and many members of the proposed class have not been reunited with their minor children.

**Commonality**.  The class raises numerous common questions of fact and law. Each of the class members has been subject to the government's family separation policy, and had their minor children forcibly taken from their care, triggering the trauma and other harms alleged in the Complaint and described in the PI Motion. In addition, the question of whether and to what extent the government has developed an appropriate policy for mitigating the harms inflicted by the family separation policy is common to all proposed class members.  Multiple questions of law also are common to the proposed class, namely whether Defendants' family separation practice violates the substantive due process and equal protection rights of the proposed class members and the appropriate relief to address the harm.

**Typicality**.  Plaintiffs' due process and equal protection claims are typical of the class of individuals whom they seek to represent—that is, other parents who were forcibly separated from their children without a finding of unfitness or that they present a danger to their children, and who have not been provided with appropriate mental-health screening or offered appropriate trauma-informed intervention. Plaintiffs assert the same rights under the Fifth Amendment as the members of the proposed class.

**Adequacy**.  The proposed class representatives satisfy the adequacy requirement as the Plaintiffs assert the same claims and seek the same relief— appropriate mental-health screen and any appropriate trauma-informed intervention under appropriate conditions—and will defend the rights of all the proposed class

2

members fairly and adequately.  Additionally, the proposed class counsel is a team of attorneys from Public Counsel and Sidley Austin LLP with significant experience litigating class actions and other complex cases in federal court, including civil rights cases on behalf of noncitizens.

**Ascertainable**.  The proposed class is ascertainable using Defendants' records. Plaintiffs' proposed class likewise satisfies Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Defendants have forcibly separated migrant parents from their children under a common policy and have failed to provide adequate mental health evaluation and care to the families to remedy the harm inflicted on the proposed class members and their minor children.  As a result, the declaratory and injunctive relief sought by the plaintiffs will be appropriate with respect to the class as a whole.

Accordingly, this Court should grant class certification under Rule 23(b)(2) for purposes of entering Plaintiffs' requested classwide preliminary and permanent injunctions.[1] *See Carrillo v. Schneider Logistics, Inc.*, No. 11-cv-8557, 2012 WL 556309, at *9 (C.D. Cal. Jan. 31, 2012) ("courts routinely grant provisional class certification for purposes of entering [preliminary] injunctive relief" under Rule 23(b)(2) where the plaintiff establishes that the four prerequisites in Rule 23(a) are also met) (citing *Baharona-Gomez v. Reno*, 167 F.3d 1228, 1233 (9th Cir. 1999)).

## II.   BACKGROUND

### A.   The Government's Implementation of its Unconstitutional Family Separation Policy

On May 7, 2018, Defendant Attorney General Jeff Sessions announced a "zero-tolerance" policy of forced family separation to deter migrants from crossing the

---

[1] Plaintiffs also request that they be appointed Class Representatives, and that undersigned counsel be appointed Class Counsel.

1   southern border, announcing "If you cross this border unlawfully, then we will

2   prosecute you.  It's that simple. . . .  If you are smuggling a child, then we will

3   prosecute you and that child will be separated from you. . . ."[2]  But the policy was not

4   limited to "smugglers."  Rather, ordinary immigrant families—many of whom are

5   seeking asylum—bore its brunt.  In the first month of the policy, nearly 3,000 children

6   were separated from their parents while crossing the border.[3]  Some children were as

7   young as 18 months old, and more than 100 were younger than four years old.[4]

8        The government mischaracterized family separation as necessary to enforce the

9   law.  But DHS expressly contemplated using family separation to deter migration

10  from Central America into the United States at least a year before the "zero tolerance"

11  policy was adopted,[5] and administration officials have confirmed the goal of deterring

12  Central American immigrants.[6]

---

[2] *Attorney General Sessions Delivers Remarks Discussing the Immigration Enforcement Actions of the Trump Administration*, DOJ Justice News (May 7, 2018), https://www.justice.gov/opa/speech/attorney-general-sessions-delivers-remarks-discussing-immigration-enforcement-actions.
[3] Caitlin Dickerson, *Trump Administration in Chaotic Scramble to Reunify Migrant Families*, N.Y. TIMES (July 5, 2018), https://www.nytimes.com/2018/07/05/us/migrant-children-chaos-family-separation.html.
[4] Caitlin Dickerson, *Hundreds of Immigrant Children Have Been Taken From Parents at U.S. Border*, N.Y. TIMES (Apr. 20, 2018), https://www.nytimes.com/2018/04/20/us/immigrant-children-separation-ice.html.
[5] Daniella Diaz, *Kelly: DHS is considering separating undocumented children from their parents at the border*, CNN (March 6, 2017), https://www.cnn.com/2017/03/06/politics/john-kelly-separating-children-from-parents-immigration-border/index.html.
[6] Transcript: White House Chief of Staff John Kelly's Interview with NPR, NPR (May 11, 2018), https://www.npr.org/2018/05/11/610116389/transcript-white-house-chief-of-staff-john-kellys-interview-with-npr (last visited July 12, 2018).

