CHAD A. READLER
Acting Assistant Attorney General
ERNESTO H. MOLINA, JR.
Deputy Director
DANIEL GOLDMAN
Senior Litigation Counsel
MICHELLE R. SLACK Trial Attorney
LANCE JOLLEY
Trial Attorney
SCOTT M. MARCONDA, CBN 144225
Trial Attorney

MICHAEL HEYSE
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
PO Box 878, Ben Franklin Station
Washington, DC 20442
Michael.Heyse@usdoj.gov
Telephone: (202) 305-7002
Fax: (202) 616-4923
Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MS. J.P., MS. J.O., AND MS. R.M., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> JEFFERSON B. SESSIONS, et al., <br><br> Defendants. | Case No. 2:18-cv-06081-JAK (SKx) <br><br> HEARING DATE: September 20, 2018 <br> Hon. John A. Kronstadt <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION** |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................3

   A.  J.P. & L.P. ....................................................................................3

   B.  J.O. & T.B. ..................................................................................4

   C.  R.M. & S.Q. ................................................................................6

III. ARGUMENT ......................................................................................8

   A.  Standard for Preliminary Injunction .....................................................8

      Plaintiffs Cannot Show a Likelihood of Success on the Merits. ...........................9

      1.  Defendants Have No Likelihood Of Prevailing Where They Failed To Demonstrate a Waiver of Sovereign Immunity ...........................9

      2.  Plaintiffs Are Not Entitled To An Injunction Because They Have Access To A Remedy At Law For Compensatory Damages ...................11

      3.  Defendants Have Not Properly Stated A Due Process Claim For Inadequate Medical Care For Which Relief Can Be Granted. ...................12

      4.  Plaintiffs Cannot Show That the Government Has Not Provided Them with the Requisite Level of Mental Health Care. ...............................20

   C.  Plaintiffs Cannot Show a Likelihood of Irreparable Harm. ...............................22

   D.  The Government's Interests Would be Harmed, and the Public Interest Would Not Be Served by the Grant of Injunctive Relief. ...................................23

IV.  CONCLUSION ..................................................................................25

1

# TABLE OF AUTHORITIES

2

## CASES

3

*Alliance for the Wild Rockies v. Cottrell*,
4
   632 F.3d 1127 (9th Cir. 2011)………………………………………………...8

5

*Anderson v. United States*,
6
   612 F.3d 1112 (9th Cir. 1979)………………………………………………...9

7

*Bell v. Wolfish*,
8
   441 U.S. 520 (1979)…………………………………………………...12, 19

9

*Block v. Rutherford*,
10
   468 U.S. 576 (1984)……………………………………………………12

11

*Bowen v. Massachusetts*,
12
   487 U.S. 879 (1988)……………………………………………………11

13

*Bracken v. Okura*,
14
   869 F.3d 771 (9th Cir. 2017)……………………………………………...21

15

*Brock v. Wright*,
16
   315 F. 3d 158 (2d Cir. 2003)……………………………………………...14

17

*Clement v. Gomez*,
18
   298 F.3d 898 (9th Cir. 2002)……………………………………………14, 20

19

*Clouthier v. County of Contra Costa*,
20
   591 F.3d 1232 (9th Cir. 2010)……………………………………………13

21

*Dahl v. HEM Pharms. Corp.*,
22
   7 F.3d 1399 (9th Cir. 1993)……………………………………………..8, 9

23

*Dugan v. Rank*,
24
   372 U.S. 609 (1963)……………………………………………………10

25

*Eric v. Sec'y of U. S. Dep't of Hous. & Urban Dev.*,
26
   464 F. Supp. 44 (D. Alaska 1978)……………………………………...10

27

28

*Estelle v. Gamble*,
   429 U.S. 97 (1976)……………………………………………………………..15, 18, 19

*Friendly House v. Whiting*,
   846 F. Supp. 2d 1053 (D. Ariz. 2012)…………………………………………...8

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015)……………………………………………………9

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66, (2013)…………………………………………………………….15

*Gordon v. County of Orange*,
   888 F.3d 1118 (9th Cir. 2018)……………………………………………12, passim

*Hawaii v. Gordon*,
   373 U.S. 57 (1963)……………………………………………………………..10

*Helling v. McKinney*,
   509 U.S. 509 U.S. 25 (1993)...………………………………………………14

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017)……………………………………………….…...23

*Hutchinson v. United States*,
   838 F.2d 390 (9th Cir. 1988)…………………………………………………15, 19

*Jackson v. McIntosh*,
   90 F.3d 330 (9th Cir.)………………………………………………………15, 19

*Jett v. Penner*,
   439 F.3d 1091 (9th Cir. 2006)…………………………………………………14

*Kingsley v. Hendrickson*,
   ⸺ U.S. ⸺, 135 S. Ct. 2466 (2015)……………………………………...12, 13, 14

*L.W. v. Grubbs*,
   92 F.3d 894 (9th Cir. 1996)……………………………………………………21

*Larson v. Domestic & Foreign Commerce Corp.*,
   337 U.S. 682 (1949)…………………………………………………………..10, 11

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION
2:18-cv-06081 JAK (SKx)

*Lolli v. County of Orange*,
 351 F.3d 410 (9th Cir. 2003)……………………………………………..13

*Malone v. Bowdoin*,
 369 U.S. 643 (1962)……………………………………………10

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
 571 F.3d 873 (9th Cir. 2009)……………………………………………9

*Mazurek v. Armstrong*,
 529 U.S. 968 (1997)……………………………………………8

*McGuckin v. Smith*,
 974 F.2d 1050 (9th Cir. 1992)……………………………………14, 16, 20

*McNeil v. United States*,
 508 U.S. 106 (1993)……………………………………………11

*McQueary v. Laird*,
 449 F.2d 608 (10th Cir. 1971)……………………………………………10

*Nken v. Holder*,
 556 U.S. 418 (2009)……………………………………………24

*Park Village Apartment Tenants Association v. Foster*,
 636 F.3d 1150 (9th Cir. 2011)……………………………………………22

*Pauuluk v. Savage*,
 836 F.3d 1117 (9th Cir. 2016)……………………………………………21

*Pimentel v. Dreyfus*,
 670 F.3d 1096 (9th Cir. 2012)……………………………………………8

*Planned Parenthood Arizona, Inc. v. Humble*,
 13 F. Supp. 3d 1017 (D. Ariz. 2014),,,,,,,……………………………………8

*Quebec v. Harris*,
 729 F.3d 937 (9th Cir. 2013)……………………………………………9

*Robbins v. Maine School Administrative Dist. No. 56*,
 807 F.Supp. 11 (D. Maine 1992)……………………………………………22

iv

*Rosebrock v. Mathis*,
  745 F.3d 963 (9th Cir. 2014)……………………………………………………...10

*Simmons v. Navajo Cty., Ariz.*,
  609 F.3d 1011 (9th Cir. 2010)……………………………………………………13

