JOSEPH H. HUNT
Assistant Attorney General
ERNESTO H. MOLINA, JR.
Deputy Director
DANIEL GOLDMAN
Senior Litigation Counsel
MICHELLE R. SLACK
Trial Attorney
SCOTT MARCONDA
Trial Attorney
LANCE JOLLEY
Trial Attorney

MICHAEL C. HEYSE
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Dep't of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-7002
Fax: (202) 616-4923

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| MS. J.P., et al.,<br><br>   Plaintiffs,<br><br> vs.<br><br>JEFFERSON B. SESSIONS, et al.,<br><br>   Defendants. | Case No. 2:18-cv-06081-JAK-SK<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS; SUPPORTING DECLARATION**<br><br>HEARING DATE: January 7, 2019; 8:30am<br>Location:  Courtroom 10B<br>Hon. John A. Kronstadt |

## <u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ...................................................................................... ii

I.    INTRODUCTION ......................................................................................... 1

II.   BACKGROUND ........................................................................................... 3

   A.  J.P. & L.P. ............................................................................................... 3

   B.  J.O. & T.B. ............................................................................................. 4

   C.  R.M. & S.Q. ........................................................................................... 4

III.  LEGAL STANDARDS AND THE STANDARD OF REVIEW ................. 5

IV.   ARGUMENT ................................................................................................ 5

   A.  THIS COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(B)(1) BECAUSE PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF IS MOOT .................................................. 5

   B.  DISMISSAL PURSUANT TO FED. R. CIV. P. 12(B)(6) IS WARRANTED BECAUSE PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH THE COURT CAN GRANT RELIEF. ................................................................... 9

   C.  THE COURT SHOULD DISMISS THE COMPLAINT AS SOVEREIGN IMMUNITY ALSO BARS PLAINTIFFS' CLAIMS. ....................................... 16

   D.  THIS ACTION IS DUPLICATIVE OF *MS. L.*, IMPROPERLY ATTEMPTING TO SPLIT CLAIMS FOR RELIEF, AND THE COURT SHOULD DISMISS THIS ACTION UNDER FED.R. CIV. P. 12(B)(6) ....................................... 19

   E.  THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(B)(3) BECAUSE VENUE IS IMPROPER AS THIS ACTION IS NOT BASED ON EVENTS OR PARTIES WITHIN THIS DISTRICT. ............................................... 22

CONCLUSION ..................................................................................................... 25

CERTIFICATE OF SERVICE

1

# **TABLE OF AUTHORITIES**

2

*Abdala v. INS,*
  488 F.3d 1061 (9th Cir. 2007) ................................................................. 6

3

*Adams v. Cal. Dep't of Health Servs.,*
  487 F.3d 684 (9th Cir. 2007) ........................................................... 19, 20

4

*Adler v. Duval School Bd.,*
  112 F.3d 1475 (11th Cir. 1997) ........................................................ 6, 13

5

6

*Alabama-Coushatta Tribe of Texas v. United States,*
  757 F.3d 484 (5th Cir. 2014) .............................................................. 17

7

*Alvarez-Machain v. U.S.,*
  107 F.3d 696 (9th Cir. 1996) .............................................................. 10

8

9

*Angov v. Lynch,*
  788 F.3d 893 (9th Cir. 2013) ................................................................ 8

10

*AOL LLC,*
  552 F.3d 1077 (9th Cir. 2009) ............................................................ 22

11

12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................... 5, 10

13

*Barrera–Echavarria v. Rison,*
  44 F.3d 1441 (9th Cir. 1995) ................................................................ 8

14

15

*Bayer v. Neiman Marcus Group, Inc.,*
  861 F.3d 853 (9th Cir. 2017) ................................................................ 7

16

*Beacon Theaters, Inc. v. Westover,*
  359 U.S. 500 (1959) ............................................................................ 6

17

18

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................. 5, 10, 12

19

*Bell v. Wolfish,*
  441 U.S. 520 (1979) ............................................................. 10, 14, 15

20

21

*Block v. Rutherford,*
  468 U.S. 576 (1984) .......................................................................... 10

22

*Bowen v. Massachussetts,*
  487 U.S. 879 (1988) .................................................................... 17, 18

23

24

*Bradley v. United States,*
  951 F.2d 268 (10th Cir. 1991) ............................................................ 16

25

*Charles v. OCNY,*
  2017 WL 4402576 (S.D.N.Y. 2017) .............................................. 11, 12

26

27

*Christopher v. United States,*
  2001 WL 1256915 (N.D. Cal. Oct. 12, 2001) ...................................... 25

28

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) .................................................................. 6, 7, 8, 14

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .................................................................. 6

*Clardy v. Pinnacle Foods Grp., LLC*,
   2017 WL 57310 (N.D. Cal. Jan. 5, 2017) .............................. 20

*Clements v. Airport Auth. of Washoe County*,
   69 F.3d 321 (9th Cir. 1995) ................................................... 20

*Cook v. California*,
   2016 WL 4161114 (E.D.C.A. 2016) ...................................... 11

*Cty. of Sacramento v. Lewis*,
   523 U.S. 833 (1988) ................................................................ 12

*DaimlerChrysler Corp v. Cuno*,
   547 U.S. 332 (2006) ................................................................ 5

*De Silva v. Donovan*,
   81 F. Supp. 3d 20 (D.D.C. 2015) ........................................... 18

*Dep't of Army v. Blue Fox, Inc.*,
   525 U.S. 255 ............................................................................ 18

*DeShaney v. Winnebago County Dep't of Social Svcs.*,
   489 U.S. 189 (1989) .......................................................... 13, 15

*Doe v. Kelly*,
   878 F.3d 710 (9th Cir. 2017) ....................................... 10, 15, 16

*Doe 1 v. AOL LLC*,
   552 F.3d 1077, 1081 (9th Cir. 2009) ..................................... 22

*Dugan v. Rank*,
   372 U.S. 609 (1963) ................................................................ 16

*EEOC v. Peabody W. Coal Co.*,
   610 F.3d 1070 (9th Cir. 2010) ............................................... 17

*Eric v. Sec'y of U. S. Dep't of Hous. & Urban Dev.*,
   464 F. Supp. 44 (D. Alaska 1978) .......................................... 18

*Estelle v. Gamble*,
   429 U.S. 97 (1976) ......................................................... 11, 12, 14

*FDIC v. Meyer*,
   510 U.S. 471 (1994) .......................................................... 16, 19

*Flores v. Sessions*,
   862 F.3d 863 (9th Cir. 2017) ................................................. 21

*Friends of the Earth, Inc. v. Bergland*,
   576 F.2d 1377 (9th Cir. 1978) ............................................... 6

*Friends of the Earth, Inc. v. Laidlaw Env. Svcs., Inc.,*
    528 U.S. 167 (2000) ............................................................ 6

*Frost v. Agnos,*
    152 F.3d 1124 (9th Cir. 1998) .......................................... 10

*Gallo Cattle Co. v. United States Dep't of Agric.,*
    159 F.3d 1194 (9th Cir. 1998) .......................................... 17

*Gibson v. County of Washoe, Nev.,*
    290 F.3d 1175 (9th Cir. 2002) .......................................... 10

*Great-West Life Ins. Co. v. Knudson,*
    534 U.S. 204 (2002) .......................................................... 17

*Gros Ventre Tribe v. United States,*
    469 F.3d 801 (9th Cir. 2006) ............................................ 17

*Hawaii v. Gordon,*
    373 U.S. 57 (1963) ............................................................ 16

*Hodgers-Durgin v. De La Vina,*
    199 F.3d 1037 (9th Cir. 1999) ........................................ 8, 9

*Hubbard v. EPA,*
    982 F.2d 531 (D.C. Cir. 1992) .......................................... 18

*Hutchinson v. United States,*
    838 F.2d 390 (9th Cir. 1988) ............................................ 14

*Iron Arrow Society v. Heckler,*
    464 U.S. 67 (1983) .............................................................. 6

*Jenkins v. West,*
    1995 WL 704018 (D.D.C. Oct. 23, 1995) ........................ 25

*Jordan v Sosa,*
    654 F.3d 1012 (10th Cir. 2011) ........................................ 7

*Kaiser v. Blue Cross of Cal.,*
    347 F.3d 1107 (9th Cir. 2003) .......................................... 16

*Kennedy v. City of, Richfield,*
    439 F.3d 1055 (9th Cir. 2006) .......................................... 11

*Kim v. McHugh,*
    2014 WL 1580614 (D. Haw. Apr. 18, 2014) .................... 25

*Lamar Adver of Penn, LLC v. Town of Orchard Park, New York,*
    356 F.3d 376 (2d Cir. 2004) .............................................. 9

*Larson v. Domestic & Foreign Commerce Corp.,*
    337 U.S. 682 (1949) .......................................................... 16

*Lew v. Moss,*
    797 F.3d 747 (9th Cir. 1986) ............................................ 23

*Lewis v. Casey,*
    518 U.S. 343 (1996) ........................................................................... 9

