Amy P. Lally (SBN 198555)
alally@sidley.com
Ellyce R. Cooper (SBN 204453)
ecooper@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: +1 310 595-9500
Facsimile: +1 310 595-9501

Mark Rosenbaum (SBN 59940)
mrosenbaum@publiccounsel.org
Judy London (SBN 149431)
jlondon@publiccounsel.org
Talia Inlender (SBN 253796)
tinlender@publiccounsel.org
Alisa Hartz (SBN 285141)
ahartz@publiccounsel.org
Lucero Chavez (SBN 273531)
lchavez@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Avenue
Los Angeles, CA 90005
Telephone: +1 213 385-2977
Facsimile: +1 213 385-9089

*Attorneys for Plaintiffs*
*Additional Counsel on next page*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MS. J.P., MS. J.O., AND MS. R.M., on behalf of themselves and all others similarly situated, <br><br>        Plaintiffs, <br><br>       v. <br><br> JEFFERSON B. SESSIONS III, ATTORNEY GENERAL OF THE UNITED STATES; KIRSTJEN NIELSEN, SECRETARY OF HOMELAND SECURITY; U.S. DEPARTMENT OF HOMELAND SECURITY, AND ITS SUBORDINATE ENTITIES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. | Case No. 2:18-cv-06081-JAK-SK <br><br> **OPPOSITION TO MOTION TO DISMISS** <br><br> Complaint Filed: July 12, 2018 <br> Motion Date: January 7, 2019 <br> Time: 8:30 a.m. <br> Judge: Hon. John A. Kronstadt <br> Courtroom: 10B |

1  CUSTOMS AND BORDER
   PROTECTION; ALEX M. AZAR II,
2  SECRETARY OF HEALTH AND
   HUMAN SERVICES; U.S.
3  DEPARTMENT OF HEALTH AND
   HUMAN SERVICES; SCOTT LLOYD,
4  DIRECTOR OF THE OFFICE OF
   REFUGEE RESETTLEMENT; OFFICE
5  OF REFUGEE RESETTLEMENT;
   DAVID MARIN, LOS ANGELES FIELD
6  OFFICE DIRECTOR, U.S.
   IMMIGRATION AND CUSTOMS
7  ENFORCEMENT; LISA VON
   NORDHEIM, WARDEN, JAMES A.
8  MUSICK FACILITY; MARC J. MOORE,
   SEATTLE FIELD OFFICE DIRECTOR,
9  U.S. IMMIGRATION AND CUSTOMS
   ENFORCEMENT; LOWELL CLARK,
10 WARDEN, TACOMA NORTHWEST
   DETENTION CENTER,
11
          Defendants.
12

13  Carter G. Phillips*                 Mark E. Haddad (SBN 205945)
14  cphillips@sidley.com                markhadd@usc.edu
    Jennifer J. Clark*                  Part-time Lecturer in Law
15  jennifer.clark@sidley.com           USC Gould School of Law**
    SIDLEY AUSTIN LLP                   University of Southern California
16  1501 K Street, N.W.                 699 Exposition Blvd.
17  Washington, D.C. 20005              Los Angeles, CA 90089
    Telephone: +1 202 736-8000          Telephone: +1 213 675-5957
18  Facsimile: +1 202 736-8711
19
20
21
22
23
24
25
26
27
28

Michael Andolina*
mandolina@sidley.com
Timothy Payne*
tpayne@sidley.com
Kevin Fee*
kfee@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: +1 312 853-7000
Facsimile: +1 312 853-7036

Sean A. Commons (SBN 217603)
scommons@sidley.com
Bridget S. Johnsen (SBN 210778)
bjohnsen@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896-6000
Facsimile: +1 213 896-6600

Luis Cortes Romero (SBN 310852)
lcortes@ia-lc.com
Alma L. David (SBN 257676)
adavid@ia-lc.com
IMMIGRANT ADVOCACY &
LITIGATION CENTER, PLLC
19309 68th Avenue South, Suite R-102
Kent, WA 98032
Telephone: +1 253 872-4730
Facsimile: +1 253 237-1591

*Admitted pro hac vice

** Institution listed for identification purposes only

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................... 1

BACKGROUND ................................................... 1

    A.    Plaintiffs and the Proposed Class. ........................... 1

    B.    The Government Implemented the Family Separation Policy. ............... 1

    C.    The Family Separation Policy Is Enjoined As Likely Unconstitutional... 2

    D.    Family Separation Inflicts Trauma on Parents and Children. ................. 3

    E.    Parents and Children Require Trauma-Informed Family
          Mental Health Screenings and Services to Address the Government-
          Inflicted Trauma. ................................................... 4

    F.    Mental Health Services Provided by the Government
          Are Not Sufficient................................................... 5

LEGAL STANDARD ................................................... 6

ARGUMENT ................................................... 6

    I.    PLAINTIFFS' CLAIMS ARE NOT MOOT. ........................ 6

    II.    PLAINTIFFS STATE A CLAIM FOR RELIEF. ................... 10

    III.    SOVEREIGN IMMUNITY DOES NOT
          BAR PLAINTIFFS' CLAIMS. .............................. 17

    IV.    THIS CASE IS NOT DUPLICATIVE OF *MS. L*.................. 22

    V.    VENUE IS PROPER. .......................................... 24

CONCLUSION ................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................6

*Bayer v. Neiman Marcus Grp., Inc.*,
  861 F.3d 853 (9th Cir. 2017)...........................................7, 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................6

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988)..........................................................18, 19

*Charles v. County of Orange*,
  No. 16-CV-5527 (NSR), 2017 WL 4402576
  (S.D.N.Y. Sept. 29, 2017) ....................................................16

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)................................................................7

*Clement v. Gomez*,
  298 F.3d 898 (9th Cir. 2002)...............................................15

*Dahlia v. Rodriguez*,
  735 F.3d 1060 (9th Cir. 2013)...............................................9

*Department of the Army v. Blue Fox, Inc.*,
  525 U.S. 255 (1999)..............................................................19

*DeSilva v. Donovan*,
  81 F. Supp. 3d 20 (D.D.C. 2015) .........................................20

*Ecological Rights Found. v. Pac. Lumber Co.*,
  230 F.3d 1141 (9th Cir. 2000)...............................................7

*Epstein v. Wash. Energy Co.*,
  83 F.3d 1136 (9th Cir.1996)................................................6

ii

*Eric v. Sec'y of U.S. Dept. of Housing & Urban Dev.*,
   464 F. Supp. 44 (D. Alaska 1978) ..........................................................20

*F.D.I.C. v. Meyer*,
   510 U.S. 471 (1994) ..........................................................................21

*Friends of the Earth, Inc. v. Bergland*,
   576 F.2d 1377 (9th Cir. 1978) .................................................................7

*Gilligan v. Jamco Dev. Corp.*,
   108 F. 3d 246 (9th Cir. 1997) .................................................................6

*Haro v. Sebelius*,
   747 F.3d 1099 (9th Cir. 2014) .................................................................7

*Henry A. v. Willden*,
   678 F.3d 991 (9th Cir. 2012) .................................................................11

*Hernandez v. Cty. of Monterey*,
   110 F. Supp. 3d 929 (N.D. Cal. 2015) ........................................................9

*Hodgers-Durgin v. De La Vina*,
   199 F.3d 1037 (9th Cir. 1999) .............................................................8, 9

*Hubbard v. EPA*,
   982 F.2d 531 (D.C. Cir. 1992) ...............................................................20

*Kennedy v. City of Ridgefield*,
   439 F.3d 1055 (9th Cir. 2006) ....................................................10, 11, 13

*Kwai Fun Wong v. United States*,
   373 F.3d 952 (9th Cir. 2004) .................................................................17

*Lugo v. Senkowski*,
   114 F. Supp. 2d 111 (N.D.N.Y. 2000) .........................................................9

*Marceau v. Blackfeet Hous. Auth.*,
   540 F.3d 916 (9th Cir. 2008) .................................................................19

*Ms. L. v. U.S. Immigration & Customs Enf't*,
   No. 3:18-cv-00428-DMS-MDD, slip op. .....................................................*passim*

*Munns v. Kerry*,
   782 F.3d 402 (9th Cir. 2015) .................................................................8

