```
               UNITED STATES DISTRICT COURT

       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

               HONORABLE JOHN A. KRONSTADT

            UNITED STATES DISTRICT JUDGE PRESIDING

                         - - -


MS. J.P., ET AL.,                    )
                                     )
               PLAINTIFFS,           )
                                     )
VS.                                  ) CV18-06081-JAK
                                     )
JEFFERSON B. SESSIONS, ET AL.,       )
                                     )
               DEFENDANTS.           )
_____)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, JANUARY 7, 2019; 10:30 AM

_____

ALEXANDER T. JOKO, CSR NO. 12272
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CA 90012
AJ_CSR@YAHOO.COM

1    **APPEARANCES OF COUNSEL:**

2    FOR PLAINTIFFS:      DANIEL C. CRAIG
                          SIDLEY AUSTIN LLP
3                         ONE SOUTH DEARBORN
                          CHICAGO, IL 60603
4
                          MARK D. ROSENBAUM
5                         PUBLIC COUNSEL
                          610 SOUTH ARDMORE AVENUE
6                         LOS ANGELES, CA 90005

7                         MICHAEL C. ANDOLINA
                          SIDLEY AUSTIN LLP
8                         ONE SOUTH DEARBORN STREET
                          CHICAGO, IL 60603
9
                          SEAN A. COMMONS
10                        SIDLEY AUSTIN LLP
                          555 WEST FIFTH STREET
11                        SUITE 4000
                          LOS ANGELES, CA 90013-1010
12

13   FOR DEFENDANTS:      **(TELEPHONIC)**

14                        MICHAEL C. HEYSE
                          MICHELLE R. SLACK
15                        DANIEL GOLDMAN
                          LANCE LOMOND JOLLEY
16                        SCOTT MICHAEL MARCONDA
                          U.S. DEPARTMENT OF JUSTICE
17                        CIVIL DIVISION - OIL
                          PO BOX 878 BEN FRANKLIN STATION
18                        WASHINGTON, DC 20044

19

20

21

22

23

24

25

```
1              LOS ANGELES, CALIFORNIA; MONDAY, JANUARY 7, 2019

2                                10:30 AM

3                                - - - - -

4

5

6              THE COURT:  ITEM NO. 5, CV18-06081, MS. J.P.,

7   ET AL., V. JEFFERSON B. SESSIONS, ET AL.

8                   WOULD YOU STATE YOUR APPEARANCES, PLEASE,

9   STARTING WITH PLAINTIFF'S COUNSEL.

10             MR. CRAIG:  GOOD MORNING, YOUR HONOR.  DANIEL

11  CRAIG ON BEHALF OF THE PLAINTIFFS.

12                  WITH ME ARE MY COLLEAGUES, MICHAEL

13  ANDOLINA, SEAN COMMONS AND MARK ROSENBAUM OF PUBLIC

14  COUNSEL.

15             THE COURT:  GOOD MORNING TO ALL OF YOU.  THANK

16  YOU.

17                  AND FOR THE DEFENDANTS?

18             MR. HEYSE:  GOOD MORNING, YOUR HONOR.  MICHAEL

19  HEYSE ON BEHALF OF DEFENDANTS.

20                  AND ALSO ON THE LINE ARE MICHELLE SLACK,

21  DAN GOLDMAN, SCOTT MARCONDA AND LANCE JOLLEY.

22             THE COURT:  GOOD MORNING TO ALL OF YOU.

23                  PLEASE KEEP YOUR VOICE UP, MR. HEYSE, SO

24  WE CAN HEAR YOU.  YOU ARE A LITTLE QUIET THERE.

25             MR. HEYSE:  OKAY.
```

```
 1              THE COURT:  THAT'S BETTER.  THANK YOU.
 2                  YOU CAN BE SEATED, UNLESS THERE'S
 3     SOMETHING NEW?
 4              MR. CRAIG:  THANK YOU, YOUR HONOR.
 5              THE COURT:  AND, MR. HEYSE AND MR. GOLDMAN AND
 6     MR. JOLLEY AND MS. SLACK, ANYTIME ANY OF YOU SPEAKS BY
 7     PHONE, PLEASE FIRST IDENTIFY YOURSELF BY NAME SO THAT
 8     THE REPORTER KNOWS WHO IS SPEAKING.
 9                  AND, SECOND, THANK YOU FOR -- I KNOW THAT
10     THERE'S BEEN SOME ADMINISTRATIVE CHALLENGES TO YOUR
11     ATTENDING.  SO THANK YOU FOR ATTENDING TODAY BY
12     TELEPHONE.
13              MR. HEYSE:  THANK YOU, YOUR HONOR, FOR
14     ACCOMMODATING OUR NEED TO APPEAR TELEPHONICALLY.  THIS
15     IS DEFINITELY NOT OUR PREFERRED MANNER OF APPEARANCE,
16     SO THANK YOU.
17              THE COURT:  YOU'RE WELCOME.
18                  WHAT I'D LIKE TO START WITH IS -- WE HAD
19     A LENGTHY HEARING, AND I'M AWARE OF THE ISSUES THAT
20     ARE -- WE DISCUSSED PREVIOUSLY.  AND I'M MINDFUL OF THE
21     RECENT CASE CITATION THAT THE UNITED STATES HAS
22     SUBMITTED, THE DISTRICT COURT'S DECISION IN THE
23     DOE V. SHENANDOAH VALLEY CASE.
24                  BUT BEFORE WE TURN TO THE MOTION TO
25     DISMISS ISSUES, I WANTED TO KNOW A COUPLE OF THINGS.
```

| | |
|---|---|
| 1 | FIRST, I PREVIOUSLY RECEIVED SUPPLEMENTAL |
| 2 | INFORMATION CONCERNING THE MEMBERS OF THE PUTATIVE |
| 3 | CLASS, INCLUDING THOSE WHO WERE DETAINED. |
| 4 | ARE THOSE WHO WERE PREVIOUSLY IDENTIFIED |
| 5 | AS BEING DETAINED STILL BEING DETAINED, AS FAR AS YOU |
| 6 | KNOW, MR. HEYSE? |
| 7 | MR. HEYSE:  AT THIS TIME, WE ARE WORKING ON |
| 8 | UPDATING THAT INFORMATION.  UNFORTUNATELY, GIVEN THE |
| 9 | SHUTDOWN, THAT IS RATHER DIFFICULT. |
| 10 | THERE ARE FOLKS OVER AT HHS AND DHS THAT |
| 11 | ARE WORKING TOGETHER ON THAT, KEEPING THAT UP TO DATE. |
| 12 | BUT IN TERMS OF GETTING A REPORT OUT, WE |
| 13 | HAD HOPED TO GET SOMETHING BEFORE THE HEARING TODAY. |
| 14 | WE'RE HOPING TO GET SOMETHING TO THE COURT SOON ON |
| 15 | THAT. |
| 16 | THE COURT:  DO YOU HAVE ANY TIME ESTIMATE? |
| 17 | MR. HEYSE:  GIVEN THE SHUTDOWN, IT'S HARD TO |
| 18 | SAY. |
| 19 | I THINK WE CAN HAVE SOMETHING SOON.  I'M |
| 20 | HESITANT TO PROMISE ANYTHING GIVEN THE SITUATION. |
| 21 | I WOULD SAY NO LATER THAN TWO WEEKS, 14 |
| 22 | DAYS. |
| 23 | THE COURT:  OKAY.  AND I KNOW YOU'RE LOOKING |
| 24 | FOR THE DATA, SO I'M NOT ASKING -- SO IN ASKING THIS |
| 25 | QUESTION, I'M NOT ASKING YOU TO GUESS. |

1         BUT DO YOU HAVE ANY REASON, AT THIS

2    POINT, TO -- A REASONABLE BASIS TO CONCLUDE THAT

3    THERE'S -- THAT NONE OF THESE PERSONS IN THE -- HAVE

4    BEEN IDENTIFIED AS STILL BEING DETAINED?

5         MR. HEYSE:  NONE STILL DETAINED?  I, HONESTLY,

6    DON'T HAVE THE MEANS TO SAY AT THIS TIME EXACTLY HOW

7    MANY ARE.

8         IS IT NONE, AGAIN (INAUDIBLE) TO ME AS

9    SAYING 38.  I DON'T KNOW.

10         THE COURT:  OKAY.  THAT'S FINE.

11         MR. CRAIG, WHO WILL BE ADDRESSING,

12    INITIALLY, ISSUES FOR THE PLAINTIFFS?

13         MR. CRAIG:  I WILL, YOUR HONOR.

14         THE COURT:  AGAIN, I'M NOT QUITE AT THE ISSUES

15    EXPRESSLY FOR TODAY YET.  BUT IF A CLASS WERE

16    CERTIFIED, AND COMMUNICATION WITH CLASS MEMBERS WERE

17    DEEMED NECESSARY, DO YOU HAVE A METHOD OF DOING THAT?

18         MR. CRAIG:  WE BELIEVE THAT THE GOVERNMENT HAS

19    A METHOD OF DOING THAT.  THE REASON WE THINK SO IS,

20    MANY OF THE CLASS MEMBERS ARE IN IMMIGRATION OR

21    ASYLUM-RELATED PROCEEDINGS.  I.C.E. TRACKS THOSE -- AS

22    THE PARTIES OF THOSE PROCEEDINGS, THEY KNOW WHERE

23    THEY'RE PENDING.  THEY NOW HOW TO GET NOTICE TO THEM.

24         AND I WILL NOTE THAT, IN THE MS. L. CASE

25    THAT'S PENDING BEFORE JUDGE SABRAW, THERE'S BEEN A

```
1    SETTLEMENT.  AND THE GOVERNMENT HAS AGREED AS -- OR I
2    DON'T KNOW IF THEY HAVE AGREED, BUT HAVE BEEN ORDERED
3    TO --
4              THE COURT:  SLOW DOWN.
5              MR. CRAIG:  I WILL, YOUR HONOR.
6                   THE GOVERNMENT IS TO BE PROVIDING NOTICE
7    TO THE MEMBERS OF THE CLASSES THAT WERE SUBJECT TO THAT
8    SETTLEMENT.
9                   THE COURT:  IF A CLASS WERE CERTIFIED HERE, IS
10   IT YOUR EXPECTATION THAT THE PLAINTIFFS WOULD AGREE
11   TO -- LET ME PUT IT DIFFERENTLY.
12                   IT'S COMMON IN A CLASS ACTION FOR
13   COMMUNICATIONS WITH CLASS MEMBERS NOT TO BE MADE BY THE
14   DEFENDANT.
15                   SO YOU ANTICIPATE THAT THERE WOULD BE AN
16   ADMINISTRATIVE PROCESS PURSUANT TO WHICH COMMUNICATION
17   COULD OCCUR, IF THE CLASS WERE CERTIFIED?
18              MR. CRAIG:  YES, YOUR HONOR.
19              THE COURT:  MR. HEYSE, DO YOU AGREE WITH THAT?
20              MR. HEYSE:  AT THIS TIME -- I MEAN, GIVEN A
21   LOT OF OUR ARGUMENTS HERE DEAL WITH HOW SIMILAR THIS
22   CASE IS TO MS. L., AT THE SAME TOKEN, THE
23   COMMUNICATIONS IN MS. L., THE AGREEMENT BY THE
24   GOVERNMENT THERE TO COMMUNICATE WITH THE AFFECTED
25   INDIVIDUALS IS UNDER A DIFFERENT CIRCUMSTANCE.  THAT'S
```

```
 1   ABOUT REUNIFYING THEM WITH, YOU KNOW, THE PARENTS AND

 2   CHILDREN.

 3              YOU ALSO HAVE A LOT OF PEOPLE THAT ARE

 4   OUT OF THE COUNTRY.  SO THOSE ISSUES, THAT'S ALL PART

 5   OF THAT CASE.  WHETHER OR NOT WE WOULD BE EXPECTED TO

 6   DO THE PLAINTIFF'S JOB, IN ESSENCE, CONTACTING THE

 7   PEOPLE THAT THEY WANT TO REPRESENT, AGAIN, FROM THE

 8   SOUND OF IT, IT SOUNDS VERY DUPLICATIVE OF WHAT'S GOING

 9   ON IN MS. L.

10              TO THE EXTENT WE CAN FACILITATE, AGAIN, I

11   CAN'T AGREE TO THESE THINGS WITHOUT TAKING THAT BACK TO

12   OUR CLIENTS.

13         THE COURT:  NO, I UNDERSTAND.

14              I'M NOT HERE TO HAVE YOU ARGUE ABOUT THE

15   FIRST TO FILE.

16              IF I CONCLUDE THAT -- AGREE WITH YOU,

17   MR. HEYSE, ON FIRST TO FILE, THEN THERE WOULDN'T BE AN

18   ISSUE HERE.

19              IF I, ULTIMATELY, WERE TO DISAGREE WITH

20   YOU ON THAT AND STILL PROCEED, THEN THERE WOULD BE A

21   POTENTIAL OVERLAPPING ISSUE IN TERMS OF HOW BEST TO

22   COMMUNICATE WITH MEMBERS OF THE CLASS.  SO I'M JUST

23   THINKING ABOUT THAT ADMINISTRATIVELY.

24              SO LET ME ASK YOU A DIFFERENT QUESTION.

25   IT'S BEEN -- AS IT HAS BEEN MENTIONED ALREADY, THE
```

```
1    MS. L. -- THE PARTIES IN MS. L. REACHED A SETTLEMENT.

