Case 2:18-cv-06081-JAK-SK    Document 193-1    Filed 02/07/19    Page 74 of 22   Page
Case 3:18-cv-00428-DMS-MDD    Document 349-1    Filed 02/06/19   PageID #:9274 of Page 1 of 17
ID #:2582

JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice*

Case 2:18-cv-06081-JAK-SK    Document 103-1    Filed 02/07/19    Page 2 of 22   Page
Case 3:18-cv-00428-DMS-MDD    Document 349    Filed 02/06/19    PageID.9275   Page 2 of 17
ID #:2583

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

        Petitioners-Plaintiffs,

  vs.

U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, et
al.,

        Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT**

The Court ordered the parties to file a joint status report on February 6, 2019, in anticipation of the status conference scheduled at 1:00pm PST on February 8, 2019. The parties submit this joint status report in accordance with the Court's instruction.

## I.    DEFENDANTS' POSITIONS

### A. Update on Reunifications

As of February 1, 2019, Defendants have discharged 2,723 of 2,816 possible children of potential class members. *See* Table 1: Reunification Update. This is an increase of 215 discharges reported in Table 1 since the Joint Status Report (JSR) filed on December 12, 2018. The increase in discharges is attributable partly to ORR's re-categorization (in the December 12 JSR) of 149 children who were in ORR care on June 26, 2018, and released to sponsors by October 25, 2018.

Defendants had not previously reported the 149 children as possible children of potential class members.

Since December 12, 2018, ORR has also discharged 66 more children of potential class members. Of these 66 discharged children, six were reunified with a separated parent and 60 were discharged under other appropriate circumstances. Thus, there continue to be six children proceeding towards reunification or other appropriate discharge. The current status of these six children is:

- One child is in ORR care with a parent who is in the United States but unavailable. The child cannot be reunified at this time because the parent is in other federal, state, or local custody (e.g., state criminal detention). Defendants are working to appropriately discharge the child, and to identify any possible barriers to discharge, meeting and conferring with Plaintiffs where appropriate for resolution.

- Five children are in ORR care with parents presently departed from the United States, and for whom the ACLU has not yet provided notice of parental intent regarding reunification (or declination of reunification). Defendants are supporting the efforts of the ACLU to obtain statements of intent from those parents. Once Defendants receive the notices from the ACLU, Defendants will either reunify the children or move them into the TVPRA sponsorship process, consistent with the intent of the

parent. The Steering Committee has advised that resolution on four of the five children will be delayed due to unique circumstances.

The current reunification status for the 2,816 children ages 0 through 17 who have been the focus of Defendants' reporting to date is further summarized in Table 1 below. The data in Table 1 reflects approximate numbers on these children maintained by ORR at least as of February 1, 2019. These numbers are dynamic and continue to change as more reunifications or discharges occur.

### Table 1: Reunification Update

| Description | Phase 1 (Under 5) | Phase 2 (5 and above) | Total |
|---|---|---|---|
| Total number of possible children of potential class members | 107 | 2709 | 2816 |
| **Discharged Children** | | | |
| Total children discharged from ORR care: | 106 | 2617 | 2723 |
| • Children discharged by being reunified with separated parent | 82 | 2073 | 2155 |
| • Children discharged under other appropriate circumstances (these include discharges to other sponsors [such as situations where the child's separated parent is not eligible for reunification] or children that turned 18) | 24 | 544 | 568 |
| **Children in ORR Care, Parent in Class** | | | |
| Children in care where the parent is not eligible for reunification or is not available for discharge at this time: | 0 | 6 | 6 |
| • Parent presently outside the U.S. | 0 | 5 | 5 |
| o Steering Committee has advised that resolution will be delayed | 0 | 4 | 4 |
| • Parent presently inside the U.S. | 0 | 1 | 1 |

