Amy P. Lally (SBN 198555)
alally@sidley.com
Ellyce R. Cooper (SBN 204453)
ecooper@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: +1 310 595-9500
Facsimile: +1 310 595-9501

Mark Rosenbaum (SBN 59940)
mrosenbaum@publiccounsel.org
Judy London (SBN 149431)
jlondon@publiccounsel.org
Talia Inlender (SBN 253796)
tinlender@publiccounsel.org
Alisa Hartz (SBN 285141)
ahartz@publiccounsel.org
Lucero Chavez (SBN 273531)
lchavez@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Avenue
Los Angeles, CA 90005
Telephone: +1 213 385-2977
Facsimile: +1 213 385-9089

*Attorneys for Plaintiffs*
*Additional Counsel on next page*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| MS. J.P., MS. J.O., AND MS. R.M., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JEFFERSON B. SESSIONS III, ATTORNEY GENERAL OF THE UNITED STATES; KIRSTJEN NIELSEN, SECRETARY OF | Case No. 2:18-cv-06081-JAK-SK<br><br>Assigned to the Hon. John A. Kronstadt<br><br>**NOTICE OF SUPPLEMENTAL AUTHORITY** |

HOMELAND SECURITY; U.S.
DEPARTMENT OF HOMELAND
SECURITY, AND ITS SUBORDINATE
ENTITIES; U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; U.S.
CUSTOMS AND BORDER
PROTECTION; ALEX M. AZAR II,
SECRETARY OF HEALTH AND
HUMAN SERVICES; U.S.
DEPARTMENT OF HEALTH AND
HUMAN SERVICES; SCOTT LLOYD,
DIRECTOR OF THE OFFICE OF
REFUGEE RESETTLEMENT; OFFICE
OF REFUGEE RESETTLEMENT;
DAVID MARIN, LOS ANGELES FIELD
OFFICE DIRECTOR, U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT; LISA VON
NORDHEIM, WARDEN, JAMES A.
MUSICK FACILITY; MARC J. MOORE,
SEATTLE FIELD OFFICE DIRECTOR,
U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; LOWELL CLARK,
WARDEN, TACOMA NORTHWEST
DETENTION CENTER,

    Defendants.

Carter G. Phillips*
cphillips@sidley.com
Jennifer J. Clark*
jennifer.clark@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: +1 202 736-8000
Facsimile: +1 202 736-8711

Mark E. Haddad (SBN 205945)
markhadd@usc.edu
Part-time Lecturer in Law
USC Gould School of Law**
University of Southern California
699 Exposition Blvd.
Los Angeles, CA 90089
Telephone: +1 213 675-5957

**NOTICE OF SUPPLEMENTAL AUTHORITY**

Michael Andolina*
mandolina@sidley.com
Timothy Payne*
tpayne@sidley.com
Kevin Fee*
kfee@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: +1 312 853-7000
Facsimile: +1 312 853-7036

Sean A. Commons (SBN 217603)
scommons@sidley.com
Bridget S. Johnsen (SBN 210778)
bjohnsen@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896-6000
Facsimile: +1 213 896-6600

Luis Cortes Romero (SBN 310852)
lcortes@ia-lc.com
Alma L. David (SBN 257676)
adavid@ia-lc.com
IMMIGRANT ADVOCACY &
LITIGATION CENTER, PLLC
19309 68th Avenue South, Suite R-102
Kent, WA 98032
Telephone: +1 253 872-4730
Facsimile: +1 253 237-1591

*Admitted pro hac vice

** Institution listed for identification purposes only

**NOTICE OF SUPPLEMENTAL AUTHORITY**

PLEASE TAKE NOTICE that Plaintiffs hereby respectfully submit the document attached herein as Exhibit A as supplemental authority to their Motion for Preliminary Injunction (ECF No. 45), Motion for Class Certification (ECF No. 81) and Plaintiffs' portion of the Joint Statement filed on January 14, 2019 (ECF No. 177).  Exhibit A is a copy of the Order Granting Plaintiffs' Motion to Modify Class Definition ("Order") in the action captioned as *Ms. L., et al. v. U.S. Immigration and Customs Enforcement ("ICE"), et al.*, No. 18cv0428 DMS (MDD) (S.D. Cal. Mar. 8, 2018) (hereinafter "*Ms. L.*").

