UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

| Proceedings: | (IN CHAMBERS) ORDER RE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (DKT. 81); |
| | PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DKT. 45); |
| | DEFENDANTS' MOTION TO DISMISS (DKT. 132) |

I.    <u>Introduction</u>

The claims in this action arise out of the "family separation policy" adopted by certain agencies and officials of the United States Government. The policy has been applied when foreign parents and their children arrive at the United States border seeking asylum. These parents and children have been separated and placed in different detention facilities while asylum issues are addressed. Three of these foreign parents -- J.P. ("Ms. P"), J.O. ("Ms. O"), and R.M. ("Ms. M") (collectively, "Plaintiffs") -- filed this putative class action on July 12, 2018, naming several federal officials and entities as defendants ("Defendants"). Compl., Dkt. 1. The Complaint advances claims under the equal protection and due process clauses of the Fifth Amendment of the Constitution, and seeks injunctive and declaratory relief on behalf of the putative class. *Id.* ¶¶ 172-185, Prayer for Relief.

On July 18, 2018, Plaintiffs filed a Motion for a Preliminary Injunction. It seeks interim relief in the form of mental health screenings and trauma-informed mental health treatment for members of the putative class and their children. Dkt. 45 ("Injunction Motion"). The claimed purpose for such screenings is to assess the effect on members of the putative class of the forced separation of family members, and to determine appropriate, remedial treatment for them. On July 27, 2018, Plaintiffs filed a Motion for Class Certification (Dkt. 81) ("Certification Motion") (collectively, with the Injunction Motion, the "Plaintiffs' Motions"). On August 13, 2018, Defendants filed a separate opposition to each of Plaintiffs' Motions. *See* Dkt. 109 ("Injunction Opposition"); 110 ("Certification Opposition"). Plaintiffs filed replies in support of each of them. *See* Dkt. 119 ("Injunction Reply"); Dkt. 120 ("Certification Reply").[1]

A hearing on the Plaintiffs' Motions was held on September 20, 2018. Dkt. 137. The parties submitted certain supplemental information as directed by the Court. *See, e.g.*, Dkts. 141, 162, 163, 166, 168,

---

[1] After receiving leave to do so, the Alliance for Children's Rights ("Amicus" or the "Alliance") filed an *amicus curiae* brief in support of the Injunction Motion. Dkt. 123 ("Amicus Brief").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

209, 244.

On September 18, 2018, Defendants filed a Motion to Dismiss. Dkt. 132. That motion was not addressed at the September 20 hearing, but was heard on January 7, 2019. Dkt. 175.

Defendants also filed an *ex parte* Application to advance the hearing date for the Motion to Dismiss (Dkt. 133) ("Application"), a ruling on which was deferred. *See* Dkts. 146, 147. The briefing on the Motion to Dismiss was then completed, *see* Dkts. 148 ("Opposition"), 165 ("Reply"), and it was heard as scheduled. Following the January 7, 2019, hearing, the Application was deemed moot. Dkt. 175. The other matters were taken under submission.

On January 30, 2019, the matter was referred to Judge Otero for settlement discussions. Dkt. 187. As a result, decisions on the pending motions were deferred. After several months of negotiations, the matter was not resolved. Accordingly, on October 17, 2019, the matter was returned to the active docket. Dkt. 233. On October 22, 2019, Plaintiffs filed a Request for Ruling on Motions Under Consideration. Dkt. 235 ("Request").[2]

For the reasons stated in this Order, the Certification Motion and Injunction Motion are **GRANTED IN PART**, and the Motion to Dismiss is **DENIED**.

## II.   Background

### A.   The Parties and the Proposed Class

#### 1.   In General

The Complaint alleges that each of the Plaintiffs is a parent who has been detained by the United States[3] and separated from her minor children. *See* Compl. ¶ 4. It also alleges that each of the children has been detained under the family separation policy. *Id.* It is alleged that each Plaintiff entered the United States with her minor child, while fleeing from her native country due to fear of serious harm or death, and seeking asylum under United States law. *Id.* The Complaint alleges that Plaintiffs have not received any mental health services from the Government since they were separated from their children. *See id.* ¶¶ 23, 32, 43.

#### 2.   Ms. P

Ms. P is Guatemalan. *Id.* ¶ 16; Declaration of J.P. ("J.P. Decl."), Dkt. 1-3 ¶ 2. She entered the United States on May 17, 2018 with her 16-year-old daughter, L.P., and allegedly did so because she feared both would be killed if they remained in Guatemala. Compl. ¶¶ 16-17. Shortly after crossing the United States border, Ms. P and L.P. were allegedly detained by U.S. Customs and Border Protection ("CBP") based on a suspicion that they had entered the country illegally in violation of 8 U.S.C. § 1225(a)(1).

---

[2] Because this Order addresses the Certification Motion, the Injunction Motion, and the Motion to Dismiss, the Request is **GRANTED** as to these matters.
[3] In this Order, the United States is also referred to as the "Government."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

*See id.* ¶ 17.

The Complaint alleges that, at the time it was filed, Ms. P was being detained in the custody of U.S. Immigration and Customs Enforcement ("ICE") at the James A. Musick Facility in Irvine, California. *Id.* ¶ 16; *see also* Expert Declaration of Alejandra Acuña ("Acuña Decl.), Dkt. 85 ¶ 5. L.P. was separately detained at Casa Phoenix, which is operated by Southwest Key Programs, Inc. in Phoenix, Arizona. Compl. ¶ 16; *see also* Declaration of Lucero Chavez ("Chavez Decl."), Dkt. 82 ¶¶ 3-4. Ms. P declares that she was provided with no information about the location of her daughter for weeks after the two were separated. J.P. Decl., Dkt. 1-3 ¶ 2.

3.  Ms. O

Ms. O is Honduran. Compl. ¶ 4. In 2015, drug-affiliated gangs allegedly murdered her husband and severely beat her then teenaged son. *See* Declaration of J.O. ("J.O. Decl."), Dkt. 1-8 ¶ 3.[4] She entered the United States on May 17, 2018, with her 16-year-old daughter, T.O., and allegedly did so because she feared both would be killed if they remained in Honduras. Compl. ¶ 24.

After being processed by U.S. immigration officials, on May 21, 2018, J.O. was separated from T.O. and transferred to a federal prison in Washington. *Id.* ¶ 30. On July 12, 2018, J.O. was released from custody. *Id.* Between her transfer to Washington on May 21, 2018, and the date the Complaint was filed, Ms. O did not see her daughter. *Id.* ¶ 31. On May 30, 2018, Ms. O allegedly learned that her daughter was being detained at Casa Antigua, a facility in San Benito, Texas operated by Southwest Key Programs. *Id.*; *see also* J.O. Decl., Dkt. 1-8 ¶ 20.

4.  Ms. M

Ms. M is El Salvadoran. Compl. ¶ 33. It is alleged that she fled El Salvador with her 15-year-old daughter, S.Q., to escape from her husband, a former military officer who had beaten her and threatened to kill her. *Id.*; *see also* Declaration of R.M. ("R.M. Decl."), Dkt. 1-10 ¶ 3. On May 18, 2018, Ms. M and S.Q. entered the United States seeking asylum. *See* R.M. Decl., Dkt. 1-10 ¶ 5; Compl. ¶ 33.

It is alleged that on May 21, 2018, Ms. M was transferred, without her daughter, to a facility in Laredo, Texas. *See* Compl. ¶ 40. She was then transferred to a federal prison in Washington, and on July 12, 2018, she was released on bond. *Id.* ¶ 41. It is alleged that on May 25, 2018, she first learned that S.Q. was being detained at Casa Antigua in Texas. *See* R.M. Decl., Dkt. 1-10 ¶ 17; Compl. ¶ 40. On June 22, 2018, Ms. M was allegedly able to speak briefly by telephone with S.Q. for the first time since they were separated. R.M. Decl., Dkt. 1-10 ¶ 19.

5.  The Proposed Class

Plaintiffs seek certification of the following class:

All adult parents nationwide who (1) were, are, or will be detained in immigration custody

---

[4] Some declarations cited in this Order were presented in Spanish. English translations of them were also submitted together with certifications as to their accuracy. *See, e.g.*, Dkt. 1-8 at 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

by the Department of Homeland Security ("DHS"), and (2) have a minor child who has been, is, or will be separated from them by DHS and detained in DHS and Office of Refugee Resettlement ("ORR") custody or foster care, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child.

*See* Dkt. 81 at 4.

a) Plaintiffs' Current Status

Defendants have submitted evidence showing that all three Plaintiffs and their respective children were reunited on or about July 16 or July 17, 2018. *See* Declaration of James De La Cruz ("De La Cruz Decl."), Dkt. 110-1 ¶ 9. Plaintiffs do not dispute that each has been released from custody and reunited with her child. *See* Dkt. 80 at 5.

b) The Status of Putative Class Members

At the September 20, 2018 hearing, counsel for the Government stated that most of the putative class members had been released from custody. Dkt. 137. Pursuant to orders from the Court, the parties then submitted supplemental information about the custodial status of putative class members who have not been released. The most recent report, which the parties filed on October 31, 2019, addresses the status of the putative class members. Dkt. 244. The report states that of 4007 total separations, "108 possible putative class members (separated parents) are in ICE custody." *Id.* at 2-3.[5]

The parties agree that putative class members who have been released from custody have been ordered to comply with certain conditions. These conditions vary among putative class members, and include orders about the monitoring of these persons, their posting of bonds to ensure appearance as ordered and certain reporting requirements about their compliance with other conditions of supervision. Tracking devices have been placed on some of them who are prohibited from leaving a specified geographic area without prior approval. In general, the stated purpose of these conditions is to ensure that these persons will appear when ordered at immigration proceedings. *See* Dkt. 163 at 5-7.

6. Defendants

Defendants are 13 government officials and entities who are alleged to be responsible for the family separation policy in general, and specifically for the detention of Plaintiffs and their children. *See* Compl. ¶¶ 45-57. They include:

(i) Jefferson B. Sessions III, the former Attorney General of the United States ("Sessions" or the "Attorney General"). Attorney General Sessions was allegedly responsible for setting policy relating to

---

[5] As stated in the discussion below, the Government has represented that 13 of these parents are potentially members of the class in *Ms. L. v. U.S. Immigration & Customs Enforcement*, No. 18-cv-0428 (S.D. Cal). Dkt. 244 at 2 n.1, 4. However, the parties disagree as to whether the definition of the certified class in *Ms. L.* is coextensive with the proposed class in this action. Dkt. 168 at 3; Dkt. 244 at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

immigration enforcement, including the family separation policy at issue in this action, *id.* ¶ 45;[6]

(ii) Kirstjen M. Nielsen, the former Secretary of the Department of Homeland Security ("DHS") ("Secretary Nielson"). Secretary Nielsen was allegedly responsible for the administration of immigration laws, as well as for all DHS policy and procedure, *id.* ¶ 46;[7]

(iii) DHS, the agency allegedly responsible for the enforcement of immigration laws, *id.* ¶ 47;

(iv) U.S. Immigration and Customs Enforcement ("ICE"), which is alleged to be an agency within DHS, responsible for the administration of immigration laws and for overseeing immigration detention, *id.* ¶ 48;

(v) U.S. Customs and Border Protection ("CBP"), which is alleged to be an agency within DHS responsible for processing and detaining noncitizens who are apprehended near the border of the United States, *id.* ¶ 49;

(vi) Alex M. Azar II, the Secretary of Health and Human Services ("HHS") ("Secretary Azar"). Secretary Azar is allegedly responsible for HHS policies and procedures, including the detention of unaccompanied non-citizen minors, *id.* ¶ 50;

(vii) HHS, which is the agency allegedly responsible for the detention of unaccompanied non-citizen minors, *id.* ¶ 51;

(viii) Scott Lloyd, the former Director of the Office of Refugee Resettlement ("ORR") ("Director Lloyd"). Director Lloyd was allegedly responsible for all ORR policies and procedures, including the detention of unaccompanied non-citizen minors, *id.* ¶ 52;[8]

(ix) ORR, which is alleged to be the agency within HHS responsible for the detention of unaccompanied non-citizen minors, *id.* ¶ 53;

(x) David Marin ("Marin"), who is alleged to be the Los Angeles Field Office Director for ICE, and responsible for the detention of Ms. P, *id.* ¶ 54;

---

[6] On November 7, 2018, Sessions resigned as the Attorney General of the United States, and on February 14, 2019, the Senate confirmed William P. Barr for this position. *See* Nomination of William Pelham Barr, https://www.congress.gov/nomination/116th-congress/17. Because Sessions was named in his official capacity, it is **ORDERED** that Barr is substituted as a defendant in this action pursuant to Fed. R. Civ. P. 25(d); provided, however, that certain references in this Order to the Attorney General refer to actions by Sessions while he was the Attorney General.

[7] On April 7, 2019, Nielsen resigned as Secretary of the Department of Homeland Security, and the next day was replaced by Acting Secretary of Homeland Security Kevin K. McAleenan. *See* https://www.dhs.gov/person/kevin-k-mcaleenan. Because Nielsen was named in her official capacity, it is **ORDERED** that McAleenan is substituted as a defendant in this action pursuant to Fed. R. Civ. P. 25(d).

[8] In November 2018, Lloyd was transferred within the Department of Health and Human Services, and in February 2019, he was replaced as Director by Jonathan H. Hayes. *See* https://www.acf.hhs.gov/about/leadership/jonathan-hayes. Because Lloyd was named in his official capacity, it is **ORDERED** that Hayes is substituted as a defendant in this action pursuant to Fed. R. Civ. P. 25(d).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | | Date | November 5, 2019 |
|---|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | | |

(xi) Lisa Von Nordheim ("Von Nordheim"), who is alleged to be the warden at the James A. Musick Facility, and responsible for the detention of Ms. P, *id.* ¶ 55;

(xii) Marc Moore ("Moore"), who is alleged to be the Seattle Field Office Director for ICE, and responsible for the detention of Ms. O and Ms. M, *id.* ¶ 56; and

(xiii) Lowell Clark ("Clark"), who is alleged to be the warden at the Tacoma Northwest Detention Center, and responsible for the detention of Ms. O and Ms. M, *id.* ¶ 57.

B.      The Family Separation Policy

On May 7, 2018, Attorney General Sessions announced a "zero tolerance" policy requiring U.S. immigration officials to separate members of families who had entered the United States without appropriate documentation. *See id.* ¶ 79.[9] It is alleged that the policy was designed to deter individuals from crossing the southern border. In support of this position the following statement by Attorney General Sessions is quoted in the Complaint: "If you cross this border unlawfully, then we will prosecute you. It's that simple. . . . If you are smuggling a child, then we will prosecute you and that child will be separated from you. . . ." *Id.* It is alleged that no law requires the detention of those who have entered the United States seeking asylum while their claims are being adjudicated, and no law requires the prolonged separation of families during the pendency of immigration proceedings. *Id.* ¶ 67.

The Complaint also alleges that, during the month after the "zero tolerance" family separation policy was announced, approximately 3000 minors, some as young as 18 months old and more than 100 less than four years old, were separated from their parents. *Id.* ¶ 80.[10] It is alleged that these children have been sent to shelters and other temporary housing across the country that are overseen by HHS. *Id.*

The Complaint alleges that the family separation policy resulted in significant criticism by state government officials, public health organizations, businesses and members of the public. *Id.* ¶¶ 96-109. On June 20, 2018, President Trump issued an executive order limiting the prospective application of the family separation policy. *See id.* ¶¶ 109-10; *see also* Affording Congress an Opportunity to Address Family Separation, 83 Fed. Reg. 29,435 (June 20, 2018) ("Executive Order"). The Executive Order states that it is the "policy of this Administration to maintain family unity, including by detaining alien families together where appropriate and consistent with law and available resources." *See* Executive Order § 1. It also directed then-DHS Secretary Nielsen to maintain custody, "to the extent permitted by law," of non-citizen families during the pendency of any criminal improper entry or immigration proceedings involving their members. *Id.* § 3(a).

It is alleged that, notwithstanding the Executive Order, no specific plan to reunite the affected families was announced. *Id.* ¶ 114.

