JOSEPH H. HUNT
Assistant Attorney General
JEFFREY S. ROBINS
Deputy Director
SARAH B. FABIAN
Senior Litigation Counsel
LINDSAY VICK
Trial Attorney

NICOLE N. MURLEY
Senior Litigation Counsel
U.S. Department of Justice
Office of Immigration Litigation
PO Box 868, Ben Franklin Station
Washington, DC 20044
Nicole.Murley@usdoj.gov
Telephone: (202) 616-0473
Fax: (202) 616-8962
Attorneys for Defendants

Carter G. Phillips*
Jennifer J. Clark*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

Michael Andolina*
Timothy Payne*
Kevin Fee*
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Sean A. Commons (SBN 217603)
Bridget S. Johnsen (SBN 210778)
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Mark E. Haddad (SBN 205945)
USC Gould School of Law**
University of Southern California
699 Exposition Blvd.
Los Angeles, CA 90089
Telephone: (213) 675-5957

Luis Cortes Romero (SBN 310852)
Alma L. David (SBN 257676)
IMMIGRANT ADVOCACY &
LITIGATION CENTER, PLLC
19309 68th Avenue South, Suite R-102
Kent, WA 98032
Telephone: (253) 872-4730
Facsimile: (253) 237-1591

* Admitted *pro hac vice*
** Institution listed for identification
   purposes only

**JOINT STATUS REPORT**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Ms. J.P., et al., | Case No. 2:18-cv-06081-JAK-SK |
| Plaintiffs, | Assigned to the Hon. John A. Kronstadt |
| v. | **JOINT STATUS REPORT** |
| WILLIAM P. BARR, et al., | |
| Defendants. | |

Pursuant to the Court's Order dated November 5, 2019 (ECF No. 251), the parties met and conferred, and submit the following report stating their collective and/or respective positions regarding the implementation of the preliminary injunction order:

## I.   INTRODUCTION

### i.   *Plaintiffs' Introduction*

Following extensive briefing and oral argument, on November 5, 2019, the Court entered a thoughtful 50-page order ("Order") granting Plaintiffs' motion for class certification and certifying a class of: "All adult parents nationwide who entered the United States at or between designated ports of entry, who (1) on or after July 1, 2017, were, are, or will be detained in immigration custody by DHS; and (2) have a minor child who has been, is, or will be separated from them by DHS and detained in DHS or Office of Refugee Resettlement custody or foster care, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child." Order at 29.

The Court also granted Plaintiffs' motion for preliminary injunction finding that Plaintiffs had shown a likelihood of success on the merits of their claims. Among other things, the Court found that: "Defendants took affirmative steps to implement the zero-tolerance policy in which immigrant parents were separated from their children. The present evidence also supports the position that this conduct caused severe mental

1   trauma to parents and their children. Plaintiffs also presented evidence that Defendants
2   were aware of the risks associated with the family separation when they implemented
3   it. Indeed, Attorney General Sessions stated that the purpose of the policy was to deter
4   foreign nationals from entering the United States illegally." Order at 40-41.

5       The Court ordered the parties to "meet and confer and file a Joint Report as to
6   the status of their collaboration on a process for providing the aforementioned notices
7   to members of the Custody and Released Subclasses as well as the ordered relief." Order
8   at 46. Plaintiffs have hosted multiple meet and confer calls with Defendants in an
9   attempt to reach agreement on the process for providing notice and relief to the class.
10  At Defendants' request, the non-profit organization Seneca Family of Agencies has
11  generously donated its time to those negotiations as a leader in the field of family-
12  focused mental health treatment services. Unfortunately, the parties have not reached
13  agreement.

14      Plaintiffs respectfully request that the Court set a status conference at its earliest
15  convenience so that the Court's Order may be dutifully implemented. Time is of the
16  essence.

