| | |
|---|---|
| JOSEPH H. HUNT | U.S. Department of Justice |
| Assistant Attorney General | Office of Immigration Litigation |
| JEFFREY S. ROBINS | PO Box 878, Ben Franklin Station |
| Deputy Director | Washington, DC 20044 |
| NICOLE N. MURLEY | Nicole.Murley@usdoj.gov |
| SARAH B. FABIAN | Telephone: (202) 616-0473 |
| Senior Litigation Counsel | Fax: (202) 616-4923 |
| LINDSAY VICK | Attorneys for Defendants |
| Trial Attorney | |

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| MS. J.P., MS. J.O., AND MS. R.M., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WILLIAM P. BARR, et al.,<br><br>Defendants. | Case No. 2:18-cv-06081-JAK (SKx)<br><br>**DEFENDANTS' *EX PARTE* APPLICATION TO STAY ALL PROCEEDINGS PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES; SUPPORTING DECLARATION**<br><br>Hearing Date: None requested<br>Location: Courtroom 10B<br>Hon. John A. Kronstadt<br><br>[Proposed] Order Filed Concurrently |

## *EX PARTE* APPLICATION

Pursuant to Local Rule 7-19, Defendants respectfully apply to this Court *ex parte* to request a stay of all proceedings pending resolution of Defendants' appeal from the Court's November 5, 2019 Order.

**Urgency:** This order is sought by means of an *ex parte* application because there is insufficient time to seek a stay of proceedings pending appeal by noticed motion without further accrual to Defendants of the burdens identified herein.

**Notice:** Pursuant to L.R. 7-19.1, on November 27, 2019, Defendants' counsel notified Plaintiffs' counsel regarding the substance of this application. Declaration of Nicole N. Murley (Murley Decl.) ¶¶ 4-5. Plaintiffs' counsel Amy P. Lally indicated they would oppose this motion. On November 27, 2019, Defendants' counsel gave Plaintiffs' counsel notice that opposing papers must be filed no later than 24 hours (or one court day) following service. Plaintiffs' counsel was also advised that if Plaintiffs do not intend to oppose the *ex parte* application, counsel must inform the Courtroom Deputy Clerk by telephone as soon as possible. Murley Decl. ¶¶ 4-5. Pursuant to L.R. 7-19, Ms. Lally's address and contact information are as stated at Murley Decl. ¶ 5.

DATED: November 27, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
JEFFREY S. ROBINS
Deputy Director
SARAH FABIAN
Senior Litigation Counsel
LINDSAY VICK
Trial Attorneys

/s/ Nicole N. Murley
NICOLE N. MURLEY
Senior Litigation Counsel
U.S. Department of Justice
Office of Immigration Litigation
PO Box 878, Ben Franklin Station
Washington, DC 20044
Nicole.Murley @usdoj.gov

Telephone: 202-616-0473
Fax: (202) 616-4923
Attorneys for Defendants

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendants hereby move to stay district court proceedings in this case, including further deadlines, pending Defendants' appeal from the Court's November 5, 2019 Order, Dkt. 251. A stay is warranted under the circumstances. The Court's Order mandates extensive and burdensome actions by the Department of Homeland Security (DHS) and Department of Health and Human Services (HHS), and their subordinate entities that are parties to the case, will undermine the Departments' statutory and regulatory authorities under the Immigration and Nationality Act (INA) and the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), and will undermine and interfere with operations of both Departments. Defendants will therefore be irreparably harmed if they are required to comply with the Order before resolution of any appeal. The Court's Order rests on serious errors of law, and the equities favor Defendants and a stay. The Court should stay the November 5, 2019 Order pending resolution of Defendants' appeal. Plaintiffs oppose this motion.

## THE COURT'S ORDER

On November 5, 2019, the Court issued an order granting Plaintiffs' class certification motion, an order granting Plaintiffs' preliminary injunction motion, and an order denying the government's motion to dismiss. The Court certified the following class:

> All adult parents nationwide who entered the United States at or between designated ports of entry, who (1) on or after July 1, 2017, were, are, or will be detained in immigration custody by DHS; and (2) have a minor child who has been, is, or will be separated from them by DHS and detained in DHS or Office of Refugee Resettlement custody or foster care, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child.

Dkt. 251 (Order) at 29; *see id.* at 15-30. The Court excluded from the class parents with a criminal history or communicable disease and those apprehended in the interior of the country. *Id.* at 29. The Court then certified two subclasses:

> (i) the Custody Subclass, which is defined as all members of the class who are currently or will be detained in immigration custody by DHS; and (ii) the Released Subclass, which is defined as all members of the class who were

>previously detained in immigration custody by DHS, but who have since been released.

