UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-06081 JAK (SKx) | Date | December 10, 2019 |
| Title | Ms. J.P. et al. v. William P. Barr et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:   (IN CHAMBERS) ORDER RE DEFENDANTS' *EX PARTE* APPLICATION TO STAY ALL PROCEEDINGS PENDING APPEAL (DKT. 262)

I.   **Introduction**

On July 12, 2018, three foreign nationals -- J.P. ("Ms. P"), J.O. ("Ms. O") and R.M. ("Ms. M") (collectively, "Plaintiffs") -- brought this class action against several federal officials and entities (collectively, "Defendants"). Dkt. 1. Plaintiffs and their minor children, who had sought asylum in the United States, were separated and placed in detention facilities pursuant to the "family separation policy" adopted by certain agencies and officials of the United States. *Id.* ¶¶ 1, 3-4. The Complaint advanced claims under the Equal Protection and Due Process Clauses of the Fifth Amendment of the Constitution and sought injunctive and declaratory relief on behalf of the putative class. *Id.* ¶¶ 172-185, Prayer for Relief.

On November 5, 2019, an Order issued that denied Defendants' Motion to Dismiss (Dkt. 132), and granted in part Plaintiffs' Motion for Class Certification (Dkt. 81) and Motion for Preliminary Injunction (Dkt. 45) (collectively, "Motions"). Dkt. 251 (the "November 5 Order"). On November 26, 2019, the parties filed a report stating their respective positions as to the status of compliance with the November 5 Order. Dkt. 260. In the report, the parties requested a status conference regarding certain issues. *Id.* at 20. In response, a hearing has been scheduled for January 13, 2020. Dkt. 263.

On November 27, 2019, Defendants appealed the November 5 Order. Dkt. 261; *see also* No. 19-56400 (9th Cir.)). Defendants also filed an *Ex Parte* Application to Stay All Proceedings Pending Appeal. Dkt. 262 (the "Application"). Plaintiffs opposed the Application on December 2, 2019. Dkt. 264. On December 2, 2019, the Ninth Circuit determined that the appeal is from the preliminary injunction that was granted in the November 5 Order. Dkt. 266.

For the reasons stated in this Order, the Application is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-06081 JAK (SKx) | Date | December 10, 2019 |
| Title | Ms. J.P. et al. v. William P. Barr et al. | | |

**II.    Background**

      A.    The November 5 Order

The November 5 Order certified the following class:

> All adult parents nationwide who entered the United States at or between designated ports of entry, who (1) on or after July 1, 2017, were, are, or will be detained in immigration custody by DHS; and (2) have a minor child who has been, is, or will be separated from them by DHS and detained in DHS or Office of Refugee Resettlement custody or foster care, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child.

Dkt. 251 at 29.

The class excluded "parents with criminal histories or communicable diseases, or who had been apprehended in the interior of the United States." *Id.* Two subclasses were also certified pursuant to Fed. R. Civ. P. 23(d): "(i) the Custody Subclass, which is defined as all members of the class who are currently or will be detained in immigration custody by DHS; and (ii) the Released Subclass, which is defined as all members of the class who were previously detained in immigration custody by DHS, but who have since been released." *Id.* at 30.

The November 5 Order granted preliminary injunctive relief to all class members, including, *inter alia*, "medically appropriate initial mental health screenings that are sufficient to identify those who require immediate mental health treatment to address the current effects of their prior and/or ongoing separation from their minor children," and corresponding "appropriate medical treatment to those members" of each subclass who require and elect to have it. *Id.* at 45-46.

**III.    Analysis**

      A.    Legal Standards

During the pendency of an appeal of a preliminary injunction, a district court "may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d); *see also* Fed. R. App. P. 8(a)(1) ("A party must ordinarily move first in the district court for the following relief: (A) a stay of the . . .order of a district court pending appeal; . . . or (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending."). However, the district court's jurisdiction is only "to preserve the status quo." *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001) (quoting *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001)). "Rule 62(c) 'does not restore jurisdiction to the district court to adjudicate anew the merits of the case.'" *Id.* (quoting *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982)).

