Amy P. Lally (SBN 198555)
alally@sidley.com
Ellyce R. Cooper (SBN 204453)
ecooper@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: +1 310 595 9522
Facsimile: +1 310 595 9501

Mark Rosenbaum (SBN 59940)
mrosenbaum@publiccounsel.org
Judy London (SBN 149431)
jlondon@publiccounsel.org
Talia Inlender (SBN 253796)
tinlender@publiccounsel.org
Amanda Savage (SBN325996)
asavage@publiccounsel.org)
Lucero Chavez (SBN 273531)
lchavez@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Avenue
Los Angeles, CA 90005
Telephone: +1 213 385-2977
Facsimile: +1 213 385-9089

Attorneys for Plaintiffs
*Additional Counsel on next page*

JOSEPH H. HUNT
Assistant Attorney General
JEFFREY S. ROBINS
Deputy Director
NICOLE N. MURLEY
Senior Litigation Counsel

LINDSAY M. VICK
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
PO Box 868, Ben Franklin Station
Washington, D.C. 20044
Lindsay.Vick@usdoj.gov
Telephone: (202) 532-4023
Fax: (202) 616-8962

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. J.P., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>WILLIAM P. BARR, et al.,<br><br>Defendants. | Case No.  2:18-CV-06081-JAK-SK<br><br>**JOINT STIPULATION PURSUANT TO C.D. CAL. LOCAL RULE 37-2**<br><br>Assigned to:   Hon. John A. Kronstadt and the Hon. Steve Kim<br><br>Date:     February 5, 2020<br>Time:    10:00 a.m.<br>Place:    Roybal Federal Building and United States Courthouse 255 E. Temple Street Courtroom 540 Los Angeles, CA 90012<br>Action Filed:  July 12, 2018<br>Discovery Cutoff Date: October 5, 2020<br>Pretrial Conference: TBA<br>Trial Date: April 20, 2021 |

ACTIVE 252064652

Carter G. Phillips[*]
cphillips@sidley.com
Jennifer J. Clark[*]
jennifer.clark@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: +1 202 736-8000
Facsimile: +1 202 736-8711

Michael Andolina[*]
mandolina@sidley.com
Timothy Payne[*]
tpayne@sidley.com
Kevin Fee[*]
kfee@sidley.com
Daniel Craig[*]
dcraig@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: +1 312 853-7000
Facsimile: +1 312 853-7036

Sean A. Commons (SBN 217603)
scommons@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896-6000
Facsimile: +1 213 896-6600

Mark E. Haddad (SBN 205945)
markhadd@usc.edu
Part-time Lecturer in Law
USC Gould School of Law[**]
University of Southern California
699 Exposition Boulevard
Los Angeles, CA 90089
Telephone: +1 213 675-5957

Luis Cortes Romero (SBN 310852)
lcortes@ia-lc.com
Alma L. David (SBN 257676)
adavid@ia-lc.com
IMMIGRANT ADVOCACY &
LITIGATION CENTER, PLLC
19309 68th Avenue South, Suite R-102
Kent, WA 98032
Telephone: +1 253 872-4730
Facsimile: +1 253 237-1591

[*]*Admitted pro hac vice*

[**] *Institution listed for identification purposes only*

JOINT STIPULATION PURSUANT TO C.D. CAL. LOCAL RULE 37-2

## JOINT STIPULATION OF PLAINTIFFS AND DEFENDANTS
## PURSUANT TO LOCAL RULE 37-2

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37, Plaintiffs Ms. J.P., Ms. J.O., and Ms. R.M., on behalf of themselves and all others similarly situated ("Plaintiffs"), as movants, and Defendants William P. Barr, Kevin K. McAleenan,[1] the Department of Homeland Security, United States Immigration and Customs Enforcement, United States Customs and Border Protection, Alex M. Azar II, the Department of Health and Human Services, Jonathan H. Hayes, Office of Refugee Resettlement, David Marin, Lisa Von Nordheim, Marc Moore, and Lowell Clark (collectively "Defendants") submit this Joint Stipulation regarding Plaintiffs' motion to compel full and complete production of documents by Defendants to Plaintiffs' First Set of Request for Production of Documents to Defendants propounded by Plaintiffs on January 10, 2019.

Filed concurrently herewith is the Declaration of Kevin M. Fee attaching the scheduling order in this matter, pursuant to Local Rule 37-1 (Exhibit A), Plaintiffs' Requests for Production (Exhibit C), Defendants' Supplemental Responses to Plaintiffs' Requests for Production (Exhibits D, E, F), and additional relevant filings and correspondence regarding the discovery at issue. The parties met and conferred three times telephonically, due to Defendants' counsel being in Washington D.C., in good faith on December 6, 2019, December 10, 2019, and December 20, 2019 but while able to resolve certain issues were unable to resolve the dispute.

Pursuant to this Court's request on Judge Kim's website, "disputed discovery requests involving the same issue(s) should be logically grouped" and that is done below here. First, Plaintiffs state that as all three Defendants are represented by the same counsel and provided similar responses to discovery, all are handled here

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Secretary of Homeland Security Chad F. Wolf is substituted for the former Acting Secretary Kevin K. McAleenan.

together. Second, after the parties' introductory statements under Local Rule 37-2.1 in Section I, the discovery requests and Defendants' responses are laid out in Section II and then Plaintiffs' and Defendants' arguments are logically grouped by topic in Section III.

1

# **TABLE OF CONTENTS**

2

Page

3   **I.**   INTRODUCTORY STATEMENTS ................................................................ 1

4   **A.**   Plaintiffs' Introductory Statement ................................................... 1

5   **B.**   Defendants' Introductory Statement ............................................... 4

6   **II.**   THE DISPUTED DISCOVERY AND DEFENDANTS' RESPONSES ........... 7

7   **III.**   ARGUMENTS ON DISCOVERY .................... **Error! Bookmark not defined.**

8   **A.**   List of Putative Class Members (RFP 1) ................................. 51

9   1.   Plaintiffs' Argument ....................................... 51

10   2.   Defendants' Argument ..................................... 51

11   **B.**   Documents Relating to the Zero Tolerance Separation Policy (RFPs 2, 3, 4, 5, 6, 7, 8, 9, and 16) ........................................... 53

12

1.   Plaintiffs' Argument ....................................... 53

13   2.   Defendants' Argument ..................................... 57

14   **C.**   Discovery into Defendants' Claims of Necessity and Prior Programs (RFPs 6, 7, 9, 10, 11) ........................................... 62

15

16   1.   Plaintiffs' Argument ....................................... 62

17   2.   Defendants' Argument ..................................... 63

18   **D.**   Time Period for Discovery ............................................... 66

19   1.   Plaintiffs' Argument ....................................... 66

20   2.   Defendants' Argument ..................................... 67

21   **E.**   Documents Produced in Other Litigation (RFP 16) ................. 68

22   1.   Plaintiffs' Argument ....................................... 68

23   2.   Defendants' Argument ..................................... 69

24   **F.**   Objections Based on Existence of Zero Tolerance Separation Policy (RFPs 2, 3, 4, 8, 9, 16) ........................................... 71

25

26   1.   Plaintiffs' Argument ....................................... 71

2.   Defendants' Argument ..................................... 72

27

28   **G.**   Production of Health Information (RFPs 12, 13, 14) ............... 74

ACTIVE 252064652

i

      **1.**   Plaintiffs' Argument ........................................................ 74

      **2.**   Defendants' Argument .................................................... 75

**H.**   Production of Information Related to Inmate Health Message Slip (RFP No. 15) ............................................................................ 80

      **1.**   Plaintiffs' Argument ........................................................ 80

      **2.**   Defendants' Argument .................................................... 80

ACTIVE 252064652

# I.     INTRODUCTORY STATEMENTS

## A.     Plaintiffs' Introductory Statement

Plaintiffs represent a class of refugees, who crossed the border with their children seeking asylum and who were separated from their children by Defendants, causing severe trauma in violation of Plaintiffs' constitutional rights. The Court in this case has certified a class of Plaintiffs, issued a Preliminary Injunction finding Plaintiffs were likely to succeed in proving a constitutional violation and ordering the Government to provide appropriate mental health treatment to Plaintiffs due to the urgency of the trauma, and denied Defendants' motion to dismiss.[2]

Over a year ago on January 10, 2019, Plaintiffs served Defendants with Requests for Production containing sixteen limited requests, targeted directly to the key points in Plaintiffs' Complaint[3] and this litigation. Declaration of Kevin M. Fee in Support of Plaintiffs' Motion to Compel ("Fee Decl.") Ex. C (Plaintiffs' First Set of Requests for Production of Documents). Defendants responded to these requests with repetitive, boilerplate objections. Fee Decl. Exs. D, E, F (Defendants' Supplemental Responses to Plaintiffs' Requests for Production).

Such objections – while improper – are all too common in litigation, but they are rarely made, as here, in the face of an Order by the District Court specifically citing the information Defendants have objected to providing as necessary to its analysis of Plaintiffs' claims in the course of issuing a Preliminary Injunction. Despite this, the DOJ Defendants have not agreed to produce *a single document* in response to Plaintiffs requests for production. DHS Defendants have not agreed to produce any documents for 11 requests and have severely limited their responses to the remaining 5. HHS Defendants have not agreed to provide any documents for 9 requests and have

---

[2] "Order re Plaintiffs' Motion for Class Certification (Dkt. 81); Plaintiffs' Motion for Preliminary Injunction (Dkt. 45); Defendants' Motion to Dismiss (Dkt. 132)" at ECF Dkt. No. 251 is referred to herein as the "Order." Pursuant to Local Rule 37, the Order is attached as Exhibit G to the Fee Declaration.
[3] The Complaint is ECF Dkt. No. 1 and is attached as Exhibit H to the Fee Declaration.

ACTIVE 252064652

1    severely limited their responses to the remaining 7.

2         Since the collapse of settlement negotiations, Defendants have twice moved *ex*

3    *parte* to delay discovery (once seeking the delay of just discovery and once seeking to

4    stay the case). ECF Dkt. Nos. 238, 262. Both applications were denied by the Court.

5    ECF Dkt. Nos. 253, 267. As part of negotiations on this motion, Defendants have

6    informed Plaintiffs that they could not meet and confer within the deadlines required

7    by Local Rule 37, and they have repeatedly missed their promised deadlines to

8    provide comments, revisions, and other responses. Fee Decl. Exs. I, J, K

9    (correspondence with Defendants' counsel).

10        Given the importance of the disputed discovery to the relief required by the

11   Court's Preliminary Injunction and Plaintiffs' preparation for depositions and trial,

12   Plaintiffs believe the Court's intervention is necessary to resolve these disputes. As

13   the Court found, it is critical to get members of the Plaintiffs' class timely access to

14   mental health care. Order at 41-42. A year has passed already. Further delay and

15   obstruction by Defendants is unacceptable.

16        The information Plaintiffs seek is narrowly-tailored, based precisely on claims

17   in Plaintiffs' Complaint, and directly relevant to what Plaintiffs' will need to prove at

18   trial. The Court has already found the issues in this case sufficiently pressing – and the

19   balance of harms and the public interest tipping in Plaintiffs' favor – to issue a

20   Preliminary Injunction. *See* Order at 41-42. Defendants have access to the requested

21   documents; Plaintiffs do not. Given the narrowness and relevance of the information

22   sought, and the extreme situation Plaintiffs find themselves in, the information is

23   clearly within the scope of discovery under the Federal Rules and not unduly

24   burdensome. Fed. R. Civ. P. 26(b)(1).

25        Defendants' two main relevance objections are as follows: 1) Defendants argue

26   that any discovery into the Zero Tolerance Separation Policy, how it was

27   implemented, and how it was devised are irrelevant to this case; 2) Defendants argue

28   that discovery into statements by Government officials about necessity and the Family

Case Management Program are irrelevant to this case.

Plaintiffs' Complaint centers on the Zero Tolerance Separation Policy and its effects on Plaintiffs. *See* Complaint ¶¶ 74-104, First and Second Claim for Relief. To succeed on their claims, Plaintiffs must prove that the "family separation policy, in combination with the insufficient mental healthcare provided during detention violated their due process rights." Order at 47. In addition, to prove a state-created danger created by the policy and failure to provide adequate mental healthcare, Plaintiffs must show that Defendants were aware of the danger. *Id.* at 41 (finding that Plaintiffs had presented evidence on this). In addition, Plaintiffs must counter Defendants' necessity defenses, and discovery into the Family Case Management Program and statements by officials goes directly to these claims. Complaint ¶ 7, 75-77; *See* Order at 20, 36. As the Court recognized, Plaintiffs must prove *both* the unconstitutional harm caused by Defendants' Zero Tolerance Family Separation Policy *and* the inadequate mental healthcare provided. Order at 47. Defendants cannot refuse to provide discovery on the policy, its implementation, statements around it, and alternatives that were rejected, all of which are relevant to Plaintiffs' arguments.

Defendants' argument that the Zero Tolerance Separation Policy is the subject of the *Ms. L.* case is unavailing. While correct that *Ms. L.* found Defendants' policy unconstitutional, that does not make discovery irrelevant here. Plaintiffs must prove that Defendants' unconstitutional policy caused the mental health trauma Plaintiffs complain of, that Defendants' disregarded the harm that would be caused by their policy, and that Defendants did not provide the necessary care to Plaintiffs to address the trauma they caused. The Court recognized that there is a relationship between the constitutional rights asserted by the class here and the class in the *Ms. L.* case. Order at 14. While the claims and relief are different, Plaintiffs here must still prove their case which involves proving *inter alia* the unconstitutional harm caused by the family separation policy and the mental health trauma it inflicted.

### B.     Defendants' Introductory Statement

Plaintiffs' Motion to Compel Defendants to produce certain documents in response to their First Set of Requests for Production should be denied. Plaintiffs move to compel on the following eight grounds: 1) that Defendants should produce the class list from *Ms. L.* prior to the entry of a protective order in this case; 2) documents relating to the Zero Tolerance Policy are relevant to the claims and defenses in this case; 3) discovery into Defendants' alleged claims of necessity and Defendants' prior programs is relevant; 4) the time period for discovery should extend back to January 20, 2017; 5) documents produced in other litigation involving the Zero Tolerance Policy are relevant; 6) Defendants' objections to the existence of the Zero Tolerance Policy lack credibility; 7) Defendants should complete production of responsive medical records within four months; and 8) production of information relevant to the Inmate Health Message Slip is relevant. For the reasons outlined below, Plaintiffs' arguments lack merit.

First, as an initial matter, Plaintiffs' claim that Defendants have been dilatory fundamentally mischaracterizes the good-faith meet and confer process. Plaintiffs served Defendants with Requests for Production ("RFP") on January 10, 2019, while decisions on Plaintiffs' Motions for Preliminary Injunction and Class Certification and Defendants' Motion to Dismiss were pending. *See* Fee Decl. Ex. C. Shortly thereafter, this case was referred for settlement discussions. For several months, the parties engaged in settlement negotiations, but the matter was not resolved through the settlement process and was returned to the Court's active docket on October 17, 2019. Order at 2. Defendants responded to Plaintiffs' RFPs less than a month later on November 12, 2019, and thereafter supplemented their responses to the RFPs on December 17, 2019. *See* Fee Decl. Exs. D, E, F.

Since this case returned to the Court's active docket, Defendants have continued to work diligently with Plaintiffs to resolve issues concerning a protective

order and the instant motion to compel.[4] *See* Declaration of Lindsay M. Vick in Support of Defendants' Opposition to Plaintiffs' Motion to Compel ("Vick Decl.") Exs. 1, 2, 3 (correspondence with Plaintiffs' counsel). As noted, Defendants have also met and conferred with Plaintiffs, in good faith, on three occasions concerning their First Set of Requests for Production. Plaintiffs cite no support for their allegation that Defendants have been dilatory or "slow-playing" in response to the discovery disputes in this case. Their mischaracterization of Defendants' good faith efforts to actively engage with Plaintiffs and resolve disputes is incorrect and unnecessary.

Second, Plaintiffs repeatedly refer to the government's "Zero Tolerance *Separation* Policy," and this characterization is incorrect. There is no such thing as a "Zero Tolerance *Separation* Policy." As noted below, the Zero Tolerance Policy was announced in a memorandum from the former Attorney General in April 2018. The Policy provided for the prosecution under the illegal-entry statutes of all adults who crossed the border between ports of entry, regardless of whether that adult is a member of a family unit. An effect of the application of the Policy led to an increase in separations of alien families because a parent who is referred for prosecution becomes unavailable to care for her child, and the child therefore becomes an unaccompanied alien child who must, by law, be transferred to the custody of Health and Human Service's ("HHS's") Office of Refugee Resettlement ("ORR").

Consistent with the memorandum, DHS referred for prosecution to DOJ adult aliens—including those traveling with children—who unlawfully entered the United States on the Southwest border in violation of § 1325 or other criminal immigration statutory provisions. Such alien adults were referred to U.S. Marshals Service for prosecution. Their alien minor children, rendered unaccompanied due to their parents being amenable to prosecution, were transferred to ORR consistent with 6 U.S.C.

---

[4] Following the January 13, 2020 status conference, the district court ordered that, "on or before 1/31/2020, counsel meet and confer as to any outstanding issues on a protective order and then file a joint submission that includes the parties' respective and/or collective positions." Vick Decl. Ex. 9 (Court's Status Conference Order, dated January 14, 2020, ECF No. 272).

§ 279(g) and 8 U.S.C. § 1232(b). As a result, parents were frequently detained in Immigration and Customs Enforcement ("ICE") custody separate from their children, who remained in HHS's custody, for appreciable periods of time. All of the Named Plaintiffs in this case entered the United States unlawfully and were referred for prosecution. Defendants accurately defined the Zero Tolerance Policy throughout their responses to Plaintiffs' RFPs, and accordingly, Plaintiffs' attempts to mischaracterize the relevant policy fail.

Third, Plaintiffs' contend that their RFPs related to the Zero Tolerance Policy, as well as their RFPs requesting documents produced in other litigation involving the Zero Tolerance Policy, are relevant to the claims and defenses in this case. Plaintiffs claim that the creation of and decision to adopt the Policy are relevant to their claims concerning the alleged mental trauma they experienced as a result of separation and the failure of the government to provide mental health screenings and treatment sufficient to address the alleged trauma. Fee Decl. Ex. H (Complaint) ¶¶ 87-95, 178-81, 183-85. This is wrong.

Defendants' foremost objection to Plaintiffs' First Set of RFPs is that the majority of the RFPs are irrelevant because they primarily, and erroneously, focus on the creation, purpose, and general constitutionality of the Zero Tolerance Policy—issues that are explicitly not a part of this litigation. *See* Order at 12-15 (discussing the separate and distinct legal issues between this case and *Ms. L.*). The Court should not permit Plaintiffs to use this case as a means to obtain discovery relevant to a separate lawsuit (*Ms. L.*) and that are irrelevant here.

Rather than demonstrate dilatory tactics by the Defendants, the facts outlined above show that Defendants have actively engaged in the meet and confer process. Further, Plaintiffs inaccurately frame the claims and defenses in this case in order to establish the relevancy of many of their RFPs. The Court should find that the majority of Plaintiffs' RFPs irrelevant to the claims and defenses in this case, and accordingly, should deny Plaintiffs' Motion to Compel.

