1  Amy P. Lally (SBN 198555)
   alally@sidley.com
2  Ellyce R. Cooper (SBN 204453)
   ecooper@sidley.com
3  SIDLEY AUSTIN LLP
   1999 Avenue of the Stars, 17th Floor
4  Los Angeles, CA 90067
   Telephone: +1 310 595 9522
5  Facsimile: +1 310 595 9501

6  Mark Rosenbaum (SBN 59940)
   mrosenbaum@publiccounsel.org
7  Judy London (SBN 149431)
   jlondon@publiccounsel.org
8  Talia Inlender (SBN 253796)
   tinlender@publiccounsel.org
9  Amanda Savage (SBN325996)
   asavage@publiccounsel.org)
10 PUBLIC COUNSEL
   610 S. Ardmore Avenue
11 Los Angeles, CA 90005
   Telephone: +1 213 385-2977
12 Facsimile: +1 213 385-9089

13 Attorneys for Plaintiffs
14 *Additional Counsel on next page*

JOSEPH H. HUNT
Assistant Attorney General
JEFFREY S. ROBINS
Deputy Director
NICOLE N. MURLEY
Senior Litigation Counsel

LINDSAY M. VICK
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
PO Box 868, Ben Franklin Station
Washington, D.C. 20044
Lindsay.Vick@usdoj.gov
Telephone: (202) 532-4023
Fax: (202) 616-8962

*Attorneys for Defendants*

15        **UNITED STATES DISTRICT COURT**

16        **CENTRAL DISTRICT OF CALIFORNIA**

17 Ms. J.P., et al.,

18              Plaintiffs,

19      vs.

20 WILLIAM P. BARR, et al.,

21              Defendants.

Case No.  2:18-CV-06081-JAK-SK

**JOINT STIPULATION PURSUANT TO C.D. CAL. LOCAL RULE 37-2**

Assigned to:   Hon. John A. Kronstadt
               and the Hon. Steve Kim

Date:     February 13, 2020
Time:     1:30 p.m.
Place:    United States Courthouse
          350 W. First Street
          Courtroom 10B
          Los Angeles, CA 90012
Action Filed:  July 12, 2018
Discovery Cutoff Date: October 5, 2020
Pretrial Conference: TBA
Trial Date: April 20, 2021

22

23

24

25

26

27

28

ACTIVE 253839678

Carter G. Phillips[*]
cphillips@sidley.com
Jennifer J. Clark[*]
jennifer.clark@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: +1 202 736-8000
Facsimile: +1 202 736-8711

Michael Andolina[*]
mandolina@sidley.com
Timothy Payne[*]
tpayne@sidley.com
Kevin Fee[*]
kfee@sidley.com
Daniel Craig[*]
dcraig@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: +1 312 853-7000
Facsimile: +1 312 853-7036

Sean A. Commons (SBN 217603)
scommons@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896-6000
Facsimile: +1 213 896-6600

Mark E. Haddad (SBN 205945)
markhadd@usc.edu
Part-time Lecturer in Law
USC Gould School of Law[**]
University of Southern California
699 Exposition Boulevard
Los Angeles, CA 90089
Telephone: +1 213 675-5957

Luis Cortes Romero (SBN 310852)
lcortes@ia-lc.com
Alma L. David (SBN 257676)
adavid@ia-lc.com
IMMIGRANT ADVOCACY &
LITIGATION CENTER, PLLC
19309 68th Avenue South, Suite R-102
Kent, WA 98032
Telephone: +1 253 872-4730
Facsimile: +1 253 237-1591

[*]*Admitted pro hac vice*

[**] *Institution listed for identification purposes only*

JOINT STIPULATION PURSUANT TO C.D. CAL. LOCAL RULE 37-2

## JOINT STIPULATION OF PLAINTIFFS AND DEFENDANTS PURSUANT TO LOCAL RULE 37-2

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37, Plaintiffs Ms. J.P., Ms. J.O., and Ms. R.M., on behalf of themselves and all others similarly situated ("Plaintiffs"), as movants, and Defendants William P. Barr, Chad F. Wolf,[1] the Department of Homeland Security, United States Immigration and Customs Enforcement, United States Customs and Border Protection, Alex M. Azar II, the Department of Health and Human Services, Jonathan H. Hayes, Office of Refugee Resettlement, David Marin, Lisa Von Nordheim, Marc Moore, and Lowell Clark (collectively "Defendants") submit this Joint Stipulation regarding: Plaintiffs' motion to enter a Protective Order in this action; Defendants' Motion to Enter a Protective Order.

Filed concurrently herewith is the Declaration of Kevin M. Fee attaching the scheduling order in this matter, pursuant to Local Rule 37-1 (Exhibit A), Plaintiffs' draft Protective Order (Exhibit B), Defendants' draft Protective Order (Exhibit C), a redline between the two drafts (Exhibit D), and additional relevant filings and correspondence regarding the Protective Order.  The parties exchanged several draft protective orders, met and conferred two times telephonically, due to Defendants' counsel being in Washington D.C., in good faith on December 10, 2019 and December 20, 2019 but while able to resolve most issues were unable to resolve three issues.

These issues are 1) whether information that enters the public domain through no fault of a party to this litigation may be used by that party (Paragraph 15 of both orders); 2) whether use of "Protected Material" as defined in the Protective Order should be limited to this litigation (Paragraph 26 of Plaintiffs' Order); and 3) whether

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Secretary of Homeland Security Chad F. Wolf is substituted for the former Acting Secretary Kevin K. McAleenan.

ACTIVE 253839678

1   to use clawback language reflecting Rule 502(b) or language that goes beyond Rule

2   502(b) (Paragraph 24 of both orders).

3          Plaintiffs' and Defendants' introductory statements under Local Rule 37-2.1 are

4   laid out in Section I, Plaintiffs' and Defendants' proposed Protective Order language

5   on the three disputed issues is laid out in Section II (with a redline attached to the Fee

6   Declaration as Exhibit D), and then Plaintiffs' and Defendants' arguments are laid out

7   in Section III.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION PURSUANT TO C.D. CAL. LOCAL RULE 37-2

# TABLE OF CONTENTS

Page

I.    INTRODUCTORY STATEMENTS ............................................................... 1

    A.    Plaintiffs' Introductory Statement ................................................. 1

    B.    Defendants' Introductory Statement ............................................. 3

II.    THE DISPUTED PROTECTIVE ORDER PROVISIONS ............................ 6

III.    ARGUMENTS ON DISPUTED PROTECTIVE ORDER PROVISIONS ................................................................................................. 19

    A.    Paragraph 15 ................................................................................. 19

        1.    Plaintiffs' Argument ......................................................... 19

        2.    Defendants' Argument ...................................................... 20

    B.    Plaintiffs' Paragraph 26 ............................................................... 24

        1.    Plaintiffs' Argument ......................................................... 24

        2.    Defendants' Argument ...................................................... 25

    C.    Paragraph 24 ................................................................................. 31

        1.    Plaintiffs' Argument ......................................................... 31

        2.    Defendants' Argument ...................................................... 32

# I.  INTRODUCTORY STATEMENTS

## A.    Plaintiffs' Introductory Statement

Plaintiffs represent a class of refugees, who crossed the border with their children seeking asylum and who were separated from their children by Defendants, causing severe trauma in violation of Plaintiffs' constitutional rights. The Court in this case has certified a class of Plaintiffs, issued a Preliminary Injunction finding Plaintiffs were likely to succeed in proving a constitutional violation and ordering the Government to provide appropriate mental health treatment to Plaintiffs due to the urgency of the trauma, and denied Defendants' motion to dismiss.[2]

Over a year ago on January 10, 2019, Plaintiffs served Defendants with Requests for Production including a request for a list of class members.  Fee Decl. Ex. E (Plaintiffs' First Set of Requests for Production of Documents, Request 1).  On November 12, 2019, Defendants responded saying that they would provide such a list upon entry of a Protective Order. Fee Decl. Exs. F, G, H (Defendants' Responses to Plaintiffs' Requests for Production).  Two days later, on November 14, 2019, Plaintiffs sent a draft Protective Order to Defendants, substantively copied from the Order the Government agreed to in the *Ms. L.* action in the hope that a Protective Order could be quickly agreed upon and the class list provided, as the Government had already approved the language for the *Ms. L.* action.  Fee Decl. Ex. J (correspondence sending a Protective Order).

Over the next two months, despite Plaintiffs' diligence, Defendants repeatedly delayed and missed promised deadlines in responding to drafts, often waiting a week to even respond.  *Id.* Exs. K through Y, ¶ 17.  So, this motion is being filed two and a half months after Plaintiffs first sent a draft protective order ***with language***

---

[2] "Order re Plaintiffs' Motion for Class Certification (Dkt. 81); Plaintiffs' Motion for Preliminary Injunction (Dkt. 45); Defendants' Motion to Dismiss (Dkt. 132)" at ECF Dkt. No. 251 is referred to herein as the "Order."  Pursuant to Local Rule 37, the Order is attached as Exhibit I to the Declaration of Kevin M. Fee in Support of Plaintiffs' Motion for Protective Order ("Fee Decl.").