### B. The Plaintiffs and the Government's Separation of Plaintiffs and their Minor Children

#### 1. Plaintiff Ms. J.P. ("Ms. P")

After Ms. P fled Guatemala with her 16-year-old daughter, both crossed the border and were detained by Customs and Border Patrol ("CBP").[7] Ms. P fled Guatemala to escape death threats from a former partner who sexually abused and beat her.[8] Because Ms. P spoke a Mayan dialect rarely spoken in the United States, Ms. P could not communicate with detention officers.[9]

When they arrived in the United States, Ms. P and her daughter, L.P. initially were detained by the government in a windowless room without beds or showers and fed nothing but lukewarm soup.[10] Guards at the facility taunted mothers, saying: "If you're such a good mother, why would you bring your child here?"[11] Three days after entering the United States, with no explanation, the government removed L.P. from the detention center where the government was holding Ms. P.[12] When she realized what was happening, L.P. fainted in terror, which injured her mouth and left her face swollen for several days.[13] The government did not permit Ms. P to speak to her daughter until June 22, 2018, when, after 30 hours of advocacy by her attorney, she was allowed to speak with L.P. by phone.[14]

Ms. P "is displaying symptoms of [PTSD] . . . as a result of her separation from her daughter" and is also "displaying symptoms of both depression and anxiety."[15]  If left untreated, these symptoms "could escalate into a diagnosis of PTSD, Dissociative Disorder, and Major Depressive Disorder."[16] "Ms. P speaks a Mayan dialect and

---

[7] Declaration of Ms. J.P. ("J.P. Decl.") ¶¶ 2, 5-6.
[8] *Id.* ¶ 4.
[9] *Id.* ¶¶ 6, 16, 18.
[10] *Id.* ¶¶ 7, 10.
[11] Declaration of Lucero Chavez ("Chavez Decl.") ¶ 11.
[12] J.P. Decl. ¶ 15.
[13] Chavez Decl. ¶ 14.
[14] J.P. Decl. ¶ 21; Complaint, Dkt. 1, ("Compl.") ¶ 20.
[15] Declaration of Alejandra Acuña ("Acuña Decl.") ¶¶ 7-8.
[16] *Id.* ¶ 11.

understands very little Spanish and no English," which likely exacerbated her trauma when guards "did not communicate supportively when she did not understand."[17] L.P. has reported feeling depressed, hopeless, and confused by her detention and separation.[18]

## 2.   Named Plaintiff: Ms. J.O. ("Ms. O")

Ms. O and her daughter, T.B., fled their native Honduras in fear for their lives after gangs directly threatened their family.[19] Ms. O and T.B. entered the United States on or around May 18, 2018, where they encountered a CBP officer.[20] Ms. O claimed fear of returning to Honduras, but was told that she was to be charged with illegal entry.[21] Ms. O and T.B. were processed separately and kept apart at the detention center.[22] In her time at the detention center, Ms. O was kept in a cell resembling a dog kennel with 50 other women without beds or pillows, and where the lights were kept on 24 hours per day.[23] While there, Ms. O heard guards tell parents that a new law permitted them to take away their children permanently, which terrified Ms. O, who feared she would be separated from T.B. forever.[24]

On or about May 21, 2018, after criminal proceedings in which Ms. O pleaded guilty for illegal entry into the United States, the government transferred Ms. O to the SeaTac Federal Prison in SeaTac, Washington, and then to the Northwest Detention Center in Tacoma, Washington.[25] Ms. O's daughter was detained in Southwest Key Programs, Inc.—Casa Antigua in San Benito, Texas.[26] Following the separation, T.B.