*Stanley v. University of S. Cal.*,
  13 F.3d 1313 (9th Cir. 1994)………………………………………………………8

*Trump v. Int'l Refugee Assistance Project*,
  137 S. Ct. 2080 (2017)……………………………………………………………23

*Ulmet v. United States*,
  888 F.2d 1028 (4th Cir. 1989)……………………………………………………11

*Wakefield v. Thompson*,
  177 F.3d 1160 (9th Cir. 1999)……………………………………………...18, 19

*Winter v. Natural Res. Def. Council*,
  555 U.S. 7 (2008)……………………………………………………………8, 24

*Youngberg v. Romeo*,
  457 U.S. 307 (1982)……………………………………………………14, 17, 19

## **STATUTES**

### **Immigration and Nationality of 1952, as amended:**

Section 235(b),
  8 U.S.C. § 1225(b)………………………………………………………3, 5, 7

Section 275(a),
  8 U.S.C. § 1325(a)………………………………………………………….5, 7

### **OTHER STATUES**

5 U.S.C.A. § 702………………………………………………………………10

6 U.S.C. § 279………………………………………………………………….20

6 U.S.C. § 279(b)………………………………………………………………20

6 U.S.C. § 279(b)(2)……………………………………………………....16

6 U.S.C. § 279(g)(1)……………………………………………………....16

6 U.S.C. § 279(g)(2)………………………………………………….3, 5, 7

8 U.S.C. § 1232……………………………………………………………1

8 U.S.C. § 1232(b)(3)……………………………………………….3, 5, 7

8 U.S.C. § 1232(c)…………………………………..…………………….20

8 U.S.C. § 1232(c)(2)……………………………..…………………….16

28 U.S.C.A. § 1361…………………………………………………….10

28 U.S.C. § 2674…………………………………………………….11

42 U.S.C. § 1983…………………………………………………….12

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION
2:18-cv-06081 JAK (SKx)

# I.   <u>INTRODUCTION</u>

The Court should deny Plaintiffs' motion for a classwide preliminary injunction, which asks this Court to require "Defendants to provide meaningful access to mental health care screening and treatment to Plaintiffs and members of the proposed class." Motion, ECF No. 45, at 1, 25.  Plaintiffs incorrectly contend that a preliminary injunction should issue in this case because, as they argue, the component agencies of the U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE"), have wantonly and intentionally inflicted trauma on the purported class members and wholly failed to provide appropriate medical screening or treatment. However, Plaintiffs' motion entirely ignores these facts:  (1) Plaintiffs are already members of a nationwide class; (2) they have already been reunited with their children and released from custody; and (3) DHS already screens, evaluates, and provides appropriate medical treatment to all purported class members during detention.  With respect to Plaintiffs' children, the Office of Refugee Resettlement ("ORR") also provides mental health and medical care in accordance with standards of care set by, *inter alia*, applicable state welfare laws and regulations, the 1997 *Flores* Settlement Agreement (*Flores v. Reno*, Case CV-85-4544-RJK(px) (C.D. Cal.)), and the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. No. 110-457 § 235, 122 Stat. 5044, 5074-5082 (Dec. 23, 2008) (codified at 8 U.S.C. § 1232).

Even if Due Process requires that individuals in federal custody must be provided adequate mental health care and treatment, Plaintiffs have already been released from custody and reunited with their children.  Furthermore, while in custody, Defendants already provided appropriate psychological screening and treatment during intake, throughout detention, and prior to release.  Defendants disagree, however, with Plaintiffs' contention that they have a right to some form of ongoing psychological treatment, to treatment outside of the detention facilities or ORR custody, or to treatment of plaintiffs' choosing beyond what is deemed adequate.  "Appropriate" mental health screening and

treatment—which is what Plaintiffs seek—is necessarily individualized and differs substantially from a medical condition that can be treated with a standard medication or standard course of treatment.  Moreover, each Plaintiff purports that she sought entry to the United States because of pre-existing traumatic events outside of the United States.

Plaintiffs fail to show the requisite "deliberate indifference" required under the state-created danger doctrine.  They contend that the Government exposed them to additional *risk* of future serious health problems that they would not face, but for the Government's exercise of prosecutorial authority and detention choices resulting in family unit separation.  In any event, agency services already anticipate that individuals crossing the border and held in various detention contexts may require mental health services for a variety of reasons, and the agencies afford such services through appropriate screening and care providers during detention and custody.  Furthermore, Plaintiffs have been reunited with their children, and Plaintiffs have been screened for mental health issues by agencies willing and able to provide on-going services during detention, and they were afforded all the care required by law.  Despite Plaintiffs' alleged individual experiences with the separation policy, it cannot reasonably be said that the Government has established and maintained a policy, practice, or custom, with deliberate indifference to the consequences.

In this case, Plaintiffs seek an injunction from this Court to order the Defendants to establish new screening protocols, enhance the mental health treatment already provided, including services after Plaintiffs have been released and that such treatment be given in a setting where Plaintiffs are not reminded of their separation (*i.e.*, outside of detention). But to do this, this Court must alter the *status quo* to monitor the Government's compliance, particularly with respect to the class as a whole.  Granting the preliminary injunctive relief Plaintiffs seek would alter, rather than preserve, the *status quo*. Interference with the manner in which the Government carries out its duties in supervising those in its custody, on a preliminary basis, significantly harms the Government and is not

2

1  within the public's interest.  Plaintiffs' proposed interference with the Government's

2  activities is particularly aggravated given the Government's duties in complying with

3  court orders in *Flores* and *Ms. L v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018).  The

4  balance of the interests weighs heavily in favor of the Government.  It is not in the public

5  interest to compound the Government's burden of protecting the sovereignty of the United

6  States or to undermine its obligation to balance that burden against global humanitarian

7  concerns, in accordance with established law.  For all of these reasons, Plaintiffs'

8  preliminary injunction motion should be denied.

9  II.   FACTUAL AND PROCEDURAL BACKGROUND

10         A.   J.P. & L.P.

11     J.P., and her sixteen-year-old daughter, L.P., claim to be natives and citizens of

12  Guatemala who on or about May 17, 2018, entered the United States at an unspecified

13  location in Arizona without admission or inspection.  Declaration of J.P. ("J.P. Decl."),

14  ECF No. 1-3, ¶¶ 2, 6.  J.P. speaks a Mayan dialect, Q'eqchi, while L.P. speaks both

15  Q'eqchi and Spanish.  *Id.* at ¶ 2.  Immigration officials apprehended them in Arizona

16  shortly after they crossed the border.  *Id.* at ¶ 6.  Because J.P. entered the country illegally,

17  she was subject to mandatory detention, pursuant to 8 U.S.C. § 1225(b).  J.P. claimed that

18  detainees endured difficult conditions while in immigration detention, and that she had

19  difficulty sleeping.  J.P. Decl.  ¶¶ 7-14.  Thereafter, ICE detained J.P. at the Orange