*Lewis v. Continental Bank Corp.,*
    494 U.S. 472 (1990) ........................................................................... 6

*Lolli v. County of Orange,*
    351 F.3d 410 (9th Cir. 2003) ........................................................... 10

*Malone v. Bowdoin,*
    369 U.S. 643 (1962) ......................................................................... 16

*McQueary v. Laird,*
    449 F.2d 608 (10th Cir. 1971) ......................................................... 16

*Mitchell v. Dupnik,*
    75 F.3d 517 (9th Cir. 1996) ............................................................... 6

*Ms. L. v. ICE,*
    310 F. Supp. 3d 1133 (S.D. Cal. 2018) ............................................. 7

*Munns v. Kerry,*
    782 F.3d 402 (9th Cir. 2015) .......................................................... 7, 8

*Murphy v. Hunt,*
    455 U.S. 67 (1983) ............................................................................. 6

*Navajo Nation v. Dep't of the Interior,*
    876 F.3d 1144 (9th Cir. 2017) ......................................................... 17

*Norton v. Larney,*
    266 U.S. 511 (1925) ........................................................................... 5

*Norton v. Southern Wilderness Alliance,*
    542 U.S. 55 (2004) ........................................................................... 17

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
    678 F.2d 93 (9th Cir. 1982) ............................................................. 20

*Piedmont Label Co. v. Sun Garden Packing Co.,*
    598 F.2d 491 (9th Cir. 1979) ........................................................... 22

*Plack v. Cypress Semiconductor,*
    864 F. Supp. 957 (N.D. Cal. 1994) .................................................. 20

*Presidential Gardens Assocs. v. United States,*
    175 F.3d 132 (2d Cir. 1999) ............................................................ 16

*Reuben H. Donnelley Corp. v. F.T.C.,*
    580 F.2d 264 (7th Cir. 1978) ....................................................... 23, 24

*Robinson v. United States,*
    586 F.3d 683 (9th Cir. 2009) ............................................................. 5

*Rosebrock v. Mathis,*
    745 F.3d 963 (9th Cir. 2014) ........................................................... 18

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) .................................................................... 5

*Shaar v. INS*,
    141 F.3d 953 (9th Cir. 1998) ...................................................... 7

*Shaughnessy v. United States ex rel. Mezei*,
    345 U.S. 206 (1953) .................................................................... 8

*Simmons v. Himmelreich*,
    136 S. Ct. 1843 (2016) ............................................................... 19

*Smith v. Cummings*,
    445 F.3d 1254 (10th Cir. 2006) ................................................. 23

*Smith v. McCullough*,
    270 U.S. 456 (1926) .................................................................... 5

*Spencer v. Kemna*,
    53 U.S. 1 (1998) ......................................................................... 6

*The Presbyterian Church v. United States*,
    870 F.2d 518 (9th Cir. 1989) ...................................................... 17

*Toguchi v. Chung*,
    391 F.3d 1051 (9th Cir. 2014) .................................................... 11

*United States v. Mitchell*,
    445 U.S. 535 (1980) .................................................................... 16

*United States v. Mitchell*,
    463 U.S. 206 (1983) .................................................................... 16

*Updike v. Multinomah County*,
    870 F.3d 939 (9th Cir. 2017) ...................................................... 8

*V S Ltd. Partnership v. Dep't of Hous. and Urban Dev.*,
    235 F.3d 1109 (8th Cir. 2000) .................................................... 16

*Valley Forge Christian Coll. v. AMs. United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) .................................................................... 18

*Wakefield v. Thompson*,
    177 F.3d 1160 (9th Cir. 1999) ....................................... 10, 11, 12, 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................... 20

*Wood v. Housewright*,
    900 F.2d 1332 (9th Cir. 1990) .................................................... 11

*Youngberg v. Romeo*,
    457 U.S. 307 (1982) .................................................................... 14

# STATUTES

## Administrative Procedure Act of 1946, as amended:

5 U.S.C. §702(2) ............................................................................................. 19

5 U.S.C. § 702 ................................................................................................. 17

5 U.S.C. § 704 ................................................................................................. 17

5 U.S.C. § 706(a)(1) ........................................................................................ 17

## Immigration and Nationality Act of 1952, as amended:

8 U.S.C. § 1101(a)(20) ..................................................................................... 22

8 U.S.C. § 1225(b) ............................................................................................. 4

8 U.S.C. § 1325(a) ............................................................................................. 4

## Judiciary and Judicial Procedure Act of 1789, as amended:

28 U.S.C. § 84(c) ............................................................................................. 22

28 U.S.C. § 1332(a)(2) ..................................................................................... 22

28 U.S.C. § 1346 ............................................................................................. 17

28 U.S.C. § 1391(c) ......................................................................................... 22

28 U.S.C. § 1391(c)(1) ..................................................................................... 22

28 U.S.C. § 1391(e) ......................................................................................... 24

28 U.S.C. § 1391(e)(1) ..................................................................................... 22

28 U.S.C. § 2679(a) ......................................................................................... 19

## Rules

Fed. R. Civ. P. 12(b) ......................................................................................... 3

Fed. R. Civ. P. 12(b)(3) ................................................................................... 22

Fed. R. Civ. P. 12(b)(6) .............................................................................. 9, 19

Fed. R. Civ. P. 21 ............................................................................................. 25

## Other Authorities

Sergio J. Campos, The Class Action As Trust,
   91 WASH. L. REV. 1461 (2016) ................................................................. 18

## I.     INTRODUCTION

The Government submits this memorandum of law in support of Defendants' motion to dismiss. The named Plaintiffs, J.P., J.O., and R.M., were formerly detained at immigration detention facilities, and demand "appropriate" mental health care attendant to their separation from their children. The constitutionality of the Government's "zero tolerance" policy that led to their separation is not before the Court. The question of whether the Government has a family separation policy, and whether the separation of families by the Government violates the law, is already the subject of a certified class action and preliminary injunction in the U.S. District Court for the Southern District of California. The only matter before this Court is Plaintiffs' claim for compensatory damages – cloaked in injunctive garb – to obtain "appropriate" mental health care for harm allegedly arising out of their separation from their children, but that claim more properly sounds in tort. Plaintiffs' claims for injunctive relief are moot: when Plaintiffs filed their Complaint on July 12, 2018, the zero tolerance policy had already been enjoined (as of June 26, 2018), and prior to seeking class certification and a preliminary injunction, all named Plaintiffs had been released and reunited with their children. Any fears of future harm they may assert as a result of Government detention or family separation are purely speculative. Plaintiffs have likewise failed to establish that, as a matter of law, Defendants owe Plaintiffs any statutory or constitutional duty to provide the undefined post-release care they appear to be seeking.

Due Process requires that detained individuals receive adequate mental health care and treatment while detained. The Government provided such care, and its obligations to provide any care terminated upon release of Plaintiffs from custody. Contrary to Plaintiffs' claim, they do not have a right to some form of ongoing psychological treatment, outside of Government custody, or treatment of Plaintiffs' choosing. No court has ruled that a detention or custodial agency must provide any such care after release from detention or custody, or if at all, beyond a brief transitional period. Further, any

1  federal agency-caused injury, continuing or otherwise, may only be redressed through an

2  applicable waiver of Sovereign Immunity, which Plaintiffs have failed to plead.

3      The volume of speculation required to discern the nature of Plaintiffs' claims

4  establishes that the Court should dismiss the Complaint. Plaintiffs were identified only by

5  pseudonyms until September 13, 2018, hindering Defendants from investigating details

6  about any of them, such as what medical conditions they may have exhibited while

7  detained and what treatments they were offered, received, or declined. Plaintiffs fail to

8  allege any such information, and if they declined care, why they did so. Plaintiffs fail to

9  allege that they had made any specific requests for medical or mental health services, or

10  why they did not request them, or any denial thereof. Plaintiffs do allege, however, that

11  they did not and do not want therapeutic treatment while in detention or custody and that

12  providing such care can "undermine" or "make impossible, meaningful therapeutic

13  progress," apparently indicating that no care offered to Plaintiffs while detained could

14  ever be adequate. Complaint, ECF Docket No. 1 ("Compl.") at ¶156 & n.165. As a result,

15  Plaintiffs fail to allege facts plausibly revealing how any treatment provided by the

16  detention facilities was inadequate. Without these factual allegations, the cognizability of

17  the claims and the appropriateness of any relief cannot be assessed, let alone actually

18  determined. The Court can only speculate as to the specific medical and mental health

19  treatment Plaintiffs desire, and from whom, where, and for how long it might be provided.

20  Plaintiffs also apparently speculate that they will be subjected to a zero tolerance-like

21  policy in the future, such that they will be re-separated from their children, but that cannot

22  happen based on the preliminary injunction issued in *Ms. L. v. ICE, et al.*, 3:18-cv-00428

23  (S.D. Cal.), ECF No. 83 ("*Ms. L.*").