*Murphy v. Schneider Nat'l, Inc.*,
  362 F.3d 1133 (9th Cir. 2004)....................................................................6

*Navajo Nation v. Dep't of the Interior*,
  876 F.3d 1144 (9th Cir. 2017)..............................................................21, 22

*Presbyterian Church (U.S.A.) v. United States*,
  870 F.2d 518 (9th Cir. 1989)....................................................................18

*Reyes v. Educ. Credit Mgmt. Corp.*,
  322 F.R.D. 552 (S.D. Cal. 2017), *appeal docketed*, No. 17-56930 (9th
  Cir. Dec. 22, 2017)....................................................................................8

*Rosas v. Baca*,
  No. CV 12-00428-DDP, 2012 WL 2061694 (C.D. Cal. June 7, 2012) ...................8

*Rosebrock v. Mathis*,
  745 F.3d 963 (9th Cir. 2014)....................................................................20

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004)....................................................................6

*Simmons v. Himmelreich*,
  136 S. Ct. 1843 (2016)..............................................................................21

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007)....................................................................16

*Trudeau v. FTC*,
  456 F.3d 178 (D.C. Cir. 2006) .............................................................20, 22

*Tsi Akim Maidu of Taylorsville Rancheria v. U.S. Dep't of the Interior*,
  No. 16-cv-07189-LB, 2017 WL 2289203 (N.D. Cal. May 25, 2017) ..............24, 25

*Tucson Airport Auth. v. Gen. Dynamics Corp.*,
  136 F.3d 641 (9th Cir. 1998)....................................................................19

*United Tactical Sys. LLC v. Real Action Paintball, Inc.*,
  108 F. Supp. 3d 733 (N.D. Cal. 2015)........................................................25

*Updike v. Multnomah Cty.*,
  870 F.3d 939 (9th Cir. 2017)....................................................................8

*Villa v. Maricopa Cty.*,
    No. CV-14-01681-PHX-DJH, 2015 WL 11118113 (D. Ariz. Mar. 4,
    2015) ...........................................................................................................17

*Wakefield v. Thompson*,
    177 F.3d 1160 (9th Cir. 1999).........................................................*passim*

*Wang v. Reno*,
    81 F.3d 808 (9th Cir. 1996)...................................................10-11, 13

*Williams v. I.N.S.*,
    795 F.2d 738 (9th Cir. 1986)...........................................................6

STATUTES & RULES

5 U.S.C. § 702 ...........................................................................17, 18, 21

5 U.S.C. § 704 ...............................................................................21, 22

28 U.S.C. § 1346(b) ....................................................................17, 20, 21

28 U.S.C. § 1346(b)(1) ...............................................................................21

28 U.S.C. § 1391(e) ...............................................................................25

28 U.S.C. § 1391(e)(1)...............................................................................24

28 U.S.C. § 1406(a) ...............................................................................25

28 U.S.C. § 2679(a) ....................................................................20, 21

Fed. R. Civ. P. 12(b)(1)...............................................................................6

Fed. R. Civ. P. 12(b)(3)...............................................................................6

Fed. R. Civ. P. 12(b)(6)..............................................................6, 10, 17

CONSTITUTIONAL PROVISIONS

Fourth Amendment ...............................................................................8

Fifth Amendment ...............................................................................10

## INTRODUCTION

Plaintiffs' complaint sets forth detailed allegations describing the severe and obvious trauma they suffered at the government's hands when their children were torn from them at the border and they were then detained without knowing where their children were, if they were safe, or whether they would ever see them again. Plaintiffs further allege that they have received no treatment for this trauma—and certainly none that could be considered appropriate and effective—despite the government's obligation to provide such treatment while they were detained and after their release.

In moving to dismiss the Complaint, the government misconstrues the nature of Plaintiffs' claims and completely disregards the substantial allegations presented. It also improperly asks this Court to resolve factual questions against Plaintiffs on a motion to dismiss. Contrary to the government's contentions, Plaintiffs have adequately alleged live claims for injunctive relief for which the government has waived sovereign immunity and have brought their claims in an appropriate venue. The government's motion to dismiss should be denied.

## BACKGROUND

### A. Plaintiffs and the Proposed Class.

Plaintiffs are three mothers who were separated from their minor children under the government's family separation policy, seeking to represent a class of parents who "were, are, or will be detained in immigration custody by the Department of Homeland Security" and "have a minor child who has been, is, or will be separated from them by DHS and detained in DHS or [Office of Refugee Resettlement] custody or foster care," absent a showing that the parent is unfit or a danger to the child.[1]

### B. The Government Implemented the Family Separation Policy.

On May 7, 2018, Defendant Attorney General Jeff Sessions announced a "zero-tolerance" policy of forcibly separating immigrant families, including asylum-seekers,

---

[1] Compl. ¶¶ 4, 165 & pp. 59–60 (Prayer for Relief) ¶ 1.

1   at the U.S.-Mexico border.[2] Nearly 3,000 children (including over 100 younger than

2   four and some as young as 18 months) were separated from their parents while crossing

3   the border in the first month alone.[3] The government mischaracterized family separation

4   as necessary to enforce the law, but DHS and administration officials confirmed that

5   the policy was implemented to deter migration from Central America.[4]

6          **C. <u>The Family Separation Policy Is Enjoined As Likely Unconstitutional.</u>**

7          The family separation policy was met with public outcry and legal challenges. In

8   the *Ms. L.* case, Judge Dana Sabraw preliminarily certified a class of parents separated

9   from their children and preliminarily enjoined defendants from detaining class members

10  in DHS custody apart from their minor children, absent a determination that the parent

11  is unfit or a danger to the child. The court ordered defendants to reunify class members

12  with their minor children within specific timeframes and preliminarily enjoined

13  defendants from removing class members without their child.[5]

14         Judge Sabraw found that the government's practice of separating families, as

15  implemented, "is likely to be so egregious, so outrageous, that it may fairly be said to

16  shock the contemporary conscience . . . interferes with rights implicit in the concept of

17  ordered liberty, . . . and is so brutal and offensive that it [does] not comport with

18  traditional ideas of fair play and decency." *Id.* at 17. Judge Sabraw also found that the

19  plaintiffs were likely to suffer irreparable harm because they were likely deprived of

20  their constitutional rights, that the balance of equities and public interest favored the

21  plaintiffs because they had established that the policy was likely unconstitutional and

22

---

23   [2] *Attorney General Sessions Delivers Remarks Discussing the Immigration
Enforcement Actions of the Trump Administration*, DOJ Justice News (May 7, 2018).

24   [3] *See, e.g.*, Caitlin Dickerson, *Trump Administration in Chaotic Scramble to Reunify
Migrant Families*, N.Y. TIMES (July 5, 2018).

25   [4] Daniella Diaz, Kelly: *DHS is considering separating undocumented children from
their parents at the border*, CNN (March 6, 2017); *Transcript: White House Chief of
Staff John Kelly's Interview with NPR*, NPR (May 11, 2018).

26

27   [5] *Ms. L. v. U.S. Immigration & Customs Enf't*, No. 3:18-cv-00428-DMS-MDD ("Ms.
L."), slip op. (Dkt. No. 82) at 17 (S.D. Cal. June 26, 2018); *Id.*, slip op. (Dkt. No. 83) at

28   22–24 (S.D. Cal. June 26, 2018).

the injunction would not interfere with the government's ability to enforce criminal and immigration laws, and that the injunction would protect the children's interest in the care, custody, and control of their parents. *Id.* at 17, 20–21.