2    THAT'S GOOD.

3              HAVE THE PARTIES HERE -- I'M NOT ASKING

4    ABOUT THE SUBSTANCE OF ANY DISCUSSION, BUT HAVE THERE

5    BEEN ANY DISCUSSIONS BETWEEN THE PARTIES IN THIS ACTION

6    ABOUT TRYING TO RESOLVE IT?

7              MR. CRAIG:  THERE HAVE BEEN LIMITED

8    DISCUSSIONS, YOUR HONOR, THAT WERE ULTIMATELY NOT

9    FRUITFUL.

10             THE COURT:  WHEN DID THEY CONCLUDE?

11             MR. CRAIG:  I BELIEVE -- I WAS NOT PARTY TO

12   THOSE DISCUSSIONS, BUT I BELIEVE IT WAS A MONTH OR TWO

13   AGO.

14             THE COURT:  AFTER OR BEFORE MS. L. WAS

15   SETTLED?

16             MR. CRAIG:  I'M NOT CERTAIN, YOUR HONOR.

17             THE COURT:  MR. HEYSE, DO YOU KNOW?

18             MR. HEYSE:  IT WAS ACTUALLY MORE RECENT THAN

19   THAT.  I THINK OUR LAST COMMUNICATION ON THIS WAS

20   PRETTY CLOSE TO AROUND THE CHRISTMAS HOLIDAYS.

21             AND, YES, IT WAS SUBSEQUENT TO THE MS. L.

22   SETTLEMENT.

23             THE COURT:  AGAIN, I'M NOT ASKING ABOUT THE

24   SUBSTANCE OF ANY COMMUNICATIONS; BUT, MR. HEYSE, DO YOU

25   THINK THAT THERE WOULD BE A VALUE IN SOME FURTHER
```

1   DISCUSSIONS?

2                    AND, IF SO, AT WHAT POINT?

3          MR. HEYSE:  THE GOVERNMENT'S RESPONSE --

4   AGAIN, I'M TRYING TO AVOID GETTING INTO THE MERITS OF

5   WHAT WE DISCUSSED.

6                    THE GOVERNMENT'S RESPONSE TO THE

7   PLAINTIFF'S OFFER WAS, THAT WE DID NOT ACCEPT THEIR

8   INITIAL OFFER.  BUT WE WERE OPEN TO HEARING ANOTHER

9   PROPOSAL FROM THEM, A DIFFERENT ONE, AND DIDN'T RECEIVE

10  ANY RESPONSE TO THAT.

11         THE COURT:  OKAY.  HAVE ANY OF YOUR -- WELL,

12  MR. HEYSE, WERE YOU INVOLVED IN THE DISCUSSIONS IN

13  MS. L.?

14         MR. HEYSE:  NO.

15         THE COURT:  OKAY.  DO YOU THINK THAT, IF THERE

16  WERE TO BE FURTHER DISCUSSIONS OF TRYING TO RESOLVE

17  THIS MATTER, IT WOULD BE PRODUCTIVE TO HAVE A

18  FACILITATOR, A BENCH OFFICER OR ANOTHER PERSON?

19         MR. HEYSE:  I'M HESITANT TO SAY "NO" HAVING

20  PARTICIPATED IN MEDIATIONS AND THE LIKE IN THE PAST,

21  MANY OF THEM.  IN THIS SITUATION, I FEEL -- WITHOUT A

22  RESPONSE FROM THE PLAINTIFFS AS TO OUR LAST MESSAGE ON

23  THIS SUBJECT, I'M NOT SURE IT WOULD BE FRUITFUL.

24         THE COURT:  I DIDN'T MEAN TO SAY THAT.  I JUST

25  WANT TO KNOW IF BOTH SIDES THOUGHT IT WOULD BE

1    PRODUCTIVE TO HAVE SOME FURTHER DISCUSSIONS, THEN MY

2    QUESTION WOULD BE, DO YOU THINK IT WOULD BE VALUABLE TO

3    HAVE THEM FACILITATED OR IS THAT SOMETHING YOU DON'T

4    THINK YOU CAN DETERMINE UNTIL YOU KNOW WHERE THE

5    PARTIES -- YOU KNOW THE PARTIES' RESPECTIVE POSITIONS?

6            MR. HEYSE:  I'D AGREE WITH THE LATTER.  I

7    THINK WE NEED SOME INDICATION OF A WILLINGNESS TO

8    NEGOTIATE, PUT IT THAT WAY.

9            THE COURT:  MR. CRAIG?

10            MR. CRAIG:  OF COURSE WE'RE ALWAYS WILLING TO

11    NEGOTIATE AND INTERESTED IN RESOLVING CASES BY

12    NEGOTIATION.  BUT, AGAIN, WITHOUT GETTING INTO THE

13    SUBSTANCE OF THE NEGOTIATIONS, THE PARTIES ARE VERY FAR

14    APART.

15            IF THE COURT WISHES, WE'LL BE HAPPY TO

16    MAKE A COUNTER-PROPOSAL.  I THINK IT'S LIKELY TO RESULT

17    IN AN IMPASSE AND NOT ONE THAT'S EASILY BRIDGED.

18            THE COURT:  IF YOU MADE A COUNTER-PROPOSAL,

19    AND MR. HEYSE AND HIS COLLEAGUES AND OTHERS WITH WHOM

20    THEY'RE WORKING CONCLUDED THAT SOME FURTHER DISCUSSIONS

21    MIGHT BE PRODUCTIVE, DO YOU HAVE A VIEW ON WHETHER

22    WORKING WITH A BENCH OFFICER OR OTHER FACILITATOR WOULD

23    BE PRODUCTIVE?

24            MR. CRAIG:  THAT PROBABLY WOULD BE PRODUCTIVE

25    IF THE GOVERNMENT IS OF THE VIEW THAT THERE'S A GAP

```
1   THAT CAN BE BRIDGED HERE.  IT'S ALWAYS GOOD TO HAVE A
2   THIRD PARTY.
3              THE COURT:  OKAY.  THANK YOU.  LET ME TURN TO
4   ONE OTHER QUESTION.
5              THERE WAS -- I BELIEVE THERE WAS SOME
6   RECENT REPORTING ABOUT A CONGRESSIONAL APPROPRIATION OF
7   APPROXIMATELY $4 MILLION TO BE USED FOR CERTAIN
8   PURPOSES.
9              ARE YOU AWARE OF THAT, MR. HEYSE?
10             MR. HEYSE:  YES.  I BELIEVE WE REFERENCED THAT
11  IN OUR -- YES, YOUR HONOR.  I BELIEVE WE REFERENCED
12  THAT IN OUR LAST FILING WITH THE COURT.  NOT THE
13  SHENANDOAH CASE, BUT THE LAST ONE BEFORE THAT.  I THINK
14  IT WAS OUR LAST JOINT REPORT REGARDING THE NUMBERS YOUR
15  HONOR HAD ASKED ABOUT.
16             THE COURT:  ALL RIGHT.  AND ARE THOSE -- DO
17  YOU KNOW THE STATUS OF THAT APPROPRIATION, IN LIGHT OF
18  THE CURRENT FISCAL CIRCUMSTANCES?
19             MR. HEYSE:  I BELIEVE THOSE COUNT AS
20  ALREADY -- IF NOT AVAILABLE, ALREADY EXPENDED FUNDS.
21  THAT WAS FOR A PRIOR APPROPRIATION FOR HHS.  I DON'T
22  KNOW -- I DON'T BELIEVE HHS IS AFFECTED BY THE CURRENT
23  SHUTDOWN.  IT'S A -- UNFORTUNATELY, WE ARE.  BUT I
24  THINK IT'S ONLY ROUGHLY 25 PERCENT OF THE GOVERNMENT.
25  AND I BELIEVE HHS IS FUNDED.  I'M NOT CERTAIN ON THAT.
```

```
1              BUT EITHER WAY, I THINK THAT GRANT WAS
2    ALREADY GIVEN.  AND I THINK IT WAS IN PLACE AS OF
3    DECEMBER 1ST.  I BELIEVE IT WAS REFERENCED IN OUR
4    FILINGS.
5              THE COURT:  DO YOU KNOW WHETHER THOSE FUNDS
6    HAVE ALREADY BEEN EXPENDED OR ALLOCATED?
7              MR. HEYSE:  I DON'T KNOW FOR CERTAIN.  I CAN
8    CERTAINLY CHECK, BUT I WOULD BELIEVE SO BASED ON MY
9    UNDERSTANDING OF HOW THIS WORKS.  BUT I CAN CERTAINLY
10   CONFIRM THAT.
11             THE COURT:  IF YOU WOULD, I WOULD APPRECIATE
12   THAT.
13                  MR. CRAIG, DO YOU HAVE ANY INSIGHT ON
14   THAT?
15             MR. CRAIG:  I'M NOT CERTAIN IF THEY HAVE BEEN
16   EXPENDED OR NOT, YOUR HONOR.
17             THE COURT:  OKAY.  JUST A MINUTE.
18             MR. HEYSE:  I'M HEARING FROM CO-COUNSEL THAT
19   HHS IS CURRENTLY FUNDED.
20             THE COURT:  WITH RESPECT TO THIS $4 MILLION
21   AMOUNT, HAS THAT -- IT HAS BEEN PROVIDED TO HHS AND HAS
22   IT BEEN EXPENDED, OR YOU DON'T KNOW?
23             MR. HEYSE:  I BELIEVE IT'S HHS TAKING MONEY
24   OUT OF ITS OWN BUDGET.  IT'S A CONGRESSIONAL
25   AUTHORIZATION TO SPEND IN A CERTAIN (INAUDIBLE) WAY.
```

1    IT WAS A GRANT THAT HHS GAVE OUT TO COMMUNITY

2    PROVIDERS.

3              THE COURT:  OKAY.  DO YOU KNOW WHETHER --

4    OKAY.

5              WELL, THE QUESTION IS, DO YOU KNOW

6    WHETHER THOSE FUNDS THEN HAVE BEEN DISTRIBUTED?

7              MR. HEYSE:  I DO NOT.  I CAN CERTAINLY ASK.

8              THE COURT:  THANK YOU.

9              BEFORE WE TURN TO THE MOTION TO DISMISS,

10   ONE OTHER QUESTION FOR YOU.

11             IF THE MOTION -- IF THIS MATTER WERE TO

12   PROCEED ON THE MERITS, MR. CRAIG, DO YOU HAVE A TIME

13   ESTIMATE FOR THE AMOUNT OF TIME THAT WOULD BE REQUIRED

14   BETWEEN NOW AND TRIAL?

15             MR. CRAIG:  WE OBVIOUSLY HAVE A STRONG

16   INTEREST, YOUR HONOR, IN MOVING THIS TO TRIAL AS

17   EXPEDITIOUSLY AS POSSIBLE.

18             WE THINK THERE WOULD BE CERTAINLY SOME

19   DISCOVERY NECESSARY.

20             WE THINK THAT IS SOMETHING THAT COULD

21   BE -- JUST SORT OF A BACK-OF-THE-ENVELOPE CALCULATION,

22   MY ESTIMATE WOULD BE THREE TO SIX MONTHS FOR WRITTEN

23   DISCOVERY.  AND, HOPEFULLY, BY THE END OF THE SIX-MONTH

24   PERIOD, ANY DEPOSITIONS THAT NEED TO BE TAKEN.

25             OBVIOUSLY, WE ARE EAGER TO MOVE THIS JUST

```
 1    AS QUICKLY AS POSSIBLE AND ARE NOT INTERESTED IN
 2    DRAGGING THINGS OUT.  OUR CLIENTS ARE SEEKING RELIEF AS
 3    EXPEDITIOUSLY AS POSSIBLE.
 4              THE COURT:  ALL RIGHT.  WELL, IF THAT
 5    ESTIMATE -- ASSUMING, AGAIN, THAT THIS WERE TO --
 6    PUTTING ASIDE THE AMOUNT OF TIME THAT'S NECESSARY
 7    BETWEEN NOW AND WHEN AN ORDER ISSUES ON THE MOTION TO
 8    DISMISS, AND JUST ASSUMING, HYPOTHETICALLY, THE MATTER
 9    WERE TO -- THAT THE MOTION WERE DENIED, THEN IF IT TOOK
10    THREE TO SIX MONTHS FROM THEN TO CONDUCT WRITTEN
11    DISCOVERY AND THEN DEPOSITIONS, DO YOU THINK IT'S
12    REALISTIC THAT YOU WOULD BE READY FOR TRIAL SOONER THAN
13    12 MONTHS FROM NOW?
14              MR. CRAIG:  I THINK SO, YOUR HONOR.
15              AND, PERHAPS, YOU KNOW, ANOTHER TWO
16    MONTHS AFTER THE SIX, SO WE'RE GETTING TO SEVEN OR
17    EIGHT MONTHS TO PREPARE FOR TRIAL.  THIS IS, LIKE I
18    SAID, A HIGH PRIORITY FOR OUR CLIENTS.  AND WE WILL
19    BRING THE RESOURCES THAT NEED TO BE BROUGHT TO BEAR.
20              THE COURT:  MR. HEYSE, DO YOU HAVE ANY TIME
21    ESTIMATES?
22              MR. HEYSE:  GOING BACK TO THE TIME ESTIMATES
23    WE'VE ALREADY DISCUSSED THAT PREDATE THE MOTION TO
24    DISMISS, I BELIEVE BACK IN AUGUST, WE HAD DISCUSSED A
25    DISCOVERY SCHEDULE AND A TRIAL SCHEDULE.  AND I THINK
```

1   OUR PROPOSED TRIAL DATE AT THAT TIME WAS APRIL 2020.

2   SO EIGHT MONTHS FROM NOW IS ONLY SEPTEMBER 2019.  SO

3   THAT'S A PRETTY AGGRESSIVE ACCELERATION.

4               DISCOVERY-WISE, WE'RE LOOKING AT -- YOU

5   KNOW, AGAIN, THIS DEPENDS ON A LOT OF CONTINGENT

6   EVENTS.  IF THE COURT CERTIFIES THE CLASS, IT DEPENDS

7   ON WHETHER THE CLASS IS CERTIFIED AS IS, HOW MANY

8   PEOPLE ARE INVOLVED THERE.  POTENTIALLY LOOKING AT A

9   VERY LARGE NUMBER OF NOT ONLY DOCUMENTS, BUT ALSO

10  DEPOSITIONS AND GOING ACROSS SEVERAL GOVERNMENT

11  AGENCIES AND SUB-AGENCIES WITHIN, ESPECIALLY WITHIN

12  DHS.

13              I CAN'T AGREE TO THAT AGGRESSIVE OF A

14  SCHEDULE.  I UNDERSTAND THE ISSUE INVOLVED AND WANTING

15  TO RESOLVE IT QUICKLY.  BUT I WOULD STICK WITH OUR

16  ORIGINAL AGREED-UPON SCHEDULE.

17          THE COURT:  THANK YOU, MR. HEYSE.

18              THEN TURNING TO THE MOTION TO DISMISS,

19  SOME OF THE MATTERS DO OVERLAP WITH ISSUES THAT WE'VE

20  DISCUSSED PREVIOUSLY OR THAT HAVE BEEN BRIEFED

21  PREVIOUSLY.

22              BUT I SEE THE ISSUES THAT ARE BEING

23  PRESENTED HERE AS WHETHER THE CLAIMS ARE MOOT IN LIGHT

24  OF THE RESOLUTION OF THE MS. L. ACTION, AND THE CURRENT

25  STATUS OF THE FAMILY SEPARATION POLICY, WHICH IS NO

```
1    LONGER IN PLACE, AS I UNDERSTAND IT.