Case 2:18-cv-06081-JAK-SK    Document 103-1    Filed 02/07/19    Page 5 of 22    Page
Case 3:18-cv-00428-DMS-MDD    Document 349-1    Filed 02/08/19    PageID.5278    Page 5 of 17
ID #:2586

| | 0 | 1 | 1 |
|---|---|---|---|
| o Parent in other federal, state, or local custody | 0 | 1 | 1 |
| o Parent red flag case review ongoing – safety and well being | 0 | 0 | 0 |
| **Children in ORR Care, Parent out of Class** | | | |
| Children in care where further review shows they were not separated from parents by DHS | 1 | 15 | 16 |
| Children in care where a final determination has been made they cannot be reunified because the parent is unfit or presents a danger to the child | 0 | 21 | 21 |
| Children in care with parent presently departed from the United States whose intent not to reunify has been confirmed by the ACLU | 0 | 44 | 44 |
| Children in care with parent in the United States who has indicated an intent not to reunify | 0 | 6 | 6[1] |

**B. Update on Removed Class Members**

The current reunification status of removed class members is set forth in Table 2 below. The data presented in Table 2 reflects approximate numbers maintained by ORR as of at least February 1, 2019. These numbers are dynamic and continue to change as the reunification process moves forward.

**Table 2: Reunification of Removed Class Members**

| REUNIFICATION PROCESS | REPORTING METRIC | NO. | REPORTING PARTY |
|---|---|---|---|
| **STARTING POPULATION** | Children in ORR care with parents presently departed from the U.S. | 49 | Def's. |
| **PROCESS 1: Identify & Resolve Safety/Parentage Concerns** | Children with no "red flags" for safety or parentage | 49 | Def's. |

---

[1] As reported, the total number includes one parents who has now departed the United States. This parent indicated, while he was in the United States, an intent not to reunify.

| | | | |
|---|---|---|---|
| **PROCESS 2: Establish Contact with Parents in Country of Origin** | Children with parent contact information identified | 49 | Def's. |
| | Children with no contact issues identified by plaintiff or defendant | 49 | Def's. & Pl.'s |
| | Children with parent contact information provided to ACLU by Government | 49 | Def's. |
| **PROCESS 3: Determine Parental Intention for Minor** | Children for whom ACLU has communicated parental intent for minor: | 44 | Pl's. |
| | • Children whose parents waived reunification | 44 | Pl's. |
| | • Children whose parents chose reunification in country of origin | 0 | Pl's. |
| | • Children proceeding outside the reunification plan | 0 | Pl's. |
| | Children for whom ACLU has not yet communicated parental intent for minor: | 5 | Pl's. |
| | • Children with voluntary departure orders awaiting execution | 0 | Def's. |
| | • Children with parental intent to waive reunification documented by ORR | 0 | Def's. |
| | • Children whose parents ACLU has been in contact with for 28 or more days without intent determined | 0 | Pl's. |
| **PROCESS 4: Resolve Immigration Status of Minors to** | Total children cleared Processes 1-3 with confirmed intent for reunification in country of origin | 0 | Pl's. |

18cv428 DMS MDD

Case 2:18-cv-06081-JAK-SK    Document 103-1    Filed 02/07/19    Page 7 of 22   Page
Case 3:18-cv-00428-DMS-MDD    Document 349-1    Filed 02/08/19    Page 280 of 281   Page
ID #:2588

| Allow Reunification | • Children in ORR care with orders of voluntary departure | 0 | Def's. |
|---|---|---|---|
| | • Children in ORR care w/o orders of voluntary departure | 0 | Def's. |
| | ○ Children in ORR care whose immigration cases were dismissed | 0 | Def's. |

## C. Update Regarding Government's Implementation of Settlement Agreement

The Department of Homeland Security reports the following numbers:

| SETTLEMENT PROCESS | DESCRIPTION | NUMBER |
|---|---|---|
| **Election Forms** | Total number of executed election forms received by the Government | **333 (211 Parents/122 Children)[2]** |
| | • Number who elect to receive settlement procedures | **170 (115 Parents/65 Children)** |
| | • Number who waive settlement procedures | **153 (96 Parents/57 Children)[3]** |
| **Interviews** | Total number of class members who received interviews | **136[4]** |

---

[2] The number of children's election forms is lower than the number of parent election forms because in many instances a parent electing settlement procedures submitted an election form on his or her own behalf or opposing counsel e-mailed requesting settlement implementation for the entire family, but no separate form was submitted on behalf of the child.