Recently, the Department of Health and Human Services Office of Inspector General ("OIG") issued a report ("OIG Report") regarding an investigation into the Administration's zero tolerance policy and its impact on vulnerable children and the operation of the Office of Refugee and Resettlement ("ORR").  The OIG Report, which Plaintiffs submitted as supplemental authority on January 18, 2019 (ECF No. 181), found that the Department of Justice and the Department of Homeland Security ("DHS") began separating migrant families as early as July 1, 2017—nearly a year before the zero tolerance policy was publicly announced—resulting in the separation of potentially "thousands" more families than previously known.  Because the preliminary injunction and reunification order in *Ms. L.* was limited by a class definition that included only parents who (1) had entered the United States at or between ports of entry, (2) were, had been, or would be detained in immigration custody by DHS, and (3) had a minor child who was separated from them and detained in ORR custody on June 26, 2018, the reunification efforts did not include parents whose children were released from ORR custody before that date.  The Order, in reliance on the OIG Report, grants Ms. L.'s motion to modify the class definition and modifies the previously certified class to include all parents who entered the United States on or after July 1, 2017.

Here, Defendants have repeatedly taken the position that the class sought in this case should be the same as the class certified in *Ms. L.*  While Plaintiffs disagree as to

1   certain subgroups who are excluded in the *Ms. L.* class, Plaintiffs do agree that the
2   class here should include the thousands of additional families identified by the OIG
3   Report.  The time period of Plaintiffs' proposed class is, as currently pleaded, at least
4   as broad as the time period now covered by the modified class definition in *Ms. L.*,
5   and thus continues to satisfy the requirements of Federal Rule of Civil Procedure 23.
6   *See* ECF No. 81.  Moreover, any argument of exclusion of these families from
7   Plaintiffs' proposed class has already been found insufficient on multiple grounds as
8   set forth in the Order.

9        Ultimately, this action involves a class of parents who were separated from their
10  children at the border by the U.S. Government and then systematically denied the
11  critically needed, family-centered mental health treatment.  Such treatment would
12  serve to alleviate the trauma inflicted by the Government pursuant to the zero
13  tolerance policy and reduce the risk of long-term consequences to both parent and
14  child.  The thousands of families torn apart, but previously not accounted for, most
15  certainly fall within this class.[1]

16

17   Dated:  March 11, 2019              */s/ Amy P. Lally*
18                                        Amy P. Lally
19                                        Attorneys for Plaintiffs
20
21
22
23
-------------------
24  [1] On March 6, 2019, the parties in Ms. L. filed a Joint Status report in anticipation of
25  an upcoming status conference.  *See Ms. L.*, ECF No. 382.  In this action, the
    Government filed the Government a report regarding the status of possible class
26  members, on March 7, 2019.  *See* ECF No. 201.  Notably, the Government fails to
27  account for—nor even mention—the thousands of additional families separated and
    seriously traumatized by the Government and now included as members of the *Ms. L.*
28  class.

**NOTICE OF SUPPLEMENTAL AUTHORITY**

## **CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 1999 Avenue of the Stars, 17th Floor, Los Angeles, California 90067.

On March 11, 2019, I served the foregoing document(s) described as **NOTICE OF SUPPLEMENTAL AUTHORITY** on all interested parties in this action by the method described below:

I electronically filed the foregoing with the Clerk of District Court using its CM/ECF system, which electronically provides notice.

I declare under penalty of perjury that the foregoing is true and correct.


  _/s/ Amy P. Lally_
  Amy P. Lally
  Attorneys for Plaintiffs

# Exhibit A

1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  Ms. L.; et al., | Case No.:  18cv0428 DMS (MDD) |
| 12                          Petitioners-Plaintiffs, | **ORDER GRANTING PLAINTIFFS'** |
| 13  v. | **MOTION TO MODIFY CLASS** |
| 14  U.S Immigration and Customs | **DEFINITION** |
| 15  Enforcement ("ICE"); et al., | |
| 16                          Respondents-Defendants. | |

17

18          Last spring, the Attorney General of the United States announced a controversial

19  "zero tolerance" policy for all persons crossing the border illegally.  Under the policy,

20  parents and children who crossed the border illegally were separated, and the children were

21  placed in the custody of the Department of Health and Human Services ("HHS"), Office

22  of Refugee and Resettlement ("ORR").  Several weeks before the Attorney General's

23  announcement of the zero tolerance policy, Plaintiffs filed the present case alleging they,

24  and a class of similarly situated individuals, had been forcibly separated from their children

25  by government officials at the border.  Plaintiffs alleged these separations were the result

26  of a nationwide policy that had been implemented well before the announcement of the

27  zero tolerance policy and that the policy had resulted in the indiscriminate separation of

28  migrant families both at and between designated ports of entry.  Plaintiffs challenged this

1

1   family separation policy as a violation of their substantive due process rights to family

2   integrity under the Fifth Amendment to the United States Constitution.