---

[9] Citing *Attorney General Sessions Delivers Remarks Discussing the Immigration Enforcement Actions of the Trump Administration*, DOJ Justice News (May 7, 2018), https://www.justice.gov/opa/speech/attorney-general-sessions-delivers-remarks-discussing-immigration-enforcement-actions.
[10] Citing Caitlin Dickerson, *Hundreds of Immigrant Children Have Been Taken From Parents at U.S. Border*, N.Y. Times (Apr. 20, 2018), https://nyti.ms/2vzDl6K.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

    C.      Other Litigation on Family Separation Policies

        1.    The *Flores* Settlement

In 1997, the Government entered a consent decree with a class of immigrant children in detention. It set forth a "nationwide policy for the detention, release, and treatment of minors in the custody of [the federal government]." *Flores v. Barr*, 934 F.3d 910, 912 (9th Cir. 2019); *see also Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal Feb. 2, 2015), Dkt. 101 ("*Flores* Settlement"). The Government must comply with the terms of the *Flores* Settlement, which "creates a presumption in favor of releasing minors and requires placement of those not released in licensed, non-secure facilities that meet certain standards." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016). It "remains in effect today." *Flores v. Barr*, 934 F.3d at 912; *see also* No. 85-cv-4544 (C.D. Cal. Sept. 27, 2019), Dkt. 688 (denying a motion to terminate the *Flores* Settlement).

The *Flores* Settlement requires immigration officials to "place each detained minor in the least restrictive setting appropriate to the minor's age and special needs . . . ." *See Flores* Settlement ¶ 11. It also requires that minors be released to a relative, legal guardian, or licensed program within five days of detention, or, in the event of an "emergency or influx of minors into the United States," then "as expeditiously as possible." *Id.* ¶ 12. The agreement also mandates that noncitizen children in immigration custody be provided with routine medical and dental care, and other health-related services. *See* Ex. 1 to *Flores* Settlement.

        2.    The *Ms. L.* Case

On June 26, 2018, an order was issued in *Ms. L. v. U.S. Immigration & Customs Enforcement*, 310 F. Supp. 3d 1133 (S.D. Cal. Jun. 26, 2018), *modified by* 330 F.R.D. 284 (Mar. 8, 2019), granting a nationwide preliminary injunction. It barred the Government from enforcing the family separation policy, and ordered it to reunite parents and their children. The order in *Ms. L.* determined that the "practice of separating class members from their minor children, and failing to reunify class members with those children, without any showing [that] the parent is unfit or presents a danger to the child is sufficient to find Plaintiffs have a likelihood of success" on their claim that the policy violated the plaintiffs' Fifth Amendment due process rights. *See id.* at 1145.[11] The order also stated:

> When combined with the manner in which [the family separation policy] is being implemented, *e.g.*, the lack of any effective procedures or protocols for notifying the parents about their childrens' whereabouts or ensuring communication between the parents and children, and the use of the children as tools in the parents' criminal and immigration proceedings . . . a finding of likelihood of success is assured. A practice of this sort implemented in this way is likely to be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998), interferes with rights "'implicit in the concept of ordered liberty[,]'" *Rochin v. Cal.*, 342 U.S. 165, 169 (1952) (quoting *Palko v. Connecticut*, 302

---

[11] A class of those individuals being held in immigration detention and separated from their minor children without a showing that they were unfit parents had been certified in *Ms. L. See id.* at 1137.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|----------|-------------------------|------|------------------|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

U.S. 319, 325 (1937)), and is so "'brutal' and 'offensive' that it [does] not comport with traditional ideas of fair play and decency." *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957).

*Id.*

Finding that the recent execution of the family separation policy "belie[d] measured and ordered governance . . . particularly so in the treatment of migrants, many of whom are asylum seekers and small children," the court in *Ms. L.* granted the preliminary injunction. *Id.* at 1149. It enjoined: (i) the detention of migrant parents in DHS custody without, *i.e.,* separated from, their minor children, absent a determination that a parent is unfit or presents a danger to the child, without affirmative, knowing, and voluntary consent from the parent to remain separated from a child; (ii) continuing to detain the minor children of class members after their parents are released from custody, absent a finding of unfitness or affirmative consent; and (iii) removing parents from the country without their minor children, absent a finding of unfitness or affirmative consent. *Id.* The preliminary injunction also required that, absent a finding of parental unfitness or a voluntary parental waiver, the Government was to reunite all parents with their minor children within 30 days of the issuance of the injunction, and within 14 days for all children under the age of five. *Id.*

Since the issuance of the preliminary injunction in *Ms. L.,* the parties there have filed periodic status reports regarding the Government's compliance with that order. As of October 16, 2019, the parties reported that 2788 out of 2814 possible minor children had been reunited with their parents pursuant to the preliminary injunction. *Ms. L.,* No. 18-cv-00428 (S.D. Cal.), Dkt. 484 at 2. It was also reported that the parties were working to locate certain parents who had been removed from the United States, in order to facilitate their reunification with their children. *Id.* at 13-14. James De La Cruz ("De La Cruz"), the Senior Field Program Specialist Supervisor for ORR, declares that Ms. P, Ms. O, and Ms. M have each been reunited with her children pursuant to the *Ms. L.* preliminary injunction. *See* De La Cruz Decl., Dkt. 110-1 ¶ 9.

On August 24, 2018, the defendants in *Ms. L.* filed a notice of appeal to the Ninth Circuit as to the preliminary injunction. *See Ms. L.,* No. 18-cv-00428 (S.D. Cal.), Dkt. 206. This appeal has been stayed based on certain representations from the Government about its efforts to continue the process of reunifying the *Ms. L.* class members with their children, and the ongoing process pursuant to which the Department of Justice has been determining whether to approve an appeal. *See Ms. L. v. ICE,* No. 18-56151 (9th Cir.), Dkts. 19, 20.

Another order issued in *Ms. L.* on June 26, 2018. It certified the following class:

All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by [DHS], and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody . . . absent a determination in a hearing that the parent is unfit or presents a danger to the child.

*See Ms. L.,* No. 18-cv-00428 (S.D. Cal.), Dkt. 82 at 17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

The order excluded from this definition, without prejudice to redefining the class at a later date based on a more comprehensive factual record, parents with criminal histories or communicable diseases, or who had been apprehended in the interior of the United States, rather than at a border. *Id.* at 11.

On October 9, 2018, an order issued in *Ms. L.* granting preliminary approval of a settlement agreement. *See Ms. L.,* No. 18-cv-00428 (S.D. Cal.), Dkt. 256. The settlement agreement "arises out of litigation in several lawsuits involving the separation of alien parents and children at or near the U.S. border: *M.M.M. v. Sessions,* No. 3:18-cv-1832-DMS (S.D. Cal.), *M.M.M. v. Sessions,* No. 1:18-cv-1835-PLF (D.D.C.), [*Ms. L*], and *Dora v. Sessions,* No. 18-cv-1938 (D.D.C.)." *Ms. L.,* No. 18-cv-00428 (S.D. Cal.), Dkt. 247. The agreement provides to proposed classes of parents and children subjected to the family separation policy injunctive relief that is focused primarily on their immigration status in the United States and related asylum claims. *See id.* at 6-9. It also bars class members "from pursuing 'any other immigration- or asylum-related injunctive, declaratory, or equitable relief based on the allegations or claims made in any of the *Ms. L., M.M.M.,* or *Dora* complaints filed in any court accruing as of the date this plan is approved by the Court, including statutory claims.'" *Ms. L.,* No. 18-cv-00428 (S.D. Cal.), Dkt. 315-1 at 10. However, the settlement agreement expressly states that it "does not release claims . . . for injunctive, declaratory, or equitable relief that are not immigration-or asylum-related, or claims that are not based on the allegations made in the *Ms. L., M.M.M.,* or *Dora* complaints." *Id.*; *see also id.* Dkt. 315-2 at 2.

On November 15, 2018, an order issued in *Ms. L.* granting final approval of the class action settlement in those proceedings. *See Ms. L.,* No. 18-cv-00428 (S.D. Cal.), Dkt. 321. It approved two classes, for the purposes of settlement only: (i) parents who entered the United States with their children, are or were detained by DHS, who have a child who was or is separated from them, and who have been continuously present within the United States since June 26, 2018; and (ii) children who entered the United States with a parent, have been or will be reunified with that parent pursuant to the *Ms. L.* injunction, and have been continuously present in the United States since June 26, 2018. *Id.* at 4.[12]

On March 8, 2019, the *Ms. L.* class was modified in light of new evidence that as early as the "summer of 2017, DOJ and DHS were separating parents and children at the border pursuant to the Administration's new policy." *Ms. L.,* No. 18-cv-00428 (S.D. Cal.), Dkt. 386 at 5. This evidence was "in stark contrast to Defendants' representation in this case in as late as May of 2018 that the government did not have either a policy or practice of separate families at the border." *Id.* Accordingly, the previously certified class of parents was modified to include:

> All adult parents who entered the United States at or between designated ports of entry *on or after July 1, 2017,* who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who has been, is or will be separated from them by DHS and has been, is or will be detained in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child.

*Id.* at 13-14 (emphasis added).

---

[12] June 26, 2018 is the date the preliminary injunction issued in *Ms. L.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

3.   <u>The Request to Modify the *Flores* Settlement</u>

The June 20, 2018 Executive Order directed the Attorney General to file a request to modify the *Flores* Settlement "in a manner that would permit the Secretary [of DHS], under present resource constraints, to detain alien families together throughout the pendency of criminal proceedings for improper entry or any removal or other immigration proceedings." Executive Order § 3(e). The Government made that request in *Flores* on June 21, 2018. *See Flores*, No. 85-cv-4544 (C.D. Cal.), Dkt. 435. The request sought an exemption from the release provisions in *Flores* so that ICE could detain it its facilities noncitizen children together with the family members with whom they entered the country. It also sought an exemption from the requirement that noncitizen minors be released to specially licensed facilities. *Id.* at 4.

An order dated July 9, 2018 denied the Government's request. *See Flores*, No. 85-cv-4544, 2018 WL 4945000, at *5 (C.D. Cal. July 9, 2018). That order determined that the Executive Order was in effect a motion for reconsideration of a prior order denying modification of the settlement agreement, and was "procedurally improper and wholly without merit." *Id.* at *1, 5. The order also rejected the argument that the preliminary injunction in *Ms. L.* in effect prevented the Government from meeting its obligations under the *Flores* Agreement. *Id.* at *3-4. As the order explained, "[g]iven the situation arising from [the Government's] earlier family separation policy, detained parents may choose to exercise their *Ms. L* right to reunification or to stand on their children's *Flores* Agreement rights. [The Government] may not make this choice for them." *Id.* at *4. On September 6, 2018, the Government filed an appeal as to that order, which was voluntarily dismissed on April 26, 2019. *See Flores*, No. 85-cv-4544 (C.D. Cal.), Dkts. 486, 487, 539.

D.   The Alleged Trauma Suffered by Those Subjected to the Separation Policy

The allegations in the Complaint and the evidence proffered in support of the Injunction Motion refer to the claimed, exceptional distress experienced by the parents and children who have been subjected to the family separation policy. They also refer to the mental health treatment arguably necessary to address and mitigate that claimed harm. Plaintiffs submitted testimony from leading trauma experts stating that, in general, the separation of young children from their parents causes both to suffer severely. *See* Compl. ¶¶ 127-147. Evidence was also submitted that the level of trauma correlates to the length of the separation. *See* Expert Declaration of Jose Hidalgo ("Hidalgo Decl."), Dkt. 49 ¶¶ 11-12; Expert Declaration of Bruce Perry ("Perry Decl."), Dkt. 50 ¶ 22 ("[T]rauma-aware, trauma-sensitive and trauma specific interventions are necessary to mitigate the adverse effects on the children experiencing the severe stressors of the separation from their parents. The longer such interventions are delayed, the greater the negative cumulative effect the acute neurophysiological, neuroendocrine, and neuropsychological response will have on these children and their parents.").

Dylan Gee, an Assistant Professor of psychology at Yale University, provided the following statement in her declaration:

Forcible family separation can also have devastating psychological and neurobiological consequences for parents. The traumatic nature of separation from the child is likely to be exacerbated when parents are not provided with information about their child's location or condition, or when parents do not have access to information in their native

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

language. In adults, psychological trauma is associated with elevated risk for psychiatric disorders including post-traumatic stress disorder and can induce physiological changes, including but not limited to dysregulated stress responding, amygdala hyperactivity, and deficits in prefrontal cortex control of the amygdala, which are associated with difficulty regulating fear. Evidence suggests that individuals seeking asylum are particularly vulnerable to psychological distress, and levels of depression, anxiety, and post[-] traumatic stress disorder symptomology are elevated when asylum seekers are detained.

Expert Declaration of Dylan Gee ("Gee Decl."), Dkt. 48 ¶ 3 (internal citations omitted). *See also* Hidalgo Decl., Dkt. 49 ¶ 14 ("For parents, the sudden and forcible separation from their children could represent a traumatic event leading to acute and severe psychological distress . . .and may cause physical and mental health symptoms such as loss of sleep, loss of appetite, headaches, anxiety, depression, and suicidal ideation."). Citing a newspaper article, the Complaint alleges that at least one parent forcibly separated from his child under the zero-tolerance policy committed suicide. *See* Compl. ¶ 130.[13]

Plaintiffs also presented expert testimony concerning the claimed psychological trauma experienced by children who are forcibly and suddenly separated from their parents. Three experts in juvenile trauma signed a declaration stating that when "the separation is sudden, unpredictable, or in a strange environment with no other familiar adult figures present then the response is likely to be extreme." *See* Joint Expert Declaration of Kenneth Berrick, John Sprinson, and Kevin Campbell ("Berrick Decl."), Dkt. 47 ¶ 9. *See also* Hidalgo Decl., Dkt. 49 ¶ 9 ("Separating a child from her parent is a traumatic event that can cause severe harm to the child, which may be particularly severe when separation is forcible and sudden. Depending on the parent's reaction as the separation is happening, a child may be further traumatized upon seeing a parent's helplessness, crying, shaking, or futilely pleading with a guard.").

It is alleged that each of the individual Plaintiffs, and their respective children, experienced severe trauma due to their forced separations. *See* Compl. ¶¶ 141-147. Ms. M and Ms. O reported "feeling a sense of anguish and fear that they would not see [their] daughter[s] again." Hidalgo Decl., Dkt. 49 ¶ 14. Each has reported experiencing difficulty in sleeping and a loss of appetite. *See* J.O. Decl., Dkt. 1-8 ¶ 15; R.M. Decl., Dkt. 1-10 ¶ 16. According to a licensed social worker who examined Ms. P at the James A. Music Facility where she was being detained, Ms. P was suffering from symptoms consistent with post-traumatic stress disorder, depression and anxiety. *See* Expert Declaration of Alejandra Acuña ("Acuña Decl."), Dkt. 52 ¶¶ 7-8. Plaintiffs' children also reportedly have experienced severe trauma, including sleep and appetite loss, headaches and nosebleeds, crying spells, and incontinence. *See* Compl. ¶ 145; Expert Declaration of Alfonso Mercado ("Mercado Decl."), Dkt. 54 ¶¶ 7-12.

To remedy the allegedly trauma suffered by parents and children subject to family separation, Plaintiffs claim that Defendants are obligated to provide to separated families evidence-based medical care and mental health services. *See* Compl. ¶ 148-149; *see also* Hidalgo Decl., Dkt. 49 ¶ 21; Gee Decl., Dkt. 48 ¶ 10 ("Despite the potential for long-term psychological and neurobiological consequences of forcible separation, evidence also suggests the potential for intervention to reduce the negative impact of early parental deprivation.").

---

[13] Citing Nick Miroff, *A Family Was Separated at the Border, and This Distraught Father Took His Own Life*, Wash. Post (June 9, 2018), *available at* https://wapo.st/2sOatTu.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

Defendants submitted declarations from De La Cruz and Codi James ("James"), relating to the nature and extent of the mental health treatment received by Plaintiffs and their children while in custody. De La Cruz declares that all minors in the custody of ORR receive "certain mandatory mental and emotional health services, such as individual and group counseling." De La Cruz Decl., Dkt. 110-1 ¶ 6. If an initial assessment reflects concerns as to the minor's mental health, outside resources are sought to ensure that necessary care is provided. *Id.* ¶ 7. De La Cruz states that each of the Plaintiffs' children received initial screenings when they were first taken into ORR custody, and that none was determined to have ongoing mental health issues that warranted further intervention. *Id.* ¶ 10. Finally, he declares that ORR has procedures in place to provide certain follow-up services to children after they are released from custody. *Id.* ¶¶ 14-15.