17      ***ii.   Defendants' Introduction***

18      On November 5, 2019, this Court certified the class, ordered sweeping injunctive
19  relief against Defendants, and granted the entirety of the ultimate relief sought by
20  Plaintiffs in the form of a preliminary injunction. In doing so, however, the Court
21  ordered the parties to meet and confer regarding the implementation of the preliminary
22  injunction and encouraged the parties to consider limiting principles of reasonableness,
23  necessity, and propriety. Defendants state their positions and proposals as follows.

24  **A. The process for locating the members of the Custody and Released
       Subclasses;**

25  <u>*Plaintiffs' Position*</u>:  Defendants have prepared a list of class members in the *Ms. L.*
26  class and produced it to class counsel in that case. While the class certified in this case
27  is broader than the *Ms. L.* class, all *Ms. L.* class members are class members here.

28

Defendants should turn over to Class Counsel a full and unredacted list containing the following information about *Ms. L.* class members within 3 days after entry of a protective order (Plaintiffs are waiting for Defendants to sign off on a draft protective order), along with any information in their possession pertaining to class members here who are not *Ms. L* class members:

- Name;
- Alien number;
- Address (including zip code);
- Telephone number;
- Email address;
- Any other known contact information;
- Name, telephone number, and email address of any attorney representing the class member in immigration proceedings;
- Name of each separated child;
- Alien number of each separated child;
- Address of each separated child (if different from the parent);
- Telephone number of each separated child (if different from the parent);
- Email address of each separated child (if different from the parent);
- Any other known contact information for each separated child (if different from the parent);
- A brief description of mental health services requested (parent or child or both);
- A description of the class member's access to transportation; and
- The class member's income or ability to pay.

After Defendants' initial production of such information, the parties should promptly meet and confer to address any gaps in the information provided by Defendants. Defendants should provide the information described above for all class members within 30 days.

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Defendants' Position:*

On November 5, 2019, the Court certified the class as:

All adult parents nationwide who entered the United States at or between designated ports of entry, who (1) on or after July 1, 2017, were, are, or will be detained in immigration custody by DHS; and (2) have a minor child who has been, is, or will be separated from them by DHS and detained in DHS or Office of Refugee Resettlement custody or foster care, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child.

*Ms. J.P.*, *et al.*, *v. Sessions*, *et al.*, No. 2:18-cv-06081-JAK-SK, Dkt. 251 at 29 (C.D. Cal.) ("Class Certification Order" or "Preliminary Injunction," as appropriate).

The Court further certified 2 subclasses (the Custody and Released Subclasses) and excluded from the certified class and subclasses parents with a communicable disease or criminal history, as well as those apprehended in the interior of the United States. *Id.*

As of November 26, 2019, Defendants have prepared a preliminary list of class members. This list, in relevant part, includes whether the individual class member is in government custody or has been released. If the individual has been released, the list includes the last known address the Government has for that individual. Defendants are employing their best efforts to ensure accuracy of the list, with the understanding that the list may be updated from time-to-time as new information becomes available to Defendants. Defendants are ready to release this class list to Plaintiffs upon and/or subject to a stipulated protective order and clawback agreement.

The class list must be considered preliminary for two reasons. First, Defendants must reconcile data regarding the expanded class lists that were created for the *Ms. L.* litigation.[1] Second, a more thorough review may be required on the part of Defendants

---

[1] *See* Nov. 6, 2019 Joint Status Report, *Ms. L., et al., v. U.S. Immigration and Customs Enforcement, et al.*, No. 18-cv-428, Dkt. 495 at 12, n.11 (S.D. Cal.).

to furnish a wholly inclusive class list because this class may be broader in this case than in *Ms. L.*[2]

The preliminary class list, which Defendants will release to Plaintiffs once a protective order is entered, includes, *inter alia*, the name, location, A-number and last known address for each potential class member. The preliminary list also includes the name and location of the class members' children, as well as, the last known address for the sponsors of children of possible class members. Plaintiffs' request information that Defendants do not either report in a statistically reportable manner or simply do not possess. For example, for the Released Subclass, Defendants have no information regarding the individual class members' access to transportation or ability to pay for treatment.