*Id*. at 30.

The Court ultimately concluded that injunctive relief is available to Plaintiffs, that the other injunctive factors favored Plaintiffs, and granted a classwide preliminary injunction. *See* Order at 30-46. Specifically, the Court concluded that, under the Constitution, "the Government is obligated to provide adequate medical care" "to parents and children" who were separated under the Zero Tolerance Policy and "that obligation continues upon the release of parents and children from detention, pending the resolution of their asylum claims." *Id*. at 36. For the Custody Subclass, the Court concluded that Plaintiffs are likely to succeed on the claim that "Defendants were deliberately indifferent to the mental health risks presented by the family separation policy and did not take reasonable steps to avoid them." *Id.* at 37. The Court concluded that preliminary injunctive relief was warranted "to ensure that Defendants meet their obligation to provide adequate medical care to detainees within the Government's control." *Id.* at 38. For the Released Subclass, the Court concluded that: (1) under the special-relationship doctrine as applied in *Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999), Plaintiffs had adequately established that Defendants have "a duty to provide mental health treatment to members of the Released Subclass comparable to what should have been provided while they were in custody," Order 40; and (2) under the state-created-danger doctrine, Plaintiffs are likely to succeed in establishing that Defendants (a) "affirmatively placed Plaintiffs in danger" by separating them from their children and providing only "limited mental health screening and treatment," and (b) "acted with deliberate indifference" to the danger presented, *id.* at 41 (brackets omitted).

The Court then ordered extensive injunctive relief. The Order requires (among other things): notification to class members; "medically appropriate initial mental health screenings"; diagnoses; and, treatment (if requested) "by one or more persons who are individually or collectively qualified to do so," based on the provision of "appropriate medical treatment" "sufficient to address [class members'] current mental health conditions caused by their prior and/or ongoing separation from their minor children." *Id*. at 45-46.

2

The Order also directs the parties to meet, confer, and file a joint report regarding the notice and relief ordered. *Id.* at 46; *see* Joint Status Report (ECF No. 260).

## STANDARD OF REVIEW

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997). To obtain a stay of an order pending appeal, the movant must show: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to the requesting party if preliminary relief is not granted, (3) a balance of hardships favoring the [requesting party], and (4) advancement of the public interest (in certain cases)." *Nat. Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 862 (9th Cir. 2007) (emphases omitted).

## ARGUMENT

The Court should stay its November 5, 2019 Order pending resolution of Defendants' appeal. Without a stay, the Government will be irreparably harmed. The other factors also favor a stay.

## I.   Failure to Grant the Stay Will Cause the Government Irreparable Harm.

Denying a stay will cause irreparable harm to the Government in several ways.

*First*, if the ourt does not stay the Order, the Government could lose the ability to secure full meaningful relief from a victory on appeal. The Order does not merely maintain the status quo, which is the central purpose of a preliminary injunction. Rather, the Order directs what is in effect full ultimate relief to the class. Although the Court held that the screening and treatment required by the Court's order was prohibitory rather than mandatory, Order at 33, the Court's order unquestionably requires Defendants to "take action" that goes beyond preserving the status quo. *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996). The Order directs the very mental health screening and related remedies that Plaintiffs are ultimately seeking in this case (and is actually broader than the relief originally sought by Plaintiffs): most centrally, provision of screening and medical treatment to class members. *Compare* Order at 45-46 *with* Complaint at 59-60.[1] That is not an appropriate

---

[1] *See* Complaint at 59-60 ("Prayer for Relief . . . 3. Order Defendants to provide mental-health screenings of Plaintiffs and their children immediately as well as after reunification

3

use of a preliminary injunction, and even if it were, it still counsels strongly in favor of a stay pending appeal so that Defendants can seek full vindication of their rights if they prevail on appeal.