"Granting a stay is within the court's discretion, and the party seeking the stay bears the burden of demonstrating that the circumstances justify the exercise of that discretion." *Doe v. Trump*, 284 F. Supp. 3d 1172, 1178 (W.D. Wash. 2018) (internal quotations omitted). "The standard for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-06081 JAK (SKx) | Date | December 10, 2019 |
| Title | Ms. J.P. et al. v. William P. Barr et al. | | |

evaluating stays pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983). However, "the burden of proof is reversed," and falls on the party the applying for the stay. *City & Cty. of San Francisco v. U.S. Citizenship & Immigration Servs.*, No. 19-17213, Order (Dkt. 27) at 28 (9th Cir. Dec. 5, 2019). Therefore, in considering a stay, the application of the *Winter* factors[1] is required; *i.e.*, "four questions: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017) (per curiam), *reconsideration en banc denied*, 853 F.3d 933 (9th Cir. 2017), *amended and superseded by* 858 F.3d 1168 (9th Cir. 2017), *cert. denied sub nom. Golden v. Washington*, 138 S. Ct. 448 (2017) (quoting *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012)); *see also* Dkt. 262 at 6 (citing *Winter*, 502 F.3d at 862).

    B.    Application

        1.    <u>Likelihood of Success on the Merits</u>

Defendants argue that they are likely to prevail on appeal because the "[November 5] Order rests on several errors of law." Dkt. 262 at 10. "[O]nly some" of those errors are identified in the Application. Dkt. 262 at 10. Thus, Defendants argue the Court erred in concluding "that Defendants showed deliberate indifference as to medical care for the Custody Subclass," and in applying both the special-relation doctrine under *Wakefield v. Thompson*, 177 F.3d 1160, 1164 (9th Cir. 1999) and the state-created danger doctrine. Dkt. 262 at 10-11.

            a)    Deliberate Indifference

Defendants contend that the United States[2] has "policies [to] provide for appropriate medical care to detainees, including mental health care," and that "Plaintiffs at most have established a difference in medical opinion." *Id.* at 10-11. Therefore, they argue, it was error to conclude that there was deliberate indifference to class members. *Id.* at 10 ("[A] constitutional violation cannot arise from a reasonable difference in medical opinion.").

This argument was considered in detail in the November 5 Order. Dkt. 251 at 37-38. In both the opposition to the Motion for Preliminary Injunction and in the Application, Defendants have relied on the Declarations of James De La Cruz and Codi James. Dkt. 109 at 24; Dkt. 262 at 10. Each declarant states that detained persons, a category which includes those who are members of the Class, are screened to determine their mental health needs, and that corresponding, necessary treatment is then provided to them. Dkt. 109-1 ¶¶ 6-7 (as to separated children); Dkt. 109-2 ¶¶ 4-7 (as to detainees generally). The November 5 Order concluded that "this evidence is not sufficient for purposes of the issues presented by the Injunction Motion, given the substantial evidence that Plaintiffs and their children suffered from significant mental distress." Dkt. 251 at 37. The November 5 Order also distinguished the facts from "those involving choices between alternative courses of treatment or differences of medical opinion." *Id.* Thus, the November 5 Order concluded that any screenings the

---

[1] *Nat. Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 862 (9th Cir. 2007).
[2] In this Order, the United States is also referred to as the "Government."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | December 10, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al. v. William P. Barr et al. | | |

Government may have offered to parents who had been separated from their children did not constitute a reasonable alternative to the care sought by the Class. *Id.* at 37-38. Rather, in light of the evidence that the screenings "led to limited, if any, meaningful mental health treatment," Plaintiffs had shown "a substantial likelihood of success on the merits of the [D]ue [P]rocess claim," including as to whether Defendants "did not take reasonable steps to avoid or address" mental health risks. *Id.* at 37. The Application does not present any new arguments as to why the Government is likely to succeed on the merits through its appeal as to this issue.