## II.        THE DISPUTED DISCOVERY AND DEFENDANTS' RESPONSES

### REQUEST FOR PRODUCTION NO. 1:[5]

DOCUMENTS sufficient to identify all PUTATIVE CLASS MEMBERS.

### DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 1:[6]

DOJ Defendants object to this request to the extent Plaintiffs purport to require the disclosure of information in the possession, custody, or control of entities other than DOJ Defendants, Fed. R. Civ. P. 34, or seek information that can and should be sought from another entity. To the extent that this request also appears to seek information from DHS or HHS, DOJ Defendants direct Plaintiffs to DHS and HHS Defendants who can provide responses and objections to requests directed to those agencies. *See* DHS and HHS Responses to RFP No. 1. Accordingly, DOJ Defendants do not have any responsive documents.

### DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 1:[7]

DHS Defendants object to this request as Plaintiffs' definition of "putative class members" is overly broad and is not consistent with the Court's definition of the class certified in its November 5, 2019 Order. DHS Defendants also object to this request as overly broad and unduly burdensome because it does not provide any data parameters or limitation on the request for documents. This request is not limited to information generated or existing during a time period that is relevant to the Parties' claims and defenses. Moreover, Request No. 1 does not seek information that is uniquely important to the claims and defenses in this case. Defendant DHS otherwise refers Plaintiffs to Defendants ICE, CBP and HHS for further information consistent with

---

[5] Plaintiffs' First Set of Requests for Production of Documents to Defendants, served on January 10, 2019 are attached as Exhibit C to the Fee Declaration.
[6] Defendant Department of Justice's and Former Attorney General Sessions' Supplemental Responses to Plaintiffs' First Set of Requests for Production of Documents, served on Plaintiffs on December 17, 2019 are attached as Exhibit D to the Fee Declaration.
[7] DHS' Supplemental Responses to Plaintiffs' First Set of Requests for Production of Documents, served on Plaintiffs on December 17, 2019 are attached as Exhibit E to the Fee Declaration.

this Request. *See* HHS Response to RFP No. 1.

In consideration of the Court's November 5, 2019 Order certifying a class, once a protective order is in place, Defendants ICE and CBP, in coordination with the other Federal Defendants, will provide a list of certified class members, to the extent that ICE and CBP have this information and are able to identify certified class members. Defendants will produce a non-privileged, responsive list after the implementation of a protective order in this case.

## HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 1:[8]

HHS Defendants object to this request as Plaintiffs' definition of "putative class members" is overly broad and is not consistent with the Court's definition of the class certified in its November 5, 2019 Order. This request is overly broad and unduly burdensome in that it does not provide any data parameters or limitation on the request for documents. This request is not limited to information generated or existing during a time period that is relevant to the Parties' claims and defenses.

Moreover, Request for Production No. 1 does not seek information that is uniquely important to the claims and defenses in this case. *See generally* Complaint, ECF No. 1 ("Compl.") (requesting a court order requiring Defendants to provide mental-health screenings before and after reunification to assess Plaintiffs' need for subsequent trauma-informed medical and mental-health services and to offer appropriate trauma-informed medical and mental-health services)1; *see also* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

---

[8] Defendant Department of Health and Human Services' Supplemental Responses to Plaintiffs' First Set of Requests for Production of Documents, served on Plaintiffs on December 17, 2019 are attached as Exhibit F to the Fee Declaration.

outweighs its likely benefit."). To the extent that this request also appears to seek information from DHS, HHS Defendants direct Plaintiffs to DHS Defendants who can provide responses and objections to requests directed to that agency. *See* DHS Response to RFP No. 1.

In consideration of the Court's November 5, 2019 Order certifying a class, once a protective order is in place, HHS Defendants, in coordination with the other Federal Defendants, will provide a list of class members, to the extent that HHS Defendants have this information and are able to identify class members.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS relating to the decision to adopt the ZERO TOLERANCE SEPARATION Policy, including but not limited to DOCUMENTS related to the potential effects of the ZERO TOLERANCE SEPARATION Policy on the mental health of separated parents and children.

**DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 2:**

DOJ Defendants object to this request to the extent it seeks information regarding a "Zero Tolerance Separation Policy," which does not exist. As previously stated, the "Zero Tolerance Policy" issued by then-Attorney General Sessions, dated April 6, 2018, sets forth a policy regarding referrals for criminal prosecution under 8 U.S.C. § 1325(a). Defendants define the Zero Tolerance Policy as a policy that directed each U.S. Attorney's Office along the Southwest Border to adopt a policy to prosecute all DHS referrals of section 1325(a) violations, to the extent practicable.

On May 11, 2018, then-Secretary Nielsen issued a memorandum directing "all DHS law enforcement officers at the border to refer all illegal border crossers to the Department of Justice for criminal prosecution to the extent practicable."

DOJ Defendants object to Request for Production No. 2 as overbroad because it seeks documents and information that are not relevant to the claims and defenses in this case. *See* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. Procedure 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."). Request for Production No. 2 seeks "all" documents relating to the decision to adopt the Zero Tolerance Separation Policy, regardless of whether that information pertains to the impact of the separations—that occurred as a result of the Zero Tolerance Policy— mental health effects of the alleged family separation policy. Documents and information regarding Defendants' decision to implement the Zero Tolerance Policy is not relevant to Plaintiffs' claims or the relief sought in this case. *See generally* Complaint, ECF No. 1 ("Compl.") (requesting a court order requiring Defendants to provide mental-health screenings before and after reunification to assess Plaintiffs' need for subsequent trauma-informed medical and mental-health services and to offer appropriate trauma-informed medical and mental-health services).[9] Specifically, the how or why of the policy has no bearing on Plaintiffs' request for mental health screenings and trauma-informed mental health treatment for class members that Plaintiffs allege is necessary to assess the effect of the separation on class members.

DOJ Defendants further object to this request based on relevance, as any response is not likely to lead to the discovery of admissible evidence and, consistent with Fed. R. Civ. P. 26(b)(1), seeks documents and information not relevant to the Plaintiffs' claims or defenses, nor is the burden of such production proportional to the needs of the case. Moreover, DOJ Defendants object that this request is not limited to information generated or existing during a time period that is relevant to the Parties'

---

[9] Plaintiffs' claims for relief center around their allegations that by forcibly separating Plaintiffs from their children, Defendants have inflicted upon Plaintiffs extraordinary harm that they would not have otherwise faced. They further allege that this separation caused exceptional distress and trauma and that the plaintiffs have not received any mental health services from the government since they were separated. [Footnote Original]

claims and defenses. DOJ Defendants object to this request as vague and ambiguous on the basis that is it unclear what is meant by the terms "potential effects" and "mental health." Finally, DOJ Defendants also object to the request to the extent that it seeks the production of deliberative and pre-decisional or otherwise privileged information. Accordingly, Defendant DOJ will not produce documents for this request.

**DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 2:**

DHS Defendants object to Request for Production No. 2 as overbroad because it seeks documents and information that are not relevant to the claims and defenses in this case. Request for Production No. 2 seeks "all" documents relating to the decision to adopt the Zero Tolerance Separation Policy, regardless of whether that information pertains to the alleged mental health trauma as a result of the alleged family separation policy. Documents and information regarding Defendants' decision to implement the Zero Tolerance Policy is not relevant to Plaintiffs' claims or the relief sought in this case. *See* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.") Specifically, the how or why of the alleged policy has no bearing on Plaintiffs' request for mental health screenings and trauma-informed mental health treatment for class members that Plaintiffs allege is necessary to assess the effect of separation on class members. *See generally* Complaint, ECF No. 1 ("Compl.") (requesting a court order requiring Defendants to provide mental-health screenings before and after reunification to assess Plaintiffs' need for subsequent trauma-informed medical and mental-health services and to offer appropriate trauma-

1  informed medical and mental-health services).[10]

2     Moreover, DHS Defendants object to this request as not limited to information

3  generated or existing during a time period that is relevant to the Parties' claims and

4  defenses.

5     DHS Defendants further object to this request because it seeks information

6  regarding a "Zero Tolerance Separation Policy," which does not exist. As previously

7  stated, the "Zero Tolerance Policy" issued by then-Attorney General Sessions, dated

8  April 6, 2018, sets forth a policy regarding referrals for criminal prosecution under 8

9  U.S.C. § 1325(a). On May 11, 2018, then-Secretary Nielsen issued a memorandum

10  directing "all DHS law enforcement officers at the border to refer all illegal border

11  crossers to the Department of Justice for criminal prosecution to the extent

12  practicable." Finally, DHS Defendants also object to the request to the extent that it

13  seeks the production of deliberative and pre-decisional or otherwise privileged

14  information. Based on these objections, DHS Defendants will not produce documents

15  responsive to this request.

16  **HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 2:**

17     HHS Defendants object to this request to the extent it seeks privileged

18  documents. HHS Defendants object to Request for Production No. 2 as overbroad

19  because it seeks documents and information that are not relevant to the claims and

20  defenses in this case. *See generally* Compl. (requesting a court order requiring

21  Defendants to provide mental-health screenings before and after reunification to

22  assess Plaintiffs' need for subsequent trauma-informed medical and mental-health

23  services and to offer appropriate trauma-informed medical and mental-health

24  services); *see also* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. Procedure

---

[10] Relevant here, Plaintiffs' claims for relief center around their allegations that by forcibly separating Plaintiffs from their children, Defendants have inflicted upon Plaintiffs extraordinary harm that they would not have otherwise have faced. They further allege that this separation caused exceptional distress and trauma and that the plaintiffs have not received any mental health services from the government since they were separated. [Footnote Original]

26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."). Request for Production No. 2 seeks "all" documents relating to the decision to adopt the Zero Tolerance Separation Policy, regardless of whether that information pertains to the impact of the separations—that occurred as a result of the Zero Tolerance Policy—mental health effects of the alleged family separation policy. Documents and information regarding Defendants' decision to implement the Zero Tolerance Policy are not relevant to Plaintiffs' claims or the relief sought in this case. Specifically, the how or why of the policy has no bearing on Plaintiffs' request for mental health screenings and trauma-informed mental health treatment for class members that Plaintiffs allege is necessary to assess the effect of the separation on class members.

HHS further objects to this request because it purports to require the disclosure of information in the possession, custody, or control of entities other than HHS Defendants, Fed. R. Civ. P. 34, or seeks information that can and should be sought from another entity. As noted above, the Zero Tolerance Policy was an enforcement initiative announced by the Department of Justice in conjunction with the Department of Homeland Security. It was not a policy initiative of HHS Defendants. HHS Defendants refer Plaintiffs to DOJ and DHS Defendants. To the extent that this request seeks information from DOJ or DHS, HHS Defendants direct Plaintiffs to DOJ and DHS Defendants who can provide responses and objections to requests directed to those agencies. Based on these objections, HHS Defendants will not produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS related to the potential or actual effects of the ZERO

1   TOLERANCE SEPARATION Policy on the mental health of separated parents and

2   children.

3   **DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 3:**

4   DOJ Defendants object to this request to the extent it appears to require the

5   disclosure of information in the possession, custody, or control of entities other than

6   DOJ Defendants, Fed. R. Civ. P. 34. To the extent that this request appears to seek

7   information from DHS or HHS, DOJ Defendants direct Plaintiffs to DHS and HHS

8   Defendants who can provide responses and objections to requests directed to those

9   agencies. Moreover, DOJ Defendants object to this request to the extent it seeks

10  information regarding a "Zero Tolerance Separation Policy," which does not exist.

11  The Zero Tolerance Policy issued by then-Attorney General Sessions, dated April 6,

12  2018, sets forth a policy regarding referrals for criminal prosecution under 8 U.S.C. §

13  1325(a). Defendants define the Zero Tolerance Policy as a policy that directed each

14  U.S. Attorney's Office along the Southwest Border to adopt a policy to prosecute all

15  DHS referrals of section 1325(a) violations, to the extent practicable. On May 11,

16  2018, then-Secretary Nielsen issued a memorandum directing "all DHS law

17  enforcement officers at the border to refer all illegal border crossers to the Department

18  of Justice for criminal prosecution to the extent practicable."

19  DOJ Defendants further object to this request as overly broad and unduly

20  burdensome and not limited in time or scope. Request for Production No. 3 is not

21  limited to information generated or existing during a time period that is relevant to the

22  Parties' claims and defenses. *See* Fed. R. Evid. 401 (defining "relevance"); Fed. R.

23  Civ. Procedure 26(b)(1). DOJ Defendants object to this request as it appears to require

24  a government-wide search for documents. Such a government-wide search would be

25  oppressive, overly burdensome, and overbroad given the claims and defenses in this

26  matter. *See generally* Compl., ECF No. 1. DOJ Defendants object to this request as

27  vague and ambiguous on the basis that it is unclear what is meant by "potential or

28  actual effects" and "mental health." DOJ Defendants also object to the request to the

1   extent that it seeks the production of deliberative and pre-decisional or otherwise

2   privileged information. Based on these objections, DOJ Defendants will not produce

3   documents for this request.

4   **DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 3:**

5          DHS Defendants object to this request as overly broad and unduly burdensome

6   and not limited in time or scope. Request No. 3 is not limited to information generated

7   or existing during a time period that is relevant to the Parties' claims and defenses. *See*

8   Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. P. 26(b)(1). DHS Defendants

9   object to this request as it appears to require a government-wide search for documents.

10  Such a government-wide search would be oppressive, overly burdensome and

11  overbroad, given the claims and defenses in this matter. DHS Defendants further

12  object to this request to the extent it appears to require the disclosure of information in

13  the possession, custody or control of entities other than DHS Defendants and exceeds

14  the permissible scope of discovery under Fed. R. Civ. P. 34. To the extent that this

15  request appears to seek information from DOJ or HHS, DHS Defendants direct

16  Plaintiffs to DOJ and HHS Defendants who can provide responses and objections to

17  requests directed to those agencies.

18         DHS Defendants object to this request as vague and ambiguous on the basis that

19  it is unclear what is meant by "potential or actual effects" and "mental heath." DHS

20  Defendants further object to this request because it seeks information regarding a

21  "Zero Tolerance Separation Policy," which does not exist. The Zero Tolerance Policy

22  issued by then-Attorney General Sessions, dated April 6, 2018, sets forth a policy

23  regarding referrals for criminal prosecution under 8 U.S.C. § 1325(a). On May 11,

24  2018, then-Secretary Nielsen issued a memorandum directing "all DHS law

25  enforcement officers at the border to refer all illegal border crossers to the Department

26  of Justice for criminal prosecution to the extent practicable." Finally, DHS Defendants

27  also object to the request to the extent that it seeks the production of deliberative and

28  pre-decisional or otherwise privileged information. Based on these objections, DHS

1  Defendants will not produce documents responsive to this request.

2  **<u>HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 3</u>:**

3  HHS Defendants object to this request to the extent it seeks privileged

4  documents. HHS Defendants further object to this request to the extent it seeks

5  information regarding a "Zero Tolerance Separation Policy," which does not exist.

6  The Zero Tolerance Policy issued by then-Attorney General Sessions, dated April 6,

7  2018, sets forth a policy regarding referrals for criminal prosecution under 8 U.S.C. §

8  1325(a). On May 11, 2018, then-Secretary Nielsen issued a memorandum directing

9  "all DHS law enforcement officers at the border to refer all illegal border crossers to

10  the Department of Justice for criminal prosecution to the extent practicable."

11  HHS Defendants further object to this request as overly broad, unduly

12  burdensome, and not limited in time or scope. Request for Production No. 3 is not

13  limited to information generated or existing during a time period that is relevant to the

14  Parties' claims and defenses. *See generally* Compl. (requesting a court order requiring

15  Defendants to provide mental-health screenings before and after reunification to

16  assess Plaintiffs' need for subsequent trauma-informed medical and mental-health

17  services and to offer appropriate trauma-informed medical and mental-health

18  services); *see also* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. Procedure

19  26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is

20  relevant to any party's claim or defense and proportional to the needs of the case,

21  considering the importance of the issues at stake in the action, the amount in

22  controversy, the parties' relative access to relevant information, the parties' resources,

23  the importance of the discovery in resolving the issues, and whether the burden or

24  expense of the proposed discovery outweighs its likely benefit."). HHS Defendants

25  object to this request as it appears to require a government-wide search for documents.

26  Such a government-wide search would be oppressive, overly burdensome, and

27  overbroad given the claims and defenses in this matter. Moreover, HHS Defendants

28  object to this request because it seeks to require the disclosure of information in the

1  possession, custody, or control of entities other than HHS Defendants, Fed. R. Civ. P.

2  34.

3       To the extent that this request appears to seek information from DOJ or DHS,

4  HHS Defendants direct Plaintiffs to DOJ and DHS Defendants who can provide

5  responses and objections to requests directed to those agencies. HHS Defendants

6  further object to this request as vague and ambiguous on the basis that it is unclear

7  what is meant by "potential or actual effects" and "mental health." It is unclear what

8  types of documents Plaintiffs are seeking in their request. Based on these objections,

9  HHS Defendants will produce a sampling of the separated children's health

10  information that might be responsive to this request.

11  **REQUEST FOR PRODUCTION NO. 4:**

12       All DOCUMENTS related to YOUR press releases or internal memoranda that

13  announced, explained, or implemented the ZERO TOLERANCE SEPARATION

14  Policy, including but not limited to the internal memoranda themselves, drafts of those

15  press releases or internal memoranda, and any memoranda or guidance about how to

16  respond to questions from media or PUTATIVE CLASS MEMBERS.

17  **DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 4:**

18       DOJ Defendants object to this request to the extent it seeks information

19  regarding a "Zero Tolerance Separation Policy," which does not exist. The Zero

20  Tolerance Policy issued by then-Attorney General Sessions, dated April 6, 2018, sets

21  forth a policy regarding referrals for criminal prosecution under 8 U.S.C. § 1325(a).

22  Defendants define the Zero Tolerance Policy as a policy that directed each U.S.

23  Attorney's Office along the Southwest Border to adopt a policy to prosecute all DHS

24  referrals of section 1325(a) violations, to the extent practicable. On May 11, 2018,

25  then-Secretary Nielsen issued a memorandum directing "all DHS law enforcement

26  officers at the border to refer all illegal border crossers to the Department of Justice

27  for criminal prosecution to the extent practicable."

28       DOJ Defendants object to Request for Production No. 4 as overbroad because it

seeks documents and information that are not relevant to the claims and defenses in this case. *See* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. Procedure 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."). Request for Production No. 4 seeks "all" documents relating to the press releases and internal memoranda that announced, explained, or implemented the "Zero Tolerance Separation Policy," regardless of whether that information pertains to the alleged mental health effects of the alleged family separation policy. Documents and information regarding Defendants' decision to implement the Zero Tolerance Policy is not relevant to Plaintiffs' claims or the relief sought in this case. Specifically, the how or why of the policy has no bearing on Plaintiffs' request for mental health screenings and trauma-informed mental health treatment for class members that Plaintiffs allege is necessary to assess the effect of separation on class members. *See generally* Compl., ECF No. 1. DOJ Defendants further object that Request for Production No. 4 seeks information that is publicly available or available from other sources. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery [that] can be obtained from some other source that is more convenient, less burdensome, or less expensive."). Finally, DOJ Defendants also object to the request to the extent that it seeks the production of deliberative and pre-decisional or otherwise privileged information. Based on these objections, DOJ Defendants will not produce documents for this request.

**DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 4:**

DHS Defendants object to this request as Plaintiffs' definition of "putative class members" is overly broad and is not consistent with the Court's definition of the class

1   certified in its November 5, 2019 Order. DHS Defendants object to Request for

2   Production No. 4 as overbroad because it seeks documents and information that are

3   not relevant to the claims and defenses in this case. Request for Production No. 4

4   seeks "all" documents relating to the press releases and internal memoranda that

5   announced, explained, or implemented the "Zero Tolerance Separation Policy,"

6   regardless of whether that information pertains to the alleged mental health effects of

7   the alleged family separation policy. Documents and information regarding

8   Defendants' decision to implement the Zero Tolerance Policy is not relevant to

9   Plaintiffs' claims or the relief sought in this case. *See* Fed. R. Evid. 401 (defining

10  "relevance"); Fed. R. Civ. P. 26(b)(1). Specifically, the how or why of the alleged

11  policy has no bearing on Plaintiffs' request for mental health screenings and trauma-

12  informed mental health treatment for class members that Plaintiffs allege is necessary

13  to assess the effect of separation on class members. *See generally* Compl., ECF No. 1.

14          Moreover, DHS Defendants object to this request to the extent it seeks

15  information regarding a "Zero Tolerance Separation Policy," which does not exist.

16  The Zero Tolerance Policy issued by then-Attorney General Sessions, dated April 6,

17  2018, sets forth a policy regarding referrals for criminal prosecution under 8 U.S.C. §

18  1325(a). On May 11, 2018, then-Secretary Nielsen issued a memorandum directing

19  "all DHS law enforcement officers at the border to refer all illegal border crossers to

20  the Department of Justice for criminal prosecution to the extent practicable." DHS

21  Defendants further object that Request for Production No. 4 seeks information that is

22  publicly available or available from other sources. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)

23  ("[T]he court must limit the frequency or extent of discovery [that] can be obtained

24  from some other source that is more convenient, less burdensome, or less

25  expensive."). Finally, DHS Defendants also object to the request to the extent that it

26  seeks the production of deliberative and pre-decisional or otherwise privileged

27  information. Based on these objections, DHS Defendants will not produce documents

28  responsive to this request.

## HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 4:

HHS Defendants object to this request to the extent it seeks privileged documents. HHS Defendants further object to this request as overbroad because it seeks documents and information that are not relevant to the claims and defenses in this case. *See generally* Compl. (requesting a court order requiring Defendants to provide mental-health screenings before and after reunification to assess Plaintiffs' need for subsequent trauma-informed medical and mental-health services and to offer appropriate trauma-informed medical and mental-health services); *see also* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. Procedure 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

Moreover, HHS Defendants object to this request because it seeks to require the disclosure of information in the possession, custody, or control of entities other than HHS Defendants, Fed. R. Civ. P. 34, or seeks information that can and should be sought from another entity. To the extent that this request seeks information from DOJ or DHS, HHS Defendants direct Plaintiffs to DOJ and DHS Defendants who can provide responses and objections to requests directed to those agencies. As noted above, the Zero Tolerance Policy was an enforcement initiative announced by the Department of Justice in conjunction with the Department of Homeland Security. It was not a policy initiative of HHS Defendants. Based on these objections, HHS Defendants will not produce documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS relating to the consideration of family separation as a means to deter immigration, including but not limited to the consideration of family

1    separation discussed by then-DHS Secretary John Kelly on CNN on or about March 6,
2    2017.

3    **DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 5:**

4           DOJ Defendants object to Request for Production No. 5 as overbroad because it
5    seeks documents and information that are not relevant to the claims and defenses in
6    this case. *See* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. Procedure
7    26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is
8    relevant to any party's claim or defense and proportional to the needs of the case,
9    considering the importance of the issues at stake in the action, the amount in
10   controversy, the parties' relative access to relevant information, the parties' resources,
11   the importance of the discovery in resolving the issues, and whether the burden or
12   expense of the proposed discovery outweighs its likely benefit."). Request for
13   Production No. 5 seeks "all" documents relating to "the consideration of family
14   separation as a means to deter immigration," regardless of whether that information
15   pertains to the alleged mental health effects of the alleged family separation policy.
16   Specifically, the how or why of the policies has no bearing on Plaintiffs' request for
17   mental health screenings and trauma-informed mental health treatment for class
18   members that Plaintiffs allege is necessary to assess the effect of separation on class
19   members. To this extent that this request references a statement, this request does not
20   specify to which statement the request refers. DOJ Defendants further object to this
21   request as vague and ambiguous on the basis that it is unclear what is meant by
22   "relating to consideration of family separation." Moreover, because this request
23   appears to require a government-wide search for documents. Such a government-wide
24   search would be oppressive, overly burdensome and overbroad, given the claims and
25   defenses in this matter, which relate to a discrete issue. Further, this request is overly
26   broad and unduly burdensome in that it does not provide any data parameters or
27   limitation on the request for documents. And this request is not limited to information
28   generated or existing during a time period that is relevant to the Parties' claims and

1  defenses. Finally, DOJ Defendants also object to the request to the extent that it seeks

2  the production of deliberative and pre-decisional or otherwise privileged information.

3  Based on these objections, DOJ Defendants will not produce documents for this

4  request.

5  **DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 5:**

6      DHS Defendants object to Request for Production No. 5 as overbroad because it

7  seeks documents and information that are not relevant to the claims and defenses in

8  this case. Request for Production No. 5 seeks "all" documents relating to "the

9  consideration of family separation as a means to deter immigration," regardless of

10  whether that information pertains to the alleged mental health effects of the alleged

11  family separation policy. *See* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. P.

12  26(b)(1). Specifically, the how or why of the policies has no bearing on Plaintiffs'

13  request for mental health screenings and trauma-informed mental health treatment for

14  class members that Plaintiffs allege is necessary to assess the effect of separation on

15  class members. *See generally* Compl., ECF No. 1. To the extent that this request

16  references a statement, this request does not specify to which statement the request

17  refers. DHS Defendants object to this request as vague and ambiguous on the basis

18  that it is unclear what is meant by "relating to consideration of family separation."

19  Finally, DHS Defendants also object to the request to the extent that it seeks the

20  production of deliberative and pre-decisional or otherwise privileged information.

21  Based on these objections, DHS Defendants will not produce documents responsive to

22  this request.

23  **HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 5:**

24      HHS Defendants object to Request for Production No. 5 as overbroad because it

25  seeks documents and information that are not relevant to the claims and defenses in

26  this case. *See generally* Compl. (requesting a court order requiring Defendants to

27  provide mental-health screenings before and after reunification to assess Plaintiffs'

28  need for subsequent trauma-informed medical and mental-health services and to offer

1    appropriate trauma-informed medical and mental-health services); *see also* Fed. R.

2    Evid. 401 (defining "relevance"); Fed. R. Civ. Procedure 26(b)(1) ("Parties may

3    obtain discovery regarding any nonprivileged matter that is relevant to any party's

4    claim or defense and proportional to the needs of the case, considering the importance

5    of the issues at stake in the action, the amount in controversy, the parties' relative

6    access to relevant information, the parties' resources, the importance of the discovery

7    in resolving the issues, and whether the burden or expense of the proposed discovery

8    outweighs its likely benefit."). HHS Defendants also object to the request to the extent

9    that it seeks the production of deliberative and pre-decisional or otherwise privileged

10   information.

11          Moreover, HHS Defendants object to this request because it seeks to require the

12   disclosure of information in the possession, custody, or control of entities other than

13   HHS Defendants, Fed. R. Civ. P. 34, or seeks information that can and should be

14   sought from another entity. To the extent that this request appears to seek information

15   from DHS, HHS Defendants direct Plaintiffs to DHS Defendants who can provide

16   responses and objections to requests directed to that agency. John Kelly was the

17   Secretary of the Department of Homeland Security, not the Secretary of Health and

18   Human Services. Based on these objections, HHS Defendants will not produce

19   documents responsive to this request.

20   **REQUEST FOR PRODUCTION NO. 6:**

21          All DOCUMENTS relating to YOUR consideration of alternatives to detention

22   of the PUTATIVE CLASS MEMBERS that would allow families to remain together,

23   including but not limited to community supported models such as the Family Case

24   Management Program that was initially implemented in January 2016.

25   **DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 6:**

26          DOJ Defendants object to this request to the extent Plaintiffs purport to require

27   the disclosure of information in the possession, custody, or control of entities other

28   than DOJ Defendants, Fed. R. Civ. P. 34, or seek information that can and should be

sought from another entity. Finally, DOJ Defendants also object to the request to the extent that it seeks the production of deliberative and pre-decisional or otherwise privileged information. To the extent that this request appears to seek information from DHS, DOJ Defendants direct Plaintiffs to DHS Defendants who can provide responses and objections to requests directed to those agencies. Accordingly, DOJ Defendants do not have any responsive documents.

**DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 6:**

DHS Defendants object to this request as overly broad and unduly burdensome and not limited in time or scope. DHS Defendants object to Request for Production No. 6 as overbroad because it seeks documents and information that are not relevant to the claims and defenses in this case. *See* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. P. 26(b)(1). Rather, Request for Production No. 6 seeks information about alternatives to detention, including the Family Case Management Program. Alternatives to detentions programs have no bearing on Plaintiffs' request for mental health screenings and trauma-informed mental health treatment for class members that Plaintiffs allege is necessary to assess the effect of separation on class members. *See generally* Compl., ECF No. 1. Finally, DHS Defendants also object to the request to the extent that it seeks the production of deliberative and pre-decisional or otherwise privileged information. Based on these objections, Defendant DHS and Defendant CBP will not produce documents responsive to this request.

Defendant ICE further objects to producing documents relating to the Family Case Management Program in 2017 on the basis that this time period preceded the implementation of the Zero Tolerance Policy. The Family Case Management Program terminated in June 2017, and this Court's November 5, 2019 Order certified a class of adults parents who, in relevant part, "on or after July 1, 2017, were, are, or will be detained in immigration custody by DHS." Thus this request is not proportional to the needs of this case, as this lawsuit pertains to the alleged mental health effects of the separation on class members, and thus documents pertaining to the Family Case

1   Management Program are outside the scope of this lawsuit. Thus, Defendant ICE will

2   not produce any documents responsive to this request.

3   **HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 6:**

4       HHS Defendants object to Request for Production No. 6 as overbroad because it

5   seeks documents and information that are not relevant to the claims and defenses in

6   this case. *See generally* Compl. (requesting a court order requiring Defendants to

7   provide mental-health screenings before and after reunification to assess Plaintiffs'

8   need for subsequent trauma-informed medical and mental-health services and to offer

9   appropriate trauma-informed medical and mental-health services); *see also* Fed. R.

10  Evid. 401 (defining "relevance"); Fed. R. Civ. Procedure 26(b)(1) ("Parties may

11  obtain discovery regarding any nonprivileged matter that is relevant to any party's

12  claim or defense and proportional to the needs of the case, considering the importance

13  of the issues at stake in the action, the amount in controversy, the parties' relative

14  access to relevant information, the parties' resources, the importance of the discovery

15  in resolving the issues, and whether the burden or expense of the proposed discovery

16  outweighs its likely benefit.").

17      Moreover, HHS Defendants object to this request because it seeks to require the

18  disclosure of information in the possession, custody, or control of entities other than

19  HHS Defendants, Fed. R. Civ. P. 34, or seeks information that can and should be

20  sought from another entity. To the extent that this request appears to seek information

21  from DOJ or DHS, HHS Defendants direct Plaintiffs to DOJ and DHS Defendants

22  who can provide responses and objections to requests directed to those agencies. The

23  Family Case Management Program was a Department of Homeland Security program.

24  Based on these objections, HHS Defendants will not produce documents responsive to

25  this request.

26  **REQUEST FOR PRODUCTION NO. 7:**

27      All DOCUMENTS related to the decision to close the Family Case

28  Management Program in 2017.

**DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 7:**

DOJ Defendants also object to the request to the extent that it seeks the production of deliberative and pre-decisional or otherwise privileged information. DOJ Defendants object to this request to the extent Plaintiffs purport to require the disclosure of information in the possession, custody, or control of entities other than DOJ Defendants, Fed. R. Civ. P. 34, or to the extent, Plaintiffs seek information that can and should be sought from another entity. To the extent that this request appears to seek information from DHS, DOJ Defendants direct Plaintiffs to DHS Defendants who can provide responses and objections to requests directed to those agencies.

**DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 7:**

DHS Defendants object to Request for Production No. 7 as overbroad because it seeks documents and information that are not relevant to the claims and defenses in this case. *See* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. P. 26(b)(1). Request for Production No. 7 seeks information about the government's decision to terminate the Family Case Management Program. This decision has no bearing on Plaintiffs' request for mental health screenings and trauma-informed mental health treatment for class members that Plaintiffs allege is necessary to assess the effect of separation on class members. *See generally* Compl., ECF No. 1. Defendant DHS and Defendant CBP refer Plaintiffs to Defendant ICE for information related to the Family Case Management Program. Finally, DHS Defendants also object to the request to the extent that it seeks the production of deliberative and pre-decisional or otherwise privileged information. Based on these objections, Defendant DHS and Defendant CBP will not produce documents responsive to this request.

Defendant ICE objects to producing documents relating to the Family Case Management Program in 2017 on the basis that this time period preceded the implementation of the zero tolerance policy, and thus is not proportional to the needs of this case. The Family Case Management Program terminated in June 2017, and this Court's November 5, 2019 Order, certified a class of adults parents who, in relevant

part, "on or after July 1, 2017, were, are, or will be detained in immigration custody by DHS", as this lawsuit pertains to the alleged mental health effects of the separation of families, and thus documents pertaining to the Family Case Management Program are outside the scope of this lawsuit. Based on these objections, Defendant ICE will not produce any documents responsive to this request.

**HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 7:**

HHS Defendants object to Request for Production No. 7 as overbroad because it seeks documents and information that are not relevant to the claims and defenses in this case. *See generally* Compl. (requesting a court order requiring Defendants to provide mental-health screenings before and after reunification to assess Plaintiffs' need for subsequent trauma-informed medical and mental-health services and to offer appropriate trauma-informed medical and mental-health services); *see also* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. Procedure 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

Moreover, HHS Defendants object to this request because it seeks to require the disclosure of information in the possession, custody, or control of entities other than HHS Defendants, Fed. R. Civ. P. 34, or seeks information that can and should be sought from another entity. The Family Case Management Program was a Department of Homeland Security program. To the extent that this request appears to seek information from DOJ or DHS, HHS Defendants direct Plaintiffs to DOJ and DHS Defendants who can provide responses and objections to requests directed to those agencies. Based on these objections, HHS Defendants will not produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS relating to any programs YOU have implemented to mitigate or remediate the mental health impact of the ZERO TOLERANCE SEPARATION Policy on the PUTATIVE CLASS MEMBERS or their children.

**DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 8:**

DOJ Defendants object to this request to the extent it seeks information regarding a "Zero Tolerance Separation Policy," which does not exist. The Zero Tolerance Policy issued by then-Attorney General Sessions, dated April 6, 2018, sets forth a policy regarding referrals for criminal prosecution under 8 U.S.C. § 1325(a). Defendants define the Zero Tolerance Policy as a policy that directed each U.S. Attorney's Office along the Southwest Border to adopt a policy to prosecute all DHS referrals of section 1325(a) violations, to the extent practicable. On May 11, 2018, then-Secretary Nielsen issued a memorandum directing "all DHS law enforcement officers at the border to refer all illegal border crossers to the Department of Justice for criminal prosecution to the extent practicable."

DOJ Defendants further object to this request as overly broad and unduly burdensome and not limited in time or scope. Request for Production No. 8 is not limited to information generated or existing during a time period that is relevant to the Parties' claims and defenses. DOJ Defendants object to this request as vague and ambiguous on the basis that it is unclear what is meant by "mental health impact." Finally, DOJ Defendants also object to the request to the extent that it seeks the production of deliberative and pre-decisional or otherwise privileged information.

DOJ Defendants object to this request to the extent Plaintiffs purport to require the disclosure of information in the possession, custody, or control of entities other than DOJ Defendants, Fed. R. Civ. P. 34, or seek information that can and should be sought from another entity. DOJ Defendants are not the entity statutorily responsible for the custody and care of individuals in detention. Defendant DOJ refers Plaintiffs to DHS and HHS Defendants. To the extent that this request appears to seek information

1   from DHS and HHS, DOJ Defendants direct Plaintiffs to DHS and HHS Defendants
2   who can provide responses and objections to requests directed to those agencies. *See*
3   DHS and HHS Responses to RFP No. 8. Accordingly, DOJ Defendants do not have
4   any responsive documents.

5   **DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 8:**

6          DHS Defendants object to this request as Plaintiffs' definition of "putative class
7   members" is overly broad and is not consistent with the Court's definition of the class
8   certified in its November 5, 2019 Order. DHS Defendants object to this request as
9   vague and ambiguous on the basis that it is unclear what is meant by "mitigate or
10  remediate" and "mental health impact." DHS Defendants object to this request to the
11  extent it seeks information regarding a "Zero Tolerance Separation Policy," which
12  does not exist. The Zero Tolerance Policy issued by then-Attorney General Sessions,
13  dated April 6, 2018, sets forth a policy regarding referrals for criminal prosecution
14  under 8 U.S.C. § 1325(a). On May 11, 2018, then-Secretary Nielsen issued a
15  memorandum directing "all DHS law enforcement officers at the border to refer all
16  illegal border crossers to the Department of Justice for criminal prosecution to the
17  extent practicable." Finally, DHS Defendants also object to the request to the extent
18  that it seeks the production of deliberative and pre-decisional or otherwise privileged
19  information. Notwithstanding these objections, DHS Defendants will produce non-
20  privileged, responsive documents after the implementation of a protective order in this
21  case. In addition, to the extent that Defendants are producing documents responsive to
22  this request, we anticipate producing any responsive electronically stored information
23  pursuant to an ESI protocol, once that protocol is in place. *See also* HHS Response to
24  RFP No. 8.

25  **HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 8:**

26         Defendants object to this request as Plaintiffs' definition of "putative class
27  members" is overly broad and is not consistent with the Court's definition of the class
28  certified in its November 5, 2019 order. HHS Defendants object to this request to the

extent it seeks information regarding a "Zero Tolerance Separation Policy," which does not exist. The Zero Tolerance Policy issued by then-Attorney General Sessions, dated April 6, 2018, sets forth a policy regarding referrals for criminal prosecution under 8 U.S.C. § 1325(a). On May 11, 2018, then-Secretary Nielsen issued a memorandum directing "all DHS law enforcement officers at the border to refer all illegal border crossers to the Department of Justice for criminal prosecution to the extent practicable."