ACTIVE 253839678

1   ***Defendants had already agreed to in Ms. L.,***[3] and the Government has still (as of the

2   date Plaintiffs circulated this draft to Defendants) not provided a class list or a single

3   page of discovery.  This Court should put a stop to the delaying tactics (as it has in

4   denying Defendants' repeated requests for stays) and enter the Protective Order

5   forthwith so that Defendants may no longer use that excuse to evade discovery.

6          The parties have three main disagreements on the language of the Protective

7   Order.  First, Plaintiffs believe that information designated "Confidential" that enters

8   the public domain through no fault of Plaintiffs should be able to be used in this

9   action.  This litigation addresses a topic of high public interest, and reports that are

10  relevant to the litigation enter the media all the time; indeed, some were even cited in

11  the Complaint and this Court's Order.  *See Id.* Exs. AA, I.  Plaintiffs should not have

12  to guess whether a public report contains Confidential Information and seek relief

13  from this Court to use information that appears in *The New York Times* or *CBS News*

14  or Defendants' own OIG reports.  Courts have allowed litigants to use such materials.

15  *See In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 397 (E.D.N.Y. 2007) (refusing to

16  enjoin use of leaked information by non-leakers); *Bible v. United Student Aid Funds,*

17  *Inc.*, 2014 WL 1048807, at *4 (S.D. Ind. Mar. 14, 2014) (*rev'd on other grounds*, 799

18  F.3d 633 (7th Cir. 2015)) (refusing to strike leaked information publicly available on

19  Wikileaks).

20         Second, it is critical that Confidential Information produced in this litigation be

21  limited to use in this litigation.  The Court has entered a Preliminary Injunction

22  ordering Defendants to make available "medically appropriate initial mental health

23  screenings" and appropriate treatment to class members.  Order at 45-46.  If class

24  members believe that any information they provide can be immediately sent to the

25  Government and used to deport them, then the task of outreach goes from being

26  difficult to impossible.  The Government's protestations that it cannot agree to such

27  ─────────────

    [3] The Protective Order in *Ms. L.* is Exhibit Z to the Fee Declaration.  *Ms. L. et al., v.*
28  *U.S. Immigration and Customs Enforcement, et al.,* No. 3:18-cv-00428 (S.D. Cal.)
    (Sabraw, J.) (ECF Dkt. No. 92) July 9, 2018.

provisions are unavailing because 1) the Government *did* agree to this provision in *Ms. L.* (Fee Decl. Ex. Z ¶ 25), and 2) the Tenth Circuit has affirmed precisely this type of Protective Order. *S.E.C. v. Merrill, Scott & Associates*, 600 F.3d 1262, 1272-73 (10th Cir. 2010).

Third, Federal Rule of Evidence 502 and Federal Rule of Civil Procedure 26 provide a mechanism for clawback of inadvertently produced documents. Courts enter orders based on these every day, companies produce terabytes of highly confidential data pursuant to these protections, and the Government has agreed to this procedure in *Ms. L.* (Fee Decl. Ex. Z ¶ 23). The Government's proposed clawback procedure is incredibly overbroad, allows the Government to belatedly claim privilege and avoid the implications of waiver, and appears to burden Plaintiffs with the task of identifying what unspecified Governmental privileges might apply to what documents. This is unreasonable.

The Court should enter the Protective Order as Plaintiffs have drafted it as soon as possible so that discovery may proceed as compelled by Judge Kim.

### B.    Defendants' Introductory Statement

The Court should enter the Protective Order proposed by Defendants because it would expedite review and production of voluminous data in this litigation without requiring the Court to prematurely sanction the dissemination of illegally leaked information or unnecessarily inject itself in Defendants' statutorily mandated functions in the absence of any concrete dispute. Fee Decl., Ex. C. The parties' dispute over the protective order involves three main issues: a provision allowing for the use of inappropriately or unlawfully leaked information in the public sphere, a provision limiting the use of information to this litigation, and the scope of the privileged information clawback agreement. The Court should enter a Protective Order with Defendants' proposed language because 1) Plaintiffs have not demonstrated good cause for wholesale approval of use of unlawfully or inappropriately leaked information; 2) Plaintiffs have not shown why Defendants

must agree to limit the use of Confidential Information in a manner contrary to Defendants' statutory obligations; and 3) the Federal Rule 502(d) clawback agreement Defendants propose will serve the goals of Rule 1 of the Federal Rule of Civil Procedure by ensuring the just, speedy, and inexpensive resolution of this litigation and avoiding potentially time consuming and expensive document review and unnecessary motions practice in a complex case involving voluminous data and sensitive governmental privileges.

On July 12, 2018, Plaintiffs commenced this suit against Defendants on behalf of themselves and all others similarly situated, seeking certification of a putative class of parents separated from their children as a result of the referral of the parent for prosecution consistent with the Zero Tolerance Policy and seeking declaratory and injunctive relief. *See generally*, Fee Decl., Ex. I. This case involves claims that the separation of migrant families caused mental-health harms and warrant mental-health screening and treatment. *Id.* On January 10, 2019, Plaintiffs served Defendants with their first discovery requests. Relevant here, on January 30, 2019, the matter was referred for settlement discussions. The Court ordered an extension of the discovery deadlines from February 11, 2019 to March 11, 2019 on Defendants' *ex parte* motion; thereafter, Plaintiffs and Defendants *stipulated to* extensions of the discovery deadlines from March 11, 2019 through October 31, 2019 to pursue settlement.[4] After some nine months, settlement failed, and the matter was returned to the active docket in October.

On November 5, 2019, the Court issued an order denying the Defendants' motion to dismiss and granting Plaintiffs' motions for class certification and for a preliminary injunction, requiring the United States to provide mental-health services to members of the certified class. *See* Fee Decl., Ex. I ((Order re: Plaintiffs' Motion for Class Certification; Plaintiffs' Motion for Preliminary Injunction; Defendants'

---

[4] The Court further continued the discovery deadlines to November 7, 2019 and again to November 12, 2019.

1   Motion to Dismiss, ECF No. 251 at 13-14)).  Relevant here, the Court rejected

2   Defendants' arguments that Plaintiffs' complaint should be dismissed under the first-

3   to-file rule as duplicative of the class action litigation in *Ms. L., et al., v. U.S.*

4   *Immigration and Customs Enforcement, et al.*, No. 3:18-cv-00428 (S.D. Cal.).  The

5   Court accepted Plaintiffs' arguments that this litigation was separate and distinct, and

6   thus not duplicative of the *Ms. L.* case.  *Id.*

7        Following the Court's order, discovery resumed. Since that time, Defendants

8   have worked diligently with Plaintiffs to resolve issues regarding the terms of the

9   protective order and clawback agreement.  *See* Fee Decl., Exs J-U, W-Y.  Plaintiffs

10  accuse Defendants of "delaying tactics" and evading discovery; however, such

11  accusations are belied by the correspondence of the parties.  *See id.*  Despite Plaintiffs'

12  claims, the communications between the parties demonstrate that Defendants have

13  continued to work with Plaintiffs in good faith to resolve the disputes concerning the

14  protective order and clawback agreement.  Plaintiffs have not presented any evidence

15  to the contrary.

16       The Court should adopt Defendants' proposed language.  First, instead of a

17  blanket agreement expansively condoning the use of leaked information, the Court

18  should enter Defendants' proposed language permitting a circumstance-specific

19  analysis of whether such information is properly in the public domain if a dispute

20  arises.  Second, the Court should reject Plaintiffs' novel claim that, solely by virtue of

21  class membership, class members should be immunized from all adverse legal

22  consequences stemming from illegal or criminal activity brought to light by the

23  discovery process.  Plaintiffs are not entitled to a preemptive protective order pursuant

24  to Rule 26(c), effectively circumventing their obligation to meet their burden of proof

25  on a motion to protect from a specific discovery request.  *See* Fed. R. Civ. P. 26(c)(1)

26  (allowing the party "from whom discovery is sought" to move for a protective order

27  and specifying that the moving party bears the burden of persuasion).   Finally,

28  Plaintiffs' claim that this Court is bound by the actions of the court in *Ms. L.* are not

meritorious for the reasons elaborated herein. Plaintiffs' blanket prohibition on information-sharing between Government agencies would prevent Defendants from sharing information with other U.S. government entities in furtherance of their statutory obligations.

Third, practical considerations support Defendants' reasonable request for a privilege clawback agreement providing more flexibility than provided by the default procedures in Federal Rule of Evidence 502(b) or Federal Rule of Civil Procedure 26(b)(5)(B). Plaintiffs cite the drafters of Rule 502 as authority for their arguments; however, the Advisory Committee for Rule 502 explicitly encourages the entry of clawback agreements expanding protections and streamlining review in cases, such as this, with large volumes of electronically stored information (ESI), and courts have increasingly come to expect such agreements as standard practice. Additionally, Plaintiffs assertion that Defendants should be bound by the clawback provision language included in the *Ms. L.* protective order is not compelling. The protective order and clawback provision in *Ms. L.* was entered into at a different procedural phase of the case and for different purposes. Regardless, however, Defendants are not bound to the same protective order or clawback provisions in every litigation.