---

[17] Declaration of Dylan Gee ("Gee Decl.") ¶ 15.
[18] Chavez Decl. ¶ 15.
[19] Declaration of Ms. J.O. ("J.O. Decl.") ¶¶ 3, 5.
[20] *Id.* ¶ 6.
[21] Compl. ¶ 24, 29.
[22] J.O. Decl ¶ 7-8.
[23] *Id.* ¶¶ 15-16.
[24] *Id.* ¶¶ 10-11.
[25] Compl. ¶ 30.
[26] *Id.*

MOTION FOR CLASS CERTIFICATION

has "reported symptoms including excessive worry, dysphoric mood, crying spells, sleep and appetite disturbances, and fear of the unknown."[27]

### 3. Named Plaintiff: Ms. R.M. ("Ms. M")

Ms. M and her 15-year-old daughter, S.Q., fled El Salvador in fear of Ms. M's husband, a former military officer, who severely beat them both and threatened their lives.[28] On or around May 18, 2018, Ms. M and her daughter entered the United States near Hidalgo, Texas, where they encountered a CBP officer and claimed fear of returning to their country of origin.[29]

CBP immediately detained and separated Ms. M and her daughter.[30] Officers told Ms. M that she was to be deported without her daughter, and that she would be punished for exposing her daughter to such a harsh journey.[31] Upon hearing this, Ms. M began to cry, and one officer said, "You can thank Trump."[32]

Ms. M was kept in a holding cell that resembled a dog kennel tightly packed with at least 40 – 50 other women.[33] The guards fed them with pieces of soggy bread and a frozen piece of what looked like ham.[34] The guards would humiliate the women by opening the cage door and throwing crackers at them.[35]

Within several days of her detention, Ms. M was prosecuted on federal criminal charges and transferred to the SeaTac Federal Prison in SeaTac, Washington.[36] She was subsequently transferred to the Northwest Detention Center in Tacoma, Washington.[37] Ms. M's daughter was detained in Southwest Key Programs, Inc.—

---

[27] Declaration of Alfonso Mercado ("Mercado Decl.") ¶ 7.
[28] Declaration of Ms. R.M. ("R.M. Decl.") ¶ 2-4.
[29] *Id.* ¶ 5.
[30] *Id.* ¶ 6.
[31] *Id.* ¶ 7.
[32] *Id.*
[33] *Id.* ¶ 9.
[34] *Id.* ¶ 11.
[35] *Id.*
[36] Compl. ¶ 39, 41.
[37] *Id.* ¶ 41.

1  Casa Antigua in San Benito, Texas.[38] Following the separation, S.Q. has "reported

2  symptoms including excessive worry, dysphoric mood, crying spells, sleep and

3  appetite disturbances, and fear of the unknown."[39]

4                                          *    *    *

5        The government has never alleged that Ms. P, Ms. O, or Ms. M are unfit parents

6  or that their children are unsafe with them and has not provided Plaintiffs or their

7  children with mental health services.

8        **C.    <u>The Proposed Class</u>**

9        Plaintiffs' experiences are representative of Defendants' practice of forcibly

10 separating parents from their children without a hearing and without any

11 demonstration that the parent is endangering the child. Their experiences exemplify

12 the severity of the harm inflicted by the government's family separation policy and the

13 government's failure to provide adequate mental health care. Media reports and

14 personal accounts of the separations are replete with vivid descriptions of terrified

15 children and desperate parents. Garance Burke and Martha Mendoza, *Toddlers*

16 *Separated from Parents at the Border Are Being Detained in 'Tender Age' Shelters*,

17 TIME (June 20, 2018), http://time.com/5316764/toddler-immigrants-tender-age-

18 shelters/; Caitlin Dickerson and Manny Fernandez, *What's Behind the 'Tender Age'*

19 *Shelters Opening for Young Migrants*, N.Y. TIMES (June 20, 2018),

20 https://www.nytimes.com/2018/06/20/us/tender-age-shelters-family-separation-

21 immigration.html.; Nick Miroff, *A Family Was Separated At the Border, and This*

22 *Distraught Father Took His Own Life*, WASH. POST (June 9, 2018),

23 https://www.washingtonpost.com/world/national-security/a-family-was-separated-at-

24 the-border-and-this-distraught-father-took-his-own-life/2018/06/08/24e40b70-6b5d-

25 11e8-9e38-24e693b38637_story.html?utm_term=.f3c12fb7157d.  Such reports reveal

26 that, by the government's own estimation, on July 5, 2018, the government held

27 _____

28 [38] Compl. ¶ 40.
   [39] Mercado Decl. ¶ 7.

1    nearly 3,000 children after forcibly separating them from their parents.  Caitlin

2    Dickerson, *Trump Administration in Chaotic Scramble to Reunify Migrant Families*,

3    NY. TIMES (July 5, 2018), https://www.nytimes.com/2018/07/05/us/migrant-children-

4    chaos-family-separation.html.