20  County Sherriff's Department's James A. Musick Facility.  *See* Declaration of Alejandra

21  Acuña ("Acuña Decl."), ECF No. 1-4, ¶ 5.

22      L.P. lacked a "parent or legal guardian in the United States . . . available to provide

23  care and physical custody."  6 U.S.C. § 279(g)(2). Therefore, in accordance with the

24  TVPRA, L.P. was transferred to the custody of ORR, pursuant to 8 U.S.C. § 1232(b)(3).

25  *See* Chandra Allen Declaration ("Allen Decl."), ECF No. 1-5 at ¶ 5.  On May 20, 2018,

26  L.P. was transferred to ORR custody and was housed at the Southwest Key Programs'

27  Casa Phoenix.  Declaration of Lucero Chavez ("Chavez Decl."), ECF 1-6 at ¶ 3; Allen

28

3

Decl.  ¶ 5; *see* Declaration of James De La Cruz ("De La Cruz Decl.") ¶ 9 (indicating that the facility is a state-licensed, non-secure shelter).  J.P. averred that L.P. fainted when they were separated, cutting her lip when she fell.  Allen Decl.  ¶ 10.  J.P. described feeling despondent over being separated from her daughter, and that they continued to have limited contact.  J.P. Decl.  ¶¶ 19, 21.  On July 5, 2018, a clinical social worker, Alejandra Acuña, evaluated J.P. and assessed her with having symptoms of post-traumatic stress disorder, depression, and anxiety as a result of her separation from L.P.  Acuña Decl. ¶¶ 7-8.  Ms. Acuña related that J.P. and others detained at Musick reported that they lacked ready access to mental health treatment.  *Id.*  ¶ 9.

Throughout the duration of her stay in ORR care, L.P. received many services, including individualized case management, and clinical, educational, and medical services.  De La Cruz Decl.  ¶¶ 5-7, 9.  L.P. was provided individual counseling on at least a weekly basis by trained social work staff.  *Id.*  ¶¶ 6, 10.  L.P. described receiving weekly counseling.  Allen Decl. 14; Lucero Chavez Declaration ("Chavez Decl."), ECF No. 1-6, at ¶ 8.  L.P. also was offered group counseling at least twice a week.  De La Cruz Decl.  ¶¶ 6, 9.  L.P. received "ongoing mental health assessments to identify any and all signs of mental illness."  *Id.* ¶ 6.  L.P. was identified as having no mental health issue warranting "more intensive interventions or a need for follow-up therapeutic interventions upon release from ORR's custody" and reunification with her mother.  *Id.* ¶ 9 (children "appeared to adjust as well as children can who have been through a difficult journey to reach the United States, and who may have difficult memories in their past"); *see id.* at ¶ 18.

## B.  J.O. & T.B.

Plaintiff J.O., and her sixteen-year-old daughter, T.B., are natives and citizens of Honduras.  J.O. Declaration ("J.O. Decl."), ECF No. 1-8, at ¶ 2.  J.O. claimed that in 2015, "very bad people" murdered her husband and beat her son, causing her to fear for her and her daughter's lives.  *Id.* at ¶ 3.  J.O. and T.B. entered the United States three

years later, on or about May 17, 2018, without admission or inspection, somewhere on the Texas-Mexico border. *Id.* at ¶ 5.  On May 18, they flagged down a Border Patrol Officer, who transported them to a nearby station. *Id.* at ¶ 6.  They were processed separately, but were later taken to the same detention facility. *Id.* at ¶¶ 7-8.  Because J.O. entered the country illegally, she was subject to mandatory detention and prosecution for illegal entry. *See* 8 U.S.C. §§ 1225(b) & 1325(a). Without any immediate proof of parentage, ICE could not immediately confirm whether T.B. was, in fact, J.O.'s daughter, so it could not place them in an ICE family residential center.  On May 21, 2018, J.O. went before a judge in criminal proceedings for illegally entering the United States.  *See* J.O. Decl.  ¶ 17.  J.O. was thereafter transferred to Laredo, Texas, then to the Federal Detention Center at Seattle-Tacoma ("SeaTac"), Washington, which affords detainees appropriate mental health services.  *Id.* at ¶ 18; *see* Codi James Declaration ("James Decl.") (general procedures and services at SeaTac).

J.O. was subject to mandatory detention by ICE and prosecution for illegal entry, and thus, T.B. lacked a "parent or legal guardian in the United States . . . available to provide care and physical custody."  6 U.S.C. § 279(g)(2).  Therefore, in accordance with 8 U.S.C. § 1232(b)(3), T.B. was transferred to the care of ORR.  ECF 1-1, ¶ 31; *see generally* De la Cruz Decl.  ¶¶ 2, 8-9.  On May 20, 2018, T.B. was placed in the Southwest Key Programs' Antigua Facility in Texas.  Second Declaration of Lucero Chavez ("Chavez Decl. 2"), ECF No. 1-9, at ¶ 3; *see* De la Cruz Decl.  ¶ 9 (indicating facility was a state-licensed, non-secure shelter).

As did L.P., T.B. received many services, including case management, clinical, educational, and medical services throughout the duration of her stay in ORR care.  De La Cruz Decl.  ¶¶ 5, 10.  T.B. was provided individual counseling on at least a weekly basis, and was offered group counseling at least twice a week, by trained social work staff.  *Id.* ¶¶ 6, 10.  T.B. received "ongoing mental health assessments to identify any and all signs of mental illness."  *Id.* ¶ 6.  T.B. was not identified as having any mental health issue

warranting "more intensive interventions or a need for follow-up therapeutic interventions upon release from ORR's custody" and reunification with her mother. *Id.* ¶ 11 (children "appeared to adjust as well as children can who have been through a difficult journey to reach the United States, and who may have difficult memories in their past"); *see id.* at ¶ 19.

During their separation, J.O. has been able to talk with her daughter at least three times with the assistance of a social worker. J.O. Decl. ¶ 21. According to J.O's declaration, as of July 11, 2018, she had not received "any mental health or counseling services to treat the trauma" she experienced. *Id.* ¶ 23; *see* James Decl. ¶¶ 4-6 (outlining screening process and mental health services at SeaTac). But, routine SeaTac procedures include intake evaluation to identify detainees who need mental health services, and SeaTac staff may at any time "refer a detainee for an interview, either at the request of the detainee or based on their observations of the detainee's actions or demeanor." James Decl. ¶¶ 4-6.

C.    R.M. & S.Q.

R.M. and her fifteen-year-old daughter, S.Q., are natives and citizens of El Salvador. R.M. Declaration ("R.M. Decl."), ECF No. 1-10, at ¶ 3. R.M. claims that they left El Salvador because her ex-husband, a military officer with local police connections, abused her, and she feared that he would kill her. *Id.* She also contended that she fears gang violence in El Salvador, and that a gang member once threatened her daughter. *Id.* at ¶ 4.