24      Accordingly, the Court should dismiss Plaintiffs' complaint for five reasons. First,

25  Plaintiffs' claims are moot, as they may not benefit from the injunctive relief demanded,

26  given that the likelihood of them benefiting from it requires excessive speculation.

27  Second, they failed to identify any statutory duty under which the Government owes them

28  unlimited post-detention mental health care. Third, Plaintiffs' claims are barred by

sovereign immunity because they seek compensatory relief and because the exclusive procedure for their tort-based claims against the United States forbids injunctive relief. Fourth, the Court should not certify a class that is identical to an existing class or allow the claim-splitting Plaintiffs seek. Lastly, Plaintiffs have not shown that this Court is the proper venue for their claims because no substantial parties or events are based in this District.[1]

## II.    BACKGROUND

Plaintiffs seek compensatory damages, disguised as injunctive relief, based on alleged mental health injuries allegedly arising from their detention and separation from their children subsequent to illegally entering the United States. They seek to certify a class of all adult parents nationwide who (1) were, are, or will be detained in immigration custody by [DHS], and (2) have a minor child who is or will be separated from them by DHS and detained in [ORR] custody or foster care, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child. Compl. at ¶165.

### A. J.P. & L.P.

J.P. and her sixteen-year-old daughter, L.P., alleged natives and citizens of Guatemala, on or about May 17, 2018, illegally entered the United States through Arizona, and they were apprehended and detained shortly thereafter. Compl. at ¶17. J.P. alleges that detainees endured difficult detention conditions. *Id.* at ¶18. J.P. was later transferred to the James A. Musick Facility, while L.P. was transferred to ORR custody at the Southwest Key Programs' Casa Phoenix. *Id.* at ¶¶16, 19. In ORR custody, L.P. met with an attorney, received medical and weekly counseling services, and had limited contact with J.P. *Id.* at ¶20. On July 5, 2018, clinical social worker Alejandra Acuña assessed that J.P. had symptoms of post-traumatic stress disorder, depression, and anxiety, and that J.P. lacked ready access to mental health treatment. *Id.* at ¶23. J.P. claims that she

---

[1] Defendants intend to challenge the merits and substance of both of Plaintiffs' constitutional claims, but such challenges are not raised within this motion in light of the limits of Rule 12(b) of the Federal Rules of Civil Procedure.

1    "did not receive any mental health screening form" while detained. Lucero Chavez Third

2    Decl. at ¶5. On July 16, 2018, J.P. and L.P. were released and reunited. Pseud. Mot. at 5;

3    Harper Declaration (Harp. Decl.) at ¶2.

4          **B. <u>J.O. & T.B.</u>**

5          Plaintiff J.O. and her sixteen-year-old daughter, T.B., are alleged natives and

6    citizens of Honduras. Compl. at ¶24. They illegally entered the United States on or about

7    May 17, 2018, somewhere on the Texas-Mexico border. *Id.* The next day they were

8    apprehended by an immigration officer, transported to a nearby station, and detained. *Id.*

9    at ¶25. On May 21, 2018, J.O. pled guilty to illegally entering the United States. *Id.* at ¶29.

10   J.O. was transferred to Laredo, Texas, then to the Federal Detention Center at Seattle-

11   Tacoma (SeaTac), Washington, and then to the Northwest Detention Center (NDC) in

12   Tacoma, Washington. *Id.* at ¶30. As of July 11, 2018, she claimed she had not received

13   "any mental health or counseling services from the government to address … trauma." *Id.*

14   at ¶32. At SeaTac, J.O. was asked questions from a psychology questionnaire. Declaration

15   of Cortes Romero, ECF No. 119-3 (Cortes Romero Decl.), at ¶8. On May 20, 2018, T.B.

16   was transferred to ORR care in the Southwest Key Programs' Antigua Facility in Texas

17   (Antigua). Compl. at ¶31. J.O. and T.B. had limited contact until they were released and

18   reunited on July 12, 2018. *Id*; Harp. Decl. at Harp. ¶4. J.O. was released on bond and has

19   to check in with ICE as needed. J.O. Decl. at ¶5.

20         **C. <u>R.M. & S.Q.</u>**

21         R.M. and her fifteen-year-old daughter, S.Q., are alleged natives and citizens of El

22   Salvador. Compl. at ¶33. On or about May 18, 2018, R.M. and S.Q. illegally entered the

23   United States somewhere along the Texas-Mexico border. *Id.* They flagged down an

24   immigration officer, who transported them to a nearby station, where they were initially

25   detained. *Id.* at ¶¶33-34. R.M. was subject to mandatory detention and prosecution for

26   illegal entry. *See* 8 U.S.C. §§ 1225(b), 1325(a). On May 21, 2018, R.M. pled guilty to

27   illegally entering the United States. *Id.* at ¶39. S.Q. was transferred to ORR care in

28   Antigua, where she talked to a counselor on a weekly basis and had limited contact with

R.M. *Id.* at ¶40. After R.M.'s criminal proceedings, she was detained in Laredo, Texas, SeaTac, and NDC. *Id.* R.M. claims that she received no assessment or mental health services. *Id.* at ¶43. At NDC, R.M. filled out a health questionnaire that asked whether she would like to see a mental health provider, and later met with a psychologist. R.M. Declaration, ECF No. 119-6 (R.M. Decl. 2) at ¶¶2, 4. On July 12, 2018, R.M. and S.Q. were released and reuinted. *Id.* at ¶¶5, 6; Harp. Decl. at ¶3.

## III.   LEGAL STANDARDS AND THE STANDARD OF REVIEW

When a district court lacks the statutory or constitutional authority to adjudicate a claim, that claim should be dismissed. *Smith v. McCullough*, 270 U.S. 456, 459 (1926). Plaintiffs have the burden to establish, by a preponderance of the evidence, that this Court has subject matter jurisdiction to adjudicate the complaint. *See DaimlerChrysler Corp v. Cuno*, 547 U.S. 332, 342 (2006); *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009). Although a court must accept as true all material factual allegations in the complaint, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), while assessing jurisdiction, the court also must refrain from drawing from the pleadings inferences favorable to the party asserting jurisdiction. *Norton v. Larney*, 266 U.S. 511, 515 (1925)). In considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true the well-pled factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). But conclusory allegations do not enjoy a presumption of truth, and the court should identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679-81 (2009). If well-pled factual allegations exist, the court must then determine whether they plausibly give rise to an entitlement for relief.  *Id.*

## IV.   ARGUMENT

### A. This Court Should Dismiss the Complaint under Rule 12(b)(1) Because Plaintiffs' Claim for Injunctive Relief is Moot.

Plaintiffs' demand for injunctive relief, *see* Compl. at ¶¶13-15, 172-85, is moot. No named Plaintiff remains detained or separated from her child, and to the extent, if any, the

1  Government might be required to provide transitional post-release care, any transitional

2  post-release period has expired. The case or controversy requirement of Article III,

3  Section 2 of the United States Constitution subsists through all stages of federal judicial

4  proceedings, and deprives a court of jurisdiction to hear moot cases. *Spencer v. Kemna*, 53

5  U.S. 1, 7 (1998). A plaintiff "must have suffered, or to be threatened with, an actual injury

6  traceable to the defendant and likely to be redressed by a favorable judicial decision."

7  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990); *Clapper v. Amnesty Int'l*

8  *USA*, 568 U.S. 398, 409 (2013). But mootness deprives a court of the power to act when

9  nothing remains to remedy. *Spencer*, 523 U.S. at 17; *Iron Arrow Society v. Heckler*, 464

10  U.S. 67, 70 (1983). A case becomes moot if the "issues present are no longer 'live' or the

11  parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 67, 70

12  (1983); *Abdala v. INS*, 488 F.3d 1061, 1063 (9th Cir. 2007); *see also City of Los Angeles*

13  *v. Lyons*, 461 U.S. 95, 111 (1983). Mootness functions to ensure judicial efficiency, and

14  that litigants employ scarce court resources to resolve only cases in which they have a

15  concrete stake. *Friends of the Earth, Inc. v. Laidlaw Env. Svcs., Inc.*, 528 U.S. 167, 192

16  (2000). Such concerns are especially valid when mootness occurs early in a case, as

17  opposed to years into litigation. *Id.*

18       Injunctive relief is equitable in nature. *Beacon Theaters, Inc.* v. *Westover*, 359 U.S.

19  500, 507-08 (1959). As "[e]quitable relief is a prospective remedy, intended to prevent

20  future injury," and "a claim for money damages looks back in time and is intended to

21  redress a past injury," the future-looking injunctive claims in this Complaint are moot.

22  *Adler v. Duval School Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997); *Lyons*, 461 U.S. at 107

23  n.8 (holding that emotional consequences of prior acts do not provide a sufficient basis for

24  injunctive relief). Further, "[w]here the activities sought to be enjoined have already

25  occurred, and the appellate courts cannot undo what has already been done, the action is

26  moot." *Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir. 1978).