### D. Family Separation Inflicts Trauma on Parents and Children.

The government's family separation policy has inflicted extensive harm on separated families. Trauma experts agree that tearing children from parents inflicts severe complex trauma on parents and children. Trauma is the body's neurobiological stress response to experiencing or witnessing an event involving life-threatening circumstances or threat of serious injury that causes the individual to feel intense fear, helplessness, or horror.[6] Complex trauma consists of multiple, repeated, persistent, or prolonged exposure to trauma such that the body's response impacts the development and functioning of the brain.[7] Untreated trauma causes immediate and long-lasting physical and psychological harm, especially in children, whose developing bodies and brains are poorly equipped to cope with traumatic stress.[8]

Children experience acute psychological stress upon separation from their parents, which trauma may be especially severe when the separation is sudden or forcible, and may lead to inconsolable crying, anger, and desperate attempts to locate the parent.[9] Children may show signs of regression, reverting to crying and bed-wetting, or suffer from the loss of important developmental milestones.[10] The longer the duration

---

[6] Declaration of Marleen Wong, Dkt. No. 1-16 ("Wong Decl.") ¶ 12. The Declarations cited herein were attached to the Complaint and are referenced here by those document numbers, and are also refiled with this Motion per L.R. 7-5(b).
[7] *Id.*
[8] Declaration of Kenneth Berrick, et al., Dkt. No. 1-2 ("Berrick Decl.") ¶ 15; Declaration of Dylan Gee, Dkt. No. 1-13 ("Gee Decl.") ¶¶ 5, 8, 9; Declaration of Jose Hidalgo, Dkt. No. 1-14 ("Hidalgo Decl.") ¶ 13; Declaration of Bruce D. Perry, Dkt. No. 1-15 ("Perry Decl.") ¶ 21; Wong Decl. ¶ 24.
[9] Berrick Decl. ¶ 10.
[10] Sady Doyle, *Child Trauma Can't Be Undone With an Executive Order*, ELLE (June 21, 2018); *see also* Berrick Decl. ¶ 10.

of separation, the greater harm the child will experience.[11] And such trauma may have lasting effects. Stress hormones induce a state of hypervigilance that alters a child's cognition and emotion, causes chronic problems with how the child responds to stress over a lifetime, increasing the risk of psychological and physical health problems, including depression, substance abuse, and reduced capacity to regulate emotions.[12]

The trauma experienced by adults due to forcible separation from their children is associated with an elevated risk of psychiatric disorders, including PTSD, and can induce physiological changes, such as dysregulated stress responses, amygdala hyperactivity, and deficits in prefrontal cortex control of the amygdala that is associated with difficulty regulating fear.[13] Physical and mental effects of the trauma may include PTSD, anxiety, depression, suicidal ideation, loss of appetite, and loss of sleep.[14] One parent forcibly separated from his child reportedly was driven to suicide.[15] Plaintiffs and class members have already suffered such trauma and consequent injury.[16]

### E. Parents and Children Require Trauma-Informed Family Mental Health Screenings and Services to Address the Government-Inflicted Trauma.

Separated families require mental health screening and services to address the trauma of family separation. The treatment must be evidence-based and trauma-informed, meaning that it must be designed specifically to alleviate the psychological

---

[11] Hidalgo Decl. ¶ 12; Jessica Henderson Daniel, PhD, *Statement of APA President Regarding Executive Order Rescinding Immigrant Family Separation Policy*, AM. PSYCHOLOGICAL ASS'N (June 20, 2018), http://www.apa.org/news/press/releases/2018/06/family-separation-policy.aspx.

[12] Dylan Gee, *I study kids who were separated from their parents. The trauma could change their brains forever*, VOX (June 20, 2018), https://www.vox.com/firstperson/2018/6/20/17482698/tender-age-family-separation-border-immigrants-children; *see also* Perry Decl. ¶¶ 4, 13, 21; Berrick Decl. ¶¶ 12, 16; Gee Decl. ¶¶ 5, 8; Hidalgo Decl. ¶ 13.

[13] Gee Decl. ¶ 6.

[14] Berrick Decl. ¶ 19; Declaration of Alejandra Acuna, Dkt. No. 1-4, ¶ 11.

[15] *See* Nick Miroff, *A family was separated at the border, and this distraught father took his own life*, WASH. POST (June 9, 2018).

[16] Acuna Decl. ¶¶ 7–8 (Plaintiff J.P. displayed symptoms of PTSD, depression, and anxiety as a result of separation from her daughter).

and neurobiological consequences of family separation.[17] In order for these services to be effective, families must be reunited quickly as trauma grows more pervasive and intense when separation is prolonged.[18] Parents and children must be immediately screened, so that treatment plans may be developed.[19] Mental health services must be delivered in a culturally and linguistically sensitive manner by mental health clinicians trained in evidence-based trauma-informed interventions.[20] And these services must be provided to the family as a whole in an environment that does not continue or prolong the trauma and for a sufficient period of time to effectively mitigate the harm the government caused, including after release from detention.[21]

## F.  Mental Health Services Provided by the Government Are Not Sufficient.

Mental health services provided by the government in detention facilities range from sporadic to nonexistent. Family detention centers operated by the Office of Refugee Resettlement (ORR) do not routinely provide mental health services, and in centers detaining minors, ORR provides only general case management personnel and mental health follow-up services without trauma-informed mental health services.[22] Some "clinicians" at such centers are not licensed mental health professionals,[23] and the government has not offered any of the Plaintiffs mental health screenings or services.

Immigration detention facilities do not provide the conditions necessary for trauma-informed therapy to be effective. The conditions in law-enforcement detention facilities are highly stressful and do not provide children with adequate opportunities for positive, social-emotional support.[24] Because Plaintiffs, class members, and their children experienced trauma while in detention at the hands of those in control of the

---

[17] *See, e.g.*, Perry Decl. ¶ 22; Hidalgo Decl. ¶¶ 17–20.
[18] *See* Gee Decl. ¶ 10; Hidalgo Decl. ¶ 12.
[19] Declaration of Marti Loring, Dkt. No. 1-1, ¶ 11; Hidalgo Decl. ¶¶ 17–20.
[20] Gee Decl. ¶ 18.
[21] Perry Decl. ¶ 23; Berrick Decl. ¶ 27.
[22] Declaration of Alfonso Mercado, Dkt. No. 1-20, ¶ 4.
[23] *Id.*
[24] Hidalgo Decl. ¶ 24.

1    detention environment, children and parents likely would not feel safe in such facilities

2    and may be re-traumatized by the conditions.[25]

3    **LEGAL STANDARD**

4         In a facial attack under Rule 12(b)(1), the defendant "asserts that the allegations

5    in the complaint are insufficient on their face to invoke [subject matter] jurisdiction,"

6    and all inferences are drawn in plaintiffs' favor. *Safe Air for Everyone v. Meyer*, 373

7    F.3d 1035, 1039 (9th Cir. 2004).

8         Similarly, a complaint attacked by a Rule 12(b)(6) motion to dismiss needs to

9    plead "only enough facts to state a claim to relief that is plausible on its face," *Bell Atl.*

10    *Corp. v. Twombly,* 550 U.S. 544, 547 (2007), with all factual allegations "taken as true

11    and construed in the light most favorable to [p]laintiffs." *Epstein v. Wash. Energy Co.*,

12    83 F.3d 1136, 1140 (9th Cir.1996). Such motions to dismiss are "viewed with disfavor"

13    and rarely granted. *Gilligan v. Jamco Dev. Corp.*, 108 F. 3d 246, 249 (9th Cir. 1997).

14    A complaint survives dismissal as long as there is "any set of facts consistent with the

15    allegations in the complaint' that would entitle the plaintiff to relief." *Twombly*, 550

16    U.S. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

17         In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3),

18    the pleadings need not be accepted as true, and the Court may consider facts outside the

19    pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

20    **ARGUMENT**

21    **I.    PLAINTIFFS' CLAIMS ARE NOT MOOT.**

22         The government does not come close to meeting the "heavy" "burden of

23    demonstrating mootness." *Williams v. I.N.S.*, 795 F.2d 738, 741 (9th Cir. 1986).

24    Whether a case is moot turns on the "basic question 'whether decision of a once living

25    dispute continues to be justified by a sufficient prospect that the decision will have an

26    impact on the parties.'" *Id.* "An action 'becomes moot only when it is impossible for a

27

28    [25] *Id.*

1  court to grant any effectual relief whatever to the prevailing party.'" *Bayer v. Neiman*

2  *Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017) (citation omitted).