2              MY TENTATIVE VIEW ON THAT IS THAT - AND

3    I'LL HEAR FROM YOU - BOTH BECAUSE CLAIMS CAN BE

4    INHERENTLY TRANSITORY, AND BECAUSE THE RELIEF BEING

5    SOUGHT HERE IS DIFFERENT -- GOES BEYOND JUST FAMILY

6    SEPARATION -- FAMILY REUNIFICATION, BUT WHICH SEEKS THE

7    MENTAL HEALTH TREATMENT, THAT THE CLAIMS ARE NOT MOOT.

8              WHEN I TALK ABOUT "INHERENTLY

9    TRANSITORY," THE COURTS HAVE ACKNOWLEDGED THAT

10   INDIVIDUALS IN TEMPORARY GOVERNMENT DETENTION MAY

11   NECESSARILY BE TRANSITORY.  AND I THINK THOSE

12   RATIONALES APPLY HERE IN TERMS OF ASSESSING THE

13   MOOTNESS POINT.

14             WITH RESPECT TO WHETHER THERE IS A VIABLE

15   DUE PROCESS CLAIM, AGAIN, THIS HAS BEEN -- WE DISCUSSED

16   THIS, AND IT WAS BRIEFED IN CONNECTION WITH THE MOTION

17   FOR PRELIMINARY INJUNCTION.  I THINK THAT THE COMPLAINT

18   ADEQUATELY STATES A CLAIM.

19             I DON'T THINK IT'S -- I THINK THAT IT'S

20   NOT DISPUTED THAT THE GOVERNMENT HAS AN OBLIGATION TO

21   PROVIDE ADEQUATE MEDICAL CARE TO THOSE DETAINEES WHO

22   WERE WITHIN ITS CONTROL, AS THE KELLY CASE NOTED.

23             AND THE ONGOING DISPUTE IS, WHAT --

24   WHETHER THERE WOULD BE A -- WHETHER THERE CAN BE A

25   STATED CLAIM AS TO THOSE WHO HAVE NOT BEEN -- EXCUSE
```

1    ME -- WHO HAVE BEEN RELEASED.  AND I THINK THAT THIS

2    ANALYSIS CAN BE BROUGHT BOTH IN THE DUE PROCESS

3    CONTEXT, WHICH -- WELL, IN THE DUE PROCESS CONTEXT,

4    WHICH IS DIFFERENT THAN THE EIGHTH AMENDMENT CONTEXT IN

5    TERMS OF THE RELEVANT STANDARDS.

6              WITH RESPECT TO THOSE WHO MAY REMAIN IN

7    CUSTODY -- AND IT'S UNCERTAIN OF THE NUMBERS, BUT I

8    THINK THAT THERE'S BEEN -- I THINK THE ALLEGATIONS ARE

9    SUFFICIENT TO STATE A CLAIM AS TO THE ALLEGED FAILURE

10   TO PROVIDE SUFFICIENT MENTAL HEALTH AND TRAUMA RELATED

11   SCREENING AND CARE.

12             IT GOES BEYOND THE ALLEGATIONS INASMUCH

13   AS EACH SIDE HAS PRESENTED EVIDENCE AS TO WHETHER THERE

14   HAS OR HAS NOT BEEN ADEQUATE SCREENING AND CARE

15   PROVIDED.  SO I DON'T THINK THAT -- I THINK THAT

16   THERE'S AN ADEQUATE STATEMENT OF THE -- THE COMPLAINT

17   ADEQUATELY ALLEGES A CLAIM UNDER THE DUE PROCESS

18   CLAUSE.

19             AND WITH RESPECT TO DELIBERATE

20   INDIFFERENCE, I THINK, AGAIN, THAT'S BEEN ADEQUATELY

21   STATED.

22             I'M MINDFUL THAT THE DOE V. SHENANDOAH

23   VALLEY CASE IS OF A DIFFERENT NATURE IN THE SENSE THAT

24   THE TYPE OF CLAIM THAT'S BEING BROUGHT THERE, WHICH IS

25   DIFFERENT -- IT'S A DIFFERENT SUBSTANTIVE BASIS, THE

```
 1   MONELL CLAIM THERE.

 2                  WITH RESPECT TO THOSE PERSONS WHO ARE NO

 3   LONGER IN CUSTODY, THE ALLEGATIONS OF THE SPECIAL

 4   RELATIONSHIP THAT FORM THE BASIS FOR THE ARGUMENT ON

 5   SPECIAL RELATIONSHIP, AS WELL AS THE STATE-CREATED

 6   DANGER ISSUE, I THINK, AGAIN, ARE SUFFICIENT --

 7   ADEQUATE TO STATE A CLAIM.

 8                  I THINK THAT THE WAKEFIELD AND OTHER

 9   CASES ACKNOWLEDGE THAT THERE CAN BE AN OBLIGATION TO

10   CONTINUE TO PROVIDE CERTAIN TRANSITIONAL TREATMENT TO

11   THOSE WHO ARE IN NEED OF MEDICAL CARE WHILE IN CUSTODY.

12   AND I THINK THAT, THEREFORE, THE COMPLAINT ADEQUATELY

13   STATES A CLAIM WITH RESPECT TO THAT.

14                  THE STATE-CREATED DANGER DOCTRINE HAS

15   BEEN APPLIED IN DIFFERENT CONTEXTS, RELEASING SOMEBODY

16   INTO EXTREME COLD WEATHER, REQUIRING A PERSON TO STAY

17   IN A PARTICULAR PLACE, WHICH IS OF A DIFFERENT NATURE

18   THAN WHAT I'VE JUST REFERRED TO.  AND, AGAIN, I THINK

19   THAT -- FOR PURPOSES OF A MOTION TO DISMISS, I DON'T

20   THINK THE CLAIMS HERE FAIL TO -- OR THE ALLEGATIONS ARE

21   INSUFFICIENT.  AND I'M MINDFUL, OF COURSE, AS ALL OF

22   YOU ARE, THAT WE ALSO HAVE SOME EVIDENCE THAT'S BEEN

23   OFFERED BY EACH SIDE ON THESE POINTS.

24                  WITH RESPECT TO THE SOVEREIGN IMMUNITY

25   ISSUE, BECAUSE THE CLAIMS HERE -- I MEAN, THE SOVEREIGN
```

1    IMMUNITY ANALYSIS DOES GO TO THE NATURE OF THE RELIEF

2    THAT'S BEING SOUGHT AND THE BASIS FOR THAT RELIEF.  AND

3    THE ALLEGATIONS HERE INCLUDE ONES THAT ARE BASED ON THE

4    ADMINISTRATIVE PROCEDURE ACT, 5, U.S.C. SECTION 702,

5    WHICH WAIVES SOVEREIGN IMMUNITY FOR THOSE WHO ARE

6    SEEKING RELIEF OTHER THAN MONETARY DAMAGES.  AND I

7    THINK THAT, AGAIN, THE COMPLAINT HERE ADEQUATELY STATES

8    A CLAIM FOR SUCH RELIEF.

9             IN BOWEN, THE SUPREME COURT ADDRESSED AN

10   ORDER THAT -- REQUIRING THE ENFORCEMENT OF THE MEDICAID

11   ACT, AND CONCLUDED THAT IT WASN'T A SUIT FOR

12   COMPENSATION, BUT TO ENFORCE THE STATUTORY MANDATE OF

13   THE ALLOCATION OF FUNDS.  SO I THINK THAT, AGAIN, FOR

14   PURPOSES OF STATING A CLAIM FOR RELIEF, AND IN LIGHT OF

15   THE NATURE OF THE RELIEF SOUGHT, THAT THE SOVEREIGN

16   IMMUNITY WOULDN'T -- DOESN'T BAR THE CLAIMS, FOR THE

17   REASONS THAT I'VE JUST STATED, UNDER THE ADMINISTRATIVE

18   PROCEDURE ACT.  THIS IS NOT -- THE COMPLAINT ISN'T

19   FRAMED AS ONE FOR MONETARY RELIEF.

20             WITH RESPECT TO THE MS. L. ACTION, WE'VE

21   ALLUDED TO THAT ALREADY -- OR DISCUSSED IT BRIEFLY

22   ALREADY.  AND, AGAIN, I THINK THAT THE ISSUE THERE IS

23   SIMILAR -- IT'S VERY SIMILAR TO THE ONE THAT WE HAVE --

24   WE PREVIOUSLY DISCUSSED WITH RESPECT TO FIRST TO FILE.

25   THE RESOLUTION OF THE ACTION THERE, AS I SAID, AS TO

1     MOOTNESS DOESN'T RESOLVE THE CLAIMS HERE THAT GO TO THE

2     ISSUE OF ADEQUATE RELIEF, MENTAL HEALTH TREATMENT.  SO

3     I DON'T THINK THAT THE DETERMINATION HERE ON THAT

4     ISSUE, BASED ON THE ALLEGATIONS OF THE COMPLAINT, WOULD

5     BE INCONSISTENT WITH THE OUTCOME IN MS. L.

6                  NOW, THE NEWLY RAISED -- THE ARGUMENT

7     THAT I THINK HASN'T PREVIOUSLY BEEN DISCUSSED IS VENUE.

8     AND WITH RESPECT TO VENUE UNDER 1391(E), THERE ARE

9     THREE POSSIBLE BASES FOR VENUE.  IN ANY JUDICIAL

10    DISTRICT WHERE THE DEFENDANT IN THE ACTION RESIDES,

11    THAT'S A.  B, A SUBSTANTIAL PART OF THE EVENTS OR

12    OMISSIONS GIVING RISE TO THE CLAIM OCCURRED; OR, C, THE

13    PLAINTIFF RESIDES IF NO REAL PROPERTY IS INVOLVED IN

14    THE ACTION.

15                  WITH RESPECT TO SUB-CATEGORY C, I AGREE

16    WITH THE GOVERNMENT THAT, AS NON-CITIZENS AND

17    NON-LAWFUL PERMANENT RESIDENTS, THE PLAINTIFFS CANNOT

18    RELY ON SUBSECTION C.

19                  WITH RESPECT TO SUBSECTION A, WHERE THE

20    DEFENDANT RESIDES, THERE ARE -- IT IS ALLEGED THAT TWO

21    OF THE INDIVIDUAL DEFENDANTS, MARIN AND VON NORDHEIM,

22    DO ALLEGEDLY RESIDE IN THIS DISTRICT.

23                  HOWEVER, I THINK, IN GENERAL, ALL FEDERAL

24    DEFENDANTS ARE DEEMED TO RESIDE IN WASHINGTON DC, AND

25    THAT VENUE DOESN'T NECESSARILY RESIDE -- LIE IN EVERY

1    DISTRICT WHERE THERE IS A REGIONAL OFFICE OR AN

2    EMPLOYEE.

3              THE ISSUE THEN TURNS -- THE REMAINING

4    PRONG IS B, A SUBSTANTIAL-PART-OF-THE-EVENTS PRONG.

5    AND, HERE, MY TENTATIVE VIEW IS THAT, THE COMPLAINT

6    DOES SATISFY THAT, INSOFAR AS IT ALLEGES THAT PLAINTIFF

7    J.P. WAS DETAINED IN THE MUSICK FACILITY IN IRVINE,

8    CALIFORNIA, WHICH IS WITHIN THIS DISTRICT, AND THAT THE

9    CLAIMS ARISE FROM HER SEPARATION FROM HER DAUGHTER AND

10   THE MENTAL HEALTH TREATMENT, OR LACK THEREOF, THAT WAS

11   ALLEGEDLY PROVIDED.

12             THE OTHER TWO NAMED PLAINTIFFS, THERE ARE

13   NOT ALLEGATIONS OR SHOWING THAT THEY WERE DETAINED IN

14   THIS DISTRICT; BUT IT'S NOT REQUIRED THAT ALL EVENTS

15   OCCUR IN THE DISTRICT.

16             I THINK THERE'S A SECOND ISSUE.  THERE IS

17   AUTHORITY THAT THE REQUIREMENT OF A CHALLENGE TO VENUE

18   CAN BE WAIVED.  AND THE VENUE WAS, I THINK, FIRST

19   ADDRESSED IN THE MOTION TO DISMISS, NOT IN THE BRIEFING

20   ON THE OTHER MOTIONS.  SO THE QUESTION WOULD BECOME

21   WHETHER THERE'S WAIVER.

22             SO THOSE ARE MY TENTATIVE VIEWS AT THIS

23   TIME.

24             SO, MR. HEYSE, WILL YOU BE ADDRESSING ALL

25   OF THESE ISSUES OR SOME OF THEM?

```
 1              MR. HEYSE:  ALL OF THEM, YOUR HONOR.

 2              THE COURT:  LET ME HEAR FROM YOU, PLEASE.

 3              MR. HEYSE:  OKAY.  I CAN WORK BACKWARDS, IF

 4    YOU WOULD LIKE.

 5                   REGARDING VENUE, ESPECIALLY AS REGARDS TO

 6    WAIVER, THE UNUSUAL CIRCUMSTANCES OF --

 7              THE COURT:  SLOW DOWN, PLEASE.

 8              MR. HEYSE:  GIVEN THE WAY THE BRIEFING

 9    PROCEEDED IN THIS MATTER, IT STARTED OUT RESPONDING TO

10    CLASS CERTIFICATION AND THE PRELIMINARY INJUNCTION

11    MOTION BEFORE WE HAD THE CHANCE TO DRAFT A MOTION TO

12    DISMISS.  AND I BELIEVE, AT THE TIME, WE HAD, MAYBE, A

13    WEEK TO DRAFT THAT RESPONSE.  I BELIEVE WE --

14              THE COURT:  MR. HEYSE, YOU NEED TO SPEAK

15    LOUDER.

16              MR. HEYSE:  WE WOULD DISPUTE THAT WE WAIVED

17    ANY VENUE CLAIMS GIVEN THE CIRCUMSTANCES OF BRIEFING IN

18    THIS MATTER.  THE WAY THINGS WERE DONE IS A BIT

19    UNUSUAL.  SO, FOR THAT REASON, WE BELIEVE WE'VE

20    ADEQUATELY PRESERVED OUR VENUE ARGUMENTS.

21                   WITH RESPECT TO A SUBSTANTIAL PART OF THE

22    EVENTS OCCURRING AT MUSICK, AT BEST, IT WAS AN

23    EXTREMELY LIMITED PORTION OF THE EVENTS IN THIS CASE.

24    IT'S AN ALLEGATION THAT -- A CONCLUSORY ALLEGATION IN

25    THE COMPLAINT THAT SHE DID NOT RECEIVE CARE WHILE AT
```

1    MUSICK.  IS THAT ENOUGH TO PRESERVE VENUE FOR

2    EVERYTHING, FOR A NATIONWIDE CLASS?  IS THAT

3    SUBSTANTIAL ENOUGH?  I MEAN, THAT'S A QUESTION FOR YOUR

4    HONOR'S DISCRETION, I ASSUME.

5         THE COURT:  LET ME ASK YOU THIS, IF PERSONS

6    HAVE BEEN DETAINED IN VARIOUS DISTRICTS ACROSS THE

7    COUNTRY, WOULD VENUE BE MORE APPROPRIATE IN ONE THAN

8    ANOTHER?

9         MR. HEYSE:  IN THIS SITUATION, VENUE WOULD BE

10   MOST LIKELY APPROPRIATE IN WASHINGTON DC.  IT HAS THE

11   MOST COMMON NUCLEUS OF INDIVIDUALS INVOLVED IN THIS

12   MATTER, INVOLVED IN THE DECISION-MAKING PROCESS, PEOPLE

13   THAT ADMINISTER DHS FUNCTIONS ARE PRIMARILY HOUSED

14   HERE.  I BELIEVE YOUR HONOR MENTIONED THAT AS WELL.

15        THE COURT:  NO, I AGREE UNDER --

16        MR. HEYSE:  THEY'RE SPREAD ACROSS THE COUNTRY,

17   ESPECIALLY ACROSS THE SOUTHWEST UNITED STATES IN THIS

18   MATTER.  BUT, AT THIS TIME, THE INDIVIDUALS ARE -- NONE

19   OF THEM RESIDE IN YOUR DISTRICT.  THEY'RE EVERYWHERE.

20   I BELIEVE NONE OF THE PLAINTIFFS ARE EVEN IN THE STATE

21   OF CALIFORNIA -- OR NONE OF THE NAMED PLAINTIFFS ARE IN

22   CALIFORNIA.

23             SO WHICH ONE IS BEST?  IT WOULD MAKE

24   SENSE, BASICALLY, IN A FORUM NON CONVENIENS QUESTION

25   FOR THE DEFENDANT --

```
1              THE COURT:  WE CAN'T HEAR YOU.