[3] The number of children's waivers is lower because some parents have submitted waivers only for themselves and some parents who have waived reunification also waived settlement procedures and have therefore not provided a form for the child.

[4] Some individuals could not be interviewed because of rare languages; these individuals were placed in Section 240 proceedings.

18cv428 DMS MDD

Case 2:18-cv-06081-JAK-SK   Document 103-1   Filed 02/07/19   Page 8 of 22   Page
ID #:2589
Case 3:18-cv-00428-DMS-MDD   Document 349   Filed 02/06/19   PageID.9281   Page 8 of 17

| | | |
|---|---|---|
| | • Parents who received interviews | **70** |
| | • Children who received interviews | **66** |
| **Decisions** | Total number of CFI/RFI decisions issued for parents by USCIS | **63[5]** |
| | • Number of parents determined to establish CF or RF upon review by USCIS | **63[6]** |
| | • Number of parents whose CF or RF finding remains negative upon review by USCIS | **0** |
| | Total number of CFI decisions issued for children by USCIS | **73[7]** |
| | • Number of children determined to establish CF by USCIS | **73[8]** |

[5] This number is the aggregate of the number of parents whose negative CF/RF determinations were reconsidered, number of parents whose negative CF/RF determination was unchanged, and individuals who were referred to Section 240 proceedings without an interview because of a rare language. This number excludes 12 cases where a parent already had an Notice to Appear from ICE or was already ordered removed by an IJ (which are included in the interview totals).

[6] This number includes parents who received positive CF/RF determinations upon reconsideration, parents who received a Notice to Appear based on their child's positive CF determination, and parents who were placed in Section 240 proceedings due to a rare language.

[7] This number is the aggregate of the number of children who received a positive CF determination, the number of children who received a negative CF determination, and children who were referred to 240 proceedings without interview because of a rare language.

[8] This number includes children who received a positive CF determination, children who received a Notice to Appear as a dependent on their parent's positive CF determination, and children who were placed in Section 240 proceedings due to a rare language.

18cv428 DMS MDD

| | | |
|---|---|---|
| | • Number of children determined not to establish CF by USCIS | **0** |
| **Removals** | Number of parents who have been removed after waiving the settlement procedures | **89** |

### D. Meet-and-Confer Issues Regarding Settlement Agreement

With regard to the objections of The Legal Service Providers for children (LSPs), the LSPs and the government attach to this report a proposed order that resolves the interpretation issues raised by the objectors, and jointly request that the Court enter this order. On the issue of children subject to voluntary departure orders, the parties submit the following information.

Facts: The LSPs and the government have so far identified 11 children who were subject to voluntary departure orders when they were reunified with their parents in the United States. Of these 11 children, the LSPs submit that:

- 4 have filed motions to reopen which were granted without opposition from the government;
- 3 have filed motions to reopen which are pending; the government joined one of these motions and has not opposed the others;
- 1 repatriated with his father before his voluntary departure deadline;
- 3 have not yet filed motions to reopen, but efforts to locate the children are ongoing.

Agreement: The government and the LSPs have resolved this issue as follows:

Information-sharing: When lawyers present notices of appearance for children who were reunified with parents in the United States after accepting

voluntary departure orders, the government agrees to provide these lawyers information on the whereabouts of such children. The government will also provide the names and A-numbers of any additional children in this position of whom it becomes aware, and counsel for the legal service providers will attempt to identify and make contact with the lawyers for those children so as to connect them with the appropriate government lawyers to seek information on the children's whereabouts.

<u>Government Response to Motions to Reopen</u>: The government and the legal service providers have agreed that the Department of Homeland Security will file nothing in response to a motion to reopen filed on behalf of a child who overstayed a voluntary departure order, after being reunified with a parent in the United States, if the child is unaware of the motion because the child's lawyer cannot locate the child.  When such a motion to reopen is filed with the child's authorization, the Department of Homeland Security will consider on a case-by-case basis whether to join or consent to the motion.