3       On June 26, 2018, this Court granted Plaintiffs' motions for class certification and

4   for a preliminary injunction, and ordered reunification of the children in ORR custody with

5   their parents within 30 days. (*See* ECF Nos. 82, 83.) Pursuant to the Court's Orders, 2,816

6   children were identified as having been separated from their parents at the border, and

7   nearly all of them have now been reunified with their parents or otherwise discharged in

8   accordance with their parents' wishes.

9       Recently, the HHS Office of Inspector General ("OIG") conducted an internal

10   investigation into the Administration's zero tolerance policy given "the potential impact of

11   [the policy] on vulnerable children and ORR operations[,]" and "to determine the number

12   and status of separated children who have entered ORR care" as a result of the policy.  On

13   January 17, 2019, the OIG issued a Report on its investigation entitled, "Separated Children

14   Placed in Office of Refugee Resettlement Care."  That Report reveals the Department of

15   Justice ("DOJ") and the Department of Homeland Security ("DHS") began separating

16   migrant families as early as July 1, 2017, well before the zero tolerance policy was publicly

17   announced in May of 2018, and that pursuant to the policy, potentially "thousands" more

18   families had been separated.

19       In granting class certification, this Court generally defined the class to include

20   parents who had entered the United States at or between ports of entry, who were, had been

21   or would be detained in immigration custody by DHS, and had a minor child who was

22   separated from them and detained in ORR custody at or after that time.  Specifically, the

23   class was defined as follows:

24       All adult parents who enter the United States at or between designated ports
    of entry who (1) have been, are, or will be detained in immigration custody
25
    by the DHS, and (2) have a minor child who is or will be separated from them
26       by DHS and detained in ORR custody, ORR foster care, or DHS custody,
    absent a determination that the parent is unfit or presents a danger to the child.
27

28   / / /

1    (ECF No. 82 at 17.)  In implementing the Court's preliminary injunction and reunification

2    order, Defendants limited this class to parents whose children were "detained in ORR

3    custody, ORR foster care, or DHS custody" on the date the preliminary injunction was

4    issued, June 26, 2018.  Defendants did not include in the class those parents whose children

5    were released from ORR custody *before* June 26, 2018.  As a result, those parents—the

6    potentially "thousands" identified by OIG—were not reunified with their children pursuant

7    to the Court's preliminary injunction.  Plaintiffs now move to clarify that the class certified

8    in the Court's Order includes those parents, or in the alternative, to modify the class

9    definition to include those parents.  After reviewing the parties' briefs and relevant legal

10   authority, and hearing argument from counsel, the Court grants Plaintiffs' motion to

11   modify the class definition.

12       Defendants oppose the motion on several grounds.  They contend that expanding the

13   class to include these parents would run afoul of the adequacy, typicality and commonality

14   requirements of Federal Rule of Civil Procedure 23(a), and present ascertainability

15   problems.  Defendants argue parents whose children were released from government

16   custody before June 26, 2018, are in a different legal position from parents whose children

17   were in government custody on or after that date.  They also argue Plaintiffs delayed raising

18   this issue, and that it would be unfair to Defendants to expand the class after they have

19   reunified so many class members with their children.

20       There is no dispute "courts retain discretion to revisit class certification throughout

21   the legal proceedings, and may rescind, modify, or amend the class definition in light of

22   subsequent developments in the litigation." *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 473-

23   74 (S.D. Cal. 2015).  This authority is found in Federal Rule of Civil Procedure 23(c)(1)(C),

24   which states, "[a]n order that grants or denies class certification may be altered or amended

25   before final judgment[,]" and in Supreme Court case law. *See Gen. Tel. Co. v. Falcon*, 457

26   U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to

27   modify it in the light of subsequent developments in the litigation.")  "'In considering the

28   appropriateness of [modification or] decertification, the standard of review is the same as

3

1   a motion for class certification: whether the Rule 23 requirements are met.'" *Roy v. County*

2   *of Los Angeles*, No. CV 13-04416-AB (FFMx), 2018 WL 3435417, at *2 (C.D. Cal. July

3   11, 2018) (quoting *Marlo v. United Parcel Serv.*, Inc., 251 F.R.D. 476, 479 (C.D. Cal.