James serves as a Staff Psychologist and Mental Health Treatment Coordinator at the Federal Detention Center-SeaTac ("FDC SeaTac"). *See* Declaration of Codi James, ("James Decl."), Dkt. 109-2 ¶ 1.[14] James declares that every new detainee at FDC SeaTac undergoes an intake procedure that includes a Psychology Services Intake Screening Form ("PSIQ"). *Id.* ¶ 4. Detainees whose responses to the PSIQs raise mental health concerns are scheduled for further consultation with James or another staff psychologist at the facility. *Id.* ¶¶ 5-6.

After the September 20, 2018 hearing, Defendants submitted a copy of an "Inmate Health Message Slip," which they claim is representative of the resources available to detainees. *See* Dkt. 141-1. The document is a single page, in both English and Spanish, with boxes that can be checked to identify various health concerns, including "Suicidal," "Depressed," and "Anxious." *See id.* at 2. An area to write specific comments is also provided. *Id.* On October 31, 2019, Defendants also stated that CPB "continually enhances and endeavors to improve its medical and mental health care efforts for those in its custody, and has mandated interviews of juveniles in its custody "to detect the presence of health concerns." Dkt. 244 at 4.

III.    **First-to-File Rule**

      A.    Legal Standards

The first-to-file rule is "a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). "The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979), *overruled on other grounds by Animal Legal Defense Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016); *see also Barapind v. Reno*, 225 F.3d 1100, 1109 (9th Cir. 2000) ("While no precise rule has evolved, the general principle is to avoid duplicative litigation . . . ."). Accordingly, "when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Cedars-Sinai Med. Ctr. v. Shalala*, 125

---

[14] FDC SeaTac is the facility at which both Ms. O and Ms. M were detained. *See* Compl. ¶¶ 30, 39, 41.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

F.3d 765, 769 (9th Cir. 1997).

    B.     Positions of the Parties

Defendants argue that this action duplicates the class action proceeding in *Ms. L.,* in which the proposed class was certified. *See* Dkt. 110 at 14-17. Thus, they contend that under the "first-to-file" rule, the request for certification of the proposed class should be rejected because a similar class seeking similar relief was certified in *Ms. L.* From that they contend that deference should be given to that proceeding to avoid duplicative litigation. *See id.* Plaintiffs respond that, although both this case and *Ms. L.* involve the family separation policy, the claims in *Ms. L.* present constitutional challenges to the policy itself, while the claims here address Defendants' alleged failure to meet their duty of care to provide mental health treatment to detainees who have been subjected to that policy. *See* Dkt. 120 at 5-6. Accordingly, Plaintiffs contend, the first-to-file rule does not apply. *Id.*

    C.     Application

As noted, the class certified in *Ms. L.* is very similar to the proposed class here. *Compare* Dkt. 81 at 4, *with Ms. L.,* No. 18-cv-00428 (S.D. Cal.), Dkt. 82 at 5. Thus, each class includes all adult parents who are, or will be, detained in immigration custody, and whose minor children have been, or will be, separated from them pursuant to the family separation policy. Absent class members of certified classes are considered to be "parties" to a litigation. *See Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (citing *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002)); *see also Ross v. U.S. Nat'l Bank Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008) (in applying the first-to-file rule, "[i]n a class action, the classes, and not the class representatives, are compared."). Similarly, many of the Defendants here are also Defendants in *Ms. L.,* including the Attorney General, the Secretary of Homeland Security, ICE and ORR. Moreover, Plaintiffs concede that both actions arise out of the family separation policy. *See* Dkt. 120 at 5-6. These facts weigh in favor of applying the first-to-file rule. *See Pacesetter*, 678 F.2d at 94-95.

Other factors support a contrary conclusion. The first-to-file rule does not apply where the issues presented by the two actions are distinct. *See Cedars-Sinai*, 125 F.3d at 769. There is not a requirement of a complete overlap in issues to trigger the first-to-file rule. Instead, the issues need only be "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). However, where "the issues in the two actions are 'distinct,' such that one party's success in one action would be no defense to the claims brought against it in the other action, the similarity of the issues requirement is not met," and the first-to-file rule does not apply. *Optec Displays, Inc. v. Nat'l LED Sign Co.*, No. 08-cv-2639-RGK, 2008 WL 11338470, at *4 (C.D. Cal. July 30, 2008) (citing *Cedars-Sinai*, 125 F.3d at 769). Such is the case here.

In *Ms. L.,* the class sought, and obtained, an injunction "to prohibit separation of class members from their children in the future absent a finding the parent is unfit or presents a danger to the child, and to require reunification of these families once the parent is returned to immigration custody [upon completion of any criminal proceedings] unless the parent is determined to be unfit or presents a danger to the child." *Ms. L.,* 310 F. Supp. 3d at 1137. Accordingly, the key legal issue presented in *Ms. L.* was whether the family separation process violated the Constitution. *See id.* at 1142 ("Plaintiffs contend the Government's practice of separating class members from their children, and failing to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

reunite those parents who have been separated . . . violates the parents' substantive due process rights to family integrity under the Fifth Amendment to the United States Constitution.").

This action presents a different issue. The question presented here is whether Defendants' alleged failure to provide sufficient mental health and trauma services to individuals separated pursuant to the policy violates the Constitution. That the relief sought by Plaintiffs in the Complaint and Injunction Motion included their release and reunification with their children does not require the application of the first-to-file rule: although these are logical and necessary first steps in addressing the needed mental health relief, they were not deemed sufficient. *See* Expert Declaration of Marleen Wong ("Wong Decl."), Dkt. 46 ¶ 25 ("Reunification with caregivers is the first necessary step in mitigating the trauma these children experienced. However, reunification with caregivers is not enough to mitigate the effects of the forced separation."). Moreover, even if it were determined that the policy itself did not violate the Constitution, that would not necessarily preclude the claim that the manner of its implementation effected such a violation. Because a successful defense in one action may not determine the outcome of the other, *Optec*, 2008 WL 11338470, at *4, the "central questions" presented by the two cases are distinct. *See Pacesetter*, 678 F.2d at 95. The plaintiffs in each case assert different and distinct constitutional violations, for which they seek different relief. Therefore, the first-to-file rule does not bar this action. *See Cedars-Sinai*, 125 F.3d at 769.

There is an overlap between members of the certified class in *Ms. L.* and the proposed class here. There is also a relationship between the constitutional rights asserted by the members of each class. Therefore, some judicial and party efficiency could be achieved if the two actions were litigated together. Indeed, other actions seeking relief related to the family separation policy have been consolidated with the *Ms. L.* proceedings. *See M.M.M. v. Sessions*, No. 3:18-cv-1832-DMS (S.D. Cal.); *M.M.M. v. Sessions*, No. 1:18-cv-1835-PLF (D.D.C.); *Dora v. Sessions*, No. 18-cv-1938 (D.D.C.); *N.T.C. v. U.S. Immigration & Customs Enforcement*, No. 18-cv-6428 (S.D.N.Y.).

Those prior cases focused on an appropriate means to oversee the reunification of parents and children separated under the policy. For example, the order transferring the *N.T.C.* matter for consolidation with *Ms. L.* explained:

> [T]he relief Plaintiffs seek in this case is, at bottom, *directly* related to the reunification process being supervised by Judge Sabraw. In essence, Plaintiffs here contend that they have rights and interests distinct from the rights and interests of their parents and that the reunification process, and Judge Sabraw's own orders, do not adequately take their distinct rights and interests into account. That may or may not be the case, but Judge Sabraw is in a better position than this Court to decide those questions and to modify his own orders if appropriate. [Additionally,] in the absence of a single judge presiding over both cases, there is a real risk of inconsistent decisions and conflicting orders -- a particularly intolerable risk given the gravity an urgency of the issues in these cases (and the prospect of similar litigation being filed in other states where children separate from their parents are being held).

Memorandum Opinion and Order, *N.T.C. v. U.S. Immigration & Customs Enforcement*, No. 18-cv-6428

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

(S.D.N.Y. July 19, 2018) (emphasis in original).[15]

Unlike *N.T.C.* and the other cases before Judge Sabraw in connection with the *Ms. L.* litigation, the relief sought by Plaintiffs here is distinct from the reunification process itself. The mental health treatment Plaintiffs seek involves different resources and supervision than what is now in place due to the proceedings in *Ms. L.* Moreover, because the underlying constitutional claims are different here than those at issue in *Ms. L.,* there is a reduced risk of inconsistent decisions.

Finally, that the *Ms. L.* action has been settled is also material. As noted, that settlement, which has now been approved, is limited to the reunification process and the immigration and asylum-related consequences of the family separation policy. It does not address mental health care, and it does not release claims for injunctive, declaratory or equitable relief that are not "immigration- or asylum-related." *See Ms. L.,* No. 18-cv-00428 (S.D. Cal.), Dkt. 315-2 at 2.

*          *          *

In light of the procedural history of both cases, the application of the first-to-file rule by requiring Plaintiffs to seek relief in the *Ms. L.* matter would not sufficiently serve the requisite interests of efficiency and judicial economy that are the basis for the rule. *See Cedars-Sinai*, 125 F.3d at 769. Therefore, the first-to-file rule does not warrant the denial of the Plaintiffs' Motions.

**IV.    Certification Motion**

      A.    Class Definition

As noted, Plaintiffs seek certification of the following class:

> All adult parents nationwide who (1) were, are, or will be detained in immigration custody by the Department of Homeland Security ("DHS") , and (2) have a minor child who has been, is, or will be separated from them by DHS and detained in DHS or Office of Refugee Resettlement ("ORR") custody or foster care, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child.

*See* Dkt. 81 at 4.

Although Plaintiffs do not propose subclasses, for the reasons stated below, and in light of certain developments since this action was filed, it is necessary to distinguish putative class members who are currently in immigration detention, and those who previously were detained, but have been released pending the completion of their asylum proceedings. Doing so will "expedite resolution of the case by segregating a distinct legal issue that is common to some members of the existing class," and is authorized by Fed. R. Civ. P. 23(d). 3 Newberg on Class Actions § 7:32 (5th ed.) (internal citations and amendments omitted). Accordingly, it is appropriate to divide the proposed class into two subclasses: (i) the Custody Subclass, which includes putative class members who are presently in DHS custody, or

---

[15] *See Ms. L.,* No. 18-cv-00428 (S.D. Cal.), Dkt. 149-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

who will be in the future; and (ii) the Released Subclass, which includes putative class members who were in DHS custody, but have been released. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1123 (9th Cir. 2010) (where class adjudication may be impractical due to how certain circumstances may affect class members, "it may counsel the formation of subclasses"); *Am. Timber & Trading Co. v. First Nat'l Bank of Or.*, 690 F.2d 781, 786-87 (9th Cir. 1982) (a district court has "broad power . . . to adopt procedural innovations to facilitate management of the class action," including the creation of subclasses not proposed in the plaintiffs' class definition; *see also* 3 Newberg on Class Actions (5th ed.) §§ 7.29, 7.32 (case-management subclasses may be created "solely to expedite resolution of the case by segregating [a distinct legal] issue [that] is common to some members" of the proposed class, and in such circumstances "there is no necessity that each subclass have different representation and independently comply with all of the requirements of [Rule 23].").

As noted, each of the named Plaintiffs has been released from custody and reunited with her minor child. *See De La Cruz Decl.*, Dkt. 110-1 ¶ 9; Dkt. 80 at 5. Accordingly, Plaintiffs are members of the Released Subclass. However, for the reasons discussed below, they are presently also adequate representatives of the Custody Subclass.[16]

    B.    Analysis

        1.    <u>Legal Standards</u>

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks omitted). Under Fed. R. Civ. P. 23, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). That "rigorous analysis" will "frequently" include "some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160.

The first step in establishing the propriety of class certification requires a showing that the proposed class meets each of the prerequisites of Rule 23(a). *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These are: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. *See* Fed. R. Civ. P. 23(a). Further, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original).

---

[16] This determination is without prejudice to a later review of this issue in light of evidence that is presented or proceedings that occur that raise concerns as to the adequacy of the named Plaintiffs to continue to represent members of the Custody Subclass. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1181 (9th Cir. 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

If these four prerequisites are met, the analysis proceeds to a consideration of whether the proposed class satisfies the terms of Rule 23(b). *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Here, Plaintiffs contend that certification is appropriate pursuant to Rule 23(b)(2), which provides that a class "may be maintained . . . if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

   2. <u>Application</u>

     a) Class Definition

Defendants contend that the proposed class is overbroad, because it would include individuals who were not harmed by Defendants' allegedly inadequate policies. Thus, they argue that it would include persons who: (i) have not had any mental health injury; (ii) have mental health problems that were not caused by family separation; (iii) had mental health problems caused by family separation from which they have recovered; and (iv) already received mental health and trauma treatment sufficient to satisfy their due process rights. *See* Dkt. 110 at 22. Plaintiffs respond that the proposed class is appropriate because each member has been, is being or will be exposed to the family separation policy, thereby either causing immediate harm or substantially increasing a risk of harm and triggering Defendants' constitutional duty to provide to each member adequate and sufficient mental health care. *See* Dkt. 120 at 8-9.

To define a proposed class, "it is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *McCrary v. Elations Co., LLC*, No. 13-cv-00242, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014) (internal quotation marks omitted). The proposed class meets these standards. Each putative class member has been, is being or will be exposed to the family separation policy in connection with immigration detention, because each was separated from his or her minor child or children. This definition is sufficient to allow prospective class members and the Court to identify those who are in the proposed class.[17]

Plaintiffs also argue that those who are members of the proposed class, as currently defined, can be identified from ORR and DHS records. Those include records about those who are parents who are, were, or will be in immigration detention, and whose children were separated from them pursuant to the family separation policy. *See* Dkt. 81 at 27.

Courts have recognized that "the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 596 (N.D. Cal. 2015). *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017), explained that "the language of Rule 23

---

[17] That the class is defined to include individuals who have not yet been, but in the future will be subject to the family separation policy, does not change this determination. *See Rodriguez*, 591 F.3d at 1118 ("The inclusion of future class members in a class is not itself unusual or objectionable.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

does not impose a freestanding administrative feasibility prerequisite to class certification."[18] Because those who drafted Rule 23 "opted not to make the potential administrative burdens of a class action dispositive and instead directed courts to balance the benefits of class adjudication against its costs," *Briseno* determined that it "neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification . . . ." *Id.* at 1128, 1133. Accordingly, even if Defendants had submitted some evidence to support a claim that it would be administratively impractical to determine whether an individual is or has been in ORR or DHS custody, this would not bar certification.

For the foregoing reasons, the definition of the proposed class is not overbroad.

        b)     Requirements of Fed. R. Civ. P. 23(a)

           (1)    <u>Numerosity</u>

Rule 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[I]mpracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (internal quotation marks omitted). No exact numerical cut-off can be stated; rather, the specific facts of each case must be examined. *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980). Nevertheless, courts generally find classes of at least 40 members to be sufficiently numerous. *See Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010).

Plaintiffs estimate that the proposed class includes more than 1000 parents whose children were separated from them, and that many of these families had not been reunited at the time of the hearing on the Plaintiffs' Motions. *See* Dkt. 81 at 11. This estimate was based in part on statements, attributed to Government sources and reported in the media, that approximately 3000 minors had been separated from their parents as of July 5, 2018.[19] The estimate was also consistent with declarations filed in *Ms. L.,* which supported the showing that at least 700 families had been subject to the separation policy, thereby warranting the certification of the class proposed there. *See Ms. L.*, No. 18-cv-428 (S.D. Cal.) Dkt. 82; *see also id.*, Dkt. 484 at 3-4 (as of October 9, 2018, the policy may have affected approximately 2814 children).

In the report filed on October 31, 2019, the Government states that 4007 parents have been separated since July 1, 2017, and that 3579 of these persons may be members of the class certified in *Ms. L.* Dkt. 244 at 3.[20] Moreover, the Certification Opposition does not dispute that there are many members of the

---

[18] ConAgra, which was the defendant in *Briseno*, referred to this as an "ascertainability" requirement, but the Ninth Circuit "refrain[ed] from referring to 'ascertainability' . . . because courts ascribe widely varied meanings to that term." *Id.* at 1124 n.3.

[19] *See* Caitlin Dickerson, *Trump Administration in Chaotic Scramble to Reunify Migrant Families*, N.Y. Times (July 5, 2018), https://nyti.ms/2KO3Kkj.