**B. The process for communicating with members of both subclasses as to the availability of the screenings and prescribed treatment that is available;**

*Plaintiffs' Position:*   Notice of the availability of the screenings and prescribed treatment should be provided orally live and also in written format to members of the Released Subclass in a linguistically- and culturally-appropriate manner by the Seneca Family of Agencies ("Seneca") or its delegate using the contact and other information provided by Defendants.

Notice of the availability of the screenings and prescribed treatment should be provided orally and in written format to members of the Detained Subclass in a linguistically- and culturally-appropriate manner via Seneca, Class Counsel, or each class member's immigration counsel.

Defendants should bear the cost of the provision of notice. Defendants and their agents should not communicate with class members regarding the availability of the screenings and prescribed treatment.

---

[2] While Defendants are working to furnish the most accurate class list possible, the scope of the class is a point of disagreement. Until the scope of the class is resolved, Defendants are unclear as to the limits of the class and therefore cannot certify that any class list provided to Plaintiffs would be absolutely complete. These disagreements and Defendants' positions are explained in Section F, *infra*.

*Defendants' Position:*

    **i.   Notice, Generally**

The parties disagree as to the manner of the initial notice required by the preliminary injunction. In its preliminary injunction, the Court ordered as follows:

> Counsel for the parties shall work collaboratively and promptly to establish a process to provide members of both the Custody and Released Subclasses with notice of the available mental health screenings and treatment and of their ability to elect whether to undergo such screenings and accept prescribed treatment. The notice to the members of the Released Subclass shall include the location(s) at which such screenings will be available.

ECF No. 251 at 46.

Defendants take the position that the Court envisioned a process by which legal notice of class membership and availability of relief under the preliminary injunction may be conveyed to class members via judicially-acceptable means of providing notice. Below, Defendants outline a process for each subclass that goes beyond traditional legal requirements for sufficient notice in the majority of circumstances.

To the extent Plaintiffs contend, particularly for the Custody Subclass, that sufficient notice may only be given by non-governmental medical professionals, Defendants disagree and note that courts have found publicly posted and mailed notices to be sufficient for migrants with serious mental health concerns and conditions. *See Franco-Gonzalez v. Holder*, No. 2:10-cv-02211-DMG-DTB, Dkt. 820-1, 820-2 (C.D. Cal.). Defendants are willing to work with Plaintiffs and Class Counsel to craft the language and content of any such notice (including translations), and would be amenable to the inclusion of contact information of Class Counsel and relevant third parties in any such notice.

### ii.     Released Subclass

Defendants will provide Plaintiffs with a list of class members with their last known contact information, but it should be Plaintiffs' responsibility to provide Notice to the Released Subclass and generate a list of class members eligible and interested in receiving mental health assessments and treatment. Plaintiffs should provide the Defendants with a list of released parents and children who are *interested* in mental health services; *not interested* in mental health services; *or undecided and requests additional information*. Defendants will then identify the mental health provider of a location that is accessible to the class member. Plaintiffs may, via the Court, seek costs from Defendants for their actual cost incurred for the provision of notices to their clients.

### iii.    Custody Subclass

Defendants will distribute to Custody Subclass members in person and publicly posted written notice. Defendants note that because Defendant ICE is willing to promptly assess and/or re-assess all Custody Subclass members who are in ICE custody, the delivered and/or posted notice itself will not be the only or ultimate notice to the class members of their inclusion in the subclass or of the relief available that Custody Subclass members receive.

To the extent that any Custody Subclass members are in CBP facilities, Defendants believe that publicly posted notice and/or notice from a CBP officer is appropriate, under the circumstances. Once transferred to an ICE facility, the same procedures outlined in further detail below will apply.

Defendants oppose the in-person issuance of notice by non-governmental medical professionals in DHS facilities, as suggested by Plaintiffs. Such notice would be unnecessary in light of the proposed procedures set forth in this report and would impose needless operational difficulties.