*Second*, the Court's order will irreparably harm the Government by requiring it to create a massive public health delivery system for a transient population on an extremely short timeline. To start, the relief ordered for the Released Subclass will overburden HHS and its Public Health Service (PHS). The Order may require PHS to reallocate its scarce resources, including its limited available manpower, to deliver mental health care services to individuals presumably spread across the country. *See* Exhibit A, Declaration of Rear Admiral Erica G. Schwartz ¶¶ 9-11. The Order could, as a result, prevent PHS from efficiently deploying available resources to "provid[e] direct mental health treatment to underserved populations such as members of Indian tribes, and federal detainees and prisoners;" *id.* ¶ 10, or deployments similar to those mental health teams deployed "21 times over the last 5 years to include the Water Emergency Response in Flint, MI in 2016 and Hurricanes Harvey/Irma/Maria in 2017," *id.* ¶ 11, and a current deployment to "stem suicides on an Indian reservation." *Id.*; *see also id.* ¶¶ 18, 26. Deploying the PHS Commissioned Corps nationwide and indefinitely would also result in immediate and substantial operational and financial hardship to the deployed officers' home agencies, which in turn will harm mission responsibilities. *Id.* ¶ 27. Available alternatives based on a subcontracting model would present still other problems, arising from the many unknown variables that could materially affect the "scope, duration, speed, cost, and staffing of the work," *id.* ¶ 30, which will affect the speed with which HHS can leverage contract resources to comply with the preliminary injunction and the cost it will take to do so.

ICE would also face significant burdens if it is required to identify and locate Released Subclass members. Locating these class members will entail, among other things,

---

in order to assess their need for subsequent trauma-informed remedial medical and mental-health services to address the trauma of separation and child detention; 4. Order Defendants to offer appropriate trauma-informed remedial medical and mental-health services appropriate to address the trauma of separation and detention to Plaintiffs and to Plaintiffs' children under conditions conducive to effective treatment" . . . .).

time-consuming manual searches of multiple law enforcement databases and A-files, and follow-up coordination and communication with the Executive Office for Immigration Review. *See* Exhibit B, Declaration of Tae D. Johnson ¶¶ 11-13. The resources needed to locate these released class members "will involve diverting significant resources from the already overwhelmed ERO Fugitive Operations component." *Id.* ¶ 13. And the mental healthcare ordered by the Court could require "the creation of an entire outpatient program to include locating and establishing treatment centers, hiring additional mental healthcare professionals, and increasing the training of medical personnel in non-IHSC [ICE Health Services Corps] facilities." *Id.* ¶ 14.

Similarly, the relief ordered for the Custody Subclass significantly burdens ICE and CBP—to whom the Order applies without distinction—who must immediately alter existing medical and mental health care policies and training on an accelerated timeline. To comply with the preliminary injunction, ICE will need to transfer custody subclass members in ICE custody to IHSC-staffed facilities, which will delay the affected aliens' immigration proceedings. *See id.* ¶ 9. Compliance for U.S. Border Patrol (USBP) is would be significantly disruptive, absent a stay or modification, because USBP facilities are designed for short-term statutory custody norms, as USBP "strives to keep individuals in its custody for only the short period of time necessary to process the individuals and transfer them to the custody of its partner agencies." Exhibit C, Declaration of Robert Danley ¶ 12.

Before Defendants are required to provide the ultimate relief sought in this case—and before Defendants are forced to create a massive program to provide that relief—the Court should enter a stay that allows the Government the opportunity to pursue meaningful appellate review.

## II. A Stay Will Not Injure the Named Plaintiffs or Class Members.

While the Government will suffer irreparable harm without a stay, Plaintiffs will suffer no comparable harm if the Court stays proceedings pending the resolution of Defendants' appeal. Although this Court granted Plaintiffs' motion for a preliminary injunction, the passage of ten months between the hearing on that motion and the Court's

decision support the conclusion that a short time to seek resolution of these issues on appeal in an expedited manner will not cause additional harms to class members. Defendants have worked expeditiously to pursue an appeal,[2] and Ninth Circuit rules provide for an expedited briefing schedule of preliminary injunction appeals. Ninth Cir. R. 3-3. If Plaintiffs have delayed seeking treatment to date, a further delay to allow the judicial system to resolve these serious legal disputes would not result in any additional harm to them. This is especially true given that the vast majority of class members have long since been released, *see* ECF No. 244 at 2-3, and they are free to seek whatever care they desire, including none at all.