                b)      Special Relationship Doctrine

Defendants contend that the November 5 Order "erroneously extended *Wakefield* (which required only transitional supplies of medication), to require Defendants to provide post-release mental health screening and treatment for an indeterminate period of time, regardless of when the former detainee was released or whether he or she is capable of procuring such care independently." Dkt. 262 at 11. "*Wakefield* establishes that a detainee's right to sufficient medical care does not end upon release," but did not establish either the duration of that right, or a test for determining it. Dkt. 251 at 39 (citing 177 F.3d at 1164). However, based on a review of the application of *Wakefield* by several other courts, the November 5 Order concluded that whether and when the Government has an obligation to provide care to a person released from its custody involves an assessment of the factual circumstances. *Id.* Under those presented here -- in which members of the Released Subclass were at a substantial risk of mental harm, and were subject to ongoing restrictions on their conduct imposed by the Government -- the November 5 Order concluded that *Wakefield* supports the conclusion that the Government has some ongoing duties to those members. *Id.* at 39-40.

Defendants have provided no authority to the contrary. They cite *Wakefield* and *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 190-200 (1989). *DeShaney* held that an "affirmative duty to protect [a detained person] arises . . . from the limitation which [the state] has imposed on his freedom to act on his own behalf." *Id.* at 190. This principle was discussed in detail in *Wakefield*. 177 F.3d at 1163-64. *Wakefield* concluded that, under *DeShaney*, "the state's responsibility to provide [medical care] to prisoners" "may extend beyond the period of actual incarceration," because a detainee's ability to secure care "is not necessarily restored the instant he walks through the prison gates." Therefore, the Government's transitional responsibility lasts for "the period of time reasonably necessary." Dkt. 251 at 39 (quoting *Wakefield*, 177 F.3d at 1164). As stated in the November 5 Order, the evidence presented in connection with the Motion for Preliminary Injunction supported the conclusion that, as to the Released Subclass, the "period of time reasonably necessary" has not yet ended.

                c)      State-Created Danger Doctrine

Defendants next contend that "the Court misapplied the state-created-danger doctrine." Dkt. 262 at 11. They argue that the doctrine applies only when harm is caused by the actions of third parties, and not by those of the Government. *Id.* (citing *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir. 2012)). "The point of the state-created danger doctrine is that the affirmative actions of a state official created or exposed an individual to danger *which he or she would not have otherwise faced*." Dkt. 251 at 40 (quoting *Henry A.*, 678 F.3d at 1002-03) (emphasis in original). In rejecting the requirement that a state official must do "*more* than 'expose the plaintiff to a danger that already existed,'" *Henry A.* noted that,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-06081 JAK (SKx) | Date | December 10, 2019 |
| Title | Ms. J.P. et al. v. William P. Barr et al. | | |

because "the doctrine provides an exception to the general rule that the Fourteenth Amendment does not impose a duty on the State to protect individuals from third parties," it "applies only where the plaintiff was directed harmed *by a third party* -- a danger that, in every case, could be said to have 'already existed.'" 678 F.3d at 1002 (first emphasis added; second emphasis in original). The Government contends that the word "only" means that the doctrine cannot apply where there is no third party that caused harm, such as the abusive foster parents whose conduct was at issue in *Henry A.* Dkt. 262 at 11.

*Henry A.* stated that a narrow interpretation of the doctrine may be inappropriate where "[s]uch a test would render the state-created danger doctrine meaningless." 678 F.3d at 1002. Moreover, *Henry A.* did not expressly modify the Ninth Circuit's previous conclusion that the doctrine may apply beyond harm caused by third parties, *i.e.*, where a state actor's "affirmative conduct plac[ed] a party in a danger of the government's creation," for example, when law enforcement officers left an intoxicated person "outside in only jeans and a tee-shirt in subzero conditions leading to his death from hypothermia." *Morgan v. Gonzales*, 495 F.3d 1084, 1093 (9th Cir. 2007) (citing *Munger v. City of Glasgow*, 227 F.3d 1082 (9th Cir. 2000)); *accord Hernandez v. City of San Jose*, 897 F.3d 1125, 1133-34 (9th Cir. 2018) (quoting *Munger*, 227 F.3d at 1087) ("[T]he officers placed Munger in a more dangerous position than the one in which they found him."). *Hernandez* also cited *Penilla v. City of Huntington Park*, 115 F.3d 707, 711 (9th Cir. 1997), in which the doctrine was applied where law enforcement officers knew a person to be "in grave need of medical care," yet they cancelled a request for paramedics, locked the person inside a house, and left. 897 F.3d at 1133. The person then died. *See Penilla*, 115 F.3d at 708.