HHS Defendants further object to this request as overly broad and unduly burdensome and not limited in time or scope. Request for Production No. 8 is not limited to information generated or existing during a time period that is relevant to the Parties' claims and defenses. HHS Defendants object to this request as vague and ambiguous on the basis that it is unclear what is meant by "mental health impact."

Notwithstanding the general and specific objections, and without waiving any objections, HHS will produce non-privileged, responsive documents on a rolling basis after the Court enters an appropriate protective order. *See also* DHS Response to RFP No. 8.

## REQUEST FOR PRODUCTION NO. 9:

All DOCUMENTS, analyses, reports, and drafts thereof supporting Defendant Nielsen's assertion that the ZERO TOLERANCE SEPARATION Policy was necessary due to the marked increase in the number of adults arriving at the border with children and fraudulently claiming to be a family unit.

## DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 9:

DOJ Defendants object to this request to the extent it seeks information regarding a "Zero Tolerance Separation Policy," which does not exist. The Zero Tolerance Policy issued by then-Attorney General Sessions, dated April 6, 2018, sets forth a policy regarding referrals for criminal prosecution under 8 U.S.C. § 1325(a). On May 11, 2018, then-Secretary Nielsen issued a memorandum directing "all DHS law enforcement officers at the border to refer all illegal border crossers to the

1  Department of Justice for criminal prosecution to the extent practicable."

2  DOJ Defendants object to this request as ambiguous, as it fails to identify a

3  specific statement or representation by former Secretary Nielsen for which related

4  documents are sought. DOJ Defendants also object to the request to the extent that it

5  seeks the production of deliberative and pre-decisional or otherwise privileged

6  information.

7  DOJ Defendants further object to Request for Production No. 9 as overbroad

8  because it seeks documents and information that are not relevant to the claims and

9  defenses in this case. To the extent that Plaintiffs seek information regarding the

10  government's decision to implement the Zero Tolerance Policy, this decision has no

11  bearing on Plaintiffs' request for mental health screenings and trauma-informed

12  mental health treatment for class members that Plaintiffs allege is necessary to assess

13  the effect of separation on class members. *See* Fed. R. Evid. 401(defining

14  "relevance"); Fed. R. Civ. Procedure 26(b)(1) ("Parties may obtain discovery

15  regarding any nonprivileged matter that is relevant to any party's claim or defense and

16  proportional to the needs of the case, considering the importance of the issues at stake

17  in the action, the amount in controversy, the parties' relative access to relevant

18  information, the parties' resources, the importance of the discovery in resolving the

19  issues, and whether the burden or expense of the proposed discovery outweighs its

20  likely benefit."). This request is also not limited to information generated or existing

21  during a time period that is relevant to the Parties' claims and defenses.

22  DOJ Defendants object to this request to the extent Plaintiffs purport to require

23  the disclosure of information in the possession, custody, or control of entities other

24  than DOJ Defendants, Fed. R. Civ. P. 34, or seek information that can and should be

25  sought from another entity. Then-Secretary Nielson was the Secretary of the

26  Department of Homeland Security—a separate agency from the Department of

27  Justice. To the extent that this request appears to seek information from DHS, DOJ

28  Defendants direct Plaintiffs to DHS Defendants who can provide responses and

1  objections to requests directed to that agency. Finally, DOJ Defendants also object to

2  the request to the extent that it seeks the production of deliberative and pre-decisional

3  or otherwise privileged information. Based on these objections, DOJ Defendants will

4  not produce documents for this request.

5  **DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 9:**

6       DHS Defendants object to this request as ambiguous, as it fails to identify a

7  specific statement or representation by former Secretary Nielsen for which related

8  documents are sought. DHS Defendants object to this request because it seeks

9  information regarding a "Zero Tolerance Separation Policy," which does not exist.

10 The Zero Tolerance Policy issued by then-Attorney General Sessions, dated April 6,

11 2018, sets forth a policy regarding referrals for criminal prosecution under 8 U.S.C. §

12 1325(a). On May 11, 2018, then-Secretary Nielsen issued a memorandum directing

13 "all DHS law enforcement officers at the border to refer all illegal border crossers to

14 the Department of Justice for criminal prosecution to the extent practicable." DHS

15 Defendants further object to Request for Production No. 9 as overbroad because it

16 seeks documents and information that are not relevant to the claims and defenses in

17 this case. *See* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. P. 26(b)(1). To

18 the extent that Plaintiffs seek information regarding the government's decision to

19 implement the Zero Tolerance Policy, this decision has no bearing on Plaintiffs'

20 request for mental health screenings and trauma-informed mental health treatment for

21 class members that Plaintiffs allege is necessary to assess the effect of separation on

22 class members. *See* Compl., ECF No. 1. This request is also not limited to information

23 generated or existing during a time period that is relevant to the Parties' claims and

24 defenses. Finally, DHS Defendants also object to the request to the extent that it seeks

25 the production of deliberative and pre-decisional or otherwise privileged information.

26 Based on these objections, DHS Defendants will not produce documents responsive to

27 this request.

28

**HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 9:**

HHS Defendants object to Request for Production No. 9 as overbroad because it seeks documents and information that are not relevant to the claims and defenses in this case. *See generally* Compl. (requesting a court order requiring Defendants to provide mental-health screenings before and after reunification to assess Plaintiffs' need for subsequent trauma-informed medical and mental-health services and to offer appropriate trauma-informed medical and mental-health services); *see also* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. Procedure 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

Moreover, HHS Defendants object to this request because it seeks to require the disclosure of information in the possession, custody, or control of entities other than HHS Defendants, Fed. R. Civ. P. 34, or seeks information that can and should be sought from another entity. As noted above, the Zero Tolerance Policy refers to a policy initiative announced by the Department of Justice in conjunction with the Department of Homeland Security; this is not a policy directive of HHS Defendants. To the extent that this request appears to seek information from DHS, HHS Defendants direct Plaintiffs to DHS Defendants who can provide responses and objections to requests directed to that agency. Based on these objections, HHS Defendants will not produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS, analyses, reports, and drafts thereof supporting President Trump's statement that 80 percent of migrants who are released never show up for their immigration hearings and disappear into the country.

**DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 10:**

DOJ Defendants object to Request for Production No. 10 as overbroad because it seeks documents and information that are not relevant to the claims and defenses in this case. An alleged statement regarding the percentage of migrants who abscond into the interior has no bearing on Plaintiffs' request for mental health screenings and trauma-informed mental health treatment for class members that Plaintiffs allege is necessary to assess the effect of separation on class members. *See* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. Procedure 26(b)(1). This request is overly broad and unduly burdensome in that it does not provide any data parameters or limitation on the request for documents. This request is not limited to information generated or existing during a time period that is relevant to the Parties' claims and defenses.

DOJ Defendants object to this request to the extent Plaintiffs purport to require the disclosure of information in the possession, custody, or control of entities other than DOJ Defendants, Fed. R. Civ. P. 34, or seek information that can and should be sought from another entity. Finally, DOJ Defendants also object to the request to the extent that it seeks the production of deliberative and pre-decisional or otherwise privileged information. Based on these objections, DOJ Defendants will not produce documents for this request.

**DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 10:**

DHS Defendants object to Request for Production No. 10 as overbroad because it seeks documents and information that are not relevant to the claims and defenses in this case. An alleged statement regarding the percentage of migrants who abscond into the interior has no bearing on Plaintiffs' request for mental health screenings and trauma-informed mental health treatment for class members that Plaintiffs allege is necessary to assess the effect of separation on class members. *See* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. P. 26(b)(1). This request is also not limited to information generated or existing during a time period that is relevant to the Parties' claims and defenses. DHS Defendants object to this request to the extent Plaintiffs

purport to require the disclosure of information in the possession, custody or control
of entities other than DHS Defendants and exceeds the permissible scope of discovery
under Fed. R. Civ. P. 34, or seek information that can and should be sought from
another entity. To the extent that this request appears to seek information from DOJ,
DHS Defendants direct Plaintiffs to DOJ Defendants who can provide responses and
objections to requests directed to that agency. DHS Defendants further object to
Plaintiff's definitions and instructions because they purport to require a government-
wide search for documents. Such a government-wide search would be oppressive,
overly burdensome and overbroad, given the claims and defenses in this matter, which
relate to one incident that took place in one location. Finally, DHS Defendants also
object to the request to the extent that it seeks the production of deliberative and pre-
decisional or otherwise privileged information. Based on these objections, DHS
Defendants will not produce documents responsive to this request.

**HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 10:**

HHS Defendants object to this request as overbroad because it seeks documents
and information that are not relevant to the claims and defenses in this case. *See
generally* Compl. (requesting a court order requiring Defendants to provide mental-
health screenings before and after reunification to assess Plaintiffs' need for
subsequent trauma-informed medical and mental-health services and to offer
appropriate trauma-informed medical and mental-health services); *see also* Fed. R.
Evid. 401 (defining "relevance"); Fed. R. Civ. Procedure 26(b)(1) ("Parties may
obtain discovery regarding any nonprivileged matter that is relevant to any party's
claim or defense and proportional to the needs of the case, considering the importance
of the issues at stake in the action, the amount in controversy, the parties' relative
access to relevant information, the parties' resources, the importance of the discovery
in resolving the issues, and whether the burden or expense of the proposed discovery
outweighs its likely benefit."). An alleged statement regarding the percentage of
migrants who abscond into the interior has no bearing on Plaintiffs' request for mental

1   health screenings and trauma-informed mental health treatment for class members that

2   Plaintiffs allege is necessary to assess the effect of the separation on class members.

3   *See generally* Compl., ECF No. 1. This request is also not limited to information

4   generated or existing during a time period that is relevant to the Parties' claims and

5   defenses.

6          HHS Defendants further object to Request for Production No. 10 because it

7   purports to require a government-wide search for documents. Such a government-

8   wide search would be oppressive, overly burdensome and overbroad, given the claims

9   and defenses in this matter.

10          Moreover, HHS Defendants object to this request to the extent Plaintiffs purport

11   to require the disclosure of information in the possession, custody, or control of

12   entities other than HHS Defendants, Fed. R. Civ. P. 34, or seek information that can

13   and should be sought from another entity. HHS Defendants object to this request to

14   the extent it seeks documents and information for which HHS Defendants lack a basis

15   for response, as it seeks documents considered by a non-HHS entity. To the extent that

16   this request appears to seek information from DOJ or DHS, HHS Defendants direct

17   Plaintiffs to DOJ and DHS Defendants who can provide responses and objections to

18   requests directed to those agencies. Based on these objections, HHS Defendants will

19   not be producing documents responsive to this request.

20   **REQUEST FOR PRODUCTION NO. 11:**

21          All DOCUMENTS related to the testimony Commander Jonathan White,

22   Deputy Director for Children's Programs of the Office of Refugee Resettlement,

23   before the Senate Judiciary Committee on or about July 31, 2018, including but not

24   limited to documents used in or reflecting Commander White's preparation for that

25   testimony and documents related to his testimony that concerns were raised during the

26   deliberative process about the potential harm to children resulting from family

27   separation.

28

**DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 11:**

DOJ Defendants also object to the request to the extent that it seeks the production of deliberative and pre-decisional or otherwise privileged information. DOJ Defendants object to this request to the extent Plaintiffs purport to require the disclosure of information in the possession, custody or control of entities other than DOJ Defendants, Fed. R. Civ. P. 34, or seek information that can and should be sought from another entity. Defendant DOJ refers Plaintiffs to HHS Defendants. To the extent that this request appears to seek information from HHS, DOJ Defendants direct Plaintiffs to HHS Defendants who can provide responses and objections to requests directed to that agency. *See* HHS Response to RFP No. 11. Accordingly, DOJ Defendants do not have any responsive documents.

**DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 11:**

DHS Defendants object to this request to the extent Plaintiffs purport to require the disclosure of information in the possession, custody or control of entities other than DHS Defendants and exceeds the permissible scope of discovery under Fed. R. Civ. P. 34, or seek information that can and should be sought from another entity. As noted in the Request No. 11, Commander Jonathan White is an employee of the Department of Health and Human Services and thus, he is not employed by the Department of Homeland Security. To the extent that this request appears to seek information from HHS, DHS Defendants direct Plaintiffs to HHS Defendants who can provide responses and objections to requests directed to that agency. *See* HHS Response to RFP No. 11. Accordingly, DHS Defendants do not have any responsive documents.

**HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 11:**

HHS Defendants object to this request as ambiguous, as it fails to identify a specific statement or representation by Commander White before the Senate Judiciary Committee for which related documents are sought.

HHS Defendants object to Request for Production No. 11 as overbroad because

1  it seeks documents and information that are not relevant to the claims and defenses in

2  this case. *See generally* Compl. (requesting a court order requiring Defendants to

3  provide mental-health screenings before and after reunification to assess Plaintiffs'

4  need for subsequent trauma-informed medical and mental-health services and to offer

5  appropriate trauma-informed medical and mental-health services); *see also* Fed. R.

6  Evid. 401 (defining "relevance"); Fed. R. Civ. Procedure 26(b)(1) ("Parties may

7  obtain discovery regarding any nonprivileged matter that is relevant to any party's

8  claim or defense and proportional to the needs of the case, considering the importance

9  of the issues at stake in the action, the amount in controversy, the parties' relative

10  access to relevant information, the parties' resources, the importance of the discovery

11  in resolving the issues, and whether the burden or expense of the proposed discovery

12  outweighs its likely benefit."). To the extent that Plaintiffs request documents used to

13  prepare for or relating to Commander White's testimony before the Senate Judiciary

14  Committee on July 31, 2018, this request is not limited to documents or information

15  relevant to Plaintiffs' request for mental health screenings and trauma-informed

16  mental health treatment.

17  Notwithstanding the general and specific objections, and without waiving any

18  objections, HHS will produce any non-privileged, responsive documents on a rolling

19  basis after the Court enters an appropriate protective order.

20  **REQUEST FOR PRODUCTION NO. 12:**

21  All DOCUMENTS relating to any health examination of any PUTATIVE

22  CLASS MEMBERS or their children while in government custody.

23  **DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 12:**

24  DOJ Defendants also object to the request to the extent that it seeks the

25  production of deliberative and pre-decisional or otherwise privileged information.

26  DOJ Defendants object to this request to the extent Plaintiffs purport to require the

27  disclosure of information in the possession, custody, or control of entities other than

28  DOJ Defendants, Fed. R. Civ. P. 34, or seek information that can and should be

1   sought from another entity. To the extent that this request appears to seek information

2   from DHS and HHS, DOJ Defendants direct Plaintiffs to DHS and HHS Defendants

3   who can provide responses and objections to requests directed to those agencies. *See*

4   DHS and HHS Responses to RFP No. 12. Accordingly, DOJ Defendants do not have

5   any responsive documents.

6   **DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 12:**

7        DHS Defendants object to this request as Plaintiffs' definition of "putative class

8   members" is overly broad and is not consistent with the Court's definition of the class

9   certified in its November 5, 2019 Order. In addition, this request is overly broad and

10  unduly burdensome in that it does not provide any data parameters or limitation on the

11  request for documents. This request is not limited to information generated or existing

12  during a time period that is relevant to the Parties' claims and defenses. DHS

13  Defendants object to this request to the extent Plaintiffs purport to require the

14  disclosure of information in the possession, custody or control of entities other than

15  DHS Defendants, Fed. R. Civ. P. 34, or seek information that can and should be

16  sought from another entity. To the extent that this request also appears to seek

17  information from HHS, DHS Defendants direct Plaintiffs to HHS Defendants who can

18  provide responses and objections to requests directed to that agency. *See* HHS

19  Response to RFP No. 12. DHS Defendants further object to Plaintiffs' definitions and

20  instructions because they purport to require a government-wide search for documents.

21  Such a government-wide search would be oppressive, overly burdensome and

22  overbroad, given the claims and defenses in this matter.

23       Defendant DHS refers Plaintiffs to ICE and CBP. Defendants ICE and CBP

24  object to the production of records for every class member, but rather Defendants

25  propose that Plaintiffs select a sample number of class-member health information,

26  rather than seeking discovery into every member of the class. In addition, to the extent

27  that Defendants are producing documents responsive to this request, we anticipate

28  producing any responsive electronically stored information pursuant to an ESI

protocol, once that protocol is in place. To the extent that DHS Defendants (through ICE and CBP) have responsive non-privileged information, a signed waiver from the individual who is the subject of the record is provided, or in the case of a child a signed waiver from his or her parent or legal guardian, and consistent with the terms of a protective order to be entered in this case, Defendant DHS (through Defendants ICE and CBP) will produce such documents. Defendants ICE and CBP will not release any medical or mental health records of a certified class member or their child, absent a signed waiver from the certified class member (or in the case of a child their legal guardian) indicating that they consent to disclosure of their record. Subject to and without waiving the foregoing objections, Defendants ICE and CBP will produce the medical records of the Named Plaintiffs identified in the Plaintiffs' complaint, provided that a protective order is in place.

**HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 12:**

HHS Defendants object to this request as Plaintiffs' definition of "putative class members" is overly broad and is not consistent with the Court's definition of the class certified in its November 5, 2019 Order. This request is overly broad and unduly burdensome in that it does not provide any data parameters or limitation on the request for documents.

HHS Defendants also object to this request on the basis that it is overly broad, unduly burdensome, and not proportional to the needs of this case in that it seeks "all" documents relating to medical services pertaining to putative class members and their children regardless of whether those medical services pertain to mental health treatment and screening, which is the subject of this lawsuit.

Further, to compile "all" documents relating to "any health examination" as to each child of a class member is an unnecessary burden on HHS. Compliance with such a request would be very expensive and extremely burdensome. HHS would have to search and collect health documents for thousands of children of class members in over one hundred care providers' facilities across the country. HHS would have to

1  deploy hundreds of ORR staff resulting in considerable hardship to ORR's core

2  functions and its ability to care for the unaccompanied alien children presently in its

3  custody.

4        To the extent that ORR has responsive non-privileged information, subject to

5  and without waiving the foregoing objections, ORR will produce the medical records

6  of the Named Plaintiffs' children identified in the Plaintiffs' complaint, provided that

7  a protective order is in place. For the health information of the thousands of children

8  of class members, HHS Defendants propose that Plaintiffs select a statistical sampling

9  number of children of class-members whose health information they would like to

10  obtain, rather than seeking a burdensome discovery of health information for all of the

11  children of class members.

12        In addition, ORR will not release any medical or mental health records of a

13  child of a class member absent a signed waiver from the child's legal guardian,

14  consenting to the disclosure. If a signed waiver from the child's legal guardian is

15  provided, and consistent with the terms of a protective order to be entered in this case,

16  Defendant HHS (through Defendant ORR) will produce the health information for the

17  list of children identified by Plaintiffs. *See also* DHS Response to RFP No. 12.

18  **REQUEST FOR PRODUCTION NO. 13:**

19        All DOCUMENTS relating to the mental health of PUTATIVE CLASS

20  MEMBERS or their children, including but not limited to DOCUMENTS relating to

21  mental health screenings, evaluations, treatments, or diagnoses.