For the above reasons, the Court should reject Plaintiffs' proffered version of the protective order and Rule 502(d) order and their unconvincing arguments in support thereof, and enter the pair of orders as proposed by Defendants.

## II. THE DISPUTED PROTECTIVE ORDER PROVISIONS

### PLAINTIFFS' VERSION OF PARAGRAPH 15:[5]

15. **This Order Does Not Apply To Non-Private Information**. The restrictions set forth in this Protective Order shall not apply to documents, things, or information that: (a) is in the public domain; or (b) becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a

---

[5] Plaintiffs' version of the draft Protective Order is attached as Exhibit B to the Fee Declaration.

ACTIVE 253839678

violation of this Protective Order, including becoming part of the public record in this Action through trial or otherwise; or (c) have been independently obtained by the Receiving Party through lawful means. If the Producing Party challenges the Receiving Party's invocation of this provision, then the Receiving Party shall provide written documentation showing the material falls within categories of non-private information referenced in this provision. This paragraph does not purport to waive or in any other way limit any protection that exists under law, including the Privacy Act, 5 U.S.C. § 552a, *et seq.*

**DEFENDANTS' VERSION OF PARAGRAPH 15:**[6]

15.    **This Order Does Not Apply To Non-Private Information.** The restrictions set forth in this Protective Order shall not apply to documents, things, or information that: (a) is properly in the public domain; or (b) becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Protective Order, including becoming part of the public record in this Action through trial or otherwise. If the Producing Party challenges the Receiving Party's invocation of this provision, then the Receiving Party shall provide written documentation showing the material falls within categories of non-private information referenced in this provision. This paragraph does not purport to waive or in any way limit any protection that exists under law, including the Privacy Act, 5 U.S.C. § 552a, *et seq*.

**REDLINE:**[7]

**This Order Does Not Apply To Non-Private Information.** The restrictions set forth in this Protective Order shall not apply to documents, things, or information that: (a) is properly in the public domain; or (b) becomes part of the public domain

---

[6] Defendants' version of the draft Protective Order is attached as Exhibit C to the Fee Declaration.

[7] A full redline between Plaintiffs' and Defendants' versions of the Protective Order is attached as Exhibit D to the Fee Declaration. This redline is of this paragraph only, for legibility, and uses Plaintiffs' version as the base document and Defendants' version as the modified document.

ACTIVE 253839678

after its disclosure to a Receiving Party as a result of publication not involving a violation of this Protective Order, including becoming part of the public record in this Action through trial or otherwise; or (c) have been independently obtained by the Receiving Party through lawful means. If the Producing Party challenges the Receiving Party's invocation of this provision, then the Receiving Party shall provide written documentation showing the material falls within categories of non-private information referenced in this provision. This paragraph does not purport to waive or in any other way limit any protection that exists under law, including the Privacy Act, 5 U.S.C. § 552a, *et seq*.

**PLAINTIFFS' VERSION OF PARAGRAPH 26:**

**Use Of Information Subject To Protective Order.** The Receiving Party's use of any information or documents obtained from the Producing Party subject to this Protective Order, including all information derived therefrom, shall be restricted to use in this Litigation (subject to the applicable rules of evidence,  and subject to the confidentiality of such materials being maintained) and shall not be used by anyone subject to the terms of this agreement, for any purpose outside of this Litigation or any other proceeding between the Parties, except as otherwise provided in this Order.

**DEFENDANTS' VERSION OF PLAINTIFFS' PARAGRAPH 26:[8]**

Defendants object to the inclusion of this provision.

**PLAINTIFFS' VERSION OF PARAGRAPH 24:**

24.    **Inadvertent Disclosure Of Privileged Information**.

A.    The inadvertent disclosure of Material covered by the attorney-client privilege, the work-product doctrine, or any other recognized privilege shall be governed by Federal Rule of Evidence 502 and this Protective Order.

B.    If, in connection with the pending Litigation, a Producing Party

---

[8] As Defendants object to the inclusion of this language completely, no redline is included.

inadvertently discloses information subject to a claim of a privilege or protection described in paragraph 24(a) ("Inadvertently Disclosed Information"), such disclosure shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work-product protection that the Producing Party would otherwise be entitled to assert with respect to the Inadvertently Disclosed Information and its subject matter.

**C.**     If a claim of inadvertent disclosure is made by a Producing Party with respect to Inadvertently Disclosed Information, the Receiving Party shall, within five (5) business days, return or destroy all copies of the Inadvertently Disclosed Information and provide a certification of counsel that all such Inadvertently Disclosed Information has been returned or destroyed.

**D.**     Within twenty-one (21) calendar days of the notification that such Inadvertently Disclosed Information has been returned or destroyed, or within a different time upon written agreement of the Parties or order of the Court, the Producing Party shall produce a privilege log with respect to the Inadvertently Disclosed Information.

**E.**     Nothing in this Protective Order shall limit the right of any Party to petition the Court for an order compelling production of such Inadvertently Disclosed Information, or for an in-camera review of the Inadvertently Disclosed Information.

**DEFENDANTS' VERSION OF PARAGRAPH 24:**

**24.     Inadvertent Disclosure Of Privileged Information.**

**A.**     The Court hereby orders pursuant to Rule 502(d) of the Federal Rules of Evidence, Rule 26(b) of the Federal Rules of Civil Procedure, and the Court's inherent authority that the production of a document, or part of a document, shall not constitute a waiver of

any privilege or protection as to any portion of that document, or as to any undisclosed privileged or protected communications or information concerning the same subject matter, in this or in any other proceeding, subject to this Protective Order.

**B.** This Order applies to attorney-client privilege, work-product protection as defined by Federal Rule of Civil Procedure Rule 26(b), governmental privileges, or any other applicable privilege. Nothing in this Order shall constitute an admission that any document disclosed in this litigation is subject to any of the foregoing privileges or protections, or that any party is entitled to raise or assert such privileges. Additionally, nothing in this Order shall prohibit parties from withholding from production any document covered by any applicable privilege or other protection.

**C.** The parties intend that this stipulated Order shall displace the provisions of Fed. R. Evid. 502(b)(1) and (2). That is, the disclosure of privileged or protected information, as described above, in this litigation shall not constitute a subject matter waiver of the privilege or protection in this or any other federal or state proceeding, regardless of the standard of care or specific steps taken to prevent disclosure. However, nothing in this Order shall limit a party's right to conduct a pre-production review of documents as it deems appropriate.

**D.** The procedures applicable to a claim of privilege on a produced Document and the resolution thereof shall be as follows:

    **i.** If a Receiving Party discovers a Document, or part thereof, produced by a Producing Party appears to be privileged or otherwise protected, the Receiving Party shall promptly notify the Producing Party. Upon confirmation from the

Producing Party that the identified Document contains Produced Privileged Information and request to comply with the stipulations in this Order ("Privilege Notice"), the Receiving Party must return the Document or destroy it and certify that it has been destroyed to the Producing Party. The Receiving Party must also promptly identify, sequester, and destroy any notes taken about the Document. If a Receiving Party disclosed the Document specified before receiving the Privilege Notice, it must take reasonable steps to retrieve it, and so notify the Producing Party of the disclosure and its efforts to retrieve the Document. In addition, the Receiving Party may not make use of that Document for any purpose. Nothing in this Order is intended to shift the burden to identify privileged and protected Documents from the Producing Party to the Receiving Party.

ii.    If in connection with the pending Action a Producing Party determines that a Document containing Privileged Information, or part thereof, was produced by the Producing Party, the Producing Party shall provide notice to the Receiving Party. The notice must contain information sufficient to identify the Document, such as a Bates number or other identifying information. The Receiving Party must promptly—within five (5) days—return the specified Document(s) and any copies or destroy the Document(s) and copies and certify to the Producing Party through the Receiving Party's Counsel of Record that the Document(s) and copies have been destroyed. The Receiving Party must sequester any notes taken about the Document. If a Receiving

ACTIVE 253839678

Party disclosed the Document or information specified in the notice before receiving the Privilege Notice, it must take reasonable steps to retrieve it, and so notify the Producing Party of the disclosure and its efforts to retrieve the Document or information.

iii.    Within fourteen (14) calendar days of the notification that disclosed information has been returned or destroyed, or within a different time upon written agreement of the Parties or order of the Court, the Producing Party shall produce a privilege log with respect to the Documents or portion thereof included in the notification.

iv.    Upon receiving the notification, if a Receiving Party wishes to dispute a Producing Party's notification, the Receiving Party shall promptly—within five (5) days—meet and confer with the Producing Party.  The Document(s) shall be sequestered immediately upon receiving the notification and not be used by the Receiving Party in the Action (e.g., filed as an exhibit to a pleading; used in deposition) while the dispute is pending.  If the Parties are unable to come to an agreement about the privilege assertions made in the privilege notice, the Receiving Party may make a motion for a judicial determination of the privilege claim.  The motion shall not assert as a ground for entering such an Order the fact or circumstances of the inadvertent production.

v.    The Producing Party retains the burden of establishing the privileged or protected nature of any produced Privileged Information.  Nothing in this Order shall limit the right of any Party to petition the Court for an order compelling production

1    of such disclosed Document(s) or to request an in camera
2    review of the disclosed information or Document.