5         **D.    The Government's Family Separation Policy is Found Likely**
          **Unconstitutional and Enjoined in *Ms. L. v. U.S. Immigration &***
6         ***Customs Enforcement***

7            The government's policy of separating families was met with widespread

8    condemnation and, unsurprisingly, litigation.  One of the cases challenging the policy

9    was filed by a refugee known as "Ms. L." in the Southern District of California, and is

10   pending before Judge Dana Sabraw.  *Ms. L. v. U.S. Immigration & Customs Enf't*,

11   Case No. 3:18-cv-00428-DMS-MDD, 2018 WL 3129486 (S.D. Cal. June 26, 2018)

12   ("Ms. L. Case").  On June 26, 2018, Judge Sabraw preliminarily certified a class of

13   parents who enter the United States who were, are or will be detained in immigration

14   custody, and who have a minor child who is or will be separated from them absent a

15   determination that the parent is unfit or endangers the child.  *Ms. L. Case*, Dkt. No. 82

16   at 17.

17           That same day, Judge Sabraw also concluded that the Ms. L Case plaintiffs had

18   submitted evidence demonstrating they were likely to succeed in showing that the

19   government's family separation practice violates due process and "shocks the

20   conscience" and "interferes with rights implicit in the concept of ordered liberty,

21   … and is so brutal and offensive that it [does] not comport with traditional ideas of

22   fair play and decency," *Ms. L. Case*, Dkt. No. 83 at 12, 17, and entered a preliminary

23   injunction that required the following:

24      •   Defendants . . . are preliminarily enjoined from detaining Class Members in

25          DHS custody without and apart from their minor children, absent a

26          determination that the parent is unfit or presents a danger to the child . . . .

27      •   Defendants must reunify all Class Members with their minor children who are

28          under the age of five (5) within fourteen (14) days of the entry of this Order;

1    and . . . Defendants must reunify all Class Members with their minor children

2    age five (5) and over within thirty (30) days of the entry of this Order.

3    • Defendants . . . are preliminarily enjoined from removing any Class Members

4    without their child . . . .

5    *Id.* at 22-24.  The government has struggled to comply with the injunction ordered in

6    the Ms. L Case and has not fully complied with that order as of the filing of this

7    Motion.  *Ms. L. Case*, Dkt. No. 152 at 4; Tal Kopan, *Hundreds of separated children*

8    *not reunited by court-ordered deadline*, CNN (Jul. 26, 2018),

9    https://www.cnn.com/2018/07/26/politics/family-separations-deadline/index.html;

10   Tom Hals, *Immigrants lost in 'black hole' of U.S. family reunification: advocates*,

11   REUTERS (Jul. 26, 2018), https://www.reuters.com/article/us-usa-

12   immigration/immigrants-lost-in-black-hole-of-u-s-family-reunification-advocates-

13   idUSKBN1KG19B; Paloma Esquivel and Esmeralda Bermudez, *Hundreds of children*

14   *remain separated from migrant parents as deadline looms*, L.A. TIMES (Jul. 26, 2018),

15   http://www.latimes.com/local/lanow/la-me-family-reunification-numbers-20180726-

16   story.html.

17   **E.    The Plaintiffs' PI Motion Seeks Relief for the Trauma the**
     **Government's Separation Policy Inflicted on Plaintiffs and the**
18   **Proposed Class Members**

19         As detailed in the PI Motion, the consensus among trauma experts is that

20   tearing children from their parents inflicts severe complex trauma on parents and

21   children alike.  This trauma increases the longer the separation continues and/or goes

22   untreated.  Accordingly, in the PI Motion, Plaintiffs seek for themselves and the

23   proposed class members mental health screening and appropriate and sufficient mental

24   health services to alleviate the psychological and neurobiological consequences of the

25   government's forcible separation of migrant parents and their children.  *See* Dkt. No.

26   45.  As set forth below, certification of the proposed class in this action is appropriate

27   under Rule 23.

28

### III.   **ARGUMENT**

A plaintiff whose suit meets the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). To meet these requirements, the "suit must satisfy the criteria set forth in [Rule 23(a)] (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id.*

Plaintiffs' proposed class satisfies all four of the Rule 23(a) prerequisites, as well as the judicially implied requirement of ascertainability. The proposed class likewise meets the requirements for certification under Rule 23(b)(2). This Court should certify the proposed class in keeping with the numerous court decisions certifying classes in similar actions challenging the federal government's administration of immigration programs. *See, e.g.*, *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) (affirming certification of nationwide class of individuals challenging adequacy of notice in document fraud cases); *Arnott v. U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579 (C.D. Cal. 2012) (certifying nationwide class of immigrant investors challenging USCIS' retroactive application of new rules governing approval petitions to remove permanent residency conditions); *Santillan v. Ashcroft*, No. 04-cv-2686, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004) (certifying nationwide class of lawful permanent residents challenging delays in receiving documentation of their status); *Wagafe v. Trump*, No. 17-cv-0094, 2017 WL 2671254, at *1 (W.D. Wash. June 21, 2017) (certifying nationwide class of naturalization applicants challenging national security screening procedures); *Mendez Rojas, et al. v. Johnson*, No. 16-cv-1024, 2017 WL 1397749 (W.D. Wash. Jan. 10, 2017) (certifying two nationwide classes of asylum seekers challenging defective asylum application procedures); *see also Ms. L. Case*, 2018 WL 3129486, at *3, 11-12  (certifying a class of parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a

minor child who is or will be separated from them absent a determination that the parent is unfit or presents a danger to the child).