On or about May 18, 2018, R.M. and S.Q. entered the United States somewhere along the Texas-Mexico border, without admission or inspection. R.M. Decl. ¶ 5; Complaint at ¶ 33. R.M. claimed that they flagged down a Border Patrol Officer, who transported them to a nearby station where they were processed separately. R.M. Decl. ¶¶ 5-6.

1    Because R.M. entered the country illegally, she was subject to mandatory detention

2    and prosecution for illegal entry.  *See* 8 U.S.C. §§ 1225(b) & 1325(a).  On May 21, 2018,

3    R.M. pleaded guilty to illegally entering the United States.  R.M. Decl.  ¶ 14.  She was

4    then detained at Laredo, Texas, then at the SeaTac Federal Detention Center, and then the

5    Northwest Detention Center.  *Id.* at ¶ 15; Complaint at ¶ 41.  She claims that, during her

6    detention, she received no mental health services.  *Id.* at ¶ 20.  But, routine SeaTac

7    procedures include intake evaluation to identify detainees who need mental health

8    services, and SeaTac staff may at any time "refer a detainee for an interview, either at the

9    request of the detainee or based on their observations of the detainee's actions or

10   demeanor."  James Decl.  ¶¶ 4-6.

11   S.Q. lacked a "parent or legal guardian in the United States . . . available to provide

12   care and physical custody."  6 U.S.C. § 279(g)(2).  Therefore, in accordance with the 8

13   U.S.C. § 1232(b)(3), S.Q. was transferred to the custody of ORR.  *See* De la Cruz Decl.

14   ¶¶ 2, 8-9.

15   As with L.P. and T.B., S.Q. received many services, including individualized case

16   management and clinical, educational, and medical services throughout the duration of her

17   stay in ORR care.  De La Cruz Decl.  ¶¶ 5, 10.  S.Q. was provided individual counseling

18   on at least a weekly basis, and was offered group counseling at least twice a week, by

19   trained social work staff.  *Id.* at ¶¶ 6, 10; *see* Chavez Decl. 3 at ¶ 15.  S.Q. received

20   "ongoing mental health assessments to identify any and all signs of mental illness."  De

21   La Cruz Decl.  ¶ 6.  S.Q. was also able to talk to her grandmother (R.M.'s mother), over

22   the phone on a weekly basis.  Declaration of S.T., ECF No. 1-12, at ¶¶ 5, 7, 9-10.  S.Q.

23   was identified as having no mental health issue warranting "more intensive interventions

24   or a need for follow-up therapeutic interventions upon release from ORR's custody" and

25   reunification with her mother.  *Id.* ¶¶ 10-11 (children "appeared to adjust as well as

26   children can who have been through a difficult journey to reach the United States, and

27   who may have difficult memories in their past"); *see id.* at ¶ 19.

28

1   As indicated by Plaintiffs on July 27, 2018, all Plaintiffs were "released and
2   reunited with their children."  *See* Motion to Proceed Using Pseudonyms ("Pseudonym
3   Mot."), ECF 80 at 5; De La Cruz Decl. ¶ 9.

4   III.   ARGUMENT

5       A.   Standard for Preliminary Injunction

6       It is well-settled that a preliminary injunction is "an extraordinary and drastic
7   remedy" which "should not be granted unless the movant, by a clear showing, carries the
8   burden of persuasion." *Mazurek v. Armstrong*, 529 U.S. 968, 972 (1997) (per curiam)
9   (citations and quotations omitted).  This court may issue a preliminary injunction only
10  when the movant demonstrates the following:  "there is a substantial likelihood plaintiff
11  will succeed on the merits; plaintiff will be irreparably injured if an injunction is not
12  granted; an injunction will not substantially injure the other party; and the public interest
13  will be furthered by an injunction." *Friendly House v. Whiting*, 846 F. Supp. 2d 1053,
14  1055 (D. Ariz. 2012) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)).
15  "[T]he elements of the preliminary injunction test are balanced, so that a stronger showing
16  of one element may offset a weaker showing of another."  *Planned Parenthood Arizona,*
17  *Inc. v. Humble*, 13 F. Supp. 3d 1017, 1019 (D. Ariz. 2014) (quoting *Pimentel v. Dreyfus*,
18  670 F.3d 1096, 1105-1106 (9th Cir. 2012) (quotations omitted)).  Thus, all four factors
19  must be met for the court to grant a preliminary injunction. *Alliance for the Wild Rockies*
20  *v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  Additionally, because the remedy of a
21  preliminary injunction is equitable in nature, there must be no adequate remedy at law.
22  *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994).

23      Moreover, the nature of the preliminary injunction sought by Plaintiffs makes it a
24  mandatory injunction that should be subject to heightened scrutiny by this Court.  *See*
25  *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).  Specifically, Plaintiffs
26  ask this Court to require "Defendants to provide meaningful access to mental health care
27  screening and treatment to Plaintiffs and members of the proposed class," without regard

28

8

to DHS's duty to follow its current obligations as to immigration and law enforcement actions concerning current medical screenings for each person in its custody.  Motion, ECF No. 45, at 1 & 25.  Indeed, Plaintiffs' proposed screening protocol would require DHS to implement entirely new procedures for each class member.  *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) ("A mandatory injunction orders a responsible party to take action," and thus, "goes well beyond simply maintaining the status quo.") (internal citations and quotation marks omitted).  "[M]andatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases . . . .'"  *Id.* (quoting *Anderson v. United States*, 612 F.3d 1112, 1115 (9th Cir. 1979)). Because Plaintiffs are asking this Court to impose new procedures and limitations onto DHS's existing operations and obligations, as well as provide ongoing mental health care, this Court should not issue the requested preliminary injunction unless it finds that "the facts and law clearly favor the moving party."  *Dahl*, 7 F.3d at 1403.

      B.    <u>Plaintiffs Cannot Show a Likelihood of Success on the Merits.</u>

      Likelihood of success on the merits is a threshold issue: "[W]hen 'a plaintiff has failed to show the likelihood of success on the merits, [the court] need not consider the remaining three [elements].'"  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)) (internal quotation marks omitted).

      1.    <u>Defendants Have No Likelihood Of Prevailing Where They Failed To Demonstrate a Waiver of Sovereign Immunity</u>

      Plaintiffs cannot show a likelihood of success on the merits because, at bottom, they seek a form of ongoing compensatory damages (demanding that Defendants provide indeterminate mental health care services and treatment at ongoing government expense) commonly known as a "reparative injunction."[1]  *See* Sergio J. Campos, *The Class Action*

---

[1]  A "'reparative injunction' directly compensates the plaintiff, not with money, but by ordering the defendant to engage in remedial measures."  91 Wash. L. Rev. at 1484 &

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION
2:18-cv-06081 JAK (SKx)

1  *As Trust*, 91 WASH. L. REV. 1461, 1484 & n.121 (2016); *see also*, *e.g.*, *Rosebrock v.*

2  *Mathis*, 745 F.3d 963, 970 (9th Cir. 2014).  Regardless, phrasing a prayer for relief in

3  terms of specific relief "is not enough to escape sovereign immunity if such a claim is

4  essentially one for money judgment."  *Eric v. Sec'y of U. S. Dep't of Hous. & Urban Dev.*,

5  464 F. Supp. 44, 48 (D. Alaska 1978).  As such, Plaintiffs have no likelihood of prevailing

6  on the merits because any claim for compensatory damages is specifically precluded by

7  the doctrine of Sovereign Immunity.  The statutes cited and relied upon by Plaintiffs to

8  establish jurisdiction do not contain an express waiver of sovereign immunity regarding

9  monetary damages and injunctive relief.  *See, e.g.,* 5 U.S.C.A. § 702; 28 U.S.C.A. § 1361.