27  Because this Court cannot decide a case that does not affect the rights of litigants in this

28

1   case, the Court should dismiss the case. *See Mitchell v. Dupnik*, 75 F.3d 517, 527-28 (9th

2   Cir. 1996).

3       Plaintiffs' demand for injunctive relief based on their complaint of enduring

4   "continued" separation and detention, *see* Compl. at ¶¶172-85, is moot. Compl. at ¶¶9-10.

5   Plaintiffs and their children have been released and reunited. Unlike the situation in

6   *Laidlaw*, where mootness was raised years into the case, Plaintiffs' claims were moot:

7   (1) before commencing the case (meaning they may also lack standing), (2) upon their

8   release and reunification with their children, or at best (3) within the past month, which

9   constituted a reasonable post-release transitional-care period, if any such period applies.

10  Even if a plaintiff were subject to a prior illegal act, in order to have standing to seek an

11  injunction, the plaintiff must demonstrate a substantial risk of *re*-injury as a result of that

12  act. *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 864 (9th Cir. 2017); *Munns v.*

13  *Kerry*, 782 F.3d 402, 411-12 (9th Cir. 2015); *see also Lyons*, 461 U.S. at 109 (plaintiffs

14  seeking an injunction must demonstrate that they are "realistically threatened by a

15  repetition of [their] experience"); *Jordan v Sosa*, 654 F.3d 1012, 1029-37 (10th Cir.

16  2011). Plaintiffs' fears of future harm if they were again separated require speculation far

17  too excessive to warrant injunctive relief now. The Government remains subject to the *Ms.*

18  *L.* injunction, rendering any injunction in this case duplicative, especially considering that

19  the zero tolerance policy has ended, and Plaintiffs all benefited from the *Ms. L.* injunction,

20  as they were released and reunited nearly simultaneously with filing the instant suit. Any

21  future harm Plaintiffs suffer would be litigated in *Ms. L.*, or separately in the event of any

22  subsequent relevant policy announcement. Plaintiffs do not cite any Government plans to

23  violate the binding *Ms. L.* injunction, with which the Government has already

24  demonstrated substantial continuing efforts to comply. If a parent is detained because she

25  has been charged with a crime, a parent may be separated from her child.[2] *Ms. L. v. ICE,*

26

27  [2] Plaintiffs can only speculate that a future policy would be enacted and enforced against them in a way that could cause their alleged harm. That no such policy exists similarly

28  eviscerates as moot their equal protection claim as stated in their Complaint at ¶¶182-85.

310 F. Supp. 3d 1133, 1143 (S.D. Cal. 2018). Plaintiffs do not dispute this, but their claim requires improper speculation that they would be charged with a crime that requires detention or bond revocation. *See Lyons*, 461 U.S. 109. Furthermore, the "emotional consequences" of a prior illegal act do not warrant an injunction without showing a "real and immediate threat of future injury" caused by the defendant. *Id.* at 107 n.8. Such damages may be compensable in tort, but not via injunction. *Id.; see also Updike v. Multinomah County*, 870 F.3d 939, 947-48 (9th Cir. 2017) (upholding dismissal, for lack of standing, a suit where a disabled plaintiff alleged that he was denied ADA accommodation when arrested because his claim required speculating that he would again face both arrest and a lack of ADA accommodation).

Plaintiffs' cursory habeas allegation is equally unavailing. Compl. at ¶58. Prior to filing their Complaint, Plaintiffs were in the process of being released and reunited with their children, pursuant to the nationwide injunction in *Ms. L. Ms. L. v. ICE, et al.*, 3:18-cv-00428 (S.D. Cal.), ECF No. 83. That injunction remains in place, and Plaintiffs have been released and reunited with their children. Pseud. Mot. at 2; Harp. Decl. at ¶2-4. Any contrary assertion is speculative and not properly the subject of injunctive relief. *Munns*, 782 F.3d at 411; *Lyons*, 461 U.S. at 109. Plaintiffs' speculation that they may be re-detained under a policy that only applied upon entry into the United States and which is currently enjoined does not create the actual controversy that must exist for an injunction to be issued. *Lyons*, 461 U.S. at 104-05. In *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037

---

The zero tolerance policy's constitutionality is not before the Court, and attendant issues are being actively litigated in *Ms. L.* In any event, as aliens unlawfully in the United States, Plaintiffs have limited rights. *Shaar v. INS*, 141 F.3d 953, 959 (9th Cir. 1998). Relevant here, Plaintiffs only have the right to have their asylum application processed within the procedures authorized by Congress. *See Angov v. Lynch*, 788 F.3d 893, 898-99 (9th Cir. 2013) (for aliens not lawfully present in the United States, "procedural due process is simply '[w]hatever the procedure authorized by Congress' happens to be.") (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1449 (9th Cir. 1995) ("[E]xcludable aliens have no procedural due process rights in the admission process . . . ."). Plaintiffs have not alleged any interference with their ability to pursue their asylum claims, and in fact, Plaintiffs admit that their asylum claims are proceeding, thus suggesting that the opposite is true.

(9th Cir. 1999) (en banc), the Ninth Circuit concluded that "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Id*. at 1045. The Ninth Circuit explained:

> [I]t is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution . . . . [T]he distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly.

*Hodgers-Durgin*, 199 F.3d at 1043 (quoting *Lewis v. Casey*, 518 U.S. 343, 349-50 (1996)). With these concerns in mind, the Ninth Circuit concluded that "[w]hether the named Plaintiffs are likely to be stopped again by the CBP is simply too speculative to warrant an equitable judicial remedy … that would require, or provide a basis for requiring, that the Border Patrol change its practices." *Id.* at 1044. Here, based only on their allegations of past injury, Plaintiffs seek a poorly-defined nationwide injunction about indeterminate post-detention mental health treatment.

Lastly, future medical treatment, under these circumstances, is also not available as prospective injunctive relief. Rather, it is a request for compensatory damages beyond the appropriate scope of injunctive relief. Moreover, the Government receives deference to the assertion that the complained-about conduct has been discontinued in determining whether a suit seeking prospective injunctive equitable relief against that conduct has been mooted. *Lamar Adver of Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 376-77 (2d Cir. 2004).

## B. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6) is Warranted Because Plaintiffs Have Failed to State a Claim Upon Which The Court Can Grant Relief.

In addition to being moot, Plaintiffs' claims of alleged violations of their Due Process and Equal Protection rights fail to state a claim upon which the relief they seek— post-detention, undefined, individual, ongoing mental health care at Government expense—can be granted. Compl., Prayer for Relief at ¶¶3-5. Plaintiffs must set forth

1    "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

2    face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To provide the

3    framework of a complaint, factual allegations must support legal conclusions. *Id.* at 679.

4    The Government does not owe a free-standing duty to provide medical care to

5    former detainees. Immigration detainees receive treatment equal to pretrial detainees, and

6    cannot endure "punitive" conditions. *See Bell v. Wolfish*, 441 U.S. 520, 534-37 (1979). As

7    detainees, Plaintiffs were entitled to receive "adequate" medical care. *Gibson v. County of*

8    *Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002); *Frost v. Agnos*, 152 F.3d 1124, 1128

9    (9th Cir. 1998); *see Doe v. Kelly*, 878 F.3d 710, 722 (9th Cir. 2017); *Lolli v. County of*

10   *Orange*, 351 F.3d 410 (9th Cir. 2003) (applying Eighth Amendment inadequate medical

11   care analysis); *see also Alvarez-Machain v. U.S.*, 107 F.3d 696, 701 (9th Cir. 1996).

12   Under *Bell*, officials are accorded wide deference in adopting and executing policies and

13   practices necessary to preserve order, discipline, and institutional security, consistent with

14   their agency's mission. *See also Block v. Rutherford*, 468 U.S. 576, 591 (1984). For

15   example,  the extent and nature of care provided at Border Patrol stations depends on the

16   circumstances and type of facility. *Kelly,* 878 F.3d at 722-25.

17   "Adequate" care involves routine screenings for basic medical needs, identifying

18   emergency medical situations, and providing medication; but not all stages of that care

19   need to be provided by trained medical professionals. *Kelly*, 878 F.3d at 724. Anything

20   more than "adequate" care while detained constitutes compensatory damages. Plaintiffs

21   have failed to sufficiently plead that they demonstrated a need for any mental health care

22   beyond that already offered or received, or that they sought greater care and did not

23   receive it.

24   Post-release, even if the Government were to have obligation to provide care, which

25   the Government does not concede, any such obligation drops precipitously, exists only if

26   an officer intentionally interfered with simple care prescribed by a physician prior to

27   exiting custody, and lasts only for a very short period of time. *Wakefield v. Thompson*, 177

28

1  F.3d 1160, 1164 (9th Cir. 1999).[3] *Wakefield* notably involved a § 1983 Eighth

2  Amendment claim and requires that detaining officials show "deliberate indifference" to a

3  known medical issue. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Cook v.*

4  *California*, 2016 WL 4161114 *5 (E.D.C.A. 2016) (unpublished) (plaintiff failed to

5  demonstrate that his parole officer acted with deliberate indifference to his medical

6  condition by ordering him to leave an emergency room). Deliberate indifference is a "high

7  legal standard" involving the intentional or reckless denial, delay, or interference with a

8  detainee's medical care. *Toguchi v. Chung*, 391 F.3d 1051, 1057, 1060 (9th Cir. 2014).