3      The government makes two mootness arguments, neither of which are supported

4  by law or logic. First, the government contends that this case is moot because the named

5  Plaintiffs have been released and reunited with their children. Defs.' Mem. in Supp. of

6  Mot. to Dismiss ("Memo") at 7. This argument misses the point of Plaintiffs' claims

7  entirely. Plaintiffs allege that the government is required to provide appropriate and

8  effective treatment of the trauma inflicted by its unconstitutional misconduct and that

9  reunification of families is only *one* of *several* conditions of such treatment. *See*, *e.g.*,

10  Comp. ¶ 151 (reunification is necessary to treat trauma); *see also id.* ¶¶ 152–64 (other

11  conditions necessary for effective treatment, including screening, a therapeutic

12  environment, provision of therapy to the entire family, and provision of services in a

13  culturally competent manner by trained clinicians). The named Plaintiffs have been

14  released and reunited with their children, but they have not received treatment for the

15  government-inflicted trauma pursuant to the government's ongoing obligation to

16  provide such care during and following detention. Thus, this Court can still order

17  effective relief and the action is not moot. *See*, *e.g.*, *Ecological Rights Found. v. Pac.*

18  *Lumber Co.*, 230 F.3d 1141, 1153 (9th Cir. 2000).[26]

19      The government cites a line of cases in which the plaintiffs were denied

20  injunctions restraining the government from repeating the conduct that injured them.[27]

21  _____

22  [26] Moreover, even if release could render the individual claims moot—and it could
   not—where a claim is "so inherently transitory that the . . . court will not have . . .

23  enough time to rule on a motion for class certification before the proposed
   representative's individual interest expires . . . the 'relation back' doctrine is properly

24  invoked to preserve the merits of the case for judicial resolution." *Haro v. Sebelius*, 747
   F.3d 1099, 1110 (9th Cir. 2014) (quoting *Cty of Riverside v. McLaughlin*, 500 U.S. 44,

25  52 (1991)).

26  [27] *See* Memo 6–9, citing *Adler v. Duval Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)
   (request to enjoin school board from allowing prayers at graduation moot after named

27  plaintiffs' graduation); *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 (1983) (plaintiff
   subjected to a chokehold lacked standing to seek injunction forbidding future use of

28  chokeholds); *Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir. 1978)

But these cases are inapposite. Here, the thrust of Plaintiffs' injunctive relief is to require the government to fulfill an existing obligation: to provide the mental health services to which Plaintiffs are entitled.

Moreover, there is a realistic possibility that the government will re-engage in misconduct. Indeed, on October 12, 2018, the Washington Post reported that "[t]he White House is actively considering plans that could again separate parents and children at the U.S.-Mexico border, hoping to reverse soaring numbers of families attempting to cross illegally into the United States."[28] President Trump confirmed this intention the next day, arguing as reported in the Washington Post that "family separations likely would help scare away some undocumented migrants from trying to enter the United States."[29] Trump stated: "'If they feel there will be separation, they won't come.'" *Id.* The risk of renewed misconduct is thus quite real. *See Reyes v. Educ. Credit Mgmt. Corp.*, 322 F.R.D. 552, 569–70 (S.D. Cal. 2017) ("For mootness to apply based on the voluntary cessation of the complained of unlawful behavior, the party must prove that subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."), *appeal docketed*, No. 17-56930 (9th Cir. Dec. 22, 2017); *Rosas v. Baca*, No. CV 12-00428-DDP, 2012 WL 2061694, at *4 (C.D. Cal. June 7, 2012) ("Where defendants have engaged in a pattern of injurious acts in the past, there is a sufficient possibility that they will engage in them in the near future to

_____

("Where the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot."); *Bayer*, 861 F.3d at 864 (injunction request moot where plaintiff "conceded he no longer required an injunction"); *Munns v. Kerry*, 782 F.3d 402, 411–12 (9th Cir. 2015) (families of murdered hostages lacked standing to challenge government hostage response policies); *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (plaintiffs stopped by border patrol lacked standing to challenge border patrol practices absent a showing they would likely be stopped again); *Updike v. Multnomah Cty.*, 870 F.3d 939, 947–48 (9th Cir. 2017) (plaintiff lacked standing absent showing that wrongful conduct was likely to recur against him).

[28] *Trump administration weighs new family-separation effort at border*, WASH. POST (Oct. 12, 2018).

[29] *Trump says he is considering a new family separation policy at U.S.-Mexico border*, WASH POST (Oct. 13, 2018).

OPPOSITION TO MOTION TO DISMISS

1    satisfy the 'realistic repetition' requirement.").[30]

2        Second, the government briefly contends that Plaintiffs' claims became moot

3    "within the past month, which constituted a reasonable post-release transitional-care

4    period." Memo at 7. This assertion lacks *any* factual or legal support and also invites

5    the Court to resolve against Plaintiffs factual questions informing the duration of the

6    government's obligation to provide mental health care services after release from

7    detention. As the Ninth Circuit recognized in *Wakefield v. Thompson*, "the state must

8    provide an outgoing prisoner who is receiving and continues to require medication with

9    a supply sufficient to ensure that he has that medication available *during the period of*

10   *time reasonably necessary* to permit him to consult a doctor and obtain a new supply."

11   177 F.3d 1160, 1164 (9th Cir. 1999) (emphasis added); *see also Hernandez v. Cty. of*

12   *Monterey*, 110 F. Supp. 3d 929, 958 (N.D. Cal. 2015) ("[T]he jail has an obligation to

13   provide newly-released inmates medicinal supplies sufficient to ensure that he has that

14   medication available during the period of time reasonably necessary to permit him to

15   consult a doctor and obtain a new supply."); *Lugo v. Senkowski*, 114 F. Supp. 2d 111,

16   115 (N.D.N.Y. 2000). Here, how long the government's obligations to Plaintiffs and

17   ─────────────

18   [30] The government relies heavily on *Hodgers-Durgin* as showing that plaintiffs' injury
     is "too speculative" and relies on "past injury." But *Hodgers-Durgin* is readily

19   distinguishable. In that case, the court upheld summary judgment against plaintiffs who
     sought an injunction to prevent roving Border Patrol operations that allegedly violated

20   the Fourth Amendment. *Hodgers-Durgin*, 199 F.3d at 1039. The named plaintiffs
     sought to represent a class of "all persons who have been, are, or will be traveling at

21   night by motor vehicle" on state highways in eight Arizona counties, and "all persons
     who are of Latin, Hispanic or Mexican appearance who have been, are, or will be

22   traveling by motor vehicle on [those] highways." *Id.* at 1040. The Ninth Circuit denied
     equitable relief because plaintiffs could not establish "likelihood of substantial and

23   immediate irreparable injury," because it was not sufficiently likely the named plaintiffs
     would be stopped again by the Border Patrol. *Id.* at 1044. The court specifically relied

24   on the factual record showing that the named plaintiffs drove hundreds of miles a week
     and observed Border Patrol agents "all over the place," but were "stopped only once in

25   10 years." *Id.* Here, the factual record has not yet been developed (nor can it be
     considered on a motion to dismiss), and Plaintiffs are entitled to discovery, including

26   on the government's renewed consideration of family separation. Moreover, here the
     risk of repeating past misconduct is clearly more likely than in *Hodgers-Durgin*, and

27   the injunctive relief aims to require the government to fulfill an ongoing obligation.

28

1   the class under *Wakefield* run—that is, how much time is reasonably necessary for
2   Plaintiffs and class members to obtain the needed mental health care on their own—
3   will be explored in discovery; the question cannot be resolved on a motion to dismiss
4   based on the government's unsupported assertion. *Dahlia v. Rodriguez*, 735 F.3d 1060,
5   1076 (9th Cir. 2013) (under Rule 12(b)(6), the "task is not to resolve any factual dispute,
6   but merely to determine whether [plaintiff's] allegations support a reasonable
7   inference" that defendant violated the law).

8       Moreover, *Wakefield* is not Plaintiffs' only basis for seeking injunctive relief. As
9   Plaintiffs explained in support of their motion for a preliminary injunction, they are
10  entitled to injunctive relief pursuant to the state-created danger doctrine. The
11  government inflicted the trauma suffered by Plaintiffs by separating them from their
12  families. It therefore has a duty to provide post-release mental health services adequate
13  to address the ongoing danger of harm resulting from the trauma it caused. The
14  government does not refute this argument (indeed, does not even mention it). Even were
15  the Court to credit the government's unsupported assertion that its obligations under
16  *Wakefield* have expired, Plaintiffs' showing under the state-created danger doctrine
17  mandates a conclusion that their claims are not moot.