2              MR. HEYSE:  I'M SORRY, CAN YOU HEAR ME NOW?

3              THE COURT:  YES.

4                   YOU SAID THAT NONE OF THE PLAINTIFFS

5    RESIDES IN THIS DISTRICT.

6                   DOES THAT -- IS THAT BASED ON UP-TO-DATE

7    INFORMATION AS OPPOSED TO, FOR EXAMPLE, WHERE -- JUST A

8    MINUTE -- WHERE PLAINTIFF J.P. IS?

9              MR. HEYSE:  I BELIEVE PLAINTIFF J.P. IS IN

10   FLORIDA, AT LAST NOTICE TO US.

11                  I THINK PLAINTIFF R.M. IS IN MARYLAND, IF

12   I REMEMBER CORRECTLY.

13                  THESE ARE COMING FROM, I BELIEVE, CLASS

14   CERTIFICATION FILINGS.  I'M DRAWING THIS FROM MEMORY.

15   NONE OF THEM ARE IN CALIFORNIA, UNLESS THEY HAVE MOVED.

16   WE HAVE NOT RECEIVED ANY INDICATION THEY HAVE

17   RELOCATED.

18              THE COURT:  ALL RIGHT.  LET ME JUST STOP THERE

19   FOR A MOMENT.

20                  MR. HEYSE, IS THERE MORE YOU WANTED TO

21   SAY ABOUT VENUE?

22              MR. HEYSE:  I THINK THAT'S ALL FOR VENUE.

23              THE COURT:  ALL RIGHT.  JUST A MOMENT.

24              MR. CRAIG:  AT THE TIME OF FILING, WHICH IS

25   WHEN VENUE IS DETERMINED, MS. J.P. WAS STILL DETAINED
```

```
 1    AT THE MUSICK FACILITY IN THIS DISTRICT.
 2                  THAT'S NOT THE SOLE SUBSTANTIAL
 3    CONNECTION TO THIS DISTRICT THAT IS IN THIS CASE.  THIS
 4    DISTRICT IS ALSO WHERE SHE WAS RELEASED FROM DETENTION
 5    WITHOUT THE MEDICAL TREATMENT THAT WE ARE SEEKING UNDER
 6    THE WAKEFIELD DOCTRINE.
 7                  THE GOVERNMENT, AS I UNDERSTAND WHAT
 8    MR. HEYSE HAS SAID, CONSIDERED BRINGING A VENUE
 9    OBJECTION IN THEIR BRIEFING ON A PRELIMINARY INJUNCTION
10    MOTION OR THE CLASS CERTIFICATION MOTION, BUT DID NOT.
11                  AND, REALLY, ULTIMATELY, THIS CASE IS
12    ABOUT THE FAILURE OF THE GOVERNMENT TO PROVIDE THE
13    REQUIRED MENTAL HEALTHCARE SCREENING AND TREATMENT THAT
14    IS REQUIRED BECAUSE OF THE TRAUMA THAT IT INFLICTED.
15    AND THAT HAPPENED HERE.  THAT HAPPENED HERE FOR
16    MS. J.P. WHEN SHE WAS SUFFERING FROM TRAUMA IN
17    DETENTION HERE.  THAT WAS WHERE THEY DID NOT PROVIDE
18    THE TREATMENT.
19                  THE GOVERNMENT HAS ATTACKED OUR COMPLAINT
20    AS CONCLUSORY, BUT THAT'S -- IT'S A FACTUAL ALLEGATION
21    THAT SHE DID NOT RECEIVE MENTAL HEALTHCARE TREATMENT
22    AND SCREENING THAT WAS UP TO THE EVIDENCE-BASED
23    STANDARDS THAT OUR COMPLAINT ALLEGES WHEN SHE WAS HERE.
24    THAT'S NOT A LEGAL CONCLUSION.  IT'S A FACT.
25                  I WILL ALSO NOTE THAT NONE OF THE OTHER
```

```
1    CASES, MS. L. -- THERE WAS A CASE FILED IN THE DISTRICT
2    OF MASSACHUSETTS.  NONE OF THOSE CASES MOVED VENUE TO
3    DC.  THE GOVERNMENT HAS NOT SOUGHT IT AND --
4            THE COURT:  DOES THAT MATTER?
5            MR. CRAIG:  WELL, IT JUST PROVIDES CONTEXT.
6    VENUE IS A QUESTION ABOUT, CAN WE BRING IT HERE OR CAN
7    WE NOT BRING IT HERE?  AND THEY HAVE NOT ALLEGED AN
8    ARGUMENT OR NO OTHER COURT, TO OUR KNOWLEDGE, HAS
9    ACCEPTED AN ARGUMENT THAT A CASE BROUGHT IN CALIFORNIA
10   OR IN MASSACHUSETTS CANNOT BE --
11           THE COURT:  THE MASSACHUSETTS ACTION IS A
12   PUTATIVE CLASS OF MINORS; CORRECT?
13           MR. CRAIG:  I BELIEVE THAT'S CORRECT, YOUR
14   HONOR.  YES.
15           THE COURT:  DO WE KNOW WHETHER THE MINORS,
16   SOME OF THEM LIVE IN -- OR ARE PRESENTLY IN
17   MASSACHUSETTS OR WERE AT THE TIME THAT WAS FILED?
18           MR. CRAIG:  I AM NOT SURE OF THAT, YOUR HONOR.
19   ALTHOUGH I WOULD EXPECT, GIVEN THE DEFINITION OF THE
20   CLASS, SOME OF THE CLASS MEMBERS WOULD HAVE BEEN THERE.
21              I WILL ALSO SAY THAT, RESPECTFULLY --
22   YOUR HONOR, WITH RESPECT TO THE SECOND PRONG OF THE
23   VENUE ANALYSIS ABOUT THE RESIDENCE OF THE FEDERAL
24   GOVERNMENT AND THE FEDERAL EMPLOYEES, THE DEFENDANTS IN
25   THIS CASE, THE LINE OF CASES WHICH I BELIEVE YOU'RE
```

```
 1    THINKING OF THAT, SAY, A FEDERAL AGENCY IS NOT RESIDENT
 2    EVERYWHERE THAT IT HAS A BRANCH OFFICE OR SOMETHING
 3    LIKE THAT, THAT'S CORRECT.
 4              BUT THAT'S NOT THE BASIS THAT WE'RE
 5    SEEKING VENUE HERE AGAINST DEFENDANTS NORDHEIM AND
 6    MARIN.  THEIR CONDUCT HAPPENED HERE.  THEY ARE -- AS
 7    FEDERAL EMPLOYEES, THEIR OFFICIAL RESIDENCE IS THE
 8    PLACE WHERE THEY DO THEIR OFFICIAL WORK.  AND THAT IS
 9    HERE IN THIS DISTRICT.  AND SO THAT'S ANOTHER BASIS TO
10    FIND THAT VENUE IS APPROPRIATE HERE.
11              THE COURT:  ALL RIGHT.  THANK YOU, MR. CRAIG.
12              MR. HEYSE, ANYTHING IN RESPONSE, BRIEFLY?
13              MR. HEYSE:  YES, JUST A COUPLE OF THINGS.
14              REGARDING THE TWO NAMED DEFENDANTS THAT
15    DO WORK IN THE CENTRAL DISTRICT, THIS CASE IS REALLY
16    ABOUT GENERAL POLICY MAKING.  SO WHETHER OR NOT THE
17    WARDEN OF MUSICK OR ANYONE ELSE IN THAT DISTRICT WAS
18    INVOLVED IN THE CARE HERE, IT WAS NOT THEIR
19    DECISION-MAKING NECESSARILY THAT WAS DRIVING WHAT
20    PLAINTIFFS ARE COMPLAINING ABOUT HERE.  IT'S THE
21    GENERAL POLICY THAT THE PLAINTIFFS ARE COMPLAINING
22    ABOUT, THE SEPARATION AND THE ALLEGED FAILURE TO CARE
23    FOR IT.
24              ALSO, THE WAIVER DEFENSE, BY RULE, IF NOT
25    RAISED -- EXCUSE ME, A WAIVER ARGUMENT IS ONLY WAIVED
```

```
1    IF IT'S NOT RAISED IN A RULE 12 MOTION OR RESPONSIVE

2    PLEADING, WHICH WOULD BE THE ANSWER IN THIS CASE.  AND

3    THAT -- ACTUALLY, WE HAVEN'T YET FILED OUR ANSWER IN

4    THIS CASE.

5              LASTLY, THE WAIVER, IF THERE IS ANY

6    ALLEGED WAIVER HERE, IT CAN BE WAIVED.  THE PLAINTIFFS

7    HAVE NEVER PREVIOUSLY CONTENDED THAT WE WAIVED A VENUE

8    ARGUMENT.

9              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

10             MR. HEYSE, LET'S THEN TURN TO THE OTHER

11   ISSUES.  I'LL HEAR FROM YOU WITH RESPECT TO THE ISSUES

12   THAT I MENTIONED EARLIER, THE MOOTNESS, DUE PROCESS,

13   SOVEREIGN IMMUNITY AND THE OVERLAP WITH MS. L.

14             MR. HEYSE:  YES.  I'LL START WITH THE

15   WAKEFIELD-BASED CLAIMS.  THAT REALLY IS THE LINCHPIN OF

16   THIS CASE, WHETHER OR NOT THIS COURT CAN BE EXPECTED TO

17   EXTEND WAKEFIELD AS FAR AS THE PLAINTIFFS ARE ASKING.

18             AGAIN, YOUR HONOR HAS ACKNOWLEDGED THAT

19   THE DELIBERATE INDIFFERENCE STANDARD SHOULD BE THE

20   STANDARD THAT APPLIES HERE.  WHETHER OR NOT THE FACTS

21   HAVE BEEN ADEQUATELY PLED, THAT'S A DIFFERENT QUESTION.

22             BUT LOOKING BACK TO WAKEFIELD ITSELF,

23   WAKEFIELD INVOLVED A VERY NARROW SET OF CIRCUMSTANCES

24   IN WHICH A GOVERNMENT AGENT, A PRISON OFFICIAL, WAS

25   AWARE OF A CONDITION OF A DETAINEE THAT WAS BEING
```

1    RELEASED.  HE HAD A MEDICAL CONDITION AND NEEDED A

2    PRESCRIPTION FILLED.  AND DESPITE KNOWING THIS, THE

3    DETENTION OFFICER RELEASED HIM WITHOUT PROVIDING HIM

4    WITH A PRESCRIPTION BECAUSE HE WAS TOO BUSY.  THAT WAS

5    AN ACTUAL QUOTE, "THAT HE WAS TOO BUSY TO PROVIDE THIS

6    PRESCRIPTION" FOR TWO-WEEKS WORTH OF MEDICATION.

7            WHAT PLAINTIFFS ARE ASKING FOR HERE GOES

8    FAR BEYOND TWO WEEKS OF PRESCRIPTION MEDICATION.  BY

9    THEIR OWN DEFINITION, IT HAS NO END.  IT ONLY ENDS

10   WHENEVER THEIR ALLEGED AILMENT IS CURED.

11           WAKEFIELD SAYS NOTHING OF THE SORT, IF

12   ANYTHING.  THE GOVERNMENT DOESN'T CONCEDE THAT

13   WAKEFIELD APPLIES HERE AT ALL, GIVEN IT HAS NOT BEEN

14   APPLIED TO IMMIGRATION DETENTION, OTHER THAN THE CASE

15   WE PREVIOUSLY DISCUSSED, WHICH WAS THE CHARLES MATTER.

16   I BELIEVE WE DISCUSSED THAT AT THE CLASS AND T.I.

17   HEARING.  THAT WAS OUT OF NEW YORK.

18           BUT, ULTIMATELY, WAKEFIELD IS A MUCH MORE

19   NARROW CIRCUMSTANCE WHERE THE GOVERNMENT HAS, IF ANY

20   DUTY, A VERY LIMITED DUTY TO PROVIDE CARE FOR SOMEONE

21   THAT HAS BEEN RELEASED FROM CUSTODY.

22           AND THE REASON FOR THAT IS, THAT

23   INDIVIDUALS IN CUSTODY LACKED THE ABILITY TO PROVIDE

24   FOR THEIR OWN CARE.  ONCE THEY'RE RELEASED, THEY'RE

25   ABLE TO GO OUT AND FIND THEIR OWN DOCTORS; BUT THERE