**E. Separations Since June 26, 2018**

Due to the lapse in appropriations to the government, a planned meet and confer on this issue between the government and the Plaintiffs was cancelled. The parties have not yet had the opportunity to reschedule that discussion. However, the government is aware of the concerns raised by class counsel as well as counsel for other interested parties. While the government has put in place various processes and practices related to these new separations consistent with this Court's preliminary-injunction order, including tracking and information sharing between the agencies

Case 2:18-cv-06081-JAK-SK Document 183-1 Filed 02/07/19 Page 11 of 22 Page
Case 3:18-cv-00428-DMS-MDD Document 349-1 Filed 02/06/19 PageID.9284 Page 11 of 17
ID #:2592

as described in previous reports, the government also understands that it would benefit all parties if these processes and procedures were memorialized so that both the processes, and the information regarding separated families, are more accessible to class counsel as well as to other interested parties. Since appropriations were restored, the government is undertaking to do that. The government will meet and confer with class counsel and others as appropriate in moving forward with this project, and expects to report to the Court on its progress in this regard at the next status conference.

## II. *MS. L.* PLAINTIFFS' POSITION

### A. The Creation of a Centralized Database to Track Further Separations

At the last status hearing, the Court indicated that the issue of an intra-agency database should be kept at "the forefront on the status reports." and suggested that the government file an affidavit describing the current ORR and ICE tracking systems in place prior to any briefing on the issue. 11/30/18 Tr. at 14-15. The parties began the process of meeting and conferring on how to address continuing separation before the shutdown, and will report back after the next round of negotiations.

### B. Information Regarding Parents Separated from Children After June 26

In light of the reports of continued separations of families at the border Plaintiffs requested the government provide a list of parents separated from their children after June 26 (the date of the PI Order), along with the reasons why the family was separated. *See* Colleen Long, *Family separations at border down, but dozens still affected,* AP News, Dec. 6, 2018 available at https://bit.ly/2UEzQVd; Dec. 12, 2018 JSR at 17-18. This is the same information the government

provided to Plaintiffs as to class members who were separated as of June 26.  The information is necessary to ensure this Court's injunction is properly implemented and assist the reunification of families where it is not.  Plaintiffs requested this information by e-mail to government's counsel on Dec. 6, 2018, and have not yet received this list.

## C.   Steering Committee Progress

The Steering Committee has successfully contacted and confirmed the preferences of nearly all removed parents with respect to reunifications.   The government reported that, as of January 28, 55 children with removed parents remained in ORR custody.[9]  The Committee has delivered preferences for the parents of 51 of those children, and those children are awaiting either reunification with their parents or placement with sponsors in accordance with their parents' submitted preferences.  For the remaining four children, the parent of one is seeking to return to the United States under the Settlement Agreement and the other three are cases where the Steering Committee has advised the government that additional time will be required due to complex and individualized circumstances.

The status of efforts based on the government's January 28 list of 55 children in ORR custody with removed parents appears in the table immediately below.

| Removed parents identified by the government to the Steering Committee as of 1/28/19 | 55 |
|---|---|
| Steering Committee called phone number for parent (using a government-provided number or a number otherwise obtained by the Steering Committee) | 55 |
| • Parents successfully reached (by phone or through NGO efforts) | 53 |

---

[9] As discussed at the October 25 Status Conference, in this Joint Status Report Plaintiffs are reporting a set of detailed numbers based only on the government's most recent list of children in ORR custody with removed parents.

| | |
|---|---|
|    o   Cases where the parent was reached that the Steering Committee has indicated to the government should be set aside. | 2 |
|    o   Cases where the parent was reached and the parent seeks to return to the U.S. under the Settlement Agreement. | 1 |
| •  Parents not reached (by phone or through NGO efforts) | 2 |
|    o   Cases where removed parent not reached and the Steering Committee is relying on the preference of the second parent. | 1 |
|    o   Cases where parent not reached that the Steering Committee believes should be set aside. | 1 |
| Parent's final preference has been communicated to the government | 51[10] |
| •  Parent has elected reunification in Country of Origin | 0 |
| •  Parent has elected to waive reunification in Country of Origin | 51 |
| Total number of cases that the Steering Committee has indicated to the government should be set aside. | 3 |
| Total number of cases where the parent seeks to return to the U.S. under the Settlement Agreement and has thus not yet made an election. | 1 |

### 1. Information-Sharing Children Whose Parents Have Submitted Preferences Are Still Detained

The Steering Committee remains very concerned that more than 50 children remain in ORR custody and have not yet been placed with appropriate sponsors. At the November 30 Status Conference, the Court requested the government monitor the pace of release and provide the Steering Committee with information regarding the status of releases.