4   2008)). *See also Lyon v. U.S. Immigration & Customs Enforcement*, 308 F.R.D. 203, 210-

5   11 (N.D. Cal. 2015); *Astiana v. Kashi Co.*, 295 F.R.D. 490, 492 (S.D. Cal. 2013) (same).

6        Here, Plaintiffs first notified the Court of their concerns with the class definition in

7   the November 29, 2018 Joint Status Report ("JSR"). (*See* ECF No. 329.) In that document,

8   Plaintiffs' counsel stated that on November 16, 2018, they "learned of a separated parent

9   who feared imminent removal because her child was released from ORR custody before

10   June 26, 2018." (*Id.* at 18.) Plaintiffs' counsel stated during the subsequent status

11   conference that they had learned of "a handful" of such cases. (ECF No. 332 at 16.)

12   Counsel informed the Court they had met and conferred on this issue, and "agreed that

13   removals of individuals in this category be stayed pending the Court's resolution." (ECF

14   No. 329 at 18.) Defense counsel requested that the issue be resolved by way of a formal

15   noticed motion, to which the Court agreed.

16        Thereafter, Plaintiffs filed the present motion based on the information they had at

17   that time. Before Defendants filed their response, the case was stayed because of the

18   government shutdown. During the stay, OIG issued its Report. As noted above, the

19   purpose of the OIG investigation was to determine the number and status of separated

20   children "who have entered ORR care, including but not limited to the subset of separated

21   children covered by [the present case,] *Ms. L. v. ICE*." (Report at 1.) OIG found the

22   following:

23        In the summer of 2017, prior to the formal announcement of the zero-tolerance
          policy, ORR staff and officials observed a steep increase in the number of
24        children who had been separated from a parent or guardian by DHS
          ("separated children") and subsequently referred to ORR for care.[ ] Officials
25        estimated that ORR received and released thousands of separated children
          prior to a June 26, 2018, court order in *Ms. L v. ICE* that required ORR to
26        identify and reunify certain separated children in its care as of that date.
27

28

4

1   (*Id.*)  Although the Administration's zero tolerance policy was publicly announced in May

2   2018, the OIG Report states, "From July through November 2017, the El Paso sector of

3   Customs and Border Protection (CBP), an agency within DHS, implemented new policies

4   that resulted in 281 families being separated."  (*Id.* at 3.)  During this same period, July

5   through November 2017, ORR staff "observed a significant increase in the number and

6   proportion of separated children (i.e., children separated from their parent or legal guardian

7   by DHS) relative to other UACs [unaccompanied alien children]."  (*Id.*)  "Overall, ORR

8   and ASPR [the Office of the Assistant Secretary for Preparedness and Response] officials

9   estimate that thousands of separated children entered ORR care and were released prior to

10  the June 26, 2018 court order."  (*Id.*)

11         Clearly, the OIG Report is a significant development in this case.  And, importantly,

12  the contents of the Report are undisputed.  The most significant facts to come out of the

13  Report are (1) that in the summer of 2017, DOJ and DHS were separating parents and

14  children at the border pursuant to the Administration's new policy, and (2) during and after

15  that time, potentially thousands of children who had been separated from a parent were

16  received by ORR and subsequently discharged from ORR custody to designated sponsors

17  pursuant to the Trafficking Victims Protection and Reauthorization Act ("TVPRA"), Pub.

18  Law No. 110-457 (Dec. 13, 2008), prior to the Court's June 26, 2018 Orders.

19         Defendants suggest this information is not a new development, but rather something

20  the parties knew about, or should have known about, when the Court issued its Orders.