[20] As noted, at the hearing on September 20, 2018, counsel for Defendants stated that a large majority of putative class members already had been released from immigration custody. As also noted, in the supplemental joint report of October 31, 2019, the Government states that 108 "possible putative class members (separated parents)" remain in ICE custody of whom 13 are possible *Ms. L.* class members. Dkt. 244 at 2-3. Plaintiffs contend that the Government has improperly relied on data from *Ms. L.* in compiling these figures, and that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

proposed class. *See generally* Dkt. 110. For these reasons, the numerosity requirement has been satisfied with respect to the proposed class. *See Rannis*, 380 Fed. App'x at 650-51 (numerosity is generally satisfied when a class includes at least 40 members, but no binding authority limits the discretion of a district court to certify smaller classes).

### (2)   Commonality

A class may be certified only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The class claims must "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "Rule 23(a)(2) has been construed permissibly. All questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *see also Dukes*, 564 U.S. at 359 ("[E]ven a single common question will do.").

It is often difficult to determine whether commonality has been established "without a precise understanding of the nature of the underlying claims." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.")). In general, commonality is satisfied where the causes of action challenge "a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005). Although the merits of a claim are relevant to the commonality analysis, at the time of a motion for class certification, plaintiffs are not required to show that the common question is one on which they will prevail on the merits. *See Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015).

Plaintiffs identify the following as common questions: (i) whether and to what extent the Government has an obligation to develop and implement an appropriate policy for mitigating the harms caused by the family separation policy; and (ii) whether Defendants' policies and practices have violated the substantive due process and equal protection rights of the members of the proposed class. *See* Dkt. 81 at 23.

Plaintiffs also contend that common facts apply to the claims. Thus, members of the proposed class have or will come to the United States with their children, were detained, and were separated from their children without any showing that they present a danger to their children. *Id.* at 23-24. Plaintiffs also submitted evidence to support the claim that separating parents and their children can have a traumatic effect causing near-term and long-term risks of psychological harm to both parents and children. *See* Expert Declaration of Dylan Gee ("Second Gee Decl."), Dkt. 84 ¶ 5. This evidence supports the contention that members of the proposed class who have been subjected to the family separation policy have suffered the same injury, and that those members who have the same experience in the future, will suffer the same injury. *See Dukes*, 564 U.S. at 350 (commonality requires a showing that

---

"Defendants' numbers are certainly off." Because the Custody Subclass has been created pursuant to Rule 23(d), "it is unnecessary to evaluate it [separately] . . . for commonality, numerosity, typicality, and adequacy of representation." *Am. Timber*, 690 F.2d at 787 n.5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

"class members have suffered the same injury," which "does not mean merely that they have all suffered a violation of the same provision of law.").

As noted, a similar class was certified in *Ms. L.* The relief sought there was the reunification of separated families. Nevertheless, there, as here, the Government argued that the questions raised by the proposed class could not be answered on a classwide basis due to the individualized circumstances as to the detention and separation of each parent and his or her child or children. The order certifying the class addressed this issue:

> [C]ommonality only requires a single significant question of law or fact[,]" *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (citing *Dukes*, 564 U.S. at 359), and that is particularly so where a suit "challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong*, 275 F.3d at 868. The Ninth Circuit's decision in *Parsons* . . . is instructive. In that case, the court was faced with a commonality question similar to the one presented here. That case involved a claim that certain policies and practices of the Arizona Department of Corrections ("ADC") violated the Eighth Amendment's proscription against cruel and unusual punishment. [*Parsons*, 754 F.3d at 662-63]. The defendants in *Parsons*, similar to Defendants here, argued the commonality requirement was not met because the plaintiffs' claims were simply "'a collection of individual constitutional violations,' each of which hinges on "the particular facts and circumstances of each case." *Id.* at 675 . . . . The Ninth Circuit disagreed. It found the defendants' argument "rest[ed] upon a misunderstanding of the plaintiffs' allegations." *Id.* at 676. Contrary to the defendants' interpretation of the claim, the court stated, "The Complaint does not allege that the care provided on any particular occasion to any particular inmate (or group of inmates) was insufficient, but rather that ADC policies and practices of statewide and systemic application expose all inmates in ADC custody to a substantial risk of serious harm." *Id.* The court then went on to state:

> > These policies and practices are the "glue" that holds together the putative class [. . .] either each of the policies and practices is unlawful as to every inmate or it is not. That inquiry does not require us to determine the effect of those policies and practices upon any individual class member or class members) or to undertake any other kind of individualized determination. *Id.* at 678.

> Here, as in *Parsons*, Plaintiffs' claims do not rest on the individual circumstances of each separation of parent and child. Rather, Plaintiffs are challenging the Government's practice of separating migrant parents and children and keeping them separate without a showing the parent is unfit or presents a danger to the child. Under these circumstances, the reasoning of *Parsons* applies here, and that reasoning compels the same conclusion, namely that the commonality requirement is met.

*Ms. L.*, No. 18-cv-00428 (S.D. Cal.), Dkt. 82.

In this action, the alleged common injury is not the separation itself, which can be remedied through reunification, but the claimed psychological trauma caused by the separation. Plaintiffs here argue that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

this is a separate and distinct remedy that obligates Defendants to provide adequate mental health care to Class Members and their children. The issue presented is whether an assessment of the availability of such relief "generate[s] common answers apt to drive the resolution of the litigation." *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (internal citations omitted); *see also Dukes*, 564 U.S. at 350.

Defendants argue that the remedy sought is too individualized to justify class treatment. They contend that the extent, and cause, of the alleged trauma varies among members of the proposed class. Defendants also contend that different sources of potential trauma, distinct from the family separation policy, *e.g.*, prior domestic violence and difficulties experienced in travelling to the United States, might also contribute to the claimed injuries of various members of the proposed class. From this, Defendants argue that an individualized determination will be necessary to determine whether Defendants have any liability as to each member of the proposed class. *See* Dkt. 110 at 25.[21] Defendants also argue that a determination of what constitutes "appropriate" mental health treatment will require a case-by-case assessment of members of the proposed class, including a review of their medical histories. *See* Dkt. 110 at 26-27. Plaintiffs respond that they "are not asking the Court to oversee individualized treatment for every class member," but instead are seeking injunctive relief to remedy the allegedly systemic failure to provide adequate mental health care to detainees. *See* Dkt. 120 at 10.

*Parsons* is instructive. There, inmates in a state prison in Arizona brought an action against senior officials within the Arizona Department of Corrections ("ADC"), claiming that its policies and practices governing medical, dental, and mental health care for inmates were inadequate and exposed the plaintiffs to a substantially increased risk of physical and mental harm. *See Parsons*, 754 F.3d at 662-63. The complaint identified many such alleged, uniform policies and practices, each of which was supported by particularized factual allegations. *See id.* at 664-67. A class was certified of all "prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC." *Id.* at 678. The ADC defendants appealed, and argued that certification was inappropriate because "healthcare and conditions-of-confinement claims are inherently case specific and turn on many individual inquires," which "is an insurmountable hurdle for a commonality finding because [*Dukes*] instructs that dissimilarities between class members impede the generation of common answers." *Id.* at 675 (internal quotation marks omitted).

The Ninth Circuit affirmed the certification order. As to commonality, it distinguished individualized claims, which are not appropriate for class-wide treatment, and claims arising from common policies, which may be:

> [T]he defendants describe the plaintiffs' claims as little more than an aggregation of many claims of individual mistreatment. *See, e.g.*, *Jett v. Penner*, 439 F.3d 1091, 1096

---

[21] The expert declarations submitted by Plaintiffs acknowledge that the "violence of [Plaintiffs'] home countries" and the "flight through Mexico during which they were, in most cases brutalized," were contributing sources to the trauma Plaintiffs suffered. Expert Declaration of Luis Zayas ("Zayas Decl."), Dkt. 51 ¶ 8; *see also* Wong Decl., Dkt. 46 ¶ 20 ("The children who have been separated from parents may also have trauma histories which add to the complexity of risk factors. They may have witnessed domestic abuse or been subjected to the terror of civil unrest, war or crime in their countries of origin. In the perilous journey across borders, physical abuse and sexual assault of women and children have often been reported.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

> (9th Cir. 2006). That description, however, rests upon a misunderstanding of the plaintiffs' allegations. The Complaint does not allege that the care provided on any particular occasion to any particular inmate (or group of inmates) was insufficient, *see, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976), but rather that ADC policies and practices of statewide and systemic application expose all inmates in ADC custody to a substantial risk of serious harm. . . .
>
> Here, a proper understanding of the nature of the plaintiffs' claims clarifies the issue of commonality. What all members of the putative class and subclass have in common is their alleged exposure, as a result of specified statewide ADC policies and practices that govern the overall conditions of health care services and confinement, to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent. As the district court recognized, although a presently existing risk may ultimately result in different future harm for different inmates -- ranging from no harm at all to death -- every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide ADC policy or practice that creates a substantial risk of serious harm.

*Parsons*, 754 F.3d at 676, 678; *accord Armstrong*, 275 F.3d at 868, *abrogated on other grounds as noted in Harris v. Alvarado*, 402 Fed. App'x 180, 181 (9th Cir. 2010) ("[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality.") (internal citations omitted).

Like the plaintiffs in *Parsons*, Plaintiffs here have identified systematic policies and practices: the alleged insufficient mental health and trauma services provided to detainees subject to the family separation policy. These policies allegedly apply to all members of the proposed class, and expose each of them to the same, or very similar risks of harm. That the appropriate medical remedy for different members of the proposed class may vary does not warrant a different outcome. A medical diagnosis and subsequent treatment are indeed directed at particular patients. However, that would necessarily be part of an appropriate policy if it is shown that the family separation policies warrant such relief. Thus, the challenge here is not to the care provided to particular members of the proposed class, but to the absence of a policy pursuant to which such care will be determined and then provided as needed. *See Parsons*, 754 F.3d at 676.

Defendants rely on *Dukes*, which addressed a proposed class of 1.5 million female employees of Wal-Mart. That class sought to assert claims that the discretion provided to local managers through a corporate policy contributed to gender discrimination. *Dukes* determined that the plaintiffs had failed to meet the commonality requirement because "[t]he only corporate policy that the plaintiffs' evidence convincingly establishes is Wal-Mart's 'policy' of *allowing discretion* by local supervisors over employment matters," and that, in effect, the plaintiffs were challenging many individual decisions by local managers rather than one generally applicable policy that caused the alleged harm. *Dukes*, 564 U.S. at 355. *Parsons* distinguished *Dukes*:

> This case is different than *Wal-Mart* in every respect that matters. It involves uniform statewide practices created and overseen by two individuals who are charged by law with ultimate responsibility for health care and other conditions of confinement in all ADC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

> facilities, not a grant of discretion to thousands of managers. It involves 33,000 inmates
> in the custody of a single state agency, not millions of employees scattered throughout
> the United States. It looks to whether current conditions in ADC facilities create a risk of
> future harm, not to the varied reasons for millions of decisions made in the past.
> Whereas there may have been many answers in *Wal-Mart* to the question "why was I
> disfavored," here there is only a single answer to questions such as "do ADC staffing
> policies and practices place inmates at a risk of serious harm?"

*Parsons*, 754 F.3d at 681. Here, as in *Parsons*, the gravamen of Plaintiffs' claims is whether
Defendants' current policies with respect to providing mental health and trauma services to those who
have been or will be subject to the family separation policy violates the constitutional rights of those
affected.

Defendants also identified certain factual issues that they contend are likely to require individualized
determinations. For example, whether Plaintiffs' alleged injuries were caused by the actions of
Defendants, or were the result of prior actions of others. Evidence was submitted showing that
Honduran gangs murdered Ms. O's husband and beat her then teenaged son. *See* J.O. Decl., Dkt. 1-8
¶ 3. Evidence was also submitted that Ms. M fled El Salvador because her husband, a former military
officer, had physically assaulted her and threatened to kill her. *See* R.M. Decl., Dkt. 1-10 ¶ 3. Thus, as
to Ms. O and Ms. M, and their children, there are potential causes of their mental health conditions
distinct from the implementation of the family separation policy.

This evidence is insufficient to warrant the denial of certification under the commonality element. A
common question is still presented with respect to whether Defendants' policies and practices
subjected Plaintiffs to a substantial risk of trauma or injury. *See, e.g.*, *Gordon v. Cty. of Orange*, 888
F.3d 1118, 1125 (9th Cir. 2018) (elements of a due process claim relating to the deprivation of medical
care included a defendant's creating conditions that "put the plaintiff at substantial risk of suffering
serious harm"); *Parsons*, 754 F.3d at 678 ("[A]lthough a presently existing risk may ultimately result in
different future harm for different inmates . . . every inmate suffers exactly the same constitutional injury
when he is exposed to a single [government] policy or practice that creates a substantial risk of serious
harm."). With respect to providing adequate medical care to detainees, the Supreme Court has
determined that substandard procedures create risks even for those not presently affected. *See Brown
v. Plata*, 563 U.S. 493, 531 (2011) ("Even prisoners with no present physical or mental illness may
become afflicted, and all prisoners [] are at risk so long as the State continues to provide inadequate
care.").

Furthermore, that the alleged injuries of some members of a certified class may have had more than
one cause, or that their alleged pre-existing conditions were aggravated by the challenged conduct of a
defendant does not warrant the denial of certification. Thus, Plaintiffs "need not show that *every*
question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang
v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (emphasis added); *see also Jimenez v.
Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) ("As *Dukes* and all of our subsequent caselaw
have made clear, a class meets Rule 23(a)(2)'s commonality requirement when the common questions
it has raised are 'apt to drive the resolution of the litigation,' no matter their number.") (quoting *Abdullah*,
731 F.3d at 962)). Plaintiffs have identified such questions: (i) whether the Government is obligated to
provide adequate mental health and trauma services to mitigate any harm caused by the family

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|----------|-------------------------|------|------------------|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

separation policy; and (ii) whether Defendants' current policies and practices with respect to such services violate Plaintiffs' constitutional rights.

Finally, the distinction between the Custody Subclass and the Released Subclass does not raise commonality issues. *See Am. Timber*, 690 F.2d at 787 & n.5. For reasons discussed in more detail below, whether the requested injunctive relief is available to the Released Subclass and the Custody Subclass may present distinct legal issues, but this does not require distinct commonality analyses. 3 Newberg on Class Actions § 7:32 (5th ed.) (a subclass created by the court to segregate distinct legal issues does "not need to satisfy Rule 23(a) certification requirements."). If the Government's obligation to provide medical and mental health treatment to a person depends on whether that person is presently in custody, that question might not be one the answer to which can resolve "each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Having the subclasses addresses this problem by separating any unique issues, with the core issues addressed as to all members of the proposed class. *See Am. Timber*, 690 F.2d at 787 ("Even if the court had not designated the subclass, it would have had to address the same issues in determining the damages of individual members of the larger class.").

The gravamen of the Complaint is that through the family separation policy, Defendants caused psychological trauma, and substantially increased risks of long-term mental health injuries to Plaintiffs. *See, e.g.*, Gee Decl., Dkt. 48 ¶¶ 5-9. Plaintiffs have submitted evidence in support of these claims, including that the problems do not end upon release from custody and reunification. *See, e.g.*, Acuña Decl., Dkt. 52 ¶ 12 ("Treatment should ideally be provided outside of detention as symptom recurrence and intensification may occur in response to reminders of the original trauma, ongoing life stressors, or newly experienced traumatic events."). As in *Parsons*, here "there is a single claim -- exposure to substantial risk of serious harm due to systemic policies and practices -- that can be proven (or not) in a single stroke . . . ." *See Parsons*, 754 F.3d at 679 n.21.

For these reasons, the proposed class meets the commonality requirement. However, as currently defined, the proposed class would include any parent who was detained by DHS and separated from his or her child or children at any time. For the reasons stated earlier, this warrants modifying the definition of the proposed class. *See Wang*, 737 F.3d at 546 (district courts have the "broad authority at various stages in the litigation . . . to redefine . . . classes as appropriate."). The focus of Plaintiffs' claims is the separation of family members and the alleged resulting mental health harm. Plaintiffs first submitted evidence to support their claim that the "zero tolerance" family separation policy was instituted on May 7, 2018. *See* Compl. ¶ 79. Subsequently, Plaintiffs submitted additional evidence, *i.e.*, a report of the Department of Health and Human Services Office of Inspector General, to the effect that the Department of Justice and DHS had "implemented new policies" separating families as early as July 1, 2017, and that the "zero-tolerance policy" was "formally instituted" on April 6, 2018. Dkt. 181; Dkt. 181-1 at 4-5. Accordingly, the proposed class is limited to individuals who were detained on or after July 1, 2017. Ms. P, Ms. O, and Ms. M were all detained after that date.