**C. the process for how members of each subclass can communicate their respective decisions on whether to participate in the screening and/or treatment processes;**

*Plaintiffs' Position:*  Members of each subclass should communicate their respective decisions on whether to participate in the screening and/or treatment processes directly to the party providing them with notice of the availability of the screenings and prescribed treatment (*e.g.*, Seneca, Class Counsel, or immigration counsel).

*Defendants' Position:*

i. **Released Subclass**

For the Released Subclass, as already stated, Plaintiffs should be responsible for providing the Defendants with the list of class members interested in receiving mental health services.

ii. **Custody Subclass**

As to the Custody Subclass, Defendant ICE proposes to reassess all Custody Subclass members.[3] Their respective decisions to participate further in the relief afforded by the preliminary injunction can be communicated during or after assessment.

To the extent Plaintiffs suggest it, Defendants are opposed to the in-person solicitation of responses by non-governmental persons in DHS facilities. Such a requirement is unnecessary in light of the proposed procedures set forth in this report and will impose needless operational difficulties.

**D. the locations at which the screenings and treatment will be made available to members of the Released Subclass who elect to participate;**

*Plaintiffs' Position:*  The screenings and treatment should be provided to members of the class (and their family members, to the extent clinically appropriate) at a facility located near such class member that is therapeutically appropriate (which excludes detention facilities) and equipped to provide screenings and treatment in a

---

[3] Defendant ICE is willing to consider materials or information that Class Counsel wishes to have the licensed mental health professional consider in advance of these assessments.

linguistically- and culturally-appropriate manner in accordance with standards for trauma-informed screenings and treatment to be promulgated by Seneca (or other qualified contractor approved by Class Counsel). Such providers may include, in descending order of priority:

1. Federally Qualified Health Centers ("FQHCs"),

2. Contracted providers to FQHCs, and

3. Private nonprofit providers.

The screenings and treatment may be provided in therapeutically-appropriate facilities maintained by the provider, or in other non-detention facilities approved by the provider, which may include the offices of the class member's immigration counsel. The screenings and treatment cannot be effectively provided by ICE personnel or in detention facilities. See Joint Declaration of Kenneth Berrick, John Sprinson, and Kevin Campbell, ECF No. 47 ¶ 27 (emphasizing need to provide therapy in an environment of 'actual safety' to facilitate development of trusting alliance between patient and therapist).

Defendants should enter into a contract with Seneca to provide and coordinate the provision of such screening and treatment. Seneca may, in turn, contract with the service providers described herein (including FQHCs, their contracted service providers, and to the extent necessary, private nonprofit providers) to provide the screening and treatment to class members, and promulgate guidelines for such screening and treatment.

Defendants should bear any transportation, lodging, and incidental costs that Released Subclass members may incur in traveling to the facility where screening and treatment is to be provided. Defendants should transport any Detained Subclass member to the screening and treatment facility, but no agent or employee of any Defendant may view, or be visible to, a Detained Subclass Member during the screening or treatment, nor may any agent or employee of any Defendant listen to, or make any noise perceptible to, a Detained Subclass Member during the screening or treatment.

Defendants should bear any transportation, lodging, and incidental costs incurred by children of settlement class members and their guardians in traveling to the facilities where family-based therapy is to be provided.

Defendants should bear any transportation, lodging, and incidental costs incurred by Seneca or its designee in traveling to the facilities where they may provide screening and treatment to class members.

Defendants should pay any copays that the screening or treatment provider may charge.