For example, and as noted by Plaintiffs' own declarant, "[t]here are numerous types of health care facilities that may be able to provide free and low-cost mental health evaluations and services to class members. Such facilities include the system of Federally Qualified Health Centers (FQHC) and clinics that are part of [HHS'] National Child Traumatic Stress Initiative (NCTSI), which awards grants to local clinics to provide trauma services to youth." Dkt. 245 at 14 (Declaration of Kenneth Berrick in Support of Plaintiff's Position in Joint Statement Filed on October 31, 2019). Thus, by Plaintiffs' own admission, class members can already access care at FQHCs and NCTSI at no or low cost on a first-come, first-serve basis, without regard to immigration status. Both NCTSI and FQHCs utilize sliding scales to determine what, if anything, a particular patient pays for services. Additionally, at FQHCs a patient can request and the individual FQHCs can grant waivers to cost-sharing requirements. Therefore, class members can go to FQHCs, request cost-sharing waivers, and get screened for mental health services regardless of the status of the preliminary injunction. In fact, class members could have done so months ago, before the preliminary injunction was put in place. And they can continue to do so today. Granting a

---

[2] For Defendants, any determination whether to appeal must be made by the Solicitor General. *See* 28 C.F.R. § 0.20(b); *see also* United States Attorney's Manual § 2-2.121 ("All appeals to the lower appellate courts in cases handled by divisions of the Department and United States Attorneys, and all petitions for certiorari and direct appeals to the Supreme Court must be authorized by the Solicitor General.").

stay of the Order will not at all affect class members' ability to seek care on their own pending resolution of critical legal issues by the Ninth Circuit.

### III. Defendants Are Likely to Succeed On Appeal.

Defendants are likely to succeed in any appeal that is taken. The Order rests on several errors of law. We note only some errors for purposes of this stay request.

*First*, the Court erred in concluding that Defendants showed deliberate indifference as to medical care for the Custody Subclass. *See* Order 36-38. DHS and HHS policies provide for appropriate medical care to detainees, including mental health care. *See* Defendants' Memorandum in Support of Motion to Dismiss (ECF No.132-1) at 10, 15; Declaration of James De la Cruz (ECF No. 109-1) ¶ 6 ("[a]ll children in ORR's care receive certain mandatory mental and emotional health services, such as individual and group counseling . . . include[ing] . . . separation anxiety, [and] trauma . . . ."); De La Cruz Decl. ¶ 7 ("[i]f a child's clinical assessment indicates mental health concerns, a care provider will seek outside resources and will make the necessary referrals . . . ."); Declaration of Codi James (ECF No. 109-2) ¶¶ 4-6 (ICE detainees indicating a need for psychological services following completing of a Psychology Services Intake Screening Form ("PSIQ") or based on self-identification are indicated by a psychologist who may then offer "services such as, therapy sessions, self-help materials, or referrals to the contract psychiatrist for medication assessments."). This Court rejected the proposition that DHS and HHS acted constitutionally when relying on "differen[t] . . . medical opinions regarding a diagnoses" or in cases where "a custodian attempted to provide an alternative course of treatment, but was unable to do so due to a detainees own actions." Order at 37-38 (citations omitted). But a constitutional violation cannot arise from a reasonable difference in medical opinion. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) ("a plaintiff's showing of nothing more than 'a difference of medical opinion' as to the need to pursue one course of treatment over another was insufficient, as a matter of law, to establish deliberate indifference."); *id*. (a plaintiff must show that "the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and the plaintiff must show that they chose this

course *in conscious disregard of an excessive risk to plaintiff's health*."). Here, Plaintiffs at most have established a difference in medical opinion. Further, while "it may well be that other policies would be even better, . . . [a court is not] a legislature charged with formulating public policy." *Reno v. Flores*, 507 U.S. 292, 315 (1993).

*Second*, as to the Released Subclass, the Court erred in its rulings applying the special-relation doctrine under *Wakefield v. Thompson*, 177 F.3d at 1164, and the state-created-danger doctrine. *See* Order at 38-41. *Wakefield* created a narrow exception to the general proposition that the Government is not required to provide care to released detainees. *See*, *e.g.*, *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 190-200 (1989). The Court erroneously extended *Wakefield* (which required only transitional supplies of medication), to require Defendants to provide post-release mental-health screening and treatment for an indeterminate period of time, regardless of when the former detainee was released or whether he or she is capable of procuring such care independently. Order at 39-40. And the Court misapplied the state-created-danger doctrine. *See id.* at 40-41. That doctrine provides that "[w]hen an officer's affirmative conduct creates a foreseeable risk of harm to the plaintiff, the officer will be liable for failing to intercede if the officer demonstrates 'deliberate indifference' to the plaintiff's plight." *Bracken v. Okura*, 869 F.3d 771, 778-79 (9th Cir. 2017). It "only applies in situations where the plaintiff was directly harmed *by a third party*." *Henry A. v. Wilden*, 678 F.3d 991, 1002 (9th Cir. 2012) (emphasis in original). Even if the doctrine did apply to the government's own actions, the record demonstrates that by providing mental health screening and examinations, Defendants were not deliberately indifferent to trauma.