In both *Munger* and *Penilla*, state actors took "affirmative actions that significantly increased the risk facing [the plaintiffs]," who were not harmed by any third parties, but due to other circumstances. *Hernandez*, 897 F.3d at 1134 (quoting *Penilla*, 115 F.3d at 710). Similarly, the November 5 Order concluded that Defendants had "affirmatively placed Plaintiffs in danger," and that "severe mental trauma to parents" was a consequence of such actions. Dkt. 251 at 40-41. Thus, it was determined that Plaintiffs are likely to succeed "on the merits of their state-created danger claim." *Id.* at 40.

\*   \*   \*

For the foregoing reasons, Defendants have not made a "strong showing" of a likelihood of success on the appeal as to the foregoing issues. Therefore, this factor weighs against granting the Application.

    2.    <u>Irreparable Injury</u>

Defendants argue that they will be irreparably harmed absent a stay. The premise for this position is that the preliminary injunction does not preserve the status quo, but instead imposes affirmative obligations on the Government. Thus, they contend that compliance will impose both operational and financial hardships on the agencies at issue, and will cause the diversion of resources that would otherwise be used to benefit others who receive mental health care through the Government. Dkt. 262 at 6-8.

These arguments were considered in the November 5 Order. *First*, insofar as the injunction "might impose certain mandatory obligations on the Government," such obligations are appropriate "where, as here, the status quo is 'exactly what will inflict the irreparable injury' upon Plaintiffs." Dkt. 251 at 34

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-06081 JAK (SKx) | Date | December 10, 2019 |
| Title | Ms. J.P. et al. v. William P. Barr et al. | | |

(quoting *Hernandez v. Sessions*, 872 F3d. 975, 999 (9th Cir. 2017)). *Second*, the financial and operational burdens of the injunction were weighed when balancing the equities. *See* Dkt. 251 at 44-45. "The 'government suffers no harm from an injunction that merely ends unconstitutional practices and/or ensures that constitutional standards are implemented.'" *Id.* at 44 (quoting *Doe v. Kelly*, 878 F.3d 710, 718 (9th Cir. 2017)) (regarding conditions of detention for persons detained following entry). The November 5 Order also concluded that the costs of the injunctive relief do not "impose unreasonable financial burdens on the Government," that the costs are the result of the Government's actions, and that any administrative burden is "far outweighed by the considerable harm to Plaintiffs' constitutional rights in the absence of the injunction." *Id.* (quoting *Hernandez v. Sessions*, 872 F3d. 975, 995 (9th Cir. 2017)). Defendants now argue that the Government will also be injured by being required to act too quickly "to create a massive public health delivery system." Dkt. 262 at 7. However, Plaintiffs have proposed using qualified, non-governmental organizations to provide these services, and represent that at least one is ready to do so as to the services identified in the injunction. Dkt. 264 at 7-8.

Defendants have not made a sufficient showing of irreparable injury absent a stay of the preliminary injunction. *See Nken v. Holder*, 556 U.S. 418, 434-45 (2009) ("[S]imply showing some 'possibility of irreparable injury' fails to satisfy the second factor.") (internal citations omitted). Therefore, this factor weighs against the Application.

\*   \*   \*

"The first two factors . . . are the most critical," and the latter factors are reached "[o]nce an applicant satisfies the first two." *Washington*, 847 F.3d at 1164 (quoting *Nken*, 556 U.S. at 434-45). "[T]he Government has failed to clear each of the first two critical steps." *Id.* Nevertheless, Defendants' arguments as to balancing the equities and the public interest are also addressed. "Because the government is a party, we consider [these factors] together." *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018).