22  **DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 13:**

23        DOJ Defendants also object to the request to the extent that it seeks the

24  production of deliberative and pre-decisional or otherwise privileged information.

25  DOJ Defendants object to this request to the extent Plaintiffs purport to require the

26  disclosure of information in the possession, custody, or control of entities other than

27  DOJ Defendants, Fed. R. Civ. P. 34, or seek information that can and should be

28  sought from another entity. To the extent that this request appears to seek information

1   from DHS and HHS, DOJ Defendants direct Plaintiffs to DHS and HHS Defendants

2   who can provide responses and objections to requests directed to those agencies. *See*

3   DHS and HHS Responses to RFP No. 13. Accordingly, DOJ Defendants do not have

4   any responsive documents.

5   **DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 13:**

6        DHS Defendants object to this request as Plaintiffs' definition of "putative class

7   members" is overly broad and is not consistent with the Court's definition of the class

8   certified in its November 5, 2019 Order. This request is overly broad and unduly

9   burdensome in that it does not provide any data parameters or limitation on the request

10  for documents. This request is not limited to information generated or existing during

11  a time period that is relevant to the Parties' claims and defenses. DHS Defendants

12  object to this request to the extent Plaintiffs purport to require the disclosure of

13  information in the possession, custody or control of entities other than DHS

14  Defendants and exceeds the permissible scope of discovery under Fed. R. Civ. P. 34,

15  or seek information that can and should be sought from another entity. To the extent

16  that this request also appears to seek information from HHS, DHS Defendants direct

17  Plaintiffs to HHS Defendants who can provide responses and objections to requests

18  directed to that agency. *See* HHS Response to RFP No. 13. DHS Defendants further

19  objects to this request as it appears to require a government-wide search for

20  documents. Such a government-wide search would be oppressive, overly burdensome

21  and overbroad, given the claims and defenses in this matter, which relate to one

22  incident that took place in one location.

23       Defendant DHS refers Plaintiffs to Defendants ICE, CBP and HHS for

24  response. Defendants ICE and CBP object to the production of records for every class

25  member, but rather Defendants propose that Plaintiffs select a sample number of

26  class-member health information, rather than seeking discovery into every member of

27  the class.

28       To the extent that DHS Defendants (through ICE and CBP) have responsive

non-privileged information, a signed waiver from the individual who is the subject of the record is provided, or in the case of a child a signed waiver from his or her parent or legal guardian, and consistent with the terms of a protective order to be entered in this case, DHS Defendants will produce such documents.

Subject to and without waiving the foregoing objections, Defendants ICE and CBP will produce the medical records of the named plaintiffs identified in the Plaintiffs' complaint, provided that a protective order is in place. In addition, to the extent that Defendants are producing documents responsive to this request, we anticipate producing any responsive electronically stored information pursuant to an ESI protocol, once that protocol is in place. Defendants ICE and CBP will not release any medical or mental health records of a certified class member or their child, absent a signed waiver from the certified class member (or in the case of a child their parent or legal guardian) indicating that they consent to disclosure of their records.

**HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 13:**

HHS Defendants object to this request as Plaintiffs' definition of "putative class members" is overly broad and is not consistent with the Court's definition of the class certified in its November 5, 2019 Order. This request is overly broad and unduly burdensome in that it does not provide any data parameters or limitations on the request for documents.

HHS Defendants object to this request because it is not proportionate to the needs of this case. The class is broadly defined and includes several thousand class members. To compile "all" documents relating to "any health examination" as to each child of a class member is an unnecessary burden on HHS as compliance would be very expensive and extremely burdensome. HHS would have to search and collect health documents for thousands of children of class members in over one hundred care providers' facilities across the country. HHS would have to deploy hundreds of ORR staff resulting in considerable hardship to ORR's core functions and its ability to care for the unaccompanied alien children presently in its custody.

To the extent that ORR has responsive non-privileged information, subject to and without waiving the foregoing objections, ORR will produce the medical records of the Named Plaintiffs' children identified in the Plaintiffs' complaint, provided that a protective order is in place. For the health information of the thousands of children of class members, HHS Defendants propose that Plaintiffs select a statistical sampling number of children of class-members whose health information they would like to obtain, rather than seeking a burdensome discovery of health information for all of the children of class members.

In addition, ORR will not release any medical or mental health records of a child of a class member, absent a signed waiver from the child's legal guardian, consenting to the disclosure. If a signed waiver from the child's legal guardian is provided, and consistent with the terms of a protective order to be entered in this case, Defendant HHS (through Defendant ORR) will produce the health information for the list of children identified by Plaintiffs. *See also* DHS Response to RFP No. 13.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS reflecting any policy, manual, procedure, training material, or other similar document, applicable to or relating to the government's provision of medical services to PUTATIVE CLASS MEMBERS and their children.

**DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 14:**

DOJ Defendants also object to the request to the extent that it seeks the production of deliberative and pre-decisional or otherwise privileged information. DOJ Defendants object to this request to the extent Plaintiffs purport to require the disclosure of information in the possession, custody, or control of entities other than DOJ Defendants, Fed. R. Civ. P. 34, or seek information that can and should be sought from another entity. To the extent that this request appears to seek information from DHS and HHS, DOJ Defendants direct Plaintiffs to DHS and HHS Defendants who can provide responses and objections to requests directed to those agencies. *See* DHS and HHS Responses to RFP No. 14. Accordingly, DOJ Defendants do not have

1  any responsive documents.

2  **<u>DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 14</u>:**

3       DHS Defendants object to this request as Plaintiffs' definition of "putative class

4  members" is overly broad and is not consistent with the Court's definition of the class

5  certified in its November 5, 2019 Order. This request is overly broad and unduly

6  burdensome in that it does not provide any data parameters or limitation on the request

7  for documents. This request is not limited to information generated or existing during

8  a time period that is relevant to the Parties' claims and defenses. DHS Defendants

9  object to this request to the extent Plaintiffs purport to require the disclosure of

10  information in the possession, custody or control of entities other than DHS

11  Defendants and exceeds the permissible scope of discovery under Fed. R. Civ. P. 34,

12  or seek information that can and should be sought from another entity. To the extent

13  that this request also appears to seek information from HHS, DHS Defendants direct

14  Plaintiffs to HHS Defendants who can provide responses and objections to requests

15  directed to that agency. *See* HHS Response to RFP No. 14.

16       DHS Defendants further object to Plaintiffs' definitions and instructions

17  because they purport to require a government-wide search for documents. Such a

18  government-wide search would be oppressive, overly burdensome and overbroad,

19  given the claims and defenses in this matter, which relate to one incident that took

20  place in one location. DHS Defendants also object to this request on the basis that it is

21  overly broad, unduly burdensome, and not proportional to the needs of this case in

22  that it seeks "all" documents relating to medical services pertaining to putative class

23  members and their children regardless of whether those medical services pertain to

24  mental health treatment and screening, which is the subject of this lawsuit. Finally,

25  DHS Defendants also object to the request to the extent that it seeks the production of

26  deliberative and pre-decisional or otherwise privileged information. Subject to and

27  without waiving the foregoing objections, Defendant CBP directs Plaintiffs to the

28  publicly available policy entitled CBP National Standards on Transport, Escort,

1   Detention, and Search (TEDS), available at

2   https://www.cbp.gov/sites/default/files/assets/documents/2017-

3   Sep/CBP%20TEDS%20Policy%20Oct2015.pdf, which concerns CBP's provision of

4   medical services for CBP detainees. Subject to and without waiving the foregoing

5   objections, ICE directs plaintiffs to the publicly available documents, such as section

6   4.3 of ICE's Performance-Based National Detention Standards, available at:

7   https://www.ice.gov/detention-standards/2011, which concerns medical and mental

8   health care for ICE detainees.

9       Notwithstanding the foregoing objections, once a protective order is entered by

10  the Court, DHS Defendants will produce non-privileged documents responsive to RFP

11  No. 14. In addition, to the extent that Defendants are producing documents responsive

12  to this request, Defendants anticipate producing any responsive electronically stored

13  information pursuant to an ESI protocol, once that protocol is in place.

14  **HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 14:**

15      HHS Defendants object to this request as Plaintiffs' definition of "putative class

16  members" is overly broad and is not consistent with the Court's definition of the class

17  certified in its November 5, 2019 Order. This request is overly broad and unduly

18  burdensome in that it does not provide any data parameters or limitations on the

19  request for documents. HHS Defendants object to this request to the extent Plaintiffs

20  purport to require the disclosure of information in the possession, custody or control

21  of entities other than HHS Defendants, Fed. R. Civ. P. 34, or seek information that can

22  and should be sought from another entity. To the extent that these requests appear to

23  seek information from DHS, HHS Defendants direct Plaintiffs to DHS Defendants

24  who can provide responses and objections to requests directed to that agency. *See*

25  DHS Response to RFP No. 14.

26      Further, this request is not limited to information generated or existing during a

27  time period that is relevant to the Parties' claims and defenses. *See generally* Compl.

28  (requesting a court order requiring Defendants to provide mental-health screenings

1  before and after reunification to assess Plaintiffs' need for subsequent trauma-

2  informed medical and mental-health services and to offer appropriate trauma-

3  informed medical and mental-health services); *see also* Fed. R. Evid. 401 (defining

4  "relevance"); Fed. R. Civ. Procedure 26(b)(1) ("Parties may obtain discovery

5  regarding any nonprivileged matter that is relevant to any party's claim or defense and

6  proportional to the needs of the case, considering the importance of the issues at stake

7  in the action, the amount in controversy, the parties' relative access to relevant

8  information, the parties' resources, the importance of the discovery in resolving the

9  issues, and whether the burden or expense of the proposed discovery outweighs its

10  likely benefit.").

11      Notwithstanding the general and specific objections, and without waiving any

12  objections, HHS will produce copies of any policy, manual, procedure, or training

13  material relating to medical services provided to UACs in its custody. HHS will

14  produce the responsive documents on a rolling basis once a protective order is in

15  place.

16  **REQUEST FOR PRODUCTION NO. 15:**

17      All DOCUMENTS relating to or similar to the Inmate Health Message Slip that

18  You submitted in this litigation (D.E. 138), including but not limited to

19  communications regarding the Inmate Health Message Slip or similar documents.

20  **DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 15:**

21      DOJ Defendants also object to the request to the extent that it seeks the

22  production of deliberative and pre-decisional or otherwise privileged information.

23  DOJ Defendants object to this request to the extent Plaintiffs purport to require the

24  disclosure of information in the possession, custody, or control of entities other than

25  DOJ Defendants, Fed. R. Civ. P. 34, or seek information that can and should be

26  sought from another entity. Accordingly, DOJ Defendants do not have any responsive

27  documents. Defendant DOJ refers Plaintiffs to DHS and HHS Defendants. To the

28  extent that this request appears to seek information from DHS, HHS Defendants direct

Plaintiffs to DHS Defendants who can provide responses and objections to requests
directed to that agency. *See* DHS Response to RFP No. 15.

**DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 15:**

DHS Defendants object to this request to the extent Plaintiffs purport to require
the disclosure of information in the possession, custody or control of entities other
than DHS Defendants and exceeds the permissible scope of discovery under Fed. R.
Civ. P. 34, or seek information that can and should be sought from another entity.
DHS Defendants do not have documents responsive to this request.

**HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 15:**

HHS Defendants object to this request to the extent Plaintiffs purport to require
the disclosure of information in the possession, custody, or control of entities other
than HHS Defendants, Fed. R. Civ. P. 34, or seek information that can and should be
sought from another entity. The Inmate Health Message Slip is not a HHS document.
To the extent that this request appears to seek information from DHS, HHS
Defendants direct Plaintiffs to DHS Defendants who can provide responses and
objections to requests directed to that agency. *See* DHS Response to RFP No. 15.
Based on these objections, HHS Defendants will not be producing documents
responsive to this request.

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS YOU have produced or will produce in other litigation
related to the ZERO TOLERANCE SEPARATION Policy, including but not limited
to documents produced in *Ms. L. v. U.S. Immigration and Customs Enforcement*, No.
3:18-cv-00428 (S.D. Cal.) (Sabraw, J.).

**DOJ DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 16:**

DOJ Defendants object to this request as overly broad and unduly burdensome
and not limited in time or scope. DOJ Defendants object to this request because it is
vague in that it seeks documents Defendants "will produce in other litigation." DOJ
Defendants object to this request to the extent it seeks information regarding a "Zero

Tolerance Separation Policy," which does not exist. The Zero Tolerance Policy issued by then-Attorney General Sessions, dated April 6, 2018, sets forth a policy regarding referrals for criminal prosecution under 8 U.S.C. § 1325(a). On May 11, 2018, then-Secretary Nielsen issued a memorandum directing "all DHS law enforcement officers at the border to refer all illegal border crossers to the Department of Justice for criminal prosecution to the extent practicable." DOJ Defendants object to Request for Production No. 16 as overbroad because it seeks documents and information that are not relevant to the claims and defenses in this case. *See* Fed. R. Evid. 401 (defining "relevance"); Fed. R. Civ. Procedure 26(b)(1). DOJ Defendants also object to this request to the extent that it seeks to obtain information protected from disclosure by protective orders entered in other litigation. Accordingly, DOJ Defendants will not produce documents for this request.

## DHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 16:

DHS Defendants object to this request as overly broad and unduly burdensome and not limited in time or scope. DHS Defendants object to this request to the extent it seeks information regarding a "Zero Tolerance Separation Policy," which does not exist. The Zero Tolerance Policy issued by then-Attorney General Sessions, dated April 6, 2018, sets forth a policy regarding referrals for criminal prosecution under 8 U.S.C. § 1325(a). On May 11, 2018, then-Secretary Nielsen issued a memorandum directing "all DHS law enforcement officers at the border to refer all illegal border crossers to the Department of Justice for criminal prosecution to the extent practicable." This request is overly broad and unduly burdensome in that it does not provide any data parameters or limitation on the request for documents. This request is not limited to information generated or existing during a time period that is relevant to the Parties' claims and defenses. DHS Defendants object to this request to the extent that it seeks to obtain information protected from disclosure by protective orders entered in other litigation. It would be unduly burdensome and expensive to comply with this extremely broad request because DHS would have to collect and produce all

the documents produced or that the agency will produce in all cases related to the Zero Tolerance Policy, regardless of whether these documents are relevant to any claims or defenses in this litigation. Based on these objections, DHS Defendants will not produce documents responsive to this request.

**HHS DEFENDANTS' SUPPLEMENTAL RESPONSE TO RFP 16:**

HHS objects to this request as overbroad and vague as it seeks documents that Defendants "will produce in other litigation" related to the Zero Tolerance Separation Policy. HHS Defendants object to this request to the extent it seeks information regarding a "Zero Tolerance Separation Policy," which does not exist. The Zero Tolerance Policy issued by then-Attorney General Sessions, dated April 6, 2018, sets forth a policy regarding referrals for criminal prosecution under 8 U.S.C. § 1325(a). On May 11, 2018, then-Secretary Nielsen issued a memorandum directing "all DHS law enforcement officers at the border to refer all illegal border crossers to the Department of Justice for criminal prosecution to the extent practicable."

This request is not limited to information generated or existing during a time period that is relevant to the Parties' claims and defenses. HHS Defendants object to this request to the extent that it seeks to obtain information protected from disclosure by protective orders entered in other litigation.

HHS further objects to this request as unreasonably burdensome and not proportionate to the needs of this case. HHS is litigating numerous cases in Federal District Court, as well as administrative claims, pertaining to the Zero Tolerance Policy. Some of these cases are handled by various United States Attorneys' Offices across the country and other Divisions within the U.S. Department of Justice. It would be unduly burdensome and expensive to comply with this extremely broad request because HHS would have to collect and produce all the documents produced or that the agency will produce in all cases related to the Zero Tolerance Policy, regardless of whether these documents are relevant to any claims or defenses in this litigation. Based on these objections, HHS Defendants will not be producing documents

1  responsive to this request.

2  **III.  ARGUMENTS ON DISCOVERY**

3      **A.  List of Putative Class Members (RFP 1)**

4          **1.  Plaintiffs' Argument**

5         The Court has certified a class of Plaintiffs and entered a preliminary injunction

6  ordering Defendants to provide mental health screenings and appropriate treatment to

7  the class members. *See generally* Order. Plaintiffs must be given the names of the

8  class members and contact information to reach out to Plaintiffs and inform them of

9  their rights to these services. Plaintiffs have requested this information in RFP 1.

10  Plaintiffs cannot know how to contact putative class members or the most efficient

11  and effective way to get in contact with them, evaluate them, and provide the

12  necessary services if they do not know who or where they are.

13         Defendants have already compiled a list of a putative class members for the *Ms.*

14  *L.* litigation and produced that list to plaintiffs' counsel in that action. Given that that

15  list largely duplicates the putative class here, it would cost Defendants little to produce

16  this list to Plaintiffs. Indeed, Defendants have said that they stand ready to produce the

17  list as soon as a protective order is agreed and filed in this action; however,

18  Defendants have been slow-playing the request for a Protective Order, taking weeks to

19  respond, missing their own deadlines to respond, and failing to meet and confer on

20  that Protective Order. *See* Fee Decl. Exs. I, J, K (correspondence with Defendants).

21         Plaintiffs ask for the Court's assistance in obtaining a list of class members

22  from the Defendants to be able to administer mental health screenings and treatment

23  as soon as possible to comply with the Order.

24         Plaintiffs are also filing a request for an Informal Conference on the Protective

25  Order which will hopefully allow this Court to step in, stop the delays, and allow the

26  parties to start implementing the Court's Preliminary Injunction.

27           **2.  Defendants' Argument**

28         Plaintiffs' assertion that the government can simply reproduce the class list

from *Ms. L.*, and should do so without a protective order in place, is unavailing. First, while it is correct that the Court has certified a class of Plaintiffs in this case that is similar to the class certified in *Ms. L.*, it is inaccurate that the classes duplicate each other such that Defendants can produce a list from that case and comply with their production obligations in this case. In *Ms. L.*, the court certified the following expanded class:

> All adult parents who entered the United States at or between designated ports of entry on or after July 1, 2017, who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who has been, is or will be separated from them by DHS and has been, is or will be detained in ORR custody, ORR foster care, or DHS custody, ***absent a determination*** that the parent is unfit or presents a danger to the child.

Order Granting Plaintiffs' Motion to Modify Class Definition, ECF No. 386 at 13-14, *Ms. L. v. U.S. Immigration and Customs Enforcement*, No. 3:18-cv-00428 (S.D. Cal.) (emphasis added).

Here, the Court certified the following class:

> All adult parents nationwide who entered the United States at or between designated ports of entry, who (1) on or after July 1, 2017, were, are, or will be detained in immigration custody by DHS; and (2) have a minor child who has been, is, or will be separated from them by DHS and detained in DHS or Office of Refugee Resettlement custody or foster care, ***absent a demonstration in a hearing*** that the parent is unfit or presents a danger to the child.