    **vi.**    Pending resolution of the judicial determination, the Parties
4    shall refrain from using the challenged information for any
5    purpose and shall not disclose it to any person other than those
6    required by law to be served with a copy of the motion to the
7    Court.    The Receiving Party's motion challenging the
8    assertion must not publicly disclose the information claimed
9    to be privileged.  Any further briefing by any Party shall also
10    not publicly disclose the information claimed to be privileged
11    if the privilege claim remains unresolved or is resolved in the
12    Producing Party's favor.

    **vii.**    If a Document must be returned or destroyed as determined
14    by the process above, that Document, along with copies and
15    notes about the Document, that exist on back-up tapes,
16    information technology ("IT") systems, or similar storage
17    need not be immediately deleted or destroyed, and, instead,
18    such materials shall be overwritten and destroyed in the
19    normal course of business. Until they are overwritten in the
20    normal course of business, the Receiving Party will take
21    reasonable steps to limit access, if any, to the persons
22    necessary to conduct routine IT and cybersecurity functions.
23    Receiving Parties shall also remain bound by the Protective
24    Order in this Action as long as such information is retained
25    on any of the Receiving Party's systems, and the information
26    must be treated in conformity with this Protective Order.

**REDLINE:**[9]

24.  **Inadvertent Disclosure Of Privileged Information.**

F.  The ~~inadvertent disclosure of Material covered by the attorney-client privilege, the work-product doctrine,~~ or any other recognized privilege shall be governed by Court hereby orders pursuant to Rule 502(d) of the Federal ~~Rule~~Rules of Evidence ~~502 and~~, Rule 26(b) of the Federal Rules of Civil Procedure, and the Court's inherent authority that the production of a document, or part of a document, shall not constitute a waiver of any privilege or protection as to any portion of that document, or as to any undisclosed privileged or protected communications or information concerning the same subject matter, in this or in any other proceeding, subject to this Protective Order.

~~B.~~  ~~If, in connection with the pending Litigation, a Producing Party inadvertently discloses information subject to a claim of a privilege or protection described in paragraph 24(a) ("Inadvertently Disclosed Information"), such disclosure shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work-product protection that the Producing Party would otherwise be entitled to assert with respect to the Inadvertently Disclosed Information and its subject matter.~~

~~C.~~  ~~If a claim of inadvertent disclosure is made by a Producing Party with respect to Inadvertently Disclosed Information, the Receiving Party shall, within five (5) business days, return or destroy all copies of the Inadvertently Disclosed Information and provide a~~

---

[9] A full redline between Plaintiffs' and Defendants' versions of the Protective Order is attached as Exhibit D to the Fee Declaration. This redline is of this paragraph only, for legibility, and uses Plaintiffs' version as the base document and Defendants' version as the modified document.

1 | ~~certification of counsel that all such Inadvertently Disclosed~~
2 | ~~Information has been returned or destroyed.~~
3 | **B.** This Order applies to attorney-client privilege, work-product
4 | protection as defined by Federal Rule of Civil Procedure Rule 26(b),
5 | governmental privileges, or any other applicable privilege. Nothing
6 | in this Order shall constitute an admission that any document
7 | disclosed in this litigation is subject to any of the foregoing
8 | privileges or protections, or that any party is entitled to raise or assert
9 | such privileges. Additionally, nothing in this Order shall prohibit
10 | parties from withholding from production any document covered by
11 | any applicable privilege or other protection.
12 | **C.** The parties intend that this stipulated Order shall displace the
13 | provisions of Fed. R. Evid. 502(b)(1) and (2). That is, the disclosure
14 | of privileged or protected information, as described above, in this
15 | litigation shall not constitute a subject matter waiver of the privilege
16 | or protection in this or any other federal or state proceeding,
17 | regardless of the standard of care or specific steps taken to prevent
18 | disclosure. However, nothing in this Order shall limit a party's right
19 | to conduct a pre-production review of documents as it deems
20 | appropriate.
21 | **D.** The procedures applicable to a claim of privilege on a produced
22 | Document and the resolution thereof shall be as follows:
23 |     i. If a Receiving Party discovers a Document, or part thereof,
24 |     produced by a Producing Party appears to be privileged or
25 |     otherwise protected, the Receiving Party shall promptly
26 |     notify the Producing Party. Upon confirmation from the
27 |     Producing Party that the identified Document contains
28 |     Produced Privileged Information and request to comply with

the stipulations in this Order ("Privilege Notice"), the Receiving Party must return the Document or destroy it and certify that it has been destroyed to the Producing Party. The Receiving Party must also promptly identify, sequester, and destroy any notes taken about the Document. If a Receiving Party disclosed the Document specified before receiving the Privilege Notice, it must take reasonable steps to retrieve it, and so notify the Producing Party of the disclosure and its efforts to retrieve the Document. In addition, the Receiving Party may not make use of that Document for any purpose. Nothing in this Order is intended to shift the burden to identify privileged and protected Documents from the Producing Party to the Receiving Party.

ii.    If in connection with the pending Action a Producing Party determines that a Document containing Privileged Information, or part thereof, was produced by the Producing Party, the Producing Party shall provide notice to the Receiving Party. The notice must contain information sufficient to identify the Document, such as a Bates number or other identifying information. The Receiving Party must promptly—within five (5) days—return the specified Document(s) and any copies or destroy the Document(s) and copies and certify to the Producing Party through the Receiving Party's Counsel of Record that the Document(s) and copies have been destroyed. The Receiving Party must sequester any notes taken about the Document. If a Receiving Party disclosed the Document or information specified in the notice before receiving the Privilege Notice, it must take

JOINT STIPULATION PURSUANT TO C.D. CAL. LOCAL RULE 37-2

1    reasonable steps to retrieve it, and so notify the Producing
2    Party of the disclosure and its efforts to retrieve the Document
3    or information.

4    iii.    ~~D.~~ Within ~~twenty-one~~fourteen (~~21~~14) calendar days of the
5    notification that ~~such Inadvertently Disclosed~~
6    ~~Information~~disclosed information has been returned or
7    destroyed, or within a different time upon written agreement
8    of the Parties or order of the Court, the Producing Party shall
9    produce a privilege log with respect to the ~~Inadvertently~~
10   ~~Disclosed Information~~Documents or portion thereof included
11   in the notification.

12   iv.    Upon receiving the notification, if a Receiving Party wishes
13   to dispute a Producing Party's notification, the Receiving
14   Party shall promptly—within five (5) days—meet and confer
15   with the Producing Party. The Document(s) shall be
16   sequestered immediately upon receiving the notification and
17   not be used by the Receiving Party in the Action (e.g., filed
18   as an exhibit to a pleading; used in deposition) while the
19   dispute is pending. If the Parties are unable to come to an
20   agreement about the privilege assertions made in the privilege
21   notice, the Receiving Party may make a motion for a judicial
22   determination of the privilege claim. The motion shall not
23   assert as a ground for entering such an Order the fact or
24   circumstances of the inadvertent production.

25   v.    ~~E.~~ The Producing Party retains the burden of establishing the
26   privileged or protected nature of any produced Privileged
27   Information. Nothing in this ~~Protective~~ Order shall limit the
28   right of any Party to petition the Court for an order compelling

production of such ~~Inadvertently Disclosed~~ Information, or ~~for an in camera~~ disclosed Document(s) or to request an in camera review of the ~~Inadvertently Disclosed Information~~ disclosed information or Document.

vi.  Pending resolution of the judicial determination, the Parties shall refrain from using the challenged information for any purpose and shall not disclose it to any person other than those required by law to be served with a copy of the motion to the Court. The Receiving Party's motion challenging the assertion must not publicly disclose the information claimed to be privileged. Any further briefing by any Party shall also not publicly disclose the information claimed to be privileged if the privilege claim remains unresolved or is resolved in the Producing Party's favor.

vii. If a Document must be returned or destroyed as determined by the process above, that Document, along with copies and notes about the Document, that exist on back-up tapes, information technology ("IT") systems, or similar storage need not be immediately deleted or destroyed, and, instead, such materials shall be overwritten and destroyed in the normal course of business. Until they are overwritten in the normal course of business, the Receiving Party will take reasonable steps to limit access, if any, to the persons necessary to conduct routine IT and cybersecurity functions. Receiving Parties shall also remain bound by the Protective Order in this Action as long as such information is retained on any of the Receiving Party's systems, and the information must be treated in conformity with this Protective Order.