    **A.**    **The Proposed Class Satisfies Rule 23(a)'s Requirements**

        **1.**    **The Proposed Class Satisfies the Numerosity Requirement**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Franco-Gonzales v. Napolitan*o, No. 10-cv-02211, 2011 WL 11705815, at *6 (C.D. Cal. Nov. 21, 2011) (quoting *Harris v. Palm Springs Alpine Estates, Inc*., 329 F. 2d 909, 913-14 (9th Cir. 1964)). No fixed number of class members is required. *Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984). Moreover, where a plaintiff seeks injunctive and declaratory relief, the "requirement is relaxed and plaintiffs may rely on [] reasonable inference[s] arising from plaintiffs' other evidence that the number of unknown and future members of [the] proposed subclass … is sufficient to make joinder impracticable." *Arnott v. U.S. Citizenship & Immigration Servs*., 290 F.R.D. 579, 586 (C.D. Cal. 2012) (quoting *Sueoka v. United States*, 101 Fed. App'x 649, 653 (9th Cir. 2004)).

Here, the number of class members far exceeds the requirement for numerosity. The government admitted that as recently as July 5, 2018, 3,000 minor children were held in detention after being forcibly separated from their parents. Caitlin Dickerson, *Trump Administration in Chaotic Scramble to Reunify Migrant Families*, NY. TIMES (July 5, 2018), https://www.nytimes.com/2018/07/05/us/migrant-children-chaos-family-separation.html; *Separating families at the border: How we got here*, CBS NEWS (June 18, 2018), https://cbsn.ws/2MAkOvq.  The Court can thus reasonably conclude that the proposed class is sufficiently numerous. *See Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008) (noting that "where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied") (quotation marks omitted); *see also, e.g.*,

*Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995) ("Courts have certified classes with as few as thirteen members."); *Ark. Educ. Ass'n v. Bd. of Ed. of Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765-66 (8th Cir. 1971) (class of 20 sufficient).

Second, in addition to the number of individuals who have already been separated from their children, the proposed class also includes individuals who *will have* a child taken from them. The presence of such future class members renders joinder inherently impractical, thereby satisfying the purpose behind the numerosity requirement. *See, e.g.*, *Ali v. Ashcroft*, 213 F.R.D. 390, 408 (W.D. Wash. 2003), *aff'd*, 346 F.3d 873 (9th Cir. 2003), *vacated on other grounds*, 421 F.3d 795 (9th Cir. 2005) (quotation marks omitted) ("[W]here the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met, regardless of class size.") (quoting *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986)); *Smith v. Heckler*, 595 F. Supp. 1173, 1186 (E.D. Cal. 1984) (in injunctive relief cases, "[j]oinder in the class of persons who may be injured in the future has been held impracticable without regard to the number of persons already injured"); *Hawker v. Consovoy*, 198 F.R.D. 619, 625 (D.N.J. 2001) ("The joinder of potential future class members who share a common characteristic, but whose identity cannot be determined yet is considered impracticable.").

### 2.      The Class Presents Common Questions of Law and Fact

To satisfy commonality, Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2)'s commonality requirement "has been construed permissively." *Preap v. Johnson*, 303 F.R.D. 566, 585 (N.D. Cal. 2014), *aff'd*, 831 F.3d 1193 (9th Cir. 2016) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)) (quotation marks omitted). A plaintiff "need not show . . . that every question in the case, or even a preponderance of questions, is capable of class wide resolution." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (quotation marks omitted). Rather, even one shared legal issue can be

1   sufficient. *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir.

2   2012) (noting that "commonality only requires a single significant question of law or

3   fact"); *Walters*, 145 F.3d at 1046 ("What makes the plaintiffs' claims suitable for a

4   class action is the common allegation that the INS's procedures provide insufficient

5   notice.").

6        Moreover, "[i]ndividual variation among plaintiffs' questions of law and fact

7   does not defeat underlying legal commonality, because 'the existence of shared legal

8   issues with divergent factual predicates is sufficient' to satisfy Rule 23." *Santillan v.*

9   *Ashcroft*, 2004 WL 2297990, at *10 (N.D. Cal. Oct. 12, 2004) (quoting *Hanlon*, 150

10  F.3d at 1019). The commonality standard is even more liberal in a civil rights suit like

11  this one, in which "the lawsuit challenges a system-wide practice or policy that affects

12  all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.