10  Rather, Plaintiffs seem to rely solely on the suggestion that they are seeking to prevent

11  "future violations of federal law (rather than monetary relief)."  Complaint at ¶ 59.

12  However, their efforts to end-run the strictures of sovereign immunity are ill-conceived:

13  "The courts shall not entertain an unconsented suit which, while nominally against

14  officers of the United States, is in reality against the Government itself."  *McQueary v.*

15  *Laird,* 449 F.2d 608, 610 (10th Cir. 1971) (citing *Hawaii v. Gordon*, 373 U.S. 57 (1963);

16  *Dugan v. Rank*, 372 U.S. 609 (1963); *Malone v. Bowdoin*, 369 U.S. 643 (1962); *Larson v.*

17  *Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949).  The fact of the matter is that

18  Plaintiffs are not seeking to prevent *future* violations of federal law.  Instead, they seek an

19  order demanding that the Federal Government provide them with an ongoing mental-

20  health program to compensate for a *past* alleged harm—in essence, requiring that the

21  Government provide an injunctive-form of reparations to the class members for alleged

22  injuries previously incurred, sounding in tort under the Federal Tort Claims Act, not in

23  equity.  *See, e.g.*, Compl. ¶14.

24

25

26

27

28  _____

n. 121.

10

2.    Plaintiffs Are Not Entitled To An Injunction Because They Have Access To A Remedy At Law For Compensatory Damages

"Cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay, or for "the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions." *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949)).

Once Plaintiffs and their children were released from custody, Defendants have no statutory obligation to provide the ongoing mental health services Plaintiffs seek. Plaintiffs' demand for relief after being released from federal custody can only be characterized as a plea for monetary damages, in the form of mental health services. *See Ulmet v. United States*, 888 F.2d 1028, 1030-31 (4th Cir. 1989) (holding that, although the plaintiff's "request for an injunction or writ of mandamus merely disguises the true nature of the relief sought, which is back pay and benefits," the plaintiff sought "specific monetary relief as defined in Bowen").  And such money damages are precluded by the APA.  To the extent that Plaintiffs may believe that they have an action available for tort damages,  that would implicate the procedures of the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 2674, *et seq.*  However, Plaintiffs have not pled an FTCA action, nor is there any suggestion that they have performed the jurisdictional prerequisite of filing and exhausting an administrative claim with the responsible agency.  *See McNeil v. United States,* 508 U.S. 106, 113 (1993).  Because they may have a remedy at law available, an equitable injuction should not issue.

3.      Defendants Have Not Properly Stated A Due Process Claim For Inadequate Medical Care For Which Relief Can Be Granted.

a.      The Due Process standard for care in detention.

In addition, Plaintiffs' likelihood of success on their due process claim is exceedingly low.  The right to adequate medical care for immigration detainees is comparable to pretrial detainees and stems from an established right to be free from unconstitutional punishment.  *See Bell v. Wolfish*, 441 U.S. 520, 534-37 (1979); 42 U.S.C. § 1983 (regarding civil actions for the deprivation of rights).  Unlike the related Eighth (and Fifth) Amendment protections afforded to criminal prisoners, pre-trial criminal detainees, and by extrapolation civil/immigration detainees, derive their custodial protections from the Due Process Clause of the Fourteenth Amendment.  *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018); *see Bell v. Wolfish*, 441 U.S. at 533; *cf. Block v. Rutherford*, 468 U.S. 576, 583-84 (1984).  In that context, the question is "whether those conditions amount to punishment of the detainee."  *Bell v. Wolfish*, 441 U.S. at 533.  "Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention."  *Id.* at 537.

In *Kingsley v. Hendrickson*, —— U.S. ——, 135 S. Ct. 2466 (2015), the Supreme Court discussed proof of what constitutes "punishment" in the context of excessive force. There, the Court examined "whether, to prove an excessive force claim a pretrial detainee must show that the officers were subjectively aware that their use of force was unreasonable, or only that the officers' use of force was *objectively* unreasonable."[2]

_____

[2]   The Supreme Court identified two "separate state-of-mind questions," namely the defendant's state of mind regarding (i) "his physical acts—i.e., his state of mind with respect to the bringing about of certain physical consequences in the world" and (ii) "whether his use of force was excessive."  *Kingsley*, 135 S. Ct. at 2472.  With regard to the first question, defendants did not dispute that the officers' use of force was intentional. With regard to the second question, the Court held that "the relevant standard is objective

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION
2:18-cv-06081 JAK (SKx)

*Kingsley*, 135 S. Ct. at 2470 (emphasis in original).  The Supreme Court explained that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Id*. at 2473.

Although the constitutional derivation of rights between criminal prisoners and civil detainees differs, the Ninth Circuit now applies the Fourteenth Amendment's analysis of inadequate medical care to detainees who would otherwise derive their freedom from unconstitutional punishment based on due process protections.  *Gordon*, 888 F.3d at 1124-25 ("claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard"); *see Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017-18 (9th Cir. 2010); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242-43 (9th Cir. 2010) (finding a single "deliberate indifference" test for plaintiffs who bring a constitutional claim—whether under the Eighth Amendment or the Fourteenth Amendment); *Lolli v. County of Orange*, 351 F.3d 410 (9th Cir. 2003).  For these reasons, the Fourteenth Amendment standard is the appropriate framework to employ in determining whether Federal Defendants have provided adequate medical care consistent with the Due Process Clause.

A pretrial detainee asserting a medical care claim against an individual defendant under the Fourteenth Amendment's due process clause must specifically allege that:  (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct

not subjective." *Id*.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION
2:18-cv-06081 JAK (SKx)

obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Gordon*, 888 F.3d at 1125.

A medical need is deemed to be "serious" if the failure to treat the condition would result in further significant injury or involves the unnecessary and wanton infliction of pain contrary to contemporary standards of human decency. *See Helling v. McKinney*, 509 U.S. 25, 32-35 (1993); *see also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A "serious medical need" exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (citations omitted). Other factors to consider include: (1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) [whether there exists] chronic and substantial pain." *Brock v. Wright*, 315 F. 3d 158, 162 (2d Cir. 2003). Such a "serious medical need" may include "the presence of a medical condition that significantly affects an individual's daily activities." *McGuckin*, 974 F.2d at 1059-60. With respect to the third element, "the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Gordon*, 888 F.3d at 1125 (quoting *Kingsley*, 135 S. Ct. at 2473) (citations omitted). "Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (internal quotations and citations omitted).