9  "Gross negligence" falls short of establishing deliberate indifference. *Wood v.*

10  *Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

11      Plaintiffs have never alleged an Eighth Amendment violation, nor can they.

12  Moreover, *Wakefield* has never been applied in this Circuit in the immigration detention

13  context, and only once elsewhere, in *Charles v. OCNY*, 2017 WL 4402576 (S.D.N.Y.

14  2017), which involved plaintiffs seeking money damages based on a failure to provide

15  post-release mental health treatment. The *Charles* court dismissed the complaint because

16  while the Government *may* have owed the detainees post-release care, the failure to

17  provide that care did not "shock the conscience," as required to sustain a constitutional

18  violation, and the plaintiffs' claims more logically sounded in tort or medical malpractice.

19  *Id.* at 9-12. The plaintiffs while in custody suffered from known serious mental health

20  issues and presented symptoms, such as hallucinations and delusions, that were treated

21  with medications. *Id.* at *3-4. Both plaintiffs were released without medical discharge

22  plans, leading to both suffering serious complications. *Id.* The court found that their

23  "special relationship" to the Government *perhaps* engendered a constitutional obligation

24  to provide post-release care for a "reasonable" period, akin to the transitional period

25

26  [3] Plaintiffs claim that Defendants must treat any harm Defendants allegedly inflicted "until
    it is remedied." ECF No. 120 at 4 (citing *Kennedy v. City of Richfield*, 439 F.3d 1055,

27  1061 (9th Cir. 2006)). Plaintiffs misread *Kennedy*, which never indicates any such
    obligation exists, *Kennedy* involved the issue of whether the state owed a duty to protect

28  Kennedy from foreseeable harm, and in no way involved medical treatment.

discussed in *Wakefield*. *Id.* at 7-9 (citing *Wakefield*). The court ultimately held, though, that the Government's failure to provide plaintiffs with a discharge plan did not shock the conscience, such that they failed to establish a constitutional violation. *Id.* at 10-12 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 n.8 (1988)). The court explained that conscience-shocking conduct involves, objectively-weighed, intentionally or recklessly violating constitutional rights that pose an excessive risk to a detainee's health or safety. *Id.* at 10-11. The court noted that ICE guidance to contract facilities requires discharge planning, that the plaintiffs' claims were "more akin to negligence or malpractice claims than constitutional violations," and that the plaintiffs were "free" to seek out post-release medical assistance on their own. *Id.* at *11. The court added that medical malpractice does not rise to the level of a constitutional violation simply because the victim is or was a prisoner. *Id.* at *11 (quoting *Estelle*, 429 U.S. at 106).

Plaintiffs make no allegations that, while they were in custody, they were prescribed a specific course of mental health treatment to be provided post-release, and that such treatment plans were then deliberately ignored by Government officials. It is also not clear the *Wakefield* precedent would apply outside of the Eighth Amendment, or to a more amorphous concept of claims for post-traumatic mental health care (rather than a finite supply of a prescription drug).

Plaintiffs have not adequately pled that the care available to them is or was inadequate. *See generally* Compl. For example, Plaintiffs have not alleged what services they were offered, whether they refused those services or why, whether they indicated that they had mental health concerns, whether they requested any services or why not, or what specific services each Plaintiff needs, as well as why, where, or for how long. *Id*. Plaintiffs have not met the *Twombly* Rule 8 notice pleading standard because they rely on purely speculative and conclusory allegations that do not plausibly support their claims. Therefore, the Complaint cannot survive this motion. Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some

factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citation omitted).

In any event, Plaintiffs have been released from custody and reunited with their children, and since then, they have had the opportunity to obtain mental health services. If they have not done so, they put their claims for "transitional" care, if any, at risk. Once Plaintiffs and their children were released from custody, Defendants have no statutory obligation to provide ongoing mental health services. *See, e.g., DeShaney v. Winnebago County Dep't of Social Svcs.*, 489 U.S. 189, 199-201 (1989). Plaintiffs have had ample time to obtain mental health care, and they have not adequately pled that they sought post-release Government-provided mental health care that was denied to them; in fact, they demand non-Government-provided care. This makes their Due Process claims for equitable relief moot: "[w]hen the threat of future harm dissipates, the plaintiffs' claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." *Adler*, 112 F.3d at 1477. Plaintiffs also failed to adequately plead conscience-shocking deliberate indifference to their alleged need for mental health care, as required to establish a constitutional violation. They provided no evidence that they manifested severe mental health issues that the Government was aware of and intentionally or recklessly ignored.

The more specific nature of the relief sought further confirms that Plaintiffs seek compensatory relief. Plaintiffs indicate that they seek not only mental health treatment, but treatment provided by essentially *anyone but* the Government, and with no end point for treatment until it is cured. Compl. at ¶¶152-63, 185, Prayer for Relief at ¶4. These demands far exceed what *Wakefield* contemplated as *transitional* medical services afforded to recently-released detainees. 177 F.3d at 1164.

Defendants do not dispute that Plaintiffs, while detained, were entitled to constitutionally adequate mental health screening and care. But they are no longer detained or separated. If Plaintiffs intended to challenge the quality of that care, they

failed to plead why it is deficient in their individual situations or to assert an alternative standard that should apply. Instead, they rely on vague references to "appropriate" care that cannot suffice as a matter of pleading. Plaintiffs seek undefined mental health treatment, which constitutes compensatory damages. Injunctive relief is not appropriate here. *See Bell*, 441 U.S. at 538-39 (looking at the totality of the circumstances within a given institution). Assuming, *arguendo*, that providing family-based trauma treatment was the "best" form of treatment possible or "appropriate" treatment, Plaintiffs and purported class members are entitled to *adequate* treatment as previously discussed, and a plaintiff's general disagreement with the treatment each received would not suffice to state a claim in this context. *See Estelle*, 429 U.S. at 106; *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Although every patient's medical needs are unique, there is no due process requirement that detention facilities prepare for every foreseeable contingency. For example, the possibility that a detainee may present with "chest pains" does not require the facility to have a cardiologist on staff, only that staff be able to recognize a potentially serious medical condition and provide adequate care.

Plaintiffs attempt to allege something along the lines of intentional infliction of emotional distress or negligence, under the guise of a Due Process violation. Plaintiffs claim that Defendants, among other things, knowingly, intentionally, deliberately, and indifferently caused — or knew that they were likely to cause — traumatic psychological injury, when Defendants separated Plaintiffs from their children as part of mass asylum in-processing at the United States southern border. Psychological trauma is "emotional distress." "The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant. Of course, emotional upset is a relevant consideration in a damages action." *Cf. Lyons*, 461 U.S. at 107 n.8. Where Plaintiffs seek in their prayer for relief "subsequent trauma-informed remedial medical and mental-health services to address the trauma of separation," they are seeking a remedial injunction to force Defendants to treat, at ongoing

1    Government expense, Plaintiffs' emotional distress. Because an adequate remedy at law

2    exists, such relief falls outside the scope of injunctive relief, which is the only relief

3    Plaintiffs seek in this action.

4         Plaintiffs fail to specifically allege how medical screening or care at each stage of

5    their processing was constitutionally inadequate. *Kelly*, 878 F.3d at 720-23, 725 & n.3.

6    Further, any challenge to the conditions in place would necessarily differ, depending on

7    the type of facility at issue. For example, CBP's mission "is to detect and prevent the

8    entry of certain individuals – including terrorists, unauthorized aliens, drug smugglers,

9    and other criminals – into the United States between ports of entry." *Kelly*, 878 F.3d at

10   713. When a CBP agent apprehends an individual, CBP processes the detainee,

11   ascertaining the individual's identity, as well as his or her immigration and criminal

12   history. *Id*. The individual is then "repatriated, transferred into the custody of another

13   agency, referred for prosecution in accordance with the law or, in rare circumstances,

14   released." *Id*. When the Government takes a person into custody, it must provide for "the

15   person's 'basic human needs – e.g., food, clothing, shelter, medical care, and reasonable

16   safety.'" *Kelly*, 878 F.3d at 714 (quoting *DeShaney*, 489 U.S. at 199-200). The Ninth

17   Circuit specifically found adequate the use of "non-medical personnel to medically screen

18   detainees," reflective of "the unique nature of Border Patrol stations in light of [*Bell*, 441

19   U.S. 520]," practical considerations, and Defendants' limited resources. *Kelly*, 878 F.3d at

20   720-23, 725 & n.3. In other words, the circumstances – not the malady – determine

21   adequacy. Indeed, "precedent allows considerable flexibility as to when and how

22   constitutionally 'adequate medical care' is provided." *Id*. at 722. Plaintiffs proceeded

23   through stages from in-processing to release and reunification. No one would reasonably

24   contend that a first responder provide the same level of care as a hospital trauma unit,

25   because they encounter patients at different stages. "Adequate" medical care "does not

26   require that all stages of medical care be provided by trained medical staff." *Id.* at 724. For

27   example, complying with Transport, Escort, Detention and Search (TEDS) standards is

28   adequate at a CBP facility, and "'referring a patient to a hospital to obtain a U.S.