18  **II.   PLAINTIFFS STATE A CLAIM FOR RELIEF.**

19      Plaintiffs allege that the government violated and continues to violate their
20  substantive due process rights under the Fifth Amendment, and seek an order directing
21  the government to provide them effective mental health screening and treatment on two
22  independent grounds. First, the government's separation of Plaintiffs and class members
23  from their children, which has already been found likely to violate due process and
24  shock the conscience, directly and foreseeably injured Plaintiffs and class members, and
25  the government is obligated to remedy the injuries and risk of future injuries that its
26  violations caused. *See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir.
27  2006) ("this circuit has held state officials liable . . . for their roles in creating or
28  exposing individuals to danger they otherwise would not have faced."); *Wang v. Reno*,

1  81 F.3d 808, 813, 818 (9th Cir. 1996) (entering injunction "[t]o remedy the
2  [government's] due process violations" including "affirmatively plac[ing] [the plaintiff]
3  in danger"). Second, the government is required to provide effective mental health care
4  services to all persons it detains, both during detention and for a reasonable period
5  thereafter. *See Wakefield v. Thompson*, 177 F.3d 1160, 1164–65 (9th Cir. 1999).

6      **State-Created Danger:** The government is responsible for addressing the
7  ongoing harm caused to Plaintiffs and class members under the "state-created danger"
8  doctrine, which applies where "the state action 'affirmatively place[s] the plaintiff in a
9  position of danger,' that is, where state action creates or exposes an individual to a
10  danger which he or she would not have otherwise faced." *Kennedy*, 439 F.3d at 1061.
11  The Ninth Circuit has adopted a three-part test to determine whether this doctrine
12  applies: "(1) whether any affirmative actions of the official placed the individual in
13  danger he otherwise would not have faced; (2) whether the danger was known or
14  obvious; and (3) whether the officer acted with deliberate indifference to that danger."
15  *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir. 2012).

16      Plaintiffs have alleged facts that establish each of these prongs. Plaintiffs alleged
17  that the government's family separation policy placed Plaintiffs and class members in
18  danger that they otherwise would not have faced, and even supported those allegations
19  with expert declarations. For instance, Plaintiffs alleged that "The consensus among
20  leading experts on trauma is that tearing children from their parents inflicts severe
21  complex trauma on both parents and children alike that might never be fully remedied.
22  . . . Left untreated, such trauma causes immediate and long-lasting physical and
23  psychological harm." Compl. ¶ 127. Plaintiffs also allege that "parents who experience
24  their children being taken away from them will likely suffer acute psychological distress
25  that manifests in physical and mental symptoms of anxiety, depression, suicidal
26  ideation, loss of appetite and/or loss of sleep." *Id.* ¶ 128. Plaintiffs further allege they
27  personally "experienced distress and symptoms such as losing sense of time, inability
28  to eat, and sleeplessness" and "trouble concentrating." *Id.* ¶¶ 142–43.

Plaintiffs also alleged facts showing that the danger that separating families would inflict trauma on parents and children was known and obvious to the government. *See*, *e.g.*, *id.* ¶¶ 97, 127. Any doubt that the government was aware of this danger is eliminated by the testimony of ORR's Deputy Director for Children's Programs before the Senate Judiciary Committee that "there is no question, that separation of children from parents entail[s] significant potential for traumatic psychological injury to the child" and that ORR "raised concerns about the effect on children" during the deliberative process over the family separation policy.[31] And given Plaintiffs' detailed allegations of the reactions of the separated families, the government cannot plausibly claim that the traumatic effects of its policy were not obvious. *See*, *e.g.*, Compl. ¶ 132 (audio recording of detained children "repeatedly scream[ing] 'Mami' and 'Papa,' many crying so hard it sounds like they can barely breathe"); ¶ 107 (children "crying uncontrollably, having panic attacks, not sleeping, wetting the bed, and regressing to the point that they can no longer talk"); ¶ 130 (father committed suicide after being forcibly separated from his child). Moreover, the government claims to have screened Plaintiffs, but has not indicated whether it shared the results with them to enable them to understand their diagnoses and needs, and request mental health services.

Lastly, Plaintiffs allege facts showing that the government acted with deliberate indifference to the known danger that family separation would inflict trauma and was inflicting trauma. Indeed, they allege facts showing that deliberate indifference and gratuitous cruelty was present at all levels of government. At the facilities where families were separated, "[g]uards . . . taunted mothers," "told the parents that a new law permitted them to take away their children permanently," and threw food on the floor instead of handing it to Plaintiff R.M. *Id.* ¶¶ 18, 25, 146. President Trump likewise

---

[31] *Oversight of Immigration Enforcement and Family Reunification Efforts: Hearing Before the S. Comm. on the Judiciary*, 115th Cong. (2018) (testimony of Commander Jonathan White), *video available at* https://www.judiciary.senate.gov/meetings/oversight-of-immigration-enforcement-and-family-reunification-efforts (3:17:42–49; 3:18:23–27).

1   dehumanized Plaintiffs and class members, saying that "[t]hese aren't people. These are
2   animals." *Id.* ¶ 92. And Plaintiffs allege that, despite the government's knowledge that
3   its policy would inflict trauma, it provided no trauma-informed mental health screenings
4   or services to address those harms. *Id.* ¶ 147. The government makes essentially no
5   effort to rebut these showings, which Plaintiffs explained at length in support of their
6   preliminary injunction motion. Dkt. Nos. 45, 119.

7         The government has no answer to Plaintiffs' showing that they and the class are
8   entitled to relief under the state-created danger doctrine, and has effectively conceded
9   this point. Indeed, the government spends just one paragraph and one footnote
10  addressing Plaintiffs' claim that they are entitled to an injunction. Memo at 11 n.3, 14–
11  15. Instead of addressing Plaintiffs' contentions head on, the government takes issue
12  with Plaintiffs' citation to *Kennedy* in their reply in support of their motion for class
13  certification. *Id.* at 11 n.3, citing Dkt. No. 120 at 4. The government's attempt to
14  distinguish *Kennedy* fails; *Kennedy* holds that government officials may be liable for
15  creating or exposing individuals to danger they would not otherwise have faced, as the
16  government has done here. 439 F.3d at 1062; *see also Wang*, 81 F.3d at 813, 818
17  (entering injunction "[t]o remedy the due process violations" committed by the
18  government including by "affirmatively plac[ing] [the plaintiff] in danger"). The
19  government also rehashes its argument that psychological trauma cannot serve as the
20  basis for injunctive relief. Memo at 15. But as discussed above, the cases cited by the
21  government involve injunctions to prevent *recurrence* of past conduct. Here, Plaintiffs
22  seek to require the government to fulfill an ongoing duty and to address the continuing
23  harms it caused.

24        **Duty to provide care during detention and a reasonable time thereafter:**
25  While virtually ignoring its obligations under the "state-created danger" doctrine, the
26  government focuses heavily on a tortured attempt to evade and distinguish *Wakefield*.
27  Defendants concede that Plaintiffs were entitled to "constitutionally adequate" mental
28  health screening and services when detained. *See* Memo at 10, 13. But the government

13

1    summarily concludes, citing "[s]ee generally Compl.," that "Plaintiffs have not

2    adequately pled that the care available to them is or was inadequate." *Id.* at 12. Contrary

3    to this unsupported argument, there is no doubt that Plaintiffs have alleged that they

4    were given no effective mental health care screening or treatment in detention.

5    Specifically, the Complaint sufficiently alleged that "Plaintiffs have not received

6    trauma-informed mental-health screenings or services to address the harms suffered."

7    Compl. ¶ 147; *see also id.* ¶ 168 (plaintiffs "have not been provided with appropriate

8    mental-health screening or offered appropriate trauma-informed intervention"); ¶ 171

9    (defendants "fail[ed] to provide adequate medical care for detained individuals and to

10   remedy the harms inflicted."). The Complaint also alleged supporting facts specific to

11   each named plaintiff. Compl. ¶ 23 (J.P. did not report having access to mental-health

12   treatment despite being evaluated by a licensed clinical social worker for symptoms of

13   PTSD, depression, and anxiety as a result of being separated from her daughter); ¶¶ 32,

14   43 (neither J.O. nor R.M. "received any mental-health or counseling services from the

15   government to address the trauma"). These allegations are sufficient to adequately plead

16   a claim that the government has provided no such services to Plaintiffs and class

17   members.

18   Perhaps aware of the flimsy nature of their attacks on Plaintiffs' pleading, the

19   government also suggests that Plaintiffs' claims should be dismissed because Plaintiffs

20   did not request mental health services and that its provision of an "intake form"

21   somehow satisfied its obligations. Neither argument passes muster.