```
 1    MIGHT BE A BRIEF TRANSITION PERIOD, WHICH PLAINTIFFS
 2    DON'T CONCEDE.  PLAINTIFFS ACTUALLY QUOTE THAT LANGUAGE
 3    IN THEIR OPPOSITION TO THE MOTION TO DISMISS.  I
 4    BELIEVE THAT'S PAGE 9 OF THEIR OPPOSITION.  THEY
 5    ACKNOWLEDGE THAT THIS SHOULD BE A BRIEF TRANSITIONAL
 6    PERIOD, IF ANYTHING.
 7                    AND THE PLAINTIFFS HERE WERE ALL RELEASED
 8    AND REUNITED IN JULY.  WE'RE TALKING ABOUT AT LEAST SIX
 9    MONTHS AGO AT THIS POINT -- OR ALMOST SIX MONTHS AT
10    THIS POINT.
11                    WAKEFIELD WAS DESCRIBING TWO WEEKS OF
12    POST-RELEASE PRESCRIPTION MEDICATION, NOT ONGOING
13    MENTAL HEALTH SERVICES, VISITING WITH A MEDICAL
14    PROFESSIONAL ON A ROUTINE BASIS.
15                    BUT BACKING THAT EVEN FARTHER IS WHETHER
16    OR NOT THE GOVERNMENT WAS -- OR THE DETAINING OFFICERS
17    WERE AWARE OF THE KIND OF TRAUMA THAT THE PLAINTIFFS
18    ALLEGE THEY WERE SUFFERING.
19                    WAS THERE ANY KIND OF MANIFESTATION OF
20    THAT?
21                    WAS THERE ANY INDICATION TO THE OFFICERS,
22    BESIDES THE SUGGESTED POSSIBILITY OF IT, THAT THESE
23    INDIVIDUALS WERE SUFFERING FROM TRAUMA?
24                    AND THAT (INAUDIBLE) HAS OUTWARD
25    MANIFESTATIONS, AS PLAINTIFFS HAVE STATED IN THEIR
```

1    COMPLAINT.  IN THEIR VARIOUS RESPONSIVE PLEADINGS, IT

2    HAS INDICATED THAT THESE KINDS OF THINGS DO HAVE

3    OUTWARD MANIFESTATION, INCLUDING --

4              THE COURT:  WE DIDN'T HEAR YOU.  RESTATE YOUR

5    LAST POINT, PLEASE.

6              MR. HEYSE:  SURE.

7                   THE PLAINTIFFS HAVE DESCRIBED CERTAIN

8    MANIFESTATIONS OF THE ALLEGED TRAUMA THAT COULD BE

9    EXPECTED.

10                  THEIR OWN ALLEGED EXPERTS HAVE PUT FORTH

11   STATEMENTS DESCRIBING HOW INDIVIDUALS SUFFERING FROM

12   POST-TRAUMATIC STRESS DISORDER OR EVEN ACTIVE STRESS

13   DISORDER, TRAUMATIC STRESS DISORDER WOULD MANIFEST

14   THOSE SITUATIONS SO THAT THE OFFICIALS WOULD KNOW.

15                  THAT WAS THE POINT IN WAKEFIELD, IS THAT

16   THE PRISON OFFICIALS WERE AWARE THAT WAKEFIELD HAD A

17   MEDICAL CONDITION, AND THEY WERE DELIBERATELY

18   INDIFFERENT TO IT.  THAT'S PART OF THE ANALYSIS.  THERE

19   HAS TO BE A SUBJECTIVE AWARENESS OF THE AILMENT IN

20   ORDER FOR A GOVERNMENT OFFICIAL TO ACT DELIBERATELY

21   INDIFFERENTLY BY IGNORING IT, FAILING TO DO ANYTHING,

22   AND WITH A SUBJECTIVE KNOWLEDGE THAT DOING SO WOULD PUT

23   THAT INDIVIDUAL AT RISK.

24                  AND WHAT THE RECORD DOESN'T SHOW IS THAT

25   THESE INDIVIDUALS EVER ASKED FOR ADDITIONAL CARE OR

```
1    THAT, WHEN THEY WERE GIVEN CARE -- THEY CLAIMED THEY
2    WERE GIVEN NONE.  AND, YET, R.M. PROVIDED A DECLARATION
3    WITH THE OPPOSITION TO THE MOTION TO DISMISS THAT
4    INDICATES THAT ADDITIONAL CARE WOULDN'T HELP.  BUT SHE
5    ALSO INDICATES THAT SHE WAS RECEIVING SCREENING.  SHE
6    WAS VISITING WITH MEDICAL PROFESSIONALS, MENTAL HEALTH
7    PROFESSIONALS EVEN.
8                    THESE SYSTEMS ARE IN PLACE.  THESE
9    OPPORTUNITIES TO GET CARE ARE PRESENT.
10                   ON TOP OF THAT, THE PRISON GUARDS -- I
11   SHOULDN'T SAY "PRISON GUARDS."  THE I.C.E. DETENTION
12   GUARDS ACTED IN A WAY TO CHECK ON THESE INDIVIDUALS.
13   THEY ARE CLEARLY OBLIGATED TO PROVIDE, QUOTE, "ADEQUATE
14   CARE."  IT'S NOT -- AND THAT'S WHAT'S DISCUSSED IN
15   SHENANDOAH, IS THAT THE CARE THAT'S PROVIDED HAS TO BE
16   CONSTITUTIONALLY ADEQUATE.  IT DOESN'T NECESSARILY MEAN
17   THE ACCESS TO THE, QUOTE, "BEST AND MOST EXPENSIVE FORM
18   OF TREATMENT," BUT IT'S STILL CONSTITUTIONALLY
19   ADEQUATE.  AND PART OF THAT INVOLVES KEEPING AN EYE ON
20   THESE INDIVIDUALS.
21                    AND SO IF THESE FOLKS DIDN'T EVER ASK FOR
22   ANY ADDITIONAL CARE OR OTHERWISE SHOW ANY SIGNS THAT
23   THEY NEEDED IT, HOW IS THE GOVERNMENT THEN ACTING
24   DELIBERATELY INDIFFERENTLY TO THEIR NEED FOR CARE,
25   BECAUSE THAT REQUIRES BOTH A SUBJECTIVE AND OBJECTIVE
```

```
1    COMPONENT?
2            THE COURT:  ALL RIGHT.  IS THERE --
3            MR. HEYSE:  GO AHEAD.
4            THE COURT:  WOULD YOU LIKE TO ADDRESS THE
5    SOVEREIGN IMMUNITY ISSUE?
6            MR. HEYSE:  CERTAINLY, YOUR HONOR.
7                REGARDING SOVEREIGN IMMUNITY, THE
8    DIFFERENCE HERE GETS BACK TO THE TYPE OF RELIEF SOUGHT.
9                THE APA WAIVES SOVEREIGN IMMUNITY FOR
10   CLAIMS THAT ARE NOT SEEKING MONETARY RELIEF.  AND THE
11   DISTINCTION COMES DOWN TO WHETHER OR NOT THE REQUESTED
12   RELIEF IS SPECIFIC OR COMPENSATORY.  AND YOUR HONOR
13   DISCUSSED BOWEN.  THAT'S EXACTLY WHAT'S DISCUSSED IN
14   BOWEN.
15                IN ALL OF THE CASES SUBSEQUENT TO THAT,
16   ALL OF THE CASES THAT THE PLAINTIFFS HAVE CITED,
17   INCLUDING IN BOWEN, THE ISSUE IS WHETHER OR NOT THE
18   GOVERNMENT HAD A PREEXISTING DUTY WITH WHICH IT WASN'T
19   COMPLYING.  IN BOWEN, IT WAS MEDICARE.  IN THE MARCEAU
20   CASE, THE GOVERNMENT HAD A CONTRACTUAL DUTY THAT IT --
21   IT WASN'T BEING FULFILLED.
22                SO THIS GETS BACK TO WAKEFIELD.  THEY'RE
23   DIRECTLY MIXED TOGETHER.  WHETHER OR NOT THE GOVERNMENT
24   HAS A DUTY OF CARE TO PROVIDE CARE FOR THESE
25   INDIVIDUALS AFTER THEY HAVE BEEN RELEASED, AFTER THEY
```

1    ARE ABLE TO GO FIND THEIR OWN DOCTORS, IF THAT DUTY

2    EXISTS, THEN, YES, THAT WOULD MAKE SENSE.  THAT WOULD

3    PERHAPS CONVERT THIS INTO A SPECIFIC CLAIM.  BUT THAT

4    DUTY DOES NOT EXIST.  AND THE GOVERNMENT CLEARLY ARGUES

5    THAT THAT DUTY DOES NOT EXIST, ESPECIALLY AT THIS POINT

6    SIX MONTHS POST RELEASE.  ABSENT THAT DUTY, THIS IS

7    SEEKING COMPENSATORY RELIEF.

8              NOW, IT MIGHT BE PHRASED AS SEEKING

9    INJUNCTIVE RELIEF.  THAT'S PRECISELY WHAT THE COURTS

10   HAVE CONSISTENTLY CAUTIONED AGAINST, INCLUDING THE

11   SUPREME COURT IN GREAT-WEST.  THE SOVEREIGN IMMUNITY

12   WAIVER REQUIRES MORE THAN CREATIVE PLEADING.

13             IT'S 534 U.S. AT 211, FOOTNOTE 1, THE

14   COURT STATED THAT, "LAWYERLY INVENTIVENESS ENABLES ANY

15   CLAIM TO BE PHRASED AS AN INJUNCTION."

16             AND YOUR HONOR, AT THE PRIOR HEARING,

17   ASKED THE PLAINTIFFS WHETHER OR NOT WHAT THEY WERE

18   ASKING FOR WAS AKIN TO A VOUCHER PROGRAM?  AND THEY

19   COULDN'T EXPLAIN THE DIFFERENCE.  THEY COULDN'T EXPLAIN

20   EXACTLY WHAT IT WAS THEY WANT THIS COURT TO ORDER, HOW

21   THEY WANT IT TO LOOK.

22             AND, IN REALITY, WHAT THEY'RE ASKING FOR

23   IS EXACTLY WHAT THE COURT IN SHENANDOAH IS DESCRIBING,

24   THE BEST AND MOST EXPENSIVE FORM OF TREATMENT OF THEIR

25   CHOOSING.  THAT'S SIMPLY NOT WHAT THE GOVERNMENT IS

```
 1    OBLIGATED TO PROVIDE.
 2               YES, THE GOVERNMENT IS OBLIGATED TO
 3    PROVIDE ADEQUATE CARE.  BUT IS IT OBLIGATED TO PROVIDE
 4    THE BEST POSSIBLE CARE?  AND THAT'S SIMPLY NOT THE
 5    CASE.  THAT'S JUST BEEN A CONSISTENT DISTINCTION ACROSS
 6    THE CASE LAW THAT WE'VE BEEN DISCUSSING HERE.  SO
 7    THAT'S WHY THE TWO ARE TIED TOGETHER.
 8               SOVEREIGN IMMUNITY, WHETHER THE
 9    GOVERNMENT IS OBLIGATED HERE, HAS A CONSTITUTIONAL DUTY
10    TO PROVIDE THIS KIND OF MEDICAL CARE DEPENDS ON WHETHER
11    THE COURT IS WILLING TO EXTEND WAKEFIELD FAR BEYOND THE
12    ORIGINAL DESIGN.
13               THE GOVERNMENT ARGUES, FIRST, THAT THAT
14    SHOULD NOT BE EXTENDED IN THAT WAY.
15               AND THEN, SECOND, THE GOVERNMENT ARGUES
16    THAT SOVEREIGN IMMUNITY HAS NOT BEEN WAIVED HERE BASED
17    ON THE TYPE OF RELIEF THE PLAINTIFFS ARE SEEKING.
18          THE COURT:  I UNDERSTAND.
19          MR. HEYSE:  THEY HAVE DESCRIBED IT AS
20    "INJUNCTIVE RELIEF."  BUT, IN REALITY, IT IS
21    "COMPENSATORY DAMAGES."
22          THE COURT:  OKAY.  IS THERE ANYTHING YOU WOULD
23    LIKE TO ADD ON THE FIRST TO FILE, THE MS. L. ISSUE?
24          MR. HEYSE:  YES.
25               REGARDING THE ADEQUACY OF THE CLASS,
```

1    WHAT -- SOMETHING THAT STANDS OUT FROM WHAT YOUR HONOR

2    HAS BEEN DESCRIBING, YOUR HONOR FREQUENTLY DISCUSSED

3    THE DISTINCTION BETWEEN THOSE THAT -- AND WE -- AGAIN,

4    WE DON'T KNOW THE NUMBER.  BUT THERE MAY LIKELY BE SOME

5    STILL DETAINED HERE THAT WERE SEPARATED FROM -- OR ARE

6    SEPARATED FROM THEIR CHILDREN.

7                    THERE'S A CRITICAL DISTINCTION BETWEEN

8    THOSE THAT ARE DETAINED AND THOSE THAT HAVE BEEN

9    RELEASED.

10                   ALL OF THE NAMED PLAINTIFFS HERE HAVE ALL

11   BEEN RELEASED.  THEY HAVE ALL BEEN REUNITED.  SO WHY OR

12   HOW COULD THEY BE ADEQUATE REPRESENTATIVES FOR THOSE

13   THAT ARE STILL DETAINED?

14                   THE GOVERNMENT DOESN'T DISPUTE THAT THOSE

15   THAT ARE DETAINED ARE OWED AN ADEQUATE DUTY OF CARE.

16                   BUT AS TO THOSE THAT HAVE BEEN RELEASED

17   AND REUNITED, WHETHER OR NOT THEY'RE OWED ANY DUTY, WE

18   JUST FINISHED DISCUSSING THAT.  BUT WHY WOULD THE NAMED

19   PLAINTIFFS HERE, AND WHY -- GIVEN THAT THE PLAINTIFFS

20   AND THEIR COUNSEL HAVE HAD AT LEAST TWO MONTHS' WORTH

21   OF NOTICE THAT THERE ARE THESE INDIVIDUALS, WHY HAVE

22   THEY NOT ADDED ANYONE TO THEIR CASE THAT DESCRIBES

23   WHAT'S GOING ON WITH A DETAINED PERSON THAT IS

24   SEPARATED FROM THEIR CHILD?

25                   IN TERMS OF THE MS. L. LITIGATION AS IT

1    APPLIES TO THIS CASE, AGAIN, THE PLAINTIFFS HAVE

2    CONSISTENTLY STATED THAT THE CLASSES ARE THE SAME, THE

3    PEOPLE INVOLVED ARE THE SAME.  THIS IS CLASSIC CLAIM

4    SPLITTING.

5                   THIS IS A CLAIM THAT SHOULD HAVE AND

6    ACTUALLY WAS RAISED IN MS. L.  IT WAS A -- WE HAVE

7    POINTED THIS OUT.  I BELIEVE WE SIGNALED THIS TO THE

8    COURT CLOSE IN TIME TO THE CLASS ACTION HEARING.  I

9    CAN'T REMEMBER IF IT WAS BEFORE OR AFTER, BUT IT WAS

10   VERY CLOSE IN TIME.  THAT COUNSEL IN MS. L. SUGGESTED

11   THAT THE GOVERNMENT SHOULD BE REQUIRED TO CREATE A FUND

12   FOR MENTAL HEALTHCARE.  SO THAT'S AN ISSUE THEY COULD

13   HAVE PURSUED.  THEY DID PURSUE.  WHETHER OR NOT THEY

14   HAVE CONTINUED TO DO SO IS A DIFFERENT QUESTION.  IT'S

15   A LITIGATION POINT FOR THEM.  BUT THAT IS CLASSIC CLAIM

16   SPLITTING.  WHY SHOULD THIS CASE BE ALLOWED TO PROCEED

17   WHEN IT'S IDENTICAL OTHERWISE?

18                   THE DISTINCTION THAT THE PLAINTIFFS ARE

19   TRYING TO MAKE HERE IS THAT THEY'RE SEEKING DIFFERENT

20   RELIEF.  THAT DOES NOT MAKE IT AVOID CLAIM SPLITTING

21   BECAUSE CLAIM SPLITTING INVOLVES ISSUES OF RES JUDICATA

22   WHERE THEY COULD HAVE BROUGHT THIS ISSUE.  AND, IN

23   FACT, HAVE IN MS. L.  IT HAS BEEN RAISED IN MS. L.

24            THE COURT:  JUST A MINUTE.

25                   IF THERE'S A SETTLEMENT AGREEMENT IN