The government provided the Steering Committee with general information regarding the kinds of issues that delay placement with sponsors on December 11,

---

[10] As noted above, for one child, the Steering Committee has determined that, due to its inability to reach the removed parent, reporting the preference of the non-removed parent is appropriate.

but did not provide any information about particular cases or report on the number of children who had recently been placed with sponsors.  In light of the passage of time and the number of children who have not yet been placed with sponsors, the Steering Committee asks that the government provide more particularized information and identify any roadblocks to expeditious release.[11]

### 2. Identifying the Population of Removed Parents

At the November 30 Status Conference, the Court requested the parties to agree upon a baseline of the total number of parents who were removed following separation from their children, so as to provide the Court with a complete accounting of the reunification process.  The government has not yet provided their proposed baseline to the Steering Committee.

Moreover, since November 30, the government has disclosed that 149 additional separated children were in ORR custody on June 26, 2018.  Despite the Steering Committee's requests, the government has not reported whether any of these additional 149 children's parents were removed, nor provided identifying information for any such additional removed parents. The Steering Committee requires this information to ensure the needs of those families can be addressed.

### III.  *MMM* Plaintiffs' Report Regarding Settlement Implementation

The parties continue to work together to implement the settlement agreement approved on November 15, 2018. Counsel for Plaintiffs are providing the

---

[11]      Within the government's most recent list, the Steering Committee has submitted to the government 51 final reunification preferences indicating a waiver of reunification, all but one of which were submitted to the government by the Steering Committee 78 or more days ago as of Wednesday, February 6. Furthermore, of these 51 final preferences, 32 identify a specific sponsor in the United States for ORR purposes.  These 51 children remain in ORR custody.

18cv428 DMS MDD

government with signed waiver forms as they are received from class members (detained and released).  The parties are meeting and conferring on settlement implementation issues as they arise, and will alert the Court if the parties are unable to resolve any issues and require the Court's guidance.

18cv428 DMS MDD

DATED: February 6, 2019

Respectfully submitted,

/s/ Lee Gelernt

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO
& IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH H. HUNT
Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
sarah.b.fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*

18cv428 DMS MDD

Case 3:18-cv-00428-DMS-MDD   Document 343-1   Filed 02/07/19   PageID.5291   Page 19 of 22
Case 3:18-cv-00428-DMS-MDD   Document 343-1   Filed 02/06/19   PageID.5291   Page 19 of 22
ID #:2599

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L, et al., | Case No. 3:18-cv-428-DMS |
| Plaintiffs, | Honorable Dana M. Sabraw |
| vs. | |
| U.S. Immigration and Customs Enforcement, et al., | |
| Defendants. | |
| M.M.M., on behalf of his minor child, J.M.A., et al., | Case No. 3:18-cv-1832-DMS |
| Plaintiffs, | Honorable Dana M. Sabraw |
| vs. | **ORDER ON FURTHER CLARIFICATIONS TO SETTLEMENT AGREEMENT OF NOVEMBER 15, 2018** |
| Matthew G. Whitaker, Acting Attorney General of the United States,[1] et al., | |
| Defendants. | February 6, 2019 |

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court has substituted the current Acting Attorney General as the Defendant in this case.