21  However, that suggestion stands in stark contrast to Defendants' representations in this

22  case in as late as May of 2018 that the government did not have either a policy or practice

23  of separating families at the border.  (*See* ECF No. 61 at 10 (stating Plaintiffs failed to point

24  to an "actual Government policy or practice regarding separation" but were instead

25  "challenging a number of different immigration and criminal enforcement actions by

26  multiple agencies which, when taken with regard to the named Plaintiffs, resulted in the

27  separation of each named Plaintiff from her child."); *see also* ECF No. 70 at 5 (disputing

28  / / /

1    that there was a policy or practice of family separation).)[1]  In light of those representations,

2    it is unreasonable to suggest that Plaintiffs should have known that potentially thousands

3    of parents and children had been separated at the border prior to the Court's June 26, 2018

4    Orders.[2]   Given the subsequent, undisputed developments set out in the OIG Report,

5    modification of the class is warranted if the class, as modified, meets the requirements of

6    Federal Rule of Civil Procedure 23.

7         As set out in the Court's previous order on class certification, Rule 23(a) sets out the

8    requirements of numerosity, commonality, typicality and adequacy of representation.

9    Numerosity is not disputed as there are thousands of members in the class as currently

10   certified, so the Court turns first to commonality.   In the previous order on class

11   certification, the Court found the commonality requirement was met given the evidence of

12   a "common practice" of "separating migrant parents and children and failing to reunite

13   them without a showing the parent is unfit or presents a danger to the child." (ECF No. 82

14   at 12.) The Court went on to state: "Whether that practice violates substantive due process

15   is a question common to the class, and the answer to that question is 'apt to drive the

16   resolution of the litigation.'" (*Id.*) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

17   350 (2011)).  That finding applies equally to the proposed modified class.

18        There is no dispute the parents who have been excluded from the class were also

19   subjected to this "common practice."  Like the current members of the class, they, too,

20   were separated from their children by DOJ and DHS, their children were placed in ORR

21

22

---

23   [1] The Court notes the latter representation was made only a few days before the Attorney
24   General publicly announced the zero tolerance policy under which children were to be
     separated from their parents if they entered the country illegally.
25   [2] Undoubtedly, Plaintiffs would have discovered the total number of separated children in
     ORR custody through normal discovery channels in this litigation.  However, the parties
26   did not engage in discovery at the outset of the litigation.  Instead, they properly focused
27   their intense efforts on implementing the Court's preliminary injunction, which required
     reunification of children with their parents within 14 days (for children under age 5) and
28   30 days (for children over 5).

1  custody, and they were not reunified with their children despite the absence of any finding

2  they were unfit parents or presented a danger to their children. These parents, like those

3  presently in the class, present the identical question, namely did that practice violate the

4  parents' rights to substantive due process, and the answer to that question applies to all

5  these parents, not just those whose children were in ORR custody on June 26, 2018.

6       Defendants argue this new group of parents presents a different legal and factual

7  situation from the current class members because the children of this new group are no

8  longer in ORR custody, and thus, reunification of these parents and their children may be

9  impossible or ill-advised. However, this argument goes to the issue of remedy, not liability,

10  and Ninth Circuit case law makes clear that a difference in remedies does not necessarily

11  defeat a showing of commonality. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th

12  Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is

13  sufficient, as is a common core of salient facts coupled with disparate legal remedies within

14  the class."); *see also Parra v. Bashas', Inc.*, 536 F.3d 975, 979 (9th Cir. 2008) (rejecting

15  argument that "redressing the harm and calculating the various pay disparities for the

16  different employment positions precludes class certification."). Further, reunification is

17  not the only remedy available here. Other remedies may be appropriate, and they would

18  apply to all class members. For instance, as OIG has suggested, an accounting is a

19  necessary first step to determine the "number and status" of separated children who were

20  in ORR custody at any time.[3] And, finally, Defendants' argument ignores Plaintiffs'

21  request for declaratory relief, namely a declaration that the separation of class members

22  from their children was and is unlawful. (Am. Compl. at 14.) This remedy would be

23  / / /

24  / / /

25  / / /

26

27

28

_____

[3] That accounting necessarily would provide important information about the number and status of the proposed modified parent class members.

7

1    available to all class members regardless of the custodial status of their children.[4]   Thus,

2    the newly proposed class satisfies the commonality requirement.[5]

3         Next, Defendants argue the proposed modification to the class definition does not

4    satisfy the adequacy requirement.  Specifically, they assert "Plaintiffs' proposed expansion

5    of the class would … create an adequacy problem, because no named class member at the

6    time class certification was being briefed was in the situation where her child had been

7    released from ORR custody to a sponsor." (Defs.' Opp'n to Mot. at 2; *see also id.* at 16

8    (arguing "the named plaintiffs … cannot be adequate class representatives for the expanded

9    class … because neither of their children were released to other sponsors, and both of them

10   sought reunification with their child directly from ORR.")) However, it is unclear how the

11   location of the separated children would render the class representatives inadequate.