For the foregoing reasons, and subject to the stated limitations, the commonality requirement has been met. Sufficiently common questions of law and fact are presented.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

(3)     <u>Typicality</u>

This requirement is met if the "representative claims are 'typical,'" *i.e.*, "if they are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Representative claims "need not be substantially identical." *Id.* The test of typicality is whether "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508.

The commonality and typicality requirements often merge. *See Dukes*, 564 U.S. at 349 n.5 ("Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."). Accordingly, whether the claims of the named plaintiffs are typical presents issues similar to those previously discussed. *See Parsons*, 754 F.3d at 686.

Plaintiffs argue that the claims of Ms. P, Ms. O, and Ms. M are typical because each member of the proposed class, like the named Plaintiffs, was forcibly separated from his or her child or children without later being provided with appropriate mental-health screenings and trauma-informed intervention. *See* Dkt. 81 at 25. Defendant argues that because the nature and extent of mental health care necessarily varies among individuals, Plaintiffs' claims are not typical. This issue overlaps with the prior discussion as to commonality.

*Armstrong* held that "[w]here the challenged conduct is a policy or practice that affects all class members . . . the typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class." 275 F.3d at 868-69. It is not required that the claimed injuries of absent class members are identical to those of the named plaintiffs. Instead, "only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Id.* at 869. In the context of a class of government detainees challenging the adequacy of the medical care they received in custody, "[i]t does not matter that the named plaintiffs may have in the past suffered varying injuries or that they may currently have different health care needs; Rule 23(a)(3) requires only that their claims be 'typical' of the class, not that they be identically positioned to each other or to every class member." *Parsons*, 754 F.3d at 686.

Defendants refer to the variation in the age, length of separation, and availability of information about each member of the proposed class to support their argument that Plaintiffs' claims are not typical. However, these factors concern the "different health care needs" that *Parsons* deemed insufficient to establish the absence of typicality among claims. Thus, Defendants have not shown that Plaintiffs' claims give rise to unique defenses that could not be asserted against other members of the proposed class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984-85 (9th Cir. 2011).

For these reasons, the typicality requirement is met.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

(4)    Adequacy of Representation

Fed. R. Civ. P. 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985.

Plaintiffs argue that they are adequate representatives because they share the same interests as the members of the proposed class. *See* Dkt. 81 at 26. Plaintiffs also contend that class counsel have significant experience in class action litigation and in matters involving the rights of immigrants. *Id.*

Defendants do not challenge the adequacy of Plaintiffs' counsel. As to Plaintiffs, Defendants argue that they already have obtained relief through the family reunification ordered in *Ms. L.* Defendants also contend that Plaintiffs are absent members of the class there, and their demand for further relief here shows that they are not adequate representatives of the members of the proposed class. *See* Dkt. 110 at 29-30. Defendants also contend that, because Plaintiffs have been released from detention, they cannot adequately represent class members who are presently, or will in the future, be detained and separated from other family members. *Id.* at 30.

*Ms. L.,* and the relief granted there, is not a reason to conclude that Plaintiffs are inadequate representatives of the proposed class. As noted, the relief sought here is different from what was sought and granted there. Any supposed "antagonism" between the absent class members and Plaintiffs based on the relief sought in *Ms. L.* is speculative. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) ("[W]e do not 'favor denial of class certification on the basis of speculative conflicts.'")).

The outcome is the same as to the effect of Plaintiffs' release from custody. In general, if the claim of a proposed class representative for injunctive relief becomes moot, that person may be deemed inadequate as a class representative unless the class was certified before the claim became moot. *See, e.g.*, *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396-97 (1980); *Kennerly v. United States*, 721 F.2d 1252, 1260 (9th Cir. 1983). However, "some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991); *see also Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (identifying a "narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class.").

A common example of an "inherently transitory" class action is one involving individuals in temporary government detention. *See Gerstein*, 420 U.S. at 105-06 (plaintiff seeking to represent class of pretrial detainees challenging the constitutionality of the time within which they were given preliminary hearings to determine whether probable cause to arrest them existed); *Wade v. Kirkland*, 118 F.3d 667, 669-70 (inmate seeking to represent class challenging working conditions at county jail). *Gerstein* stated that "[p]retrial detention is by nature temporary, and it is most unlikely that any given individual could have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

his constitutional claim decided on appeal before he is either released or convicted." 420 U.S. at 110 n.11. Although *Gerstein*, *Wade* and *McLaughlin* involved challenges to criminal detention, they have been applied to putative classes of immigrant detainees as well. *See, e.g., Lyon v. U.S. Immigration & Customs Enf't*, 300 F.R.D. 628, 638-39 (N.D. Cal. 2014) (certifying class of immigration detainees challenging policies and practices relating to the ability to make telephone calls at ICE and DHS detention facilities).

Plaintiffs' claims are transitory. They are based on immigration detention, the length of which can be uncertain and variable. A proposed class representative could also be released or deported prior to the conclusion of this litigation. The claims are also premised on family separations, which, in light of *Ms. L.* and the *Flores* Settlement, can also be temporary. However, as discussed above, this does not preclude claims based on the mental effect of the detention and separation, which are allegedly ongoing. Plaintiffs have presented substantial evidence to support this position, and that such effects can continue even after detention and family separation have ended.

For the foregoing reasons, Defendants have not demonstrated a substantial conflict in the interests of Plaintiffs and the absent class members. Accordingly, the adequacy requirement has been satisfied. Moreover, even if independent adequacy analyses of the Custody and Released Subclasses were necessary, members of each Subclass seek the same relief: access to mental health screening and corresponding treatment sufficient to address the impact of the family separation policy. Plaintiffs can adequately represent all class members.

c)    Requirements of Fed. R. Civ. P. 23(b)(2)

Fed. R. Civ. P. 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." "[T]he primary role of this provision has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *see also Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("As the Advisory Committee Notes explain, 23(b)(2) was adopted in order to permit the prosecution of civil rights actions.").

The requirement of Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688; *see also Dukes*, 564 U.S. at 360 (internal citations and quotation marks omitted) ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted -- the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."). However, "[t]he fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Rodriguez*, 591 F.3d at 1125 (9th Cir. 2010).

Plaintiffs contend that Rule 23(b)(2) is satisfied because an injunction would protect all members of the proposed class from the adverse effects of family separation. Such relief would require the Government to provide members of the proposed class with mental-health screenings and corresponding, appropriate medical services. *See* Dkt. 81 at 28-29. Because the claims challenge Defendants' policies

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|----------|-------------------------|------|------------------|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

and practices, and are not based on the needs of individual members of the proposed class, they contend that the requested relief will remedy the alleged injuries of class members "in a single stroke." *Id.* at 29 (citing *Parsons*, 754 F.3d at 689 ("every [member] in the proposed class is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in . . . policy and practice.")).

Defendants respond that Plaintiffs' claims do not satisfy the requirements because the nature of the requested relief is compensatory, not injunctive. It is well-settled that certification under Rule 23(b)(2) is only appropriate where the "primary relief sought is declaratory or injunctive." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (citing *Nelsen v. King Cty.*, 895 F.2d 1248, 1254-55 (9th Cir. 1990)). Monetary damages may only be included in a Rule 23(b)(2) class if such relief is "merely incidental" to the requested injunctive relief. *See Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). Defendants argue that, because Plaintiffs alleged injuries vary in nature, cause and extent, an injunction that requires Defendants to implement treatment policies sufficient to address all of them is, in effect, granting compensatory relief.

Defendants' position is not persuasive. With respect to a class that is proposed under Rule 23(b)(2), "[e]ven if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Walters*, 145 F.3d at 1047. Defendants have provided no authority supporting the position that injunctive relief becomes compensatory for the purposes of Rule 23(b)(2) because it imposes what a defendant deems burdensome conditions. The proposed relief here is not the establishment of a common fund to pay for the costs of medical care. *See, e.g.*, *O'Connor v. Boeing N.A., Inc.*, 180 F.R. D. 359, 378 n.23 (N.D. Cal. 1997); *Zinser*, 253 F.3d at 1195-96. Plaintiffs seek what they contend will be appropriate policies and procedures to address the mental health issues of parents who have been separated from their children. Such classwide injunctive relief is appropriate under Rule 23(b)(2). *Parsons*, 754 F.3d at 686; *Walters*, 145 F.3d at 1047.

The proposed class is also distinguishable from the class proposed in *Dukes*. The Supreme Court determined that, in addition to the deficiencies with respect to commonality, it was also improper to certify a claim for backpay under Rule 23(b)(2):

> [C]laims for *individualized* relief (like the backpay at issue here) do not satisfy the Rule. The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted -- the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

564 U.S. at 360-61 (emphasis in original) (citation omitted).

The proposed injunctive relief here is not the same. Plaintiffs seek an injunction requiring Defendants to meet their constitutional obligations with respect to mental health and trauma treatment. It is not unique relief to each member of the proposed class for the reasons stated above. It is a general requirement to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

provide mental health screening and treatment, with the latter provided according to the determinations made in that process by appropriate medical professionals. The injunctive relief would be premised on an assessment of the constitutional standards that apply to all members of the proposed class. *See, e.g.*, *Doe v. Kelly*, 878 F.3d 710, 722 (9th Cir. 2017) (internal quotation marks and citation omitted) ("There is no question that detainees are entitled to adequate medical care.").

*Unknown Parties v. Johnson*, 163 F. Supp. 3d 630 (D. Ariz. 2016), presented similar issues. There, a class of immigration detainees brought due process claims challenging various conditions of their confinement in CBP facilities, including the availability of medical and mental health care. *Id.* at 633. In concluding that the proposed class should be certified under Rule 23(b)(2), *Johnson* determined that "Plaintiffs' claims for injunctive relief stemming from allegedly unconstitutional conditions of confinement are the quintessential type of claims that Rule 23(b)(2) was meant to address . . . [because] the claims of systemic deficiencies in CBP's detention facilities apply to all putative class members." *Id.* at 643.

Defendants also argue that Plaintiffs are only entitled to receive "adequate" medical care while in detention, and that because they received such care, no injunctive relief is needed. This argument seeks a merits determination that is inappropriate in connection with a motion for class certification. *See Amgen*, 568 U.S. at 466; *Alcantar*, 800 F.3d at 1053. Thus, whether the availability of mental health and trauma-based treatment during immigration detention is adequate is at issue in determining whether Plaintiffs' due process rights have been violated. That is distinct from an assessment whether the requested relief is as to "policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688 (citing *Rodriguez*, 591 F.3d at 1125). Further, this issue is addressed in part in connection with the Injunction Motion.

For the foregoing reasons, the Rule 23(b)(2) requirements have been met.

*          *          *

The proposed class meets each requirement under Fed. R. Civ. P. 23(a) and (b)(2). Accordingly, the Certification Motion is **GRANTED IN PART**. The following class is certified:

> All adult parents nationwide who entered the United States at or between designated ports of entry, who (1) on or after July 1, 2017, were, are, or will be detained in immigration custody by DHS; and (2) have a minor child who has been, is, or will be separated from them by DHS and detained in DHS or Office of Refugee Resettlement custody or foster care, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child.

The Court excludes from the class definition -- without prejudice to later request to redefine the class based on new information -- parents with a criminal history or communicable disease, or those apprehended in the interior of the country.[22] *See Wang*, 737 F.3d at 546 (stating that Fed. R. Civ. P. 23

---

[22] As *Ms. L.* also found, the focus of this litigation is on migrant families entering the United States at or between designated ports of entry. Excepting at this time parents with criminal histories or communicable diseases, as well as those who were apprehended far from the border, recognizes that family separations may occur for legitimate reasons that are beyond the scope of the claims in the current action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|----------|--------------------------|------|------------------|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

"provides district courts with broad authority at various stages in the litigation . . . to redefine . . . classes as appropriate.")

The following subclasses are certified: (i) the Custody Subclass, which is defined as all members of the class who are currently or will be detained in immigration custody by DHS; and (ii) the Released Subclass, which is defined as all members of the class who were previously detained in immigration custody by DHS, but who have since been released.

**V.      Injunction Motion**

A.      Relief Requested

The Injunction Motion seeks to require Defendants to provide those who have been separated with individualized, evidence-based, and trauma-informed mental health screening and services. *See* Dkt. 45 at 19. Plaintiffs define "evidence-based and trauma-informed" treatment as that which is "designed especially to alleviate the psychological and neurobiological consequences of forcible separation." *Id.* Applying these standards, Plaintiffs seek a preliminary injunction requiring that Defendants: (i) promptly reunify families that have been separated; (ii) immediately screen all reunited parents and children to identify those in need for additional mental health and trauma services, and to develop treatment plans for those individuals; (iii) provide mental health services to Plaintiffs in an environment that does not prolong any trauma experienced by Plaintiffs, *i.e.*, locations other than government detention centers; (iv) provide counseling services to the family as a whole, *i.e.*, parents together with the children from whom they were separated; (v) ensure that such care is delivered in a culturally and linguistically sensitive manner, and by professionals trained in evidence-based trauma-informed interventions; and (vi) provide such services for a sufficient period of time, even after the families' release from detention, to ensure that any harm caused by the separation is mitigated. *See id.* at 19-21.

B.      Analysis

1.      Legal Standards

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Instead, in determining whether to grant such relief, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)).

To obtain a preliminary injunction, the moving party must establish each of the following: (i) it is likely to succeed on the merits of its underlying claims; (ii) it is likely to suffer irreparable harm unless the requested preliminary injunctive relief is granted, *i.e.*, for the time period between granting the relief and the conclusion of the action; (iii) the balance of the equities between the parties tips in its favor; and (iv) and injunction is in the public interest. *See Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). Alternatively, where a plaintiff establishes "serious questions going to the merits," and demonstrates "a balance of the hardships that tips sharply towards the plaintiff," a preliminary injunction is warranted "so long as the plaintiff also shows that there is a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).[23]

2.  Application

a)  Whether Plaintiffs' Claims are Barred by Sovereign Immunity

Defendants argue that Plaintiffs have failed to show a likelihood of success on the merits because their claims are barred by sovereign immunity. *See* Dkt. 109 at 16-17. Thus, they contend that the relief sought by Plaintiffs is a "reparative injunction," which directly compensates them by ordering Defendants to engage in remedial measures. *Id.* Plaintiffs respond that the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, waives sovereign immunity for actions against the United States seeking relief other than money damages. Because the relief they seek is not monetary, they contend that sovereign immunity does not apply. *See* Dkt. 119 at 6-7.

The APA provides, in relevant part:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

The APA includes a general waiver of sovereign immunity from civil cases challenging an official action or inaction, and that seeks only non-monetary relief. *See, e.g.*, *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012); *Bowen v. Massachusetts*, 487 U.S. 879, 892-93 (1988). *Bowen* interpreted Section 702, which was amended in 1976 to broaden the scope of the waiver of sovereign immunity through the APA, to include claims for "equitable action for specific relief" even when such a remedy "may require one party to pay money to another." 487 U.S. at 893. Based on this interpretation, *Bowen* held that an action to enforce the requirement of the Medicaid Act that the Secretary of Health and Human Services reimburse a state for certain expenses was within the statutory waiver:

> The State's suit to enforce § 1396b(a) of the Medicaid Act, which provides that the Secretary "shall pay" certain amounts for appropriate Medicaid services, is not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money.