*Defendants' Position:*

### i.    Released Subclass

Defendant HHS will contract with a qualified non-profit organization for administrative services (the Contractor). The Contractor will coordinate referrals for mental health assessments and treatment for Released Subclass members who are interested in receiving the services. The Contractor will seek, in the first instance, to refer such Released Subclass members (together with their children, as appropriate) to no or low-cost providers of mental health services, such as the federally qualified health centers (FQHCs)  supported by the Health Resources Services Administration of HHS. Mental health clinics that are part of HHS' National Child Traumatic Stress Initiative (NCTSI) are among the types of providers to which referrals could be made on an individualized basis. SAMSHA NCTSI grantees are also among the acceptable types of providers, and referrals to these organizations should be made on an individualized basis after taking into account all relevant factors.

Contrary to Plaintiffs' position, these mental health providers will follow their own guidelines for the mental health assessments and determine the appropriate treatment according to each class member's needs. The Defendant believes that the process required to confirm a "conditional mental health diagnosis of the current effects of the prior and/or ongoing separation from their minor children, determine whether any

1   further diagnosis is necessary and recommend appropriate, immediate treatment" is for

2   the mental health provider to determine.

3        The Contractor will seek waivers of any cost-sharing and, to the extent that

4   waivers are unavailable, the HHS Operational Team shall work with the Contractor to

5   pay any fees or copays to ensure that the Released Subclass members are held harmless.

6        There are several hundreds of HHS's funded or supported mental health

7   providers located throughout the United States. Once Defendants receive from Plaintiffs

8   the list of class members interested in receiving mental health services, Defendants will

9   be able to inform the class members of the locations of the mental health providers.

10  When making the referral, the Contractor shall take into consideration the geographic

11  location, access to transportation, disability or access/functional needs, acute mental

12  health presentation, or other special needs of the Released Subclass members.

13       HHS will also stand up an Operational Coordination Team of federal personnel,

14  primarily Officers from the U.S. Public Health Service Commissioned Corps, to work

15  with the Contractor to coordinate the mental health assessments and treatment for the

16  Released Subclass members and their children. HHS will designate one or two officers

17  from the Commissioned Corps to serve as the leads for the Operational Coordination

18  Team. The HHS Leads shall serve as a point of contact for the Contractor on operational

19  issues related to the performance of the contract(s), as facilitated by and through the

20  Contracting Officer's Representative (COR).

21       Only those Released Subclass members located in the United States shall receive

22  mental health services. They may reside in any U.S. State or Territory, and in any

23  county, including rural areas and designated health care shortage areas. Defendants'

24  position is that the preliminary injunction does not impose an obligation to provide

25  services to Released Subclass members located outside the United States (and to the

26  extent that the preliminary injunction imposes such an obligation, it should be

27  narrowed).

28

If there is no low, or no-cost mental health provider available with the HHS mental health provider network, the HHS Operational Team, through the COR, will provide instructions in such cases, to ensure that all eligible and interested families receive mental health services. Defendants will not pay for transportation costs for any Released Subclass members and their children to participate in mental health assessments or treatment.

If necessary, HHS will contract with a mental health provider network or individual mental health providers to enable referrals of Released Subclass members (together with their children, as appropriate) in cases where there is not a no or low-cost mental health provider available.

Defendants note that Federally Qualified Health Centers (FQHCs) operate under a statutory and regulatory scheme, which alongside operating agreements, govern how FQHCs run. Defendants cannot simply contract out control over the entire FQHC program to a third-party to impose separate and apart rules and regulations as they see fit. Doing so would defeat the whole administration of the FQHC program. There is no reading of the preliminary injunction that requires the destruction of the FQHC governing regime.

Defendants further note that the Court's order requires Defendants to "make available, to all members of the Released Subclass who elect to have them and who appear for them at location(s) that are reasonably convenient to them given their current locations and restrictions on travel… medically appropriate initial mental health screenings." ECF No. 251 at 46. The order also requires Defendants to "provide appropriate, transitional treatment to those members of the Released Subclass who require and elect to receive it[.] … Such transitional treatment shall be made available at locations that are reasonably accessible to the members of the Released Subclass given their current locations and restrictions on travel[.]" ECF No. 251 at 45-46. The order plainly contemplates that Defendants' obligations as to accessibility end at providing the care at locations that are "reasonably accessible" and "reasonably