**IV. A Stay is in the Public Interest.**

Finally, the public interest also supports a stay. Whether the Government is obligated to provide extensive affirmative mental health care at a standard that far exceeds the adequacy that could conceivably be called for seriously affects the Executive's "sovereign prerogative" of setting immigration policy. *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *accord Fiallo v. Bell*, 430 U.S. 787, 792 (1977). The issue also implicates the Government's

interest in ensuring the appropriate agency expertise is utilized in making decisions regarding the care and custody of unaccompanied alien children, recognized by the TVPRA as among the most vulnerable groups. *See Santosky v. Kramer*, 455 U.S. 745, 766 (1982) ("[T]he State has an urgent interest in the welfare of the child . . . ."). A stay would further be in the public interest because, if an appeal is taken and the Ninth Circuit rules in Defendants' favor, it would save significant governmental resources from implementing unnecessary procedures. Finally, there is strong public interest in a stay to allow potential appellate resolution of the question whether it is permissible for a court in California to issue an order such as this one that will likely have substantial impact on law enforcement operations nationwide, before that order is allowed to go into effect.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for a stay of enforcement of the Court's November 5, 2019 Order granting Plaintiffs' motions for a preliminary injunction and class certification, as well as denying Defendants' motion to dismiss, pending the resolution of Defendants' appeal.

| | | |
|---|---|---|
| 1 | DATED: November 27, 2019 | Respectfully submitted, |
| 2 | | |
| 3 | | JOSEPH H. HUNT<br>Assistant Attorney General |
| 4 | | JEFFREY S. ROBINS |
| 5 | | Deputy Director<br>SARAH B. FABIAN |
| 6 | | Senior Litigation Counsel |
| 7 | | LINDSAY VICK<br>Trial Attorney |
| 8 | | |
| 9 | | /s/ Nicole N. Murley |
| 10 | | NICOLE N. MURLEY<br>Senior Litigation Counsel |
| 11 | | U.S. Department of Justice |
| 12 | | Office of Immigration Litigation<br>PO Box 868, Ben Franklin Station |
| 13 | | Washington, DC 20044 |
| 14 | | Nicole.Murley@usdoj.gov<br>Telephone: (202) 616-0473 |
| 15 | | Fax: (202) 616-8962 |
| 16 | | *Attorneys for Defendants* |

## DECLARATION OF NICOLE N. MURLEY

I, Nicole N. Murley, declare pursuant to 28 U.S.C. § 1746 that:

1. I am an attorney with the Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., and, in such capacity, have been assigned by the Department of Justice as lead counsel to the defense of this action. This Declaration is submitted in support of Defendants' *Ex Parte* Application to Stay all Proceedings Pending Appeal.

2. The Court entered an Order granting Plaintiffs' Motion for Class Certification, partially granted Plaintiffs' Motion for Preliminary Injunction, and denied Defendants' Motion to Dismiss on November 5, 2019. ECF No. 251.

3. I e-mailed Plaintiffs' counsel regarding a stay of the preliminary injunction in this matter on November 27, 2019, and the parties discussed this motion on X. Plaintiffs' counsel was advised that any opposing papers must be filed no later than 24 hours (or one court day) following service. Plaintiffs' counsel was also advised that if Plaintiffs do not intend to oppose the *ex parte* application, counsel must inform the Courtroom Deputy Clerk by telephone as soon as possible.

4. On November 27, 2019, Amy P. Lally, counsel for Plaintiffs confirmed that they "do not consent" to a stay of the injunction pending appeal.

5. Ms. Lally's contact information is:
Amy P. Lally Esq.
SIDLEY AUSTIN LLP
1999 Avenue of the Stars
17th Floor
Los Angeles, CA 90067
+1 310 595 9662
alally@sidley.com

I declare under penalty of perjury that the foregoing is true and correct. Executed this 27th day of November, 2019, in the City of Washington, District of Columbia.

*/s/ Nicole N. Murley*
NICOLE N. MURLEY

11

# CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED THAT:

I, Nicole N. Murley, am a citizen of the United States and am at least eighteen years of age. My business address is 450 Fifth Street, NW, Washington, DC 20001. I am not a party to the above-entitled action. I have caused service of the accompanying *EX PARTE* MOTION TO STAY PROCEEDINGS PENDING APPEAL on all counsel of record, by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically provides notice. I also notified Plaintiffs' counsel by electronic mail.

I declare under penalty of perjury that the foregoing is true and correct.

DATED:  November 27, 2019

*/s/ Nicole N. Murley*
NICOLE N. MURLEY