### 3. Substantial Injury to Other Parties and the Public Interest

Defendants contend that, because there was a ten-month period between the hearing on the Motions and the issuance of the November 5 Order,[3] further delay in providing care would not result in additional harm to members of the Class, most of whom have been released and "are free to seek whatever care they desire, including none at all." Dkt. 262 at 8-9. Defendants also argue that a stay of the preliminary injunction is in the public interest because a successful appeal will make certain spending by the Government unnecessary, and that the burdens imposed by the November 5 Order "affect[] the Executive's 'sovereign prerogative' of setting immigration policy" and interfere with the Government's expertise in making decisions as to the care and custody of unaccompanied alien children. *Id.* at 11-12.

The preliminary injunction was based in part on evidence that the harm caused by separating parents from their children is severe, and that when "interventions are delayed, the greater the negative cumulative effect . . . on these children and their parents." Dkt. 251 at 10 (quoting Expert Declaration of

---

[3] This delay was due to the parties' settlement efforts. *See* Dkts. 187, 233; *see also* Dkt. 235 (requesting rulings following the termination of those efforts).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-06081 JAK (SKx) | Date | December 10, 2019 |
|---|---|---|---|
| Title | Ms. J.P. et al. v. William P. Barr et al. | | |

Bruce Perry, Dkt. 50 ¶ 22). Therefore, the November 5 Order concluded that members of the Class were at serious risk of "irreparable injury unless they are provided with immediate care." *Id.* at 42-43. There is not sufficient evidence that the passage of time has changed these risks.

Defendants argue that "free and low-cost mental health evaluations and services" are now available to members of the Class, and that many of those who provide such care do so without regard to immigration status and charge on a sliding scale "to determine what, if anything, a particular patient pays for services." *Id.* at 9. However, Defendants have provided no authority to support the argument that the availability of private care excuses the Government from addressing its own conduct. Moreover, the November 5 Order required that members of the Class be notified that they are entitled to receive mental health screenings, and that those screenings should take place at reasonably convenient locations. *See* Dkt. 251 at 45. The Government has not sufficiently explained why it is appropriate to shift this obligation to others.

With respect to the public interest factor, such "concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Thus, the burden on the Government in complying with the terms of a preliminary injunction is "not compelling" where those costs are necessary so that the Government can fulfill its legal obligations. *Rodriguez v. Robbins*, 715 F.3d 1127, 1146 (9th Cir. 2013). Further, where there are "serious concerns that the [Executive] has not" lawfully exercised its powers, "the public interest is best served by 'curtailing unlawful executive action,'" not by deferring to the Executive's decision-making. *Hawaii v. Trump*, 878 F.3d 662, 700 (9th Cir. 2017), *rev'd and remanded on other grounds*, 138 S. Ct. 2392 (2018) (quoting *Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015), *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016)).

Defendants next contend that there is a "strong public interest in a stay to allow potential appellate resolution of the question whether it is permissible for a court in California to issue an order such as this one that will likely have substantial impact on law enforcement operations nationwide." Dkt. 262 at 12. A nationwide injunction may "not be in the public interest [if] it would significantly disrupt the administration of [a government program]," such as by preventing an agency from enforcing a statutory mandate. *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 665 (9th Cir. 2011) (affirming the district court's determination that it should stay its nationwide injunction prohibiting the Department of Health and Human Services from enforcing a statutorily mandated Medicaid hospice cap).

Since the issuance of the November 5 Order, the Ninth Circuit has heard oral argument as to the substantial questions that are raised by the issuance of nationwide injunctions. *See City & Cty. of San Francisco v. Barr*, No. 18-17308 (9th Cir.) (stayed outside California pending appeal); *East Bay Sanctuary Covenant v. Barr*, Nos. 19-16487, 19-16773 (9th Cir.) (stayed pending appeal (140 S. Ct. 3 (2019)). The Government has argued that "universal injunctions create practical problems," precluding "several courts of appeal [from] explor[ing] a difficult question" and allowing "courts and parties to circumvent . . . the prerequisites for certifying a class and for granting relief to such a class." *East Bay Sanctuary*, No. 19-16487, Op. Br. (Dkt. 34-1) at 52-53 (quoting *United States v. Mendoza*, 464 U.S. 154, 160 (1984)). Therefore, it is entirely appropriate for Defendants to raise this developing issue in connection with the Application.