Order at 29 (emphasis added). As reflected by the emphasized language from each certified class above, the class certified here is different than the class certified in *Ms. L.* The creation of the class list in this case requires a manual review of the exclusions from the *Ms. L.* class to determine who was separated on the basis of parental fitness or danger presented to a child—because *Ms. L.* does not require that the determination

of fitness or danger be done in a hearing. Therefore, it is not possible to simply produce the *Ms. L.* class list in this case.

Second, and more importantly, Defendants remain ready to produce a class list once a protective order is in place. Defendants have explained this to Plaintiffs' counsel. And, as demonstrated by the parties' email correspondence, Defendants have actively engaged in meet and confers on the instant motion and have similarly actively worked with Plaintiffs to finalize a protective order and clawback agreement. Plaintiffs' own exhibits to this motion show that Defendants have diligently worked with them to exchange edits on the draft protective order and clawback agreement and resolve any disputes. *See* Fee Decl. Exs. I, J, K, P. Additional correspondence not included in Plaintiffs' exhibits contradicts Plaintiffs' allegation that Defendants have been "slow-playing the request for a Protective Order, taking weeks to respond." *See* Vick Decl. Exs. 1, 2, 3. Instead, the correspondence demonstrates that Defendants have remained in regular contact with Plaintiffs, have provided updates on their progress when they have been unable to provide drafts at a given time, and agreed to engage in an Informal Conference to resolve remaining disputes with respect to the proposed protective order and clawback agreement. *See id.* At no point have "weeks" passed where Defendants have not been in contact with Plaintiffs over these matters. Accordingly, the Court should deny Plaintiffs' request that Defendants produce a class list from *Ms. L.*, as well as Plaintiffs' request that Defendants produce any list prior to the entry of a protective order.

### B.  Documents Relating to the Zero Tolerance Separation Policy (RFPs 2, 3, 4, 5, 6, 7, 8, 9, and 16)

#### 1.  Plaintiffs' Argument

Documents relating to Defendants' decision to adopt the Zero Tolerance Separation Policy, also known as the Family Separation Policy—the policy and practice of separating parents from their children without a showing that the parents are unfit, and then holding the parents and children each in separate detention with no

ACTIVE 252064652

access to one another—and consideration of alternatives (such as the Family Case Management Program) are directly relevant to whether Defendants violated Plaintiffs' due process rights and guarantee of equal protection under the Constitution. These claims are laid forth in Plaintiffs' Complaint. Fee Decl. Ex. H (Complaint) ¶¶ 74-104, First and Second Claim for Relief. Plaintiffs are entitled to discovery that will allow them to show that the Zero Tolerance Separation Policy was implemented for improper reasons and that Defendants were well aware of the extreme and unconstitutional danger they would be placing Plaintiffs and their minor children in and that Defendants ignored that knowledge for their own political ends. *Id.*; Fed. R. Civ. P. 26(b)(1).

Indeed, the Court summarized – and denied – Defendants' motion to dismiss noting that "Plaintiffs have adequately stated a claim that the family separation policy, in combination with the insufficient mental healthcare provided during detention, violated their due process rights." Order at 47. Having stated a claim sufficient to survive Defendants' motion to dismiss (and with sufficient likelihood of success on the merits to obtain a preliminary injunction), Plaintiffs still need to prove this claim at trial. Information about the Zero Tolerance Separation Policy is directly relevant to that proof, and thus Plaintiffs are entitled to this discovery.

Part of the state-created danger doctrine involves the question of whether Defendants were aware of the danger. As the Court noted "Plaintiffs also presented evidence that Defendants were aware of the risks associated with the family separation when they implemented it. Indeed, Attorney General Sessions stated that the purpose of the policy was to deter foreign nationals from entering the United States illegally." Order at 40-41 (*citing Hernandez v. City of San Jose*, 897 F.3d 1125, 1137 (9th Cir. 2018); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006)). Thus, Defendants' repeated objection that the "how or why" of the instantiation and implementation of the Zero Tolerance Separation Policy is irrelevant does not have any merit. Plaintiffs need to know how and why the policy was crafted in order to

1   show that the Defendants were aware of the risks and willfully disregarded the risks

2   for their own political purposes or due to racial animus.

3          Plaintiffs are entitled to information about how and why the Zero Tolerance

4   Separation Policy was implemented as the information requested bears on whether

5   Plaintiffs were arbitrarily separated from their children without fair proceedings or

6   adequate consideration of their rights. Responsive documents will also illuminate

7   whether Defendants' actions were motivated by racial animus, white nationalism, or

8   xenophobia in violation of Equal Protection and Due Process clauses. *See* Complaint

9   ¶¶ 87-95. Animus on the part of the Government is directly relevant to Plaintiffs'

10  claims – establishing intent and deliberate indifference – and would further support

11  the necessity of intervention by the Courts to block the continued and deliberate

12  violation of Plaintiffs' due process and equal protection rights based on their color and

13  national origin. *See* Order at 36 (*citing Gordon v. Cty. of Orange*, 888 F.3d 1118,

14  1124-25 (9th Cir. 2018). The reasons behind the Zero Tolerance Separation Policy are

15  central issues in Plaintiffs' due process and equal protection claims.

16         Defendants' Objections state that Plaintiffs' discovery should be limited to

17  information about seeking mental health screenings and not to the how or why of the

18  Zero Tolerance Separation Policy behind them. *See* DHS Response to RFP 2, *supra*,

19  ("Specifically, the how or why of the alleged policy has no bearing on Plaintiffs'

20  request for mental health screenings and trauma-informed mental health treatment for

21  class members that Plaintiffs allege is necessary to assess the effect of separation on

22  class members.").[11] This objection fundamentally misstates Rule 26. Plaintiffs are

23  entitled to discovery on any party's *claims* and *defenses* (*i.e.* Plaintiffs' claims of

24  constitutional violation by Defendants) not just on the *remedy* sought by Plaintiffs (*i.e.*

25  the mental health screenings and trauma-informed treatment necessary to remedy the

26  constitutional violation). Fed. R. Civ. P. Rule 26(b)(1).

27  _____
    [11] Similar claims are made in the DOJ Defendants' responses to RFPs 2, 3, 4, 5, 9, 10,
28  16; the DHS Defendants' responses to RFPs 2, 3, 4, 5, 6, 7, 9, 10; the HHS
    Defendants' responses to RFPs 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 14.

ACTIVE 252064652

1    Defendants argued in meet and confer that the Zero Tolerance Separation

2    Policy is the *Ms. L* case and that this is a separate case as found by the Court in

3    adjudicating the first-to-file rule (Order at 12-15) and that therefore any discovery into

4    the Zero Tolerance Separation Policy is irrelevant. This argument misconstrues the

5    Court's holding and the meaning of relevance under Rule 26. The Court found that

6    there is "a relationship between the constitutional rights asserted by the members of"

7    the *Ms. L.* class and the class here. Order at 14. While the relief sought is different,

8    justifying keeping the cases separate, the Zero Tolerance Separation Policy is relevant

9    to both as the Court made clear in analyzing that policy in determining whether

10   Plaintiffs were likely to succeed on the merits of their claim. *See* Order at 37 ("This

11   includes a likelihood of success as to whether Defendants were deliberately indifferent

12   to the mental health risks presented by the family separation policy and did not take

13   reasonable steps to avoid or address them") (citations omitted); *Id.* at 40-41 (state-

14   created danger doctrine).

15   Here the Court has made plain in its Order for Preliminary Injunction that

16   Defendants' indifference and lack of steps to prevent severe trauma to Plaintiffs and

17   their minor children are relevant to Plaintiffs' claims. Defendants' arguments to the

18   contrary are unavailing and, in fact, seem obstructive in light of the Court's holdings.

19   Also, the Court's Order addresses any burden arguments that Defendants might

20   make under Rule 26. *See* Order at 44-45. The Court found that the "the costs to the

21   Government [of a Preliminary Injunction] will be the result of its actions and the

22   resulting claimed adverse effects on Plaintiffs." Order at 44 (citations omitted). A

23   similar argument holds true for discovery, particularly here where the Department of

24   Justice serves as counsel for all of the various agencies and can thus identify where

25   responsive documents are held far better than can Plaintiffs. Here, Plaintiffs' requests

26   are narrowly tailored to their claims and Defendants' defenses. The Government has

27   access to the information and Plaintiffs do not. The issues at stake are sufficiently

28   weighty to have merited entry of a Preliminary Injunction in the public interest. With

regards to the issues at stake in the action, in finding that the preliminary injunction was in the public interest, the Court reviewed and rejected Defendants' arguments about the burden it would place on them, noting that it is "always in the public interest to prevent the violation of a party's constitutional rights." Order at 44 (*citing Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quotation omitted)). In short, all of the factors of Rule 26 point in favor of ordering the Government to produce this relevant information.

### 2. Defendants' Argument

Plaintiffs' claim that Defendants' decision to adopt the Zero Tolerance Policy is relevant to their claims and defenses in this case is without merit. Documents relating to the Zero Tolerance Policy, and the consideration of any alternative policies including the Family Case Management Program, are not relevant to Plaintiffs' claims concerning the alleged mental trauma they experienced as a result of separation and the alleged failure of the government to provide mental health screenings and treatment sufficient to address the alleged trauma. Fee Decl. Ex. H ¶¶ 87-95, 178-81, 183-85. Further, according to this Court's Order, the constitutionality of the Zero Tolerance Policy is the key legal issue in *Ms. L.*, but it is not the key legal issue in this case. Order at 13-14. Thus, the Court should deny Plaintiffs' requests as irrelevant.

Federal Rule of Civil Procedure 26(b) provides that parties may obtain discovery regarding: any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Discovery may be denied where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has

had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). "Accordingly, the right to discovery, even plainly relevant discovery, is not limitless." *Muhammad v. California*, No. CV 18-4017 JAK (SS), 2019 WL 6315536, at \*8–9 (C.D. Cal. Sept. 19, 2019). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

Discovery requests seeking information about the decision to adopt the Zero Tolerance Policy, to include its creation and reasons for adoption, is not relevant— even for discovery purposes—to the Plaintiffs' claims and defenses in this case. Simply put, the reasons why the government adopted the policy do not inform the analysis of whether the alleged policy was implemented without consideration of the consequences of the implementation and the resulting alleged insufficiency of mental health care provided in light of the Zero Tolerance Policy. Nor does it inform whether Defendants had a duty to provide mental health care. Plaintiffs correctly note that the Court said, in denying Defendants' Motion to Dismiss, "Plaintiffs have adequately stated a claim that the [Zero Tolerance Policy], ***in combination with*** the insufficient mental healthcare provided during detention, violated their due process rights." Order at 47 (emphasis added). However, Plaintiffs incorrectly read this statement, along with the rest of the Court's order, to mean that the constitutionality of the Zero Tolerance Policy itself is an issue in this case. It is not. The issue in this case is the alleged mental trauma Plaintiffs experienced as a result of separation and the alleged failure of the government to provide mental health screenings and treatment sufficient to address the alleged trauma.

This is not a case where the issues raised by the parties' claims and defenses substantially need to be narrowed or clarified. *See Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, No. SACV1600300CJCRAOX, 2017 WL 2806897, at \*4 (C.D. Cal. Mar. 30, 2017) (finding that liberal discovery rules are intended to help

ACTIVE 252064652

define, narrow, and clarify issues) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) and *Hickman v. Taylor*, 329 U.S. 425, 500 (1947)). Instead, the parties have already briefed and argued the substantive issues in this case concerning the constitutionality of Defendants' mental health care provided to detainees and the duty Defendants owe to those detainees in its custody. Moreover, the parties engaged in several months of good faith settlement negotiations. Plaintiffs cannot argue that they require wide-ranging discovery into the creation and adoption of the Zero Tolerance Policy in order to glean more information that would be relevant and helpful to the claims and defenses here when the issues have been clarified substantially over the course of this litigation.

In the Court's order granting Plaintiffs' Motion for Preliminary Injunction and Class Certification and denying Defendants' Motion to Dismiss, the Court compared the legal claims and issues between this case and *Ms. L.* Most notably, the Court said:

> [T]he key legal issue presented in *Ms. L* was whether the family separation process violated the Constitution. . . . This action presents a different issue. The question presented here is whether Defendants' alleged failure to provide sufficient mental health and trauma services to individuals separated pursuant to the policy violates the Constitution.

Order at 13-14. The Court further found that "the alleged common injury is not the separation itself, which can be remedied through reunification [as in *Ms. L.*], but the claimed psychological trauma caused by separation." Order at 20. Thus, to the extent that Plaintiffs' RFPs relate to the constitutionality of the Zero Tolerance Policy, as opposed to the constitutionality of the government's exercise of the policy and the purportedly inadequate mental health care and trauma services provided to those who were prosecuted under the policy and separated from their children as a result, those RFPs are entirely irrelevant to the claims and defenses in this case.

The Court found that this case and *Ms. L.* arise out of the Zero Tolerance Policy but that "the issues presented by the two actions are distinct," and therefore the first-to-file rule did not apply. Order at 13. The "first-to-file" rule "is intended to serve[]

1  the purpose of promoting efficiency well and should not be disregarded lightly." *Kohn*

2  *Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239-40 (9th Cir.

3  2015) (internal quotations omitted). Part of the first-to-file inquiry is whether the

4  litigations at issue are duplicative, which includes whether discovery in the two

5  actions would be duplicative. *See Kelley v. HCR Manorcare, Inc.*, No. SACV 17-1259

6  JVS(JCGx), 2017 WL 10441310, at *3 (C.D. Cal. Nov. 28, 2017) ("transferring the

7  case … will serve the purpose of the first-to-file rule in promoting judicial efficiency

8  and conservation of resources. For example, the claims in *Weldon* and this action are

9  identical, and because of the identical claims, a significant portion of discovery in

10  both actions will be duplicative."); *Tran v. Third Ave. Mgmt. LLC*, No. CV-16-602-

11  MWF (SSx), 2016 U.S. Dist. LEXIS 182577, at *20 (C.D. Cal. Apr. 12, 2016)

12  ("transfer … would serve the purpose of the first-to-file rule in promoting judicial

13  efficiency and avoiding the possibility of conflicting judgments. Due to the

14  overlapping factual allegations, a significant portion of discovery would otherwise be

15  duplicative."). Duplicative discovery between this litigation and *Ms. L.* would be

16  inconsistent with this Court's finding that first-to-file rule did not apply. Order at 15.

17  To the extent Plaintiffs' RFPs in this case concern the creation and adoption of the

18  Zero Tolerance Policy, and thus the constitutionality of the policy itself, they are

19  duplicative of *Ms. L.* and not relevant.

20      Plaintiffs' own words cut against their claims in the motion to compel. Plaintiffs

21  went to extraordinary lengths in their Reply brief filed in support of their Motion for

22  Class Certification to distinguish the issues in this case from the issues in *Ms. L.* in

23  order to overcome the first-to-file rule. *See* Vick Decl. Ex. 4 (Pls.' Reply in Support of

24  Mot. for Class Cert.). Plaintiffs argued "*Ms. L* centers only on the question of

25  'whether the practice of family separation . . . violates due process and warrants

26  injunctive relief'" and "While both cases involve Defendants' family separation

27  policy, that is where their similarities stop. The issues in the cases are different." *Id.* at

28  2-3. ECF No. 120 at 2-3; *see also* Order at 13 (noting Plaintiffs' argument that the

claims related to the Zero Tolerance Policy in this case and *Ms. L* are different). Thus, by Plaintiffs' own admission, the subject matter of many of their RFPs relating to the adoption and purpose of the Zero Tolerance Policy are irrelevant to the claims and defenses in this case.

Plaintiffs contend that the Court's application of the state-created danger doctrine renders discovery into the creation and adoption of the Zero Tolerance Policy relevant. This is not so. Whether Defendants were aware of any danger associated with the policy has no bearing on whether the Plaintiffs may have suffered harm and a violation of their constitutional rights as a result of the alleged lack of mental health care in detention sufficient to address the alleged harm caused by the policy. Further, to prove Defendants were aware of any danger to mental health related to family separation does not require discovery into the creation and adoption of a policy to enforce particular immigration laws.

Finally, Plaintiffs' attempted conflation of the three agencies named as defendants in this litigation underscores Plaintiffs' attempted overreach regarding discovery related to the Zero Tolerance Policy. Plaintiffs claim in their Introductory Statement that "HHS Defendants have not agreed to provide any documents for 9 requests and have severely limited their responses to the remaining 7." This assertion is inaccurate, at best. Rather, as HHS Defendants' responses and objections to the RFPs make clear, the RFPs seek information that is not in HHS Defendants' possession, custody, or control. HHS Defendants cannot produce what they do not have. *Unilin Beheer B.V. v. NSL Trading Corp.*, No. 14-2210 BRO (SSx), 2015 WL 12698284, *6 (C.D. Cal. Sept. 17, 2015) ("A court cannot order a party to produce documents that do not exist"); *see also Bethea v. Comcast*, 218 F.R.D. 328, 329 (D.D.C. 2003) (requesting party's suspicion that responding party failed to produce responsive documents does not justify compelled inspection); *Hughes v. United States*, 701 F.2d 56, 58 (7th Cir. 1982) (In litigation, "Government agencies do not merge into a monolith[.]"). The Zero Tolerance Policy was an enforcement initiative

announced by DOJ in conjunction with DHS. It was not a policy initiative of HHS Defendants. The Family Case Management Program was a DHS program. Thus, the RFPs related to the Zero Tolerance Policy facially seek information HHS does not have—information allegedly regarding programs of other agencies and regarding the creation and adoption of a policy devised, announced, and enacted by other agencies. Plaintiffs' attempts to conflate the various federal agencies it named as Defendants is nothing more than a transparent attempt to paper over its failure to serve RFPs relevant to this case. Accordingly, the Court should deny Plaintiffs' RFPs relating to the creation and adoption of the Zero Tolerance Policy as irrelevant to the claims and defenses in this case.

## C. Discovery into Defendants' Claims of Necessity and Prior Programs (RFPs 6, 7, 9, 10, 11)

### 1. Plaintiffs' Argument

Defendants have argued that the Zero Tolerance Separation Policy was necessary and separating young children from their parents and keeping them incommunicado for weeks was therefore not a constitutional violation. *See, e.g.* Fee Decl. Ex. C (statements made by Government officials referenced in Plaintiffs' First Set of Requests For Production 9, 10, and 11); Ex. M (Defendants' Opp. to Plaintiffs' Preliminary Injunction Motion) at 3-7. Since they are relevant to Defendants' defenses, discovery into the support for these statements is proper. Fed. R. Civ. P. 26(b)(1). Plaintiffs also affirmatively claim that the Zero Tolerance Separation Policy was not necessary or in response to exigencies of the situation but was instead due to racial animus, xenophobia, white nationalism, and a callous desire for political point-making in violation of Plaintiffs' due process and equal protection rights. Complaint ¶¶ 74-95. As these requests relate directly to both Plaintiffs' claims and Defendants' defenses, they are squarely within the ambit of Rule 26 discovery.

In addition, as the Court has held, establishing that there was no necessity for the Zero Tolerance Separation Policy and in fact only pretext on the part of the

Defendants and the Government with deliberate indifference to the rights of Plaintiffs is directly relevant to proving Plaintiffs' constitutional claims. *See* Order at 40-41 (state-created danger doctrine).