## III.   ARGUMENTS ON DISPUTED PROTECTIVE ORDER PROVISIONS

### A.   Paragraph 15

#### 1.   Plaintiffs' Argument

The main dispute on this paragraph is whether parties can use information in this litigation that has become public through no fault of Plaintiffs.

The Complaint repeatedly cited news articles. *See, e.g.*, Complaint ¶¶ 10 n.3; 74 n.10; 76 n.16; 80 nn.20-21; 81 n.23; 82 n.25; 83 nn.27-28.[10]  This Court did the same in its Order.  Order at 6, 18.  Such news stories can directly contradict representations that the Government has made to Courts.  *See* Order at 9 (noting that the Government was separating parents at the border in summer of 2017 "in stark contrast to Defendants' representation in this case in as late as May of 2018") (quoting *Ms. L. v. ICE*, No. 18-cv-00428 (S.D. Cal.), Dkt. 386 at 5).  Further news stories continue to be relevant including new statements that still further families were separated by Defendants.  *See* Fee Decl. Exs. BB, CC (*Time* and CBS News articles on the increase in the number of families separated beyond what was previously known).

If information about this highly newsworthy case becomes public through no fault of Plaintiffs, Plaintiffs should be able to use that information without first needing to seek an order of the Court because the *New York Times'* source or CNN's source may be a leak.  Courts have allowed such information to be used by parties in other cases, and Plaintiffs should be allowed to use such information here.  *See In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 397 (E.D.N.Y. 2007) (refusing to enjoin use of leaked information by non-leakers); *Bible v. United Student Aid Funds, Inc.*, 2014 WL 1048807, at *4 (S.D. Ind. Mar. 14, 2014) (*rev'd on other grounds*, 799 F.3d 633 (7th Cir. 2015)) (refusing to strike leaked information publicly available on Wikileaks).  Requiring Plaintiffs to repair to the Court for clarification each time another relevant news article appears with further information about this case because

---

[10] The Complaint is attached as Exhibit AA to the Fee Declaration.

the Government might claim the source of the article leaked information deemed Confidential is a waste of the parties' and this Court's time and resources.

### 2.   Defendants' Argument

Generally, inappropriately or unlawfully leaked information in the public space should not be used in litigation.  Here, it makes little practical sense to require the parties—at the very threshold of discovery—to accept the use of inappropriately or unlawfully leaked information in the public sphere, regardless of the specific circumstances.  Instead, Defendants' proposed language provides that, *if* the situation arises where leaked information enters the public domain, the party challenging invocation of such information can provide circumstance-specific arguments that the Court should analyze, on a case-by-case basis, to determine whether information inappropriately leaked to the public should be considered "in the public domain." This is a mixed question of law and fact for the Court to consider.  *E.g.*, *Brado v. Vocera Communs., Inc.*, 14 F. Supp. 3d 1316, 1320 (N.D. Cal. 2014) (engaging in a multi-factor analysis).

"District courts have issued protective orders with respect to documents obtained outside the normal discovery process pursuant to their inherent authority." *United States ex rel. Rector v. Bon Secours Richmond Health Corp.*, Civil Action No. 3:11-CV-38, 2014 U.S. Dist. LEXIS 1031, at *10 (E.D. Va. Jan. 6, 2014) (quoting *In re Shell Oil Refinery*, 143 F.R.D. 105, 108-09 (E.D. La. 1992)).  Since the use of stolen documents is forbidden according to both the law and the rules of professional conduct, and because use of the stolen documents would be highly prejudicial to Defendants, the Court has the authority to enter an order precluding the use of such documents in this proceeding.

In issuing a protective order with respect to documents obtained through means other than the Court's discovery process, a court may exercise "its equitable powers to control, and preserve the integrity of, its judicial proceedings by limiting the use to

which the documents could be put in the proceedings pending before the court." *Smith v. Armour Pharm. Co.*, 838 F. Supp. 1573, 1578 (S.D. Fla. 1993); *see also Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 568 (S.D.N.Y. 2008) ("[P]ursuant to 'its inherent equitable powers to sanction a party that seeks to use in litigation evidence that was wrongfully obtained,' the court may preclude the use of stolen evidence in litigation, notwithstanding the fact that it would have been otherwise discoverable."); *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 321 (S.D.N.Y. 1997) (exercising inherent equitable authority to prohibit the use of documents improperly obtained outside the discovery process). Defendants ask the Court "simply to limit the use to which the [illegally leaked or stolen] document[s] can be put in *the proceeding before this Court.*" *Armour Pharm. Co.*, 838 F. Supp. at 1578.

Plaintiffs' argument that they should be able to use information that enters the public space "through no fault of Plaintiffs" places too much focus on the conduct of Plaintiffs and Plaintiffs' counsel rather than the nature of the information. As an initial matter, Plaintiffs' proposal requires the Court to assume, outside of the context of any specific instance, that documents in the public space are as a matter of law, irrevocably a part of the "public domain." However, "sealed or confidential documents do not become matters of public record simply because they are leaked to members of the public, or even where they are actually reported by the press and widely disseminated in another medium." *Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353, 1364 (N.D. Ga. 2002) (internal citations omitted) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 603 (1978)).

The Court should decline to endorse such an expansive legal determination in the abstract. Persuasively, the Eastern District of Missouri carefully considered whether leaked information may be used in litigation in a high-profile case in 2016. *See In re Ashley Madison Customer Data Sec. Breach Litig.*, No. MDL No. 2669,

21

ACTIVE 253839678

2016 U.S. Dist. LEXIS 57619 (E.D. Mo. Apr. 29, 2016) ("*Ashley Madison*").  In *Ashley Madison*, the court found that the question of whether the press published stolen or illegally leaked information was irrelevant to the question of whether the parties could use illegally leaked information in litigation, as journalists "are in a completely different position than parties involved in private litigation.  No doubt exists that the news media enjoy the freedom of 'the press;' however, the conduct of attorneys is informed by their ethical responsibilities as officers of the Court."  *Id.* at *15 (E.D. Mo. Apr. 29, 2016).[11]

Further, Plaintiffs do not propose an appropriate mechanism to verify that Plaintiffs or Plaintiffs' counsel were not at "fault."  Plaintiffs provide no insight into what conduct they believe rises to the level of "fault" that they ambiguously assert in the provision.  For example, Plaintiffs' vague proposition does not answer the question of whether Plaintiffs believe they should be able to use information Plaintiffs' counsel receives via illegal leaks from disaffected government employees, regardless of whether Plaintiffs' counsel solicited such leaks.  *E.g., In re Shell Oil Refinery*, 143 F.R.D. 105, 108 (E.D. La. 1992) (prohibiting a plaintiff from using documents leaked by employees of a defendant corporation to the plaintiff's counsel).  As noted by the Shell Oil court, "fault" was not the sole factor in the calculus concerning the exclusion of illegally leaked or stolen documents from the litigation.  *Id.*  ("The Court is not concerned with Shell's internal problems -- whether a Shell employee has breached his confidentiality agreement, how he obtained the documents, or why he is giving them to the [plaintiff].  The Court is concerned with preserving the integrity of this judicial proceeding.").

---

[11]The protective order in this case is prospective rather than retrospective because Defendants seek to exclude documents illegally leaked or stolen subsequent to this motion.  *See Ashley Madison*, No. MDL No. 2669, 2016 U.S. Dist. LEXIS 57619, at *16-*17 (distinguishing the protective order in that case from the protective order in *Castano v. American Tobacco Co*., 896 F. Supp. 590 (E.D. La. 1995), which was sought to apply to information already in the public domain by the time of the motion).

ACTIVE 253839678

The *Ashley Madison* court also rejected the invitation to engage in a "fault" analysis, rejected the argument that citing news articles which publish illegally obtained information is different than citing the illegally obtained information itself, and noted the vast implications of permitting illegally disseminated documents to be used in litigation.  The *Ashley Madison* court reasoned:

> The fact that the content of some of [Defendants'] internal documents, including email communications between [Defendants] and its counsel, has been to some extent placed on the internet and reported in news articles does not change the nature of the documents. They remain stolen documents. Regardless of whether some of the documents at issue may be ultimately discoverable, [Defendants] ha[ve], and ha[ve] always had, the right to keep its own documents until met with proper discovery requests or ordered to disclose them by the Court.  The fact that Plaintiffs intend to use only news articles quoting from the original documents as opposed to the original documents themselves is, in the Court's view, a distinction without a difference.

> …Allowing Plaintiffs to use the documents stolen from [Defendants] would serve to encourage the [lawbreaking] conduct…. Historically, courts have excluded evidence illegally obtained as a deterrent to the conduct, as with the exclusionary rule.

*Id.* at *19-*21. (internal citations omitted).