13  2001), *abrogated on other grounds, Johnson v. California*, 543 U.S. 499 (2005).

14       Plaintiffs' lawsuit raises numerous legal and factual questions common to the

15  proposed class. First, whether and to what extent the government has an obligation to

16  develop an appropriate policy for mitigating the harms inflicted by the family

17  separation policy.  Second, and relatedly, whether Defendants' policies and practices

18  actions have violated the substantive due process rights of proposed class members

19  and their rights to equal protection of the law.  Each of these raises multiple common

20  questions of law and fact.  And any one of these common issues, standing alone, is

21  enough to satisfy Rule 23(a)(2)'s permissive standard. *See Perez-Olano v. Gonzalez*,

22  248 F.R.D. 248, 257 (C.D. Cal. 2008) ("Courts have found that a single common issue

23  of law or fact is sufficient.") (citation omitted); *Sweet v. Pfizer*, 232 F.R.D. 360, 367

24  (C.D. Cal. 2005) (observing that "there must only be one single issue common to the

25  proposed class") (quotation and citation omitted).

26       Plaintiffs and proposed class members also share a common core of facts: all

27  came to the United States with their children and were subsequently detained; all were

28  separated from their children without any allegation or showing that they present a

1  danger to their child; the scientific consensus is that child—parent separation is a

2  traumatic event; there is no existing policy to provide class members appropriate

3  mental-health screening or appropriate trauma-informed intervention. Plaintiffs and

4  proposed class members, thus, "have suffered the same injury." *Wal-Mart Stores, Inc.*

5  *v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

6  147, 157 (1982)). And that common injury is clearly "capable of class wide

7  resolution." *Id.* Should the Court agree that Defendants' policies or practices violate

8  the Due Process Clause, all who fall within the class will benefit from the requested

9  relief: mental-health screenings for Plaintiffs and their children to assess their need for

10  subsequent trauma-informed remedial medical and appropriate mental-health services

11  to address the trauma of separation and child detention. A common answer as to the

12  legality of the challenged policies and practices will "drive the resolution of the

13  litigation." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011)

14  (quoting *Wal-Mart*, 564 U.S. at 350).

15      Significantly, courts have made clear that even "[w]here the circumstances of

16  each particular class member vary but retain a common core of factual or legal issues

17  with the rest of the class, commonality exists." *Evon v. Law Offices of Sidney Mickell*,

18  688 F.3d 1015, 1029 (9th Cir. 2012) (quotation marks omitted); *see also Walters*, 145

19  F.3d at 1046 ("Differences among the class members with respect to the merits of

20  their actual document fraud cases, however, are simply insufficient to defeat the

21  propriety of class certification. What makes the plaintiffs' claims suitable for a class

22  action is the common allegation that the INS's procedures provide insufficient

23  notice."); *Arnott*, 290 F.R.D. at 586-87 (factual variations did not defeat certification

24  where core legal issues were similar). Moreover, any factual differences that may exist

25  among Plaintiffs and individual proposed class members are immaterial to their core

26  claim that they are entitled to mental health care screenings and effective family

27  treatment to address and remediate the effects of the trauma that the government

28  wantonly and knowingly inflicted on them under the unconstitutional policy of

15

MOTION FOR CLASS CERTIFICATION

separating parents from their children.  *See, e.g., Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982) (granting certification in challenge to common agency practices in asylum cases, even though the outcome of individual asylum cases would depend on individual class members' varying entitlement to asylum).

### 3.   Typicality:  Plaintiffs' Claims Are Typical of Class Members' Claims

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The purpose of this requirement is to "assure[] that the interests of the named representatives align with those of the class" as a whole. *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of the absent class members." *Parsons*, 754 F.3d at 685 (quoting *Hanlon*, 150 F.3d at 1020). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (citation omitted).

Plaintiffs' claims are typical of the claims of the proposed class, for largely the same reasons that the class presents common questions of law and fact. Each proposed class member—like each proposed class representative, Ms. P, Ms. O, and Ms. M— was forcibly separated from her child without a finding of unfitness or that she presented a danger to her child, and she has not been provided with appropriate mental-health screenings or offered appropriate trauma-informed intervention. Additionally, Plaintiffs assert the same rights under the Fifth Amendment.  Plaintiffs' claims are not only typical of proposed class members, they are nearly identical.