Even where individuals have been involuntarily, civilly committed, liability may be imposed "only when the decision by the mental health professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person actually did not base the decision on such a judgment." *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982). In other words, neither a plaintiff's mere allegations of a defendant's negligence nor a plaintiff's general disagreement with the treatment that he

14

or she received would suffice to state a claim in this context.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988); *see also Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir.), *cert. denied*, 519 U.S. 1029 (1996).

b.    Plaintiffs' injunctive claims for care during detention are moot where they are no longer in detention.

As indicated by Plaintiffs on July 27, 2018, all Plaintiffs were "released and reunited with their children."  *See* Pseudonym Mot., ECF 80 at 5.  Accordingly, they retain no continuing interest in mental health services while in detention and their claims are moot.  An "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71–72, (2013) (internal quotations and citations omitted).  Moreover, "[i]f an intervening circumstance deprives the plaintiff of a "personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot.  *Id.*  (internal quotations and citations omitted).  Thus, they have no probability of success on that claim, and the Court should deny any injunction regarding mental health services while in detention.

c.    Plaintiffs fail to show a likelihood of success where mental health services were available while in detention and they were screened for mental health care needs but were found to need none.

In this case, the Government does not dispute that Plaintiffs are entitled to adequate mental health screening and care while detained.  *Gordon*, 888 F.3d at 1124-25.[3]  In any

---

[3] Plaintiffs in the case are adults, Their children were transferred to ORR custody, To be certain, ORR custody is not detention. The relevant statutory framework as well as ORR's internal procedures – articulated through the ORR Guide on Children Entering the United States Unaccompanied (hereinafter "ORR Guide")  makes this clear. The custody maintained by ORR is informed by considerations derived from foster-care or child welfare best practices.  The statute governing ORR's care of unaccompanied alien children defines "placement" to include the "placement of an unaccompanied alien child

15

case, Plaintiffs and their children have already received "appropriate" screening and treatment, and the Government's treatment plan fully covered the need for any additional necessary treatment while in custody, if that need is properly identified. *See generally* James Decl.  Like any individual who is in immigration detention, Plaintiffs were medically screened, and other than presenting with some initial sadness, none has presented with mental health symptoms, let alone mental health needs, *pre-existing* or otherwise, that are in fact "serious" as required by the objective prong of this standard. *Id*. Importantly, Plaintiffs were afforded multiple examinations for mental health concerns. Plaintiffs have not yet provided specific indentifiers regarding individual Plaintiffs; detainees are routinely examined for mental health needs. *See* De La Cruz Decl. ¶ 7; James Decl. ¶ 4.  Further, they are subject to ongoing observation and evaluation for any mental health concerns.  Detainees are afforded a list of available services.  ICE confirms that each of the plaintiffs was given the appropriate level of screening but was found not to need services.  Even when transferred to facilities managed by the Bureau of Prisons, detainees are again screened for mental health needs, and they are provided a list of available mental health services.  *See* James Decl. ¶¶ 3-5; Federal Bureau of Prisons medical and mental health care information at

https://www.bop.gov/inmates/custody_and_care/medical_care.jsp and

---

in either a detention facility or an alternative to such a facility."  6 U.S.C. § 279(g)(1). And in this regard, ORR places children in its custody in any number of different contextual settings, including foster families, and a number of different types of "care" facilities.  As noted above, in this case, all of the named UAC were placed in shelter care, which is the least restrictive environment. The TVPRA also requires ORR, in making placement determinations, to place UAC in the least restrictive setting that is in the best interests of the child," and "may consider danger to self, danger to the community, and risk of flight."  8 U.S.C. § 1232(c)(2); *see also* 6 U.S.C. § 279(b)(2); ORR Guide §§ 1.2.1 ("As mandated by law, ORR places an unaccompanied alien child in the least restrictive setting that is in the best interests of the child.").  Thus, HHS/ORR care cannot appropriately be thought of as "detention," but rather as custody, more akin to a foster care situation than a detention facility.

https://www.bop.gov/inmates/custody_and_care/mental_health.jsp (last accessed August 13, 2018).

Plaintiffs show no likelihood of meeting their burden to show that Defendants have responded with reckless disregard or deliberate indifference, or substantially departed from accepted professional judgment, practice or standards. *Gordon*, 888 F.3d at 1125; *McGuckin*, 974 F.2d at 1059; *Youngberg*, 457 U.S. at 323. Without more identifying information, each Plaintiff was expressly evaluated for mental health needs at each phase of their detention. *See* De La Cruz Decl. ¶ 7; James Decl. ¶ 4. Individuals in distress were able to ask for follow-up services. As for their children, the final case review for each child detainee noted no need for follow-up mental health services. De La Cruz Decl. ¶¶ 10, 18-21. Further, the evidence demonstrates that Plaintiffs' children were assigned to licensed clinicians, who screened the children, conducted interviews, and assessed their mental health needs. *Id.* ¶¶ 4-9. Thus, there is no showing that mental health services are not an inherent part of the services already provided to Plaintiffs and their children. *Id.* ¶¶ 4-9, 20.

Importantly, Plaintiffs fall well short of showing deliberate indifference by government officials. Each Plaintiff and her child received screening by a licensed clinician, who, upon continued examination of the individual, identified no need for special measures in their particular cases. Plaintiffs do no more than allege an alternative form of preferred treatment. Even if the clinicians for the Plaintiffs made an incorrect diagnosis,

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or

omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105).

Plaintiffs' reliance on *Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999), is misplaced.  Motion at 14-16.  Importantly, in *Wakefield*, the Ninth Circuit was addressing the failure of a state prison official, knowing that the prisoner was in need of prescribed medication, to dispense medication to a prisoner upon his release, so that the newly-released prisoner may have sufficient time to secure a new physician and get a new prescription.  *Wakefield*, 177 F.3d at 1165.  Here, however, Plaintiffs do not allege that they were diagnosed by officials as suffering any mental health issues but denied services, even as they were leaving the facility.  Nor do they challenge their assigned clinicians' evaluations of their mental health needs, much less show that they amounted to "deliberate indifference."  At most, their argument amounts to a claim that the mental health professonals misdiagnosed them or did not give them their preferred treatment, but that is precisely the allegation of malpractice that does not amount to a constitutional violation.  Far from any purposeful act or failure to respond to any detainee's mental health need, Defendants already provide a final case review for each detainee and would provide follow-up mental health referrals if indicated.   De La Cruz Decl. ¶¶ 9, 13-20; James Decl. at ¶¶ 3-7.