1    prescription,' is acceptable." *Id.* In light of these generally recognized differences,

2    Plaintiffs' failure to address this, either factually or legally, makes their claim implausible.

3    **C. The Court Should Dismiss The Complaint As Sovereign Immunity Also Bars**
     **Plaintiffs' Claims.**

4

5    Sovereign immunity bars Plaintiffs claims because they seek compensatory

6    injunctive relief. Essentially, Plaintiffs are attempting to thread their tort claims through

7    an injunctive relief needle. But such an action does not fall under any existing waiver of

8    sovereign immunity.

9    Plaintiffs sue federal agencies and federal officers in their official capacity. Such a

10   suit is considered a suit against the United States. "The courts shall not entertain an

11   unconsented suit which, while nominally against officers of the United States, is in reality

12   against the Government itself." *McQueary v. Laird*, 449 F.2d 608, 610 (10th Cir. 1971)

13   (citing *Hawaii v. Gordon*, 373 U.S. 57 (1963); *Dugan v. Rank*, 372 U.S. 609 (1963);

14   *Malone v. Bowdoin*, 369 U.S. 643 (1962); *Larson v. Domestic & Foreign Commerce*

15   *Corp.*, 337 U.S. 682 (1949)). Likewise, suits seeking injunctive relief are considered suits

16   against the United States, as individual officials have no authority to provide injunctive

17   relief. "Absent a waiver of sovereign immunity, courts have no subject matter jurisdiction

18   over cases against the [federal] government." *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107,

19   1117 (9th Cir. 2003) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). Any

20   waiver of sovereign immunity, however, must be strictly construed in favor of the United

21   States. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). In order to sue the United

22   States, a plaintiff "must show both a waiver of sovereign immunity and a grant of subject

23   matter jurisdiction." *V S Ltd. Partnership v. Dep't of Hous. and Urban Dev.*, 235 F.3d

24   1109, 1112 (8th Cir. 2000) (citing *Presidential Gardens Assocs. v. United States*, 175 F.3d

25   132, 139 (2d Cir. 1999)); *see also Bradley v. United States*, 951 F.2d 268, 270 (10th Cir.

26   1991). The existence of sovereign immunity deprives the courts of subject matter

27   jurisdiction over a particular claim. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

28

The *only* waiver Plaintiffs claim is under the APA, for judicial review of agency actions. Compl. at ¶59 (citing 5 U.S.C. § 702). Yet, the APA's wavier of sovereign immunity is limited to actions seeking only non-monetary damages. 5 U.S.C. § 702. Because Plaintiffs claim the legal equivalent of monetary damages, the APA's waiver does not apply to them and sovereign immunity bars their claims.[4]

The requirement that the APA's waiver applies only to suits seeking non-monetary damages is not limited to labels. *See Bowen v. Mass.*, 487 U.S. 879, 916 (1988) (Scalia, J., dissenting) (recognizing that creative pleading can obscure the distinction); *cf. Great-West*

_____

[4] At least one circuit court has held that the APA's waiver of sovereign immunity is also limited by other restrictions within the APA. *Cf. Alabama-Coushatta Tribe of Texas v. United States,* 757 F.3d 484, 489 (5th Cir. 2014). This issue is unsettled in the Ninth Circuit because a dispute exists about whether section 704's requirements — "final agency action" or adequate alternative remedies — serve as limitations on the APA's waiver of sovereign immunity or only on APA claims themselves. *Contrast Gallo Cattle Co. v. United States Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998) *with The Presbyterian Church v. United States*, 870 F.2d 518, 524 (9th Cir. 1989); *see also Gros Ventre Tribe v. United States*, 469 F.3d 801, 809 (9th Cir. 2006) (recognizing conflict); *EEOC v. Peabody W. Coal Co.,* 610 F.3d 1070, 1086 (9th Cir. 2010) (same); *but see Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1169-72 (9th Cir. 2017) (referring to this conflict as merely "perceived" and attempting to distinguish cases).

To the extent that section 704 does provide additional limits on the APA's waiver of sovereign immunity, Plaintiffs' claims are further barred by the requirements of "final agency action" and the absence of an adequate alternative means of review. Plaintiffs have not, and cannot, claim a "final agency action." *See Ms. L.,* 302 F. Supp. 3d at 1167 (holding family separation is not "final agency action" under section 704). Likewise, Plaintiffs may have other avenues to pursue claims against the United States, including those sounding in tort. *See* 28 U.S.C. § 1346.

Plaintiffs do not raise an APA claim, nor could they. Even if section 704's limitations do not apply to the APA's waiver of sovereign immunity, they do apply to claims brought under the APA. *See Gallo Cattle Co.*, 159 F.3d at 1198, *see also Navajo Nation*, 876 F.3d at 1178; *Ms. L.*, 302 F. Supp. 3d at 1167. Moreover, the APA allows suits to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(a)(1), but such suits are limited to "discrete" agency action that the agency is "required to take." *Norton v. Southern Wilderness Alliance*, 542 U.S. 55, 64 (2004). Section 706(a)(1) does not permit the type of "broad programmatic attack" sought by Plaintiffs' request for ongoing mental health services. *See id.* (citation omitted).

*Life Ins. Co. v. Knudson*, 534 U.S. 204, 211 n.1 (2002) ("Without this rule of construction, a statutory limitation to injunctive relief would be meaningless, since any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction."). Instead, a court is required to examine the "essence" of the request for relief. As a result, the more correct dividing line is between specific and compensatory relief. *See Bowen,* 487 U.S. at 893 (citation omitted); *see also Dep't of Army v. Blue Fox, Inc.,* 525 U.S. 255, 261-62 (rejecting a claim for relief in the form of a lien). Phrasing a prayer for relief in terms of specific relief "is not enough to escape sovereign immunity if such a claim is essentially" for compensatory relief. *See Eric v. Sec'y of U. S. Dep't of Hous. & Urban Dev.*, 464 F. Supp. 44, 48 (D. Alaska 1978). Thus, although Plaintiffs label their request for relief as declaratory and injunctive, their claims seek a remedy to compensate them for their alleged past injuries, not to halt illegal government conduct. *See* Sergio J. Campos, *The Class Action As Trust*, 91 WASH. L. REV. 1461, 1484 & n.121 (2016); *see also, e.g., Rosebrock v. Mathis*, 745 F.3d 963, 970 (9th Cir. 2014); *De Silva v. Donovan*, 81 F. Supp. 3d 20, 25 (D.D.C. 2015). Essentially, the trauma pled by Plaintiffs – for "intentional infliction of emotional and psychological harm" caused by the Government's separation of them from their children, Compl. at ¶178 – is a tort-based claim. The declaratory and injunctive relief they seek to redress their alleged past injuries is compensatory, not specific. *See* Compl. at ¶14. Essentially, the relief they seek is not "specific" relief under *Bowen* because the requested mental health benefits will not give Plaintiffs' "family integrity" or Equal Protection, but such relief may compensate Plaintiffs for their alleged injuries. In cases involving emotional injury for past harm, "[t]he classic remedy for that loss is money damages." *See Hubbard v. EPA*, 982 F.2d 531, 533 (D.C. Cir. 1992) (holding APA waiver inapplicable where injunction seeks compensatory relief).

Plaintiffs cannot cure this dilemma based solely on the "assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently." *Valley Forge Christian Coll. v. AMs. United for Separation of Church & State, Inc.*, 454 U.S. 464, 483 (1982). Absent a waiver of sovereign immunity, a plaintiff

1  cannot sue the United States or its agencies, and Congress has not waived sovereign

2  immunity for constitutional torts most often the subject of this type of litigation. *Meyer*,

3  510 U.S. at 486.

4         Furthermore, section 702(2) also prevents Plaintiffs from using the APA's waiver

5  of sovereign immunity. *See* 5 U.S.C. §702(2). Not only has Congress provided no explicit

6  waiver of sovereign immunity for compensatory injunctive relief, including for actions

7  sounding in tort, it expressly or impliedly forbids them. According to 28 U.S.C. § 2679(a),

8  for actions sounding in tort against the United States, an action for money damages under

9  1346(b) is the exclusive avenue available. *See Simmons v. Himmelreich*, 136 S. Ct. 1843,

10 1848 (2016) (discussing exclusive remedies provision). As a result, section 702(2)

11 prevents the application of the APA's waiver of sovereign immunity, as injunctive relief is

12 barred by the exclusivity provision in 28 U.S.C. § 2679(a).