22   First, the government's contention that Plaintiffs did not *request* mental health

23   services unreasonably seeks to shift the burden to provide adequate care to the people

24   it has traumatized. In reality, parents who have been torn from their children by the

25   government "are unlikely to ask for help or speak of their distress with anyone who

26   holds power over them" because of the difficulty of creating a bond of trust with them.

27   *See* Supplemental Joint Expert Declaration of Kenneth Berrick and John Sprinson

28   ("Suppl. Berrick Decl."), Dkt. No. 119-4, ¶ 16; *see also* Supplemental Declaration of

14

1    Dr. Jose Hidalgo ("Suppl. Hidalgo Decl."), Dkt. No. 119-5, ¶¶ 8–9. If the government

2    *knows* that its own conduct created a significant risk of harm, then it must *treat* it. *See,*

3    *e.g.*, *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002).

4            Second, the government cannot fulfill its burden to provide adequate mental

5    health care by giving Plaintiffs and other class members an intake form. *See* Def's Opp.

6    Pl.'s Mot. Prelim. Inj. 16 (citing Declaration of Codi James, Psy.D., Dkt. No. 109-2, ¶¶

7    4–6). The form is definitely not treatment; it is hardly a screening tool either. This form

8    asks extremely general questions about whether the detainee has had past mental

9    illness, is in withdrawal from alcohol or drugs, or is feeling sad, and asks *no* questions

10   to determine whether the detainee needs treatment for trauma.[32] The questions the form

11   does ask are not validated to screen for trauma, certainly not recent, severe, acute, and

12   ongoing trauma.[33] Worse still, the government is aware of the limitations of this form,[34]

13   and its availability only in English and Spanish likely makes it inaccessible to many

14   detainees.[35] The government cannot be allowed to dismiss this case on the basis of

15   providing such an inadequate "screening" tool.

16           Additionally, the government provided *no* evidence here, or in other court filings,

17   that it used even this inadequate form for Plaintiffs and class members outside of the

18   Federal Detention Center-SeaTac that was referenced in the James Declaration. *See*

19   *generally* James Decl.  There is good reason to think they do not—the form proffered

20   by the government states that it is a Bureau of Prisons form, and there is no indication

21

22   _____

[32] Suppl. Berrick Decl. ¶¶ 11–12.

23   [33] The lack of such questions is striking given that Congressional testimony revealed that the government knew that trauma would occur. *Supra* 12. Moreover, a screening

24   tool requires validated questions because of the high likelihood of false negatives due to lack of trust in one's captors, stigma surrounding mental healthcare, the lack of

25   confidentiality assurances, etc. *See* Suppl. Berrick Decl. ¶ 11; Suppl. Hidalgo Decl. ¶ 7.

     [34] The government uses a different form to screen for PTSD in other contexts, but failed

26   to use that form here. *See* Substance Abuse and Mental Health Services Administration, Abbreviated PTSD Checklist—Civilian Version, https://www.integration.samhsa.gov/

27   clinical-practice/Abbreviated_PCL.pdf.

     [35] Plaintiff J.P., for example, "understands very little Spanish and no English." Gee

28   Decl. ¶ 15.

that it is used in ICE-owned detention facilities, state prisons and jails, or other places Plaintiffs and class members may be detained. *See generally* Declaration of Luis A. Cortes Romero, Dkt. No. 119-3, ¶ 8; Declaration of Lucero Chavez, Dkt. No. 119-2, ¶ 5 (Plaintiff J.P. received no mental health screening form); Supplemental Declaration of R.M. ¶ 2.

The government also summarily argues that its post-release obligation to provide care—to the extent it exists at all—"lasts only for a very short period of time" and that this obligation has been fulfilled. Memo at 10. The government, however, offers no authority to support its contention of the nature of its obligation, nor that this obligation has been fulfilled. Nor can it, as the pleading described above controls at this stage of the proceedings. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (When considering a motion to dismiss, a district court "consider[s] only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."). The scope of transition services will be explored in discovery; it cannot be resolved on a motion to dismiss on the government's unsupported assertion.[36]

Finally, the government argues that dismissal is appropriate since Plaintiffs "have had ample time to obtain mental health care" and any failure to do so "put their claims for 'transitional' care at risk." Memo at 13. Once again, there is nothing in the Complaint that supports these allegations, and it is wholly inappropriate for the Court to accept the government's narrative in summarily denying Plaintiffs their day in

---

[36] Indeed, *Charles v. County of Orange,* suggests that the post-detention obligation for mental health treatment extends beyond a "very short period." The government cites *Charles*, but fails to mention that the court found that plaintiffs may have been owed treatment for "a year and eight months, respectively" post-release. No. 16-CV-5527 (NSR), 2017 WL 4402576, at *9 (S.D.N.Y. Sept. 29, 2017). Moreover, the government's emphasis on the court's statement that the claim in *Charles* was akin to negligence or medical malpractice seeks to distract this Court from the fact that the government's actions here are a far cry from mere negligence; unlike in *Charles*, the government through its unconstitutional policy itself intentionally inflicted the trauma giving rise to the need for the treatment that the government then failed to provide.

1  Court.[37] "Defendants may not, in a motion to dismiss, simply assert their own

2  unsupported version of the facts and ask the Court to reject Plaintiff's claim on that

3  basis." *See Villa v. Maricopa Cty.*, No. CV-14-01681-PHX-DJH, 2015 WL 11118113,

4  at *9 (D. Ariz. Mar. 4, 2015); *Kwai Fun Wong v. United States*, 373 F.3d 952 (9th Cir.

5  2004) (declining motion to dismiss to "decide far-reaching constitutional questions

6  on a nonexistent factual record.").

7        Plaintiffs' Complaint states a claim, pursuant both to the state created danger

8  doctrine and *Wakefield*, and cannot be dismissed pursuant to Rule 12(b)(6).

9  **III.  SOVEREIGN IMMUNITY DOES NOT BAR PLAINTIFFS' CLAIMS.**

10        The government advances three arguments in support of its position that

11  sovereign immunity bars Plaintiffs' claims. None has merit. First, the government

12  mischaracterizes Plaintiffs' request for injunctive and declaratory relief as a request for

13  "money damages" to try to escape the blanket waiver of sovereign immunity in the

14  Administrative Procedure Act ("APA"), 5 U.S.C. § 702. Memo at 17–18. But

15  dispositive Supreme Court and Ninth Circuit case law holds that Plaintiffs' requested

16  relief does not constitute "money damages" under the APA, and is thus within its

17  immunity waiver. Second, the government contends that the Federal Tort Claims Act

18  ("FTCA") provides an exclusive remedy for Plaintiffs (Memo at 19), but this simply

19  recasts its first argument, as the FTCA provides an exclusive remedy only if the plaintiff

20  seeks "money damages," which Plaintiffs do not. 28 U.S.C. § 1346(b). Third, in a

21  footnote, the government halfheartedly contends that the APA's waiver of sovereign

22  immunity is limited by other APA provisions providing for review of "final agency

23  action," Memo at 17 n.4, but this position is foreclosed by Ninth Circuit case law.

24  Sovereign immunity is no bar here.

25  [37] The government also callously attempts to minimize Plaintiffs' claims by comparing
the constitutional requirement to address the long-lasting emotional anguish resulting

26  from its purposeful policy to separate families to detainees with "chest pains"

27  demanding facilities have a cardiologist on staff. Memo 14. As their Complaint makes
clear, Plaintiffs are requesting only that to which they are entitled, effective mental

28  health screening and care to remedy the harm that the government inflicted on them.

***The Injunctive Relief Plaintiffs Seek Is Not Money Damages:*** The APA provides that a federal court action "seeking relief other than money damages . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States." 5 U.S.C § 702. This provision waives sovereign immunity for the injunctive relief Plaintiffs seek. In an obvious attempt to escape this waiver, the government has misconstrued Plaintiffs' request for injunctive relief as seeking "the legal equivalent of monetary damages" (Memo at 17) despite the fact that the Complaint does not ask the Court to award damages, or indeed any form of monetary relief. *See* Compl. pp. 59–60. Based on this twisting of Plaintiffs' request, the government contends that the APA does not apply, and that sovereign immunity bars Plaintiffs' claims. Memo at 17.