```
1    MS. L., DO YOU KNOW WHETHER IT CONTAINS ANY RELEASES?
2              MR. HEYSE:  I AM NOT AWARE OF THE ENTIRE SCOPE
3    OF THE MS. L. SETTLEMENT.  I BELIEVE IT'S NOT A TOTAL
4    SETTLEMENT.  SO IT CALLS INTO QUESTION WHAT IS EXACTLY
5    GOING ON.  I BELIEVE THEY'RE ACTUALLY FILING AN UPDATE
6    IN MS. L. SOON.
7              WE'RE TRYING TO WORK WITH THEM HERE.
8    AGAIN, GIVEN THE SHUTDOWN, THINGS ARE VERY COMPLICATED
9    IN TERMS OF WHO WE CAN EVEN REACH.  SO THAT'S ALL
10   PRETTY FLUID AT THIS POINT.
11             I CAN CERTAINLY TRY TO CLARIFY WITH THEM
12   EXACTLY WHAT THAT SETTLEMENT MEANS.  BUT, AGAIN, EVEN
13   IF THERE WAS A (INAUDIBLE), THIS WAS A CLAIM THAT COULD
14   ARE HAVE BEEN BROUGHT IN MS. L. AND WASN'T.  SO THAT
15   WOULD BE CLASSIC RES JUDICATA.
16             IT WOULD BE A CASE WHERE -- OR EVEN
17   COLLATERAL ESTOPPEL.  IT'S AN ISSUE THAT HAS BEEN
18   REACHED ON THE MERITS OR A WHOLE CASE HAS BEEN
19   ADJUDICATED ON ITS MERITS, IF IT IS INDEED A COMPLETE
20   SETTLEMENT.  THAT THEY DIDN'T BRING IT THERE DOES NOT
21   SOMEHOW ENABLE THEM TO BRING IT HERE WHEN IT'S THE
22   EXACT SAME PEOPLE INVOLVED AND THE EXACT SAME NUCLEUS
23   OF FACTS.
24             THE COURT:  I UNDERSTAND THAT PART.
25             BUT DO YOU THINK THAT DETERMINATION CAN
```

```
 1    BE MADE WITHOUT EVALUATING THE SETTLEMENT AGREEMENT

 2    ITSELF?

 3              MR. HEYSE:  I'M NOT SURE THAT'S ENTIRELY

 4    RELEVANT, YOUR HONOR, GIVEN MY STATEMENT THAT, IT'S A

 5    POINT THAT EITHER WAS OR COULD HAVE BEEN.  IT DOESN'T

 6    NECESSARILY HAVE TO HAVE BEEN RAISED.

 7              THE COURT:  I UNDERSTAND.

 8              BUT, ORDINARILY, A CLAIM PRECLUSION

 9    CONTEMPLATES THAT THERE'S A FINAL -- THERE'S AN END TO

10    THE LITIGATION AND THERE'S A JUDGMENT.

11              MR. HEYSE:  RIGHT.

12              SO, YES, IN THAT CONTEXT, IT WOULD BE IF

13    MS. L. IS ONGOING.  AND I BELIEVE IT IS.  I CAN

14    CERTAINLY CONFIRM THAT, OR AT LEAST ATTEMPT TO SOON.

15    BUT I BELIEVE MS. L. IS AN ONGOING MATTER DESPITE THE

16    SETTLEMENT.  I BELIEVE THEY HAVE SETTLED CERTAIN

17    ASPECTS, BUT NOT THE FULL CASE.

18              JUST TO REITERATE, I FOUND THE QUOTE FROM

19    THE MS. L. PLEADING.  THEY REQUESTED THAT, QUOTE,

20    "DEFENDANTS ESTABLISH A FUND TO PAY FOR PROFESSIONAL

21    MENTAL HEALTH COUNSELING WHICH WILL BE USED TO TREAT

22    CHILDREN WHO ARE SUFFERING FROM SEVERE TRAUMA AS A

23    RESULT OF THEIR FORCIBLE SEPARATION FROM THEIR

24    PARENTS."  THAT'S THE MS. L. MATTER, ECF NUMBER 104 AT

25    PAGE 13.
```

```
 1              THE COURT:  ALL RIGHT.

 2              MR. HEYSE:  ONE OTHER POINT, IF I MAY, AS TO

 3    THE FIRST TO FILE AND THE MOOTNESS EXCEPTIONS?

 4                   REGARDING WHETHER OR NOT THIS IS

 5    INHERENTLY TRANSITORY, THE PLAINTIFFS HAVE ACTUALLY

 6    NEVER ARGUED THAT, SO THAT WOULD BE A NEW POINT HERE.

 7    HAPPY TO PROVIDE ADDITIONAL BRIEFING ON IT, AS THE

 8    COURT REQUIRES.

 9                   AND THIS IS A DISTINCT DOCTRINE FROM

10    THINGS THAT ARE CAPABLE OF REPETITION, BUT ESCAPING

11    REVIEW.

12              THE COURT:  ALL RIGHT.  THANK YOU, MR. HEYSE.

13              MR. HEYSE:  YOU'RE WELCOME.

14              THE COURT:  MR. CRAIG?

15              MR. CRAIG:  YES, YOUR HONOR.

16                   I'D LIKE TO START WITH THE MS. L.

17    SETTLEMENT.  I HAVE A COPY OF THE SETTLEMENT AGREEMENT,

18    WHICH I'M HAPPY TO PROFFER TO THE COURT, LODGE WITH THE

19    COURT, AS THE COURT WISHES.

20                   I WILL READ FROM THE SETTLEMENT

21    AGREEMENT.  IT'S ACTUALLY A SETTLEMENT WITH RESPECT TO

22    THREE DIFFERENT PIECES OF LITIGATION THAT HAVE BEEN

23    KIND OF UNIFIED.

24                   BUT AS TO THE MS. L. CLASS MEMBERS, IT

25    STATES, "MS. L. CLASS MEMBERS AGREE TO REFRAIN FROM
```

1    ADDITIONAL LITIGATION SEEKING IMMIGRATION OR ASYLUM

2    RELATED INJUNCTIVE, DECLARATORY OR EQUITABLE RELIEF

3    THAT ARISES FROM THE FACTS AND CIRCUMSTANCES SET FORTH

4    IN MS. L., M.M.M. AND DORA COMPLAINTS RELATING TO THOSE

5    PARENTS AND CHILDREN COVERED BY THIS PLAN, INCLUDING

6    STATUTORY CLAIMS."

7                    SO THAT IS A -- IT'S -- I WOULD NOT

8    CHARACTERIZE IT EVEN AS A RELEASE SO MUCH AS SOMETHING

9    AKIN COVENANT NOT TO SUE.  AND IT'S LIMITED, WHICH IS

10   IMPORTANT HERE, BECAUSE IT'S LIMITED TO LITIGATION

11   SEEKING IMMIGRATION OR ASYLUM-RELATED INJUNCTIVE,

12   DECLARATORY OR EQUITABLE RELIEF.

13                   AND THAT'S -- THAT LIMITATION DOES NOT

14   ENCOMPASS WHAT WE'RE SEEKING IN THIS CASE, WHICH IS THE

15   MENTAL HEALTHCARE SERVICES AND SCREENING THAT ARE

16   REQUIRED BECAUSE OF THE GOVERNMENT'S DELIBERATE POLICY.

17                   AND SO THEY HAVE BARGAINED FOR THE

18   LIMITED SCOPE OF THIS, I'LL CALL IT, "COVENANT" IN THE

19   MS. L. CASE.  THEY CANNOT NOW BE HEARD TO ATTEMPT TO

20   EXPAND THAT SCOPE OF COVERAGE TO PREVENT US FROM

21   BRINGING CLAIMS SEEKING ENTIRELY SEPARATE RELIEF FROM

22   WHAT'S ON THOSE CASES.

23            THE COURT:  IS THE RELIEF YOU'RE SEEKING HERE

24   LIMITED TO THE PARENTS' -- MENTAL HEALTH TREATMENT FOR

25   PARENTS?

```
1              MR. CRAIG:  OUR CLIENTS ARE ALL PARENTS, OUR

2    THREE NAMED PLAINTIFFS.  AND WE'RE SEEKING TO REPRESENT

3    A CLASS OF PARENTS.

4              WE'RE SEEKING MENTAL HEALTHCARE SERVICES

5    AND TREATMENT TO BE PROVIDED TO THE FAMILY UNIT.

6          THE COURT:  SLOW DOWN.

7          MR. CRAIG:  YES, YOUR HONOR.

8          THE COURT:  WELL, WHEN YOU SAY IT'S PROVIDED

9    TO THE "FAMILY UNIT," IS THE RELIEF SOUGHT HERE RELIEF

10   FOR PARENTS WHO ARE THE PLAINTIFFS AND THE PUTATIVE

11   CLASS MEMBERS?

12         MR. CRAIG:  YES, YOUR HONOR.

13         THE COURT:  AND NOT THE CHILDREN?

14         MR. CRAIG:  YES, YOUR HONOR.

15         THE COURT:  AND SO IS IT YOUR -- IS WHAT

16   YOU -- WHEN YOU JUST REFERRED TO THE "FAMILY UNIT," ARE

17   YOU SAYING THAT, IF APPROPRIATE -- IF AN APPROPRIATE

18   EVALUATION WERE MADE THAT CONTEMPLATED SOME

19   COMMUNICATION INVOLVING PARENT AND CHILD OR TREATMENT

20   INVOLVING PARENT AND CHILD, IT WOULD THEN BE REQUIRED?

21         MR. CRAIG:  YES, YOUR HONOR.

22              OUR EXPERTS HAVE SAID THAT THE VIOLENCE

23   THAT WAS DONE HERE WAS DONE TO THE INTEGRITY OF THE

24   FAMILY UNIT.  IT'S A MATTER OF TEARING CHILDREN AND

25   PARENTS APART.
```

```
 1            AND THE THERAPY IS NEEDED TO PROVIDE
 2    PARENTS IN PARTICULAR WITH THE TOOLS THEY NEED TO, FOR
 3    EXAMPLE, EXPLAIN WHAT'S BEEN DONE, TO REASSURE THEIR
 4    CHILDREN THAT IT'S NOT GOING TO BE REPEATED, AND THAT
 5    THEY'RE SAFE NOW.
 6            THE COURT:  MR. HEYSE, JUST WITH RESPECT TO
 7    ONE ISSUE.  IS THERE ANY OBJECTION IF THE COPY OF THE
 8    SETTLEMENT AGREEMENT IN THE MS. L. MATTER IS LODGED --
 9    IS FILED ON THE DOCKET HERE UNDER SEAL, IF IT WAS FILED
10    UNDER SEAL?
11            MR. CRAIG:  IT'S NOT.
12            THE COURT:  IT IS ON DOCKET IN THE --
13            MR. CRAIG:  IT IS.
14            THE COURT:  MR. HEYSE, ANY OBJECTION IF THAT'S
15    FILED HERE?
16            MR. HEYSE:  IF IT IS A PUBLIC DOCUMENT, NO.
17    NO OBJECTION.
18            THE COURT:  WHY DON'T YOU AFTER THE --
19    MR. CRAIG, BEFORE THAT'S FILED, I'D LIKE YOU TO CONFER
20    WITH MR. HEYSE AND MAKE SURE THERE'S NO OBJECTION BASED
21    ON THIS BEING A PUBLICLY-AVAILABLE DOCUMENT FROM THE
22    DOCKET IN MS. L.
23            AND, IF SO, I'D LIKE YOU TO FILE A COPY
24    HERE.
25            MR. CRAIG:  YES, OF COURSE, YOUR HONOR.
```

```
1              THE COURT:  THANK YOU.

2                   IT'LL BE LODGED RATHER THAN FILED.

3                   OKAY.  MR. CRAIG, WITH RESPECT TO ANOTHER

4      ISSUE RAISED BY MR. HEYSE, TRANSITION, ONE OF THE CASES

5      WE'VE BEEN DISCUSSING INVOLVES A TRANSITION FOR

6      PRESCRIPTION MEDICATIONS AND EXPECTATION OF A FEW WEEKS

7      OF PRESCRIPTION MEDICATIONS TO PERMIT THE PERSON WHO

8      WAS FORMERLY DETAINED TO OBTAIN A REFILL OF THAT

9      PRESCRIPTION ELSEWHERE.

10                  WHAT IS THE TRANSITION PERIOD THAT YOU'RE

11     SEEKING -- FOR WHICH YOU'RE SEEKING RELIEF HERE?

12          MR. CRAIG:  IT'S -- IF YOU LOOK AT WAKEFIELD,

13     THE STANDARD IS, THE AMOUNT OF TIME IT WOULD TAKE FOR

14     THE PERSON TO OBTAIN THE NEEDED TREATMENT ON THEIR OWN.

15                  SO, IN THIS CASE, WHAT WE'RE TALKING

16     ABOUT, AGAIN, IS A KIND OF INVISIBLE, INTANGIBLE MENTAL

17     INJURY.  IT'S NOT A BLEEDING LEG THAT ANYONE CAN TELL

18     THAT REQUIRES STITCHES.  THIS IS A CASE WHERE PEOPLE

19     ARE SUFFERED SEVERE PSYCHOLOGICAL TRAUMA AS A RESULT OF

20     THE FAMILY SEPARATION POLICY THAT THE GOVERNMENT

21     IMPLEMENTED.  AND OUR EXPERTS HAVE SAID THAT, THE

22     SOONER THAT THE TREATMENT CAN BE PROVIDED, THE BETTER.

23                  SO IT'S NOT POSSIBLE, AT THIS EARLY STAGE

24     IN LITIGATION, TO SAY IT NEEDS TO BE A WEEK, TWO WEEKS,

25     A MONTH.  IT'S GOING TO DEPEND ON THE ASSESSMENTS THAT
```

1    ARE DONE OF THE PLAINTIFFS AND THE CLASS MEMBERS.

2                 BUT WE THINK THAT AS -- IT WILL BE A

3    LIMITED PERIOD UNDER THE WAKEFIELD PRONG.  BUT AS YOUR

4    HONOR RECOGNIZED, THAT'S ONLY ONE OF THE TWO BASES ON

5    WHICH WE'RE SEEKING THE RELIEF HERE.

6            THE COURT:  I UNDERSTAND.

7                 BUT JUST STAYING WITH THAT ONE.  I KNOW

8    WE'RE EXCEEDING, POTENTIALLY, THE MOTION TO DISMISS

9    HERE.

10                BUT YOU'RE SEEKING A JUDICIAL ORDER THAT

11   WOULD SAY -- HOW WOULD YOU -- HOW DO YOU CONTEND YOU

12   DEFINE WHAT'S AN APPROPRIATE TRANSITION PERIOD IN AN

13   ORDER GIVEN THAT YOU HAVE ESTIMATED THAT THIS MATTER

14   MAY NOT BE READY FOR TRIAL FOR EIGHT MONTHS OR MORE AND

15   THE GOVERNMENT THINKS MAYBE LONGER THAN THAT?

16           MR. CRAIG:  THIS IS A WELL KNOWN -- THE

17   GOVERNMENT IS WELL AWARE OF THE SCREENING PROCESSES

18   THAT NEED TO TAKE PLACE HERE.  THEY HAVE A FORM THAT

19   WE'VE FILED.  AND WE THINK THAT, AS A FIRST STEP, THAT

20   SCREENING SHOULD BE DONE FOR ALL THE CLASS MEMBERS.

21                ONCE THAT SCREENING HAS BEEN DONE, WE

22   OUGHT TO BE IN A POSITION TO BETTER TO SAY, IF OUR

23   RELIEF IS LIMITED TO WAKEFIELD ALONE, WHICH WE DON'T

24   THINK IT SHOULD BE, THAT A REASONABLE TRANSITIONAL

25   PERIOD FOR OUR PLAINTIFFS AND CLASS MEMBERS IS A