The Court having considered objections filed by legal service providers for children who sought clarifications to the settlement agreement at the fairness hearing on November 15, 2018; and the Court having invited the parties and the objectors to meet and confer about such clarifications; and the parties and the objectors having met, conferred, and reached a common understanding of certain provisions of the settlement, the Court hereby approves the following further clarifications to the settlement agreement approved on November 15, 2018:

**Paragraph 1.a.**

The first sentence of Paragraph 1(a) of the settlement agreement states: "*Ms. L* class members and *M.M.M.* agreed class members who are not currently detained in DHS custody (and are not currently in HHS custody) and who have been issued Notices to Appear (NTAs) will not be removed by DHS prior to issuance of a final removal order in their resulting removal proceedings conducted under Section 240 of the Immigration and Nationality Act (INA)." This provision applies to the following hypothetical situations as clarified below:

Hypothetical #1: A parent and child are reunited in the community. The child was issued an NTA while in shelter. The parent was not issued an NTA because the parent was released for reunification before having a credible fear interview. Does the child remain in Section 240 proceedings?

Clarification #1: Yes.

Hypothetical #2: A parent and child are reunited in the community. The child was issued an NTA while in shelter. The parent was not issued an NTA because the parent received a negative credible fear determination and the parent has not yet had his or her negative determination reviewed pursuant to the settlement agreement. Does the child remain in Section 240 proceedings?

Case 3:18-cv-00428-DMS-MDD   Document 343-1   Filed 02/06/19   PageID.5299   Page 30 of 5

Clarification #2:  No.  The parent would have the negative credible fear determination reviewed pursuant to Paragraph 1(d) of the settlement agreement.  The child would be reprocessed for expedited removal so that the child can be interviewed with the parent and treated as the parent's dependent.  If credible fear is found for either the parent or the child, both would be placed in Section 240 proceedings.

Hypothetical #3:  A parent and child are reunited in the community.  The child was issued an NTA while in shelter.  The parent was not issued an NTA because the parent received a negative credible fear determination, but the parent's negative credible fear determination is pending review by an immigration judge.  Does the child remain in Section 240 proceedings?

Clarification #3:  If the parent's negative credible fear determination is pending review by an immigration judge then the parent does not yet have a final expedited removal order and Paragraph 1(d) of the settlement does not apply.  The child would remain in Section 240 proceedings while the parent's negative credible fear determination is pending review by an immigration judge. If the parent's negative credible fear determination is affirmed by the immigration judge following reunification, the child would remain in Section 240 proceedings unless the parent seeks further review pursuant to Paragraph 1(d) of the settlement.  If the parent does seek further review under the settlement, then Paragraph 1(d) would apply as described in hypothetical #2 above, including that the child would be reprocessed for expedited removal so that the child can be interviewed with the parent and treated as the parent's dependent.

Hypothetical #4:  A parent and child are reunited in the community.  The child was issued an NTA while in shelter.  The parent was issued an NTA after receiving a positive credible fear determination in the initial determination from USCIS or on

Case 2:18-cv-06081-JAK-SK   Document 103-1   Filed 02/07/19   Page 21 of 22   Page ID #:2602

review by an immigration judge.  Would both parent and child stay in 240 proceedings?

Clarification #4:  Yes.

**Paragraph 1.a., continued**

The last sentence of Paragraph 1.a. of the settlement agreement states: "*M.M.M.* agreed class members who have not been reunified with their parent(s) as of the effective date of this agreement will be afforded existing procedures for unaccompanied alien children pursuant to governing statutes and regulations, including but not limited to Section 240 removal proceedings, unless and until they are reunified with a parent, in which case the procedures described below will apply."

This sentence refers to a child's reunification with a parent or parents in the *Ms. L* class.  A child's reunification with a parent outside the *Ms. L* class does not trigger the application of the settlement.  Such a child remains in Section 240 proceedings if the child is already in such proceedings.

**Preamble and Paragraph 8**

Both the preamble and Paragraph 8 of the settlement agreement include language through which class members waive certain claims.  Paragraph 8 states the waiver as follows: "Class members may either pursue the relief described in this agreement or elect prompt removal, but may not pursue any other immigration- or asylum-related injunctive, declaratory, or equitable relief based on the allegations or claims made in any of the *Ms. L*, *M.M.M.*, or *Dora* complaints filed in any court accruing as of the date this plan is approved by the Court, including statutory claims."

Neither this provision nor the similar language in the preamble to the settlement limits in any way the defenses that a parent or child class member may assert in Section 240 proceedings.

It is so ordered.

Dated: February 6, 2019

                                        _____
Hon. Dana M. Sabraw
United States District Judge