12   Defendants do not assert the location of the separated children creates a conflict between

13   the named Plaintiffs and their counsel and the newly proposed class members.  Nor do they

14   assert that the named Plaintiffs would not vigorously prosecute the action on behalf of these

15   newly proposed class members.   Indeed, the named Plaintiffs and their counsel have

16   vigorously prosecuted this action on behalf of parents who were removed from the United

17   States even though they themselves were not removed.   There is simply no evidence or

18   reason to believe that the named Plaintiffs or their counsel would not vigorously prosecute

19   this action on behalf of parents who were subjected to the same government policy but

20

21   _____

22   [4]  Plaintiffs' request for declaratory relief also satisfies the requirement of Rule 23(b)(2),
23   which states class certification is appropriate if "the party opposing the class has acted or
     refused to act on grounds that apply generally to the class, so that final injunctive *or*
24   *declaratory relief* is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2)
25   (emphasis added).
     [5]  As with the motion for class certification, the parties' arguments on typicality mirror their
26   arguments on commonality.  Given the overlap of these issues in this case, the reasoning
27   set out above and in the class certification order, (ECF No. 82 at 13-14), leads the Court to
     conclude the typicality requirement is satisfied.
28

1    whose children were released from ORR custody prior to June 26, 2018. On the contrary,

2    Plaintiffs' counsel represented to the Court that they stand ready to put together another

3    steering committee to assist any newly identified class members in the event this motion is

4    granted. (ECF No. 364 at 34.) Under these circumstances, the newly proposed class

5    satisfies the adequacy requirement.

6         In addition to these Rule 23 factors, Defendants raise several other arguments against

7    modifying the class definition. First, although Defendants recognize that ascertainability

8    is not a requirement for class certification, they argue the proposed modification to the

9    class definition "would make it nearly impossible to ascertain the class with any level of

10   certainty." (Defs.' Opp'n to Mot. at 5.) In essence, they assert it would be too burdensome

11   for them to identify the members of the newly proposed class, therefore the class should

12   not be modified.

13        As an initial matter, the Court notes this is not a valid argument against either class

14   certification or modification of a previously certified class. *See Briseno v. ConAgra Foods,*

15   *Inc.*, 844 F.3d 1121, 1125-26 (9th Cir.) (rejecting assertion that, in addition to satisfying the

16   requirements of Rule 23, "class proponents must also demonstrate that there is an

17   administratively feasible way to determine who is in the class."), *cert. denied by ConAgra*

18   *Brands, Inc. v. Briseno,* ___ U.S. ___, 138 S.Ct. 313 (2017). This is especially so here,

19   where the difficulty in identifying proposed class members is the result of Defendants' own

20   record keeping practices, or lack thereof. *See Agne v. Papa John's Int'l, Inc.*, 286 F.R.D.

21   559, 566 n.6 (W.D. Wash. 2012) (stating "it would be unfair to deny class certification

22   because of the potential difficulty of identifying the class members where that difficulty is

23   mostly due to the fact that [Defendant] destroyed the call lists that it used."); *Raffin v.*

24   *Medicredit, Inc.*, No. 15-4912-GHK (PJWx), 2017 WL 131745, at *6 n.5 (C.D. Cal. Jan.

25   3, 2017) (stating "courts generally do not bar class certification where the defendant's own

26   destruction of records causes difficulty in identifying class members.") The argument

27   holds even less weight here because Plaintiffs are not seeking class certification under Rule

28   23(b)(3), which calls for consideration of the difficulties in identifying class members as

9

1  part of the "superiority" requirement.  *See Pierce v. County of Orange*, 526 F.3d 1190,

2  1200 (9th Cir. 2008) (finding no abuse of discretion in denying certification of Rule 23(b)(3)

3  class "in light of expected difficulties identifying class members and determining

4  appropriate damages.")  Rather, the class in this case is certified under Rule 23(b)(2), which

5  does not have a similar requirement.