---

[23] *Cottrell* determined that the "serious questions" test, which requires a lower showing of success on the merits than the "likelihood of success" required by *Winter*, remains in place where two conditions are met. *First*, the balancing of the equities must tip "sharply" in favor of plaintiff. *Second*, the other two *Winter* factors -- irreparable harm and the public interest -- must be met. *See Farris v. Seabrook*, 677 F.3d 858, 864-65 (clarifying the *Cottrell* test).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | | Date | November 5, 2019 |
|---|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | | |

*Id.* at 900 (emphasis in original); *see also Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1170 n.10 ("*Bowen* simply reaffirms two steadfast principles: (1) equitable relief, which make take the form of money, is different than monetary damages; and (2) when Congress has specifically provided a waiver of sovereign immunity in a statute that allows for equitable relief (there, the Administrative Procedure Act []), that may occasionally involve specific relief in the form of money.").[24]

Defendants have cited no authority to support the argument that, because Plaintiffs seek a "reparative" injunction, *i.e.* one that seeks remedial measures to cure past harm, the claims are not subject to the waiver of sovereign immunity in the APA.[25]

As discussed above, Plaintiffs seek an order compelling Defendants to provide sufficient mental health and trauma screening and treatment to members of the proposed class who have been subjected to the family separation policy. Plaintiffs do not seek money damages, "which substitute for a plaintiff's loss," but rather seek specific, injunctive remedies, "which give the plaintiff exactly what he should have received." *Zapara v. C.I.R.*, 652 F.3d 1042, 1047 (9th Cir. 2011); *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) ("*Bowen* held that Congress employed this language ['money damages'] to distinguish between specific relief and compensatory, or substitute, relief."); *Bowen*, 487 U.S. at 879 ("Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.") (emphasis in original) (internal quotation marks and citation omitted).

Because Plaintiffs seek an injunction that would require the Government to act in a manner that is required by the Constitution, this claim is not barred by sovereign immunity. *See Marceau v. Blackfeet Housing Auth.*, 540 F.3d 916, 929 (9th Cir. 2008) (a request for an injunction ordering the Department of Housing and Urban Development to repair or even rebuild plaintiffs' homes was not an action seeking money damages under the APA); *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998) (an action for specific performance of a contract is "not an action for 'money damages' under [Section 702], even if the remedy may actually require a payment of money by the government.").

For the foregoing reasons, sovereign immunity does not preclude a preliminary injunction.

b)      Mandatory vs. Prohibitory Injunctions

"A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits. A mandatory

---

[24] That *Bowen* involved an express statutory mandate does affect its application here notwithstanding that no similar statute is at issue. Plaintiffs contend that Defendants violated their due process rights by providing insufficient medical care. Compliance with the Constitution may require the Government to spend money. Under *Bowen*, this is does not convert the request for injunctive relief into one for money damages.

[25] Defendants contend that the type of relief sought by Plaintiffs is "commonly" known as a "reparative injunction," *see* Dkt. 109 at 16. However, they cite *Rosebrock v. Mathis*, 745 F.3d 963, 970 (9th Cir. 2014), which appears to be on the only Ninth Circuit decision to have used this term, and it does not address sovereign immunity.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

injunction orders a responsible party to take action." *Marlyn Nutraceuticals Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009) (internal citations omitted). In general, mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* at 879 (internal citations omitted); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ("[M]andatory injunctions should not issue in 'doubtful cases.'") (quoting *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011)).

The requested relief could be construed as imposing affirmative obligations on Defendants, *i.e.*, to improve the quality and scope of the mental health screening and treatment provided at immigration detention facilities, and to provide such treatment to those who did not receive it before they were released. In this respect, the requested relief could be deemed mandatory because it would "order[] the responsible part[ies] to take action." *Marlyn Nutraceuticals*, 786 F.3d at 879; *see also Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996). However, denying the requested relief on this basis would be inconsistent with the distinction between mandatory and prohibitory injunctions that has been recognized. *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017).

*Hernandez* involved a class of non-citizen detainees who sought to enjoin the Government's failure to require that DHS consider a person's financial circumstances when making a bond determination. *See id.* at 983. The district court granted the motion for a preliminary injunction, and required ICE and immigration judges to "consider, in all future hearings, a detainee's financial circumstances in determining the amount of the bond to be set and to consider whether the person may be released on alternative conditions of supervision." *Id.* at 987. The injunction also required the Government to "conduct new bond hearings for current class members whose bonds were set before the order went into effect." *Id.*

The Ninth Circuit determined that the order did not reflect an abuse of discretion by the district court under the *Winter* factors. It also addressed whether the injunction was mandatory, and, if so, whether that weighed against its entry:

> As to the government's first challenge -- its objection to the requirement that it conduct future initial bond hearings in accordance with constitutional processes -- the injunction is prohibitory: it prohibits the government from conducting new bond hearings under procedures that will likely result in unconstitutional detentions. This part of the injunction prevents future constitutional violations, a classic form of prohibitory injunction. . . .

> The requirement that the government conduct new bond hearings for individuals detained on account of bonds set pursuant to the enjoined procedure . . . may, however, under certain plausible interpretations, be deemed mandatory. On the one hand, it directs the government to affirmatively hold new hearings it would not otherwise have held. On the other hand, it can also be understood as merely prohibiting the government from continuing to detain individuals subject to bond amounts set through unconstitutional procedures.

*Id.* at 998-99 (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

Assuming without deciding that the latter requirement was mandatory, *Hernandez* concluded that the higher standard for mandatory injunctions was satisfied. *Id.* at 999 ("Mandatory injunctions are most likely to be appropriate when the 'status quo . . . is exactly what will inflict the irreparable injury upon complainant.'") (quoting *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 830 n.21 (D.C. Cir. 1984)).

Here, the requested injunction is prohibitory as to the Custody Subclass. *Hernandez*'s requirement that the Government conduct new bond hearings pursuant to certain procedures is analogous to one that the Government provide better mental health treatment to immigration detainees subject to family separation. Both "prevent[] future constitutional violations, a classic form of prohibitory injunction." *Id.* at 998. Similarly, even if the injunction as applied to the Released Subclass might impose certain mandatory obligations on the Government, such relief is appropriate where, as here, the status quo is "exactly what will inflict the irreparable injury" upon Plaintiffs. *Id.* at 999; *see also People v. Mobile Magic Sales, Inc.*, 96 Cal. App. 3d 1, 13 (1979) ("The character of prohibitory injunctive relief [] is not changed to mandatory in nature merely because it incidentally requires performance of an affirmative act.").

For the foregoing reasons, the scope of the requested injunctive relief does not alone warrant the denial of the Injunction Motion.

              c)      Whether Plaintiffs Have Shown A Likelihood of Success on the Merits of Their Due Process Claim

Likelihood of success on the merits is the "most important" of the *Winter* factors. *Garcia*, 786 F.3d at 740. Plaintiffs seek preliminary injunctive relief based on the due process clause of the Fifth Amendment. *See* Compl. ¶¶ 172-185; Dkt. 45 at 4-5, 23. To obtain such relief, Plaintiffs must first establish that they are likely to succeed on the merits of the due process claim.

              (1)      <u>General Legal Standards</u>

The due process clause states that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is well-settled that due process rights are enjoyed by all persons within the territorial boundaries of the United States, regardless of citizenship. *See, e.g.*, *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("[T]here are literally millions of aliens within the jurisdiction of the United States . . . [and] the Fifth Amendment . . . protects every one of these persons.") (internal quotation marks omitted); *Yick Wo v. Hopkins*, 118 U.S. 356, 368-69 (1886).

In general, because the due process clause "does not confer any affirmative right to governmental aid," it does not impose a duty on the Government to provide such aid. *See Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011). There are two exceptions to this rule. *First*, a custodial relationship between a plaintiff and the Government creates a "special relationship" such that the Government assumes responsibility for the plaintiff's safety and well-being. *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012). This responsibility extends to providing adequate medical care. *See, e.g.*, *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) (when the Government asserts custody of a person, "and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

by . . . the Due Process clause."). *Second*, under the "state-created danger" doctrine, a person's right to due process is violated when "the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger[.]'" *Patel*, 648 F.3d at 971-72 (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)).

(2)     Evidence Relied Upon by the Parties

Plaintiffs submitted extensive evidence in support of their claim of the substantial trauma to them and their children that occurred as a result of their separation while in custody. Each Plaintiff submitted a declaration describing the fear and anxiety she suffered due the separation. *See generally* J.P. Decl., Dkt. 1-3; J.O. Decl., Dkt. 1-8; R.M. Decl., Dkt. 1-10. Plaintiffs also submitted a declaration from Alejandra Acuña, a licensed social worker, who conducted an evaluation of Ms. P, and determined that she had symptoms consistent with PTSD, depression and anxiety as a result of her separation from her daughter. *See* Acuña Decl., Dkt. 52 ¶¶ 7-8. Acuña opines that, if not properly and timely treated, this mental trauma will get worse. *Id.* ¶ 11. Dr. Jose Hidalgo, a psychiatrist, presented similar statements in his declaration about the mental conditions of Ms. O and Ms. M based on his examination of each of them. *See* Hidalgo Decl., Dkt. 49 ¶¶ 14-17.

As stated earlier, Plaintiffs also submitted declarations from several mental health experts. They support the conclusion that separating parents from children causes severe mental trauma that is aggravated if it is not timely treated. *See, e.g.*, Perry Decl., Dkt. 50 ¶ 22 ("[T]rauma-aware, trauma-sensitive and trauma specific interventions are necessary to mitigate the adverse effects on the children experiencing the severe stressors of the separation from their parents. The longer such interventions are delayed, the greater negative cumulative effect the acute neurophysiological, neuroendocrine, and neuropsychological response will have on these children and their parents."); Gee Decl., Dkt. 48 ¶ 6 ("Forcible family separation can also have devastating psychological and neurobiological consequences for parents.").

Plaintiffs also submitted evidence to support their position that the mental health services currently provided by Defendants are insufficient to address and reduce the risks of trauma presented by family separation. Their declarations state that after they were separated from their children, no information was provided to them about the location of their children or if and when they would be reunited with them. *See, e.g.* J.P. Decl., Dkt. 1-3 ¶¶ 3, 13. None declares that she was provided with any "significant mental health services," and only one declares receiving an assessment of any type. *See* Supplemental Declaration of R.M. ("Suppl. R. M. Decl."), Dkt. 161 at 7. Alfonso Mercado, a psychologist who consults with ORR and conducts psychological evaluations of minors who have been separated from their families, declares that "ORR provides general case management personnel and mental health follow up services at the facilities where minors reside, but does not provide specialized trauma-informed mental health care services for minors at these centers." Mercado Decl., Dkt. 54 ¶ 4. He also declares that family detention centers operated by ORR do not routinely provide mental health services. *Id.*

Defendants do not dispute that detainees are entitled to "adequate mental health screening and care," but argue that sufficient services are provided at the detention facilities. *See* Dkt. 109 at 22-29; *see also* Dkt. 244 at 4. To support this argument, Defendants rely on the declarations of De La Cruz and James, who state that both parents and children receive initial mental health assessments upon arriving at detention facilities and receive follow-up care if a need for it is shown. *See* De La Cruz Decl., Dkt. 110-1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

¶¶ 6-7; James Decl., Dkt. 109-2 ¶¶ 4-7; *see also* Dkt. 244 at 4 (as of October 31, 2019, "there are no material updates to the De La Cruz Declaration already on file."). James submitted a sample copy of the PSIQ form provided to each detainee upon arrival at FDC SeaTac. *See* Ex. 1 to James Decl., Dkt. 109-2 at 6-7. The PSIQ sets forth 14 questions, in both English and Spanish, about whether the detainee has ever received mental health treatment, had suicidal tendencies or has had a history of substance abuse. *Id.* Defendants also submitted a copy of an "Inmate Health Message Slip," which is a document made available by the Orange County Health Care Agency to detainees at facilities it operates, including the James A. Musick Facility. *See* Dkt. 141-1. The document has check-boxes, which correspond to questions about health issues, including "Suicidal," "Depressed," and "Anxious." *Id.* There is also a space where a detainee can write comments about his or her medical request. *Id.*

(3)    Analysis

The parties do not dispute that the Government is obligated to provide adequate medical care to detainees who are under its control. *See Kelly*, 878 F.3d at 722 ("There is no question that detainees are entitled to adequate medical care.") (internal quotation marks and citations omitted); *Henry A*, 678 F.3d at 1000. Instead, they dispute whether Defendants have met this obligation with respect to parents and children subject to the family separation policy, and whether that obligation continues upon the release of parents and children from detention, pending the resolution of their asylum claims.

These issues are discussed separately as to the Custody Subclass and the Released Subclass.

(a)    Custody Subclass

To state a due process claim based on allegations that insufficient medical care has been or is being provided to detainees, Plaintiffs must show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, 888 F.3d at 1124-25.

*Gordon* held that the standard for establishing a violation of the Due Process clause is different than the one that applies to a similar claim based on the Eighth Amendment. The former "must be evaluated under an *objective* deliberate indifference standard," *see id.* at 1124-25 (emphasis added), while only the latter requires evidence that the defendant intended to deny adequate medical care to detainees. *See id.* at 1125 n.4; *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (comparing Eighth Amendment and Due Process clause requirements, and determining that "a pretrial detainee who asserts a due process claim for failure to protect [must] prove more than negligence but less than subjective intent -- something akin to reckless disregard."). Because Plaintiffs' claims arise under the Due Process clause, the objective standard applies. *See Gordon*, 888 F.3d at 1124-25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

With respect to the Custody Subclass, Plaintiffs have shown a substantial likelihood of success on the merits of their due process claim. They have done so based on the evidence as to Defendants' failure to provide sufficient mental health and trauma-related screening and care to address the harm caused by family separation. Thus, they submitted substantial evidence through the declarations by Plaintiffs and qualified trauma and mental health experts, supporting the conclusion that family separation put Plaintiffs at substantial risk of serious mental health injuries.

Defendants response relies on the testimony of James and De La Cruz. Each states that Defendants provided mental health treatment to Plaintiffs while they were detained. That treatment included an initial assessment, in the form of the PSIQ and its 14 yes-or-no questions about the detainee's mental health history. *See* De La Cruz Decl., Dkt. 110-1 ¶¶ 6-7; James Decl., Dkt. 109-2 ¶¶ 4-7; Ex. 1 to James Decl., Dkt. 109-2 at 6-7. However, there is competing evidence that the use of the PSIQ led to limited, if any, meaningful mental health treatment. There is also evidence that this was insufficient care given the serious problems presented to parents and children who were separated without any certainty as to future reunification. *See, e.g.*, Hidalgo Decl., Dkt. 49 ¶¶ 17-23 (describing the need for individualized screenings and follow-up treatment, in safe and stable environments outside detention centers, with family members present); *id.* ¶ 24 ("Facilities with a law enforcement orientation do not have the training or expertise to manage the complex needs of trauma survivors."); Zayas Decl., Dkt. 51 ¶ 19 ("Contemporary clinical practice and research on childhood and adult trauma point out that in conditions of severe adversity the best response requires *immediate, thorough, culturally based screening* and *assessment*. Upon a diagnosis of a mental health effect (*e.g.* post-traumatic stress; anxiety disorder; major or reactive depression; reactive attachment disorder of children; suicidal ideation), and equally immediate engagement in *empirically scientifically informed treatment intervention* is indicated.") (emphasis in original).

Defendants claim that Plaintiffs received adequate care because initial screenings were provided to them, and the results of those screenings did not show ongoing mental health issues warranting follow-up. *See* De La Cruz Decl., Dkt. 110-1 ¶¶ 9-10. However, this evidence is not sufficient for purposes of the issues presented by the Injunction Motion, given the substantial evidence that Plaintiffs and their children suffered from significant mental distress including, but not limited to, PTSD. *See* Acuña Decl., Dkt. 52 ¶¶ 7-8; Hidalgo Decl., Dkt. 49 ¶¶ 14-17; Mercado Decl., Dkt. 54 ¶¶ 7-12. Viewed as a whole, the evidence supports a determination that Plaintiffs have shown a substantial likelihood of success on the merits of the due process claim.

This includes a likelihood of success as to whether Defendants were deliberately indifferent to the mental health risks presented by the family separation policy and did not take reasonable steps to avoid or address them. *See Gordon*, 888 F.3d at 1124-25; *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro*, 833 F.3d at 1060 ("In order to comply with their duty not to engage in acts evidencing deliberate indifference to inmates' medical and psychiatric needs, jails must provide medical staff who are competent to deal with prisoners' problems.") (internal quotation marks and citations omitted). This case is different, for example, from those involving choices between alternative courses of treatment or differences of medical opinion regarding a diagnosis. *See, e.g., Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (due process claim established where care provided to detainees was "medically acceptable under the circumstances); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). It is also different from those in which a custodian attempted to provide an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

alternative course of treatment, but was unable to do so due to a detainee's own actions. *See Shenandoah Valley Juvenile Ctr. Comm'n*, No. 5:17-CV-97, 2018 WL 6574790, at *10 (W.D. Va. Dec. 13, 2018).