convenient." *Id.* The plain language of the order does not require Defendants to contract out, provide, or pay for transportation to locations that are already "reasonably accessible" and "reasonably convenient" to the class members. A reading of the order that also requires that Defendants pay transportation costs renders the order's requirements concerning the location of the treatment unnecessarily burdensome. If Defendants would be required to facilitate transportation regardless of where the mental health assessment and treatment is located, the location of such assessment and treatment is of negligible importance. Regardless, it is clear that the Court contemplated that Plaintiffs who elect to receive free treatment would cover their own transportation costs to receive it. An argument to the contrary is unsupported by the plain language of the order.

Finally, in so far as a Released Subclass member is not in contact with their child, Defendants object to any requirement to facilitate (pay for) contact between a Released Subclass member who has, despite an opportunity to do so and/or for reasons outside the Government's control, not had contact with their released child.

### ii.   Custody Subclass

Defendant ICE[4] is willing, through the licensed mental health professionals at its facilities, to promptly assess and/or re-assess all Custody Subclass members who are in ICE custody. In order to facilitate these rescreening, the Custody Subclass members would likely be transferred to detention facilities where there are members of the ICE Health Service Corps (IHSC).[5] The purpose of the assessments would be to identify any mental health conditions that might be related to the separation of each Custody Subclass member from his or her child.

---

[4] Because members of the Custody Subclass are currently in DHS custody, it is DHS's responsibility to implement the preliminary injunction as to the Custody Subclass unless and until members of the Custody Subclass are released from detention and become members of the Released Subclass, thereby falling within the purview of HHS.

[5] Because the provision of assessment and treatment in CBP facilities would be operationally unfeasible and because CBP facilities are less suitable to assessment and treatment than are ICE facilities, assessment and screening would be provided once the Custody Subclass member is transferred to an ICE facility.

The parties are in disagreement regarding who should provide Notice, Screenings, and Treatment to the Custody Subclass. Plaintiffs' position is that non-governmental licensed mental health professional provide Notice, Screenings, and Treatment to the Custody Subclass. Plaintiffs' position ignores the custodial nature of this subclass and the impracticalities of a third-party accessing ICE facilities or the difficulties in securing transportation for this subclass.

**E. deadlines for each step in the relief ordered, which may reflect both the mental health needs of the members of the subclasses and the limitations on government resources due to the recent lapse in federal funding;**

*Plaintiffs' Position:*  As described above, Defendants should provide an initial class list within three days, and should provide a full class list within 30 days.

Within 30 days, Defendants should enter into a contract with Seneca (or other qualified contractor approved by Class Counsel) to provide notice, screening, and treatment to class members.

Within 45 days, Defendants should make all arrangements necessary to allow Seneca or its designee to provide notice, screening, and treatment to all class members, including without limitation the steps necessary to give Seneca or its designee access to detention facilities where settlement class members are detained.

*Defendants' Position:*

**i.     Released Subclass**

Defendants are working diligently through the contracting process. There are a number of additional variables presently unknown that could materially impact the scope, duration, speed, cost, and staffing of the proposed work, which, in turn, introduce uncertainty which must be accounted for in contract negotiations and timelines. Those variables include, but are not limited to: 1) the number of Released Subclass members who are in the United States and elect to undergo mental health assessments; 2) the number of Released Subclass members who undergo mental health assessments and require and elect to receive mental health treatment; 3) the English language proficiency

14

of individual Released Subclass members, their children, and available mental health clinicians; 4) the availability of translators or translation services; 5) the diagnoses and recommended treatments for such individual Released Subclass members and their children; 6) the availability of mental health providers capable of performing some or all of the work in the relevant geographic areas in a compliant manner; and, 7) the possibility of bid protest activity from providers who challenge the agency's resort to the "unusual and compelling urgency" exception to full and open competition and the automatic stay of performance that may be required under the Competition in Contracting Act in the event of such bid protests.