The facts presented here at not entirely the same as those in *L.A. Haven Hospice*. Thus, the November

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-06081 JAK (SKx) | Date | December 10, 2019 |
| Title | Ms. J.P. et al. v. William P. Barr et al. | | |

5 Order does not bar Defendants from acting pursuant to a statute, but requires them to meet legal obligations. Similarly, there is a difference between the issues presented by the November 5 Order and those in *East Bay Sanctuary* or *San Francisco*. In *East Bay Sanctuary*, which was brought by four organizations that provide services to aliens, the Government is challenging the propriety of a nationwide injunction that bars the application of a rule regarding eligibility for asylum. The Government contends that the injunctive relief granted there affects non-parties to the litigation; *i.e.*, aliens who are not clients of the plaintiff organizations. No. 19-16773, Op. Br. (Dkt. 12) at 10-11. Similarly, in *San Francisco* -- which concerns restrictions on federal grants to local law enforcement agencies -- the Government argues that Article III does not permit the extension of injunctive relief to non-party entities. No. 18-17308, Op. Br. (Dkt. 9) at 30. As noted, these matters present significant and developing legal issues.

In considering these issues, however, one factor is that, "there is no bar against nationwide relief in federal district court" where "such broad relief [is] '*necessary* to give prevailing parties the relief to which they are entitled.'" *California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018) (quoting *Bresgal v. Brock*, 843 F.2d 1163, 1170-71 (9th Cir. 1987)) (emphasis in original). Further, as the Supreme Court explained 40 years ago, in the context of a certified class of Social Security recipients who had obtained an injunction prohibiting the recoupment of overpayments made to them:

> Nothing in Rule 23 . . . limits the geographical scope of a class action that is brought in conformity with that Rule. Since the class here was certified in accordance with Rule 23(b)(2), the limitations on class size associated with Rule 23(b)(3) actions do not apply directly. Nor is a nationwide class inconsistent with principles of equity jurisprudence, since the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class. If a class action is otherwise proper, and if jurisdiction lies over the claims of the members of the class, the fact that the class is nationwide in scope does not necessarily mean that the relief afforded the plaintiffs will be more burdensome than necessary to redress the complaining parties.

*Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (internal citations omitted).

The November 5 Order certified a class pursuant to Fed. R. Civ. P. 23(b)(2). Dkt. 251 at 29-30; *see also California*, 911 F.3d at 582 (noting that the rule limiting nationwide relief only to that necessary for the prevailing parties "applies with special force where there is *no* class certification") (emphasis added). It then granted limited, injunctive relief only to members of the Class. *See* Dkt. 251 at 43 ("[O]ngoing mental health treatment is *necessary* after reunification to prevent, mitigate, and address the ongoing harm to the relationship between the parents in the proposed class and their children. . . . Absent appropriate screening and treatment, there is a substantial risk of harm to the parent-child relationship, which is protected by the Due Process Clause.") (emphasis added).

Although significant issues have been presented in this developing area, given the different factual circumstances presented in *East Bay Sanctuary* and *San Francisco* and this matter, these issues do not alone warrant granting the Application. That relief is not sufficiently supported by a balancing of the equities and a consideration of the public interest.

\*      \*      \*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-06081 JAK (SKx) | Date | December 10, 2019 |
| Title | Ms. J.P. et al. v. William P. Barr et al. | | |

For the foregoing reasons, Defendants have not shown that the *Winter* factors warrant a stay of the November 5 Order.

## IV. Conclusion

For the reasons stated in this Order, the Application is **DENIED**.

**IT IS SO ORDERED.**

                                                            : 

Initials of Preparer    ak