In particular, Plaintiffs' requests related to the Family Case Management Program are directly relevant to this case. First, the Program is part of Plaintiffs argument as to why the shift to the Zero Tolerance Separation Policy was unnecessary and is harmful. Complaint ¶¶ 7, 75-77. Second, this information is needed in order for Plaintiffs to prove their claim that Defendants' policy of separating families was unnecessary and thus a violation of Plaintiffs' due process rights. *See* Order at 20 (citing the *Ms. L.* class certification order and *Parsons v. Ryan*, 754 F.3d 657, 662-63 (9th Cir. 2014)). This discovery will also allow Plaintiffs to rebut any necessity defense put forth by Defendants, as contemplated by Rule 26, which allows for discovery of defenses.

Other suggestions of necessity of the Zero Tolerance Separation Policy made by the Government such as those in RFPs 9, 10, and 11 are, for the same reasons, relevant to this case and thus the proper subject of discovery under Rule 26.

As stated above, the issues in this case are critically important, the Government has superior access to the documents, and the Court has already dispensed with Defendants' burden arguments must fail in the face of the trauma caused to Plaintiffs and their minor children by Defendants' unconstitutional and indifferent behavior, as the Court noted in issuing its Preliminary Injunction. *See* Order at 44-45; *see supra* at III B(1).

### 2.      Defendants' Argument

In support of their argument that the Court should compel the production of responses to RFP Nos. 6, 7, 9, 10, and 11, Plaintiffs claim that Defendants have put forth as a defense in this case "that the Zero Tolerance Separation Policy was necessary and separating young children from their parents and keeping them incommunicado for weeks was therefore not a constitutional violation." Plaintiffs

further claim that the Court held "establishing that there was no necessity for the Zero

Tolerance Separation Policy and in fact only pretext on the part of the Defendants and

the Government with deliberate indifference to the rights of Plaintiffs is directly

relevant to proving Plaintiffs' constitutional claims." Finally, Plaintiffs request

documents related to the Family Case Management Program and certain statements by

government officials. Because Plaintiffs misrepresent Defendants' argument with

respect to the consequences of the Zero Tolerance Policy, and because they have

failed to demonstrate the relevance of the Family Case Management Program and

certain statements by government officials, the Court should deny these requests.

First, Plaintiffs inaccurately frame Defendants' position by claiming that

Defendants have argued that the Zero Tolerance Policy, and the separation of families

as a result of that policy, was necessary. That is not an accurate recitation of

Defendants' argument or defense in this case. Throughout this litigation, it has been

Defendants' position that the Zero Tolerance Policy provided for the prosecution

under the illegal-entry statutes, 8 U.S.C. §§ 1325 and 1326, of all adults who crossed

or attempted to cross the border between ports of entry regardless of whether that

adult is a member of a family unit. The Policy led to an increase in separations of alien

families because a parent who is prosecuted becomes unavailable to care for his or her

child, and the child therefore becomes an unaccompanied alien child who must be

transferred to the custody of HHS. Plaintiffs' attempt to reframe Defendants'

arguments is disingenuous.

Moreover, with respect to Plaintiffs' convoluted argument that "establishing

that there was no necessity for the Zero Tolerance Separation Policy and in fact only

pretext on the part of the Defendants and the Government" is relevant to proving their

constitutional claims, this argument lacks merit. Plaintiffs do not need to establish that

there was no necessity for the Zero Tolerance Policy, or that there was pretext on the

part of Defendants, because such a showing is not relevant to any party's claim or

defense in this case. Defendants maintained throughout their objections to Plaintiffs'

1  RFPs that the purpose of the policy, as stated in the Zero Tolerance Memorandum,

2  was to respond to the "recent increase in aliens illegally crossing our Southwest

3  Border." *See* U.S. Department of Justice, News Release: Attorney General Announces

4  Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018

5  WL 1666622, https://www.justice.gov/opa/press-release/file/1049751/download. The

6  Court noted in its Order Defendants' contention that "the policy was designed to deter

7  individuals from crossing the southern border." Order at 6. Nothing in the Court's

8  Order identifies a "pretext" underlying the policy or discusses a "necessity" defense.

9  Thus, Plaintiffs' argument in this respect fails.

10         Second, Plaintiffs' RFPs related to the Family Case Management Program[12] are

11  in no way relevant to this case. Simply put, documents relating to the Family Case

12  Management Program—an entirely separate program from the Zero Tolerance Policy

13  that ended prior to the implementation of that policy—are irrelevant and have nothing

14  to do with Plaintiffs' claims that they suffered mental distress and trauma as a result of

15  separation from their children and that Defendants have a duty to provide mental

16  health care sufficient to address such trauma. Information about a Defendant

17  agency's[13] prior program is likewise entirely irrelevant to Plaintiffs' claims that they

18  received constitutionally inadequate mental health care from that Defendant agency in

19  detention. Even considering that relevancy for discovery purposes is broader than for

---

[12] The Family Case Management Program (FCMP) was a community-based Alternative to Detention initiative designed to ensure that participants complied with their immigration obligations, such as release conditions, including any required reporting to ERO; immigration court hearings; final orders of removal; voluntary departure; voluntary return, or other resolution of the participants' cases. *See* U.S. Department of Homeland Security, Immigration and Customs Enforcement, Report of the ICE Advisory Committee on Family Residential Centers 22 (Oct. 7, 2016), *available at* https://www.ice.gov/sites/default/files/documents/Report/2016/acfrc-report-final-102016.pdf

[13] This is particularly true with regard to HHS Defendants. As noted above, Plaintiffs' attempts to conflate the various federal agencies it named as Defendants is nothing more than a transparent attempt to paper over its failure to serve RFPs relevant to this case. The Family Case Management Program was a DHS program. Thus, the RFPs related to the Family Case Management Program facially seek information HHS Defendants do not have—information allegedly regarding prior programs of other agencies.

JOINT STIPULATION PURSUANT TO C.D. CAL. LOCAL RULE 37-2

ACTIVE 252064652

1   purposes of trial, that the government may have taken an action that violated

2   Plaintiffs' constitutional rights does not establish the relevancy of discovery into other

3   hypothetical and speculative actions that the government could have taken to avoid

4   violating Plaintiffs' rights. *See* Fed. R. Civ. Pro. 26(b); *see In re: Am. Med. Sys., Inc.*,

5   2016 WL 3077904, at *4. Thus, Plaintiffs' RFPs concerning the Family Case

6   Management Program and the statements of certain government officials are

7   irrelevant. Accordingly, the Court should deny Plaintiffs' RFP Nos. 6, 7, 9, 10, and

8   11.

9       **D.   Time Period for Discovery**

10          **1.   Plaintiffs' Argument**

11          Defendants have objected to the time period in the RFPs, and have said that

12   they will produce responsive documents from July 1, 2017 to January 10, 2019. *See*

13   Fee Decl. Exs. D, E, F (Defendants' Responses) at 2. Plaintiffs believe that

14   Defendants should produce responsive documents starting January 20, 2017. *See* Fee

15   Decl. Ex. C (Document Requests) at 3.

16          In the meet and confer process Plaintiffs made clear that they believe they need

17   documents from the earlier time period because this was when Defendants were

18   formulating and evaluating the Zero Tolerance Separation Policy. Defendants stated

19   that they did not believe that the formulation of the policy, which they term the "how

20   and why" are relevant to this case. These are the issues teed up for the Court's

21   consideration in sections B and C above. As stated above, Plaintiffs believe that based

22   on their Complaint (¶¶ 74-95), this information is centrally relevant, and the District

23   Court's analysis of that policy in issuing its Preliminary Injunction, appears to confirm

24   Plaintiffs' understanding. *See* Order at 9, 41.

25          Should this Court agree that discovery into the Zero Tolerance Separation

26   Policy is relevant, then a subsidiary issue is extending the timing of discovery back to

27   January 20, 2017 as requested in Plaintiffs' Requests for Production. Even today it is

28   unclear when the Zero Tolerance Separation Policy was formulated and implemented.

Defendants previously submitted to Judge Sabraw in the *Ms. L.* case that the policy
was not in place as late as May 2018; this was false, as pointed out by Judge Sabraw,
Judge Kronstadt, and HHS' own Office of the Inspector General. *See* Order at 9
(*citing Ms. L.*, No. 18-cv-00428 (S.D. Cal.), Dkt. No. 386 at 5). The Government has
also, in recent weeks, admitted that a further 1,556 children beyond what it had
previously admitted were separated from their families as they crossed the border.[14]

The time period for the formulation and implementation of the Zero Tolerance
Separation Policy continues to expand, despite Defendants' claims to the contrary.
The Court should thus order Defendants to produce responsive documents from
January 20, 2017 forward, to ensure that relevant discovery is produced and to avoid
further litigation if and when the time period of the Zero Tolerance Separation Policy
expands again.

### 2.   Defendants' Argument

Plaintiffs contend that Defendants should produce responsive documents
starting January 20, 2017. Defendants disagree with this timeline for production of
documents in response to Plaintiffs' First Set of RFPs because Plaintiffs have failed to
demonstrate how documents dated prior to July 1, 2017 are relevant to the claims and
defenses in this case.

The relevant timeframe for the class certified by the Court begins on July 1,
2017, and there is no reason to extend the timeframe for discovery beyond this date.
Plaintiffs claim that the timing of discovery for their RFPs should go back as early as
January 20, 2017, and they speculate that this was the time when Defendants were
"formulating and evaluating" the Zero Tolerance Policy. As stated above, the creation

---

[14] *See* Jasmine Aguilera, "Trump Administration Has Separated 1,556 More Migrant
Children Than Previously Known," Time, Oct. 26, 2019, *available at*
https://time.com/5710953/trump-administration-confirms-more-migrant-family-
separation/; Camilo Montoya-Galvez, "1,556 more migrant families were separated
under Trump than previously known," CBS News, Oct. 25, 2019, *available at*
https://www.cbsnews.com/news/family-separation-1556-more-migrant-families-were-
separated-under-trump-than-previously-known/. These articles are attached as
Exhibits R and S to the Fee Declaration respectively.

ACTIVE 252064652

1   and adoption of the Zero Tolerance Policy is not relevant to the claims and defenses in

2   this case, which instead center on Plaintiffs' claims of psychological trauma as a result

3   of the policy, the adequacy of mental health screening and treatment provided by the

4   government while Plaintiffs were in detention, and Defendants' duty to provide

5   mental health treatment sufficient to mitigate the harm that the application of the

6   policy allegedly caused Plaintiffs. Order at 14, 20. The timeframe for the certified

7   class relates directly to the mental and psychological harm Plaintiffs claim they

8   suffered, which was when they were separated from their children and placed in

9   detention. Again, the how and why of the Zero Tolerance Policy has no bearing on the

10   issue of whether Plaintiffs suffered mental health trauma and whether Defendants

11   were aware of the trauma and were indifferent to the duty of care owed to Plaintiffs.

12   Thus, there is no reason the time period for discovery should extend beyond the

13   timeframe of the certified class.

14         **E.**     **Documents Produced in Other Litigation (RFP 16)**

15             **1.**     **Plaintiffs' Argument**

16        Plaintiffs have requested documents produced related to the Zero Tolerance

17   Separation Policy produced in other litigation including in the *Ms. L* case. To the

18   extent the Court decides that documents related to the Zero Tolerance Separation

19   Policy are responsive and should be produced in this action, *supra* Section III(B), such

20   documents would be responsive here and should be produced.

21        Defendants have objected repeatedly to the burden of collecting and producing

22   documents in response to Plaintiffs' requests – no matter how targeted. With regards

23   to documents already collected, reviewed, loaded to databases, and produced to

24   opposing parties, these burden objections diminish significantly, if not completely.

25   The documents have already been collected and are in one place, having been

26   produced. All that is required is reproduction of the documents in this matter which

27   can be as simple as copying a disk.

28        Given the year that has passed since the service of the document requests, this

1  set of documents is already prepared and ready to go and can provide a jumpstart to

2  discovery.

3          Defendants' arguments regarding Protective Orders in other matters are not

4  convincing either. In the *Ms. L.* Protective Order, for example, the Order states that

5  "Nothing in this Order shall be deemed to restrict in any matter the use by any party of

6  its own documents or materials" which are the materials that Plaintiffs are requesting

7  here. Fee Decl. Ex. N (*Ms. L.* Protective Order) ¶ 32.

8                    **2.      Defendants' Argument**

9          Plaintiffs request discovery into documents produced in other litigation

10  involving the Zero Tolerance Policy. Defendants contend that such discovery does not

11  exist as there has not been discovery in related Zero Tolerance Policy cases and, to the

12  extent there has been discovery in those cases, it is irrelevant to this case. To the

13  extent that other litigation involving the Zero Tolerance Policy enters discovery and

14  documents are produced, Defendants contend that any request that they produce future

15  discovery is unduly burdensome and irrelevant. The Court should deny this request.

16          First, the instant litigation is the only class action, and also the only litigation

17  generally, concerning the Zero Tolerance Policy which is presently in discovery.

18  Moreover, Plaintiffs' request for discovery into the data and documents produced in

19  *Ms. L.* and other litigation involving the Zero Tolerance Policy demonstrates that they

20  are unfamiliar with the posture and proceedings in *Ms. L. v. U.S. Immigration and*

21  *Customs Enforcement*, No. 3:18-cv-00428 (S.D. Cal.) (Sabraw, J.) and other similar

22  litigation. Had Plaintiffs examined the docket in *Ms. L.*, Plaintiffs would be aware that

23  that case remains in the preliminary injunction stage and has not entered discovery,

24  and thus no class-wide discovery documents have been produced. The protective order

25  in *Ms. L.* was entered "to facilitate the exchange of documents and information" "for

26  the purpose of facilitating compliance with the Court's preliminary injunction order."

27  *See Ms. L.*, No. 3:18-cv-00428, ECF No. 92 at 2. The protective order in *Ms. L.* served

28  the limited purpose of facilitating compliance with the preliminary injunction and was

not related to formal discovery. Here, the parties have filed a joint rule 16(b)/26(f) report, *see* ECF No. 124, and have commenced with formal discovery, unlike in *Ms. L.* Accordingly, Plaintiffs' argument that the protective order in *Ms. L.* allows Defendants to produce in this case information that was produced in *Ms. L.* is not convincing. Further, Plaintiffs' request that Defendants produce any future discovery in a related Zero Tolerance Policy case is unduly burdensome and Plaintiffs fail to demonstrate how such future discovery is relevant to the claims and defenses in this case.

In any event, whether or not productions of discovery material have occurred in *Ms. L.*, or in any other case for that matter, is irrelevant. Plaintiffs must request relevant documents, and Defendants are under a continuing obligation to respond to that request by undertaking reasonable efforts to produce responsive and relevant documents in proportion to the needs of the case. Fed. R. Civ. P. 26. Plaintiffs' RFP 16, which calls for the production of documents from *other* cases, regardless of whether those documents are relevant to the claims and defenses in *this* case, is plainly improper. Courts have routinely held that discovery produced in other litigation is beyond permissible discovery. *King County v. Merrill Lynch & Co.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011). As such, courts consistently deny requests to produce documents produced in related lawsuits—*i.e.*, they do not allow piggybacking on prior discovery. *See*, *e.g.*, *id.*; *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017) (denying request to produce prior discovery in securities class action). "This is because, without more, the Court cannot ascertain whether the documents requested actually relate to Plaintiffs' claims and defenses." *King County*, 2011 WL 3438491, at *3. For the same reason, Plaintiffs should not be permitted to piggyback onto prior discovery or leech from future discovery in other cases, especially when such future discovery is purely speculative. As stated by the District Court for the Southern District of California,

> Asking for all documents produced in another matter is not generally proper. The propounding party cannot meet its burden to establish relevance, as the propounding party is not in a position to even know what they are actually asking for. There could be a number of reasons why documents appropriately requested and provided in another case—even if the subject matter of those cases seem to overlap—would be irrelevant or burdensome to provide in another case.
>
> If relevant and proportional documents exist in the custody or control of the responding party, the appropriate thing to do is to request those documents. The fact that the documents were or were not produced in other litigation is irrelevant. Moreover, compelling a responding party to do duplicate searches—one for responsive documents in their custody and control and one for all documents in their custody and control that were previously produced in other litigation—is definitionally unduly burdensome, as it would consume resources without providing any additional benefit to the propounding party.

*Ludlow v. Flowers Foods, Inc.*, No. 18-cv-01190-JLS-JLB, 2019 WL 6252926, at *18 (S.D. Cal. Nov. 22, 2019); *Goro v. Flowers Foods*, No. 17-cv-02580-JLS-JLB, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019).

### F.    Objections Based on Existence of Zero Tolerance Separation Policy (RFPs 2, 3, 4, 8, 9, 16)

#### 1.    Plaintiffs' Argument

Defendants repeatedly object that the Zero Tolerance Separation Policy "does not exist" and try to cabin discovery about this policy to two different memoranda. Fee Decl. Ex. D (DOJ Defendants' Responses to RFPs 2, 3, 4, 8, 9, 16).[15] In meet and confer discussions, Defendants said that they would object to any definition broader than these two memoranda and would object to defining the Zero Tolerance Separation Policy as it is described by the Court in the Order for Preliminary Injunction. Order at 6, 7-8 (describing policy as enjoined by *Ms. L.*), 29-30 (certifying

---

[15] Similar arguments are made in DHS Defendants' Responses to RFPs 2, 3, 4, 8, 9, 16 and HHS Defendants' Responses to RFPs 3, 8, 16. Those responses are in Exhibits E and F to the Fee Declaration respectively.

class whose injury results from the Zero Tolerance Separation Policy).

Defendants' claim that the Zero Tolerance Separation Policy does not exist lacks credibility. The HHS Defendants' Inspector General issued a report on the policy. *See* Press Release, Health and Human Services Office of Inspector General, "HHS OIG: Children Separated from Parents, Guardians Before *Ms. L v. ICE* Court Order and Some Separations Continue (Jan. 17,2019), *available at* https://www.oig.hhs.gov/newsroom/news-releases/2019/uac.asp (directly referencing the zero-tolerance policy) (attached hereto as Exhibit O to the Fee Declaration). Also, as noted, this Court and the *Ms. L.* Court have delved deeply into the policy.

Defendants' representations about the Zero Tolerance Separation Policy, when it was instituted, what it encompassed, etc. have changed drastically over the course of their litigation about the policy, with further evidence periodically proving that the policy lasted longer and covered substantially more than Defendants have said it did. *See* Order at 9 (evidence that families were being separated "pursuant to the Administration's new policy" in summer 2017 in "stark contrast to Defendants' representation in [the *Ms. L.*] case" that this did not occur until May of 2018) (citing to *Ms. L*). In light of this history, and the Court's much broader understanding of the Zero Tolerance Policy, Plaintiffs are unwilling to limit their requests to the two memoranda identified by Defendants. The *Ms. L.* Court and the Court here have recognized that the policy is broader than that. *Id.* Defendants should be ordered to produce all documents responsive to Plaintiffs' requests using the definition of Zero Tolerance Separation Policy or "family separation policy" espoused by the Court here and in the *Ms. L.* case (i.e. a policy or practice of separating parents and children at the border absent a determination that the parent is unfit or presents a danger to the child.)