The focus of the Court's inquiry should be centered upon whether the information is privileged/confidential and whether it is appropriately part of the public record, not whether Plaintiffs or Plaintiffs' counsel was at fault for its release.  *Hynix Semiconductor Inc. v. Rambus Inc.*, No. C-00-20905 RMW, 2009 U.S. Dist. LEXIS 67204, at *15 (N.D. Cal. July 29, 2009) ("When protected documents are compelled into the public record despite a company's best efforts to preserve confidentiality and privilege, there should be no waiver of the privilege or the confidential nature of the documents."); *see also Father M. v. Various Tort Claimants* (*In re Roman Catholic Archbishop*), 661 F.3d 417, 428 (9th Cir. 2011) ("[W]e recently held that even after accurate confidential information has been disclosed in national newspapers, the

subjects of such leaked confidential data retained their interests in preventing further disclosures.").

For these reasons, Defendants' version of the protective order is appropriate. Accordingly, the Court should accept Defendants' version of Paragraph 15 prohibiting the use of leaked or stolen privileged or confidential information that the contesting party specifically establishes—as a matter of law—was inappropriately leaked to the public and should not be considered "in the public domain."  *E.g.*, *Brado v. Vocera Communs., Inc.*, 14 F. Supp. 3d 1316, 1320 (N.D. Cal. 2014) (engaging in a multi-factor analysis).

## B.    Plaintiffs' Paragraph 26

### 1.    Plaintiffs' Argument

Plaintiffs are a class of refugees whose children were taken from them as they crossed the border in often horrific situations; they were then kept in horrific conditions separated from their children.  *See* Complaint ¶¶ 16-44, 80, 96-108.  This Court has entered a Preliminary Injunction holding that Plaintiffs have a high likelihood of success at showing this violated Plaintiffs' constitutional rights and holding that Plaintiffs face irreparable injury.  *See* Order at 36-43.  This is a class of people who justifiably fear the United States Government.

Plaintiffs' counsel, working with an NGO, are negotiating with the Government to implement the Preliminary Injunction entered by this Court.  Outreach will need to be conducted to class members, and they may be afraid that participating in the relief will lead to actions taken against them and/or their children.  Plaintiffs' counsel needs to be able to assure them that any information received in this case will not be used against them and that they are free to participate in the relief ordered.  If the Protective Order allows the Government to demand information about class members that it will then use to immediately seek to deport them, that would frustrate the purpose of the Order and work to defeat the relief.

1    The Government has said in meet and confer discussions that it cannot agree to
2    the restrictions proposed by Plaintiffs.  This is belied by the fact that the Government
3    did, in fact, agree to this restriction in *Ms. L.*  Fee Decl. Ex. Z (*Ms. L.* Protective
4    Order) ¶ 25.  This is not the only time that the Government has agreed to such a
5    restriction; the Tenth Circuit upheld the restriction in a different Protective Order
6    entered into by the Government.  *S.E.C. v. Merrill, Scott & Associates*, 600 F.3d 1262,
7    1272-73 (10th Cir. 2010).  To the extent the Government feels that a certain piece of
8    information must be disclosed, there is a mechanism in the Protective Order for the
9    Government to appeal to the Court to do that.  At that point arguments about the
10   specific statute the Government claims is at issue, whether use of the particular piece
11   of information counts as entrapment, and whether the Government can seek to deport
12   people to prevent them prosecuting their case can all be heard and decided by this
13   Court.  Until that point, discovery should be confined to this litigation to ensure that
14   the relief ordered by this Court can be meaningfully made available to the class.

### 2.    Defendants' Argument

16   Plaintiffs have not shown good cause justifying the Court's premature
17   restriction of Defendants' ability to discharge statutory functions.  Plaintiffs' proposal
18   far exceeds the protections for confidential information contemplated under Federal
19   Rule of Civil Procedure 5.2.  Further, Plaintiffs' proposed Paragraph 26 is inconsistent
20   with Rule 26(c) as it is made for the improper purpose of attempting to immunize
21   Plaintiffs from any potential actions by the government relating to their unlawful entry
22   or any other unlawful conduct—*not* to protect from any specific discovery request that
23   may be deemed abusive, burdensome, or otherwise oppressive.  Fed. R. Civ. P. 26(c).
24   The Court should not permit Plaintiffs' to recraft the Federal Rules for this purpose.

25   DOJ and DHS Defendants are federal law enforcement agencies that have an
26   obligation to ensure that any unlawful activity that may come to light is referred to the
27   appropriate authorities, including within its own agency.  A restraint on referral of
28   violations of law is contrary to policies and practices of the Department of Justice.

*See, e.g.*, Privacy Act of 1974; System of Records, 71 Fed. Reg. 11,446-02 (Mar. 7, 2006) ("Where a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law—criminal, civil, or regulatory in nature—the relevant records may be referred to the appropriate Federal, state, local, foreign, or tribal law enforcement authority or other appropriate agency charged with the responsibility of investigating or prosecuting such a violation or enforcing or implementing such law."). Assuming that Plaintiffs are "individuals," as defined by the Privacy Act, for which they are not, Defendants are nonetheless permitted by statute to disclose any record maintained in a system of records "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1).[12]  This provision of the Privacy Act "recognize[s] that agency personnel require access to records to discharge their duties."  40 Fed. Reg. 28,949, 28,954 (July 1, 1975).  And, it is well settled that the government may use evidence obtained in civil litigation in the prosecution of criminal conduct, absent an affirmative showing of a constitutional violation.  *See United States v. Kordel*, 397 U.S. 1, 12–13 (1970); *United States v. Unruh*, 855 F.2d 1363, 1374 (9th Cir. 1987) ("The prosecution may use evidence obtained in a civil proceeding in a subsequent criminal action unless the defendant shows that to do so would violate his constitutional rights.") (citing *Kordel*, 397 U.S. at 12–13)); *United*

---

[12] All components of DHS, including U.S. Customs and Border Protection (CBP), U.S. Immigration and Customs Enforcement (ICE) and U.S. Citizenship and Immigration Services (USCIS), are one agency for Privacy Act purposes. *See, e.g.*, "Notice of New Privacy Act System of Records," 82 Fed. Reg. 49,407, 49,408 ( Oct. 25, 2017) ("Consistent with DHS's information sharing mission, information stored in [the relevant system of records] may be shared with other DHS components that have a need to know the information to carry out their national security, law enforcement, immigration, intelligence, or other homeland security functions."); *see also* 81 Fed. Reg. 48,832, 48,833 (Aug. 25, 2016); 79 Fed. Reg. 64823-01 (Oct. 31, 2014).  The United States Attorney's Offices and all other components of DOJ are similarly considered one "agency" for purposes of the Privacy Act. *See* "Implementation of Section 552a of Title 5 of the United States Code," 40 Fed. Reg. 28,949, 28,954 (July 1, 1975); *see also Sussman v. U.S. Marshals Serv.*, 808 F. Supp. 2d 192, 196 (D.D.C. 2011) (disclosures between the U.S. States Marshals Service and the Federal Bureau of Investigation were permitted under 5 U.S.C. § 552a(b)(l), as both entities are components of the Department of Justice).

JOINT STIPULATION PURSUANT TO C.D. CAL. LOCAL RULE 37-2

ACTIVE 253839678

1    *States v. Posada Carriles*, 541 F.3d 344, 354 (5th Cir. 2008) ("We begin with the

2    well-settled rule that the government may conduct simultaneous civil and criminal

3    proceedings without violating the due process clause or otherwise departing from

4    proper standards in administering justice.") (citing *Kordel*, 397 U.S. at 12–13)).

5         Congress recognized this interest when it expressly authorized Defendants to

6    disclose records that implicate the civil or criminal law enforcement interests of the

7    United States "to another agency or to an instrumentality of any governmental

8    jurisdiction within or under the control of the United States for a civil or criminal law

9    enforcement activity if the activity is authorized by law." 5 U.S.C. § 552a(b)(7). Law

10   enforcement-related disclosures to other agencies are also covered by the Privacy Act,

11   which authorizes disclosures "for a routine use" (meaning "the use of such record for

12   a purpose which is compatible with the purpose for which it was created"), 5 U.S.C.

13   §§ 552a(b)(3), (a)(7). *See, e.g.*, Privacy Act of 1974; System of Records, 71 Fed. Reg.

14   11,446-02 (Mar. 7, 2006). The sharing of records created for law enforcement

15   purposes thus may clearly be shared, as a routine use, with other law enforcement

16   entities. The Privacy Act, which generally places strict limits on federal agencies'

17   abilities to disclose information about individuals, recognizes the importance of such

18   information sharing by expressly exempting information related to civil or criminal

19   law enforcement activity from the prohibition on disclosure. *See* 5 U.S.C.

20   §§ 552a(b)(7); *see, e.g.*, TECS System of Records Notice, 73 Fed. Reg. 77,778,

21   77,781 (Dec. 19, 2008) (explaining that CBP stores information in its TECS database

22   for law enforcement purposes, and such information may be disclosed "to appropriate

23   Federal, State, local, tribal, or foreign governmental agencies . . . responsible for

24   investigating or prosecuting the violations of, or for enforcing or implementing, a

25   statute, rule, regulation, order, license, or treaty where DHS determines that the

26   information would assist in the enforcement of civil or criminal laws"). Plaintiffs'

27   proposal in Paragraph 26, however, would remove the government's ability to share

28   information with other law enforcement agencies entirely, effectively immunizing any

1    potential wrongdoing that may come to light through discovery.