Moreover, as with commonality, any factual differences between Plaintiffs and proposed class members are not material enough to defeat typicality.  *See, e.g.*, *Hanlon*, 150 F.3d at 1020 (under "permissive" typicality standard, representative claims need only be "reasonably co-extensive with those of absent class members;

they need not be substantially identical"); *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985) ("The minor differences in the manner in which the representative's Fourth Amendment rights were violated does not render their claims atypical of those of the class."); *cf. Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (certifying Rule 23(b)(2) class despite differences in the exact nature of the harm suffered by class members).

### 4.    Adequacy: Plaintiffs Will Adequately Protect the Interests of the Proposed Class, and Plaintiffs' Counsel Are More Than Qualified to Litigate this Action

Rule 23(a)(4) requires that "[t]he representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Adequacy depends on "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive."  *Walters*, 145 F.3d at 1046 (quotation marks omitted).  Plaintiffs' counsel are deemed qualified when they possess experience in previous class actions and cases involving the same area of law.  *Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984), *aff'd* 747 F.2d 528 (9th Cir. 1984), *amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985).  Here, putative Class Counsel are attorneys from Public Counsel and Sidley Austin LLP with significant experience in immigrants' rights issues and hundreds of class action cases.  Class Counsel have more than sufficient resources to litigate this matter vigorously.

Plaintiffs will fairly and adequately protect the interests of the proposed class, and therefore, are adequate class representatives. Plaintiffs do not seek any unique or additional benefit from this litigation that may make their interests different from or adverse to those of absent class members. Instead, Plaintiffs' aim is to secure injunctive relief that will protect themselves and the entire class from Defendants' challenged practices and enjoin Defendants from further violations. Nor do Plaintiffs or Class Counsel seek financial gain at the cost of absent class members' rights.

1    Accordingly, Plaintiffs lack any antagonism with the class, and their interests align

2    squarely with the other proposed class members.

3           **5.      The Class Is Sufficiently Ascertainable**

4           Although ascertainability is not required for class certification in the Ninth

5    Circuit, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017), the

6    proposed class is, nevertheless, sufficiently ascertainable because it is

7    "administratively feasible" to ascertain whether an individual is a member.  *Greater*

8    *Los Angeles Agency on Deafness, Inc. v. Reel Servs. Mgmt. LLC*, No. 13-cv-7172,

9    2014 WL 12561074, at *5 (C.D. Cal. May 6, 2014) (quotation marks omitted)

10   (finding ascertainable proposed class of individuals who are deaf or hard of hearing

11   and require closed captioning).  Here, membership in the class is defined by clear and

12   objective criteria: class members were, are, or will be in immigration detention, their

13   children were taken from them without a hearing and showing of unfitness, and their

14   children were or are held elsewhere by ORR or DHS.  *See supra* at 3.  These

15   parameters are "precise, objective, and presently ascertainable." *O'Connor v. Boeing*

16   *N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (quotations omitted) (observing

17   that class definitions for actions maintained under Rule 23(b)(2) involve less precision

18   than actions for damages requiring notice to the class); *see also, e.g.*, *Lamumba Corp.*

19   *v. City of Oakland*, No. 05-cv-2712, 2007 WL 3245282, at *4 (N.D. Cal. Nov. 2,

20   2007) ("Plaintiffs putative class is based on the objective factors of business

21   ownership, race, and indebtedness to the City, and therefore is sufficiently defined.").

22   The fact that some administrative process may be required to identify class members

23   does not undermine ascertainability. *See, e.g.*, *Moreno v. Napolitano*, No. 11-cv-

24   5452, 2014 WL 4911938, at *6-7 (N.D. Ill. Sept. 30, 2014) (finding that the necessity

25   of manually reviewing tens of thousands of detainer forms to identify class members

26   did not undermine ascertainability) (citing *Young v. Nationwide Mut. Ins. Co.*, 693

27   F.3d 532, 539 (6th Cir. 2012)).

28

### B.    This Action Satisfies the Requirements of Rule 23(b)(2)

In addition to satisfying the four requirements of Rule 23(a), a class must also come within one of the subsections of Rule 23(b).  Certification of a class under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  In the Ninth Circuit, "[i]t is sufficient" to meet Rule 23(b)(2)'s requirements that "class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters*, 145 F.3d at 1047. Indeed, Rule "23(b)(2) was adopted in order to permit the prosecution of civil rights actions" like this one. *Id.* "'The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Lyon v. ICE*, 308 F.R.D. 203, 213 (N.D. Cal. 2015) (quoting *Wal-Mart*, 131 S. Ct. at 2557).