Further, even if, *arguendo*, *Wakefield* could be extended beyond dispensing medication to detainees upon their release, Plaintiffs go well beyond by requiring the Government to provide continuing mental health *treatment* after release.  *Wakefield*, 177 F.3d at 1164, 1165 ("state must provide an outgoing prisoner who is receiving and continues to require medication with a supply sufficient to ensure that he has that medication available during the period of time reasonably necessary to permit him to consult a doctor and obtain a new supply.  A state's failure to provide medication sufficient to cover this *transitional* period amounts to an abdication of its responsibility to

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION
2:18-cv-06081 JAK (SKx)

provide medical care to those, who by reason of incarceration, are unable to provide for their own medical needs." (emphasis added)). *Wakefield* did not hold that the prison must continue to afford a prisoner full medical services after the prisoner has left its custody. Rather, it required only that the prison dispense enough medicine – a limited amount of a portable material – to permit the individual to promptly arrange for continued services at his or her own expense. *Wakefield*, 177 F.3d at 1165 ("state has a responsibility under the Eighth Amendment to provide outgoing prisoners being treated for a medical condition with a sufficient supply of medication to cover their transition to the outside world"). Plantiffs' demands for indefinite, involved, expensive medical services after release goes beyond the pale.

Plaintiffs' contention that detention facilities must be staffed "with therapists trained in recovery from traumatic experiences," and must offer "family-based, trauma-informed treatment," presupposes without evidentiary support that such services are necessary to provide adequate treatment under the circumstances.  Motion at 21; *see Bell v. Wolfish*, 441 U.S. at 538-39 (Due Process Clause considers the totality of the circumstances within a given institution).  Assuming, *arguendo*, that providing, *e.g.*, family-based trauma treatment was a useful form of treatment, Plaintiffs and purported class members are entitled to appropriate treatment, as previously discussed, and a plaintiff's general disagreement with the treatment that person received or a preference for other treatment would not suffice to state a claim for adults held in ICE detention.  *See Estelle*, 429 U.S. at 106; *Youngberg*, 457 U.S. at 323; *Hutchinson*, 838 F.2d at 394; *see also Jackson*, 90 F.3d at 331.  Each patient's medical needs are unique, and there is no due process requirement that detention facilities staff and equip for every foreseeable contingency.  The fact that a detainee may present with "chest pains" does not require ORR to retain a cardiologist on staff at each facility – only that the medical staff in the facility can recognize a potentially serious medical condition, provide immediate care, and

help to access any additional specialized care that is required.[4]  *Clement*, 298 F.3d at 904; *McGuckin*, 974 F.2d at 1059.  Here, as indicated, the agencies provide care from state-licensed mental health clinicians.  De La Cruz Decl. ¶¶ 3-4.  There is no evidence that such a person cannot diagnose or recognize serious mental health issues – especially those as traumatic as Plaintiffs appear to claim.  Nor is there evidence that, upon a diagnosis or identification by such a clinician, that the agencies do not provide adequate resources for the prescribed treatments.  De La Cruz Decl. ¶¶ 5-7, 13-17, 19-20; James Decl. ¶¶ 4-6.

Thus, Plaintiffs are not likely to succeed on the merits because they are not entitled to the relief they seek, or it is otherwise adequately provided.  Accordingly, a preliminary injunction should not be issued.

> 4.    Plaintiffs Cannot Show That the Government Has Not Provided Them with the Requisite Level of Mental Health Care.

In their motion for preliminary injunction, plaintiffs allege that "[t]he government is responsible for remedying the injuries that it caused to [them] and class members under the 'state-created danger' doctrine."  Motion at 16.  Plaintiffs contend that the Government exposed them "to additional risk of future serious health problems that they would not face but for the government's [separation of them from their children], including PTSD, anxiety, depression, suicidal ideation, loss of appetite, and loss of sleep."  Motion at 17.  However, the Government did not act with deliberate indifference inasmuch as each agency provides for individualized screening of detainees for mental health needs and, where appropriate, affords all the care required by law.

---

[4]    Again, ORR's role is not a form of detention, and the standard applicable to pre-trial or civil detention is inapposite.  Rather, its authority under 8 U.S.C. § 1232 and 6 U.S.C. § 279 is more in the nature of a foster care system and is more contingent upon the best interests of the child during in period of care.  *See* 8 U.S.C. § 1232(c); *see also* 6 U.S.C. § 279(b); ORR Guide §§ 1.2.1.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION
2:18-cv-06081 JAK (SKx)

Under the state-created danger doctrine, "[w]hen an officer's affirmative conduct creates a foreseeable risk of harm to the plaintiff, the officer will be liable for failing to intercede if the officer demonstrates 'deliberate indifference' to the plaintiff's plight." *Bracken v. Okura*, 869 F.3d 771, 778-79 (9th Cir. 2017). "'Deliberate indifference' requires a 'culpable mental state' more than 'gross negligence.'" *Pauuluk v. Savage*, 836 F.3d 1117, 1125 (9th Cir. 2016); *see L.W. v. Grubbs*, 92 F.3d 894, 898 (9th Cir. 1996). While Plaintiffs understandably assert that being separated from their children was a traumatic experience, Plaintiffs do not show that the Government was aware of a trauma-induced harm that they suffered from the separation.  *See* R.M. Decl.  ¶ 20 (no mental health service received); J.O. Decl.at ¶ 23 (same); *see also* Acuña Decl. (social worker met with J.P. but no account of whether she advised the Government of her concerns). Further, the evidence indicates that each Plaintiff and her child were screened for any mental health issues requiring treatment. *See* De La Cruz Decl. ¶¶ 7, 10.  Importantly, they do not show that the Government, by expressly providing for a prompt examination of the actual experiences of Plaintiffs by licensed clinicians to assess any mental health risks or needs, acted with any form of deliberate indifference.

Moreover, Plaintiffs only assert that the separation "imposes a high degree of *risk* that the separated family members will suffer psychological and physiological consequences for years to come."  Motion at 20 (emphasis added); *see also* Motion at 8-10 (referencing an "elevated" risk to parents).  Without some indication of the actual degree of risk, Plaintiffs' speculation does not show an appreciably different risk such that available mental health care services would be insufficient.  *See Gordon*, 888 F.3d at 1125 ("[T]he defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case.") (internal quotation marks and citation omitted).  This is not to suggest that Plaintiffs did not experience any trauma due to separation.  Rather, it means each Plaintiff and her child were examined pursuant to routine screening measures, and, while there were some instances of distress, each was

1  found to be coping well and in need of no further significant treatment.  *See, e.g.,* De La

2  Cruz Decl.  ¶ 9 (discussing the care of the children).  Accordingly, Plaintiffs have failed to

3  show that their due process rights were violated under the state-created danger doctrine so

4  as to warrant a preliminary injunction.