13        Because of the compensatory nature of the relief Plaintiffs seek, as well as its tort-

14 like basis, the APA does not provide a waiver of sovereign immunity for their claims.

15 Accordingly, Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction

16 or for failure to state a claim upon which relief can be granted.

17 **D. This action is duplicative of *Ms. L.*, improperly attempting to split claims for**
18    **relief, and the Court should dismiss this action under Fed. R. Civ. P. 12(b)(6)**

19        The Court should reject Plaintiffs' attempt to circumvent the existing *Ms. L.* class

20 action by way of a separate cause of action, as they allege the same class qualifications as

21 *Ms. L.* and are merely splitting their claim for relief. They cannot do so merely by filing a

22 *different* case. "Plaintiffs generally have no right to maintain two separate actions

23 involving the same subject matter at the same time in the same court and against the same

24 defendant." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007). "[I]n

25 assessing whether the second action is duplicative of the first, we examine whether the

26 causes of action and relief sought, as well as the parties or privies to the action, are the

27 same." *Adams*, 487 F.3d at 689. Two causes of action are considered the same if they

28 "share a common transactional nucleus of facts" and rely on substantially the same

1  evidence." *Id.* In addition, "[t]he parties in both cases need not be identical, only

2  substantially similar." *Clardy v. Pinnacle Foods Grp., LLC*, No. 16-CV-04385, 2017 WL

3  57310, at *3 (N.D. Cal. Jan. 5, 2017) (citation omitted).

4      This putative class action is duplicative and inappropriate.[5] Filing a "successive,

5  identical class action is abusive regardless of whether class certification was granted or

6  denied in an earlier case; both scenarios entail unnecessary duplication." *Plack v. Cypress*

7  *Semiconductor*, 864 F. Supp. 957, 959 (N.D. Cal. 1994). Dismissing a duplicative lawsuit

8  promotes judicial economy and the comprehensive disposition of litigation. *Adams*, 487

9  F.3d at 692-93 (quotation omitted).

10      The classes in *Ms. L.* and in this case are identical, which Plaintiffs repeatedly

11  concede.  *See, e.g.,* Compl. at ¶¶117-22. Moreover, Plaintiffs allege the same harm as in

12  the *Ms. L.* litigation, namely family separation and conditions of detention. In many ways,

13  the *Ms. L.* litigation has mooted many of the claims in this case, as Plaintiffs concede that

14  they have all already been released and reunited with their children. Pseud. Mot. at ¶5.

15  Moreover, to the extent that Plaintiffs' children are already members of the *Flores*

16  Settlement, the Ninth Circuit has stated, "[t]he *Flores* Settlement is the reflection of *both*

17  *parties'* bargained-for positions," and "[t]he process for detaining and releasing

18  unaccompanied minors may result in a complicated set of determinations, but it is the one

19  _____

20  [5] The first-filed rule and claim-splitting doctrine similarly preclude Plaintiffs from

21  certifying a class identical to *Ms. L.*, a class from which they cannot opt out. *Wal-Mart*
   *Stores, Inc. v. Dukes*, 564 U.S. 338, 360-62 (2011) (noting that Rule 23(b)(2) contains no

22  opt-out provision, in part because classwide-injunctive relief that ends the offending
   conduct should indivisibly benefit either all or none of the class members). Plaintiffs

23  admit that they are *Ms. L.* class members. The well-established "first-filed" rule permits a
   district court to decline jurisdiction over an action when a similar complaint has already

24  been filed in another district – exactly the situation here. *See Pacesetter Sys., Inc. v.*

25  *Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). Plaintiffs also seek impermissible
   claim-splitting, which bars duplicative litigation under principles similar to *res judicata*.

26  *Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995). This

27  doctrine protects defendants from addressing repetitive actions based on the same
   controversy. *Id.* at 328; *Adams*, 487 F.3d at 687.

28

1    the government agreed to when it signed the Settlement in 1997." *Flores v. Sessions*, 862

2    F.3d 863, 879 (9th Cir. 2017) (emphasis added). The plaintiffs in *Flores* agreed to receive

3    only the protections outlined in the *Flores* Settlement, and this lawsuit seeks to modify the

4    *Flores* settlement as to Plaintiffs' children, who are not even parties in this case. This

5    Court should reject Plaintiffs' attempt to undo the *Flores* bargain.

6        Ultimately, this Court should not be the clearinghouse for all possible claims by a

7    *Ms. L.* (or *Flores*) class member. Plaintiffs repeatedly refer to the *Ms. L.* litigation and try

8    to distinguish themselves *only* in that they seek a reparative injunction in the form of

9    compensatory damages for individualized, ongoing, post-detention, mental health care.

10   But Plaintiffs were free to seek that remedy in the *Ms. L.* litigation.[6] Their failure to do so

11   does not make this District the place to seek each Plaintiff's individual medical treatment.

12   Regardless of the sympathetic nature of Plaintiffs' situations, Congress created legal

13   requirements for lawsuits, and the Court should not follow Plaintiffs' lead in disregarding

14   those statutory requirements. Plaintiffs may be dissatisfied with the remedies sought in

15   *Ms. L.* or the bargain struck in *Flores*, but a separate class action is not an appropriate

16   route to amend *Ms. L.*'s claims, or to re-negotiate *Flores*. Instead, Plaintiffs should decide

17   which inconsistent relief is the focus of these claims and file appropriate actions. This

18   District is not the proper venue to seek post-release mental health care for potentially

19

20   [6] In fact, the *Ms. L.* Plaintiffs demanded, in a status report on July 13, 2018 (the day after

21   the Complaint was filed in this case), that: "Defendants must establish a fund to pay for
     professional mental health counseling, which will be used to treat children who are

22   suffering from severe trauma as a result of their forcible separation from their parents. The
     amount can be set at a later time, subject to further negotiations between the parties and

23   rulings from the Court." *Ms. L.*, ECF No. 104 at 13. Plaintiffs in *Ms. L.* have not pursued

24   that remedy in any complaint. But the fact that such a fund was requested in a Court
     pleading in *Ms. L.* underscores the Government's argument for dismissal in this case, as

25   this putative class action is duplicative of *Ms. L.*, and the Court should reject Plaintiffs'

26   attempted claim-splitting. Similarly, in *K.O. v. Sessions*, Docket No. 4:18-cv-10149 (D.
     Mass.), ECF No. 1 (Sept. 5, 2018), Prayers for Relief C-E, those plaintiffs demand, in a

27   class action tort claim, creation of a similar fund, and other damages, for mental health

28   care for separated children arising out of alleged injuries they may have suffered.

"hundreds" of parents and children, each with a unique and complicated situation; to the extent that the Court may find so, the *Ms. L.* litigation is that venue.

### E. The Court Should Dismiss the Complaint under Rule 12(b)(3) Because Venue is Improper As This Action is not Based on Events or Parties within this District.

This action should be dismissed for improper venue. Fed. R. Civ. P. 12(b)(3). For this purpose, "pleadings need not be accepted as true, and facts outside the pleadings may be considered." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). Plaintiffs bear the "burden of showing that venue [is] properly laid in" this Court. *Piedmont Label Co. v. Sun Garden Packing Co*., 598 F.2d 491, 496 (9th Cir. 1979). Venue for actions against officers and employees of the United States is governed by 28 U.S.C. § 1391(e)(1), which provides that a civil action "may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . or (C) the plaintiff resides if no real property is involved in the action." Plaintiffs allege that "[v]enue is proper in the Central District of California under 28 U.S.C. §§ 84(c) and 1391(e)(1) because at least one plaintiff resides in this judicial district and each defendant is an agency of the United States or an officer of the United States sued in his or her official capacity." Compl. at ¶60. For venue purposes, Plaintiffs' allegation is incorrect.

Contrary to Plaintiffs' allegation, no Plaintiff "resides" in this judicial district under the venue statute. For venue purposes, "residency" is defined in 28 U.S.C. § 1391(c). For "a natural person, including an alien lawfully admitted for permanent residence in the United States," residence is the judicial district in which the person is "domiciled." 28 U.S.C. § 1391(c)(1). The term "lawfully admitted for permanent residence" is itself a term of art, not only in immigration law, but also under Title 28. *See* 28 U.S.C. § 1332(a)(2) (including in the definition of citizenship, for diversity purposes, "lawfully admitted for permanent residence"). As defined by 8 U.S.C. § 1101(a)(20), "the term 'lawfully admitted for permanent residence' means the status of having been lawfully

accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." The use of this term to limit a non-citizen's ability to establish residency for venue and diversity purposes makes sense, given its relationship to "domicile." "Domicile" requires not only physical presence, but also the intent to remain indefinitely. *See, e.g., Lew v. Moss*, 797 F.3d 747, 750 (9th Cir. 1986) (defining "domicile" in the diversity context). A non-citizen's lawful intent to remain permanently within the United States is only valid with the status of lawful permanent residency. Because *none* of the named Plaintiffs are lawful permanent residents, no Plaintiff is a resident of this judicial district or any other district within the United States; rather, they retain their prior residences for venue purposes.