The government is wrong. Injunctive relief is not the same as money damages, even if the government has to expend funds to provide the relief. In *Bowen v. Massachusetts*, the Supreme Court rejected the exact argument the government makes here. 487 U.S. 879 (1988). In that case, Massachusetts sought an injunction requiring the federal government to make certain Medicaid reimbursement payments and alleged that the government waived sovereign immunity via the APA. *Id.* at 885–87. The government contended that the APA's waiver did not apply because the suit sought to compel the government to make monetary payments, and therefore did not "see[k] relief other than money damages." *Id.* at 891. The Court rejected the government's position for two independent reasons, both of which apply here. First, the Court held that "insofar as the complaints sought declaratory and injunctive relief, they were certainly not actions for money damages." *Id.* at 893; *see also Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989) (5 U.S.C. § 702 "is an unqualified waiver of sovereign immunity in actions seeking non-monetary relief against legal wrongs for which governmental agencies are accountable."). This holding alone disposes of the government's argument because Plaintiffs seek *only* declaratory and injunctive relief which is "certainly not" an action for money damages.

Second, the *Bowen* Court held that Massachusetts' suit was not seeking "money

18

damages" within the meaning of the APA, even though it was seeking monetary relief, because it was not "a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money." 487 U.S. at 900. Here, the injunctive relief Plaintiffs seek does not even require the government to pay Plaintiffs or class members any money.

Contrary to the government's position, courts routinely find that the APA's sovereign immunity waiver applies even where the injunctive relief would require the government to expend funds. *See*, *e.g.*, *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 929 (9th Cir. 2008) (demand for injunction requiring federal government to repair or rebuild the plaintiffs' houses was not a demand for "money damages" under the APA); *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998) (indemnification action is not a suit for "money damages" outside the APA's waiver).

In a futile attempt to distinguish this dispositive case law, the government cites *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999), to contend that sovereign immunity bars Plaintiffs' request for an injunction requiring the government to provide appropriate mental health care to families it injured because that injunction is supposedly "substitute relief" rather than "specific relief." Memo at 18. But the government's argument is contrary to the plain meaning of the APA's waiver, which excludes only *money* damages, not all kinds of "substitute relief." *Blue Fox* is not to the contrary. It holds that where a plaintiff seeks an equitable lien against the government with an aim "to seize or attach money in the hands of the Government as compensation for [a] loss," that lien constitutes a claim for money damages, but that holding stands only for the proposition, irrelevant here, that where a plaintiff is seeking *money* as substitute relief, the APA's waiver does not apply. 525 U.S. at 263. *Blue Fox* says nothing about the relief sought in this case, which does not require the government to pay money to Plaintiffs or class members.

Tellingly, the government cites *no* post-*Bowen* case finding non-monetary

19

injunctive relief constituted "money damages" under the APA. The cases the government does cite provide no support for its position. Memo at 18. In *Hubbard v. EPA*, the court held the APA's waiver of sovereign immunity did not waive sovereign immunity for backpay. 982 F.2d 531, 539 (D.C. Cir. 1992). As in *Blue Fox*, but unlike here, the plaintiff in *Hubbard* sought to force the government to pay him *money* directly, not provide non-monetary injunctive relief. The government also cites *Eric v. Secretary of U.S. Department of Housing & Urban Development*, a district court case predating *Bowen* applying a standard that the *Bowen* Court held incorrect—that any injunctive relief that requires the federal government to make expenditures constitutes "money damages" under the APA. *See* 464 F. Supp. 44, 48 (D. Alaska 1978). Accordingly, *Bowen* overruled *Eric* on the exact point for which the government cites it.[38]

The government also suggests, without support, that because Plaintiffs could have brought money damages claims, the APA's sovereign immunity waiver does not apply. Memo at 18. Whether Plaintiffs *could* have sought money damages, they did not, and the APA waives sovereign immunity for their claims. *See Trudeau v. FTC*, 456 F.3d 178, 187 (D.C. Cir. 2006) (sovereign immunity waived where plaintiff "limited the relief he seeks to a declaratory judgment and an injunction").

The government's attempt to contort Plaintiff's request for declaratory and injunctive relief that will not require the government to pay them any money into a claim for "money damages" defies both law and logic. The Court should reject it.

***The FTCA Is Not An Exclusive Remedy for Plaintiffs:*** The government wrongly contends that Plaintiffs' claims for injunctive relief are barred because, "[a]ccording to 28 U.S.C. § 2679(a), for actions sounding in tort against the United States, an action for money damages under [28 U.S.C.] § 1346(b) is the exclusive avenue available." Memo

---

[38] The government cites two inapposite cases that do not suggest Plaintiffs' claims should be construed as seeking "money damages." Memo 18. *Rosebrock v. Mathis* found a request for a "reparative injunction" moot; it does not discuss the APA. 745 F.3d 963 (9th Cir. 2014). *DeSilva v. Donovan* found plaintiffs lacked standing because it was "unclear" how the proposed relief "would remedy [their] past injuries"; it did not discuss sovereign immunity. 81 F. Supp. 3d 20, 26 (D.D.C. 2015).

at 19. These statutes' plain language forecloses the government's position.

28 U.S.C. § 2679(a) provides that "[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive." Thus, if a suit is not "cognizable" under 28 U.S.C. § 1346(b), this exclusive remedy provision does not apply. 28 U.S.C. § 1346(b)(1), in turn, provides:

> . . . the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

(emphasis added). To be "cognizable," *i.e.*, actionable, under § 1346(b), a claim must "alleg[e] the six elements outlined above." *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994).[39] Here, Plaintiffs' claims do not allege all six elements: Plaintiffs do not seek money damages. Their claims thus are not "cognizable" under § 1346(b) and in turn not subject to § 2679(a)'s exclusive remedy provision.

***The APA's Sovereign Immunity Waiver Is Not Limited By Other Provisions:*** In a footnote, the government suggests that there is a "dispute" in this circuit whether the sovereign immunity waiver in 5 U.S.C. § 702 is limited by 5 U.S.C. § 704's provision that agency actions are only reviewable under the APA if they are final and there is no other adequate remedy. Memo at 17 n.4. The government is wrong—as the Ninth Circuit made clear just last year, the APA's sovereign immunity waiver is <u>not</u> limited by other provisions of the APA. *See Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1172 (9th Cir. 2017) (5 U.S.C. § 702 "waives sovereign immunity broadly

---

[39] *Simmons v. Himmelreich*, 136 S. Ct. 1843, 1846–47 (2016), cited by the government (Memo 19) is not to the contrary. It states in a parenthetical that 28 U.S.C. § 2679(a) provides that plaintiffs "cannot sue agency for claims within scope of FTCA." But Plaintiffs' claims are not for money damages so are not within the scope of the FTCA.

1  for all causes of action that meet its terms," whereas 5 U.S.C. § 704's "'final agency

2  action limitation' applies only to APA claims"); *see also Trudeau*, 456 F.3d at 186 ("We

3  have previously, and repeatedly, [held] that the APA's waiver of sovereign immunity

4  applies to any suit whether under the APA or not.").

5       Here, of course, Plaintiffs do not bring a claim under the APA; instead, they

6  allege that the government has violated their substantive due process rights, as well as

7  the Equal Protection Guarantee of the Fifth Amendment's Due Process Clause. *See*

8  Compl. ¶¶ 172–85. Under *Navajo Nation*, the APA's sovereign immunity waiver

9  applies regardless whether Plaintiffs have met the requirements of an APA claim

10 (including final agency action and absence of another adequate remedy). The

11 government's suggestion that this issue is "unsettled" is incorrect.

12      In sum, because Plaintiffs are not seeking money damages, the APA's sovereign

13 immunity waiver applies, and sovereign immunity does not bar Plaintiffs' claims.