```
 1    CERTAIN LENGTH.  THIS, OBVIOUSLY, AGAIN, WE HAVE NOT

 2    HAD ANY DISCOVERY.  THIS IS THE MOTION TO DISMISS

 3    PHASE, FAIRLY EARLY IN THE CASE.

 4                 BUT I WOULD ALSO CALL THE COURT'S

 5    ATTENTION TO THE CIRCUMSTANCES THAT OUR PLAINTIFFS AND

 6    OUR CLASS MEMBERS FIND THEMSELVES IN.  THESE ARE NOT

 7    PEOPLE IN THE MAIN WHO ARE WELL INTEGRATED INTO

 8    AMERICAN SOCIETY AT PRESENT.  THEY DON'T, IN THE MAIN,

 9    HAVE HEALTH INSURANCE.  THEY DON'T, IN THE MAIN, HAVE

10    JOBS OR SUBSTANTIAL RESOURCES OR FAMILIARITY DEALING

11    WITH THE AMERICAN HEALTHCARE SYSTEM, AS COMPLEX AS WE

12    ALL KNOW IT CAN BE.

13                 THEY ARE, IN MANY CASES, FORBIDDEN FROM

14    WORKING HERE, WHICH, OBVIOUSLY, COMPLICATES THEIR

15    ABILITY TO ACCESS THE MEDICAL -- THE MENTAL HEALTHCARE

16    SCREENING AND TREATMENT THAT WE ARE SEEKING HERE.

17                 AND, IN MANY CASES, THEY MAY NOT KNOW

18    THAT THEY SUFFER FROM THE INJURY THAT OUR EXPERTS SAY

19    THEY ARE VERY LIKELY TO BE SUFFERING FROM, WHICH REALLY

20    POINTS OUT THE LIMITATIONS OF THE GOVERNMENT'S ARGUMENT

21    THAT THEY OUGHT TO HAVE SELF-IDENTIFIED TO THE WARDEN

22    OR THE GUARDS IN THE FACILITIES IN WHICH THEY WERE

23    DETAINED.

24                 THESE ARE, AGAIN, INJURIES THAT ARE

25    SERIOUS, SEVERE AND REAL, BUT NOT NECESSARILY
```

```
1    IMMEDIATELY APPARENT TO SOMEONE WITHOUT MEDICAL

2    TRAINING THAT EVEN COULD SELF-DIAGNOSE AND SAY, I

3    MYSELF NEED THIS THERAPY.

4              THE COURT:  JUST A MINUTE.

5                   AGAIN, WE'RE A BIT BEYOND THE MOTION TO

6    DISMISS.

7                   BUT ARE YOU SAYING THAT IF,

8    HYPOTHETICALLY -- PUTTING ASIDE THE STATE CREATED

9    DANGER DOCTRINE, AND WE'VE DISCUSSED THAT BEFORE.

10                   BUT ARE YOU SAYING THAT AFTER -- IF,

11   HYPOTHETICALLY, SCREENING WERE REQUIRED AND

12   IMPLEMENTED, AT THAT POINT, THERE WOULD BE A FURTHER

13   DETERMINATION AS TO WHAT CONSTITUTED TRANSITIONAL

14   TREATMENT?

15             MR. CRAIG:  I THINK THAT'S RIGHT.  I THINK

16   THAT'S RIGHT, YOUR HONOR.

17                   I THINK THIS IS A -- WE'RE DEALING WITH

18   AN ISSUE HERE WHERE WE KNOW WHAT THESE PEOPLE NEED.

19   SOME OF THEM, WHEN THE SCREENING IS DONE, WILL FALL

20   AWAY AND SAY THEY DON'T NEED THE TRAUMA-INFORMED

21   THERAPY THAT IS NECESSARY FOR OTHERS.

22                   OTHERS MAY BE ABLE TO ACHIEVE A

23   SUBSTANTIAL THERAPEUTIC BENEFIT AFTER A SHORT COURSE,

24   AND THAT MAY BE SUFFICIENT.

25                   WHAT'S MISSING HERE FROM THE WAKEFIELD
```

```
1    ANALYSIS THOUGH, I THINK, YOUR HONOR, IS, AGAIN, THE
2    INDIVIDUALS DON'T NECESSARILY KNOW THAT THEY NEED THIS
3    TREATMENT AT PRESENT.  THEY MAY FEEL THAT SOMETHING HAS
4    GONE VERY WRONG IN THEIR LIVES.  THEY MAY FEEL THAT
5    THEIR CHILD HAS REGRESSED, AS HAS BEEN REPORTED IN MANY
6    CASES.  CHILDREN WHO WERE TOILET TRAINED ARE REGRESSING
7    TO DIAPERS.
8              BUT THEY MAY NOT BE ABLE TO KIND OF PUT
9    TWO-AND-TWO TOGETHER UNTIL THEY HAVE SOMEONE COME TO
10   THEM AND SCREEN THEM AND SAY, "YOU HAVE SUFFERED A
11   TRAUMA.  WE KNOW, AS MENTAL HEALTH EXPERTS, THAT TRAUMA
12   CAN CAUSE THESE SORTS OF THINGS.  AND HERE ARE SOME
13   TOOLS THAT YOU CAN USE TO ADDRESS THAT."
14             SO IF THE COURT PREFERRED TO HANDLE THIS
15   IN KIND OF AN ITERATIVE FASHION, I --
16             THE COURT:  IF I ADOPTED -- IF I WERE
17   PERSUADED TO DO WHAT YOU'VE JUST STATED, WOULD A CLASS
18   PROCESS BE APPROPRIATE, OR WOULD THESE BE
19   INDIVIDUALIZED DETERMINATIONS?
20             MR. CRAIG:  I THINK A CLASS PROCESS IS
21   APPROPRIATE HERE, YOUR HONOR.
22             AND THE REASON IS, JUST AS IN ANY TOXIC
23   TORT CASE OR ASBESTOS CASE, THE CLASS IS OFTEN DEFINED
24   BY THE PEOPLE WHO ARE EXPOSED TO THE CONDITION.
25             DIFFERENT PEOPLE HAVE DIFFERENT REACTIONS
```

```
1    TO IT.  SOME REQUIRE EXTENSIVE TREATMENT.  SOME REQUIRE

2    ONLY A LIMITED AMOUNT OF TREATMENT.  SOME MAY NOT

3    REQUIRE TREATMENT AT ALL.

4              BUT THE COMMON ISSUES HERE ARE CLEAR.

5    EVERYONE IN THE CLASS WAS SUBJECT TO THE FAMILY

6    SEPARATION POLICY.  EVERYONE IN THE CLASS IS AT

7    ELEVATED RISK OF THE NEGATIVE CONSEQUENCES OF THE

8    TRAUMA THAT WAS INFLICTED ON THEM.  EVERYONE HERE WOULD

9    BENEFIT BY THE SCREENING, IF ONLY TO DETERMINE, YES,

10   FURTHER TREATMENT IS NECESSARY OR, NO, THIS PERSON IS

11   NOT SUFFERING FROM TRAUMA.

12             THE COURT:  OKAY.  IS THERE ANY OTHER ISSUE

13   YOU WANTED TO ADDRESS?

14             MR. CRAIG:  I WOULD BRIEFLY ADDRESS THE

15   COMPENSATORY RELIEF POINT THAT THE GOVERNMENT ATTEMPTED

16   TO RAISE IN CONNECTION WITH THE SOVEREIGN IMMUNITY

17   POINT.

18             VERY BRIEFLY, I WILL JUST CALL THE

19   COURT'S ATTENTION TO THE FACT THAT THE PHRASE USED IN

20   THE APA IS "MONEY DAMAGES."  IT IS NOT ANY KIND OF

21   RELIEF THAT MIGHT BE CONSTRUED AS COMPENSATORY, "MONEY

22   DAMAGES."

23             AND THE COURT IN BOWEN MADE VERY CLEAR

24   THAT YOU SHOULD READ THE STATUTORY LANGUAGE, THE

25   EXCEPTION -- IT'S AN EXCEPTION TO THE WAIVER OF
```

1    SOVEREIGN IMMUNITY FOR MONEY DAMAGES.  AND THAT

2    EXCEPTION OUGHT TO BE READ NARROWLY.

3              HERE, PLAINTIFFS ARE NOT SEEKING A

4    DOLLAR.  WE ARE NOT SEEKING THE GOVERNMENT PUT A SINGLE

5    NICKEL IN ANY PLAINTIFF OR CLASS MEMBER'S POCKET.

6              WE ARE SEEKING THE SERVICES TO WHICH THE

7    PLAINTIFFS AND THE CLASS MEMBERS WERE ENTITLED BOTH IN

8    DETENTION FOR A REASONABLE PERIOD THEREAFTER UNDER THE

9    WAKEFIELD DOCTRINE, AND GOING FORWARD UNDER THE STATE

10   CREATED DANGER DOCTRINE.  THAT'S JUST THE SERVICES TO

11   WHICH THEY'RE ENTITLED.

12             IT IS NOT COMPENSATORY RELIEF MEANT TO

13   MAKE THEM -- GIVE THEM A SUM OF MONEY TO TRY TO MAKE

14   THEM WHOLE.  IT'S TO GIVE THEM THE SERVICES TO WHICH

15   THEY WERE ENTITLED.

16             THE COURT:  ALL RIGHT.  THANK YOU, MR. CRAIG.

17             MR. CRAIG:  THANK YOU.

18             THE COURT:  MR. HEYSE, ANYTHING NEW?

19             MR. HEYSE:  YES, YOUR HONOR.

20             IF I MAY RESPOND?

21             ONE UPDATE, THE MS. L. SETTLEMENT IS

22   ACTUALLY NOT A FINAL SETTLEMENT.  THE CASE IS NOT

23   WRAPPING UP.  I BELIEVE MY OPPOSING COUNSEL SAID

24   SOMETHING SIMILAR TO THAT EFFECT, BUT I HAVE RECEIVED

25   CONFIRMATION FROM HIGH AUTHORITY IN THE JUSTICE

1    DEPARTMENT THAT THAT IS THE CASE.

2              THE COURT:  THAT'S FINE.

3                   BUT THERE'S SOME -- WELL, I WANT THE TWO

4    OF YOU TO CONFER AND SEE WHETHER YOU AGREE THAT THIS

5    DOCUMENT THAT'S BEEN CITED CAN BE LODGED.

6              MR. HEYSE:  YES.  WE WILL CERTAINLY DISCUSS

7    THAT, YOUR HONOR.

8              MR. CRAIG:  IF I MAY, YOUR HONOR --

9              THE COURT:  JUST A MINUTE.

10                  GO AHEAD, MR. HEYSE.

11             MR. CRAIG:  I WILL JUST NOTE --

12             THE COURT:  JUST A MINUTE, PLEASE.

13                  LET ME HEAR FROM MR. HEYSE.

14             MR. HEYSE:  REGARDING WAKEFIELD, WHAT THE

15   PLAINTIFFS ARE DESCRIBING NOW IS A PRETTY REMARKABLE

16   SHIFT BOTH FROM WHAT THEY HAVE ASKED FOR, BUT ALSO FROM

17   WAKEFIELD ITSELF.

18                  I'M PARAPHRASING.  I THINK I PRETTY

19   ACCURATELY JOTTED DOWN THE QUOTE.  BUT THEY ASKED FOR

20   THE AMOUNT OF TIME NEEDED TO OBTAIN TREATMENT ON THEIR

21   OWN, IS THE TRANSITION PERIOD.  BUT, ALSO, THAT THAT'S

22   NOT POSSIBLE AT THIS EARLY STAGE OF THE LITIGATION.

23   SO, ESSENTIALLY, IT'S DEFERRING WHEN THE CLOCK STARTS,

24   WHICH IS NOT AT ALL WHAT WAKEFIELD WAS ABOUT.

25   WAKEFIELD WAS ABOUT THE IMMINENT NEED FOR CARE UPON

```
1    RELEASE GIVEN THE INDIVIDUAL'S INABILITY TO OBTAIN CARE

2    ON THEIR OWN.

3             SO TO SUGGEST THAT THE GOVERNMENT STILL

4    HAS SOME KIND OF SCREENING BURDEN TO FIGURE OUT WHETHER

5    OR NOT THESE INDIVIDUALS NEED CARE THAT THEY ALLEGEDLY

6    DIDN'T GET, BUT THEY NEED IT NOW, AND THEN THAT STARTS

7    THE CLOCK FOR HOW LONG THE GOVERNMENT HAS TO PROVIDE,

8    IT IS VERY FAR AFIELD FROM WHAT WAKEFIELD ORIGINALLY

9    DESCRIBED.

10            PLAINTIFFS ALSO HAVEN'T MENTIONED THE

11   AVAILABILITY OF BOTH THE SAMSHA GRANT, WHICH I ALSO CAN

12   CONFIRM IS UNAFFECTED BY THE SHUTDOWN.  I ALSO JUST GOT

13   THAT INFORMATION.

14            BUT, ALSO, THE AVAILABILITY OF PRO BONO

15   MENTAL HEALTHCARE THAT WAS DISCUSSED IN THE SAME BREATH

16   AS I MENTIONED BEFORE IN MS. L. WHEN THEY WERE ASKING

17   FOR THE GOVERNMENT TO CREATE A FUND THERE.

18            PLAINTIFFS ALSO DESCRIBE HOW THESE

19   INDIVIDUALS -- THE PLAINTIFFS AND THE POTENTIAL

20   PUTATIVE CLASS MEMBERS MAY LACK SOPHISTICATION.  THEY

21   MAY LACK JOBS.  THEY'RE UNABLE TO NAVIGATE THE AMERICAN

22   HEALTHCARE SYSTEM.  BUT, MOST SIGNIFICANTLY, THEY MAY

23   NOT KNOW EVEN THAT THEY ARE INJURED.  THAT'S A PRETTY

24   REMARKABLE STATEMENT THAT GOES TO THE SPECULATIVE

25   NATURE OF THESE CLAIMS.
```

```
1              PLAINTIFFS OWN WORDS DESCRIBE HOW
2    INDIVIDUALS HAVE, QUOTE, "A VARIETY OF RESPONSES" TO
3    THIS ALLEGED TRAUMA.  THAT FLATLY RENDERS THIS CASE
4    INAPPROPRIATE FOR B(2) CLASS TREATMENT, WHICH REQUIRES
5    THAT ANY RESOLUTION, ANY INJUNCTIVE RELIEF BENEFIT ALL
6    OR NONE.  IT CAN'T BE PIECEMEAL.
7              SO WHAT THEY'RE ASKING FOR HERE IS A BIT
8    OF, SOME OF COLUMN A, SOME OF COLUMN B, SOME OF COLUMN
9    C, MAYBE SOME PEOPLE DON'T FIT INTO ANY OF THOSE
10   COLUMNS.  IT'S SIMPLY NOT WHAT B(2) CLASSES ARE
11   DESIGNED FOR.  THAT JUST DOESN'T MAKE ANY SENSE.
12             LASTLY, WITH RESPECT TO THE STATE-CREATED
13   DANGER THEORY, SOMETHING I HAVEN'T HEARD MENTIONED AT
14   ALL --
15             THE COURT:  WELL, I SHORTCUT THAT DISCUSSION,
16   BUT GO AHEAD.
17             MR. HEYSE:  OKAY.  THANK YOU, YOUR HONOR.
18             THE ONE CRITICAL PART THAT IS ABSENT HERE
19   IS THE NINTH CIRCUIT IN HENRY A. STATED THAT, THE
20   STATE-CREATED DANGER THEORY ONLY APPLIES IF THE
21   PLAINTIFF WAS HARMED BY A THIRD PARTY.  WE DON'T HAVE A
22   THIRD PARTY HERE.
23             WHAT WE HAVE HERE IS AN INDIVIDUAL OR
24   INDIVIDUALS TRYING TO BASICALLY FILE AND OBTAIN
25   TORT-LIKE DAMAGES WITHOUT ANY OF THE TORT-LIKE
```

1    REQUIREMENTS.

2                    THERE'S A VARIETY OF VEHICLES POTENTIALLY

3    AVAILABLE TO THEM, BUT INJUNCTIVE RELIEF IS NOT THE

4    APPROPRIATE VEHICLE.

5                    TO GET THERE, IT REQUIRES EITHER

6    STRETCHING WAKEFIELD FAR BEYOND ITS LIMITS, OR

7    STRETCHING THE STATE-CREATED DANGER THEORY TO APPLY TO

8    A SITUATION WHERE IT HAS NEVER PREVIOUSLY BEEN.

9               THE COURT:  ALL RIGHT.  THANK YOU.

10              MR. HEYSE:  THAT'S ALL I HAVE, YOUR HONOR.

11              THE COURT:  THANK YOU, MR. HEYSE.

12                    IS THERE SOMETHING YOU WANTED TO ADD,

13   BRIEFLY, MR. CRAIG?

14              MR. CRAIG:  YES, YOUR HONOR.  VERY, VERY

15   BRIEFLY.

16                    THERE'S NO SPECULATION HERE ABOUT THE

17   EXISTENCE OF THE INJURY.  THERE'S -- GIVEN THE NATURE

18   OF THE TRAUMA, NOT ONLY OUR EXPERTS HAVE RECOGNIZED

19   THAT THIS TRAUMA HAS BEEN INFLICTED, BUT THE

20   GOVERNMENT'S OWN OFFICIALS HAVE DONE SO, AS YOU HAVE

21   SEEN IN OUR PRELIMINARY INJUNCTION REPLY.  TESTIMONY

22   BEFORE CONGRESS ESTABLISHES THAT THE GOVERNMENT KNEW

23   WELL THAT SEPARATING FAMILIES FROM -- PARENTS FROM

24   CHILDREN WOULD INFLICT TRAUMA.  AND THEY HAD GRAVE

25   CONCERNS ABOUT IT.  AND, YET, THE POLICY WENT FORWARD.

1              AS TO THE WAKEFIELD POINT THAT THE

2    GOVERNMENT WAS JUST RAISING, IT WOULD BE INEQUITABLE TO

3    ALLOW THE GOVERNMENT TO ESCAPE ITS OBLIGATIONS TO

4    PROVIDE THE REQUIRED SCREENING AND TREATMENT BOTH IN

5    DETENTION AND FOR THE REASONABLE PERIOD THEREAFTER BY

6    ALLOWING THEM TO RUN OUT THE CLOCK IN LITIGATION.  THEY

7    SHOULD HAVE DONE THE SCREENING WHEN OUR PLAINTIFFS AND

8    CLASS MEMBERS WERE DETAINED.

9              FAILING THAT, THEY SHOULD HAVE DONE IT

10   WHEN WE FILED OUR COMPLAINT IN JULY WHEN AT LEAST ONE

11   OF OUR PLAINTIFFS WAS STILL DETAINED.  THEY DID NOT.

12             AND FOR THEM TO SAY, NOW THAT TIME HAS

13   ELAPSED, THAT WAKEFIELD -- THE CLOCK HAS RUN OUT IS

14   ALLOWING THEM TO TAKE ADVANTAGE OF THEIR OWN

15   NONFEASANCE.

16             ONE VERY BRIEF PROCEDURAL POINT BEFORE I

17   WRAP UP.  THE MS. L. SETTLEMENT AGREEMENT, I'LL

18   REPRESENT TO THE COURT THAT I FOUND IT ON PACER.  IT

19   HAS BEEN FILED PUBLICLY.  I WILL CONFER WITH COUNSEL

20   AND LODGE IT.  BUT I WANTED TO MAKE THAT CLEAR, THAT'S

21   WHERE WE GOT IT.

22        THE COURT:  NO, I UNDERSTAND.

23             I THINK THE ISSUE IS, WHETHER IT'S A

24   FINAL AGREEMENT OR AN INTERIM ONE.  I THINK THAT'S WHAT

25   WAS BEING RAISED BY MR. HEYSE.

```
 1              MR. CRAIG:  I SEE.

 2                   AND LIKE I SAID, WE WILL CONFER ON THAT.

 3                   JUST TO WRAP.  THE STATE-CREATED DANGER

 4    DOCTRINE, THE GOVERNMENT IS JUST NOT ACCURATELY

 5    DESCRIBING THE STATE OF NINTH CIRCUIT LAW.

 6                   AS YOUR HONOR RECOGNIZED IN HIS TENTATIVE

 7    RULING AT THE OUTSET, THE DOCTRINE HAS BEEN APPLIED TO

 8    EXPOSING PEOPLE TO THE COLD, TO A STATE OFFICIAL

 9    EJECTING SOMEONE FROM A BAR ON A VERY COLD NIGHT, AND

10    THEM SUBSEQUENTLY DYING OF HYPOTHERMIA.

11                   IT APPLIED IN A CASE WHERE GOVERNMENT

12    SUPERVISORS REQUIRED A SUBORDINATE TO WORK IN A

13    MOLD-INFESTED FACILITY IN A CASE THAT THE GOVERNMENT

14    ITSELF CITED IN ITS PRIOR BRIEFING.

15                   SO IT'S JUST NOT ACCURATE THAT THE NINTH

16    CIRCUIT REQUIRES A THIRD PARTY.

17              THE COURT:  ALL RIGHT.  THANK YOU.

18              MR. CRAIG:  THANK YOU.

19              THE COURT:  HERE'S WHAT I'D LIKE YOU TO DO

20    THEN:

21                   AS WE'VE DISCUSSED MORE THAN ONCE, I'D

22    LIKE COUNSEL, PLEASE, TO CONFER ABOUT LODGING A COPY OF

23    THE AGREEMENT OR THE -- WHATEVER ITS SCOPE IS IN THE

24    MS. L. MATTER.

25                   SECOND, I'D LIKE THE GOVERNMENT TO
```

1    PROVIDE, WITHIN 14 DAYS, AN UPDATE, IF THERE IS ONE --

2    UPDATE OR A STATEMENT THAT THERE'S NOT -- THEY DON'T

3    HAVE -- THE GOVERNMENT DOESN'T HAVE AN UPDATE

4    CONCERNING WHETHER ANY OF THE PUTATIVE CLASS MEMBERS IS

5    STILL BEING DETAINED.

6              AND, FINALLY, I'D LIKE COUNSEL TO CONFER

7    FURTHER WITH RESPECT TO A POTENTIAL SETTLEMENT PROCESS.

8    YOU'VE ALREADY DISCUSSED IT HERE.

9              I RECOGNIZE WHAT -- I'VE HEARD WHAT YOU

10   HAVE SAID.  AND I UNDERSTAND THAT THE GOVERNMENT THINKS

11   IT WAS -- BELIEVES THAT SOME FURTHER RESPONSE FROM THE

12   PLAINTIFFS MAY BE APPROPRIATE.

13             I UNDERSTAND THAT EACH SIDE THINKS THERE

14   MAY BE SOME CONCERNS ABOUT WHETHER IT WOULD BE

15   PRODUCTIVE.

16             I THINK BOTH SIDES SEEM TO AGREE THAT, IF

17   THERE WERE SOMETHING MEANINGFUL TO DISCUSS, DOING SO

18   WITH A BENCH OFFICER MIGHT BE PRODUCTIVE.  SO I'D LIKE

19   YOU TO HAVE ANOTHER DISCUSSION ABOUT THAT.

20             AND, WITHIN A WEEK, JUST FILE A REPORT ON

21   THE PROCEDURAL, NOT SUBSTANCE.  NOT WHAT ANYBODY HAS

22   SAID OR OFFERED OR NOT OFFERED OR ANYTHING LIKE THAT.

23   JUST DO YOU THINK THAT THERE WOULD BE A -- WHAT IS

24   YOUR -- WHAT ARE YOUR CURRENT COLLECTIVE AND/OR

25   RESPECTIVE VIEWS ON WHETHER THERE COULD BE A PRODUCTIVE

```
 1    MEANS OF DISCUSSING A POTENTIAL RESOLUTION OF THIS
 2    MATTER?
 3                  AND IF SO, WHEN?
 4                  I MEAN, IS IT AFTER THEIR RULINGS ON
 5    CURRENT MOTIONS?
 6                  HOW DO YOU SEE IT?
 7                  AND I URGE YOU TO GIVE THAT SOME SERIOUS
 8    THOUGHT.
 9                  AND TO THE EXTENT THAT YOU THINK THAT THE
10    PROCESS MIGHT BE FACILITATED BY WORKING WITH A BENCH
11    OFFICER, PLEASE MAKE THAT NOTE SO THAT I CAN CONSIDER
12    HOW BEST TO ADDRESS THAT, SHOULD THAT BE NEEDED OR
13    APPROPRIATE.
14                  ANYTHING ELSE WE NEED TO DO TODAY?
15              MR. CRAIG:  NO, YOUR HONOR.
16              THE COURT:  MR. HEYSE?
17              MR. HEYSE:  IF I MAY MENTION, YOUR HONOR?
18    GIVEN THE SHUTDOWN, WE'RE OBVIOUSLY GOING TO DO
19    EVERYTHING WE CAN TO COMPLY WITH THESE DEADLINES.
20    UNFORTUNATELY, WE ARE AT THE MERCY OF SEVERE
21    UNAVAILABILITY OF RESOURCES AND --
22              THE COURT:  NO, I UNDERSTAND.
23              MR. HEYSE:  -- FLAT OUT PEOPLE.
24                  SO TO THE EXTENT WE CAN'T --
25              THE COURT:  IF YOU CAN'T, THEN YOU'LL TELL ME
```

```
 1    THAT.  I UNDERSTAND.

 2              THAT'S WHAT I MEANT WHEN I SAID, "GIVE ME

 3    AN UPDATE."  IF YOU CANNOT DO IT, YOU'LL TELL ME, FOR

 4    EXAMPLE, WITH THOSE PEOPLE WHO MAY STILL BE DETAINED,

 5    IF THAT'S INFORMATION THAT YOU CANNOT ASSEMBLE BECAUSE

 6    YOU DON'T HAVE THE ABILITY TO ACCESS THOSE WHO MIGHT

 7    KNOW, THEN YOU'LL TELL ME THAT.

 8              I RECOGNIZE IT MEANS YOU HAVE TO WRITE A

 9    REPORT, BUT I'D LIKE TO KEEP UP TO DATE.

10         MR. HEYSE:  RIGHT.  I HAVE TO GET THIS

11    AUTHORIZED AND DECLARED ACCEPTED WORK FOR US TO

12    CONTINUE WORK AFTER TODAY'S FOR PURPOSES OF THE

13    HEARING.

14         THE COURT:  I'VE TRIED TO LIMIT WHAT I EXPECT

15    FROM YOU TO A NARROW GROUP OF ACTIONS.

16              OKAY.  THANK YOU.

17         MR. CRAIG:  THANK YOU, YOUR HONOR.

18         MR. HEYSE:  THANK YOU, YOUR HONOR.

19              (END OF PROCEEDINGS)

20

21

22

23

24

25
```

**CERTIFICATE OF OFFICIAL REPORTER**


COUNTY OF LOS ANGELES        )
                             )
STATE OF CALIFORNIA          )

             I, ALEXANDER T. JOKO, FEDERAL OFFICIAL
COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT
COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY
CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
STATES CODE, THAT THE FOREGOING IS A TRUE AND CORRECT
TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS
HELD IN THE ABOVE-ENTITLED MATTER, AND THAT THE
TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE
REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED
STATES.
DATE:  JANUARY 15, 2018



                    /S/ ALEXANDER T. JOKO
                    _____
                    ALEXANDER T. JOKO, CSR NO. 12272
                    FEDERAL OFFICIAL COURT REPORTER