6      Furthermore, although the process for identifying newly proposed class members

7  may be burdensome, it clearly can be done.  Indeed, Jallyn Sualog, who is leading ORR's

8  efforts to reunify separated parents and children, has set out the process of identifying these

9  newly proposed class members.  (*See* Decl. of Jallyn Sualog in Supp. of Defs.' Opp'n to

10  Mot. ¶¶ 13-20.)  Thus, Defendants' argument of burden does not warrant denial of the

11  present motion.

12      Defendants also suggest it would be more appropriate for the newly proposed class

13  members to bring individual cases rather than include them in this case. (ECF No. 364 at

14  52.)  Like the issue of burden, this argument also goes to the issue of superiority under

15  Rule 23(b)(3).  *See* Fed. R. Civ. P. 23(b)(3)(A) (listing as factor for consideration "the class

16  members' interests in individually controlling the prosecution or defense of separate

17  actions[.]")  Even if this argument applied here, it would weigh in favor of granting the

18  motion, not denying it.  As the Ninth Circuit stated in *Smith v. Los Angeles Unified School*

19  *Dist.*, 830 F.3d 843 (9th Cir. 2016), "[c]ourts have long recognized the benefits conferred

20  by the class action mechanism over numerous individual actions[,]" (*id.* at 863),

21  particularly in civil rights actions where a government practice or policy is at issue.

22  *Parsons v. Ryan*, 754 F.3d 657, 686-87 (9th Cir. 2014) (stating primary purpose of Rule

23  23(b)(2) "has always been the certification of civil rights class actions.")  In fact, near the

24  beginning of this case when separate lawsuits were being filed across the country,

25  Defendants advocated for consolidation and avoidance of separate actions in multiple fora.

26  *See, e.g., State of Wash. v. United States*, Case No. 18cv1979 DMS (MDD), ECF No. 22

27  (Defendants' motion to dismiss, or in the alternative, to transfer venue to this Court);

28  / / /

1   *M.M.M. v. Sessions*, Case No. 18cv1832 DMS (MDD), ECF No. 21 at 21 (reflecting

2   Defendants' request to transfer case to this Court).

3          Now that Defendants have complied with this Court's preliminary injunction, it

4   appears they want to reverse course and have these newly identified parents file individual

5   cases throughout the country.   However, forcing individual parents to bring separate

6   lawsuits challenging separation from their children makes little sense when precisely that

7   same legal claim has already been certified for class treatment in this case.  It also ignores

8   the harsh reality of this case, namely that 471 parents in the presently defined class were

9   removed from this country without their children. (ECF No. 382 at 6.)  Unless members

10  of the newly proposed class are identified, it will remain unknown how many of them, if

11  any, were also removed without their children, though it is probable that many will have

12  suffered the same fate as the 471 parents mentioned above.   The ability of any such

13  removed parents to pursue individual claims in this country would be virtually impossible.

14         Defendants also argue the Court should not modify the class definition because this

15  is not the proper forum in which to account for the parents who were separated from their

16  children at the border by DOJ and DHS, and whose children were released from ORR

17  custody prior to June 26, 2018.  (ECF No. 364 at 54.)  Specifically, at the hearing on this

18  matter, defense counsel argued: "Litigation doesn't necessarily exist to resolve every issue

19  ...." (*Id.*)  Instead, counsel noted, other branches of government can get to the bottom of

20  the issue. (*Id.* ("The executive branch itself with OIG Reports ... is a possibility."))

21         The other branches, of course, are free to investigate these issues, and they are doing

22  so.  In addition to OIG, Congress has been holding hearings on these issues and issuing

23  subpoenas to the Defendants in this case.  *See,* Colleen Long, *House Targets Family*

24  *Separations   in   First   Trump   Subpoena*,   AP   News   (Feb.   26,   2019),

25  https://www.apnews.com/0b012aaaa6454a10a585eb4a848c8541;  Colleen  Long et al.,

26  *Kirstjen Nielsen testifies on border security, future of border wall*, PBS News (Mar. 6,

27  2019,  5:17  PM  EST),  https://www.pbs.org/newshour/politics/watch-live-homeland-

28  security-secretary-kirstjen-nielsen-testifies-before-house-committee.   Clearly, the matter

1    of determining the "number and status of separated children" who have entered ORR care

2    at any point in time because of the Administration's family separation policy is not going

3    away. Every branch of government is now invested in the process. But that does not mean

4    the Court should abdicate its role in this matter. The quintessential duty of the courts is to

5    determine controversies involving matters of constitutional significance; to ensure that the

6    actions of government officials do not violate fundamental constitutional rights, and if they

7    do, to address them. *See Marbury v. Madison*, 5 U.S. 137, 178 (1803) (stating the

8    resolution of constitutional questions "is the very essence of judicial duty."); *The Federalist*

9    *No. 78* (Alexander Hamilton) (stating it is the "duty" of the courts "to declare all acts

10   contrary to the manifest tenor of the Constitution void. Without this, all the reservations

11   of particular rights or privileges would amount to nothing.")

12        This Court has before it a case involving a class of parents who were separated from

13   their children at the border by DOJ and DHS pursuant to government policy. The present

14   motion asks the Court to modify the class definition to include all parents who were

15   subjected to that policy, not just those whose children were in ORR custody on June 26,

16   2018. That question clearly falls within the scope of this case, and the Court has an

17   obligation to resolve that question and to provide relief to these parents, if appropriate

18   under law. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("It is the role of courts to provide

19   relief to claimants, in individual or class actions, who have suffered, or will imminently

20   suffer, actual harm[.]").

21        Defendants' final argument is essentially one of equity. Specifically, they argue they

22   have been operating under the assumption that the class was limited to parents whose

23   children were in ORR custody on June 26, 2018, and it would be unfair to them to now

24   enlarge the class and force them to identify and reunify these other parents and their

25   children. This argument overlooks the profound importance of the reunification effort,

26   which entailed a search for parents who had been separated from their minor children under

27   questionable circumstances; it ensured every reasonable effort was employed to avoid the

28   very real possibility of a permanently orphaned child due to the actions of one or more

1    government officials.  Whether it is fair to Defendants to require them to identify and

2    possibly reunite another group of parents and children who were separated pursuant to the

3    same government policy is not relevant to the purely legal issue presently before this Court,

4    *i.e.*, whether the class definition in this case should be modified.  The factors relevant to

5    that inquiry have been discussed above, and they warrant modification of the class

6    definition here.

7          The hallmark of a civilized society is measured by how it treats its people and those

8    within its borders.  That Defendants may have to change course and undertake additional

9    effort to address these issues does not render modification of the class definition unfair; it

10   only serves to underscore the unquestionable importance of the effort and why it is

11   necessary (and worthwhile).

12         In sum, that Plaintiffs were alerted to the existence of a handful of parents within

13   this group, and that subsequent investigation by the OIG confirmed that there was not just

14   a handful but potentially thousands of parents in this group, does not render modification

15   of the class definition unfair.  Rather, modification of the class definition falls squarely

16   within the confines of Supreme Court precedent and Rule 23(c)(1)(C), which give courts

17   broad discretion to alter or amend a class definition considering subsequent developments

18   in a case.  *See Armstrong v. Davis*, 275 F.3d 849, n.28 (9th Cir. 2001) (stating district courts

19   have "broad discretion" to revisit class certification "throughout the legal proceedings

20   before the Court."), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499,

21   504-05 (2005).

22         Subsequent developments have occurred here, and the modified class, like the

23   original class, satisfies the requirements of Rule 23.  Accordingly, Plaintiffs' motion to

24   modify the class definition is granted.  The previously certified class is modified as follows:

25         All adult parents who entered the United States at or between designated ports
           of entry on or after July 1, 2017, who (1) have been, are, or will be detained
26         in immigration custody by the DHS, and (2) have a minor child who has been,
27         is or will be separated from them by DHS and has been, is or will be detained

28

1    in ORR custody, ORR foster care, or DHS custody, absent a determination
2    that the parent is unfit or presents a danger to the child.[6]

3        Although the parties addressed the issue of the relief to be afforded to the newly
4    included class members both in their briefs and at oral argument, the Court declines to
5    resolve that issue in the present order.  Rather, pursuant to Defendants' request, the Court
6    stays application of its preliminary injunction to the newly included class members pending
7    further briefing from the parties as to what specific relief Plaintiffs request and are entitled
8    to at this stage of the case.  The parties should be prepared to address these issues in the
9    next JSR.

10       **IT IS SO ORDERED**.

11   Dated:  March 8, 2019

                                          Hon. Dana M. Sabraw
                                          United States District Judge

---

27   [6] The class as modified is subject to the same qualifications as the originally certified class
28   with respect to, for example, criminal history and communicable disease.  (ECF No. 82 at
     10-11, 17 n. 10.)

18cv0428 DMS (MDD)