Defendants have not presented evidence that they responded to the significant indicia of trauma described by Plaintiffs and their experts. Thus, there is no evidence that Defendants increased or improved the quality and scope of mental health screening or treatment available at facilities in which families subject to the separation policy were housed. "Just as the deliberate indifference of prison officials to the medical needs of prisoners may support Eighth Amendment liability, such indifference may also 'rise to the conscience-shocking level' required for a substantive due process violation." *Lemire v. Cal. Dept. of Corrections & Rehabilitation*, 726 F.3d 1062, 1075 (9th Cir. 2013) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998)).

Accordingly, preliminary injunctive relief is appropriate to ensure that Defendants meet their obligation to provide adequate medical care to detainees within the Government's control. *See Kelly*, 878 F.3d at 722. For these reasons, Plaintiffs have established a likelihood of success on the merits with respect to the Custody Subclass.

        (b)     Released Subclass

        (i)     <u>Special Relationship Doctrine</u>

Plaintiffs argue that Defendants' obligation to provide adequate medical care to its detainees does not end at the moment they are released. To support this position, Plaintiffs cite *Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999). The question presented there was whether a prisoner who was using prescription medication while confined was entitled to being provided with some amount of the same medication upon his release. *Id.* at 1161. *Wakefield* concluded that the answer was yes. *Id.* at 1164. It applied *DeShaney*, and determined that the Government is obligated to provide adequate medical care to detainees upon release because they have limited freedom to "act on [their] own behalf." 489 U.S. at 200. As *Wakefield* explained:

> [I]t is clear that while a prisoner is actually incarcerated the state restricts completely his ability to secure medical care 'on his own behalf.' For that reason, the Court has held, the state must provide prisoners with the medical care they need during the period of their incarceration. *See Estelle*, 429 U.S. at 103-05. It is a matter of common sense, however, that a prisoner's ability to secure medication 'on his own behalf' is not necessarily restored the instant he walks through the prison gates and into the civilian world. Although many patients must take their medication one or more times a day, it may take a number of days, or possibly even weeks, for a recently released prisoner to find a doctor, schedule an examination, obtain a diagnosis, and have a prescription filled. Accordingly, the period of time during which prisoners are unable to secure medication 'on their own behalf' may extend beyond the period of actual incarceration. Under the reasoning of *Estelle* and *DeShaney*, the state's responsibility to provide a temporary supply of medication to prisoners in such cases extends beyond that period as well.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

*Wakefield*, 177 F.3d at 1164; *see also Haley v. Cty. of Del Norte, Cal.*, 2009 WL 3568897, at *8 (N.D. Cal. Oct. 30, 2009) (under *Estelle*, *Deshaney*, and *Wakefield*, prison officials "had a clear obligation to provide medical care" for an inmate that "*was a prisoner when his medical needs arose*" and that "releasing plaintiff to fend for himself is not the same thing as providing care.") (emphasis in original).

*Wakefield* establishes that a detainee's right to sufficient medical care does not end upon release. It does not, however, set a specific period of time after release when this obligation ends, or a concrete test for making such a determination. *See* 177 F.3d at 1164 (describing a "transitional period" as "the period of time reasonably necessary" to obtain the required medical treatment). Nor does *Wakefield* provide express guidelines for the scope of the Government's obligation to provide continued, in-person mental health treatment and trauma counseling services after a detainee is released.

District courts have reached different outcomes when applying *Wakefield. Compare Haley*, 2009 WL 3568897, at *7-8; *Lugo v. Senkowski*, 114 F. Supp. 2d 111, 115 (N.D.N.Y. 2000) (under *Wakefield*, outgoing detainees who are "receiving continuing treatment at the time of [their] release" are entitled to ongoing medical services "for the period of time reasonably necessary for [them] to obtain treatment"); *Fox v. Peters*, 2016 WL 4265736, at *1, *3 (D. Or. Aug. 11, 2016) (under *Wakefield*, a prisoner left disabled and at "grave risk of imminent harm" through the negligence of prison officials was entitled to two weeks of in-person follow-up visits upon his release, to ensure that he would be able to transition to self-care); *Charles v. Cty. of Orange, N.Y.*, 2017 WL 4402576, at *9 (S.D.N.Y. Sept. 29, 2017), *vacated and remanded*, 925 F.3d 73 (2d Cir. 2019) (inmates who had developed mental health conditions for the first time, and began receiving treatment for them while incarcerated, "may have been owed a limited duty of protection beyond their periods of incarceration (a year and eight months, respectively) which was not satisfied by the state"), *with Cook v. California*, No. 16-cv-00674-LIO, 2016 WL 4161114, at *5 (E.D. Cal. Aug. 5, 2016) (*Wakefield* did not apply where the plaintiff had not been using prescribed medication); *Koch v. Wade*, No. 15-cv-3895, 2016 WL 1381793, at *2 n.2 (N.D. Cal. Apr. 5, 2016) ("[A]lthough the Supreme Court has found that the Eighth Amendment requires the state to provide adequate medical care to *incarcerated* prisoners . . . that obligation has not been extended to convicts who are not in custody and therefore free to find treatment on their own," with the limited exception of *Wakefield*, which is limited to a prisoner "who is receiving and continues to require medication."); *Moran*, 2017 WL 1378406, at *7 (limiting *Wakefield* to scenarios "where the plaintiff's ability to seek medical care was curtailed by previous restrictions on his liberty").

If *Wakefield* has established any general rule, it is that "whether or not a release from physical custody relieves a state of the duty [to provide adequate medical care] it had assumed may depend on the circumstances surrounding the release." *Johnson v. Florida*, 348 F.3d 1334, 1346 (11th Cir. 2003) (citing *Wakefield*, 177 F.3d at 1160); *Davis v. Brady*, 143 F.3d 1021 (6th Cir. 1998); *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1039 nn.19-20 (11th Cir. 2001) (en banc). For example, *Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005), held that a parolee, "although not in the state's physical custody, is nonetheless in its legal custody, and his or her freedom of movement, while not as restricted as that of an incarcerated prisoner, is nonetheless somewhat curtailed." *Jacobs* held that if only minimal restrictions are imposed on a parolee, the corresponding obligations of the state following release are similarly limited. *Id.* at 107. However, if a prisoner is released and placed on parole requiring him to reside at a particular location, the state assumes the limited duty of ensuring that the location is habitable. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|----------|--------------------------|------|-------------------|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

Under *Wakefield* and *Jacobs*, whether Defendants have a duty to provide mental health treatment to members of the Released Subclass comparable to what should have been provided while they were in custody depends on both the extent of the necessary treatment and the conditions of their release. The evidence that Plaintiffs have submitted about the limited relief they received while in custody includes the ongoing effect of the prior family separations. *See, e.g.*, Zayas Decl., Dkt. 51 ¶ 25. These effects are very serious, leaving Plaintiffs at "grave risk of imminent harm." *Fox*, 2016 WL 4265736, at *2. Their needs are at least as significant as the need for transitional prescription medications, particularly where the condition that requires treatment is the result of actions by the Government. *See id.* at *1, *3.

It is also undisputed that when members of the Released Subclass leave custody, they are required to comply with certain terms and conditions, including their appearance at future immigration and court proceedings. *See* Dkts. 163, 166. Although not independently sufficient to support a determination that they are in constructive custody, that there are restrictions is relevant to the assessment of whether transitional mental health care should be provided. *See Jacobs*, 400 F.3d at 107.

(ii)      State-Created Danger Doctrine

Plaintiffs also rely on the "state-created danger doctrine" to support their claim for relief as to the Released Subclass. Under that doctrine, government agents can be liable by taking affirmative steps that place a person in a position of danger or by exposing such "an individual to a danger which he or she would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1066, 1074 (9th Cir. 2006). Such affirmative conduct must also be taken with "deliberate indifference" to a "known or obvious danger." *Patel*, 648 F.3d at 974 (internal quotation marks and citations omitted).

The state-created danger doctrine has been applied when officers fail to protect an individual from harm by third parties. *See Henry A.*, 678 F.3d at 1002; *Kennedy*, 439 F.3d at 1061. However, this is not a required element. Instead, "the point of the state-created danger doctrine is that the affirmative actions of a state official created or exposed an individual to danger *which he or she would not have otherwise faced*." *Henry A.*, 678 F.3d at 1002-03 (internal quotation marks omitted) (emphasis in original); *see also Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018).

The state-created danger doctrine has been applied to officers who "affirmatively ejected [a plaintiff] from a bar" late at night, in very cold weather conditions, and did not allow him to re-enter the bar, ultimately resulting in the plaintiff's death from hypothermia. *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1085, 1087 (9th Cir. 2000); *see also Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (applying state-created danger where officers responding to a 911 call dragged an individual in need of medical care to an empty house, locked the door, and left him there alone); *Pauluk v. Savage*, 836 F.3d 1117, 1124-25 (9th Cir. 2016) (state-created danger doctrine could be applied against a public employer that failed to address a toxic mold problem in its facilities, resulting in the illness of its employees).

Plaintiffs have submitted sufficient evidence to show a likelihood of success on the merits of their state-created danger claim. Defendants took affirmative steps to implement the zero-tolerance policy in which immigrant parents were separated from their children. The present evidence also supports the position that this conduct caused severe mental trauma to parents and their children. Plaintiffs also presented evidence that Defendants were aware of the risks associated with the family separation when they

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

implemented it. Indeed, Attorney General Sessions stated that the purpose of the policy was to deter foreign nationals from entering the United States illegally. This is sufficient to show a likelihood of success in establishing that Defendants (i) "affirmatively place[d] [Plaintiffs] in danger" they would not otherwise have faced, but for the family separation policy and the limited mental health screening and treatment, and (ii) "act[ed] with deliberate indifference to [a] known or obvious danger" by implementing the policy with awareness of the potential harm it would cause and intending to use that as a basis to deter future attempts by those similarly situated to enter the United States. *Hernandez*, 897 F.3d at 1137; *Kennedy*, 439 F.3d at 1062.

                    (iii)    Whether the Requested Injunctive Relief is Available

For the foregoing reasons, the application of the special relationship and state-created danger doctrines reflect that Plaintiffs have shown a substantial likelihood of success on their due process claim with respect to the Released Subclass.

At the hearing, the Government argued that assuming *arguendo* that Plaintiffs have viable claims, an available remedy would be an award of damages. Counsel noted that the Federal Tort Claims Act ("FTCA") can be the basis for a civil action against the United States for alleged intentional torts by federal law enforcement officers. 28 U.S.C. § 2680(h). Similarly, under certain circumstances a *Bivens* action can provide the basis for an award of money damages to those injured by federal officers who violated certain constitutional rights of a plaintiff. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 396-97 (1971)[26]; *Carlson v. Green*, 446 U.S. 14, 19 (1980) (extending *Bivens* to provide damages remedy for failure to provide adequate medical treatment to a federal prisoner in violation of the Eighth Amendment).[27]

Plaintiffs seek the application of two well-settled legal theories, but in a different context. In light of the severity of the alleged harm, which is discussed in further detail with respect to Plaintiff's showing of irreparable injury, that these legal theories have been adopted in proceedings seeking money damages does not *per se* preclude their application in determining whether an injunction is warranted. Although these principles have not been a regular basis for granting injunctive rather than monetary relief, other courts have done so. *Compare Fox*, 2016 WL 4265736, at *3 ("As defendants cannot confirm at this point that anyone will continue to check in on Fox, I must enter this injunction requiring them to do so."); *with Wakefield*, 177 F.3d at 1164-65 and *Hernandez*, 897 F.3d at 1129-30 (applying these doctrines in the context of claims for money damages brought under 42 U.S.C. § 1983 against a state actor.) As noted, where the status quo is "exactly what will inflict the irreparable injury," the possibility of alternative relief through a claim for damages not a sufficient basis to deny injunctive relief. *Hernandez*,

---

[26] A *Bivens* action is "the federal analog to suits brought against state officials" under Section 1983. *See Harman v. Moore*, 547 U.S. 250, 254 n.2 (2006).

[27] Pending in the District of Massachusetts is a putative class action whose plaintiffs seek the certification of a class of noncitizen minor children who were separated from their parents as a result of the family separation policy. *See K.O. v. Sessions*, No. 18-cv-40149 (D. Mass.). The first amended complaint there seeks money damages and the establishment a fund to be used to pay for the medical treatment of the class members who allegedly have experienced mental health and emotional harm due to the family separation policy. *Id.*, Dkt. 45 at 58.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

872 F.3d at 999. Moreover, affirmative injunctive relief is only disfavored where a viable alternative remedy is available. *See Marlyn Nutraceuticals*, 571 F.3d at 878-79.

Although money damages may be awarded against federal officials under the FTCA and *Bivens*, each claim is limited in its application. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) ("[T]he Court has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity . . . [and] it has consistently refused to extend *Bivens* to any new context or new category of defendants.") (internal citations and quotation marks omitted); *see also* 28 U.S.C. § 2680 (listing exceptions to the FTCA, including claims based on the performance of a "discretionary function"). Therefore, the Government has not shown a viable alternative remedy or a preclusive bar to the requested injunctive relief, particularly in light of the evidence that injuries to members of the proposed class will become worse unless treated promptly.

*          *          *

For the foregoing reasons, Plaintiffs have demonstrated a likelihood of success on the merits as to the Custody Subclass. A likelihood of success as to the Released Subclass has also been shown as to the legal theories upon which the due process violation is alleged; provided, however, that any relief provided to the Released Subclass will necessarily be subject to certain limitations in light of the issues discussed above. These include, but are not limited to: (i) the length of the "transitional period" after release during which Defendants are obligated to provide medical care, *see Wakefield*, 177 F.3d at 1164; (ii) the location and identities of the Released Subclass; (iii) the willingness of the Released Subclass to participate in Government-sponsored mental health care; and (iv) the appropriate nature, scope, and implementation of the relief.

        d)      Irreparable Injury

Plaintiffs must next show that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Farris*, 677 F.3d at 864 (quoting *Winter*, 555 U.S. at 20). "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Because Plaintiffs have established a likelihood of success on the merits of their constitutional claims, this separate element of the test for whether to issue a preliminary injunction is also satisfied. *See Hernandez*, 872 F.3d at 994-95.

The injuries here include severe mental trauma, caused by separation of parents from minor children. Such harm has been deemed of a nature that warrants injunctive relief. *See Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir. 2001) (considering whether denial of a stay of deportation proceedings would cause irreparable harm, and concluding that "important factors include separation from family members" and "medical needs"); *Hernandez*, 872 F.3d at 995. The inherent vulnerability of the members of the proposed class and their minor children also supports a showing of irreparable harm. *See Az. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) ("The irreparable nature of Plaintiffs' injury is heightened by Plaintiffs' young age and fragile socioeconomic position.").

Plaintiffs have submitted substantial evidence to support the position that the trauma they experienced as a result of the family separation policy will cause irreparable injury unless they are provided with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

immediate care. *See, e.g.*, Gee Decl., Dkt. 48 ¶ 7 ("Children and parents seeking asylum are likely to be especially vulnerable to the immediate and long-term risks associated with forcible separation.") (internal citations omitted); Hidalgo Decl., Dkt. 49 ¶ 13 ("The effects of trauma [on] children are significant, long-lasting, and difficult to mitigate."); Zayas Decl., Dkt. 51 ¶ 25 ("[E]very traumatic moment a child endures creates potentially lifelong damage. The separation of families . . . is a recipe for ruining the futures of children and their parents, affecting the families forever.").

Defendants argue that Plaintiffs' reunification with their children mitigates any harm caused by the family separation policy. However, contrary evidence was submitted that reunification after separation is not alone a sufficient cure:

> Reunification with caregivers is the first necessary step in mitigating the trauma these children experienced. However, reunification with caregivers is not enough to mitigate the effects of the forced separation. It is essential to intervene and treat the trauma as early as possible so that the child can function adaptively and feel less consumed by the traumatic event. Effective psychosocial interventions can mitigate the long-term effects of trauma exposures. Early intervention is effective in reducing the negative effects of trauma on children's development. Without such trauma treatment programs, the effect of the forcible separation on these children will be debilitating and will cause them life-long harm.

Wong Decl., Dkt. 46 ¶ 25.

Defendants also argue that irreparable harm has not been shown because the evidence only supports the claim that in the future, Plaintiffs could experience adverse mental health conditions. *See* Dkt. 109 at 30. This does not sufficiently address the evidence that has been presented by Plaintiffs as to the present mental health harm to Plaintiffs and their children. Furthermore, as stated above, Plaintiffs' claims are based on the alleged violation of their constitutional rights, the resulting current emotional injuries, and those future ones for which there is a substantial risk. *See Gordon*, 888 F.3d at 1124-25.

Finally, the right to familial association has long been recognized as a liberty interest protected by the Due Process Clause. *See Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) ("[T]he relationship between parent and child is constitutionally protected."); *Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("The liberty interest at issue in this case -- the interest of parents in the care, custody, and control of their children -- is perhaps the oldest of fundamental liberty interests . . . ."). For purposes of the Injunction Motion, the evidence supports the conclusion that ongoing mental health treatment is necessary after reunification to prevent, mitigate, and address the ongoing harm to the relationship between the parents in the proposed class and their children. This includes treatment to address the potential that children may blame their parents for the separation. Absent appropriate screening and treatment, there is a substantial risk of harm to the parent-child relationship, which is protected by the Due Process Clause.

For the foregoing reasons, Plaintiffs have satisfied the irreparable injury component with respect to the Injunction Motion.[28]

---

[28] As noted, the *K.O.* matter involves a putative class of minor children who are non-citizens seeking money damages due to alleged insufficient medical treatment. This does not warrant a conclusion that Plaintiffs here

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

e)      Whether the Balance of the Equities Favors Entry of the Injunction and
Whether the Injunction is in the Public Interest

Under the final *Winter* factors, Plaintiffs must establish that the balance of the equities tips in their favor, and that the requested relief is in the public interest. *See Winter*, 555 U.S. at 20. The Supreme Court has stated that where the Government is the party opposing a preliminary injunction, these factors tend to merge. *See Nken v. Holder*, 556 U.S. 418, 435.[29]

The "government suffers no harm from an injunction that merely ends unconstitutional practices and/or ensures that constitutional standards are implemented." *Kelly*, 878 F.3d at 718 (citing *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)); *Valle de Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). Similarly, it is "always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("[W]hen a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Defendants argue that the requested preliminary injunction would interfere with the manner in which the Government supervises and manages detainees. Thus, it would be required to establish new protocols for mental health and trauma treatment for such individuals. However, these arguments have not been supported with evidence showing that the implementation of the proposed procedures is infeasible or would impose undue hardship. Moreover, the Government has reported that Congress appropriated $4 million to the Substance Abuse and Mental Health Services Administration of HHS to address the mental health needs of certain families subject to the separation policy. *See* Dkt. 168 at 7.

Furthermore, that the Government will incur costs in providing preliminary relief is not a reason to deny it. There is no evidence that the proposed relief would impose unreasonable financial burdens on the Government. Moreover, the costs to the Government will be the result of its actions and the resulting, claimed adverse effects on Plaintiffs. *See Hernandez*, 872 F.3d at 995-96 ("We have no doubt that . . . any additional administrative costs to the government are far outweighed by the considerable harm to Plaintiffs' constitutional rights in the absence of the injunction."); *Harris v. Bd. of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)) ("[F]aced with [] a conflict between financial concerns and preventable human suffering [there ought to be] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor").

Defendants next contend that the entry of the preliminary injunction would not serve the public interest because it would interfere with the Government's obligation to comply with court orders in *Flores* and

---

cannot show irreparable harm. Even if plaintiffs there succeed on the merits, that may not provide sufficient, or any, relief to the parents who are the members of the class in this action. *See K.O.*, No. 18-cv-40149-TSH (D. Mass.), Dkt. 1 ¶ 189. Moreover, a motion to dismiss was filed in that action on March 8, 2019, and has not yet been decided. *See K.O.*, No. 18-cv-40149-TSH (D. Mass.), Dkt. 51. Accordingly, whether and to what extent the claims there may proceed is not presently clear.

[29] The merger does not mean that the public interest always weighs against an injunction as to certain government practices. *See Rodriguez*, 715 F.3d at 1145-46 (*Nken* "does not contain any [] holding" supporting "the general proposition that the public interest always militates against enjoining government practices.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

*Ms. L. See* Dkt. 109 at 31. The proposed relief here does not conflict with the Government's obligation to comply with the injunction in *Ms. L.*, which requires the reunification of families. Similarly, even if the requested relief, as Defendants contend, "compound[s] the Government's burden until necessary for it to carry out its action in accordance with established law," *see* Dkt. 109 at 31, it ensures that the Government will meet its constitutional obligations. *See Rodriguez*, 715 F.3d at 1146.

Accordingly, the final two *Winter* factors weigh in favor of entering the injunction.

                                         \*               \*               \*

For the foregoing reasons, the Injunction Motion is **GRANTED IN PART**, as follows:

(i) As soon as reasonably possible through the exercise of reasonable efforts and the reasonable allocation of resources, and following the notification to members of the Custody Subclass through the process adopted pursuant to subparagraph vii *infra,* Defendants shall make available, to all members of the Custody Subclass who elect to have them, medically appropriate initial mental health screenings that are sufficient to identify those who require immediate mental health treatment to address the current effects of their prior and/or ongoing separation from their minor children;

(ii) The initial mental health screenings for those members of the Custody Subclass who elect to have them shall be performed by one or more persons who are individually or collectively qualified to do so, including with respect to the ability to perform the screenings, make a corresponding, conditional mental health diagnosis of the current effects of the prior and/or ongoing separation from their minor children, determine whether any further diagnosis is necessary and recommend appropriate, immediate treatment;

(iii) Based on the diagnoses and recommendations that are made through the initial mental health screenings, Defendants shall provide appropriate medical treatment to those members of the Custody Subclass who require and elect to receive it, sufficient to address their current mental health conditions caused by their prior and/or ongoing separation from their minor children. If appropriate under the applicable medical standards, whether treatment of members of the Custody Subclass should include interaction with their minor children should be considered;

(iv) As soon as reasonably possible through the exercise of reasonable efforts and the reasonable allocation of resources, and following the notification to members of the Released Subclass through the process adopted pursuant to subparagraph vii *infra*, Defendants shall make available, to all members of the Released Subclass who elect to have them and who appear for them at location(s) that are reasonably convenient to them given their current locations and restrictions on travel under their respective terms and conditions of release, medically appropriate initial mental health screenings that are sufficient to identify those who require immediate, transitional mental health treatment to address the current effects of their prior and/or ongoing separation from their minor children;

(v) The initial mental health screenings for those members of the Released Subclass who elect to have them shall be performed by one or more persons who are individually or collectively qualified to do so, including with respect to the ability to perform the screenings, make a corresponding, conditional mental health diagnosis of the current effects of their prior and/or ongoing separation from their minor

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

children, determine whether any further diagnosis is necessary and recommend appropriate, immediate, transitional treatment;

(vi) Based on the diagnoses and recommendations that are made through the initial mental health screenings, Defendants shall provide appropriate, transitional treatment to those members of the Released Subclass who require and elect to receive it, sufficient to address their current mental health conditions caused by their prior and/or ongoing separation from their minor children. Such transitional treatment shall be made available at locations that are reasonably accessible to the members of the Released Subclass given their current locations and restrictions on travel under their respective terms and conditions of release. Such transitional treatment shall be provided until those members of the Released Subclass, through reasonable good faith efforts and with the assistance of Plaintiffs' counsel, are able to locate and enter the care of other adequate health service providers; and

(vii) Counsel for the parties shall work collaboratively and promptly to establish a process to provide members of both the Custody and Released Subclasses with notice of the available mental health screenings and treatment and of their ability to elect whether to undergo such screenings and accept prescribed treatment. The notice to the members of the Released Subclass shall include the location(s) at which such screenings will be available.

Within 21 days of the issuance of this Order, the parties shall meet and confer and file a Joint Report as to the status of their collaboration on a process for providing the aforementioned notices to members of the Custody and Released Subclasses as well as the ordered relief. The report shall include the parties' collective and/or respective positions as to the status of the following: (a) the process for locating the members of the Custody and Released Subclasses; (b) the process for communicating with members of both subclasses as to the availability of the screenings and prescribed treatment that is available; (c) the process for how members of each subclass can communicate their respective decisions on whether to participate in the screening and/or treatment processes; (d) the locations at which the screenings and treatment will be made available to members of the Released Subclass who elect to participate; (e) deadlines for each step in the relief ordered, which may reflect both the mental health needs of the members of the subclasses and the limitations on government resources due to the recent lapse in federal funding; (f) other issues that should be addressed with respect to the ability of the parties to comply with the terms of this Order; and (g) whether a status conference would be appropriate to discuss and potentially resolve any open issues, and, if so, when it should be scheduled.

**VI.    Defendants' Motion to Dismiss**

      A.    Legal Standards

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim. Such a motion may be granted when the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations of the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

        B.      Application

Defendants advance five bases upon which they contend the Complaint should be dismissed: (i) Plaintiffs' claim for injunctive relief is moot; (ii) Plaintiffs' fail to allege violations of their constitutional rights upon which relief can be granted; (iii) sovereign immunity bars Plaintiffs' claims; (iv) this action is duplicative of *Ms. L.*, and improperly splits the claims for relief sought in that proceeding; and (v) venue is not proper in this District. *See generally* Dkt. 132.

            1.      Grounds 1-4

The first four of the matters raised in the Motion to Dismiss have been addressed above in connection with the Injunction Motion. Plaintiffs' claims are not moot, because their injuries are not resolved by the release and reunification of most class members. *See supra* §§ III(C), IV(B)(2)(b)(4). Plaintiffs have adequately stated a claim that the family separation policy, in combination with the insufficient mental healthcare provided during detention, violated their due process rights. *See supra* § V(B)(2)(c). The claims are not barred by sovereign immunity. *See supra* § V(B)(2)(a). The *Ms. L.* action does not warrant dismissal or transfer of this action. *See supra* § III.

            2.      Venue

                a.  Legal Standards

Under Fed. R. Civ. P. 12(b)(3), a party may move to dismiss or transfer an action for improper venue. When faced with a challenge under Rule 12(b)(3), the plaintiff bears the burden of establishing the propriety of his or her chosen venue. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1188 (N.D. Cal. 2017). Unlike certain other motions filed under Rule 12, the pleadings need not be accepted as true for purposes of determining whether venue is properly laid. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). However, "all reasonable inferences" must be drawn "in favor of the non-moving party and [a court must] resolve all factual conflicts in favor of the non-moving party." *Id.* at 1138.

The defense of improper venue may be waived pursuant to Rule 12(h)(1). Such a waiver occurs where

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

a party has omitted the venue defense from its first responsive pleading or motion brought under Rule 12. *See* Fed. R. Civ. P. 12(h)(1). Rule 12(h) has been interpreted broadly: if a "party wishes to raise any of these defenses [including venue], that must be done at the time the *first significant defensive move is made* . . . ." Wright and Miller, Federal Practice & Procedure (3d ed.) § 1391 (emphasis added). Accordingly, courts have found that failure to raise venue objections in opposition to a pre-answer motion for preliminary injunction constitutes waiver under Rule 12(h). *See, e.g.*, *Bautista-Perez v. Mukasey*, No. 07-cv-4192-TEH, 2008 WL 314486, *6-7 (N.D Cal. Feb. 4, 2008) ("A 'responsive pleading' for [the purposes of Rule 12(h)] is not solely a motion to dismiss or an answer."); *see also Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (identifying opposition to a preliminary injunction motion as the relevant "first responsive pleading" for purposes of evaluating waiver under Rule 12(h)).

       b.   Application

The Motion to Dismiss was not filed until September 18, 2018, more than a month after Defendants filed their oppositions to Plaintiffs' Motions. Although they could have challenged venue in each of them, they did not do so. For example, they did not raise this defense in connection with whether Plaintiffs had shown a likelihood of success on the merits, or whether this action was barred by the First to File rule. That Defendants did not previously challenge is a sufficient, independent basis to conclude that they waived the venue defense. *See Bautista-Perez*, 2008 WL 314486, at *6-7; *see also Misch ex rel. Misch v. Zee Enters., Inc.*, 879 F.2d 628, 631-32 (9th Cir. 1989) (in certain circumstances, venue can be waived through conduct other than the filing of a Rule 12 motion where such conduct "constitutes a tacit admission on the part of the movant that . . . venue is properly laid [], and that the court should dispose of the case on its merits.").

Further, Defendants' venue objection fails on the merits. The parties agree that venue is governed by 28 U.S.C. § 1391(e)(1). It provides that there is venue for an action against one or more federal officials

    [i]n any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . or (C) the plaintiff resides if no real property is involved in the action.

Defendants first contend that, because Plaintiffs are non-citizens who are not lawful permanent residents of the United States, venue cannot be established under subsection (C). This argument is not persuasive. The venue statute provides that, for purposes of venue, "a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled." 28 U.S.C. § 1391(c)(1). Courts have determined that non-citizens, including those who not lawful permanent residents, do not reside in any district of the United States for purposes of venue. *See, e.g.*, *Ibrahim v. Chertoff*, 2007 WL 1558521, at *4 (S.D. Cal. May 25, 2007); *Ou v. Chertoff*, No. 07-cv-3676-MMC, 2008 WL 686869, at *1-2 (N.D. Cal. Mar. 12, 2008).

Similarly, the alleged residency of two of the individual defendants -- Marin and Von Nordheim -- in this District is also insufficient to establish venue under subsection (A). In general, "all federal defendants reside in Washington, D.C.," and venue "does not lie in every district where a federal agency has a regional office." *Tsi Akim Maidu of Taylorsville Rancheria v. U.S. Dep't of Interior*, 16-cv-07189-LB,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

2017 WL 2289203, at *2 (N.D. Cal. May 25, 2017) (citing *Williams v. United States*, No. 01-cv-0024-EDL, 2001 WL 1352885, at *1 (N.D. Cal. Oct. 23, 2001) and *Reuben H. Donnelly Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978)).

Plaintiffs have presented evidence that is sufficient to support a determination that there is venue under subsection (B). Thus, it is sufficient to show that a "substantial part of the events or omissions giving rise to the claim occurred" in this District. *See* 28 U.S.C. § 1391(e)(1)(B). The statute "does not require that a majority of the events have occurred in the district where suit is filed, nor does it require that the events in that district predominate." *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000); *see also United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 752 (N.D. Cal. 2015) ("for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere.") (emphasis omitted).

The Complaint alleges that J.P. was detained at the James A. Musick Facility in Irvine, California, which is within this District. *See* Compl., Dkt. 1 ¶ 16. The claims of J.P. arise from her separation from her daughter, and the allegedly insufficient mental health treatment she received while in detention. This is sufficient to establish a basis for venue in this District. *See, e.g.*, *Sims v. United States*, No. 07-cv-02082-MCE, 2008 WL 4813827, at *3 (E.D. Cal. Oct. 29, 2008) (location of immigration detention sufficient to establish venue).

None of the other named Plaintiffs, nor their respective, minor children, were detained in this District. *See* Dkt. 1 ¶¶ 16, 30-31, 40-41. However, it is not required that the events in the district selected by Plaintiffs predominate over other districts. *See Rodriguez*, 89 F. Supp. 2d at 1136; *see also Hawkins v. Davis*, No. 00-cv-01077-DDP, 2000 WL 33936254, at *1 (C.D. Cal. Aug. 10, 2000) ("A substantial part of the events may arise, and venue may be appropriate, in more than one judicial district."). Moreover, that Plaintiffs also advance claims against supervisory officials and agencies whose conduct occurred elsewhere is not dispositive. *See, e.g.*, *Adab v. U.S. Citizenship & Immigration Servs.*, No. 214CV04597CASAGRX, 2015 WL 6249563, at *5 (C.D. Cal. Feb. 9, 2015) (citing *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25-26 (D.D.C. 2002) ("[The] mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative.")).

Because all reasonable inferences and factual conflicts must be resolved in favor of Plaintiffs in the context of a venue challenge under Rule 12(b)(3), *see Murphy*, 362 F.3d at 1138, venue is proper in this District.

                    *                    *                    *

For the foregoing reasons, the Motion to Dismiss is **DENIED**.

## VII.    Conclusion

For the reasons stated in this Order, the Certification Motion is **GRANTED IN PART**. The Injunction Motion is **GRANTED IN PART**. The Motion to Dismiss is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | November 5, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al v. Jefferson B. Sessions, et al. | | |

Pursuant to Fed. R. Civ. P. 25(d), the Clerk is **ORDERED** to alter the docket to reflect the following substitutions of certain Defendants: William P. Barr in place of Jefferson B. Sessions III; Kevin K. McAleenan in place of Kirstjen M. Nielsen; and Jonathan H. Hayes in place of Scott Lloyd.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    ak