Barring the concerns outlined above, Defendants assert that any contract awarded as to the Released Subclass members will contain a concrete deadline for initial strategic coordination between the Contractor and HHS. Thereafter, the Contractor will be required to report to the COR weekly data reporting on key measures of progress and effort related to the tasks. Within 45 days of Plaintiffs submitting the list of Released Subclass members interested in receiving mental health services, Defendants will begin the mental health assessments and treatment of released class members and their children.

**ii.    Custody Subclass**

Should the Court find Defendants' position acceptable for implementing the preliminary injunction as to the Custody Subclass members, Defendant ICE will implement these measures within a reasonable amount of time. Similar to the Released Subclass, there are variables unique to each case which could affect the rollout of the proposed relief, such as the need to transfer a Custody Subclass member from a non-IHSC facility to an IHSC facility for assessment. Additionally, the results of the initial assessment would affect the timeline in each individual case to account for the needs of the Custody Subclass member. Defendant ICE anticipates that, given the relatively small number of Custody Subclass members, it can move forward with health assessments within a reasonable amount of time.

As above, Defendant ICE opposes the type of third-party access to secure ICE facilities, and asserts that third-party access to ICE facilities is unnecessary in light of Defendants' proposed course of implementation. Furthermore, a court order requiring Defendants to contract with a specific entity serves to circumvent the statutory regime concerning government contracting, which inherently involves further legal complications.

**F. other issues that should be addressed with respect to the ability of the parties to comply with the terms of this Order; and**

_Plaintiffs' Position:_  Defendants should allow and facilitate regular contact between any parents and children who remain separated, whether such separation is caused by the parent's detention, the placement of the child in the custody of the Office of Refugee Resettlement, or by some other cause.

The class certified by the Court does not exclude persons who have been removed from, or who have voluntarily departed from, the United States, nor does the Preliminary Injunction exclude such persons from the relief it provides. Defendants should provide any and all information (as described in section A, above) in their possession regarding such persons. The parties should then meet and confer regarding the means by which notice, screening, and treatment may be provided to such persons.

Children of class members who are in ORR custody should not be treated any differently under the preliminary injunction than children of class members who are not in ORR custody, because nothing in the Court's order supports such discrimination. For example, if a health service provider determines that treatment should be provided to a class member's family unit, such treatment should be provided to parents and children together, regardless of whether the child is in ORR custody. Defendants should bear the cost of transporting such children to therapy sessions, whether such children are in ORR custody or not.

16

Plaintiffs disagree with Defendants that there is any lack of clarity with respect to the class definition. From the outset of this litigation, Plaintiffs have sought certification of a class of parents separated from their children without a demonstration in a hearing that the parent is unfit or presents a danger to the child. The Court granted Plaintiffs' request to define the class in this manner.

<u>*Defendants' Position:*</u>

Defendants highlight four additional issues that need to be addressed for Defendants to comply with the terms of Court's November 5, 2019, Order. *First,* the parties disagree about the scope of the certified class. The class certified in this case is broader than the class certified in *Ms. L. See Ms. L., et al., v. U.S. Immigration and Customs Enforcement, et al.*, No. 18-cv-428 (S.D. Cal. June 26, 2018) ("*Ms. L.*"). In *Ms. L.*, the Southern District of California certified the *Ms. L.* class as:

> All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody, **absent a determination that the parent is unfit or presents a danger to the child**.

Class Certification Order at 17; *see also Ms. L.*, Order, March 8, 2019, Dkt. No. 386, at 14 (expanded class definition using identical language). Here, this Court certified a class that may be broader than the class certified in *Ms. L.* In relevant part, the Court certified a class where, rather than "***absent a determination*** that the parent is unfit or presents a danger to the child," the *Ms. J.P.* class includes the language "***absent a demonstration in a hearing*** *that the parent is unfit or presents a danger to the child.*" *See* ECF No. 251 at 21. This construction renders the *Ms. J.P.* class broader than that certified in *Ms. L.*, as the *Ms. L.* class excludes those who were administratively determined to be a danger to the child or an unfit parent. As such, Defendants cannot rely solely on the data collated and produced in *Ms. L.* to identify Ms. JP class members, and must undertake a more extensive review to correctly ascertain any additional potential members of this

class. This is a burdensome process. The parties would benefit from, and Defendants welcome, the Court's clarification as to the scope of the class.

*Second*, it is Defendants' position that the separated children currently in the care of the Office of Refugee Resettlement (ORR) do not independently fall within the definition of the class, and that ORR is not under an obligation to alter its practices with regard to children in its custody. Currently, staff at ORR care provider facilities are trained in techniques for child-friendly and trauma-informed interviewing, ongoing assessment, observation, and treatment  of the medical and behavioral health needs of unaccompanied alien children (UAC), including those who have been separated from their parents. Care providers must deliver services that are sensitive to the age, culture, and native language of each child as well.

ORR encourages the use of evidence-based therapeutic interventions for children in care and custody; however, clinicians may use their professional judgement and expertise as to the most appropriate intervention or treatment, according to each individual child's needs. All children and youth in care participate in weekly individual counseling sessions as well as twice-weekly group counseling sessions with trained mental health professionals, where the provider reviews the child's progress, establishes short term objectives, and addresses developmental and crisis-related needs, including those that may be related to family separation. *Id.* at ¶ 6. Clinical staff may increase these once-a-week sessions if a more intensive approach is needed. *Id.* If children have acute or chronic mental health illnesses, ORR refers them for mental health services in the community.

Defendants' position is that ORR should not be required to facilitate mental health treatment of children in ORR care together with their parents by opening ORR grantee shelters to the parents or by sending the children offsite to ICE or other facilities.

*Third,* it is Defendants' position that the removed members of the Released Subclass are not entitled to preliminary injunction relief. The Court indicated that, "any relief provided to the Released Subclass will necessarily be subject to certain limitations

18

in light of the issues discussed above. These include, but are not limited to: … (ii) The location and identities of the Released Subclass; … and (iv) the appropriate nature, scope, and implementation of the relief." ECF No. 251 at 42. There are considerable practical burdens in locating, assessing, and providing mental health care to adult parents who have been removed from the United States. The presence of Released Subclass members within the United States is a limitation that falls squarely within the Court's Order.

*Fourth*, Defendants would like the Court to define the term "transitional treatment." The Court ordered the Defendants to provide "mental health screenings" and "appropriate, transitional treatment" to the Released Subclass "until those members . . . , through reasonable good faith efforts and with the assistance of Plaintiffs' counsel, are able to locate and enter the care of other adequate health providers." ECF No. 251 at 45-56. The Court did not provide any timeframe for the government-provided mental health services to end, nor did it take into consideration that some of the former detainees were released over two years ago. It is possible that some may have already sought and received mental health services, or are capable of procuring such care independently. The parties would benefit from the Court's guidance on this issue.

### G. whether a status conference would be appropriate to discuss and potentially resolve any open issues, and, if so, when it should be scheduled.

<u>*Plaintiffs' Position:*</u>   In light of the remaining disputes between Plaintiffs and Defendants, Plaintiffs believe that a status conference should be scheduled at the Court's earliest convenience to discuss and potentially resolve such disputes.

<u>*Defendants' Position:*</u>  Defendants concur.

DATED:     November 26, 2019                SIDLEY AUSTIN LLP

                                                */s/ Amy P. Lally*
                                                Amy P. Lally
                                                *Attorney for Plaintiffs*

DATED:     November 26, 2019                UNITED STATES DEPARTMENT
                                           OF     JUSTICE,     OFFICE     OF
                                           IMMIGRATION LITIGATION

                                                */s/ Nicole N. Murley*
                                                Nicole N. Murley
                                                Senior Litigation Counsel
                                                *Attorneys for Defendants*