### 2.    Defendants' Argument

Defendants accurately defined the Zero Tolerance Policy, and Plaintiffs' arguments on this point are disingenuous. Plaintiffs continue to inaccurately frame the nature of the policy from which their claimed mental health distress and trauma arose.

1   The policy announced was not a "Zero Tolerance Separation Policy" but rather a Zero
2   Tolerance Policy.
3        On April 6, 2018, to address an increase in unauthorized individuals crossing
4   the Southwest border into the United States, former Attorney General Sessions issued
5   a "Memorandum for Federal Prosecutors along the Southwest Border." U.S.
6   Department of Justice, News Release: Attorney General Announces Zero-Tolerance
7   Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622
8   https://www.justice.gov/opa/press-release/file/1049751/download.
9        This memorandum "direct[ed] each United States Attorney's Office along the
10  Southwest Border to the extent practicable, and in consultation with DHS to adopt
11  immediately a *zero-tolerance policy* for all offenses referred for prosecution under
12  section 1325(a)." *Id*. (emphasis added); *see* Fee Decl. Ex. O (referencing the "zero-
13  tolerance policy"). The "Zero Tolerance Policy" exists and is established from the
14  directly quoted text of the operative memorandum. This was a law enforcement policy
15  focused on the prosecution of offenses under a particular statute and that resulted in
16  the separation of parents from their children when they were prosecuted under the
17  relevant statute. Plaintiffs' reference to HHS Defendants' Inspector General issuing a
18  report on the policy is a red herring as that report does not demonstrate the existence
19  of a policy to separate families. *See* Fee Decl. Ex. O.
20       In their objections, Defendants construed Plaintiffs' use of the term "Zero
21  Tolerance Separation Policy" to mean the Zero Tolerance Policy as set forth by the
22  former Attorney General in the memorandum noted above. *See, e.g.*, DOJ Defendants'
23  response to RFP No. 2. ("Defendants define the Zero Tolerance Policy as a policy that
24  directed each U.S. Attorney's Office along the Southwest Border to adopt a policy to
25  prosecute all DHS referrals of section 1325(a) violations, to the extent practicable.").
26  Thus, for purposes of Plaintiffs' RFPs, Defendants accurately defined the policy at
27
28

issue.[16] Defendants have never denied the existence of the memorandum or the "Zero Tolerance Policy." To the extent that Plaintiffs' references to a "Zero Tolerance Separation Policy," a "Zero Tolerance Family Separation Policy," or a "Family Separation Policy" refer to policies *other than* the Zero Tolerance Policy, Defendants object to producing documents relating to these policies because they do not exist. Defendants cannot produce that which does not exist. *University of Kansas v. Sinks*, No. 06-2341-KHV-GLR, 2007 WL 869629, at *3 (D. Kan. Mar. 22, 2007) ("The Court cannot compel a party to produce documents based solely on opposing speculation and belief that responsive documents exist and that the producing party is withholding them.").

While Defendants maintain their objections on the basis of relevance, and the definition of the Zero Tolerance Policy at issue in this case, Defendants agreed to produce, as relevant here, documents in response to RFP Nos. 3 and 8. *See* HHS Defendants' Response to RFP Nos. 3 and 8; DHS Defendants' Response to RFP No. 8. Defendants' responses to those RFPs will be limited to Defendants' accurate definition of the Zero Tolerance Policy.

## G.   Production of Health Information (RFPs 12, 13, 14)

### 1.   Plaintiffs' Argument

Defendants objected to the burden of producing mental health records. Instead they proposed, during meet and confer, to produce responsive records for a statistically significant sample of class members and their children including named plaintiffs, the detained subclass, and a randomly selected sample of the released subclass. *See* Fee Decl. Ex. P (correspondence detailing sampling proposal).

Defendants' proposal is acceptable with one exception: Plaintiffs need Defendants to complete their production of responsive records for this sample within four months. This is so that should Plaintiffs need records for other class members

---

[16] The Court did, however, adopt Plaintiffs' renaming of the policy. *See generally* Order (referencing a "family separation policy" throughout the decision).

there would still be time before the discovery cutoff to produce those records and provide them to Plaintiffs' experts in order to form the necessary opinions for trial.

Plaintiffs have significantly accommodated Defendants by agreeing to take a sample of documents rather than the full responsive set. More may ultimately be needed, and Plaintiffs cannot afford to have the clock run out before they are able to evaluate whether more is needed.

### 2. Defendants' Argument

Plaintiffs' improperly include in their motion to compel an argument concerning Defendants' proffer with respect to the production of medical records, and in any case, their arguments as to the production of medical records have no merit.

First, Plaintiffs' Rule 37-1 letter does not mention medical records or the timeline for producing medical records whatsoever, so Plaintiffs improperly raise this issue in their motion to compel. *See* Fee Decl. Ex. L. The Local Rules of the District Court for the Central District of California provide,

> Before filing any motion relating to discovery under F.Rs.Civ.P. 26-37, counsel for the parties must confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible…. [C]ounsel for the opposing party must confer with counsel for the moving party within ten days after the moving party serves a letter requesting such conference. The moving party's letter must identify each issue and/or discovery request in dispute, state briefly as to each such issue/request the moving party's position (and provide any legal authority the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought.

C.D. Cal. L.R. Civ. P. 37-1. This Court has explicitly noted that "[a] moving party's failure to certify or show compliance with Rule 37(a)(1) can result in the entire motion to compel being denied without prejudice." *Soc. Sampling v. Dennis Garberg & Assocs.*, No. SACV 13-00856 CJC (ANx), 2014 WL 12561595, at *1 (C.D. Cal. Aug. 21, 2014). Oral discussion of a topic during a meet and confer does not cure Plaintiffs'

failure to identify this specific issue with the production of medical records in a Local

Rule 37-1 letter that identifies case law supporting their demand for production of

medical records on an expedited basis.

> [F]ailure to comply with the meet and confer requirements of Local Rule
> 37—which require the moving party to initiate the process by sending a
> *letter* to opposing counsel identifying the matters in dispute and the law
> supporting the party's position, followed by a conference of counsel—is
> enough, by itself, to warrant dismissal of the [m]otion.

*Darbeevision, Inc. v. C&A Mktg.*, No. CV 18-0725 AG (SSx), 2019 WL 2902697, at

*5 (C.D. Cal. Jan. 28, 2019). "The purposes underlying Local Rule 37-1's letter

requirement are important. Wisdom and experience teach that the first step in reaching

a reasonable compromise to resolve a discovery dispute is defining clearly the scope

and nature of the dispute." *Castillo v. Bank of America N.A.*, 2018 WL 6074580 (C.D.

Cal. Sept. 28, 2018).

The parties have met and conferred on the medical records issue, and the last

correspondence between the parties regarding this issue was on December 18, 2019.

*See* Fee Decl. Ex. P. Plaintiffs did not respond to that email, nor did they address that

issue in the parties' subsequent telephonic meet and confer regarding the outstanding

discovery issues. Plaintiffs did not inform Defendants that they intended to raise this

issue as part of this motion to compel. *See* Fee Decl. Ex. I. Until served with

Plaintiffs' portion of this joint stipulation, Defendants were unaware that Plaintiffs

rejected Defendants' last proffer. Plaintiffs should not be rewarded for their failure to

write a meet and confer letter addressing the medical records issue. *Bragel Int'l, Inc.

v. Kohl's Dep't Stores*, No. CV 17-7414 RGK (SSx), 2018 WL 7890682, at *4 (C.D.

Cal. Nov. 14, 2018) ("Bragel represents that it was not informed of the exact

discovery requests at issue and CGP's contentions as to the inadequacy of Bragel's

responses until it received the proposed Joint Stipulation. That basic information

1   should have been included in CGP's opening letter. Bragel was not required to guess

2   what CGP was seeking."); *So v. Land Base, LLC*, No. CV 08-3336-DDP (AGRx),

3   2010 WL 11515456, at *2 (C.D. Cal. June 9, 2010) (dismissing a portion of a motion

4   to compel where a specific issue was not identified in Local Rule 37-1

5   correspondence).

6        Second, Plaintiffs now respond to Defendants' proffer by stating "Defendants'

7   proposal [to produce responsive records for a statistically significant sample of class

8   members and their children] is acceptable with one exception: Plaintiffs need

9   Defendants to complete their production of responsive records for this sample within

10  four months." This response renders the use of a statistically significant sample size

11  illusory if Plaintiffs intent is to request more medical records beyond the statistical

12  sample. Defendants agreed

13       to produce on a rolling basis 1) all of named Plaintiffs' and their children's
14       responsive medical records, 2) all of the detained subclass members' and
         their children's responsive medical records, and 3) all of the responsive
15       medical records for a statistically significant sample of members of the
16       released subclass and their children.

17

18  Fee Decl. Ex. P at 1. Defendants further proposed that a statistically significant sample

19  of records in this case would be the records of 350 class members, plus their

20  children's medical records, which in total is at least 700 medical records. *Id.* As

21  explained in Defendants' proffer to Plaintiffs, this calculation was based on the

22  approximate size of the class "using the standard confidence value of a 95%

23  confidence level and a 5% confidence interval." *Id.* Defendants agreed to produce the

24  records on a rolling basis beginning within one month from the date a protective order

25  is in place and the statistically significant sample list is finalized. *Id.* Defendants

26  included in this proffer their position on Plaintiffs' request that the records be

27  produced in four months stating that this production

28

1
2
3
4
5

> is extraordinarily burdensome for Defendants. For example, the process for collection of medical records potentially involves multiple facilities across the class, and for each class member may involve the collection from multiple facilities depending upon the facility or the number of facilities at which the class member has been detained. Similarly, the medical records of class members' children involves the same burdens.

6
7
8
9

*Id.* Accordingly, Plaintiffs have not adequately responded to Defendants' proffer and burden arguments in response to their request for a four-month production timeline, and this Court should deny their request.

10
11
12
13
14
15
16
17

Finally, even if the Court entertains Plaintiffs' arguments in this respect, and excuses Plaintiffs' failure to comply with the letter and meet and confer requirements of Local Rule 37-1, Plaintiffs' arguments are couched in speculative terms, and their motion to compel medical records on an expedited basis is premature. Plaintiffs state only a hypothetical need for production of large volumes of medical records on a shortened timeline, while at the same time, request that the Court impose a tremendous burden on Defendants. *See Muhammad*, 2019 WL 6315536, at \*8–9 ("even plainly relevant discovery [] is not limitless.").

18
19
20
21
22
23
24
25
26
27
28

The agency declarations submitted with this Joint Stipulation demonstrate the extraordinary burden imposed by a four-month production timeline. Plaintiffs do not justify the imposition of this burden by stating that the shortened window might serve a hypothetical need. To impose this timeline would be burdensome because, for DHS, there are two processes for collecting and producing medical records from ICE detention facilities depending on the type of facility and each process requires a significant amount of agency resources to implement with just two Immigration Health Service Corps ("IHSC") contractors available to complete the task for this case. *See* Vick Decl. Ex. 7 (DHS Defendants' Declaration of Barbara Alley) ¶¶ 7-8. IHSC will have to research the detention history of each detainee and determine how many facilities at which the detainee was housed, and therefore, how many medical

1   records will be produced per detainee. *Id.* at ¶ 6. Thus, IHSC/DHS may have to

2   produce between 350 and 1,050 (or more) depending on whether the detainee was

3   housed at one, two, or more than three facilities. *Id.* And for non-IHSC facilities,

4   IHSC does not have direct access to the medical records and it can take as long as 16

5   months to produce 200 medical records from non-IHSC facilities. *Id.* at ¶¶ 9-13. Thus,

6   DHS estimates that it would need at a minimum 10 months to produce the records in

7   this case. *Id.* at ¶ 14.

8         For HHS, their operators will have to separately download and analyze each

9   document in a child's case file, which "can be extremely voluminous depending on

10  the child's length of care, number of placements, and case complexity . . . a single

11  child's case file could reach well over 1,000 pages for each facility in which the child

12  resided. So, if a child resided in 2 facilities, it is possible for the child's complete file

13  to be over 2,000 pages." *See* Vick Decl. Ex. 8 (HHS Defendants' Declaration of Trina

14  L. Robinson) ¶¶ 20-21. Also, the ORR Case File Team has just three full-time

15  employees who will likely need to review medical forms individually as the primary

16  medical document describing the medical conditions and treatment for children is

17  hand written and cannot be electronically searched. *Id.* at ¶¶ 22-23. Thus, it can take

18  several weeks to process one case file request for a single child. *Id*. at ¶ 24. To

19  produce the amount of case files for this case, an estimated 441 case files for the

20  children of the statistically significant sample of class members, "HHS would have to

21  deploy ORR staff to respond to this request, resulting in considerable hardship to

22  ORR's core functions and its ability to care for the unaccompanied alien children

23  presently in its custody." *Id.* at ¶ 25. HHS estimates that this process will require more

24  than eight months. *Id.* at ¶ 26.

25        Discovery closes on October 5, 2020. *See* Fee Decl. Ex. A. As a result of the

26  extraordinary burden, adequately demonstrated above, of producing the agreed-upon

27  amount of case files, and barring significant delays in obtaining medical records from

28  the facilities, Defendants intend to produce medical records on a rolling basis in

1    response to Plaintiffs' RFPs and expect to complete production by the close of

2    discovery. *See* Vick Decl. Ex. 7 at ¶ 14.

### H.    Production of Information Related to Inmate Health Message Slip (RFP No. 15)

#### 1.    Plaintiffs' Argument

DOJ Defendants, DHS Defendants, and HHS Defendants have all objected to
producing information related to this form, pointing to other agencies as the correct
source for this information. Fee Decl. Exs. D, E, F. This is despite the fact that
Defendants have submitted this form as evidence of the care allegedly provided to
Plaintiffs. *See* Order at 12, 36; Fee Decl. Ex. Q (Defendants' Notice of Lodging
Inmate Health Slip, ECF Dkt. No. 141). Having utilized this form affirmatively in this
action, Defendants cannot now refuse to produce information about it. Defendants are
also in a much better position, having identified the form and introduced it into this
action, to know where responsive information is held and to produce that information.
DOJ represents all three agencies here, and DOJ attorneys introduced this form in
support of their arguments. DOJ should not be surprised that Plaintiffs now seek
discovery on the form they introduced, and they should be ordered to locate and
produce responsive documents.

#### 2.    Defendants' Argument

Plaintiffs argue that Defendants "refuse to produce information" about the
Inmate Health Message Slip ("the Slip"). Plaintiffs are wrong. Defendants' objections
to RFP No. 15 relating to the Slip are proper because no Defendant has in its
possession, custody, or control any other documents relating to the Slip. Of course,
Defendants are cognizant of their duty pursuant to Federal Rule 26(e) to supplement
and correct discovery responses if they learn that those responses are somehow
incorrect or incomplete. Accordingly, Defendants do not have any responsive
documents to this request, but if responsive material is later discovered, Defendants
will produce that material.

At the hearing on September 20, 2018, on Plaintiffs' Motions for Preliminary Injunction and Class Certification, an Inmate Health Message Slip was offered to the Court for the limited purpose of showing an example of a type of health care form provided to detainees at a particular facility. *See* Vick Decl. Ex. 5 (portion of hearing transcript). Defendants understand that this document may have been distributed at the James A. Musick Detention Facility, which no longer contracts with Defendant DHS, when Named Plaintiff Ms. J.P. was detained there. *See* Vick Decl. Ex. 6. At the time that this document was presented to the Court and at the present time, Defendants cannot ascertain whether this document was widely distributed or the degree to which this form saw use. Vick Decl. Ex. 5 at 70-71.

Regardless, a review of the Inmate Health Message Slip reveals that the form was formulated, produced, and implemented by the California state or local government in Orange County, California. *See* Fee Decl. Ex. Q. As a result, Defendants do not possess any information related to the Slip other than a copy of the Slip itself. Any request for information relating to the considerations leading up to the issuance of that form should be directed to Orange County.

Finally, Defendants note Plaintiffs misunderstand the nature of DOJ, DHS, and HHS Defendants' objections based on "possession, custody, or control." In litigation, "Government agencies do not merge into a monolith[.]" *Hughes*, 701 F.2d at 58. Knowledge, notice, custody, control, and possession is not imputed between government entities, or for the purposes of discovery, by other government entities. For example, Defendant DHS can make no statement as to whether Defendant HHS has, or does not have, requested documents within its possession, custody, or control and vice-versa. When the objections are properly read, the responses make clear that no Defendant "point[s]" to another co-Defendant being a custodian of, controlling, or possessing responsive information. However, because knowledge of custody, control, and possession is not imputed between government entities, it is equally so that no co-Defendant can affirmatively rule out another co-Defendant as a source of information.

1   Taken together, the responses make clear that all Defendants deny having possession,
2   custody, or control of the requested documents. *See 7-UP Bottling Co. v. Archer*
3   *Daniels Midland Co.* (*In re Citric Acid Litig.*), 191 F.3d 1090, 1107 (9th Cir. 1999)
4   (providing that the standard in the Ninth Circuit for possession, custody, or control is
5   the legal right to obtain documents). Nonetheless, if a Defendant locates a document
6   relating to the Inmate Health Message Slip, it will be produced in accordance with
7   Fed. R. Civ. P. 26(e) and 34. *See Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D.
8   226, 252 (M.D.N.C. 2010) ("[E]ven an informed suspicion that additional non-
9   privileged documents exist … cannot alone support an order compelling production of
10  documents.").

11
12
13  Date:  January 15, 2020                    SIDLEY AUSTIN LLP
14                                             By: */s/* Amy P. Lally
15                                                 Amy P. Lally
                                                   Ellyce R. Cooper
16                                                 *Attorneys for Plaintiffs*
17
18
19  Date:  January 15, 2020                    UNITED STATE DEPARTMENT OF
                                               JUSTICE, OFFICE OF
20                                             IMMIGRATION LITIGATION
21                                             By: */s/* Lindsay M. Vick
                                                   Nicole N. Murley
22                                                 Lindsay M. Vick
23                                                 *Attorneys for Defendants*
24
25
26                          **FILER'S ATTESTATION**
27
28  Pursuant to Local Rule 5-4.3.4(a)(2) of the Central District of California, I attest

1    that I have concurrence in the filing of this document.

2

3                                                    By: */s/ Amy P. Lally*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION PURSUANT TO C.D. CAL. LOCAL RULE 37-2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is 1999 Avenue of the Stars, 17th Floor, Los Angeles, California 90067.

On January 15, 2019, I served the foregoing document(s) described as **JOINT STIPULATION PURSUANT TO C.D. CAL. LOCAL RULE 37-2** on all interested parties in this action by the method described below:

I electronically filed the foregoing with the Clerk of District Court using its CM/ECF system, which electronically provides notice.

I declare under penalty of perjury that the foregoing is true and correct.


*/s/* Amy P. Lally
Amy P. Lally
Attorney for Plaintiffs

i