2        Plaintiffs' proposal would also bar the government from sharing information

3    internally even if Defendants were required to do so by law.  *See, e.g.*, Intelligence

4    Reform and Terrorism Protection Act of 2004 ("IRTPA"), 118 Stat. 3638, 3670

5    (2004) (codified at 6 U.S.C. § 485(i)) ("The head of each department or agency . . .

6    *shall*," *inter alia*, "ensure full department or agency compliance with information

7    sharing policies, procedures, guidelines, rules, and standards" (emphasis added));

8    Exec. Order No. 13,388, "Further Strengthening the Sharing of Terrorism Information

9    to Protect Americans," § 2(a), 70 Fed. Reg. 62,023, 2005 WL 2777052 (Oct. 25,

10   2005) ("the head of each agency that possesses or acquires terrorism information shall

11   promptly give access to the terrorism information to the head of each other agency

12   that has counterterrorism functions, and provide the terrorism information to each

13   such agency"); Homeland Security Act of 2002, Pub. L. No. 107-296, § 202(d)(2),

14   116 Stat. 2135, 2149–50 (2002) (codified at 6 U.S.C. § 122(d)(2)) ("The Secretary . . .

15   *shall* work to ensure that intelligence or other information relating to terrorism to

16   which the Department has access is appropriately shared with the elements of the

17   Federal Government" (emphasis added)).  Plaintiffs' proposed language *preemptively*

18   prohibits the government from complying with these statutory obligations, if such

19   obligations are triggered, without *any* affirmative, individualized demonstration of

20   why such information should not be disclosed.  *See* Declaration of Lindsay M. Vick

21   ("Vick Decl."), Ex. 1 (Order Re: Joint Motion for Entry of ESI and Protective Orders,

22   ECF No. 272 at 9, *Al Otro Lado, Inc. v. Nielsen*, No. 3:17-cv-02366 (S.D. Cal. July 2,

23   2019) ("The Court agrees with defendants to the extent they argue the language

24   proposed by plaintiffs, which does not allow for any intra- or inter-governmental

25   sharing of confidentially designated information, is unduly restrictive when balanced

26   against defendants' law enforcement related interests and particularly, the mandatory

27   disclosure requirements of the IRTPA.")).

28       Plaintiffs' argument that Paragraph 26 should be included in the protective

1  order in this case because it was included in the protective order in *Ms. L.* is

2  unavailing.  The protective order in *Ms. L.* was entered as a preliminary injunction

3  compliance mechanism.  Fee Decl., Ex. Z ¶ 1.  The information exchanged in *Ms. L.*

4  was for the purpose of effectuating reunification and injunction compliance and

5  largely contains class member PII—information both parties to that litigation have an

6  interest in protecting.  The *Ms. L.* litigation is *still* in the preliminary injunction

7  enforcement phase—the Federal Rule 26(f) conference has not yet occurred, no

8  discovery requests have been propounded by either party, and there have not been any

9  document productions responsive to discovery requests. The paragraph delineating the

10  scope of the protective order in each case explicitly demonstrates that the purpose of

11  each protective order is different.  *Compare* Fee Decl. Exs. B, C ¶ 2 (Plaintiffs' and

12  Defendants' versions of the draft protective order) ("The following terms govern with

13  respect to all documents and information exchanged by the Parties in the Action,

14  whether before or after the entry of this Order."), *with* Ex. Z ¶ 1 (*Ms. L.* Protective

15  Order) ("The following terms govern with respect to class information exchanged by

16  the Parties in Litigation for the purpose of facilitating *compliance with the Court's*

17  *preliminary injunction*…") (emphasis added).  Importantly, the parties in *Ms. L.* are

18  not foreclosed from seeking a new protective order to govern merits discovery during

19  the course of any Rule 26(f) conference.

20        Plaintiffs' first line of argument should also fail for an alternative, more

21  pragmatic reason: Plaintiffs should not be permitted prevail by presenting conflicting

22  arguments concerning the relevance of the *Ms. L.* litigation to this litigation.  During

23  the motion to dismiss stage of this litigation, Plaintiffs successfully argued the issues

24  in this case were not the same as the relevant issues in *Ms. L.* to prevail on the first-to-

25  file rule.  Shifting with the expediencies of the moment, Plaintiffs now argue the case

26  is so duplicative of *Ms. L.* that the protective orders—as well as the clawback order

27  and discovery generally—should be *identical*.  *Compare* Vick Decl., Ex. 2 (Pls' Reply

28  in Support of Class Certification, ECF No. 120 at 5 ("The issues presented in this case

1  are not substantially similar to the issues in *Ms. L.* and, accordingly, the first-to-file

2  rule does not apply.")), *with* Vick Decl., Ex. 3 (Pls' Mot. to Compel, ECF No. 273-1

3  at 60 (requesting "All DOCUMENTS YOU have produced or will produce in … *Ms.*

4  *L. v. U.S. Immigration and Customs Enforcement*")).  Notably, Magistrate Judge Kim

5  cited to Plaintiffs' own argument that the issues in this case are different from those in

6  *Ms. L.* when he held that certain of Plaintiffs' First Set of Requests for Production

7  were not relevant and proportional to the needs of this case.  *See* Vick Decl., Ex. 4

8  (Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel Discovery,

9  ECF No. 278).

10        At best, Plaintiffs' proposal seeks to improperly place the burden on Defendants

11  for showing why certain information should not be shared within the government.  At

12  worst, they effectively ask for blanket immunity for any civil or criminal violations

13  that may come to light during discovery simply by virtue of class membership.   Thus,

14  a circumstance-specific determination best comports with the precept that the party

15  "asserting good cause bears the burden, for *each particular document* it seeks to

16  protect, of showing that specific prejudice or harm will result if no protective order is

17  granted."  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir.

18  2003) (emphasis added).  The single case cited by Plaintiffs to the contrary, *SEC v.*

19  *Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1272 (10th Cir. 2010), is incorrectly

20  described and is inapplicable to this dispute.  In *Merrill Scott*, the Tenth Circuit did

21  not "affirm" a protective order, but rather reversed the district court's modification of

22  an existing protective order to allow information sharing that was in clear violation of

23  the plain language of that agreed-upon protective order.  *Id.* ("Having cabined its

24  discretion by agreeing to a protective order that limited … shar[ing]--thus showing a

25  lack of concern for the effect of such limitations on the use of … [i]nformation for law

26  enforcement purposes--it is odd to find the government now advancing a much

27  broader alleged law enforcement 'duty' as a shield to a charge that it violated the

28  protective order.").  *Merril Scott* is manifestly inapposite.

1  The Court should have the opportunity to entertain specific challenges to

2 sharing of particular documents, and should balance the merits of the parties'

3 positions of confidentiality and statutory obligation. A premature, blanket prohibition

4 on internal information-sharing is not appropriate. For the aforementioned reasons,

5 this Court should reject Plaintiffs' proposal concerning Paragraph 26.

6  **C.**  **Paragraph 24**

7    **1.**  **Plaintiffs' Argument**

8  Plaintiffs' proposal is a standard provision included in many protective orders

9 (including the one in the *Ms. L.* case) and is included in the standard order used by the

10 Magistrate Judge in this case. It relies on Federal Rule of Evidence 502 and Federal

11 Rule of Civil Procedure 26. Large businesses with extremely confidential trade

12 secrets rely on the protections of these Rules when producing extraordinarily

13 voluminous amounts of information that may involve privileged materials.

14 Defendants here ask for an extreme departure from that norm, specifically requesting

15 Plaintiffs disclaim reliance on Rule 502. Defendants have refused to limit their

16 proposal to inadvertent production of privileged materials. This would enable

17 Defendants to spring a clawback request on Plaintiffs despite a deliberate waiver as

18 soon as Plaintiffs attempt to use – for example in a deposition – documents that are

19 helpful to Plaintiffs. Defendants' proposed text also requires Plaintiffs to review

20 Defendants' productions with an eye towards any unspecified privilege that

21 Defendants may later decide to assert and then inform Defendants of that potential

22 privilege. *See* ¶ 24(D)(i) ("i. If a Receiving Party discovers a Document, or part

23 thereof, produced by a Producing Party appears to be privileged or otherwise

24 protected, the Receiving Party shall promptly notify the Producing Party."). This

25 appears to significantly increase the burden on Plaintiffs to vet Defendants'

26 productions, something that is Defendants' responsibility.

27  Defendants' concerns about clawback of privileged material in a case with

28 voluminous discovery (although Plaintiffs note that as of the date this was sent to

1   Defendants, there has been no production of discovery whatsoever) are well covered

2   by Federal Rule of Evidence 502 and Federal Rule of Civil Procedure 26.  Parties use

3   those rules to protect their privileges in large productions, as is clear from Judge

4   Kim's form Protective Order and the fact of the inclusion of these rules to begin with.

5   The drafters of the rules struck a compromise, and Plaintiffs believe it is appropriate

6   here.  Finally, any arguments by the Government that they could not possibly abide by

7   such a restriction are belied by the fact that they agreed to this language in *Ms. L.*  Fee

8   Decl. Ex Z ¶ 23.

9               **2.    Defendants' Argument**

10          This Court should enter Defendants' proposed Federal Rule of Evidence 502(d)

11  clawback order because such an order that provides more flexibility than the default

12  procedures affect  Federal Rule of Civil Procedure 1 goals of pursuing a just, speedy,

13  and inexpensive determination by streamlining steps to screen for privilege material

14  before disclosure and providing more flexible time lines for identification and taking

15  corrective action.  Failure to enter a collaborative clawback agreement more flexible

16  than Rule 502 in this complex litigation will result in more time-consuming and

17  expensive document review and unnecessary motions practice.  *See G&E Real Estate,*

18  *Inc. v. Avison Young-Washington, D.C., LLC*, 317 F.R.D. 313, 319 (D.D.C. 2016).

19  Moreover, Plaintiffs' argument that a more limited clawback order will suffice,

20  primarily because a more limited order was entered in *Ms. L.*, is unconvincing because

21  of the different procedural posture of that case and the limited scope of the *Ms. L.*

22  protective order.

23          As a threshold matter, Rule 502(d) orders are commonplace, as "many parties

24  to document-intensive litigation enter into so-called 'claw-back' agreements that

25  allow the parties to forego privilege review altogether in favor of an agreement to

26  return inadvertently produced privileged documents."  *Zubulake v. UBS Warburg*

27  *LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003).  With respect to Rule 502(d), the

28  Advisory Committee noted that "the rule contemplates enforcement of 'claw-back'

and 'quick peek' arrangements as a way to avoid the excessive costs of pre-production review for privilege and work product."  Advisory Committee Note to Rule 502(d).

> Rule 502 serves two major purposes: (1) resolving longstanding disputes about the effect of certain disclosures of privileged information—specifically disputes involving inadvertent disclosure and subject matter waiver and (2) respond to the widespread complaint that litigation costs necessary to protect against waiver of privilege have become prohibitive due to the concern that any disclosure will operate as a subject matter waiver of all protected communication.

*Great-West Life & Annuity Ins. Co. v. Am. Econ. Ins. Co.*, No. 2:11-cv-02082-APG-CWH, 2013 WL 5332410, at *10 (D. Nev. Sep. 23, 2013).  As noted, the Court's entry of a Rule 502(d) order is "consistent with the Court's duty under Federal Rule of Civil Procedure 1 to 'secure the just, speedy and inexpensive determination of every action.'"  *Rajala v. McGuire Woods, LLP*, Civil Action No. 08-2638-CM-DJW, 2010 WL 2949582, at *7 (D. Kan. July 22, 2010).  Courts have "found that it is untenable for a party to insist on individually reviewing all documents for privilege and responsiveness, rather than producing documents under a protective order with a claw back provision."  *Bell Inc. v. GE Lighting, LLC*, No. 6:14-cv-00012, 2014 WL 1630754, at *12 (W.D. Va. Apr. 23, 2014).  If Plaintiffs were successful in their opposition to a Rule 502(d) order, this would force Defendants to do the exact thing many courts find "untenable."

Plaintiffs also oppose Defendants' requests because purportedly "[l]arge businesses with extremely confidential trade secrets rely on the protections of these Rules when producing extraordinarily voluminous amounts of information that may involve privileged materials."  Plaintiffs' argument misses the mark.  Plaintiffs ignore the existence of sensitive governmental privileges that are entirely unique to the government.  Defendants' have an undisputed interest in protecting the government's distinctive privileges, such as deliberative process, law enforcement, and state secret, from waiver while ensuring Plaintiffs receive timely production of voluminous

information from several government agencies. *See, e.g., United States v. Wells Fargo Bank, N.A.*, No. 12-CV-7527 (JMF), 2015 U.S. Dist. LEXIS 113546, at *7 (S.D.N.Y. Aug. 26, 2015) ("[T]he number of documents clawed back cannot be considered in a vacuum, but rather must be viewed in relation to the total number of documents produced. Here, the 1,000 or so Documents at issue make up less than one tenth of one percent of those turned over to the Bank during discovery."). A request for an order pursuant to Rule 502(d) has come to be expected in complex cases and in cases involving voluminous discovery. *Ranger Constr. Indus. v. Allied World Nat'l Assurance Co.*, No. 17-81226-CIV, 2019 WL 436555, at *2 n.2 (S.D. Fla. Feb. 4, 2019) ("The Court is frankly surprised that the sophisticated attorneys in this case did not enter into a written 502 claw-back agreement… This Court encourages counsel in all cases involving e-discovery to consider the benefits of jointly entering into a 502(d) claw-back agreement and/or an ESI Protocol Agreement early on in the case."). Finally, though Plaintiffs argue that the drafters of the Federal Rules "struck a compromise" sufficient for all circumstances, this line of argument is belied by the Advisory Committee's statement that "[c]onfidentiality orders are becoming increasingly important in limiting the costs of privilege review and retention, especially in cases involving electronic discovery." Advisory Committee note to Fed. R. Evid. 502(d).

Further, Plaintiffs' argument that a Rule 502(d) order "would enable Defendants to spring a clawback request on Plaintiffs despite a deliberate waiver," is baseless. Plaintiffs ignore that Defendants' counsel, as officers of the court, are expected to comply with Rules 26 and 34 in connection with their search, collection, review and production of documents, including ESI, in discovery. The Court should not accept fearmongering concerning a prospective breach of those responsibilities to support Plaintiffs' position.

As previously stated, the protective order in *Ms. L.* is irrelevant and the government is not bound to it in other litigations. Plaintiffs have already succeeded in

their arguments that "[t]he issues presented in this case are not substantially similar to the issues in *Ms. L*" to defeat the first-to-file rule. Vick Decl., Ex. 2; Vick Decl., Ex. 5 at 27 (Transcript of the September 20, 2018 Hearing, ECF No. 142 (Plaintiffs arguing that "the efficiency gains by transferring the case would be minimal" because of differing discovery); *id.* at 78 (Plaintiffs' Counsel describing *Ms. L.* as "a fundamentally separate claim, a separate interest[] and [] a separate case."); *see* Vick Decl., Ex. 4. Plaintiffs now argue that the two litigations are not "separate" and overlap to such a degree that the Rule 502(d) clawback order and protective orders should be identical, and that the government should be bound to that which it agreed to in the *Ms. L.* action. Plaintiffs may not have it both ways, either: (a) the case is not separate from *Ms. L.*, as the litigation and discovery overlaps so substantially that the first-to-file rule should apply, or (b) this litigation is separate and apart from the *Ms. L.* litigation. Accordingly, none of Plaintiffs' arguments in opposition provide a basis for the Court to reject Defendants' reasonable Rule 502(d) order proposal.

For these reasons, the Court should enter the clawback provision as proposed by Defendants, which would result in less costly and time-consuming privilege review, and which in turn facilitates the quick and orderly production of documents. *Rajala*, 2010 WL 2949582, at *7 ("The Court believes that a clawback provision is one way to make discovery less expensive and less burdensome … for both parties in this case."). *See* Fed. R. Civ. P. 1 (stating the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Date: January 31, 2020                    SIDLEY AUSTIN LLP

                                          By: */s/* Amy P. Lally
                                               Amy P. Lally
                                               Ellyce R. Cooper

JOINT STIPULATION PURSUANT TO C.D. CAL. LOCAL RULE 37-2

*Attorneys for Plaintiffs*

Date:  January 31, 2020

UNITED STATE DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION

By: */s/* Nicole N. Murley

Nicole N. Murley
Lindsay M. Vick
*Attorneys for Defendants*

## FILER'S ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(2) of the Central District of California, I attest that I have concurrence in the filing of this document.

By: */s/* Amy P. Lally

ACTIVE 253839678

JOINT STIPULATION PURSUANT TO C.D. CAL. LOCAL RULE 37-2

1

**CERTIFICATE OF SERVICE**

2    I am employed in the County of Los Angeles, State of California. I am over the

3 age of 18 years and not a party to the within action. My business address is 1999

4 Avenue of the Stars, 17th Floor, Los Angeles, California 90067.

5    On January 31, 2020, I served the foregoing document(s) described as **JOINT**

6 **STIPULATION PURSUANT TO C.D. CAL. LOCAL RULE 37-2** on all interested

7 parties in this action by the method described below:

8    I electronically filed the foregoing with the Clerk of District Court using its

9 CM/ECF system, which electronically provides notice.

10    I declare under penalty of perjury that the foregoing is true and correct.

11

12          */s/*  Amy P. Lally

13          Amy P. Lally
           Attorney for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ACTIVE 253839678

i

JOINT STIPULATION PURSUANT TO C.D. CAL. LOCAL RULE 37-2