Rule 23(b)(2)'s requirements are met here.  Plaintiffs ask the Court for declaratory and injunctive relief to remedy the harm inflicted on the proposed class members and their minor children by Defendants' practice—common to all class members—of forcibly separating them from their children without a hearing and showing that they are unfit or present a danger to their children and failing to provide adequate family based mental health evaluations and care for this traumatic event.  If Defendants' failure to provide adequate mental health services to parents and children traumatized by Defendants' unconstitutional family separation practice violates substantive due process or the equal protection guarantee of the Fifth Amendment, it does so as to all proposed class members.  A single injunction would protect both Plaintiffs and the other class members from this same practice and would provide relief to Plaintiffs and the other class members through mental-health screenings and appropriate trauma-informed remedial medical and mental-health services. *See, e.g.*, *Walters*, 145 F.3d at 1047 (certifying Rule 23(b)(2) class based on Defendants'

19

practice of providing deficient notice of deportation procedures).

This relief would benefit Plaintiffs as well as all members of the proposed class in the same fashion. No individual class member would be entitled to a different injunction or declaratory judgment. The requested relief would address these policies or practices in a single stroke, and, therefore, the proposed class warrants certification under Rule 23(b)(2). *See Parsons*, 754 F.3d at 689 (finding declaratory and injunctive relief proper as to the whole class where "every [member] in the proposed class is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in . . . policy and practice").

Because Plaintiffs and proposed class members all have suffered or will suffer the same constitutional violations as a result of the government's challenged practice, and because they seek singular injunctive and corresponding declaratory relief that remedy those injuries, certification under Rule 23(b)(2) is proper.

## IV.   **CONCLUSION**

Plaintiffs respectfully request that the Court grant this Motion and enter an order certifying the proposed class under Rule 23(b)(2); appoint Plaintiffs as Class Representatives; and appoint the Plaintiffs' counsel from Public Counsel and Sidley Austin LLP as Class Counsel.

Dated:  July 27, 2018

Respectfully Submitted,

/s/ *Amy P. Lally*

Mark Rosenbaum (SBN 59940)
mrosenbaum@publiccounsel.org
Judy London (SBN 149431)
jlondon@publiccounsel.org
Talia Inlender (SBN 253796)
tinlender@publiccounsel.org
Alisa Hartz (SBN 285141)
ahartz@publiccounsel.org
Lucero Chavez (SBN 273531)
lchavez@publiccounsel.org
Elizabeth Hadaway (SBN 308800)
ehadaway@publiccounsel.org

Amy P. Lally (SBN 198555)
alally@sidley.com
Ellyce R. Cooper (SBN 204453)
ecooper@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: +1 310 595-9662
Facsimile: +1 310 595-9501

Carter G. Phillips*
cphillips@sidley.com

| | |
|---|---|
| Malhar Shah (SBN 318588) | Jennifer J. Clark* |
| mshah@publiccounsel.org | jennifer.clark@sidley.com |
| Deena Tumeh (SBN 318573) | SIDLEY AUSTIN LLP |
| dtumeh@publiccounsel.org | 1501 K Street, N.W. |
| PUBLIC COUNSEL | Washington, D.C. 20005 |
| 610 S. Ardmore Avenue | Telephone: +1 202 736-8270 |
| Los Angeles, CA 90005 | Facsimile: +1 202 736-8711 |
| Telephone: +1 213 385-2977 | |
| Facsimile: +1 213 385-9089 | Michael Andolina* |
| | mandolina@sidley.com |
| Mark E. Haddad (SBN 205945) | Timothy Payne* |
| markhadd@usc.edu | tpayne@sidley.com |
| Part-time Lecturer in Law, USC Gould | Kevin Fee* |
| School of Law** | kfee@sidley.com |
| University of Southern California | SIDLEY AUSTIN LLP |
| 699 Exposition Blvd. | One South Dearborn |
| Los Angeles, CA 90089 | Chicago, IL 60603 |
| Telephone: +1 213 675-5957 | Telephone: +1 312 853-7000 |
| | Facsimile: +1 312 853-7036 |
| Luis Cortes Romero (SBN 310852) | |
| lcortes@ia-lc.com | Bridget S. Johnsen (SBN 210778) |
| Alma L. David (SBN 257676) | bjohnsen@sidley.com |
| adavid@ia-lc.com | Sean A. Commons (SBN 217603) |
| Immigrant Advocacy & Litigation | scommons@sidley.com |
| Center, PLLC | SIDLEY AUSTIN LLP |
| 19309 68th Ave South R-102 | 555 West Fifth Street |
| Kent, WA 98032 | Los Angeles, CA 90013 |
| Telephone: +1 253 872-4730 | Telephone: +1 213 896-6000 |
| Facsimile: +1 253 237-1591 | Facsimile: +1 213 896-6600 |

*Admitted pro hac vice

** Institution listed for identification purposes only

21