5       Further, Plaintiffs have been reunited with their children, measures are already

6  underway to reunited families as appropriate, resulting the reunification of the vast

7  majority of cases, and any potential class members have been screened for mental health

8  issues.  *See* Executive Order, Affording Congress an Opportunity to Address Family

9  Separation, 2018 WL 3046068 (June 20, 2018); *see also* Motion to Proceed Using

10  Pseudonyms at 2 (indicating Plaintiffs have been "released and reunited with their

11  children").  Accordingly, it cannot reasonably be said that the Government has

12  "established and maintained a policy, practice or custom, with deliberate indifference to

13  the consequences."  *See Robbins v. Maine School Administrative Dist. No. 56*, 807

14  F.Supp. 11, 14 (D. Maine 1992).  In addition, these developments – particularly

15  reunification with their children and the change in policy – would seemingly reduce the

16  risk of greater future psychological difficulty.  That reduction would, in turn, likely reduce

17  the need for the higher level of treatment that Plaintiffs speculate that they will need.

18  Importantly, Plaintiffs, having been reunified with their children, provided no indication

19  that they have had any further need for services or that they have been unable to obtain

20  such services.  Without more, Plaintiffs have failed to show that they warrant a

21  preliminary injunction.

22       C.    Plaintiffs Cannot Show a Likelihood of Irreparable Harm.

23       To establish irreparable harm, the movant must first "demonstrate that irreparable

24  injury is *likely* in the absence of an injunction"; it "will not issue if the person or entity

25  seeking injunctive relief shows a mere possibility of some remote future injury."  *Park*

26  *Village Apartment Tenants Association v. Foster*, 636 F.3d 1150 (9th Cir. 2011) (internal

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION
2:18-cv-06081 JAK (SKx)

1    citation and quotation marks omitted).  The relief being sought "must be tailored to

2    remedy the *specific harm alleged*."  *Id.* (internal citation and quotation marks omitted).

3          Plaintiffs have not demonstrated anything other than the "mere possibility" that they

4    may have an irreparable injury to their mental health.  Plaintiffs only present the claim that

5    J.P. has displayed symptoms such that, if left untreated, "*could* escalate into a diagnosis of

6    PTSD, Dissociative Disorder, and Major Depressive Disorder."  Motion at 9 (emphasis

7    added).  Plaintiffs, who have been released from detention and reunified with their

8    children, do not claim that they are somehow prevented from obtaining any future

9    necessary mental health treatment on their own.  Nor have they shown that the

10   reunification has failed to reduce the risk of escalation.  Without more, Plaintiffs cannot

11   show that they will suffer an irreparable injury absent the preliminary injunction.

12         In so asserting, the Government recognizes that the violation of constitutional rights

13   is unquestionably an irreparable injury.  Motion at 22 (citing *Hernandez v. Sessions*, 872

14   F.3d 976, 994 (9th Cir. 2017)).  To the extent Plaintiffs have shown that their due process

15   rights were likely violated, they have also shown that they were injured.  *Hernandez*, 872

16   F.3d at 994.  But that said, Plaintiffs failed to show that the preliminary injunction is now

17   necessary to prevent any further injury.  *See* Motion at 22.  Unlike the situation in

18   *Hernandez*, the Government policy at issue in this case, the zero tolerance separation

19   policy, is not currently applied to Plaintiffs and the Government is now working on

20   reunifying parents with their children.  *See id.* at 995.  Further, they have not shown that

21   the remedy they seek through an injunction is something they cannot do for themselves.

22   Accordingly, Plaintiffs have failed to show that the preliminary injunction is necessary to

23   avoid irreparable injury.

24         D.    The Government's Interests Would be Harmed, and the Public Interest
               Would Not Be Served by the Grant of Injunctive Relief.

25         The purpose of a preliminary injunction "is not to conclusively determine the rights

26   of the parties, but to balance the equities as the litigation moves forward."  *Trump v. Int'l*

27   *Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (citations omitted).   Therefore,

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION
2:18-cv-06081 JAK (SKx)

1   even if preliminary relief is warranted, "a court 'need not grant the total relief sought by

2   the applicant  but may mold its decree to meet the exigencies of the particular case.'"   *Id.*

3   (citation omitted); *but see* Motion at 24-25 (not detailing any specific indirect hardship the

4   named plaintiffs will face absent an injunction).

5        The balance of equities and consideration of the public interest factors are also

6   "pertinent  in assessing the propriety of any injunctive relief" and the court must weigh

7   them with "serious  consideration."   *Winter*, 555 U.S. at 27, 32.  When the Government is

8   a party, these last two factors merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  The

9   balance of hardships and public interest weigh in favor of Defendants.  In this case,

10  Plaintiffs  seek an injunction from this Court to order the Government to establish new

11  screening protocols, enhance the mental health treatment already available, and provide

12  treatment in a setting where Plaintiffs are not reminded of their separation (*i.e.*, outside of

13  detention).  But to do this, this Court must alter the *status quo* to monitor the Government's

14  compliance, particularly with respect to the class as a whole.  Granting the preliminary

15  injunctive relief  Plaintiffs seek would alter, rather than preserve, the *status quo*.

16  Interference with the manner in  which the Government carries out its duties in supervising

17  those it detains, on a preliminary basis, significantly harms the Government and is not

18  within the public's interest.

19       Plaintiffs' proposed interference with the Government's activities is particularly

20  aggravated given the Government's duties in complying with court orders in the *Flores*

21  and *Ms. L* cases.  The Government, and the public, have an interest in allowing these

22  efforts to move forward without the issuance of other orders from other district courts that

23  may impact compliance efforts.  In this somewhat fluid area of Government

24  responsibility, it is not in the public interest to compound the Government's burden until

25  necessary for it to carry out its action in accordance with established law.  Therefore,

26  Plaintiffs' motion should be denied.

27

28

## IV.   <u>CONCLUSION</u>

For all of the above reasons, Plaintiffs' Motion for Preliminary Injunction should be denied.

DATED: August 13, 2018                          Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division
ERNESTO H. MOLINA, JR.
Deputy Director
DANIEL GOLDMAN
Senior Litigation Counsel

LANCE JOLLEY
Trial Attorney
MICHELLE SLACK
Trial Attorney
SCOTT M. MARCONDA
Trial Attorney
MICHAEL HEYSE
Trial Attorney

*/s/ Michael Heyse*
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Michael.Heyse@usdoj.gov
Telephone: (202) 305-7002
Fax: (202) 616-4923
*Attorneys for Defendants*

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION
2:18-cv-06081 JAK (SKx)

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MS. J.P., MS. J.O., AND MS. R.M., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>JEFFERSON B. SESSIONS, et al.,<br><br>    Defendants. | Case No. 2:18-cv-06081-JAK (SKx)<br><br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 450 Fifth Street, NW, Washington, DC 20001. I am not a party to the above-entitled action. I have caused service of the accompanying DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION on all counsel of record, by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically provides notice.

I declare under penalty of perjury that the foregoing is true and correct.

DATED:  August 13, 2018

                                  */s/ Michael Heyse*
                                  MICHAEL HEYSE
                                  Trial Attorney
                                  Office of Immigration Litigation
                                  Civil Division, U.S. Department of Justice

                                  *Attorney for Defendants*

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASSWIDE PRELIMINARY INJUNCTION
2:18-cv-06081 JAK (SKx)