To the extent that Plaintiffs' allegation is based on J.P.'s detention in Orange County, California, at the time the Complaint was filed, that detention does not support the allegation, as courts generally presume location of involuntary detention is not a person's domicile. *See, e.g., Smith v. Cummings*, 445 F.3d 1254, 1260 (10th Cir. 2006) (recognizing rebuttable presumption that a person is not domiciled in the place of incarceration). Plaintiffs offer no factual allegation supporting their conclusory allegation on venue. In fact, J.P. left this judicial district almost immediately after her release and reunion with her daughter, relocating to Florida. Harp. Decl. at ¶3. Although this occurred a few days after the Complaint was filed, her quick departure suggests that she never formed the intent, legally recognized or otherwise, to remain in this judicial district permanently.

Additionally, Plaintiffs' allegation that Defendants are agencies and officers of the United States, sued in their official capacities, merely tells this Court that subsection (e)(1) is the proper part of the venue statute. Otherwise, it does not support an assertion of venue. To the extent Plaintiffs suggest this means that Defendants all reside within this district, their allegation is incorrect. Agencies and officers of the United States, sued in their official capacity, reside in the location of their principal place of business or offices. Thus, a federal government agency generally resides where it is headquartered:

Washington, D.C. *Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978).[7] Addressing the expansion of the venue rules, the Seventh Circuit recognized that venue cannot be established simply because an agency has an office in that district: "To hold that a federal agency can be sued … wherever it maintains an office would, as a practical matter, render [the other routes to venue] superfluous. With the vast growth of the federal bureaucracy, federal agencies undoubtedly have offices in most, if not all, judicial districts." *Reuben H. Donnelley Corp.*, 580 F.2d at 267. The Seventh Circuit concluded that there "is nothing inequitable in limiting the residence of a federal agency to the District of Columbia. That has been the settled law for decades." *Id*. In that case, the Seventh Circuit ultimately concluded that the local district was not the appropriate venue to sue the Federal Trade Commission, despite that agency having a local office in the district. *Id*. at 266-67. This does not, therefore, provide this Court with jurisdiction.

The only named Defendants who reside within the Central District of California for venue purposes are David Marin, LA Field Office Director, ICE, and Lisa Von Nordeim, Warden, James Musick Facility.[8] No substantive and factual allegations are directed at either of these local Defendants, making them merely nominal defendants. Similarly, Plaintiffs never allege that a "substantial part of the events or omissions giving rise to the to the claim" occurred in this District, nor could they. No substantive allegation is directed at events occurring within this District. Instead, Plaintiffs' claims focus on policies and practices deriving from the federal agencies and high-level executive officials in Washington, D.C.[9] Accordingly, the nominal local defendants are not properly named as

---

[7] The Ninth Circuit has not addressed the issue of where a government official or agency "resides" for purposes of §1391(e).

[8] Because only two Defendants reside within this district, Plaintiffs incorrectly completed the venue portions of the filing forms. Defendant Von Nordeim resides in Irvine, California, which is located in Orange County, California. Because Von Nordeim's residence in Orange County accounts for fifty percent of the Defendants within the district, this case should have initially been assigned to the Southern Division.

[9] District courts have often found that claims against policies or practices of the Federal

1  Defendants[10] and cannot provide a basis for venue in this District. Likewise, no

2  substantive events occurred in this District to support venue. Because there is no proper

3  basis for venue in this District, the Court should dismiss this case or transfer it to the

4  District for the District of Columbia.

5                                          **CONCLUSION**

6          For the foregoing reasons, Defendants respectfully request that the Court dismiss

7  the Complaint.

8  DATED: September 17, 2018                    Respectfully submitted,

9
10  JOSEPH H. HUNT                                 ___/s/ Michael C. Heyse___
   Assistant Attorney General                    MICHAEL C. HEYSE
11  ERNESTO H. MOLINA                            Trial Attorney
   Deputy Director                               Office of Immigration Litigation
12  DANIEL GOLDMAN                                Civil Division, U.S. Dep't of Justice
   Senior Litigation Counsel                     P.O. Box 878, Ben Franklin Station
13  MICHELLE R. SLACK                            Washington, DC 20044
14  Trial Attorney                                (202) 305-7002
   SCOTT MARCONDA                                michael.heyse@usdoj.gov
15  Trial Attorney
16  LANCE JOLLEY                                  *Attorneys for Defendants*
17  Trial Attorney
   ──────────────────
18  Government are appropriately filed where the agency head is located, even if there is a
   local office. *See, e.g.*, *Kim v. McHugh*, No. 13-00616, 2014 WL 1580614, at *2 (D. Haw.
19  Apr. 18, 2014) ("although the headquarters of the United States Army, Pacific may be
   located in Hawaii, the Defendant in this action is the Secretary of the United States Army,
20  John McHugh, whose principal office is the Pentagon located in the Eastern District of
21  Virginia"); *Christopher v. United States*, No. 01-3613, 2001 WL 1256915, at *1 (N.D.
   Cal. Oct. 12, 2001) (dismissing for improper venue a lawsuit against heads of the military,
22  located around Washington DC, and where pertinent events occurred in different district);
23  *Jenkins v. West*, No. 95-0789, 1995 WL 704018, at *4 (D.D.C. Oct. 23, 1995) (same).

24  [10] For this reason, the nominal defendants should all be dismissed, including both the C.D.
25  California defendants and the W.D. Washington Defendants. The mootness of detention-
   related matters provides another grounds to dismiss these Defendants. Moreover, none of
26  the nominal Defendants are properly joined under Rule 20 of the Federal Rules of Civil
   Procedure, because no named plaintiff properly alleges a claim against all of these
27  Defendants. Accordingly, the nominal Defendants should be dismissed for misjoinder.
28  Fed. R. Civ. P. 21.

# Declaration of Melissa B. Harper, Chief of JFRMU-ICE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. J.P., et al., on behalf of themselves and all other similarly-situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>SESSIONS, et al.,<br><br>    Defendants. | Case No. 2:18-cv-06081<br><br>DECLARATION OF MELLISSA B. HARPER |

I, Mellissa B. Harper, declare under penalty of perjury the following:

  1.  I am the Chief of the Juvenile and Family Residential Management Unit (JFRMU), Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security.  JFRMU addresses issues confronting unaccompanied alien children (UAC) and alien family groups who come into ERO custody.  JFRMU develops policies sensitive to the various vulnerabilities and needs of these populations.  JFRMU trains, monitors, and advises Field Office Juvenile Coordinators (FOJCs). These officers serve as their field offices' subject matter experts on juvenile and family matters. As JFRMU advises FOJCs, they in turn advise colleagues who encounter minors and UACs during enforcement activities.

  2.  Based on my review of the electronic databases that ICE maintains, Plaintiff J.P. was released from ICE custody on July 16, 2018.  Plaintiff J.P. was

reunited with Plaintiff J.P.'s child on the same date of release (i.e., July 16, 2018) in Los Angeles, California.  Plaintiff J.P.'s last known address was in Florida.  On August 2, 2018, Plaintiff J.P.'s immigration counsel moved to change venue from Los Angeles, California to Miami, Florida, which was granted on August 7, 2018.

3.      Based on my review of the electronic databases that ICE maintains, Plaintiff R.M. was released from ICE custody on July 12, 2018.  Plaintiff R.M. was reunited with Plaintiff R.M.'s child on the same date of release (i.e., July 12, 2018) in Tacoma, Washington.  Plaintiff R.M.'s last known address is in Maryland.   On July 18, 2018, ICE moved to change venue from Tacoma, Washington to Baltimore, Maryland, which was granted on August 20, 2018.

4.      Based on my review of the electronic databases that ICE maintains, Plaintiff J.A. (referred to as J.O. in the Complaint) was released from ICE custody on July 12, 2018.  Plaintiff J.A. was reunited with Plaintiff J.A.'s child on the same date of release (i.e., July 12, 2018) in Tacoma, Washington.  Plaintiff J.A.'s last known address is in Louisiana.  On July 18, 2018, ICE moved to change venue from Tacoma, Washington to New Orleans, Louisiana, which was granted on August 3, 2018.

Pursuant to the authority of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 17th day of September 2018, at Washington D.C.

Mellissa B. Harper
Chief
Juvenile and Family Residential Management Unit
Immigration and Customs Enforcement
U.S. Department of Homeland Security

## <u>CERTIFICATE OF SERVICE</u>

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is PO Box 878, Ben Franklin Station, Washington, DC 20044. I am not a party to the above-entitled action. I have caused service of the accompanying DEFENDANTS' MOTION TO DISMISS on all counsel of record, by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically provides notice.

I declare under penalty of perjury that the foregoing is true and correct.


DATED: September 18, 2018

                                               ___*/s/ Michael C. Heyse*___
                                               MICHAEL C. HEYSE
                                               Trial Attorney
                                               Office of Immigration Litigation
                                               Civil Division, U.S. Dep't of Justice

                                               *Attorney for Defendants*