14 **IV.   THIS CASE IS NOT DUPLICATIVE OF *MS. L.***

15      The government argues that this action is duplicative of *Ms. L.* and should be

16 dismissed because "[Plaintiffs] allege the same class qualifications as *Ms. L.* and are

17 merely splitting their claim for relief." Memo at 19. The government's arguments are

18 wrong and misconstrue the issues in this case. The government acknowledges that for

19 an action to be duplicative, "'the causes of action and relief sought, as well as the parties

20 or privies to the action are the same.'" *Id.* at 19 (quoting *Adams v. Cal. Dep't of Health*

21 *Servs*,, 487 F.3d 684, 689 (9th Cir. 2007). Here, the causes of action and relief sought

22 differ meaningfully. This case is not duplicative of *Ms. L.*

23      The government primarily contends that "Plaintiffs allege the same harm as in

24 the *Ms. L.* litigation, namely family separation and conditions of detention." Memo at

25 20. But the issue before the court in *Ms. L.* is whether the government's family

26 separation policy violated the *Ms. L.* plaintiffs' substantive due process right to family

27 integrity. The relief sought in *Ms. L.* is a determination that the family separation policy

28 was in fact unconstitutional and an injunction ordering the government to reunite

22

parents and children separated under the policy. By contrast, the issues here are whether a deliberate policy of inflicting trauma on individuals through family separation itself creates a separate constitutional claim, whether, and to what extent, the government has an obligation to provide mental healthcare to those separated individuals during detention and separation and after release and reunification, and whether the government failed and continues to fail to fulfill its obligations to Plaintiffs and the proposed class.[40] Moreover, in the instant action, the government's due process violations are *ongoing* in light of the government's continuing failure to provide adequate mental health care.

For this reason and contrary to the government's assertion, the two actions also do not "'rely on substantially the same evidence.'" Memo at 19–20. Unlike in *Ms. L*, Plaintiffs here have presented and will present evidence of the government's intent to inflict trauma through its family separation policy, of the nature and extent of the severe and continuing trauma inflicted on parents and children by the separations, and of the lack of mental health care provided by the government to these parents and children.

The government's misconception of the issues in this case is exemplified by its claim that "the *Ms. L.* litigation has mooted many of the claims in this case." *Id.* at 20. The end of the family separation policy and the reunification of families ordered in *Ms. L.* effectuated the primary relief sought in that case, and it is true that reunification is an important part of addressing the trauma inflicted by the policy. However, reunification is only one piece of what is sought here. The government's duty to provide adequate mental health care to those deliberately traumatized by its family separation policy extends beyond merely reuniting the families and releasing them from detention.

---

[40] In a footnote, the government says a request in a status report by the *Ms. L.* plaintiffs for a fund for trauma counseling for children "underscores the Government's argument for dismissal." Memo 21 n.6. Yet the government concedes that the *Ms. L.* plaintiffs "have not pursued that remedy" in their complaint and does not contend that the request has been granted. Moreover, the request does not change the fact that the issues in the cases are different. The *Ms. L.* plaintiffs do not allege that the government has a constitutional obligation to provide mental health care to the families it traumatized.

1    Although the reunification order in *Ms. L.* is a step in the right direction, it did not moot
2    any of Plaintiffs' claims let alone "many" of them. *Supra* 6–10.

3        The government also confusingly argues that "this lawsuit seeks to modify the
4    *Flores* settlement," which applies to children, despite the fact that the government
5    accurately notes that children "are not even parties in this case." Memo at 21. This case
6    is not an "attempt to undo the *Flores* bargain." *Id.* Plaintiffs and the proposed class, all
7    of whom are parents and none of whom is a plaintiff in *Flores*, seek adequate mental
8    health care to address the trauma inflicted by the family separation policy. That such
9    mental health care could include, among other things, family centered treatment
10   involving their children does not mean that Plaintiffs are seeking to modify the bargain
11   in *Flores*.

12   **V.    VENUE IS PROPER.**

13       Contrary to Defendants' contention, venue is proper in this district under 28
14   U.S.C. § 1391(e)(1) which provides that venue may lie in any judicial district in which
15   (1) "a defendant . . . resides"; (2) "a substantial part of the events or omissions giving
16   rise to the claim occurred"; or (3) "the plaintiff resides if no real property is involved."

17       First, venue lies in this district because, as the government concedes, two of the
18   defendants—David Marin, LA Field Office Director of ICE, and Lisa Von Nordheim,
19   Warden at the James A. Musick Facility—reside here for venue purposes. Memo at 24;
20   *see Tsi Akim Maidu of Taylorsville Rancheria v. U.S. Dep't of the Interior*, No. 16-cv-
21   07189-LB, 2017 WL 2289203, at *2 (N.D. Cal. May 25, 2017) (federal officers reside
22   where their official duties are performed). To avoid this necessary conclusion, the
23   government asserts that no substantive or factual allegations are directed at these two
24   Defendants. Memo at 24. This disregards the Complaint's numerous detailed
25   allegations. While certain high-level decisions may have been made elsewhere,
26   Plaintiffs specifically challenge the failure to provide appropriate mental health
27   treatment at detention facilities, including the James Musick Facility, which is under
28   the supervision of Defendants Von Nordheim and Marin. *See, e.g.*, Compl. ¶¶ 13, 14,

16, 21–23, 54, 55, 142–144, 146–147, 148, 168.

Second, venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Plaintiffs' claims arise from the government's deliberate infliction of trauma through its separation of parents and children and its failure to provide appropriate mental health screenings and treatment, including during detention. At the time the Complaint was filed, the government detained Plaintiff J.P. in this judicial district, where it kept her separated from her daughter and deprived her of appropriate mental health services.[41] In light of these allegations, Defendants cannot seriously contend that "Plaintiffs never allege that a 'substantial part of the events or omissions giving rise . . . to the claim [sic]' occurred in this District." *See, e.g.*, *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 752 (N.D. Cal. 2015) ("[S]*ignificant* events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere."). Venue lies in this district under 28 U.S.C. § 1391(e).[42]

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to dismiss.

Dated: October 15, 2018

Respectfully Submitted,

MARK ROSENBAUM (SBN 59940)
mrosenbaum@publiccounsel.org
Judy London (SBN 149431)
jlondon@publiccounsel.org
Talia Inlender (SBN 253796)
tinlender@publiccounsel.org
Alisa Hartz (SBN 285141)
ahartz@publiccounsel.org

/s/ Amy P. Lally
Amy P. Lally (SBN 198555)
alally@sidley.com
Ellyce R. Cooper (SBN 204453)
ecooper@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: +1 310 595-9662
Facsimile: +1 310 595-9501

[41] Moreover, other class members were likewise detained in this district separate from their children and deprived of mental health services, further demonstrating that a substantial part of the events and omissions at issue occurred in this district.
[42] In any event, even if venue were not proper—and it is—this Court should not dismiss but transfer this case "in the interest of justice," "to any district … in which it could have been brought." 28 U.S.C. § 1406(a); *see Tsi Akim Maidu*, 2017 WL 2289203, at *2 ("[T]ransfer is preferred to the harsh remedy of dismissal.").

1  Lucero Chavez (SBN 273531)
   lchavez@publiccounsel.org
2  PUBLIC COUNSEL
   610 S. Ardmore Avenue
3  Los Angeles, CA 90005
   Telephone: +1 213 385-2977
4  Facsimile: +1 213 385-9089

5  Mark E. Haddad (SBN 205945)
   markhadd@usc.edu
6  Part-time Lecturer in Law, USC Gould
   School of Law**
7  University of Southern California
   699 Exposition Blvd.
8  Los Angeles, CA 90089
   Telephone: +1 213 675-5957
9
   Luis Cortes Romero (SBN 310852)
10 lcores@ia-lc.com
   Alma L. David (SBN 257676)
11 adavid@ia-lc.com
   Immigrant Advocacy & Litigation
12 Center, PLLC
   19309 68th Ave South R-102
13 Kent, WA 98032
   Telephone: +1 253 872-4730
14 Facsimile: +1 253 237-1591

Carter G. Phillips*
cphillips@sidley.com
Jennifer J. Clark*
jennifer.clark@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: +1 202 736-8270
Facsimile: +1 202 736-8711

Michael Andolina*
mandolina@sidley.com
Timothy Payne*
tpayne@sidley.com
Kevin Fee*
kfee@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: +1 312 853-7000
Facsimile: +1 312 853-7036

Sean A. Commons (SBN 217603)
scommons@sidley.com
Bridget S. Johnsen (SBN 210778)
bjohnsen@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896-6000
Facsimile: +1 213 896-6600

15

16

17

18  *Admitted pro hac vice*

19  ** *Institution listed for identification purposes only*

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS